# EXHIBIT F

# U.S. SPECIALTY INSURANCE COMPANY

HCC Global Financial Products

3 Forest Park Drive
P.O. Box 4018
Farmington, CT 06034

### THE MAG
### APPLICATION FOR DIRECTORS, OFFICERS AND PRIVATE ORGANIZATION
### LIABILITY COVERAGE (INCLUDING EMPLOYMENT PRACTICES LIABILITY)

NOTICE: THE POLICY FOR WHICH THIS APPLICATION IS MADE APPLIES, SUBJECT TO ALL OF ITS TERMS, CONDITIONS AND LIMITATIONS, ONLY TO CLAIMS MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD OR, IF APPLICABLE, THE DISCOVERY PERIOD. THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED, AND MAY BE EXHAUSTED, BY THE PAYMENT OF DEFENSE COSTS. DEFENSE COSTS WILL BE APPLIED AGAINST THE RETENTION. THE INSURER WILL HAVE NO DUTY UNDER THE POLICY TO DEFEND ANY INSURED.

The term "Applicant" means the Named Organization and all Subsidiaries.

1.  (a)  Named Organization:        Refco Group Ltd., LLC
         Address:                    200 Liberty Street, Tower A
         City, State, Zip Code:      New York, NY 10281
    (b)  Name and title of the officer of the Applicant designated as the representative to receive all notices from the Insurer on behalf of all persons and entities proposed for this insurance:    Ellen Brooks
         E-mail address:    EBrooks@Refco.com
    (c)  The Named Organization has been in continuous operation since: 1985

2.  Please identify each Subsidiary and the date on which it became a Subsidiary:
    Schedule Attached

3.  Please provide the following information regarding the outstanding common stock of the Named Organization and of each Subsidiary, if any common stock thereof is held by any person(s) or entity (ies) other than the Named Organization or another Subsidiary:
    (a)  Total number of voting shares outstanding? 100,000,000
    (b)  Total number of voting shareholders: 2
    (c)  Total number of voting shares owned by the Applicant's Directors & Officer: 43,124,430.25
    (d)  Are 5% or more of the Applicant's voting shares owned, directly or beneficially, by any single shareholder or group of shareholders?    ☒Yes
         ☐No
         If yes, please provide names and percentages of holdings by such shareholders or groups: Refco Group Holdings, Inc. 43%, TH Lee 57%

4.  Have any of the Applicant's current D&O or EPL carriers indicated an intent not to offer renewal terms?    ☐Yes ☒No
         If yes, please provide complete details: _____
    (QUESTION NO. 4 NOT APPLICABLE TO MISSOURI INSUREDS)

USSIC 1057 (04/2002)
Page 1 of 5



PLAINTIFF'S EXHIBIT

**U.S. SPECIALTY INSURANCE COMPANY**

5.  Have there been any changes in the Applicant's board of directors or within the
    Applicant's senior management during the past 3 years for any reason other than death
    or retirement?                                                              ☒Yes ☐No
        If yes, please provide complete details as an attachment.

6.  Have the Applicant's outside auditors stated that there are no material weaknesses in the
    Applicant's system of internal controls? (see below *)                     ☒Yes ☐No
        If no, please provide the latest CPA letter to management and management
        response thereto.

7.  Within the last 36 months, has the Named Organization or any Subsidiary completed
    or agreed to any of the following, whether or not any such transaction was completed?

    (a)   merger or consolidation with or acquisition of another entity whose consolidated
          assets exceeded 25% of the Applicant's consolidated assets?          ☐Yes ☒No
    (b)   sale, distribution or divestiture of any assets or stock in an amount exceeding 25%
          of the Applicant's consolidated assets?                              ☐Yes ☒No
    (c)   registration for public offering of securities?                      ☒Yes ☐No
    (d)   private placement of securities?                                     ☒Yes ☐No
    (e)   reorganization or arrangement with creditors under federal or state law? ☐Yes ☒No

        If yes to any of the foregoing, please provide complete details (use a separate
        sheet of paper, if necessary):
        _____

8.  Please give details of the present insurance. If none, so state:

| | Insurer | Limit | Premium |
|---|---|---|---|
| D&O | HCC, ELU XL, AXIX | $30,000,000 | $393,593.00 |
| EPL (if separate) | AIG, STARR EXCELL | $10,000,000 | $195,500.00 |
| GL | The HARTFORD | $ 1,000,000 | $ 42,441.36 |

9.  (a)   Total number of employees: Current 1,738 1 year ago 1,725
    (b)   How many employees have been terminated during the past 2 years? 492

10. Does the Applicant anticipate any plant, facility, branch or office closing, consolidations
    or layoffs with the next 24 months?                                        ☐Yes ☒No
        If yes, please provide complete details (use a separate sheet of paper, if
        necessary): _____

* Point 6. The question is poorly worded. The auditors would only issue a
statement if there were material weaknesses. The auditors made no such
statement to management.

**U.S. SPECIALTY INSURANCE COMPANY**

11.  Does the Applicant:
     (a)  Have a full-time human resources coordinator?  ☒Yes ☐No
     (b)  Have a written policy with respect to sexual harassment?  ☒Yes ☐No
     (c)  Have written annual evaluations for employees?  ☒Yes ☐No
     (d)  Have a written policy with respect to progressive discipline for employees?  ☒Yes ☐No
     (e)  Have a written policy for Family Medical Leave?  ☒Yes ☐No
     (f)  Have a written human resources manual or equivalent written guidelines?  ☒Yes ☐No
     (g)  Use outside counsel for employment advice?  ☐Yes ☒No

     **District of Columbia -- refer to 3 years:**

12.  (a)  Have any claims been made during the last 5 years against any person or entity proposed for this insurance in his or her capacity as a director, officer or trustee of any corporation or organization?  ☐Yes ☐No
          If yes, please provide complete details (use a separate sheet of paper, if necessary):

     (b)  Is any person or entity proposed for this insurance aware of any fact, circumstance or situation involving the Applicant or any **Insured Person** or **Organization** which he, she or it has reason to believe might result in a claim being made?
          ☐Yes ☐No
          If yes, please provide complete details (use a separate sheet of paper, if necessary):

**Without prejudice to any other rights of the Insurer, it is understood and agreed that the Insurer will not be liable under any policy that may be issued on the basis of this Application to make any payment of Loss, including Defense Costs, in connection with any Claim arising out of, based upon or attributable to any claim, fact, circumstance or situation disclosed or required to be disclosed in response to questions 12(a) and 12(b).**

13.  Documents Required:

     Please submit one copy of each of the following documents, all of which will be deemed to be attached to and to be a part of this Application.
     (a)  Attachments providing complete details and/or additional information where required as a result of the Applicant's response to questions in this Application.
     (b)  The Applicant's most recent Annual Report (including complete audited financial statements for the last 2 years).
     (c)  Any registration statements filed with the SEC or any private placement memoranda within the last 12 months.
     (d)  Audited financial statements with any notes and schedules.

**U.S. SPECIALTY INSURANCE COMPANY**

(e)    Summary and status of any litigation filed within the last 24 months against any person or entity proposed for this insurance (including any litigation that has been resolved).

FOR PURPOSES OF THIS APPLICATION, THE UNDERSIGNED AUTHORIZED AGENT OF ALL PERSONS AND ENTITIES PROPOSED FOR THIS INSURANCE DECLARES THAT, TO THE BEST OF HIS/HER KNOWLEDGE AND BELIEF, AFTER REASONABLE INQUIRY, THE STATEMENTS CONTAINED HEREIN, AND IN ANY ATTACHMENTS HERETO, ARE TRUE AND COMPLETE. THE INSURER IS AUTHORIZED TO MAKE ANY INQUIRY IN CONNECTION WITH THIS APPLICATION. ACCEPTING THIS APPLICATION DOES NOT BIND THE INSURER TO COMPLETE THE INSURANCE.

THE INFORMATION CONTAINED IN AND SUBMITTED WITH THIS APPLICATION IS ON FILE WITH THE INSURER AND IS CONSIDERED TO BE PHYSICALLY ATTACHED TO AND PART OF THIS APPLICATION. THE APPLICATION, INCLUDING ALL ATTACHMENTS THERETO, WILL BE CONSIDERED TO BE PHYSICALLY ATTACHED TO ANY POLICY ISSUED ON THE BASIS OF THIS APPLICATION AND WILL BECOME PART OF ANY SUCH POLICY. THE INSURER WILL HAVE RELIED UPON THIS APPLICATION, INCLUDING ALL ATTACHMENTS THERETO, IN ISSUING ANY SUCH POLICY.

IF ANY INFORMATION IN THIS APPLICATION, INCLUDING ANY ATTACHMENT THERETO, CHANGES MATERIALLY BEFORE THE EFFECTIVE DATE OF THE POLICY FOR WHICH APPLICATION IS MADE, THE APPLICANT MUST NOTIFY THE INSURER, AND THE INSURER MAY MODIFY OR WITHDRAW ANY QUOTATION.

NOTICE TO COLORADO APPLICANTS: IT IS UNLAWFUL TO KNOWINGLY PROVIDE FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE COMPANY. PENALTIES MAY INCLUDE IMPRISONMENT, FINES, DENIAL OF INSURANCE, AND CIVIL DAMAGES. ANY INSURANCE COMPANY OR AGENT OF AN INSURANCE COMPANY WHO KNOWINGLY PROVIDES FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO A POLICY HOLDER OR CLAIMANT FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE POLICY HOLDER OR CLAIMANT WITH REGARD TO A SETTLEMENT OR AWARD PAYABLE FROM INSURANCE PROCEEDS SHALL BE REPORTED TO THE COLORADO DIVISION OF INSURANCE WITHIN THE DEPARTMENT OF REGULATORY AGENCIES.

NOTICE TO NEW YORK APPLICANTS: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME, AND SHALL ALSO BE SUBJECT TO A CIVIL PENALTY NOT TO EXCEED FIVE THOUSAND DOLLARS AND THE STATED VALUE OF THE CLAIM FOR EACH SUCH VIOLATION.

NOTICE TO PENNSYLVANIA APPLICANTS: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS FOR THE PURPOSE OF MISLEADING,

**U.S. SPECIALTY INSURANCE COMPANY**

INFORMATION CONCERNING ANY FACT MATERIAL THERETO COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS SUCH PERSON TO CRIMINAL AND CIVIL PENALTIES.

NOTICE TO APPLICANTS OF FLORIDA, KENTUCKY, MINNESOTA, NEW JERSEY, OHIO AND OKLAHOMA: ANY PERSON WHO KNOWINGLY, AND WITH INTENT TO INJURE, DEFRAUDS OR DECEIVES ANY INSURER OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM FOR THE PROCEEDS OF AN INSURANCE POLICY CONTAINING ANY FALSE, INCOMPLETE, OR MISLEADING INFORMATION OR CONCEALS FOR THE PURPOSE OF MISLEADING INFORMATION CONCERNING ANY FACT MATERIAL THERETO, IS GUILTY OF A FELONY AND IS SUBJECT TO CRIMINAL AND CIVIL PENALTIES.

NOTICE TO APPLICANTS OF VIRGINIA, MAINE AND NEW MEXICO: IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE OR MISLEADING INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY. PENALTIES INCLUDE IMPRISONMENT, FINES AND DENIAL OF INSURANCE BENEFITS.
IF DISCOVERY IS ELECTED THE LIMIT WILL NOT BE REINSTATED.
MATERIALS SUBMITTED IN CONNECTION WITH THE APPLICTION WILL FORM A PART OF THE POLICY.

