# EXHIBIT J

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

ARCH INSURANCE COMPANY,

        Plaintiff,

       -against-

PHILLIP R. BENNETT, LEO R. BREITMAN, NATHAN
GANTCHER, TONE GRANT, DAVID V. HARKINS,
SCOTT L. JAECKEL, DENNIS A. KLEJNA,
THOMAS H. LEE, SANTO C. MAGGIO, JOSEPH
MURPHY, RONALD L. O'KELLEY, PERRY
ROTKOWITZ, SCOTT A. SCHOEN, WILLIAM M.
SEXTON, GERALD SHERER, PHILIP SILVERMAN,
and ROBERT C. TROSTEN,

        Defendants.

INDEX NO. 600805/06

**REPLY MEMORANDUM IN SUPPORT OF OFFICER DEFENDANTS' MOTION TO
DISMISS OR STAY THE AMENDED COMPLAINT FOR DECLARATORY JUDGMENT**

Ona T. Wang
Helen B. Kim
Joseph L. Chairez (*pro hac vice* to be filed)
BAKER & HOSTETLER LLP
666 Fifth Avenue
New York, NY 10103
Tel: 212-589-4200; Fax: 212-589-4201
*Attorneys for Defendants Dennis Klejna
and Joseph Murphy*

Holly Kulka
HELLER EHRMAN LLP
7 Times Square
New York, NY 10036
Tel: 212-847-8601; Fax: 212-763-7600
*Attorneys for Defendant Philip Silverman*

Stuart I. Friedman
Ivan O. Kline
Elizabeth D. Meacham
FRIEDMAN & WITTENSTEIN
A Professional Corporation
600 Lexington Avenue
New York, NY 10022
Tel: 212-750-8700; Fax: 212-223-8391
*Attorneys for Defendants Gerald Sherer and
William M. Sexton*

Barbara Moses
Rachel Korenblat
MORVILLO, ABRAMOWITZ, GRAND,
IASON, ANELLO & BOHRER, P.C.
565 Fifth Avenue
New York, NY 10071
Tel: 212-856-9600; Fax: 212-856-9494
*Attorneys for Defendant Robert C. Trosten*

Laura Neish
ZUCKERMAN SPAEDER LLP
1540 Broadway, Suite 1604
New York, NY 10036
Tel: 212-704-9600; Fax: 212-704-4256

        -and-

Michael T. Hannafan (*pro hac vice* filed)
Blake T. Hannafan (*pro hac vice* filed)
HANNAFAN & HANNAFAN, LTD.
One East Wacker Drive, Suite 1208
Chicago, IL 60601
Tel: 312-527-0055; Fax: 312-527-0220
*Attorneys for Defendant Tone N. Grant*

# TABLE OF CONTENTS

Page

ARGUMENT ......................................................................................................... 1

I.   THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO ALLEGE A
     JUSTICIABLE CONTROVERSY ........................................................................... 1

     A.   The Entire Complaint Should Be Dismissed As Premature Because No
          Actual Controversy Now Exists Between Arch And Defendants ...................... 1

     B.   At The Very Least, Count III, For A Declaration That The Arch Policy
          Affords No Coverage For Defense Costs, Should Be Dismissed As
          Premature ............................................................................................... 4

     C.   Counts I And II Are Also Not Ripe Because They Are Based On A
          Contention Of Fact – Bennett's Alleged Prior Knowledge – That Will Be
          Determined In The Underlying Matters ......................................................... 6

          1.   Bennett's Alleged Prior Knowledge Will Be Determined In The
               Underlying Matters .......................................................................... 6

          2.   Arch Will Not Be Prejudiced By Dismissal Of Counts I And II .............. 8

          3.   In The Alternative, Counts I And II Should Be Stayed Because
               Bennett Will Invoke His Fifth Amendment Rights ................................ 10

II.  COUNT I SHOULD ALSO BE DISMISSED OR STAYED BECAUSE OF THE
     AWAC DISPUTE RESOLUTION CLAUSE, WHICH BINDS ARCH ........................ 10

CONCLUSION ..................................................................................................... 15

TABLE OF AUTHORITIES

Page(s)

CASES

*ACandS, Inc. v. Aetna Cas. & Sur. Co.*,
  666 F.2d 819 (3d Cir. 1981)................................................................................. 3

*Access Capital, Inc. v. DeCicco*,
  302 A.D.2d 48, 752 N.Y.S.2d 658 (1st Dep't 2002) ......................................... 10

*Allstate Ins. Co. v. Santiago*,
  98 A.D.2d 608, 469 N.Y.S.2d 343 (1st Dep't 1983) ........................................... 7

*Am. Ins. Assoc. v. Chu*,
  64 N.Y.2d 379, 487 N.Y.S.2d 311 (1985) .......................................................... 1

*Bd. of Educ., Utica School Dist. # 1 v. Delle Cese*,
  65 Misc. 2d 473, 318 N.Y.S.2d 46 (Sup. Ct. Oneida Co. 1971)....................... 14

*Certain Underwriters at Lloyd's, London v. St. Joe Minerals Corp.*,
  90 F.3d 671 (2d Cir. 1996)................................................................................. 4

*Clarendon Nat'l Ins. Co. v. Lan*,
  152 F. Supp. 2d 506 (S.D.N.Y. 2001)........................................................... 11, 12

*Continental Casualty Co. v. PPG Indus., Inc.*, No. 86 C 6076, 1987 WL 6601
  (N.D. Ill. Feb. 6, 1987)....................................................................................... 5