NOTICE TO APPLICANTS OF TENNESSEE: IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE OR MISLEADING INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY. PENALTIES INCLUDE IMPRISONMENT, FINES AND DENIAL OF INSURANCE BENEFITS.

WARNING TO APPLICANTS OF DISTRICT OF COLUMBIA: IT IS A CRIME TO PROVIDE FALSE OR MISLEADING INFORMATION TO AN INSURER FOR THE PURPOSE OF DEFRAUDING THE INSURER OR ANY OTHER PERSON. PENALTIES INCLUDE IMPRISONMENT AND/OR FINES. IN ADDITION, AN INSURER MAY DENY INSURANCE BENEFITS IF FALSE INFORMATION MATERIALLY RELATED TO A CLAIM WAS PROVIDED BY THE APPLICANT.

| APPLICANT: | | | |
|---|---|---|---|
| BY: _[signature]_ | TITLE: Pres. + CEO. | DATE: 2/8/05. |

Note: This Application must be signed by the President and/or CEO of the Applicant acting as the authorized agent of the persons and entity(ies) proposed for this insurance.

## COMPANIES HOUSE

  HELP  COMPANY SELECTION  DIR/SEC ENQUIRIES DOCUMENT DOWNLOAD  MONITOR SERVICE   MENU

**Directors & Secretary enquiries**
**PERSONAL APPOINTMENTS WITH LIMITED COMPANIES**

                                                                   

Go Back

| | |
|---|---|
| Name: | PHILLIP ROGER BENNETT |
| Nationality: | BRITISH |
| Latest Address: | 125 COLT LANE |
| | GLADSTONE |
| | NEW JERSEY 07934 USA |

Date of Birth:     22/07/1948

**Company Appointments: Current 5**

To view company details, click on the appropriate company number.
Click HERE to include Resigned and Dissolved appointments

DIRECTOR              Appointed: pre 16/06/1992
Occupation:          FINANCIER
Company Number:   01575487
Company Name:     REFCO EUROPE LIMITED
                        Active

DIRECTOR              Appointed: pre 14/07/1992
Occupation:          FINANCIER
Company Number:   00754582
Company Name:     REFCO OVERSEAS LIMITED
                        Active

DIRECTOR              Appointed: 22/06/1999
Occupation:          FINANCIER
Company Number:   02633631
Company Name:     TILNEY HOLDINGS LIMITED
                        Active

DIRECTOR              Appointed: 21/03/2003
Occupation:          FINANCIER
Company Number:   04688772
Company Name:     REFCO TRADING SERVICES (UK) LIMITED
                        Active

DIRECTOR              Appointed: 03/10/2003
Occupation:          FINANCIER
Company Number:   04920615
Company Name:     WESTMINSTER CLEARING LIMITED
                        Active

This screen does not include appointments with LLP's or European Companies.

UK COMPANIES ONLY

NW 2/2/05

# EXHIBIT G

# KAUFMAN BORGEEST & RYAN LLP

ANDREW S. KAUFMAN†
WAYNE E. BORGEEST
JULIANNA RYAN
LEE E. BERGER
LORETTA A. KREZ*
JOAN M. GILBRIDE†‡
JONATHAN D. RUBIN‡
JUDITH M. FISHER*
A. MICHAEL FURMAN*
MICHAEL E. MEZZACAPPA*†
DOUGLAS J. FITZMORRIS
STEVEN D. WIENER
SCOTT A. SCHECHTER*
CHRISTOPHER E. DIGIACINTO*
ANN MARIE COLLINS†‡
JONATHAN B. BRUNO*
PAUL J. COLUCCI

OF COUNSEL:
MARIBETH SLEVIN
SHERRI M. FELDMAN*
MARGARET J. DAVINO*‡

AFFILIATE COUNSEL:
JACQUELINE MANDELL

JONATHAN R. HAMMERMAN
THOMAS GIBBONS
HEATHER LASCHEVER*
CAROL S. DOTY†‡
ADEOLA I. ADELE
BARBARA-ANN L. COSTELLO
MELINDA B. MARGOLIES*
JEFFREY S. WHITTINGTON
ROCCO P. MATRA*
ELIZABETH O'BRIEN TOTTEN
RICHARD A. PRETTI
REBECCA KRUDIFF
KRISTOPHER M. DENNIS*
CHRISTINE HEENAN
BELINDA DODDS-MARSHALL*†
JULIE A. KEEGAN
STEPHANIE B. GITNIK
JEFFREY W. KLEINER*
FRANK K. STALANO†‡
JACQUELINE B. TOMASSO
JENNIFER FELZ
GINA M. HOGUE*
MICHAEL R. JANES
YAEL WEIZMAN*

ATTORNEYS AT LAW

200 SUMMIT LAKE DRIVE
VALHALLA, NEW YORK 10595

TELEPHONE: 914-741-6100
FACSIMILE: 914-741-0025
www.kbrlaw.com

R. EVON HOWARD◊
LEONARD R. COOPER‡
JULIE ANN LEVINSOHN*‡
JOHN R. MULLANY*
JEFFREY C. GERSON†
CATHERINE KELLEHER*
REBECCA GOODMAN
PETER IANNACERI
ANDREW R. JONES
CHRISTOPHER GOMPRECHT
JAMES T. DE SILVA
KEITH L. KAPLAN†‡
DANIEL C. LYNCH*
VINCENT C. ANSALDI†
BRENDA CORREA*
DAVID J. VARRIALE*†
DOUGLAS J. DOMSKY
KIMBERLY CRESPO
TIMOTHY E. MCCARTHY*
JEFFREY A. GRALNICK
TRACEY KEISER-PERTOSON†
KATHERINE J. HOOPER†‡
DAMIEN SMITH
ANDREW S. KOWLOWITZ*†

MATTHEW M. FERGUSON*
JEANNE M. VALENTINE
EDWARD R. NORIEGA*
MATTHEW SPENGEL
PAUL T. CURLEY

† ALSO ADMITTED IN PA
‡ ALSO ADMITTED IN NJ
§ ALSO ADMITTED IN DC
◊ ALSO ADMITTED IN CT
* ALSO ADMITTED IN MA
□ ALSO ADMITTED IN TX
¶ ALSO ADMITTED IN FL
* ADMITTED IN PA ONLY
‡ ADMITTED IN NJ ONLY
◊ ADMITTED IN CA ONLY
§ ADMITTED IN NJ & MA ONLY
* ADMITTED IN CA, VA, DC ONLY
†BARRISTER AT LAW
ADMITTED IN ENGLAND & WALES

March 6, 2006

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Pam Sylwestrzak
Senior Vice President
Marsh USA, Inc.
500 West Monroe Street
Chicago, IL 60661-3630

| Re: | Insured | : | Refco, Inc. |
|---|---|---|---|
| | Claimant | : | Various – *See* Exhibit A, attached |
| | Policy No. | : | 506300 |
| | Claim No. | : | BH 9826 |
| | Our File No. | : | 481.001 |

Dear Pam:

      As you know, we represent AXIS US Insurance ("Axis"). This is further to our December 16, 2005 letter, wherein we generally reserved all of Axis's rights in law and equity, as well as our March 1, 2006 letter attaching the issued policy. We are attaching to this letter, as Exhibit A, a schedule of all matters for which Axis has received notice under the captioned policy (the "Noticed Matters"). **We request that you immediately review the attached Exhibit A and advise us if you believe any matter noticed to Axis is not listed.** We again also ask that all communications on this matter be directed to the undersigned, on behalf of Axis.

      We are directing this letter to you as the authorized agent of the Insureds, including the individual Insured Persons. To the extent that you are not acting as the authorized representative for any of the Insureds, please immediately advise us of the proper representative for any such Insureds.

      The purpose of this letter is to describe the workings of the Axis Policy, to convey Axis's position regarding coverage, and to reserve Axis's rights. Axis has reviewed the Noticed Matters in light of the Policy provisions. Please be aware that we do not

NEW YORK CITY OFFICE
99 PARK AVENUE
NEW YORK, NEW YORK 10016
TELEPHONE: 212-980-9600
FACSIMILE: 212-980-9291

LONG ISLAND OFFICE
1305 FRANKLIN AVENUE
GARDEN CITY, NEW YORK 11530
TELEPHONE: 516-248-6000
FACSIMILE: 516-248-0677

CALIFORNIA OFFICE
CORPORATE CENTER AT MALIBU CANYON
26635 WEST AGOURA ROAD
CALABASAS, CALIFORNIA 91302
TELEPHONE: 818-880-0992
FACSIMILE: 818-880-0993

NEW JERSEY OFFICE
9 CAMPUS DRIVE
PARSIPPANY, NEW JERSEY 07054
TELEPHONE: 973-451-9600
FACSIMILE: 973-451-0150



PLAINTIFF'S EXHIBIT
C

attribute any merit to the Noticed Matters, and reference them herein only to describe the matter submitted for coverage. In this letter we also make certain requests for information. Those requests are generally in bold. Should further pertinent information come to light, Axis may revise its position accordingly, and it reserves the right to do so. Nothing in this letter, including any requests for information, is intended to waive any rights Axis may have under the Policy, at law, or in equity, all of which are expressly reserved. Axis's position is necessarily based upon information that has been made available to us at this point. If you have any other information we should consider, please let us know. Axis will reevaluate its coverage position described herein upon the receipt of any relevant information.

We have had the opportunity to review the Noticed Matters, as well as the various coverage letters submitted by the primary carrier, US Specialty Insurance Company ("HCC" and the "Primary Policy") and the first excess carrier, Lexington Insurance Company ("Lexington" and the "Lexington Policy"). For the reasons set forth below, Axis is denying coverage for each of the Noticed Matters. Additionally, Axis expressly reserves its right to rescind the captioned policy and any prior policy.

## THE LITIGATION
### Noticed Matters

To date, Axis has received notice of twenty-four matters. *See* Schedule of Litigation, attached at Exhibit A. The Noticed Matters consist of: (1) federal securities putative class actions; (2) a derivative action; (3) a criminal action; (4) state court tort actions; (4) a breach of contract and fraud action (Sillam); (5) adversary proceedings brought in bankruptcy court; and (6) an action based on fraudulently obtaining a loan (BAWAG).

**Securities Class Actions**

1. Frontpoint Financial Services, Inc., et al. v. Refco Inc., et al., No. 05-cv-08663-GEL, complaint filed (S.D.N.Y., 10/11/05);

2. Jonathan Glaubach, et al. v. Refco Inc., et al., No. 05-cv-08692, complaint filed (S.D.N.Y., 10/12/05);

3. Miriam Lieber, et al. v. Refco Inc., et al., No. 05-cv-08667-LAP, complaint filed (S.D.N.Y., 10/12/05);

4. Sandra E. Weiss, et al. v. Refco Inc., et al., No. 05-cv-08691-GEL, complaint filed (S.D.N.Y., 10/12/05);

5.  <u>Anthony L. Wakefield, et al. v. Refco Inc., et al.</u>, No. 05-cv-08742-GEL, complaint filed (S.D.N.Y., 10/14/05);

6.  <u>Jacob Baker, et al. v. Phillip R. Bennett, et al.</u>, No. 05-cv-08923, complaint filed (S.D.N.Y., 10/19/05);

7.  <u>Craig Becker, et al. v. Refco Inc., et al.</u>, No. 05-cv-08929-GEL, complaint filed (S.D.N.Y., 10/20/05);

8.  <u>Bruce Nathanson, et al. v. Phillip R. Bennett, et al.</u>, No. 05-cv-08926-GEL, complaint filed (S.D.N.Y., 10/20/05);

9.  <u>American Financial International Group – Asia, LLC, et al. v. Refco Inc., et al.</u>, No. 05-cv-08988-PKC, complaint filed (S.D.N.Y., 10/21/05);

10.  <u>Ravindra Mettupatti, et al. v. Phillip R. Bennett, et al.</u>, No. 05-cv-09048, complaint filed (S.D.N.Y., 10/24/05);

11.  <u>Todd Weiss, et al. v. Phillip R. Bennett and Gerald M. Sherer</u>, No. 05-cv-09126, complaint filed (S.D.N.Y., 10/26/05);

12.  <u>Scott K. Weit, et al. v. Phillip R. Bennett, et al.</u>, No. 05-cv-09611-GEL, complaint filed (S.D.N.Y., 11/11/05);

13.  <u>City of Pontiac General Employees' Retirement System, et al. v. Phillip R. Bennett, et al.</u>, No. No. 05-cv-09941, complaint filed (S.D.N.Y., 11/23/05).