*Corbetta Constr. Co. v. George F. Driscoll Co.*,
  17 A.D.2d 176, 233 N.Y.S.2d 225 (1st Dep't 1962) ......................................... 12

*Cutro v. Sheehan Agency, Inc.*,
  96 A.D.2d 669, 466 N.Y.S.2d 733 (3d Dep't 1983) ........................................... 4

*Fagnani v Am. Home Assur. Co.*, 64 N.Y.2d 967, 488 N.Y.S.2d 646 (1985) ................ 5

*First State Ins. Co. v. J&S United Amusement Corp.*,
  67 N.Y.2d 1044, 504 N.Y.S.2d 88 (1986) ...................................................... 8, 9

*General Re Corp. v. Foxe*,
  177 Misc. 2d 867, 678 N.Y.S.2d 459 (Sup. Ct. N.Y. Co. 1998) ...................... 11

*Gulf Underwriters Ins. Co. v. Verizon Commc'ns., Inc.*,
  -- N.Y.S.2d --, 2006 WL 2621039 (1st Dep't Sept. 14, 2006) ......................... 11

*Hanna v. Zumpano*,
  267 A.D.2d 1028, 701 N.Y.S.2d 553 (4th Dep't 1999) .................................... 14

*Household Mfg., Inc. v. Liberty Mutual Ins. Co.*, No. 85 C 8519, 1986 WL 4121
  (N.D. Ill. March 27, 1986)................................................................................... 5

*Kalisch-Jarcho, Inc. v. City of New York*,
  72 N.Y.2d 727, 536 N.Y.S.2d 419 (1988) ........................................................ 14

*Little v. Willis*,
  50 A.D.2d 854, 390 N.Y.S.2d 347 (4th Dep't 1976)..................................... 14, 15

- ii -

TABLE OF AUTHORITIES
(continued)

Page

*Nardi v. Povich*,
   No. 105554/06, 2006 WL 2127714 (Sup. Ct. N.Y. Co. July 31, 2006)
   (Fried, J.) ............................................................................................................. 13

*Nat'l Recreational Prods., Inc. v. Gans*,
   46 A.D. 618, 359 N.Y.S.2d 803 (1st Dep't 1974) ............................................. 12

*Prashker v. United States Guarantee Co.*,
   1 N.Y.2d 584, 154 N.Y.S.2d 910 (1956) ............................................................ 7

*President v. Jenkins*,
   180 N.J. 550, 853 A.2d 247 (2004) .................................................................... 5

*Rhinestone v. New York City Transit Auth.*,
   142 A.D.2d 562, 530 N.Y.S.2d 227 (2d Dep't 1988) ................................... 14, 15

*Smith Barney Shearson Inc. v. Sacharow*,
   91 N.Y.2d 39, 666 N.Y.S.2d 990 (1997) ........................................................... 12

*Special Jet Serv., Inc. v. Federal Ins. Co.*, 83 F.R.D. 596 (W.D. Pa. 1979) ............... 5

*State of New York v. Philip Morris Inc.*,
   30 A.D.3d 26, 813 N.Y.S.2d 71 (1st Dep't 2006) ....................................... 12, 13

*United States v. South-Eastern Underwriters Assn.*,
   322 U.S. 533 (1944) .......................................................................................... 13

*Utica Mutual Ins. Co. v. Gulf Ins. Co.*,
   306 A.D.2d 877, 762 N.Y.S.2d 730 (4th Dep't 2003) ...................................... 13

*Verizon New York Inc. v. Broadview Networks, Inc.*,
   5 Misc. 3d 346, 781 N.Y.S.2d 211 (Sup. Ct. N.Y. Co. 2004) ......................... 13

OTHER AUTHORITIES

18 Couch on Insurance (2d rev. ed. 1983) .................................................................. 5

9 U.S.C. § 2 ................................................................................................................ 13

9 U.S.C. §§ 1 *et seq.* ................................................................................................ 13

Defendants Tone Grant, Dennis A. Klejna, Joseph Murphy, William M. Sexton, Gerald Sherer, Philip Silverman and Robert C. Trosten (collectively, the "Officer Defendants")[1] respectfully submit this Reply Memorandum of Law in support of their motion, pursuant to CPLR 3211 (a)(1), (a)(2) and (a)(7), to dismiss the Amended Complaint For Declaratory Judgment (the "Amended Complaint") in its entirety or, in the alternative, for a stay pursuant to CPLR 2201.

## ARGUMENT

### I. THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO ALLEGE A JUSTICIABLE CONTROVERSY

#### A. The Entire Complaint Should Be Dismissed As Premature Because No Actual Controversy Now Exists Between Arch And Defendants

Arch does not dispute that, in order to maintain a declaratory judgment action, there must be an actual controversy, involving "present, rather than hypothetical, contingent or remote, prejudice to plaintiffs." *Am. Ins. Assoc. v. Chu,* 64 N.Y.2d 379, 383, 487 N.Y.S.2d 311 (1985). Nor does Arch dispute that it is a fourth-tier excess carrier, with no obligation to provide any coverage until $40 million in Underlying Insurance[2] has been exhausted. Arch maintains, however, that there is presently an "actual controversy" between it and the Defendants based on the amount of damages claimed by the plaintiffs in certain of the Underlying Matters. (Opp. at 9.) But Arch ignores a number of critical facts demonstrating that it is entirely speculative whether the Arch Policy will ever be triggered.