**Shareholder Derivative Action**

14.  <u>Verun Mehta, et al. v. Phillip R. Bennett, et al.</u>, No. 05-cv-08748, complaint filed (S.D.N.Y. 10/14/05).

**Criminal Proceedings**

15.  <u>United States of America v. Phillip R. Bennett, et al.</u>, No. 05-MAG 1720, complaint filed (S.D.N.Y. 10/12/05).

**State Court Actions**

16.  <u>Banesco Holding C.A., et al. v. Refco Inc., et al.</u>, No. 05603681 (Supreme Court of New York, 10/17/05);

17.  <u>Miura Financial Services v. Refco Inc., et al.</u>, No. 05603683 (Supreme Court of New York, 10/17/05);

18. Multiplicas Casa De Bolsa v. Refco Inc., et al., No. 05603683 (Supreme Court of New York, 10/17/05).

**The Sillam Action**

19. Bankruptcy Trust of Gerard Sillam v. Refco Group, LLC, et al., No. 05603931 (Supreme Court of New York 11/04/05).

**Adversary Actions**

20. Markwood Investments v. Refco Capital Markets, Ltd and Refco Securities LLC, No. 05-03166-rdd (Bankr. S.D.N.Y., 11/17/05);

21. Banco De America, S.A. v. Refco Capital Markets, Ltd., No. 05-03171-rdd (Bankr. S.D.N.Y., 11/18/05);

22. BAC International Bank v. Refco Capital Markets, Ltd., No. 05-03170-rdd (Bankr. S.D.N.Y., 11/18/05);

23. Reserve Invest (Cyprus) Ltd v. Refco Capital Markets, Ltd., Michael W. Morrison, and Richard Heis, No. 05-03168-rdd (Bankr. S.D.N.Y., 11/18/05).

**The BAWAG Action**

24. BAWAG P.S.K., et al. v. Refco, Inc., et al., No. 05-03161-rdd (Bankr. S.D.N.Y., 11/16/05).

## D&O INSURANCE PROGRAM

Refco, through its broker Marsh, approached various insurers in July 2004 attempting to place a tower of Private Company D&O insurance in anticipation of an eventual public offering. As a result of this solicitation, Refco Group Ltd., LLC was insured by a tower of D&O insurance with a Policy Period from August 5, 2004 to August 5, 2005. This was later extended to August 11, 2005 (the "04/05 Policy"). After the August 11, 2005 IPO, Refco, Inc. ("Refco") was insured by a tower of Public Company D&O insurance with a Policy Period from August 11, 2005 to August 11, 2006 (the "05/06 Policy").

**Private Company Policy Tower – The 04/05 Policy**

**HCC Primary** – The Primary Policy on the 04/05 Policy tower (the "04/05 Primary") was written by HCC. The 04/05 Primary provided a $10 million Limit of Liability, excess a retention of $500,000. This 04/05 Primary provided coverage pursuant to two Insuring Agreements:

(A) The Insurer will pay to or on behalf of the Insured Persons Loss arising from Claims first made against them during the Policy Period or Discovery Period (if applicable) for Wrongful Acts.

(B) The Insurer will pay to or on behalf of the Insured Organization Loss arising from Claims first made against it during the Policy Period or Discovery Period (if applicable) for Wrongful Acts.

The 04/05 Primary excluded Claims based on Wrongful Acts allegedly committed prior to June 4, 2004. Coverage for E&O claims also was excluded.

**Greenwich First Excess** – The Greenwich first excess layer to the 04/05 Policy tower (the "Greenwich 04/05 Policy") insured $10 million excess of the $10 million 04/05 Primary. The Greenwich 04/05 Policy followed form to the terms and conditions of the 04/05 Primary Policy.

The Greenwich 04/05 Policy included a Pending and/or Prior Litigation Exclusion at Endorsement 5 which excludes Claims related to litigation pending prior to August 5, 2004.

**Axis Second Excess** – The Axis second excess layer to the 04/05 Policy tower (the "Axis 04/05 Policy") insured $10 million excess of the $20 million in Underlying Limits. The Axis 04/05 Policy followed form to the 04/05 Primary, or any more restrictive Underlying Policy. The Axis 04/05 Policy repeats the exclusion for Pending and/or Prior Litigation as of August 5, 2004.

The Axis 04/05 Policy also contains a Manuscript Application Endorsement at Endorsement 2, stating:

In consideration of the premium charged, it is agreed by the Insurer and the Insureds that the application or proposal dated February 8, 2005 and submitted to *Axis Reinsurance Company* on *U.S. Specialty Insurance Company's* form shall be accepted by the Insurer as the Application for this Policy.

Any and all references to an Application or application in this Policy shall mean the application or proposal described above. The Insurer has relied upon all statements, warranties and other information and documents contained in or submitted with such other application or proposal as if they were submitted directly to Insurer using its own Application form.

Endorsement 2 is marked effective August 5, 2004 and is dated April 25, 2005.

**Public Company Policy Tower – The 05/06 Policy**

**HCC Primary** – The Primary Policy on the 05/06 Policy tower (the "05/06 Primary") was written by HCC. The 05/06 Primary provided a $10 million Limit of Liability, excess retentions of nil/$500,000/$500,000. This 05/06 Primary provided coverage pursuant to two Insuring Agreements:

(A) The Insurer will pay to or on behalf of the Insured Persons Loss arising from Claims first made during the Policy Period or Discovery Period (if applicable), against the Insured Persons for Wrongful Acts, except when and to the extent that the Company has paid such Loss to or on behalf of the Insured Persons as indemnification or advancement.

(B) The Insurer will pay to or on behalf of the Company Loss arising from:

(1) Claims first made during the Policy Period or the Discovery Period (if applicable) against the Insured Persons for Wrongful Acts, if the Company has paid such Loss to or on behalf of the Insured Persons as indemnification or advancement, and/or

(2) Securities Claims first made during the Policy Period or the Discovery Period (if applicable) against the Company for Wrongful Acts.

Coverage also was extended pursuant to Endorsement 11, to include Derivative Demand Investigative Costs:

The Insurer will pay to or on behalf of the Company all Derivative Demand Investigation Costs incurred by the Company as a result of a Derivative Demand first received by the Company's Board of Directors and reported in writing to the Insurer during the Policy Period or the Discovery Period, if purchased, up to the amount of the Derivative Demand Investigation Costs Sub-Limit [$250,000].

Coverage was further extended pursuant to Endorsement 15, to include Controlling Shareholder Coverage:

The Insurer will pay to or on behalf of the Controlling Shareholder Loss arising from a Securities Claim first made during the Policy Period or the Discovery Period (if applicable) against such Controlling Shareholder for Wrongful Acts, provided, that one or more Insured Persons and/or the Company are and remain co-defendants in such Securities Claim along with such Controlling Shareholder.

Phillip Bennett was defined as the Controlling Shareholder. A $300,000 retention was to apply to Defense Costs under this coverage extension, but did not apply to any other Loss under the extension.

**Lexington First Excess** – The Lexington first excess layer to the 05/06 Policy tower (the "Lexington 05/06 Policy") insures $7.5 million excess of the $10 million 05/06 Primary. The Lexington 05/06 Policy follows form to the terms and conditions of the 05/06 Primary Policy.

The Lexington 05/06 Policy also includes a Pending and Prior Litigation Exclusion at Endorsement 5 which excludes Claims related to litigation pending on or prior to August 4, 2004.

**Axis Second Excess** – The Axis second excess layer to the 05/06 Policy tower (the "Axis 05/06 Policy") provides a Limit of Liability of $10 million excess of $17.5 million in Underlying Limits. The Axis 05/06 Policy follows form to the terms and conditions of the 05/06 Primary Policy, or any more restrictive Underlying Policy.

The Axis 05/06 Policy contains a Manuscript Application Endorsement at Endorsement 5, stating:

> In consideration of the premium charged, it is agreed by the Insurer and the Insureds that the application or proposal signed *February 8, 2005* and submitted to *Axis Reinsurance Company* on *U.S. Specialty Insurance Company's* form shall be accepted by the Insurer as the Application for this Policy.
>
> Any and all references to an Application or application in this Policy shall mean the application or proposal described above. The Insurer has relied upon all statements, warranties and other information and documents contained in or submitted with such other application or proposal as if they were submitted directly to Insurer using its own Application form.

Endorsement 5 is marked effective August 11, 2005 and is dated September 11, 2005.

The Axis 05/06 Policy also contains a Knowledge Exclusion Endorsement at Endorsement 6 which states:

> In consideration of the premium charged, it is agreed that this Policy does not respond to Claims based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, or event, which as of the inception date of the Policy Period, any Insured had knowledge and had reason to suppose might give rise to a Claim that would fall within the scope of the insurance afforded by this Policy.

Endorsement 6 is marked effective August 11, 2005 and is dated September 11, 2005.

The Axis 05/06 Policy notes a Prior and Pending Claim Date of June 4, 2004.

**February 8, 2005 HCC Application**

Phillip Bennett completed an HCC application "for Directors, Officers and Private Organization Liability Coverage" and signed it on February 8, 2005. This application asks at Question 12:

(a) Have any claims been made during the last 5 years against any person or entity proposed for this insurance in his or her capacity as a director, officer or trustee of any corporation or organization? __ Yes       __ No
If yes, please provide complete details (use a separate sheet of paper, if necessary):

(b) Is any person or entity proposed for this insurance aware of any fact, circumstance or situation involving the Applicant or any Insured Person or Organization which he, she or it has reason to believe might result in a claim being made? __ Yes    __ No
If yes, please provide complete details (use a separate sheet of paper, if necessary):

Without prejudice to any other rights of the Insurer, it is understood and agreed that the Insurer will not be liable under any policy that may be issued on the basis of this Application to make any payment of Loss, including Defense Costs, in connection with any Claim arising out of, based upon or attributable to any claim, fact, circumstance or situation disclosed or required to be disclosed in response to questions 12(a) and 12(b).

Bennett did not check either box for Questions 12(a) and 12(b).

**January 14, 2005 Axis Warranty**

Axis requested and received a warranty (the "Axis Warranty"). The Axis Warranty states:

(a) No person(s) or entity(ies) proposed for this insurance is cognizant of any fact, circumstance, situation, act, error or omission which he/she/it has reason to suppose might afford grounds for any Claim, as such term is defined within the Policy, such as would fall within the scope of the proposed insurance, EXCEPT: [Louis Capital Markets, LP v. Refco Group Ltd., LLC, et al.]

(b) No person(s) or entity(ies) proposed for this insurance is cognizant of any inquiry, investigation or communication which he/she/it has reason to suppose might give rise to a Claim, as such term is defined within the Policy, such as would fall within the scope of the proposed insurance.