---

[1] The Officer Defendants are all former officers of Refco, Inc. ("Refco") or its affiliates. In addition to the Officer Defendants, the Defendants in this action include former Refco CEO Phillip Bennett, Santo C. Maggio, Perry Rotkowitz, and seven former directors of Refco. With respect to Rotkowitz, Arch has indicated that it would not oppose Rotkowitz's motion to dismiss to the extent that his motion is without prejudice. (Opp. at 6 n.3.)

[2] All terms defined in the Memorandum in Support of Officer Defendants' Motion to Dismiss or Stay, dated September 18, 2006 ("Initial Br."), are assigned the same meaning here. "Opp." refers to Arch's Memorandum in Opposition to the Officer Defendants' Motion to Dismiss or Stay.

First, there has been no showing as to which, if any, of the claims in the Underlying Matters has any merit as against one or more of the Defendants in this action, many of whom have moved to dismiss some or all of the claims against them. Indeed, the Amended Complaint does not even allege that Defendants' liability will exceed $40 million so as to trigger the Arch Policy.

Equally significantly, the plaintiffs in the Underlying Matters have many sources of recovery other than from the Defendants herein (the "Officer/Director Defendants"). To begin, the Officer/Director Defendants are far from the only defendants in the Underlying Matters. Rather, there are numerous "deep pocket" defendants who are not insureds under the Arch Policy (or any of the Underlying Insurance), thus significantly reducing the realistic exposure of the Officer/Director Defendants. For example, in the consolidated class action securities litigation (the "Securities Litigation") referred to by Arch (Opp. at 9), there are 28 defendants other than the Officer/Director Defendants, including Refco's auditing firm (Grant Thornton) and fifteen investment banking firms that served as underwriters for Refco's securities. (*See* Reply Affirmation of Rachel Korenblat ("Korenblat Reply Aff."), Ex. 1.)

Additionally, one of the non-Officer/Director Defendants, BAWAG P.S.K. Bank für Arbeit und Wirschaft und Österreichische Postsparkasse Aktiengesellschaft ("BAWAG"), has already reached a "global settlement" with the creditors committee in the Refco bankruptcy, the plaintiffs in the Securities Litigation, and Thomas H. Lee entities (the plaintiffs in another of the Underlying Matters specifically cited by Arch (Opp. at 9)) pursuant to which BAWAG will make payments of at least $683 million. (*See* Korenblat Reply Aff., Ex. 2.) At least $108 million from BAWAG's payments will go to the plaintiffs in the Securities Litigation; at least $84 million will go to Thomas H. Lee entities; and, remaining amounts will go to the Refco creditors, many of whom are the plaintiffs in other Underlying Matters. *Id.* Further, the Refco creditors will be receiving significant payments in the bankruptcy proceedings from other Refco assets, which will greatly reduce their damages. For example, Refco senior subordinated

- 2 -

noteholders, who are part of the plaintiff class in the Securities Litigation, are expected to receive a distribution which constitutes 83.4% of the outstanding balance on these notes. (*Id.* at p. 55 and pp. 12-13 of the Chapter 11 Plan of Refco Inc. and Certain of its Direct and Indirect Subsidiaries.)

Accordingly, notwithstanding the amounts sued for in the Underlying Matters, there is substantial uncertainty as to whether the Arch Policy will ever be triggered, and thus a decision on Arch's claims may well be merely advisory.

None of the cases cited by Arch compels a finding that its action is justiciable. Rather, each of those cases turned on the particular facts before the court, which showed a sufficient likelihood that the policy or policies at issue would be triggered. None of those cases allowed a fourth-tier excess carrier to bring its own declaratory judgment action prior to exhaustion of even the primary insurance, and, none appears to have allowed any insurer with a coverage threshold anywhere near $40 million to maintain such a declaratory judgment action based solely on the amount of damages claimed in an underlying action.

Finally, Arch essentially ignores the public policy concerns raised in our Initial Brief (p. 15) as to the unnecessary burden Arch seeks to impose on the individuals who are supposed to be the beneficiaries of the Arch Policy. Rather, Arch asserts, without elaboration, that "significant policy considerations" support its request for declaratory relief.[3] In actuality, there is no need for Arch to now maintain this action. Most telling in this regard is the fact that none of the other excess insurers in the tower of Directors & Officers liability insurance, including the three beneath Arch, has felt it necessary to bring an action against any of the Officer/Director Defendants, even though each could seek to assert some or all of the same claims as are brought by Arch.

---

[3] The case cited by Arch, *ACandS, Inc. v. Aetna Cas. & Sur. Co.*, 666 F.2d 819 (3d Cir. 1981), is factually inapposite, as it involved a dispute between two insurers as to their obligations to a single insured that was a defendant in several underlying actions.

- 3 -

In sum, the underlying primary policy limits of the U.S. Specialty Policy have yet to be exhausted, none of the excess policies has been triggered, and it remains purely speculative whether Arch's $10 million fourth-tier excess policy will ever be tapped. Thus, Arch's action is premature, and should be dismissed. *See, e.g., Certain Underwriters at Lloyd's, London v. St. Joe Minerals Corp.,* 90 F.3d 671, 673, 675 (2d Cir. 1996); *Cutro v. Sheehan Agency, Inc.,* 96 A.D.2d 669, 466 N.Y.S.2d 733, 734 (3d Dep't 1983).