It is agreed by the undersigned on behalf of all Insureds under the Policy,
that with respect to the above statements, that if such knowledge exists,
any claim arising therefrom is excluded from the proposed insurance.

The Axis Warranty is dated January 14, 2005, and was signed by Phillip Bennett,
"on behalf of all Insureds under the Policy," on January 21, 2005.

## COVERAGE DISCUSSION

The Noticed Matters are excluded from coverage under both the Axis 04/05
Policy and the Axis 05/06 Policy based on: (1) the Axis Warranty; and (2) the
Application for the Axis 04/05 Policy and the Axis 05/06 Policy. Moreover, the Noticed
Matters are additionally excluded under the Axis 05/06 Policy based on: (1) the Claim
made date; and (2) the Knowledge Exclusion. Axis also reserves its rights to rescind both
Policies based on material misrepresentation in the application. Finally, additional terms
and conditions further serve to exclude or limit coverage if coverage were otherwise
available, which it is not. All of the foregoing is detailed below.

Each of the Noticed Matters is excluded from coverage under the Axis 04/05
Policy and the Axis 05/06 Policy pursuant to the Axis Warranty, attached at Exhibit B.
Each of the Noticed Matters is brought in connection with the alleged financial fraud
orchestrated by Mr. Bennett, among others. It is inconceivable that Mr. Bennett was not
aware of the alleged fraud when he executed the Axis Warranty "on behalf of all Insureds
under the Policy." The Axis Warranty explicitly excludes coverage for all Insureds for
any Claim arising from the undisclosed knowledge. Accordingly, each of the Noticed
Matters is excluded from coverage for all Insureds and Axis hereby denies coverage.

Each of the Noticed Matters also is excluded from coverage based on the
Application for the Axis 04/05 Policy and the Axis 05/06 Policy.[1] Question 12(b) to the
Application required disclosure of any known "fact, circumstance or situation. . . [which]

---

[1]    The Axis 04/05 Policy contains a Manuscript Application Endorsement at Endorsement 2, stating:

In consideration of the premium charged, it is agreed by the Insurer and the Insureds that
the application or proposal dated February 8, 2005 and submitted to Axis Reinsurance
Company on U.S. Specialty Insurance Company's form shall be accepted by the Insurer
as the Application for this Policy.

Any and all references to an Application or application in this Policy shall mean the
application or proposal described above. The Insurer has relied upon all statements,
warranties and other information and documents contained in or submitted with such
other application or proposal as if they were submitted directly to Insurer using its own
Application form.

The Axis 05/06 Policy also contains similar wording at Endorsement 5. Accordingly, the
February 8, 2005 application was explicitly incorporated as the application for the Axis
04/05 Policy (Private Company) and again when Axis issued the Axis 05/06 Policy
(Public Company).

might result in a claim being made." The Application further states that Axis will not be "liable under any policy that may be issued on the basis of this Application to make any payment of Loss, including Defense Costs, in connection with any Claim arising out of, based upon or attributable to any claim, fact, circumstance or situation disclosed or required to be disclosed in response to questions 12(a) and 12(b)." Mr. Bennett had a duty to disclose the alleged financial fraud in answer to Application question 12(b). His failure to disclose such fraud excludes coverage for any Claim brought in connection with the financial fraud. Accordingly, Axis is further denying coverage for each of the Noticed Matters because each is brought in connection with information which should have been disclosed in Application question 12(b).

We note that the Axis Warranty and the Application do not contain an adjudication requirement. We further note that Axis's denial of coverage on these two grounds is as to all Insureds. The Axis Warranty and the Application were filed on behalf of all Insureds. Accordingly, Axis denies coverage for each of the Noticed Matters because each of the Noticed Matters arises out of information which was known to Mr. Bennett, and others, at the time he completed the Axis Warranty and the Application, on behalf of all Insureds.

In addition to the Axis Warranty and the Application, Axis separately denies coverage under the Axis 05/06 Policy for each of the Noticed Matters because each is a Claim first made before the inception of the Axis 05/06 Policy, on August 11, 2005. The Noticed Matters are interrelated, as defined in Condition (C) of the 05/06 Primary Policy.[2] All of the Noticed Matters arise out of the financial fraud allegedly orchestrated by Mr. Bennett, and others whereby unreported loans were made between various entities in an effort to disguise financial losses. This alleged fraud was reflected in the financial statements which are the subject of the Noticed Litigation. Additionally, the BAWAG action concerns Mr. Bennett's loan transactions in connection with the alleged fraud. The bankruptcy court adversary proceedings and state court tort actions arise from Refco customers' inability to access assets held by Refco – which assets were inaccessible due to the alleged fraud. Finally, the Sillam action alleged fraud in the Refco financial statements issued in connection with the IPO. Accordingly, each of the Noticed Matters is connected to the allegedly fraudulent scheme to manipulate Refco's financial results and Axis is treating each of the Noticed Matters as a single interrelated Claim. The Noticed Matters are deemed a Claim first made on the date the first such Noticed Matter was made. The Sillam action raised related allegations in its earlier June 30, 2005 complaint. This places a Claim made date for the Noticed Matters at least as early as June 30, 2005.[3] As this is prior to the August 11, 2005 inception of the Axis 05/06

---

[2] Condition (C) of the 05/06 Primary Policy states:

> All Claims alleging, arising out of, based upon or attributable to the same facts, circumstances, situations, transactions or events or to a series of related facts, circumstances, situations, transactions or events will be considered to be a single Claim and will be considered to have been made at the time the earliest such Claim was made.

[3] The Sillam action references an earlier September 8, 2004 complaint which would also potentially bring the Claim Made date prior to the inception of the Axis 05/06 Policy.

KAUFMAN BORGEEST & RYAN LLP
442053_1                        Page 10

Policy, the Noticed Matters would constitute a Claim Made prior to the Axis 05/06 Policy Period.

Axis further denies coverage under the Axis 05/06 Policy based on the Knowledge Exclusion Endorsement. The Knowledge Exclusion Endorsement excludes coverage for any Claims based on facts any Insured had knowledge of at the inception of the Policy. Each of the Noticed Matters is brought in connection with the alleged financial fraud orchestrated by Mr. Bennett, among others. As with the Axis Warranty, we think it inconceivable that Mr. Bennett was not aware that his actions "might give rise to a Claim that would fall within the scope of the insurance afforded by this Policy" on the inception date of the Axis 05/06 Policy, August 11, 2005. Coverage on this basis is not only denied as to Mr. Bennett, but also as to all Insureds under the Policy.

In addition to the above grounds for denial of coverage for the Noticed Matters, Axis reserves its right to rescind the Axis 04/05 Policy and the Axis 05/06 Policy on the basis of fraud in the Application. The Application required Refco to attach, as part of the Application, audited financial statements for the two years preceding the Application. Refco has since admitted that its financial statements from 2002 through 2005 cannot be relied on. As noted above, both the Axis 04/05 Policy and the Axis 05/06 Policy were issued in material reliance upon the Insured's representations in all parts of the Application, including the attached financial statements. Accordingly, Axis reserves its right to rescind the Axis 04/05 Policy and the Axis 05/06 Policy. Axis explicitly reiterates our March 1, 2006 letter wherein Axis issued the Axis 05/06 Policy, which letter is hereby incorporated by reference. In that letter Axis noted that the issuance and delivery of the Axis 05/06 Policy should not be interpreted as a ratification of the existence of a valid insurance contract.

*      *      *

While the foregoing is dispositive of Axis's coverage responsibilities in connection with the Noticed Matters, additional terms and conditions would serve to limit or exclude coverage if the Noticed Matters were not excluded in their entirety, which they are. For the sake of completeness, we will detail those terms and conditions which would also limit or exclude coverage of the Noticed Matters.[4]

---

The Sillam action further references an earlier April 25, 2003 complaint brought in France. We do not currently have a translated version of this April 25, 2003 complaint, but it may contain related allegations which would dictate a Claim Made date for the Noticed Matters of April 25, 2003, prior to the inception of the 04/05 Policy. Accordingly, coverage would also be denied under the Axis 04/05 Policy.

[4] The Noticed Matters have only been submitted to Axis for coverage under the Axis 05/06 Policy. Accordingly, our discussion in this section focuses only on the Axis 05/06 Policy. Axis has herein denied coverage for the Noticed Matters under the Axis 04/05 Policy, but other coverage limitations may exist if coverage were otherwise afforded under the Axis 04/05 Policy, which it is not. Axis will provide a more detailed coverage analysis under the Axis 04/05 Policy if Insureds were to submit the Noticed Matters for coverage under the Axis 04/05 Policy. Axis reserves all rights available in the Axis 04/05 Policy, in law, and in equity, including, but not limited to, the right to rescind the Axis 04/05 Policy.

The Axis 05/06 Policy follows form to the Primary Policy, or more restrictive Underlying Insurance. Axis directs your attention to the definition of Loss in the Lexington 05/06 Policy. The Lexington 05/06 Policy does not include Defense Costs within its definition of Loss. Accordingly, Axis adopts this more restrictive definition of Loss. As such, Defense Costs are not covered by the Axis 05/06 Policy.

The Axis 05/06 Policy, at Clause IX(A), requires that the Insured give notice of any Claim to Axis contemporaneously and in the same manner as notice is required to be given to HCC. The Primary Policy, at Condition B(1) and (4), requires that notice of Claims be given as soon as practicable, in writing, and by certified mail. To the extent that Axis did not receive notice as soon as practicable and in the prescribed manner, Axis reserves its rights.

As noted above, the 05/06 Primary Policy only insures the Refco entity (and Refco Subsidiaries) for Securities Claims and Derivative Demand Investigative Costs. Certain of the Noticed Matters do not name individual defendants and do not qualify as Securities Claims. The 05/06 Primary Policy, at Condition D(3), provides for an allocation where a Claim contains covered and non-covered matters. Axis reserves its right to exclude from coverage any Claims that are not Securities Claims against Refco or any of its Subsidiaries.

The 05/06 Primary Policy provides coverage pursuant to Insuring Agreements A and B(1) for Insured Persons. Insured Persons is defined to include present and past directors or officers of Refco, and employees solely with respect to Securities Claims. **For each individual named as a defendant in the Noticed Matters at Exhibit A, please identify: (1) current position, if currently employed; (2) date the current position was assumed; (3) any prior positions and dates prior positions were held; and (4) whether Refco will be indemnifying the individual. If Refco is permitted or required to indemnify and/or if Refco has determined that it will or will not indemnify any of the individual defendants, please provide us with a copy of the Board resolution providing such indemnification decision.**

The 05/06 Primary Policy also provides coverage based on Refco Subsidiaries. Subsidiary is defined at Definition (O) of the 05/06 Primary Policy as any entity:

    (1) during any time on or before the inception of the Policy Period in which [Refco Inc] owns or owned more than 50% of the issued and outstanding securities representing the right to vote for the election of such entity's directors (or the legal equivalent thereof), either directly or indirectly through one or more other Subsidiaries; or

    (2) created or acquired during the Policy Period during any time in which, as a result of such creation or acquisition, [Refco Inc.] owns more than 50% of the issued and outstanding securities representing the right to vote for the election of such entity's directors (or the legal equivalent

thereof), either directly or indirectly through one or more other Subsidiaries.

An entity ceases to be a Subsidiary when [Refco Inc.] ceases to own more than 50% of its issued and outstanding securities representing the right to vote for the election of such entity's directors (or legal equivalent thereof), wither directly or indirectly through one or more other Subsidiaries. The coverage afforded under this Policy will respect to Claims against a Subsidiary or any Insured Person thereof will apply only in respect of Wrongful Acts committed or allegedly committed after the effective date that such entity becomes a Subsidiary and prior to the time that such entity ceases to be a Subsidiary.