B.    **At The Very Least, Count III, For A Declaration That The Arch Policy Affords No Coverage For Defense Costs, Should Be Dismissed As Premature**

In our Initial Brief (p. 16), we showed that Count III of the Amended Complaint fails to allege an "actual controversy," as it is entirely speculative whether Arch's fourth-tier excess policy will ever be triggered for defense fees or costs incurred by Defendants. In response, Arch contends that, in view of the number of Underlying Matters and the number of law firms involved, defense costs alone could exceed the $40 million threshold required to trigger the Arch policy. (Opp. at 12.) But even if this unlikely scenario were ever to occur, it would occur years from now, and thus Arch's claim remains premature. At present, the $10 million primary policy is not even close to being exhausted. U.S. Specialty Insurance Company recently made payments totaling approximately $1.2 million, covering an additional two month period, thereby bringing its total payments to approximately $4.9 million. (*See* Korenblat Reply Aff. Ex. 3.) Even if the pace of $600,000 per month of defense costs continues,[4] which is by no means certain or even likely, the $40 million threshold required to trigger the Arch Policy will not be met for another five years.

Arch also argues that Count III presents an actual controversy because the Defendants' potential liability, combined with their Defense Costs, could exceed the $40 million of Underlying Insurance. (Opp. at 12.) Arch has not articulated, however, how this could cause its

---

[4]   The number of law firms involved may soon decrease since, as noted above, many of the Officer/Director Defendants have moved to dismiss some or all of the claims against them.

policy to be triggered for Defense Costs, and it is plainly speculative as to any such scenario ever occurring.

In any event, even if this Court were to conclude that Count III is somehow justiciable, it should stay Count III pursuant to CPLR 2201. Count III is premised on the definition of "Loss" in the policy issued by Lexington Insurance Company ("Lexington"), the first-tier excess carrier. It is plainly preferable to have the interpretation of the Lexington Policy adjudicated in an action to which Lexington is a party.[5] In that regard, on October 17, certain of the Officer/Director Defendants filed an action against Lexington in the Superior Court of the State of New Jersey, Hudson County, seeking a declaration that the Lexington Policy covers Defense Costs. (*See* Korenblat Aff. Ex. 4.)[6] The other Officer/Director Defendants have been named as additional defendants in that action. In these circumstances, this Court should stay Count III, so that the

---

[5] Indeed, as a general proposition, courts and commentators agree that additional or excess insurers are not necessary parties to a suit between an insured and its primary or first layer excess insurer. *See, e.g.*, *Continental Casualty Co. v. PPG Indus., Inc.*, No. 86 C 6076, 1987 WL 6601, at * 2 (N.D. Ill. Feb. 6, 1987); *Household Mfg., Inc. v. Liberty Mutual Ins. Co.*, No. 85 C 8519, 1986 WL 4121, at *3 (N.D. Ill. March 27, 1986); 18 Couch on Insurance § 74:618 (2d rev. ed. 1983) ("An excess insurer is not a necessary party to a declaratory judgment proceeding brought by the primary insurer.") *Cf. Special Jet Serv., Inc. v. Federal Ins. Co.*, 83 F.R.D. 596, 599 (W.D. Pa. 1979) (citing 18 Couch, supra, at § 74:505) ("'The fact that an insurer is concerned with the results of a lawsuit does not mean that it is . . . a necessary party therein.'"). Moreover, where, as here, the language of the Lexington Policy concerning coverage of Defense Costs is ambiguous on its face, the New Jersey court may review extrinsic evidence submitted by the parties to resolve the ambiguity so it comports with the reasonable expectations of the insureds. *See Fagnani v Am. Home Assur. Co.*, 64 N.Y.2d 967, 488 N.Y.S.2d 646 (1985); *President v. Jenkins*, 180 N.J. 550, 853 A.2d 247 (2004). Clearly, Arch, as a non-party to the Lexington Policy, is in no position to submit such extrinsic evidence. It is Lexington, not Arch, that is in the best position to litigate the meaning of the Lexington Policy.

[6] As set forth in our Initial Brief (p. 5), while Lexington has agreed to advance Defense Costs once the U.S. Specialty Policy is exhausted, it has reserved its rights to seek repayment of such advances on the ground that Defense Costs are not covered. In contrast to the Arch Policy, there is little question but that the Lexington Policy will be triggered for Defense Costs.

question of whether the Lexington Policy covers Defense Costs may be determined in the action against Lexington.[7]

C. **Counts I And II Are Also Not Ripe Because They Are Based On A Contention Of Fact – Bennett's Alleged Prior Knowledge – That Will Be Determined In The Underlying Matters**

1. **Bennett's Alleged Prior Knowledge Will Be Determined In The Underlying Matters**

Our Initial Brief (pp. 18-19) set forth the well-established rule that an action for declaratory relief regarding coverage may not be maintained where coverage turns on a factual issue that will be determined in the underlying action. This rule applies squarely to Counts I and II in the Amended Complaint, which seek a declaration that the Arch Policy does not provide coverage for any of the Underlying Matters based on Arch's contention that Bennett possessed knowledge of facts regarding Refco so as to trigger "prior-knowledge" exclusions in the AWAC and Arch Policies.

Arch seeks to downplay or obscure the significance of Bennett's "prior knowledge" in assessing whether the prior-knowledge exclusions are applicable. Arch argues that the exclusions turn on whether the Underlying Matters are claims "arising out of, based upon or attributable to" any "act, error, omission, fact, matter or circumstance that might give rise to a Claim" and of which "any Insured as of August 11, 2005 has any knowledge." (Opp. at 14-15.) However, Arch ignores the fact that the "knowledge" of an insured that it must prove for this purpose in this case is the very same "knowledge" that is at issue in the Underlying Matters.