**For each entity named as a defendant in any of the Noticed Matters at Exhibit A, please identify: (1) whether such entity is or ever was a Subsidiary; (2) the effective date such entity became a Subsidiary; and (3) if applicable, the effective date such entity ceased to be a Subsidiary.** Axis reserves its right to deny coverage for any entity named as a defendant in the Noticed Matters which is not Refco Inc. or a Subsidiary, as defined above.

Endorsement 15 of the 05/06 Primary Policy extends coverage to Philip Bennett as Controlling Shareholder for Securities Claims where he is co-defendant with another Insured Person or the Company. To the extent that certain of the Noticed Matters are not Securities Claims, coverage would not be available under this Endorsement. Also, even if certain of the Noticed Matters are Securities Claims, coverage under this Endorsement 15 would only be available where, and so long as, another Insured Person and/or the Company is a co-defendant with Mr. Bennett. Axis also notes Clause (8) of Endorsement 15 which amends the Change in Control section of the 05/06 Primary Policy. This change limits coverage under Endorsement 15 to Wrongful Acts allegedly committed prior to Refco's bankruptcy filing on October 17, 2005. Axis reserves its rights to deny coverage under this Endorsement 15 for any Claims based on Wrongful Acts allegedly committed on or after October 17, 2005.

Additionally, the definition of Loss is limited to amounts insurable by law. It is well-settled that Loss does not include the restoration or disgorgement of ill-gotten gain. Thus, insurance cannot be used to pay an Insured for amounts an Insured wrongfully acquires or is forced to return, or to pay the corporate obligations of the Insured. Accordingly, pursuant to the well-known Vigilant, Conseco, and Level 3 cases, any amounts eventually sought as disgorgement would not be recoverable as Loss.

Exclusion (A) of the 05/06 Primary Policy excludes Loss in connection with a Claim:

Arising out of based upon or attributable to the gaining by any Insured of any profit or advantage to which such Insured was not legally entitled; provided, that this EXCLUSION (A) will apply only if there has been a

final adjudication adverse to such Insured establishing that the Insured gained such a profit or advantage

To the extent that any Insured is subject to a final adjudication establishing that the Insured received any profit or advantage to which such Insured was not legally entitled, Axis reserves the right to deny coverage for such Insured.

Exclusion (B) of the 05/06 Primary Policy excludes Loss in connection with a Claim:

Arising out of, based upon or attributable to the commission by any Insured of any criminal or deliberately fraudulent or dishonest act; provided that this EXCLUSION (B) will apply only if there has been a final adjudication adverse to such Insured establishing that the Insured so acted

To the extent that any Insured is subject to a final adjudication establishing that the Insured committed a criminal or deliberately fraudulent or dishonest act, Axis reserves the right to deny coverage for such Insured.

Axis has not yet identified and established the relationship between or among each of the parties to each of the Noticed Matters. The "Insured vs. Insured" exclusion at Exclusion (F) of the 05/06 Primary Policy, as modified by Endorsement 15, may serve to exclude certain of the Noticed Matters from coverage. Axis reserves its rights accordingly.

Further to Axis's above denial based on the Claim made date of this interrelated Claim, Axis specifically notes Exclusion (H) of the 05/06 Primary Policy which excludes Claims:

Arising out of, based upon or attributable to facts or circumstances alleged, or to the same or related Wrongful Acts alleged or contained, in any claim which has been reported, or with respect to which any notice has been given, under any policy of which this Policy is a renewal or replacement or which it may succeed in time

**Please provide us with copies of any notices of claims or circumstances sent in respect of any policy of which this Policy is a renewal or replacement, including, but not limited to, the 04/05 Policy tower.** Axis reserves its rights to deny coverage for any matters excluded subject to this Exclusion (H).

The Axis 05/06 Policy only applies excess of and does not contribute with any other valid and collectable insurance, pursuant to Condition (G)(1) of the 05/06 Primary Policy. Please provide us with a schedule of any applicable insurance available to Refco, Inc., any Subsidiaries, or any Insured Persons which is not otherwise noted in

**this letter.** To the extent that other insurance is available to such Insureds, Axis reserves it right to deny coverage.

Certain of the Noticed Matters allege that Refco improperly denied access to customer accounts as a result of the alleged fraud orchestrated by Mr. Bennett, and others. Endorsement 6 to the 05/06 Primary Policy excludes Claims, in relevant portion:

> Arising out of, based upon or attributable to any actual or alleged rendering of or failure to render, whether by the Company or by any Insured Person, any service for others for a fee; provided, that this exclusion will not apply to a Claim against an Insured Person for a Wrongful Act in connection with the management or supervision of the Company or any division or group therein.

Axis reserves its right to deny coverage for any matter properly excluded by this Endorsement 6.

Refco has been the subject of a well-publicized SEC investigation.[5] Endorsement 14 to the 05/06 Primary Policy notes that the "Insurer will not be liable to make any payment of Loss in connection with a Claim arising out of, based upon or attributable to any [Wells Notice or SEC Investigation]." It appears that several of the Noticed Matters are based upon the SEC Investigation. Accordingly, any Claim "arising out of, based upon or attributable to" the SEC Investigation would be excluded and Axis reserves its rights.

Axis reminds Insureds of Condition (D)(1) of the 05/06 Primary Policy which states, in relevant part:

> The Insureds may not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any Defense Costs without the Insurer's prior written consent. Only those settlement, stipulated judgments and Defense Costs to which the Insurer has consented will be recoverable as Loss under this Policy. The Insurer's consent may not be unreasonably withheld; provided, that the Insurer will be entitled to effectively associate in the defense and the negotiation of any settlement of any Claim.

No settlement of a covered Claim will be binding upon Axis without Axis's express consent and Axis reserves its rights accordingly. Axis specifically notes that consent by an Underlying Insurer is not a substitute for Axis's consent.

Axis further reminds Insureds, especially given the Insured's bankruptcy posture, of Condition (K) to the 05/06 Primary Policy which states that "[n]o assignment of

---

[5] We are also aware that Refco received a Wells Notice during the Policy Period, but are not privy to the subject matter thereof. Please provide us with a copy of the Wells Notice and any response thereto. Axis reserves its rights in connection with this Wells Notice accordingly.

interest under this Policy will bind the Insurer without the Insurer's written consent." Axis specifically notes that consent by an Underlying Insurer is not a substitute for Axis's consent and Axis specifically reserves its rights in this regard.

Finally, Axis notes Condition (H)(1) to the 05/06 Primary Policy which notes, in relevant part, that "the Insureds will give the Insurer all information, assistance and cooperation that the Insurer my reasonably request."

This letter is not intended to be an exhaustive recitation of all potentially applicable terms, conditions or exclusions of the Axis 04/05 Policy or the Axis 05/06 Policy. Nothing in this letter is intended to, or does waive any of Axis's rights, privileges or defenses under the Axis 04/05 Policy or the Axis 05/06 Policy, at law, or in equity, all of which are expressly reserved. Axis reserves the right to alter, supplement or modify this statement of its coverage position as other and additional information may become available. Axis's denial of coverage of the Noticed Matters is necessarily based upon information that has been made available at this point. If you have any other information we should consider, please let us know.

If you have any questions in connection with the foregoing, please do not hesitate to contact the undersigned.

Very truly yours,

KAUFMAN BORGEEST & RYAN LLP

Wayne E. Borgeest

Enclosures
Exhibit A – Noticed Matters
Exhibit B – Axis Warranty

cc:
Tracy Forsyth, Axis
Leslie Ahari, Ross Dixon & Bell LLP, Counsel to US Specialty
Barbara Seymour, D'Amato & Lynch, Counsel to Lexington

## EXHIBIT A

### Schedule of Noticed Litigation

1. Frontpoint Financial Services Fund, LP, On Behalf of Plaintiff and All Others Similarly Situated v. Refco, Inc., Phillip R. Bennett, Gerald M. Sherer, Leo R. Breitman, David V. Harkins, Scott L. Jaeckel, Thomas H. Lee, Ronald L. O'Kelley, Scott A. Schoen, Credit Suisse First Boston LLC, Goldman, Sachs & Co., No. 05-cv-08663-GEL, (S.D.N.Y. 10/11/05).

2. Jonathan Glaubach, Individually and on Behalf of all Others Similarly Situated v. Refco Inc., Phillip R. Bennett, Gerald Sherer, Leo R. Breitman, Nathan Gantcher, David V. Harkins, Scott L. Jaeckel, Thomas H. Lee, Ronald L. O'Kelley and Scott A. Schoen, No. 05-cv-08692, (S.D.N.Y. 10/12/05).

3. Miriam Lieber, Individually And On Behalf of All Others Similarly Situated v. Refco, Inc., Phillip R. Bennett, Gerald M. Sherer, Credit Suisse First Boston LLC, Goldman, Sachs & Co., Banc of America Securities, LLC., Merrilly Lynch, Pierce, Fenner & Smith Incorporated, Deutsche Bank Securities, Inc., J.P. Morgan Securities Inc., and Grant Thornton LLP, No. 05-cv-08667-LAP, (S.D.N.Y. 10/12/05).

4. United States of America v. Phillip R. Bennett, No. 05-MAG-1720, (S.D.N.Y. 10/12/05).

5. Todd Weiss, Individually and On Behalf of All Others Similarly Situated v. Phillip R. Bennett and Gerald M. Sherer, No. 05-cv-08691-GEL, (S.D.N.Y. 10/12/05).

6. Varun Mehta, Derivatively on Behalf of Refco Inc. v. Phillip R. Bennett, William J. Sexton, Gerald M. Sherer, Joseph J. Murphy, Leo R. Breitman, Nathan Gantcher, David V. Harkins, Scott L. Jaeckel, Thomas H. Lee, Ronald L. O'Kelley, Scott A. Schoen, Credit Suisse First Boston, Goldman, Sachs & Co., Banc Of America Securities LLC, Deutsche Bank Securities, JP Morgan, Merrill Lynch & Co., Sandler O'Neill & Partners, L.P., HSBC And Thomas H. Lee Partners, L.P., and Refco, Inc., A Delaware corporation, No. 05-cv-08748, (S.D.N.Y. 10/14/05).

7. Anthony L. Wakefield, Individually and on Behalf of All Others Similarly Situated v. Refco, Inc., Phillip R. Bennett, Gerald J. Sherer, Leo R. Breitman, Nathan Gantcher, David V. Harkins, Scott L. Jaeckel, Thomas H. Lee, Ronald L. O'Kelley, Scott A. Schoen, Credit Suisse First Boston LLC, Goldman, Sachs & Co., Banc Of America Securities, LLC, Merrill Lynch, Pierce, Fenner & Smith Inc. Deutsche Bank Securities, Inc., J.P. Morgan Securities Inc., Sandler O'Neill

& Partners, L.P., HSBC Securities (USA) Inc., William Blaire & Company, L.L.C., Harris Nesbitt Corp., CMG Institutional Trading, LLC, Samuel A. Ramirez & Company, Inc., Muriel Siebert & Co., Inc., The Williams Capital Group, L.P., and Utendahl Capital Partners, L.P., No. 05-cv-08742-GEL, (S.D.N.Y. 10/14/05).

8.   Banesco Holding C.A., Banesco International Bank Corp., Banesco International Bank Inc. and Banesco Banco Universal C.A. Panama Branch v. Refco, Inc. and Refco Capital Markets, Ltd., No. 05603681 (Supreme Court of New York, 10/17/05).

9.   Miura Financial Services v. Refco, Inc. and Refco Capital Markets, Ltd., No. 05603682 (Supreme Court of New York, 10/17/05).