Arch cannot dispute that Counts I and II of its Amended Complaint are premised on allegations as to what Bennett knew and when he knew it. The Amended Complaint specifically alleges (see Am. Compl. ¶¶ 48, 77, 81) that Bennett had knowledge as of August 11, 2005 of facts and circumstances relating to Refco's financial condition so as to trigger the prior

---

[7] As set forth in our Initial Brief (p. 16 n.8), if not dismissed, all Counts in the Amended Complaint should also be stayed under CPLR 2201 until such time as the Arch Policy is close to being triggered, to avoid prejudice to the Defendants.

- 6 -

knowledge exclusions.[8]  In addition, Arch cannot dispute that Bennett's knowledge of Refco's financial condition is one of the key factual questions that must be determined in the Underlying Matters.  Indeed, the allegations against Bennett in the Amended Complaint are essentially the same as those made against him in the Underlying Matters.  Accordingly, the issue of Bennett's knowledge must be determined in the Underlying Matters, not in this action for declaratory relief.  *See, e.g., Allstate Ins. Co. v. Santiago*, 98 A.D.2d 608, 469 N.Y.S.2d 343 (1st Dep't 1983).

Arch also contends that dismissal of Counts I and II is not required because the factual issue they raise is "far narrower" than the factual issues in the Underlying Matters.  (Opp. at 13.)  However, the presence of additional factual issues in the Underlying Matters is irrelevant. The test is whether the factual matter at issue in the coverage action will be determined in the underlying action, as will occur here.  *See, e.g., Prashker v. United States Guarantee Co.*, 1 N.Y.2d 584, 590-93, 154 N.Y.S.2d 910, 915-17 (1956).

Arch's position also ignores the very substantial risk of inconsistent factual findings if the declaratory action proceeds, which risk is just as great even when there are additional factual issues in the underlying actions.  As the Court of Appeals has recognized in dismissing a request for declaratory relief:

> The facts might be decided in one manner in the declaratory judgment action, and differently in the principal actions, with the consequence that the liability of the carrier or lack of it might be decided on facts other than those to be established between the parties in the main action or actions.

*Id.* at 591, 154 N.Y.S.2d at 915.

Notably, Arch has not cited a single relevant case in support of its position.  Rather, Arch cites five out-of-state cases applying the laws of other jurisdictions (Opp. at 15-16), each of

---

[8]  While Arch cites (Opp. at 15, 16) to the language in the policies as to the knowledge of "any Insured" precluding coverage, it has not alleged prior knowledge by any other Defendant. (Am. Compl. at ¶¶ 48, 77, 81.)  Moreover, even if Arch does seek to amend its complaint so as to add allegations as to prior knowledge of any other Insured, the analysis set forth above and in our Initial Brief will still be fully applicable as long as that person's knowledge is also an issue in the Underlying Matters.

- 7 -

which addressed whether the particular facts known to an insured were sufficient to trigger a "prior knowledge" exclusion – an issue not germane to this motion. None of these cases discusses justiciability, or whether declaratory relief regarding "knowledge" is foreclosed by the inevitable litigation of that very same "knowledge" in the underlying action.

Ultimately, Arch cannot escape the legion of New York cases cited by Defendants, holding that a declaratory judgment of an insurer's obligation to indemnify may be granted before the trial of the underlying action "only if it can be concluded as a matter of law that there is no possible factual or legal basis on which the insurer may eventually be held liable under its policy." (*See* Initial Br. at 17.) Here, the possibility exists that Bennett did not have "prior knowledge" as alleged by Arch, which would render the exclusions on which Arch relies inapplicable. That factual issue must be resolved in the Underlying Matters.

### 2. Arch Will Not Be Prejudiced By Dismissal Of Counts I And II

Arch contends in the alternative that Counts I and II should not be dismissed because it will be left without an adequate remedy. (Opp. at 16.) Arch is wrong.

Of course, this Court need not even address this contention, since the fact that Bennett's prior knowledge will be determined in the Underlying Matters requires dismissal of these counts for non-justiciability in any event, as we have shown above. *First State Ins. Co. v. J&S United Amusement Corp.*, 67 N.Y.2d 1044, 504 N.Y.S.2d 88 (1986), relied on by Arch, is not to the contrary. In contrast to the case at bar, the exclusion on which the insurer sought to rely in *First State* turned on a factual issue that would not necessarily be determined in the underlying action. Thus, the insurer was given the opportunity to avoid dismissal if it could show that it would consequently be left without an adequate remedy. *Id.* at 1046, 504 N.Y.S.2d at 89.

Even if the availability of another remedy for Arch must be considered, Counts I and II must still be dismissed. Arch has already denied coverage based on the prior knowledge exclusions. *See* Opposition Affirmation of John H. Eickemeyer ("Eickemeyer Aff."), Ex. 1 (denial letter), pp. 12-15. In the context, its remedy is quite clear and adequate: in

- 8 -

conformance with its denial letter, it may simply refuse to indemnify any of the Defendants when and if their liability ever does exceed $40 million so as to trigger the Arch Policy. *See, e.g., First State Ins. Co.*, 67 N.Y.2d at 1046, 504 N.Y.S.2d at 89 (defense of indemnity action by insured is normal remedy for insurer relying on an exclusion).

Arch asserts nonetheless that it may not have an adequate remedy if Counts I and II are dismissed because settlement demands in the Underlying Matters "could occur at any time," and it will then be forced to address such demands "in a climate of substantial uncertainty about the key coverage issues." (Opp. at 17.) However, that identical argument could be made by *any* insurer seeking to pursue a declaratory judgment action to establish the absence of coverage, as there could always be "settlement demands" in any underlying action. Indeed, the entire line of cases cited above and in our Initial Brief as to the non-justiciability of claims such as Counts I and II would be rendered meaningless if Arch's argument were accepted.[9]

Not surprisingly, Arch has not cited to a single case from New York to support its argument as to the absence of an adequate remedy.[10] Moreover, as noted above, the fact that the other excess carriers which have denied coverage based on one or more of the same exclusions cited by Arch have not felt compelled to commence a declaratory judgment action belies any claim of prejudice by Arch.