10.  Multiplicas Casa De Bolsa v. Refco, Inc. and Refco Capital Markets, Ltd., No. 05603683 (Supreme Court of New York, 10/17/05).

11.  Jacob Baker, Individually and On Behalf of All Others Similarly Situated v. Phillip R. Bennett and Gerald M. Sherer, No. 05-cv-08923, (S.D.N.Y. 10/19/05).

12.  Craig Becker, On Behalf of Himself and All Others Similarly Situated v. Refco, Inc., Phillip R. Bennett, Gerald M. Sherer, Leo R. Brietman, David H. Harkins, Scott L. Jaeckel, Thomas H. Lee, Ronald L. O'Kelley, Scott A. Schoen, Grant Thornton, LLP, Credit Suisse First Boston LLC, Goldman, Sachs & Co., Banc of America Securities LLC, Liberty Corner Capital, Refco Group Holdings Inc., No. 05-cv-08929-GEL, (S.D.N.Y. 10/20/05).

13.  Bruce Nathanson, Individually and On Behalf of All Others Similarly Situated v. Phillip R. Bennett, Gerald M. Sherer, Leo R. Breitman, Nathan Gantcher, David V. Harkins, Scott L. Jaeckel, Thomas H. Lee, Ronald L. O'Kelley, Scott A. Schoen, Grant Thornton LLP, Credit Suisse First Boston, Goldman, Sachs & Co., Banc of America Securities LLC, Merrill Lynch, Pierce, Fenner & Smith Incorporated, Deutsche Bank Securities, Inc., JP Morgan Securities Inc., Liberty Corner Capital, and Refco Group Holdings Inc., No. 05-cv-08926-GEL, (S.D.N.Y. 10/20/05).

14.  American Financial International Group – Asia, LLC, individually and on behalf of all other similarly situated v. Refco, Inc., Refco F/X Associates, LLC, Phillip R. Bennett and Does 1 through 50, et al., No. 05-cv-08988-PKC, (S.D.N.Y. 10/21/05).

15.  Ravindra Mettupatti v. Phillip R. Bennett, Gerald M. Sherer, Leo R. Breitman, Nathan Gantcher, David Harkins, Scott L. Jaeckel, Thomas Lee, Ronald L.

O'Kelley, Scott A. Schoen,  Credit Suisse First Boston LLC, Goldman, Sachs & Co., Banc of America Securities LLC, Deutsche Bank Securities Inc., JP Morgan Securities Inc., Pierce, Fenner & Smith Inc., No. 05-cv-09048,  (S.D.N.Y. 10/24/05).

16. Todd Weiss, Individually and On Behalf of All Others Similarly Situated v. Phillip R. Bennett and Gerald M. Sherer, No. 05-cv-09126, (S.D.N.Y. 10/26/05).

17. Bankruptcy Trust Of Gerard Sillam, Gerard Sillam v. Refco Group LLC, Refco Overseas Ltd., Phillip Bennett, Refco Group Holdings Inc, Liberty Corner Capital, New York Stock Exchange Inc, Grant Thornton LLP, Grant Thornton UK LLP, Thomas H Lee Partners LP, Thomas H Lee Partners Fund V, Thomas H Lee, Scott A Schoen, David V Harkins, Gerald M Sherer, Leo R Breitman, Scott Jaeckel, Nathan Gantcher, Ronald O Kelley, Halim Saad, Dennis A Klejna, Mark Slade, Julian Courtney, Richard Reinert, David Campbell, Credit Suisse First Boston LLC, Goldman Sachs & Co, Bank Of America Securities LLC, Merrill Lynch Pierce Fenner & Smith Inc, Deutsche Bank Securities Inc, JP Morgan Securities Inc, Sandler O Neil & Partners LP, HSBC Securities USA Inc, William Blair & Company LLC, Harris Nesbitt Corp, CMG Institutional Trading LLC, Samuel A Ramirez & Company Inc., Muriel Siebert & Co Inc, The William Capital GLP, Utendahl Capital Partners, et al., No. 05603931 (Supreme Court of New York 11/04/05).

18. Scott K. Weit, Individually and On Behalf of All Others Similarly Situated v Phillip R. Bennett, Gerald M. Sherer, Leo R. Breitman, David V. Harkins, Scott L. Jaeckel, Thomas H. Lee, Ronald L. O'Kelley, Scott A. Schoen, Nathan Gantcher, Credit Suisse First Boston, Goldman, Sachs & Co., Grant Thornton LLP, Banc of  America Securities LLC, Merrill Lynch Pierce, Fenner & Smith Inc., Deutsche Bank Securities, Inc., J.P. Morgan Securities, Inc., Sandler O'Neill & Partners, L.P., HSBC Securities (USA) Inc., William Blair & Company, L.L.C., Harris Nesbitt Corp., CMG  Institutional Trading LLC, Samuel A. Ramirez & Company, Inc., Muriel Siebert & Co., Inc., The Williams Capital Group, L.P., Utendahl Capital Partners, L.P., Liberty Corner Capital, and Refco Group Holdings, Inc., No. 05-cv-09611-GEL, (S.D.N.Y. 11/11/05).

19. Bawag P.S.K. Bank Für Arbeit Und Wirtschaft Und Österreichische Postsparkasse Aktiengesellschaft v. Refco, Inc.; Refco Group Holdings, Inc.; The Phillip R. Bennett Three Year Annuity Trust; Refco Capital Markets, Ltd.; Refco Group Ltd., LLC; Bersec International LLC; Kroeck & Associates, LLC; Marshall Metals LLC; New Refco Group Ltd., LLC; Refco Administration LLC; Refco Capital LLC; Refco Capital Holdings LLC; Refco Capital Management LLC; Refco Capital Trading LLC; Refco Finance Inc.; Refco Financial LLC; Refco Fixed Assets Management LLC; Refco F/X Associates LLC; Refco Global Capital Management LLC; Refco Global Finance Ltd.; Refco Global Futures LLC; Refco Global Holdings LLC; Refco Information Services LLC; Refco

Mortgage Securities, LLC; Refco Regulated Companies, LLC; Summitt Management, LLC; Refco Securities LLC; Refco Clearing LLC; Phillip R. Bennett; John Does 1-10; And XYZ Corporations 1-10, The Last Two Names Being Fictitious, Inc., et al., No. 05-03161-rdd (Bankr. S.D.N.Y., 11/16/05).

20. Markwood Investments v. Refco Capital Markets, Ltd. and Refco Securities LLC, No. 05-03166-rdd (Bankr. S.D.N.Y., 11/17/05).

21. Banco De America Central, S.A. v. Refco Capital Markets, Ltd., No. 05-03171-rdd (Bankr. S.D.N.Y., 11/18/05).

22. BAC International Banks, Inc. v. Refco Capital Markets, Ltd., No. 05-03170-rdd (Bankr. S.D.N.Y., 11/18/05).

23. Reserve Invest (Cyprus) Ltd. v. Refco Capital Markets, Ltd., Michael W. Morrison, and Richard Heis, Michael W. Morrison, and Richard Heis, No. 05-03168-rdd (Bankr. S.D.N.Y., 11/18/05).

24. City of Pontiac General Employees' Retirement System, On Behalf of Itself and All Others Similarly Situated v. Phillip R. Bennett, Thomas H. Lee Partners, L.P., Thomas H. Lee, Gerald M. Sherer, Scott A. Schoen, Bank of America Corp., Banc of America Securities LLC, Deutsche Bank AG, Deutsche Banc Securities, Inc., Credit Suisse Group, Credit Suisse First Boston LLC, Goldman Sachs Group, Inc., Goldman Sachs & Co., J.P. Morgan Securities, Inc., J.P. Morgan Chase & Co., Merrilly Lynch, Pierce, Fenner & Smith, Inc., Merrill Lynch & Co., Inc. Sandler O'Neill & Partners, L.P., HSBC Securities (USA) Inc., HSBC Holdings plc and Grant Thornton LLP, No. 05-cv-09941, (S.D.N.Y. 11/23/05).

**EXHIBIT B**

Axis Warranty[1]

 REFCO

Refco Group Ltd., LLC
550 West Jackson Boulevard
Suite 1500
Chicago, IL 60661
ph 312 788.2000
www.refco.com

January 14, 2005

Axis
Connell Corporate Park
Three Connell Drive
Berkeley Heights, NJ 07922

To Whom It May Concern:

With respect to the 2ⁿᵈ excess layer of insurance for Axis Reinsurance Company the undersigned officer of Refco Group, Ltd., LLC declares that the following statements are true:

    a.  No person(s) or entity(ies) proposed for this insurance is cognizant of any fact, circumstance, situation, act, error or omission which he/she/it has reason to suppose might afford grounds for any Claim, as such term is defined within the Policy, such as would fall within the scope of the proposed insurance, EXCEPT:

            *See attached*

    b.  No person(s) or entity(ies) proposed for this insurance is cognizant of any inquiry, investigation or communication which he/she/it has reason to suppose might give rise to a Claim, as such term is defined within the Policy, such as would fall within the scope of the proposed insurance.

It is agreed by the undersigned on behalf of all insureds under the Policy, that with respect to the above statements, that if such knowledge exists, any claim arising therefrom is excluded from the proposed insurance.

This letter, together with other documents and information publicly available to and obtained by the Insurer, shall be deemed incorporated into and become part of the Application and the Policy.

Company name: *Refco Group STD. LLC*

Signature: _____

Title:        *President & CEO.*
    (Chairman of the Board or President)

Date:        *Jan 21. 2005.*

---

[1] Also attached to the Axis Warranty, but not included here are: (1) a January 14, 2005 memo from Ellen Brooks to Phillip Bennett requesting Bennett complete the warranty; and (2) a January 14, 2005 letter from Grant Cornehls to Ellen Brooks describing and attaching the <u>Louis Capital Markets, L.P. v. Refco Group Ltd., LLC, et al.</u> suit. It appears the letter and suit were both attached to the memo sent to Bennett. Axis does not contend that the <u>Louis Capital Markets</u> suit is related to the Noticed Matters.