In contrast to the lack of harm to Arch from a dismissal of Counts I and II, the Defendants will be burdened with needless, extensive, and likely duplicative, costs should these claims go forward. It is indisputable that this declaratory action will involve many of the same

---

[9] If Arch ever does face "settlement demands" in any of the Underlying Matters, it, like any litigant, will simply have to assess the strength of its position, as set forth in its letter denying coverage, in deciding whether to contribute towards a settlement.

[10] Moreover, the Third Circuit case cited by Arch, *ACandS, Inc.*, is inapposite, as noted above (n.2). Arch also cites to the decision by the Refco Bankruptcy Court to lift the automatic stay so as to allow Arch to pursue this action. (Opp. at 18.) That decision, however, did not address justiciability, or any other issue under New York law. Rather, the Bankruptcy Court relied on Arch's representations, based on "duty to defend" cases under Illinois law, on potential prejudice to Arch if it did not pursue an action challenging the directors' and officers' right to coverage. (Eickemeyer Aff., Ex. 2, at 100-01.)

facts and evidence as the Underlying Matters. Discovery will thus not only be lengthy and expensive, and will encompass numerous non-parties, but it will also duplicate much of the discovery in the Underlying Matters. Imposing such costs on the Defendants – who are supposed to benefit from Arch's Policy, not be victimized by it – is particularly inappropriate in light of the fact that Arch's coverage obligation is $35 million from being triggered.

### 3. In The Alternative, Counts I And II Should Be Stayed Because Bennett Will Invoke His Fifth Amendment Rights

Bennett, on whom Arch relies on for the "prior knowledge" exclusion, has stated that he will assert his Fifth Amendment privileges if this matter proceeds. (*See* Bennett's Mtn. to Stay.) In Arch's Memorandum of Law in Opposition to Defendant Bennett's Motion to Stay, Arch argues that a stay is not proper if the Fifth Amendment is invoked to benefit oneself. However, Arch cites case law that holds it is appropriate to grant a stay pending the resolution of a criminal case for the benefit of other parties. (Arch Opp. to Bennett at 4) (citing *Access Capital, Inc. v. DeCicco*, 302 A.D.2d 48, 52, 752 N.Y.S.2d 658, 662 (1st Dep't 2002).) Arch thus recognizes the logic of staying a declaratory action involving other parties whose rights will depend on the knowledge and testimony of one person, who has stated that he will not testify.

Arch seeks to use the "prior knowledge" exclusions – and thus seeks to use Bennett's alleged knowledge – to avoid coverage for all Defendants, not just for Bennett. The Officer Defendants cannot present a proper defense in this action without Bennett's testimony, yet he has declared that he will assert his Fifth Amendment rights pending the resolution of criminal charges against him. The prejudice to the Officer Defendants based on Bennett's position is obvious. Accordingly, even if Counts I and II are not dismissed, they should be stayed as to the Officer Defendants until such time as Bennett will no longer assert his Fifth Amendment rights.

### II. COUNT I SHOULD ALSO BE DISMISSED OR STAYED BECAUSE OF THE AWAC DISPUTE RESOLUTION CLAUSE, WHICH BINDS ARCH

Arch contends that it is not bound by the ADR provision found in the AWAC policy because "the only parties to the AWAC ADR provision are AWAC and the insureds." (Opp.

at 19.) AWAC and the insureds are the only signatories to the AWAC Policy. But Arch agreed to "follow the form" of the AWAC Policy, and is thereby bound by its ADR clause. *See Gulf Underwriters Ins. Co. v. Verizon Commc'ns., Inc.*, -- N.Y.S.2d --, 2006 WL 2621039, at *1 (1st Dep't Sept. 14, 2006).[11]

Arch agreed in its Policy with the insureds that "the insurance coverage afforded by this Policy shall apply in conformance with the terms and conditions of the Followed Policy [the U.S. Specialty Policy] and in conformance with any terms and conditions further limiting or restricting coverage in this Policy or in any other Underlying Insurance." (Am. Compl. Ex. A (Section 1 C of the Arch Policy; emphasis added).) The term "Underlying Insurance" includes the AWAC Policy. *Id.* (Section III C, D; Item 5 of the Declarations Page). Thus, Arch is bound to the "terms and conditions" of the AWAC Policy, which includes the ADR clause, just as if it was a party to the AWAC Policy. *See Clarendon Nat'l Ins. Co. v. Lan*, 152 F. Supp. 2d 506, 520 (S.D.N.Y. 2001) ("A nonsignatory to an agreement containing an arbitration provision can be compelled to arbitrate when the nonsignatory is a party to a separate contractual relationship with the signatory to the arbitration agreement which incorporates the existing arbitration clause"); *General Re Corp. v. Foxe*, 177 Misc. 2d 867, 880, 678 N.Y.S.2d 459, 468 (Sup. Ct. N.Y. Co. 1998) (finding that nonsignatory to arbitration agreement was bound to agreement because, in part, nonsignatory agreed to ensure a signatory's obligations under the contract).