# EXHIBIT H

```
┌─────────────────────────────┐
│ USDC SDNY                   │
│ DOCUMENT                    │
│ ELECTRONICALLY FILED        │
│ DOC #: _____    │
│ DATE FILED: NOV 1 0 2005    │
└─────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA                :
                                        :     INDICTMENT
        -v-                             :
                                        :   05 CRIM. 1192
PHILLIP R. BENNETT,                     :
                                        :
                Defendant.              :
                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## COUNT ONE

(Conspiracy To Commit Securities Fraud, Wire Fraud,
And To Make False Filings With The SEC)

The Grand Jury charges:

### RELEVANT ENTITIES AND PERSONS

1.  At certain times relevant to this Indictment,
Refco, Inc. was a Delaware corporation with its principal place
of business in New York, New York.  From at least the mid-1990s,
the business of Refco, Inc. and its predecessor entities included
providing execution and clearing services for exchange-traded
derivatives and providing prime brokerage services in the fixed
income and foreign exchange markets.  Refco, Inc. held its
initial public offering of common stock on or about August 10,
2005.  Prior to on or about August 10, 2005, Refco, Inc.'s
predecessor entities were privately held.  Refco, Inc. and its
predecessor entities are referred to herein collectively as
"Refco."

Judge Buchwald   1



2.   At all times relevant to this Indictment, PHILLIP R. BENNETT, the defendant, was the President and Chief Executive Officer of Refco.  At all times relevant to this Indictment, BENNETT had a substantial ownership interest in Refco, both directly and indirectly.

3.   At all times relevant to this Indictment, Refco Group Holdings, Inc. ("RGHI") was a privately-held Delaware corporation that was controlled by PHILLIP R. BENNETT, the defendant, and at various times owned in whole or in part by BENNETT.  At all times relevant to this Indictment, RGHI held a substantial ownership interest in Refco.

**THE SCHEME TO DEFRAUD**

4.   From at least as early as in or about the late 1990s, PHILLIP R. BENNETT, the defendant, together with others known and unknown, sought to hide from, among others, Refco's auditors and investors, losses sustained by Refco through its own and its customers' trading in the financial markets.  To that end, BENNETT transferred losses from Refco to a company controlled by BENNETT, directed a repeated series of transactions designed to conceal those losses at year- and quarter-end from Refco's auditors and others, and caused Refco to make false and fraudulent public filings with the United States Securities and Exchange Commission ("SEC").  This fraudulent scheme culminated

2

in the August 2005 initial public offering of stock ("IPO") in Refco, Inc., in which the public purchased approximately $583 million of Refco common stock based on a false and fraudulent registration statement.

### Sources Of The RGHI Receivable

5.   During the 1990's, Refco extended credit to customers, allowing customers to trade securities and commodities in accounts held at Refco.  During this time, certain Refco customers to whom Refco had extended credit sustained hundreds of millions of dollars of market losses in their Refco accounts. When the customers were unable to make payments on the credit Refco had extended, Refco liquidated certain of the positions and assumed the resulting losses in the customers' accounts.  Rather than write off these losses on Refco's books, PHILLIP R. BENNETT, the defendant, caused these and other losses to be transferred to RGHI, with the result that Refco's books showed a large receivable owed by RGHI.

### Hiding The Related Party Transactions And Indebtedness

6.   Throughout the period covered by this Indictment, Refco's books were audited by an independent auditing firm on an annual basis, with a fiscal year-end on the last day of February. Among the items the auditing firm examined each year were "related party transactions," and, in particular, transactions between and among Refco and members of Refco's management,

3

including PHILLIP R. BENNETT, the defendant.  Refco and RGHI were related parties.

7.    Beginning in or about 1999, PHILLIP R. BENNETT, the defendant, directed others known and unknown to hide the RGHI receivable from, among others, Refco's auditors, by carrying out a series of transactions in order temporarily to pay down the receivable from RGHI over Refco's fiscal year-end and replace it with a receivable from one or more other entities not related to BENNETT.  BENNETT caused the RGHI receivable to be temporarily transferred to one or more customer accounts not affiliated with BENNETT at every fiscal year-end through the fiscal year-end on February 28, 2005.

8.    Beginning in or about 2004, BENNETT directed others known and unknown to carry out similar series of transactions to hide the RGHI receivable over the end of each quarter.

9.    For example, at the close of Refco's fiscal year ending in February 2004, PHILLIP R. BENNETT, the defendant, caused Refco to carry out the following transactions that temporarily moved all or part of the RGHI receivable to a Refco customer:

a.  On or about February 20, 2004, Refco Capital Markets, Ltd., a Bermuda corporation controlled by Refco, loaned a customer approximately $720 million.  The loan was to be repaid

4

on March 4, 2004.

      b.   On or about the same day, February 20, 2004, the customer loaned approximately $720 million to RGHI.  The repayment date was on or about March 4, 2004.  The loan agreement for this loan was executed by PHILLIP R. BENNETT on behalf of RGHI.  The interest rate on this loan was approximately 75 basis points higher than the interest rate on the loan from Refco Capital Markets to the customer, thereby assuring the customer a profit.

      c.   On or about the same date, PHILLIP R. BENNETT signed a letter of guaranty to the customer on behalf of Refco Group, Ltd., assuring the customer that, should RGHI default on its approximately $720 million obligation to the customer, Refco Group, Ltd. would make the customer whole.

      d.   The approximately $720 million loaned by the customer to RGHI on or about February 20, 2004 was used to pay down RGHI's debt to Refco.  These loans were unwound on or about March 4, 2004, with the result that the approximately $720 million debt was again owed by RGHI to Refco on Refco's books.

    10.   At the close of Refco's fiscal year ending in February 2005, PHILLIP R. BENNETT, the defendant, caused Refco to carry out the following transactions that temporarily moved all or part of the RGHI receivable to a Refco customer:

      a.   On or about February 23, 2005, Refco Capital

5

Markets, Ltd. loaned a customer approximately $345 million. The loan was to be repaid on or about March 8, 2005.

b. On or about the same date, February 23, 2005, the customer loaned RGHI approximately $345 million. The repayment date was on or about March 8, 2005. The loan agreement for this loan was executed by PHILLIP R. BENNETT on behalf of RGHI. The interest rate on this loan was approximately 75 basis points higher than the interest rate on the loan from Refco Capital Markets to the customer, thereby assuring the customer a profit.

c. On or about the same date, PHILLIP R. BENNETT signed a letter of guaranty to the customer on behalf of Refco Group, Ltd., assuring the customer that, should RGHI default on its approximately $345 million obligation to the customer, Refco Group, Ltd. would make the customer whole.

d. The approximately $345 million loaned by the customer to RGHI on or about February 23, 2005 was used to pay down RGHI's debt to Refco. The loans were unwound on or about March 8, 2005, with the result that the approximately $345 million debt was again owed by RGHI to Refco on Refco's books.

11. At the end of Refco's first quarter in 2005, three months before the planned initial public offering of Refco's common stock, PHILLIP R. BENNETT, the defendant, caused Refco to carry out the following transactions that temporarily moved all

or part of the RGHI receivable to a Refco customer:

      a.  On or about May 25, 2005, Refco Capital Markets, Ltd. loaned a customer approximately $450 million. The loan was to be repaid on or about June 6, 2005.

      b.  On or about the same date, May 25, 2005, the customer loaned RGHI approximately $450 million. The repayment date was on or about June 6, 2005. The loan agreement for this loan was executed by PHILLIP R. BENNETT on behalf of RGHI. The interest rate on this loan was approximately 75 basis points higher than the interest rate on the loan from Refco Capital Markets to the customer, thereby assuring the customer a profit.

      c.  On or about the same date, PHILLIP R. BENNETT signed a letter of guaranty to the customer on behalf of Refco Group, Ltd., assuring the customer that, should RGHI default on its approximately $450 million obligation to the customer, Refco Group, Ltd. would make the customer whole.

      d.  The approximately $450 million loaned by the customer to RGHI on or about May 25, 2005 was used to pay down RGHI's debt to Refco. The loans were unwound on or about June 6, 2005, with the result that the approximately $450 million debt was again owed by RGHI to Refco on Refco's books.

### Refco's Public Filings And Publicly Traded Securities

12.  In 2005, Refco registered certain of its securities with the SEC and, with that registration, was required

to make certain additional public filings with the SEC.

13. On or about April 6, 2005, Refco filed an S-4 registration statement with the SEC in connection with its offer to exchange $600 million of senior subordinated notes originally issued in August 2004 for $600 million of senior subordinated notes registered under the Securities Act of 1933. PHILLIP R. BENNETT, the defendant, signed the registration statement on or about April 6, 2005 in New York, New York. Registration of these notes permitted them to be traded publicly.

14. On or about July 19, 2005, as required by the Securities and Exchange Act of 1934 (the "Exchange Act") and applicable rules, Refco filed with the SEC its annual report for the year ended February 28, 2005 on Form 10K. PHILLIP R. BENNETT, the defendant, signed the annual report on or about July 19, 2005 in New York, New York. BENNETT also signed two certifications regarding the annual report. In those certifications, BENNETT attested that he had reviewed the annual report and (a) that it did "not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by th[e] report"; and (b) that "the information contained in the Report fairly present[ed], in all material respects, the financial condition and results of operations of

8

the Company."

15.  On or about August 8, 2005, Refco filed an S-1 registration statement with the SEC in connection with its initial public offering of its common stock.  PHILLIP R. BENNETT, the defendant, signed that registration statement on or about August 8, 2005, in New York, New York.

16.  The S-4 registration statement, 10K annual report, and S-1 registration statement signed by PHILLIP R. BENNETT, the defendant, each required the disclosure of (a) certain transactions between Refco and its management and (b) certain debts owed directly or indirectly by any executive officer of Refco to Refco, during Refco's past fiscal year and, for the registration statements, during Refco's prior two fiscal years. These disclosures were required in order to apprize investors of, among other things, potential conflicts of interest by management.

17.  The S-4 registration statement, 10K annual report, and S-1 registration statement signed by PHILLIP R. BENNETT, the defendant, each failed to disclose the related party transactions and the related party indebtedness between Refco and RGHI outlined above.  In particular, these public filings failed to disclose: (a) the existence of hundreds of millions of dollars of indebtedness by RGHI to Refco during 2004 and 2005; (b) the transactions at quarter- and fiscal year-end during 2004 and 2005

by which RGHI temporarily paid down its debt to Refco, the guaranties by Refco of the third party lenders' loans to RGHI, and the subsequent re-assumption of the debt by RGHI, each of which was a related party transaction required to be disclosed in the public filings.

### Refco's August 2005 IPO

18.   On or about August 10, 2005, in reliance on, among other things, Refco's public filings and the accompanying audited financial statements, the public bought approximately $583 million of Refco's common stock.   PHILLIP R. BENNETT, the defendant, directly and indirectly, sold Refco stock in the IPO valued at more than $100 million, while retaining a substantial ownership interest in Refco.   Following the initial public offering, Refco's common stock was listed on the New York Stock Exchange under ticker symbol "RFX."

### End Of Quarter Transactions In August 2005

19.   In or about late August 2005, after the completion of Refco's IPO, PHILLIP R. BENNETT, the defendant, caused Refco to carry out the following transactions that temporarily moved all or part of the RGHI receivable to a Refco customer:

a.   On or about August 26, 2005, Refco Capital Markets, Ltd. loaned a customer approximately $420 million.   The loan was to be repaid on or about September 6, 2005.

b.   On or about the same date, August 26, 2005,

10

the customer loaned RGHI approximately $420 million. The repayment date was on or about September 6, 2005. The loan agreement for this loan was executed by PHILLIP R. BENNETT on behalf of RGHI.

       c.  On or about the same date, PHILLIP R. BENNETT signed a letter of guaranty to the customer on behalf of Refco Group, Ltd., assuring the customer that, should RGHI default on its approximately $420 million obligation to the customer, Refco Group, Ltd. would make the customer whole.

       d.  The approximately $420 million loaned by the customer to RGHI on or about August 26, 2005 was used to pay down RGHI's debt to Refco. The loans were unwound on or about September 6, 2005, with the result that the approximately $420 million debt was again owed by RGHI to Refco on Refco's books.