Courts routinely find that arbitration and other ADR clauses, such as the AWAC clause, bind nonsignatories like Arch when the clauses broadly provide that "[a]ny and all disputes or

---

[11]  In *Gulf Underwriters Ins. Co.*, the First Department squarely held that the plaintiff excess insurance carrier was bound to the primary insurance policy's arbitration clause "by operation of [the carrier's] excess coverage policy." 2006 WL 2621039, at *1. The court went on to rule that the insured defendant, Verizon, did not have a right to compel the plaintiff to arbitrate the plaintiff's declaratory action, but only because the arbitration clause in question narrowly provided that only claims by the insured against the insurer were subject to arbitration, not vice versa. *Id.* Thus, the court explained that "[s]ince Verizon is not the insurer, there is no arbitration requirement which conditions plaintiff's ability to seek judicial review." *Id.* In sharp contrast, the AWAC ADR provision broadly provides that "[a]ny and all disputes" rising under the policy "shall be subject to [ADR]." (Am. Compl. Ex. E at 5.)

- 11 -

differences which may arise under the policy . . . shall be subject to [ADR]." (Am. Compl. Ex. E at 5.) *See Clarendon Nat'l Ins. Co.*, 152 F. Supp. 2d at 520-21 (finding arbitration clause similar to the AWAC clause to be binding on a nonsignatory). Undeniably, Count I is a dispute "arising under" the AWAC policy, because Arch seeks to utilize the AWAC prior knowledge exclusion to avoid its contractual duties to the insureds. (*See* Am. Compl. ¶ 79.)

The cases relied upon by Arch for its proposition that "courts exercise caution to avoid foisting the obligations of ADR agreements upon non-parties" (*see* Opp. at 19) are inapposite. Specifically, in *Corbetta Constr. Co. v. George F. Driscoll Co.*, 17 A.D.2d 176, 179, 233 N.Y.S.2d 225, 228 (1st Dep't 1962), unlike here, the plaintiff did not execute any agreements incorporating the terms and conditions of the contract that contained the arbitration clause. *Id.* (subcontract at issue did not "incorporate[] the main contract [which provided for arbitration] [or] its terms either directly, by reference or even by implication"). In *Nat'l Recreational Prods., Inc. v. Gans*, 46 A.D. 618, 619, 359 N.Y.S.2d 803, 805 (1st Dep't 1974), the issue was whether a guarantor to an employment contract containing an arbitration clause needed to be a party to an arbitration between the employer and employee. The First Department held that the guarantor need not be a party so long as the guarantor was bound to the results of the arbitration. *Id.* Here, the insureds are not seeking to require that Arch be a party to an ADR proceeding with AWAC; rather, Arch is seeking to negate the ADR provision altogether.

Arch cannot selectively utilize what it deems to be the benefits of the AWAC Policy (*i.e.*, the prior knowledge exclusion) while ignoring the insureds' contractual right to ADR in the same Policy. Nor should this Court permit Arch to eviscerate the insureds' rights through a declaratory judgment action. Indeed, it is well established that New York public policy strongly favors enforcing arbitration clauses. *Smith Barney Shearson Inc. v. Sacharow*, 91 N.Y.2d 39, 49, 666 N.Y.S.2d 990, 995 (1997) ("[t]his decision [upholding enforcement of an arbitration clause] fortifies and advances the long and strong public policy favoring arbitration"); *State of New York v. Philip Morris Inc.*, 30 A.D.3d 26, 31, 813 N.Y.S.2d 71, 75 (1st Dep't 2006) ("Arbitration is

- 12 -

strongly favored under New York law."). Federal law is in accord. Recently, in *Nardi v. Povich*, No. 105554/06, 2006 WL 2127714, at *4-5 (Sup. Ct. N.Y. Co. July 31, 2006) (Fried, J.), this Court reemphasized the strong federal policy favoring arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* ("FAA"). *Id.*[12] In a decision holding that a nonsignatory was bound to an arbitration agreement, Justice Fried noted that "any ambiguities as to the scope of an arbitration provision governed by the FAA would be properly resolved in favor of arbitration." *Id.* at 5 (internal quotations omitted). Likewise, the court in *Verizon New York Inc. v. Broadview Networks, Inc.*, 5 Misc. 3d 346, 350 n.4, 781 N.Y.S.2d 211, 214 n.4 (Sup. Ct. N.Y. Co. 2004), stressed that "courts should construe arbitration clauses as broadly as possible and any doubt or ambiguity as to the scope of the arbitration agreement should be resolved in favor of arbitration." *Id.* (internal quotations and citations omitted); *see also Philip Morris, Inc.*, 30 A.D.3d at 31, 813 N.Y.S.2d at 75 ("[a]ny doubts as to whether an issue is arbitrable will be resolved in favor of arbitration").

Arch's position – that it may cherry-pick certain provisions of the AWAC Policy while disregarding the ADR clause – would not only negate the Officer Defendants' right to ADR; if adopted by the courts, it would set an untenable precedent, whereby one insurance carrier in a tower could easily override the contractual rights of insureds under other policies. Indeed, the carrier which did sign the ADR agreement could, as a practical matter, avoid its ADR obligations altogether by arranging for an excess carrier to litigate the dispute by proxy. Such a result would open the door to enormous mischief and offend the strong public policy in favor of ADR.

---

[12] The FAA provides in pertinent part that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Nardi*, 2006 WL 2127714, at *3 (quoting 9 U.S.C. § 2). The FAA is applicable to insurance contracts because "insurance transactions constitute commerce within the meaning of the Commerce Clause." *Utica Mutual Ins. Co. v. Gulf Ins. Co.*, 306 A.D.2d 877, 878, 762 N.Y.S.2d 730, 732 (4th Dep't 2003) (citing *United States v. South-Eastern Underwriters Assn.*, 322 U.S. 533, 553 (1944)).