### Public Disclosure Of The Related Party Debt

    20.  In or about early October 2005, Refco discovered an approximately $430 million receivable on its books from RGHI. It demanded repayment of the debt by PHILLIP R. BENNETT, the defendant, who repaid Refco approximately $430 million on or about October 10, 2005.

    21.  On or about October 10, 2005, Refco issued a press release announcing the following:

      [Refco] discovered through an internal review a
      receivable owed to the Company by an entity
      controlled by Phillip R. Bennett, Chief Executive
      Officer and Chairman of the Board of Directors, in

11

the amount of approximately $430 million. Mr.
Bennett today repaid the receivable in cash,
including all accrued interest. Based on the
results of the review to date, the Company
believes that the receivable was the result of the
assumption by an entity controlled by Mr. Bennett
of certain historical obligations owed by
unrelated third parties to the Company, which may
have been uncollectible. The Company believes that
all customer funds on deposit are unaffected by
these activities. Independent counsel and forensic
auditors have been retained to assist the Audit
Committee in an investigation of these matters.

22.    Following Refco's announcement of its discovery of

this related party receivable, the market price of Refco stock

plummeted, resulting in a loss of well more than $1 billion in

market capitalization.

23.    On or about October 17, 2005, Refco, Inc. and

twenty-three of its subsidiaries or affiliates filed a petition

in bankruptcy in the United States Bankruptcy Court for the

Southern District of New York.    Refco's common stock was

subsequently delisted by the New York Stock Exchange.

**THE CONSPIRACY**

24.    From in or about the mid-1990s up to in or about

October 2005, in the Southern District of New York and elsewhere,

PHILLIP R. BENNETT, the defendant, and others known and unknown

to the Grand Jury, unlawfully, willfully, and knowingly did

combine, conspire, confederate, and agree together and with each

other to commit offenses against the United States, namely: (a)

to commit fraud in connection with the purchase and sale of

12

securities issued by Refco, in violation of Sections 78j(b) and 78ff of Title 15, United States Code, and Section 240.10b-5 of Title 17, Code of Federal Regulations; (b) to make and cause to be made false and misleading statements of material fact in reports and documents required to be filed with the SEC under the Securities Exchange Act of 1934, and the rules and regulations promulgated thereunder, in violation of Title 15, United States Code, Sections 78o(d) and 78ff; (c) to make and cause to be made false statements in a registration statement filed under the Securities Act of 1933, in violation of Title 15, United States Code, Section 77x; and (d) to commit wire fraud, in violation of Section 1343 of Title 18, United States Code.

<u>OBJECTS OF THE CONSPIRACY</u>

<u>Securities Fraud</u>

25.  It was a part and object of the conspiracy that PHILLIP R. BENNETT, the defendant, and others known and unknown to the Grand Jury, unlawfully, willfully, and knowingly, by the use of the means and instrumentalities of interstate commerce, the mails, and facilities of national securities exchanges, directly and indirectly, would and did use and employ, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices, schemes, and artifices to defraud; (b) making untrue

13

statements of material facts and omitting to state material facts
necessary in order to make the statements made, in the light of
the circumstances under which they were made, not misleading; and
(c) engaging in acts, practices, and courses of business which
operated and would operate as a fraud and deceit upon a person,
in connection with the purchase and sale of the common stock of
Refco, Inc., all in violation of Title 15, United States Code,
Sections 78j(b) and 78ff.

### False Statements In SEC Filings – Exchange Act

26.  It was further a part and object of the conspiracy
that PHILLIP R. BENNETT, the defendant, and others known and
unknown, unlawfully, willfully, and knowingly, in reports and
documents required to be filed with the SEC under the Exchange
Act, and the rules and regulations promulgated thereunder, would
and did make and cause to be made statements which were false and
misleading with respect to material facts, in violation of Title
15, United States Code, Sections 78o(d) and 78ff.

### False Statements In SEC Filings – Securities Act

27.  It was further a part and object of the conspiracy
that PHILLIP R. BENNETT, the defendant, and others known and
unknown, unlawfully, willfully, and knowingly would and did make
and cause to be made, in a registration statement filed with the
SEC under the Securities Act of 1933, untrue statements of
material facts and omit to state material facts required to be

14

stated therein and necessary to make the statements therein not misleading, in violation of Title 15, United States Code, Section 77x.

### Wire Fraud

28. It was further a part and object of the conspiracy that PHILLIP R. BENNETT, the defendant, and others known and unknown to the Grand Jury, unlawfully, willfully, and knowingly, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, all in violation of Title 18, United States Code, Section 1343.

### MEANS AND METHODS OF THE CONSPIRACY

29. Among the means and methods by which PHILLIP R. BENNETT, the defendant, and his co-conspirators would and did carry out the conspiracy were the following:

a.     PHILLIP R. BENNETT, the defendant, and his coconspirators transferred losses incurred by Refco to BENNETT's company, RGHI.

b.     PHILLIP R. BENNETT, the defendant, and his coconspirators concealed the size and related party nature of the

15

debt owed by RGHI to Refco by causing Refco and others to carry out loan transactions over fiscal year-end and fiscal quarter-end dates to move the RGHI receivable to one or more Refco customers.

      c.    PHILLIP R. BENNETT, the defendant, and his coconspirators caused Refco to file false and fraudulent statements with the SEC.

      d.    PHILLIP R. BENNETT, the defendant, and his coconspirators used facilities of interstate commerce, including the use of interstate telephone calls and interstate wire transfers, in furtherance of the objects of the conspiracy.

<u>OVERT ACTS</u>

      30.  In furtherance of the conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

      a.    On or about February 20, 2004, in New York, New York, PHILLIP R. BENNETT, the defendant, signed a guaranty letter on behalf of Refco Group Ltd., LLC. regarding an approximately $720 million loan from a Refco customer to RGHI.

      b.    On or about February 23, 2005, in New York, New York, PHILLIP R. BENNETT, the defendant, signed a guaranty letter on behalf of Refco Group Ltd., LLC. regarding an approximately $345 million loan from a Refco customer to RGHI.

      c.    On or about April 6, 2005, in New York, New

16

York, PHILLIP R. BENNETT, the defendant, signed Refco's S-4 registration statement.

d.   On or about May 25, 2005, in New York, New York, PHILLIP R. BENNETT, the defendant, signed a guaranty letter on behalf of Refco Group Ltd., LLC. regarding an approximately $450 million loan from a Refco customer to RGHI.

e.   On or about July 19, 2005, in New York, New York, PHILLIP R. BENNETT, the defendant, signed Refco's annual report on Form 10K.

f.   On or about August 8, 2005, in New York, New York, PHILLIP R. BENNETT, the defendant, signed Refco's S-1 registration statement.

(Title 18, United States Code, Section 371).

## COUNT TWO

(Securities Fraud)

The Grand Jury further charges:

31.   The allegations contained in paragraphs 1 through 23, 29, and 30 of this Indictment are repeated and realleged as if fully set forth herein.

32.   From in or about the mid-1990s up to in or about October 2005, in the Southern District of New York and elsewhere, PHILLIP R. BENNETT, the defendant, unlawfully, willfully, and knowingly, directly and indirectly, by the use of means and instrumentalities of interstate commerce, the mails, and the

17

facilities of national securities exchanges, did use and employ, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon a person, in connection with the purchase and sale of the common stock of Refco, Inc.

>   (Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; and Title 18, United States Code, Section 2).

### COUNT THREE

(False Filing With The SEC - Exchange Act)

The Grand Jury further charges:

33.  The allegations contained in paragraphs 1 through 23, 29, and 30 of this Indictment are repeated and realleged as if fully set forth herein.

34.  On or about July 19, 2005, in the Southern District of New York and elsewhere, PHILLIP R. BENNETT, the defendant, unlawfully, willfully, and knowingly made and caused to be made statements in a report and document required to be

18

filed with the SEC under the Exchange Act, and the rules and regulations promulgated thereunder, which statements were false and misleading with respect to material facts, to wit, BENNETT and others caused Refco to submit, and aided and abetted the submission of, in New York, New York, to the SEC in Washington, D.C., Refco's Form 10-K.

> (Title 15, United States Code, Sections 78o(d) and 78ff; Title 17, Code of Federal Regulations, Section 240.15d-2; and Title 18, United States Code, Section 2.)

### COUNTS FOUR AND FIVE

(False Filing With The SEC - Securities Act)

The Grand Jury further charges:

35. The allegations contained in paragraphs 1 through 23, 29, and 30 of this Indictment are repeated and realleged as if fully set forth herein.

36. On or about the dates specified below, in the Southern District of New York and elsewhere, PHILLIP R. BENNETT, the defendant, unlawfully, willfully, and knowingly made and caused to be made, in a registration statement filed with the SEC under the Securities Act of 1933, untrue statements of material facts and omitted to state material facts required to be stated therein and necessary to make the statements therein not misleading, to wit, BENNETT and others caused Refco to submit, and aided and abetted the submission of, in New York, New York, to the SEC in Washington, D.C., the following Forms:

19

| COUNT | APPROXIMATE DATE | FORM |
|-------|------------------|------|
| FOUR | April 6, 2005 | S-4 |
| FIVE | August 8, 2005 | S-1 |

(Title 15, United States Code, Section 77x;
and Title 18, United States Code, Section 2.)

## COUNTS SIX THROUGH EIGHT

(Wire Fraud)

The Grand Jury further charges:

37.  The allegations contained in paragraphs 1 through 23, 29, and 30 of this Indictment are repeated and realleged as if fully set forth herein.

38.  On or about the dates set forth below, in the Southern District of New York, PHILLIP R. BENNETT, the defendant, unlawfully, willfully, and knowingly, having devised and intending to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises, transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce, the following writings, signs, signals, and sounds for the purpose of executing such scheme and artifice:

20

| COUNT | APPROXIMATE DATE | WIRE COMMUNICATION |
|---|---|---|
| SIX | April 6, 2005 | Electronic transmission of Refco Form S-4 from New York, New York to Virginia |
| SEVEN | July 19, 2005 | Electronic transmission of Refco Form 10-K from New York, New York to Virginia |
| EIGHT | August 8, 2005 | Electronic transmission of Refco Form S-1 from New York, New York to Virginia |

(Title 18, United States Code, Sections 1343 and 2).

## FORFEITURE ALLEGATION

39.  As a result of committing one or more of the foregoing securities fraud offenses, in violation of Title 15, United States Code, Sections 77x, 78j(b), 78o(d), and 78ff; and Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.15d-2, as alleged in Counts Two, Three, Four, and Five; and wire fraud offenses, in violation of Title 18, United States Code, Section 1343, as alleged in Counts Six, Seven and Eight of this Indictment, PHILLIP R. BENNETT, the defendant, shall forfeit to the United States pursuant to Title 18, United States Code,

21

Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the fraud offenses, including but not limited to the following:

        a.  At least $700 million in United States currency, representing the amount of proceeds obtained as a result of the charged wire and securities fraud offenses.

### Substitute Assets Provision

        b.  If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

        (i)  cannot be located upon the exercise of due diligence;

        (ii)  has been transferred or sold to, or deposited with, a third party;

        (iii)  has been placed beyond the jurisdiction of the court;

        (iv)  has been substantially diminished in value; or

        (v)  has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendants up to the value of the forfeitable property described above including but not limited to

22

the following:

      1.  Any and all right, title and interest in the real property and appurtenances known as 125 Colt Lane, Gladstone, New Jersey 07934; and

      2.  Any and all right, title and interest in the shares of the capital stock of 1001 Tenants Corporation and the proprietary lease for the penthouse apartment located at 1001 Park Avenue, New York, New York 10028.

(Title 18, United States Code, Sections 981, 1343 and Title 15, United States Code, Sections 77x, 78j(b), 78o(d), and 78ff; and Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.15d-2; Title 21, United States, Section 853(p); Title 28, United States Code, Section 2461.)

_____
FOREPERSON

_____
MICHAEL J. GARCIA
United States Attorney

23

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

### UNITED STATES OF AMERICA

– v –

### PHILLIP R. BENNETT,

**Defendant.**

### INDICTMENT

05 Cr.

18 USC §371; 15 USC §§ 78j(b) and 78ff; 17 CFR §
240.10b-5,18 USC § 2; 15 USC § 78o(d) and 78ff, 17 CFR,
§240.15d-2; 18 USC §2; 15 USC , §77x, 18 USC §2; 18
USC 1343, 2

MICHAEL J. GARCIA
United States Attorney.

A TRUE BILL

Foreperson.

*Post 11-1-87*

*11/10/05*
*Filed Ind'*
*Ell' 1J.*