Arch next contends that this Court should not dismiss or stay Count I because the Officer Defendants have not yet commenced an ADR proceeding against AWAC. (Opp. at 19.) But New York courts have long recognized that defendants need not take affirmative steps to initiate ADR. *See Bd. of Educ., Utica School Dist. # 1 v. Delle Cese*, 65 Misc. 2d 473, 478, 318 N.Y.S.2d 46, 51 (Sup. Ct. Oneida Co. 1971) ("one who does not wish to take the affirmative of compelling arbitration still has the right to have the action at law stayed"). Indeed, the court in *Bd. of Educ., Utica School Dist. # 1* reasoned that "[i]t is traditional that a defendant may ordinarily let a sleeping dog lie until he is in danger of being bitten." *Id.* at 477, 318 N.Y.S.2d at 50 (internal quotations omitted). The insureds are not in immediate danger of "being bitten" by AWAC, which is the third-tier insurance carrier – one tier below Arch. (*See* Officer Defs' Mem. at 6.) Defendants would need to exhaust approximately $22.6 million before the AWAC Policy is triggered. Defendants' "failure" to initiate a premature ADR proceeding against AWAC – to resolve a dispute which is still entirely speculative – cannot be used to justify Arch's attempt to end-run the ADR clause entirely. Tellingly, AWAC has not initiated any ADR proceeding either. This means one of two things: either AWAC (like the insureds) believes that the "dispute" is premature, or else AWAC is in collusion with Arch to avoid its ADR obligations.

Finally, Arch erroneously asserts that Count I cannot be dismissed before the ADR process has been completed. (Opp. at 20.) But the weight of the law is overwhelmingly to the contrary. In actions seeking a declaratory judgment, such as Count I, New York courts routinely "decline to exercise jurisdiction over such an action in favor of the contractual arbitration provisions," regardless of whether those proceedings are completed, pending, or not yet begun. *Hanna v. Zumpano*, 267 A.D.2d 1028, 1028-29, 701 N.Y.S.2d 553, 554 (4th Dep't 1999) (quoting *Little v. Willis*, 55 A.D.2d 854, 390 N.Y.S.2d 347, 348 (4th Dep't 1976)). *See also Kalisch-Jarcho, Inc. v. City of New York*, 72 N.Y.2d 727, 731-32, 536 N.Y.S.2d 419, 421 (1988) (declaratory action was improper in light of arbitration agreement between the parties); *Rhinestone v. New York City Transit Auth.*, 142 A.D.2d 562, 563, 530 N.Y.S.2d 227, 228 (2d

- 14 -

Dep't 1988) (Supreme Court "should have declined to exercise jurisdiction over the claim . . . in deference to the pending arbitration proceeding") (internal citations omitted); *Little*, 55 A.D.2d at 854, 390 N.Y.S.2d at 348 (upholding Supreme Court's dismissal of declaratory action as "proper" because of arbitration clause).

For all of these reasons, Count I should be dismissed, or in the alternative, stayed in accordance with the AWAC ADR provision.

CONCLUSION

Based on the foregoing, and the reasons discussed in the Officer Defendants' Initial Brief, the Officer Defendants' motion to dismiss or, in the alternative, for a stay should be granted in its entirety.

Dated:  October 31, 2006                         Respectfully submitted,

_Rachel Korenblat_                              _Helen Kim / Renk_

Barbara Moses                                    Ona T. Wang
Rachel Korenblat                                 Joseph L. Chairez (*pro hac vice* to be filed)
MORVILLO, ABRAMOWITZ, GRAND,                     Helen B. Kim
IASON, ANELLO & BOHRER, P.C.                     BAKER & HOSTETLER LLP
565 Fifth Avenue                                 666 Fifth Avenue
New York, NY 10071                               New York, NY 10103
Telephone:  212-856-9600                         Telephone:  212-589-4200
Facsimile:  212-856-9494                         Facsimile:  212-589-4201

*Attorneys for Defendant Robert C. Trosten*      *Attorneys for Defendants*
                                                 *Dennis Klejna and Joseph Murphy*

- 15 -

_Ihn Klue / cenh_

Stuart I. Friedman
Ivan O. Kline
Elizabeth D. Meacham
**FRIEDMAN & WITTENSTEIN**
A Professional Corporation
600 Lexington Avenue
New York, NY 10022
Telephone:     212-750-8700
Facsimile:     212-223-8391

*Attorneys for Defendants Gerald Sherer and William M. Sexton*


_Holly Kulka / cenh_

Holly Kulka
**HELLER EHRMAN WHITE & MCAULIFFE, LLP**
7 Times Square
New York, NY 10036
Telephone:     212-847-8601
Facsimile:     212-763-7600
*Attorneys for Defendant Philip Silverman*


_Laura Neish / cenh_

Laura Neish
ZUCKERMAN SPAEDER LLP
1540 Broadway, Suite 1604
New York, New York 10036
Telephone:     212-704-9600
Facsimile:     212-704-4256
                -and-

Michael T. Hannafan (*pro hac vice* to be filed)
Blake T. Hannafan (*pro hac vice* to be filed)
HANNAFAN & HANNAFAN, LTD.
One East Wacker Drive, Suite 1208
Chicago, IL 60601
Telephone:     312-527-0055
Facsimile:     312-527-0220
*Attorneys for Defendant Tone N. Grant*


- 16 -