# Tab 4

Not Reported in F.Supp.  
(Cite as: 1997 WL 462010 (S.D.N.Y.))  
<KeyCite History>

Page 11

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

NU-WAY ENVIRONMENTAL, INC., Plaintiff,  
v.  
PLANET INSURANCE COMPANY, Defendant.

No. 95 Civ. 573(HB).

Aug. 12, 1997.

Opinion and Order

BAER, District Judge.

*1 Plaintiff brought this cause of action for a judgment declaring that: (1) defendant has a duty to indemnify plaintiff for damages or settlement related to a legal action brought against plaintiff (the "South Carolina action") and (2) defendant has a duty to indemnify plaintiff for its costs in defending against the South Carolina action on a contemporaneous basis. Both parties moved for summary judgment and by Opinion and Order dated September 30, 1996, I granted plaintiff's motion with respect to the first issue. I address the second issue now. For the reasons stated below, plaintiff's motion for summary judgment is granted.

I. Background

Familiarity with the facts of this case is presumed, and I recite only those facts relevant to this Opinion. On or about February 17, 1992 defendant Planet Insurance Company ("Planet") issued a "Contractor's Pollution Legal Liability" insurance policy to Nu-Way Environmental, Inc. ("Nu-Way") (the "Policy"). The Policy provides that Planet will:

indemnify the INSURED against LOSS the INSURED has or will become legally obligated to pay as a result of CLAIMS first made against the INSURED and reported to the Company, in writing, during the POLICY PERIOD.

See Stip. of Facts, Ex. A, Policy, "Insuring Agreement". The Policy defines "LOSS" as:

monetary awards or settlements of compensatory damages arising from: a. BODILY INJURY as defined herein, or b. PROPERTY DAMAGE as defined herein, and ... costs, charges and expenses incurred in the ... defense of claims for such compensatory damages.

See Stip of Facts, Ex. A, Policy, "Definitions" (emphasis added). Finally, the Policy provides that defendant:

shall have the right but not the duty to assume the adjustment of any claim or the defense of any suit.

See Stip. of Facts, Ex. A, Policy, "Claim or Suit Provisions."

On or about May 5, 1992, plaintiff entered into an agreement with Yeargin, an agent for the Carolina Eastman Division to provide the necessary labor and equipment to remove and dispose of water and sludge from the bottom of a concrete basin at the Eastman site (the "Eastman agreement"). See Stip. of Facts, Ex. C, Agr. btw. Nu-Way and Yeargin. On April 28, 1992 plaintiff entered into a separate agreement with Soil Remediation Company ("SRC") under which SRC was to process the material plaintiff removed from the Eastman site and use it to manufacture bricks (the "SRC agreement"). SRC had formed a joint venture with Yadkin, a brick manufacturer, whereby SRC contracted for the delivery of petroleum-contaminated soils to Yadkin for brick manufacture processing.

A chemical analysis was performed on the soil and a Vice President of Nu-Way certified that the only contamination contained in the soil was Virgin Fuel Oil #6. Plaintiff's analysis did not reveal that the soil was also contaminated with Dowtherm, which prohibited its use in the manufacture of the bricks. SRC and Yadkin commenced an action against Nu-Way in the Court of Common Pleas of the State of South Carolina. [FN1] SRC and Yadkin alleged that SRC delivered the contaminated soil to Yadkin where it became mixed with other soils, thereby rendering them useless because of the Dowtherm contained in the soil delivered by SRC. Accordingly, SRC and Yadkin alleged breach of contract, breach of an express warranty, and fraudulent concealment and sought indemnification under the terms of the SRC Agreement.

FN1. On February 7, 1997 this action was consolidated with a second South Carolina action brought in 1994 by Yadkin against Nu-Way and others after it appeared that Yadkin and SRC required separate counsel (the "Consolidated Action"). Burke Aff. ¶¶ 5-6. The 1994 South

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.  
(Cite as: 1997 WL 462010, *1 (S.D.N.Y.))

Page 12

Carolina action was based on the same set of facts as the 1992 South Carolina action, named parties related to the first action and included causes of action against Nu-Way for negligence, breach of implied warranties, trespass, and nuisance. Burke Aff. ¶ 3. Thus, Nu-Way faced identical claims for breach of implied warranty and of negligence in both the 1992 and the 1994 South Carolina actions. Id.

*2 On February 25, 1994 the South Carolina court granted summary judgment in favor of SRC and Yadkin and against Nu-Way on the breach of contract and indemnity claims. However, when Nu-Way submitted a claim for coverage under the Policy, Planet denied coverage to Nu-Way. Defendant stated that "[s]ince the claim did not involve a pollution condition arising out of the performance of a covered operation," the claim is not within the Policy. This lawsuit ensued. [FN2]

> FN2. As noted above, my September 30, 1996 Opinion found that plaintiff's claim did involve a pollution condition arising out of the performance of a covered operation, and therefore defendant is obligated under the terms of the Policy to indemnify plaintiff for any damages or settlement arising out of the South Carolina action.

## II. Discussion

Defendant argues that because the Policy is an indemnification policy it has no duty to defend the plaintiff in the South Carolina action and has no duty to reimburse plaintiff for its defense costs until the covered claim is finally adjudicated or settled. Plaintiff argues, however, that defendant is obligated under the Policy to defend plaintiff and to pay its defense costs as they are incurred.

It is clear from the language of the Policy that the defendant is under no duty to defend the plaintiff in the South Carolina action. However, the inquiry into defendant's duties does not end there because the "duty to provide reimbursement for defense costs as they are incurred [is] a duty separate from the duty to defend." Fight Against Coercive Tactics v. Coregis Ins. Co., 926 F.Supp. 1426, 1432 (D.Colo.1996). See also In re Kenai Corp., 136 B.R. 59, 63 (S.D.N.Y.1992).

The key question becomes, therefore, whether or not under this type of policy defendant has a duty to contemporaneously reimburse plaintiff for its defense costs. While some courts have found a duty to pay the defense costs as incurred exists under policies similar to the one here, see e.g., Okada v. MGIC Indem. Corp., 823 F.2d 276, 280 (9th Cir.1986), others have held that no such duty exists. See e.g., Kenai Corp., 136 B.R. at 63-4. The general rule, however, is that absent express language to the contrary, an insurer that does not undertake the duty to defend the insured has a duty to pay the insured's defense costs as they come due. 1 Allan Windt, Insurance Claims & Disputes § 6.20 (3d ed.1995). Therefore, this court has held where the insurance policy does not impose a duty to defend, provides for payment of defense costs, and is silent as to the timing of payment of such costs, the insurer has a duty of contemporaneous payment of defense costs. See McGinniss v. Employers Reinsurance Corp., 648 F.Supp. 1263, 1271 (S.D.N.Y.1986) (holding that in an insurance policy to pay the insured for loss sustained, where loss was defined as "amounts which the insured becomes legally obligated to pay," defendant had an obligation to pay defense costs as incurred); Pepsico v. Continental Cas. Co., 640 F.Supp. 656, 659 (S.D.N.Y.1986) (same). See also Fight Against Coercive Tactics, 926 F.Supp. at 1434. Furthermore, "without contemporaneous payment of defense costs the insurance would not truly protect the insureds from financial harm caused by suits against them." McGinniss, 648 F.Supp. at 1271 (citation and internal quotation marks omitted).

*3 The cases in which this court has held otherwise are readily distinguishable from the instant case. For example, in In re Ambassador Group, this court analyzed a directors and officers liability insurance policy that was silent as to the time defense costs were to be reimbursed. 738 F.Supp. 57, 63 (S.D.N.Y.1990). Central to the court's conclusion that such costs should not be reimbursed contemporaneously was a clause in the policy that established priority of the payment of insurance proceeds. Id. The court concluded that this clause necessarily precluded the contemporaneous payment of defense costs. Id. Because the policy at issue here does not contain such a provision, I find that the reasoning of In re Ambassador Group is unpersuasive.

This court arrived at the same conclusion in

(C) 2007 Thomson/West. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.  
**(Cite as: 1997 WL 462010, \*3 (S.D.N.Y.))**

Page 13

another case involving a directors and officers liability policy. See In re Kenai, 136 B.R. 59 (S.D.N.Y.1992). However, in that case the court reasoned that to hold that the insurer must pay defense costs contemporaneously would compel insurers to "pay some losses that are not covered by their policies." 136 B.R. at 63. That concern is absent here where my September 30, 1996 Opinion answered in the affirmative the question of whether or not the claim against plaintiff in the South Carolina action would be covered under the Policy. Therefore, In re Kenai is also inapplicable.

Because the Policy is silent with respect to payment of defense costs, because other courts have held that a duty of contemporaneous payment exists under policy language similar to the language at issue here, and because to hold otherwise would not provide insureds with protection from financial harm that insurance policies are presumed to give, defendant has a duty under the Policy to reimburse plaintiff for its defense costs of the South Carolina action on a contemporaneous basis. [FN3]

> FN3. Plaintiff argues that today's holding should also apply to its defense of the entire Consolidated Action. See supra, note 1. I agree. In my September 30, 1996 Opinion, I held that the situation that gave rise to the 1992 South Carolina action constituted an event that falls under the Policy because it arises out of and is related to the excavation of soil, a covered operation under the Policy. Opinion at 6. Today I hold that the defendant is obligated under the Policy to reimburse plaintiff for defense costs in the South Carolina action on a contemporaneous basis. Since the 1992 South Carolina action has been consolidated with the 1994 South Carolina action and since the 1994 South Carolina action arises out of the same set of facts as the 1992 action, I find that defendant is under an obligation to reimburse plaintiff for its defense costs in the Consolidated Action on a contemporaneous basis as well.

### III. Conclusion

For the reasons stated above, plaintiff's motion for summary judgment is GRANTED. Defendant must reimburse plaintiff for the reasonable costs it incurred and continues to incur in defending the South Carolina actions.

SO ORDERED.

1997 WL 462010 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.



# Tab 5

x

# Tab 5

Slip Copy
(Cite as: 2007 WL 1811265 (Del.Super.))
<KeyCite History>

Page 15

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Delaware,
New Castle County.

SUN-TIMES MEDIA GROUP, INC., et al.,
Plaintiffs,
v.
ROYAL & SUNALLIANCE INS. CO. OF CANADA, et al., Defendants.

C.A. No. 06C-11-108 RRC.

Submitted: April 9, 2007.
Decided: June 20, 2007.

On Plaintiffs Sun-Times Media Group, Inc., Dwayne O. Andreas, Richard R. Burt, Raymond G. Chambers, Marie-Josee Kravis, Robert S. Strauss, A. Alfred Taubman, James R. Thompson, Lord Weidenfeld of Chelsea, and Leslie H. Wexner's "Motion for Partial Summary Judgment Against Certain Defendants on The Duty to Pay Defense Costs." GRANTED.

John E. James, Esquire and Richard L. Horwitz, Esquire, Potter Anderson & Corroon LLP, Wilmington, Delaware, Attorneys for Plaintiffs.

James W. Semple, Esquire and Matthew F. Lintner, Esquire, Morris James LLP, Wilmington, Delaware, Attorneys for Defendants.

MEMORANDUM OPINION

COOCH, J.

*1 Before the Court is Plaintiffs' motion for partial summary judgment that seeks a declaratory judgment from this Court that certain insurer Defendants have a duty under the applicable policies to pay Plaintiffs' defense costs with respect to a related civil action in Illinois. The issues raised by this motion are (1) whether there is a genuine issue of material fact regarding choice of law that would preclude summary judgment; (2) whether the "personal conduct" exclusions contained in the insurance policies, as a matter of law, prevent the present advancement of defense costs; (3) whether either the consent-to-settle or cooperation clauses of the insurance polices have been violated, as a matter of law, thereby preventing the present advancement of defense costs; and, (4) whether the priority-of-payments clause of the insurance polices prevents, as a matter of law, the present advancement of defense costs to Plaintiffs.

This Court has determined that there is no genuine issue of material fact regarding choice of law that precludes summary judgment as to defense costs. In addition, the Court has determined that, at this juncture, there has been no showing by Defendants that the personal conduct exclusions have been violated so as to preclude the advancement of defense costs. Furthermore, this Court has also determined that, at this juncture, Defendants have not made a sufficient showing that either the cooperation clause or the consent-to-settle provision have been violated, so as to preclude advancement of defense costs. Lastly, the Court has determined, on the present record, that the priority-of-payments clause does not prevent the present advancement of defense costs. [FN1] Therefore, Plaintiffs' motion is GRANTED.

> FN1. If it can be shown at a later appropriate time that the insureds were not entitled to defense costs, the insurers can presumably recover any defense costs that are found to have been improperly paid out, pursuant to the terms of the applicable policies. Van Horn Aff., E-File 13594161, Ex. 1, at 10. (James Van Horn was general counsel for International, and is now working as a consultant for International. Van Horn Aff. at ¶ 2.)

I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs' complaint seeks a declaration of coverage under their excess directors' and officers' ("D & O") insurance policies issued by Defendants. Plaintiffs claim to have incurred over $20 million (and expect to incur over $40 million) in defense costs as a result of defending themselves in multiple lawsuits that arose out of an alleged fraudulent scheme devised by certain inside directors of Plaintiff Sun-Times Media Group, Inc. f/k/a Hollinger International, Inc. ("International"). The complaint further asserts that Defendants are

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Westlaw

Slip Copy  Page 16
(Cite as: 2007 WL 1811265, *1 (Del.Super.))

obligated to pay those defense costs and have wrongfully refused to do so.

Plaintiff International is a Delaware corporation with its principal place of business in Illinois. International's Canadian parent companies are Hollinger Inc. [FN2] and Ravelston Corporation Limited ("Ravelston"). [FN3] Plaintiffs Dwayne O. Andreas, Richard R. Burt, Raymond G. Chambers, Marie-Josee Kravis, Robert S. Strauss, A. Alfred Taubman, James R. Thompson, Lord Weidenfeld of Chelsea, and Leslie H. Wexner (collectively the "Outside Directors") are nine of International's former outside directors. Eight of the above Outside Directors are citizens of the United States and one (Lord Weidenfeld) is a citizen of the United Kingdom.

> FN2. Hollinger Inc. presently owns approximately 17% of the equity of International and beneficially holds approximately 67% of the overall voting power of International. Van Horn Aff., at ¶ 3.

> FN3. At all material times Ravelston beneficially owned 78% of Hollinger Inc. Van Horn Aff., at ¶ 4.

*2 In 2002, International purchased liability insurance in a tower of insurance totaling $130 million in limits with a policy period of July 1, 2002 to July 1, 2003. The policies cover International, Ravelston, Hollinger Inc., and the individual directors and officers of those entities.

American Home Assurance Company ("American Home") and Chubb Insurance Company ("Chubb") sold the primary and the first two excess insurance policies in the tower. The American Home and Chubb policies have combined limits of $50 million, constituting the first $50 million of the insurance tower.

Defendants Royal & SunAlliance Insurance Company of Canada, ACE INA Insurance Company, and Zurich Insurance Company (collectively the "Third Layer Insurers") also sold excess D & O liability insurance. The Third Layer Policy has a $40 million limit of liability and is excess of the $50 million in underlying insurance sold by American Home and Chubb.

Defendants AXA Corporate Solutions Assurance, Temple Insurance Company, Continental Casualty Company, Lloyd's Underwriters, GCAN Insurance Company f/k/a Gerling Global Canada, and ACE INA Insurance Company (collectively the "Fourth Layer Insurers") additionally sold excess D & O insurance that has a $40 million limit of liability and is excess of the $90 million in underlying insurance.

The Third Layer Insurers promised to insure Plaintiffs as follows:
> The Insurer agrees to provide to the Insureds insurance coverage excess of the Underlying Polices for Claims first made during the Policy Period against the Insured Persons for Wrongful Acts. Such coverage shall be in accordance with and subject to the same warranties, terms, conditions, exclusions and limitations (except as regards the premium, the amount and limits of liability, the Policy Period, and except as otherwise provided herein) as are contained in or as may be added to the Primary Policy and, to the extent coverage is further limited or restricted thereby, to any other Underlying Policy. In no event shall this Policy grant broader coverage than the coverage provided by the most restrictive of any of the Underlying Policies. [FN4]

> FN4. Van Horn Aff., Ex. 4, at 1.

As described in the insuring agreements of the underlying American Home Policy, the Third Layer Insurers agreed to pay all "Loss" arising out of any claims made against International and/or the Outside Directors during the policy period for "Wrongful Acts."

Coverage A under the policies insures the Outside Directors and states in pertinent part:
> This policy shall pay the Loss of any Insured Person arising from a Claim ... made against such Insured Person for any Wrongful Act of such Insured Person, except when and to the extent that an Organization has indemnified such Insured Person.... [FN5]

> FN5. Van Horn Aff., Ex. 1, at 1.

Coverage B under the policies insures International and provides:
> (i) Organization Liability: This policy shall pay the Loss of any Organization arising from:
> a. a Securities Claim;



Slip Copy  Page 17
(Cite as: 2007 WL 1811265, *3 (Del.Super.))

*3 b. an Oppressive Conduct Claim; or
c. a Canadian Pollution Claim,

made against such Organization for any Wrongful Act of such Organization.
(ii) Indemnification of Insured Person: This policy shall pay for the Loss of an Organization arising from a Claim made against an Insured Person ... for any Wrongful Act of such Insured Person, but only to the extent that such Organization has indemnified such Insured Person. [FN6]

FN6. Id.

"Loss" is defined to include:
[D]amages (including aggravated damages), settlements, judgments (including pre/post-judgment interest on a covered judgment), Defence Costs and Crisis Loss; [FN7]

FN7. Id. at 4.

The term "Wrongful Act" is defined as:
(1) any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act ...:
(i) with respect to any Executive of an Organization, by such Executive in his or her capacity as such or any matter claimed against such Executive solely by reason of his or her status as such....
(2) with respect to an Organization, any actual or alleged breach of duty, neglect, error, misstatement, mis-leading statement, omission or act by such
Organization, but solely in regard to (a) any Securities Claim or Oppressive Conduct Claim.... [FN8]

FN8. Id. at 6.

The policy also dictates the order in which claims are to be paid and gives priority to individual insureds:
22. In the event of Loss arising from a covered Claim for which payment is due under the provisions of this policy, then the Insurer shall in all events:
(a) first, pay Loss for which coverage is provided under Coverage A and Coverage C of this policy; then
(b) only after payment of Loss has been made pursuant to Clause 22(a) above, with respect to whatever remaining amount of the Limit of Liability is available after such payment, at the written request of the chief executive officer of the Named Entity, either pay or withhold payment of such other Loss for which coverage is provided under Coverage B(ii) of this policy; and then
(c) only after payment of Loss has been made pursuant to Clause 22(a) and Clause 22(b) above, with respect to whatever remaining amount of the Limit of Liability is available after such payment, at the written request of the chief executive officer of the Named Entity, either pay or withhold payment of such other Loss for which coverage is provided under Coverage B(i) and D of this policy. [FN9]

FN9. Id. at 15-16.

In addition, the policy contains a "cooperation" clause that states:
The Insurer shall at all times have the right, but not the duty, to participate in the investigation, settlement, or defence of any Claim covered by this Policy which appears to the Insurer to be likely to involve the Insurer, even if the Underlying Limit has not been exhausted. The Parent Company and the Insureds shall give the Insurer full co-operation and such information as it may require. [FN10]

FN10. Van Horn Aff., Ex. 4, at 2-3.

Moreover, the policy contains a "consent-to-settle" provision that states:
*4 The Insureds shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any Defence Costs without the prior written consent of the Insurer. Only those settlements, stipulated judgments and Defence Costs which have been consented to by the Insurer shall be recoverable as Loss under the terms of this policy. The Insurer's consent shall not be unreasonably withheld, provided that the Insurer shall be entitled to effectively associate in the defence, the prosecution, and the negotiation of any settlement of any Claim that involves or appears reasonably likely to involve the Insurer. [FN11]

FN11. Van Horn Aff., Ex. 1, at 10.

(C) 2007 Thomson/West. No Claim to Orig. US Gov. Works.



Slip Copy
(Cite as: 2007 WL 1811265, *4 (Del.Super.))

Page 18

Furthermore, the policy creates a duty to advance defense costs as follows:
> THE INSURER MUST ADVANCE DEFENCE COSTS, EXCESS OF THE APPLICABLE RETNETION, PURSUANT TO THE TERMS HEREIN PRIOR TO THE FINAL DISPOSITION OF A CLAIM. [FN12]

   FN12. Id. at 1.

The Primary Policy also contains certain exclusions that define when there is no coverage. The relevant exclusions read as follows:
> The Insurer shall not be liable to make any payment for Loss in connection with any Claim made against an Insured:
> (a) arising out of, based upon or attributable to the gaining in fact of any profit or advantage to which the Insured was not legally entitled;
> (c) arising out of, based upon or attributable to the committing in fact of any deliberate criminal or deliberate fraudulent act by the Insured;
> For the purpose of determining the applicability of the forgoing Exclusions 4(a) through 4(c) ... only facts pertaining to and knowledge possessed by any past, present, or future chairman of the board, president, chief executive officer, chief operating officer, chief financial officer or General Counsel (or equivalent position) of an Organization shall be imputed to an Organization. [FN13]

   FN13. Id. at 7-8.

The Policy also provides a way for insurers to recover defense costs that are later shown to have been improperly advanced by stating:
> Such advance payments by the Insurer shall be repaid to the Insurer by each and every insured or Organization, severally according to their respective interests, in the event and to the extent that any such insured or Organization shall not be entitled under this policy to payment of such Loss. [FN14]

   FN14. Id. at 10.

Lastly, the policy contains a provision known as the Worldwide Extension that provides that certain parts of the policies will be superseded by filings in the United States with various regulatory officials that are more favorable to the Insured than the terms and conditions of the American Home primary policy. The Extension states:
> In regard to Claims brought and maintained solely in a Foreign Jurisdiction against an Organization formed and operating in such Foreign Jurisdiction or an Insured Person thereof for Wrongful Acts committed in such Foreign Jurisdiction, the Insurer shall apply to such Claim(s) those terms and conditions (and related provisions) of the Foreign Policy registered with the appropriate regulatory body in such Foreign Jurisdiction that are more favourable to such Insured than the terms and conditions of this policy. [FN15]

   FN15. Id. at 6.

\* \* \*

**\*5** From January 1999 until about May 2001, International's inside directors, Lord Conrad Black, David Radler, John Boultbee, and Peter Atkinson (collectively the "Inside Directors") allegedly took part in a scheme to defraud International, its public shareholders, and Canadian tax authorities. After receiving a demand letter from a major shareholder in May 2003, International formed a Special Committee of the Board to conduct an independent investigation of the allegations. That committee issued a report in August 2004 that described how the Inside Directors allegedly ran a "corporate kleptocracy" that supposedly looted International of hundreds of millions of dollars. [FN16]

   FN16. Smick Aff., E-File 13769450, Ex. H, at 4. (Joseph M. Smick is a partner at the firm of Sedgwick, Detert, Morgan & Arnold, LLP. In that capacity, he was retained by Defendant Zurich Insurance Company. Smick Aff., at 2.)

Subsequently, in August 2005, federal criminal charges were brought against Ravelston, Radler, and Mark Kipnis (International's former General Counsel) in the United States District Court for the Northern District of Illinois. The indictment was later amended to add Black, Boultbee, and Atkinson as defendants. The criminal action alleged that the defendants "devised, intended to devise, and participated in a scheme to defraud International and International's public shareholders of money, property, and their intangible right of honest services, to defraud the Canadian tax authorities of tax revenue, and to obtain money and property from these victims by means of materially false and

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.



Slip Copy
(Cite as: 2007 WL 1811265, *5 (Del.Super.))

Page 19

fraudulent pretenses, representations, promises and omissions." [FN17] Radler entered into a voluntary plea agreement with the U.S. Attorney whereby he voluntarily pled guilty to count one of the indictment and admitted to the underlying facts involving the fraudulent scheme. Recently, Ravelston also entered into a plea agreement. [FN18] The Court understands that the criminal trial, which began March 14, 2007, is still continuing.

> FN17. Def. Opposition to Pl. Mot. for Partial Summ. J., E-file 13751962, Ex G, at ¶¶ 7-8.

> FN18. Tr. of March 16, 2007 Oral Argument, E-File 14506275, at 11.

The alleged fraudulent scheme also spawned numerous civil lawsuits. On December 9, 2003, Cardinal Value Equity Partners, LP filed a derivative action on behalf of International in the Delaware Court of Chancery (the "Cardinal Derivative Action"). Pursuant to a settlement agreement executed on May 2, 2005, American Home and Chubb funded a settlement of the Cardinal Derivative Action in the amount of $50 million, thereby exhausting all insurance coverage beneath the Third Layer Policy. The Superior Court of Justice in Ontario, Canada (the "Canadian Court" where related legal proceedings have taken place) and the Court of Chancery have each approved the Cardinal Derivative Action settlement.

Moreover, several securities class actions were filed on behalf of International's shareholders in Illinois and Canada, naming International, Hollinger Inc., Ravelston, the Inside Directors and the Outside Directors as defendants. Three separate complaints originally filed between February 2, 2004 and April 4, 2004 in Illinois Federal Court were consolidated in August 2004 ("Illinois Class Action"). Six of eight counts are alleged securities violations, and the remaining two counts allege breach of fiduciary duty. [FN19] In addition to the alleged securities violations, the Illinois Class Action alleges that the Outside Directors recklessly disregarded the facts regarding the self-dealing and related party transactions. In addition, the Illinois Class Action complaint alleges that the Outside Directors, by virtue of their positions at International, knew or were reckless in not knowing that public disclosures regarding certain of International's asset sales and management services agreements were false or incomplete. Furthermore, that complaint alleges various "Wrongful Acts" in connection with specific transactions involving International and allegations regarding management services between International and its subsidiaries.

> FN19. Id. at 58.

*6 Both International and the Outside Directors have incurred costs in defending the Illinois Class Action, and now seek reimbursement from the Third Layer Insurers, who have denied coverage for the Illinois Class Action. International has been funding the Illinois Class Action ongoing defense costs of the Outside Directors.

At the time International filed its complaint in this Court on November 9, 2006, [FN20] there were two related pending "applications" [FN21] in the Canadian Court. [FN22] On May 13, 2005, Hollinger Inc. had filed an application against American Home, Chubb, the Third Layer Insurers, the Fourth Layer Insurers, International, Ravelston, Cardinal, the Inside Directors, the Outside Directors, [FN23] and others seeking an order:

> FN20. International amended the complaint on November 13, 2006 to add the Outside Directors as plaintiffs.

> FN21. An application is apparently a type of legal proceeding in Canada usually reserved for cases where material facts are not in dispute. It appears that there is no right to conduct or receive documentary discovery and evidence is usually presented to the court through affidavits. Hoaken Aff., E-File 13655555, at ¶ 3. (Eric R. Hoaken is lead Canadian counsel for International in its insurance-related litigation. Hoaken Aff., at ¶ 5.)

> FN22. Two other applications had also been filed in Canada: one by International on May 12, 2005 and one by American Home and Chubb on May 13, 2005. However, both of these applications were essentially resolved by the Canadian Court's authorization of the Cardinal Settlement. Def. Opening Brief in Support of their Mot. to Dismiss or Stay, E-File 13594161, at 10-11.

> FN23. Although the Outside Directors were named as respondents in this application, it is undisputed

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.



Slip Copy                                                                                         Page 20
(Cite as: 2007 WL 1811265, *6 (Del.Super.))

that none of them "ever attorned to the jurisdiction of Ontario or participated in any way in the various applications." Hoaken Aff., at ¶ 15.

a. declaring that the payment by [American Home and Chubb] for the Cardinal Settlement would not exhaust, diminish, or otherwise alter the obligations owed by [American Home and Chubb] to [Hollinger] Inc.;
b. in the alternative, enjoining [American Home and Chubb] from entering into the Cardinal Settlement;
c. declaring that [American Home and Chubb] and [the Third and Fourth Layer Insurers] have a duty to indemnify [Hollinger] Inc. and pay all defense costs and expenses in certain of the Underlying Actions, including, inter alia, the Illinois Securities Litigation; and
d. any further relief that the court deems just. [FN24]

> FN24. Def. Opening Brief in Support of their Mot. to Dismiss or Stay, at 8. See also id. at Ex F. Similarly, on that same date, Black and his wife, Lady Barbara Amiel Black, had filed an application in the Canadian Court against American Home, Chubb, the Third Layer Insurers, and the Fourth Layer Insurers seeking an order:
> a. declaring that the payment by [American Home and Chubb] for the Cardinal Settlement would not exhaust, diminish, or otherwise alter the obligations owed by [American Home and Chubb] to Black;
> b. declaring that [American Home and Chubb] and [the Third and Fourth Layer Insurers] have a duty to indemnify Black and pay all defense costs and expenses in certain of the Underlying Actions, including, inter alia, the Illinois Securities Litigation; and
> c. any further relief that the court deems just. [FN25]

> FN25. Id. at 11. See also id. at, Ex I.

On January 10, 2007, Plaintiffs filed the instant motion for partial summary judgment seeking an order declaring that the Third Layer Insurers have a duty to pay past and future defense costs incurred by Plaintiffs in the Illinois Class Action (In Re Hollinger International Securities Litigation, No. 04C-0834 (N.D.Ill.)). [FN26] Subsequently, on January 18, 2007, Defendants filed a motion to stay first-party discovery. The motion to stay first-party discovery was followed by a motion to dismiss or stay Plaintiffs' complaint filed on January 25, 2007. [FN27]

> FN26. As stated previously, International and the Outside Directors have been sued in numerous actions arising from the Inside Directors' alleged fraudulent scheme; however, Plaintiffs have limited this motion to seeking a declaration that the Third Layer Insurers have a duty to pay past and future defense costs in one specific case, In Re Hollinger International Securities Litigation. Plaintiffs state that the parties "may be able to use the Court's ruling on this motion to resolve the Third Layer Insurers' obligations regarding the other actions at issue." Pl. Opening Brief in Support of their Mot. for Partial Summ. J., E-file 13418024, at 1.

> FN27. In a separate opinion issued today, the Court has denied Defendants' motion to dismiss and their motion to stay first-party discovery. Sun-Times Media Group, Inc., et al. v. Royal & SunAlliance Ins. Co. of Canada, et al., C.A. No. 06C-11-108 RRC, Cooch, J. (June 20, 2007).

The Canadian Court issued a decision on March 22, 2007 dismissing both the Hollinger Inc. and the Blacks applications as "premature." The Canadian Court held that "the knowledge possessed by Radler is imputed to [Hollinger] Inc." [FN28] However, the Canadian Court held further that "until more is known, the plea and settlement by Radler and the Agreement made by [Hollinger] Inc., at the very least require further exploration." [FN29] In addition, the Canadian Court determined the insurance policy was one of indemnity. The Canadian Court went on to state that in an indemnity policy, "one must look to see which claims could result in indemnity. If they cannot, there is no obligation to advance defence costs." [FN30]

> FN28. Def. March 23, 2007 letter to the Court, E-File 14233870, Ex 1, at ¶ 43.

> FN29. Id. at ¶ 46.

> FN30. Id. at ¶ 28.

*7 The Canadian Court reasoned that it did not have enough information to determine whether the underlying claims could result in indemnity, as well as whether the personal conduct exclusions

(C) 2007 Thomson/West. No Claim to Orig. US Gov. Works.



Slip Copy   Page 21
(Cite as: 2007 WL 1811265, *7 (Del.Super.))

contained in the applicable policies would preclude either indemnification or advancement of defense costs to either the Blacks or Hollinger Inc. Similarly, the Canadian Court declared that "[i]f Conrad Black is acquitted and civil proceedings do not proceed, he may well be entitled to claim defence costs of the civil proceedings named above and can renew his request at that time." [FN31] Hollinger Inc. has apparently appealed the decision. [FN32] The record does not indicate whether the Blacks have also appealed the Canadian Court's decision.

> FN31. Id. at ¶ 47.
>
> FN32. Pl. April 9, 2007 letter to the Court, E-File 14421046.

II. THE PARTIES' CONTENTIONS

In this motion for partial summary judgment, the Plaintiffs seek advancement of defense costs for expenses incurred defending the Illinois Class Action. Plaintiffs assert that courts routinely decide an insurer's defense obligations as a matter of law on summary judgment. [FN33] Plaintiffs contend that it is undisputed that certain of the claims in the Illinois Class Action are securities claims. Plaintiffs further contend that the plain language of the policy guarantees advancement of such defense costs. In addition, Plaintiffs point out that, unlike here, the Canadian applications dealt with "oppressive conduct" claims. [FN34]

> FN33. Pl. Opening Brief in Support of their Mot. for Partial Summ. J., at 9.
>
> FN34. "Oppressive conduct" claims are defined in the insurance policy as: "a Claim brought by or on behalf of a shareholder of an Organization against the Organization or any Executive of the Organization with respect to such shareholder's interest in securities of such Organization, whether directly or by class action, which alleges a violation of the oppression or unfairly prejudicial provisions of the Canada Business Corporations Act...." Van Horn Aff., Ex. 1, at 5.

Moreover, Plaintiffs assert that none of the exclusions contained in the policy should preclude the present advancement by the Third Layer Insurers of defense costs. Plaintiffs claim that Radler's plea agreement cannot apply to them because the Illinois Class Action includes transactions that were not part of Radler's guilty plea. Therefore, Plaintiffs contend that none of the exclusions contained in the policy apply because as a matter of law the fraudulent acts of Radler are not imputed to International or to the Outside Directors.

Moreover, Plaintiffs assert that, on the present record, there has been no breach of the cooperation clause that now precludes advancement of defense costs. In addition, Plaintiffs argue that the consent-to-settle provisions of the policies were not breached by the settlement in the Cardinal action, and should not be used to preclude the advancement of defense costs. Therefore, Plaintiffs contend that both the Outside Directors and International are entitled at this time to the advancement of defense costs. [FN35]

> FN35. Plaintiffs request further proceedings to determine the amount of defense costs. Pl. Opening Brief in Support of their Mot. for Partial Summ. J., at 23.

Although Plaintiffs concede that they theoretically might ultimately have to repay the advanced defense costs to the Third Layer Insurers, they argue that that possibility is no reason not to grant their present requests for defense costs. Plaintiffs assert that now is not the appropriate time to decide the applicability of any exclusions. [FN36] Plaintiffs contend that even if it is shown at a later time that they were not now entitled to defense costs (because of their falling within the exclusions), the Third Layer Insurers can recover any defense costs that are found to have been improperly paid out.

> FN36. Pl. Reply Brief in Support of their Mot. for Partial Summ. J., E-file 13864146, at 8

*8 In response, Defendants argue that partial summary judgment for advancement of defense costs is not appropriate. Defendants argue that the Court must first determine choice of law in order to apply the appropriate insurance principles. [FN37] Defendants argue that because Plaintiffs do not advance an argument as to which state law applies with respect to interpretation of the insurance contracts, [FN38] but rather make only general statements that the law of some state in the United States will apply, summary judgment is improper.

(C) 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Westlaw

Slip Copy
(Cite as: 2007 WL 1811265, *8 (Del.Super.))

Page 22

[FN39] In addition, Defendants argue that a choice of law determination is necessary to determine applicable policy provisions because without a choice of law determination, it is impossible to know whether the Worldwide Extension applies. Defendants assert that without knowing whether the Worldwide Extension applies, there exists a material issue of fact that should defeat summary judgment. [FN40] Defendants have not suggested the need for further discovery and contend that the present record is enough to defeat summary judgment. [FN41]

> FN37. Tr. of March 16, 2007 Oral Argument, at 74.
>
> FN38. Pl. Reply Brief in Support of their Mot. for Partial Summ. J., at 4 ("Defendants have failed to demonstrate any conflict of law between Canada and any potentially applicable law in the United States (i.e., Illinois, New York, or Delaware).").
>
> FN39. Tr. of March 16, 2007 Oral Argument, at 73-74.
>
> FN40. Def. Opposition to Pl. Mot. for Partial Summ. J., at 8.
>
> FN41. Defendants advised the Court that they did not bring their own summary judgment motion because of their pending motion to dismiss or stay. Tr. of March 16, 2007 Oral Argument, at 71.

Moreover, the Defendants argue that the Outside Directors have no claim for defense costs as a matter of law because International is currently advancing their costs in the Illinois Class Action, and that therefore only International has a ripe claim for reimbursement of defense costs under the policy. Defendants further assert that International is not entitled to defense costs because it is precluded under two exclusions in the applicable policies. Defendants specifically cite exclusion 4(a) stating:
> [T]he Insurer shall not be liable to make any payment for Loss in connection with any Claim made against an Insured] arising out of, based upon or attributable to the gaining in fact of any profit or advantage to which the Insured was not legally entitled. [FN42]

> FN42. Van Horn Aff., Ex. 1, at 7.

And 4(c)

> [T]he Insurer shall not be liable to make any payment for Loss in connection with any Claim made against an Insured] arising out of, based upon or attributable to the committing in fact of any deliberate criminal or deliberate fraudulent act by the Insured. [FN43]

> FN43. Id.

Defendants also rely on the imputation clause contained at the end of the exclusions stating that:
> For the purpose of determining the applicability of the forgoing Exclusions 4(a) through 4(c) ... only facts pertaining to and knowledge possessed by any past, present, or future chairman of the board, president, chief executive officer, chief operating officer, chief financial officer or General Counsel (or equivalent position) of an Organization shall be imputed to the Organization. [FN44]

> FN44. Id. at 8.

Defendants argue that Radler's fraudulent, criminal acts are imputed to International because Radler was the President, Chief Operating Officer, and a director of both International and Hollinger Inc. Because, Defendants argue, the exclusions release the Insurers from their duty to advance defense costs, and because the Outside Directors have no present claim because they are not currently being indemnified under the policy, the Defendants state there is no duty to advance costs at this time as a matter of law.

*9 Furthermore, Defendants assert that the Cardinal Settlement violated the consent-to-settle and cooperation clauses defined in the policy, and violation of these clauses should release the Third Layer Insurers from the duty to advance costs.

Lastly, the Defendants state that the policy contains a priority-of-payment clause, which states that Insured Persons are to receive compensation before any Organization. The Third Layer Insurers argue that because Black's application for coverage was dismissed in Canada, it is impossible to advance costs to International because there has been no determination as to whether any Insured Person is allowed coverage. Defendants suggest that the Court must wait to see if any Insured Persons are owed coverage before any defense costs can be advanced to International. [FN45]

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.



Slip Copy
(Cite as: 2007 WL 1811265, *9 (Del.Super.))

Page 23

> FN45. Def. Opposition to Pl. Mot. for Partial Summ. J., at 11.

III. DISCUSSION

A. Standard of Review

Partial or full summary judgment is appropriate only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." [FN46] If, however, the record indicates that material facts are in dispute, or if "it is desirable to inquire more thoroughly into the facts in order to clarify the application of law to the circumstances," then summary judgment will not be granted. [FN47] Although the moving party has the burden of demonstrating that no material issues of fact are in dispute and it is entitled to judgment as a matter of law, the facts must be viewed "in the light most favorable to the nonmoving party." [FN48] Furthermore, "[f]rom those accepted facts the court will draw all rational inferences which favor the non-moving party." [FN49]

> FN46. Super. Ct. Civ. R. 56(c).
>
> FN47. Cook v. City of Harrington, 1990 WL 35244, at *3 (Del.Super.) (citing Ebersole v. Lowengrub, 180 A.2d 467 (Del.1962)).
>
> FN48. Mason v. United Servs. Auto. Ass'n, 697 A.2d 388, 392 (Del.1997).
>
> FN49. Merrill v. Crothall-American, Inc., 606 A.2d 96, 99 (Del.1992).

In the instant motion, the Defendants argue issue of fact only in connection with the choice of law issue and the applicability of the Worldwide Extension. All other Defendants' contentions are issues of law.

B. The Choice of Law Issue Does Not Preclude Summary Judgment Because There Is No Conflict Between United States And Canadian Law

The Court must first decide whether the choice of law issue would preclude summary judgment. Defendants assert that Canadian law will apply to the interpretation of the policy and, absent a determination of applicable law, summary judgment is inappropriate. Defendants contend that choice of law presents an issue of fact that warrants the denial of all aspects of Plaintiffs' motion for partial summary judgment. Specifically, Defendants argue that "there exists an issue of material fact as to what terms and conditions apply to coverage for the Underlying Actions." [FN50]

> FN50. Def. Opposition to Pl. Mot. for Partial Summ. J., at 8

In Eon Labs Manufacturing, Inc. v. Reliance Insurance Co., the Delaware Supreme Court stated that, absent any conflict, the Court may apply general principles that are consistent with the law of either jurisdiction. [FN51] In the instant motion, choice of law is not an issue that otherwise precludes the grant of summary judgment at this time because there is no demonstrated conflict between applicable U.S. and Canadian law. [FN52]

> FN51. Eon Labs Mfg., Inc. v. Reliance Ins. Co., 756 A.2d 889, 892 (Del.2000) (applying general insurance contract principles where the principles are consistent with the law of both jurisdictions).
>
> FN52. See C M, Inc. v. Canadian Indem. Co., 482 F.Supp. 780, 782 (D.S.D.1980) rev'd on other grounds (noting similarities between U.S and Canadian law, and stating that in insurance matters both Canadian and U.S. courts look at the laws of the other jurisdiction).

*10 Despite Defendants' assertion that the Court must now decide which law will apply, Defendants, who carry the burden of demonstrating a conflict, fail to provide any authorities evidencing a conflict between U.S. and Canadian law on the issue of interpretation of insurance contracts. [FN53] Even though Defendants urge the Court to apply the "most significant relationship" test of the Restatement (Second) of Conflict of Law § 188 (1971), the Court does not need to undergo such analysis because there is no demonstrated conflict. [FN54] Therefore, like the Delaware Supreme Court did in Eon Labs, the Court will apply general insurance contract principles. [FN55] Because it is unnecessary to decide choice of law at this time, the still-unsettled choice of law question does not preclude partial summary judgment in the instant

Slip Copy   Page 24
(Cite as: 2007 WL 1811265, *10 (Del.Super.))

motion.

> FN53. Def. Opposition to Pl. Mot. for Partial Summ. J., at 9-10. The Court also notes that Defendants provided the Court with very little substantive Canadian law, citing to only five Canadian sources. See Enigma Holdings, Inc. v. Gemplus Intern. S.A., 2006 WL 2859369, at *8 (N.D.Texas) (stating that the "[d]efendants as the party seeking to apply foreign law have the burden of proving its substance to a reasonable certainty").

> FN54. 15A C.J.S. Conflict of Laws § 28 (2002) ("The Court need not engage in any choice of law analysis where no conflict is established between laws of the states which are potentially applicable."). See also Atchison, Topeka & Santa Fe Railway Co. v. Stonewall Ins. Co., 2000 WL 34001583 (D.Kan.) (holding that the defendant insurers had the burden to demonstrate a conflict of laws and absent such a demonstration there would be no need to apply conflict of law rules).

> FN55. Eon Labs, 756 A.2d at 892.

Furthermore, because the Court is not required to make a choice of law determination, there is no need to decide now the possible applicability of the Worldwide Extension. Plaintiffs argue that regardless of the ultimate terms of coverage, the Third Layer Insurers would have no stronger defenses to coverage than they assert now. [FN56] Because the Court does not need to determine choice of law in the instant motion, there is no need to address the possible applicability of the Worldwide Extension at this time, and therefore no genuine issue of material fact exists in connection with this issue.

> FN56. Pl. Reply Brief in Support of their Mot. for Partial Summ. J., at 3.

C. The Two Personal Conduct Exclusions Do Not Override The Present Duty Of The Third Layer Insurers to Advance Defense Costs Contained In The Policy.

The plain language of the insurance policy states: THE INSURER MUST ADVANCE DEFENCE COSTS, EXCESS OF THE APPLICABLE RETNETION, PURSUANT TO THE TERMS HEREIN PRIOR TO THE FINAL DISPOSITION OF A CLAIM. [FN57]

> FN57. Van Horn Aff., Ex. 1, at 1. In the instant motion, both the Outside Directors and International seek defense costs for the Illinois Class Action. The insurance policy specifically provides coverage for both "Wrongful Acts" and "Securities Actions." Because six of the eight counts in the Illinois Class Action are securities claims against International and the remaining two counts are breach of fiduciary duty, and that action consists of allegations of "Wrongful Acts" against the Outside Directors, the Illinois Class Action is covered by the plain language of the insurance policy. Furthermore, the present motion for partial summary judgment seeking defense costs for the Illinois Class Action is different from the claims considered by the Canadian Court because the claims at issue there were oppressive conduct claims, not securities actions or wrongful conduct allegations against individuals, which are the claims at issue here.

Because the claims in the Illinois Class Action are specifically covered by the policy, and the policy is one of indemnity, one must look to see which claims could result in indemnity because only claims that could potentially result in indemnity lead to an obligation to advance defense costs. Because the claims in the Illinois Class Action are specifically covered under the insurance policy, and could potentially result in indemnity, the duty to advance defense costs is now triggered. [FN58]

> FN58. See In re Worldcom, Inc. Sec. Litig., 354 F.Supp.2d 455, 464 (S.D.N.Y.2005) (stating that the duty to defend arises whenever a claim could potentially fall within the terms of the policy); Wedtech Corp. v. Federal Ins. Co., 740 F.Supp. 214, 221 (S.D.N.Y.1990); PepsiCo v. Continental Casualty Co., 640 F.Supp. 656, 659-60 (S.D.N.Y.1986); see also Brady v. i2 Techs. Inc., 2005 WL 3691286, *3 (Del.Ch.) (stating that [a]dvancement is an option to borrow, triggered upon the initiation of a lawsuit or proceeding)

*11 In addition, because the Outside Directors and International are defined separately under the policy, the Court must consider the claim of International and the claims of the Outside Directors separately. Both parties have a right to seek declaratory relief under 10 Del. C. § 6503, which authorizes a cause

(C) 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Westlaw.

Slip Copy                                                                                              Page 25
(Cite as: 2007 WL 1811265, *11 (Del.Super.))

of action for a declaration of a party's rights. [FN59] The Outside Directors are defined as "Insured Persons" under the policy, and although they are currently being reimbursed by International, [FN60] they have incurred defense costs as a result of the Illinois Class Action even though International is paying the costs. The fact that International has paid some or all of the costs does not relieve the Third Layer Insurers from their duty under the policy to advance defense costs.

> FN59. Gilmour v. PEP Modular Computers, Inc., 1995 WL 791001, at * 2 (Del.Super.) (stating a party may seek declaratory relief when a legal relationship is called into question); see also Energy Partners Ltd. v. Stone Energy Corp., 2006 WL 2947483, at *6 (Del.Ch.) (noting that "[p]arties to a contract can seek declaratory judgment to determine 'any question of construction or validity' and can seek a declaration of 'rights, status or other legal relations thereunder.' ").
>
> FN60. Def. Opposition to Pl. Mot. for Partial Summ. J., at 11.

Furthermore, the Outside Directors are not precluded from seeking defense costs by either of the two personal conduct exclusions, both related to the Radler plea agreement. The plain language of the imputation clause states:

> For the purpose of determining the applicability of the forgoing Exclusions 4(a) through 4(c) ... only facts pertaining to an knowledge possessed by any past, present, or future chairman of the board, president, chief executive officer, chief operating officer, chief financial officer or General Counsel (or equivalent position) of an Organization shall be imputed to the Organization. [FN61]

> FN61. Van Horn Aff., Ex.1 at 8. This language specifically refers to an "Organization," not an individual. Even though Defendants argue that the Radler plea agreement should preclude coverage because of the imputation of fraud, this logic does not apply to the Outside Directors because they are not defined as an "Organization" under the terms of the policy. All parties agree that the personal conduct exclusions would not apply to the Outside Directors.

Moreover, International, in addition to the Outside Directors, is permitted to recover its own defense costs as well as the costs it paid the Outside Directors, and is not precluded from coverage by the either of the two personal conduct exclusions. Even though the Third Layer Insurers rely on the imputation of the two personal conduct exclusions to preclude coverage, the policy contains an unequivocal duty to advance defense costs prior to the final disposition of a claim by stating:

THE INSURER MUST ADVANCE DEFENCE COSTS, EXCESS OF THE APPLICABLE RETNETION, PURSUANT TO THE TERMS HEREIN PRIOR TO THE FINAL DISPOSITION OF A CLAIM. [FN62]

> FN62. Id. at 1. In addition, the policy is one of indemnity, so one must look to see which claims could result in indemnity because only claims that could potentially result in indemnity lead to an obligation to advance defense costs. Because the claims in the Illinois Class Action are specifically covered under the insurance policy, and could potentially result in indemnity, the duty to advance defense costs is triggered. [FN63]
>
> FN63. See In re Worldcom, 354 F.Supp.2d at 464 ("The duty to pay defense costs 'exists whenever a complaint against the insured alleges claims that may be covered under the insurer's policy.' ").

Furthermore, the personal exclusions do not override a present contractual duty to advance defense costs unless the Defendants can unequivocally now show that all of the allegations in the Illinois Class Action complaint fall within the personal conduct exclusions. [FN64] Defendants have failed to show at this juncture that any of the exclusions are definitely imputed to International. Even though Defendants argue that Radler's guilty plea imputes the exclusions to International, the Illinois Class Action includes transactions that were not part of Radler's guilty plea. Defendants attempt to expand the scope of Radler's guilty plea by arguing the exclusions require a broad reading. However, an exclusion clause in an insurance contract is construed strictly to give the interpretation most beneficial to the insured. [FN65] Because the Defendants have failed to show at this time the applicability of the exclusions to International, the Court need not decide the potential applicability of the exclusions at this time. [FN66]

> FN64. See Int'l Paper Co. v. Cont'l Casualty Co.,

(C) 2007 Thomson/West. No Claim to Orig. US Gov. Works.



35 N.Y.2d 322, 361 N.Y.S.2d 873, 320 N.E.2d 619, 621 (N.Y.1974) (stating that if an insurer seeks to be relieved of a duty to defend, it carries the burden of showing the policy exclusions apply); see also Happy House Amusement v. New Hampshire Ins. Co., 135 N.H. 719, 609 A.2d 1231, 1232-33 (N.H.1992); United States Fidelity & Guar. Co. v. Johnson Shoes, 123 N.H. 148, 461 A.2d 85, 87 (N.H.1983).

FN65. See, e.g., Alstrin v. St. Paul Mercury Ins. Co., 179 F.Supp.2d 376, 400 (D.Del.2002) (stating that an "illegal profit" exclusion should be construed strictly); see also Cochran v. State Farm Mut. Auto. Ins. Co., 298 So.2d 173, 174 (Fla.Dist.Ct.App.1974) (stating that "grants of coverage must be interpreted broadly in favor of the existence of insurance while limitations thereon, or exclusions, must be interpreted narrowly against the insurance company").

FN66. Pl. Reply Brief in Support of their Mot. for Partial Summ. J., at 8.

*12 Even if it were shown at a later time that the exclusions apply, this still does not prevent the advancement of defense costs at the present time because the policy provides that the Insured must pay back money they received but were not entitled to. The policy specifically says that:

> Such advance payments by the Insurer shall be repaid to the Insurer by each and every insured or Organization, severally according to their respective interests, in the event and to the extent that any such insured or Organization shall not be entitled under this policy to payment of such Loss. [FN67]

FN67. Van Horn Aff., Ex. 1, at 10. Therefore, the plain language of the policy guaranteeing an advancement of defense costs is not precluded by any imputation of exclusions to International, as well as (as explained earlier) to the Outside Directors.

D. The Consent-to-Settle And Cooperation Clauses Were Not Breached As A Result Of The Cardinal Settlement, And Do Not Preclude The Advancement Of Defense Costs.

The cooperation clause and the consent-to-settle provisions also do not preclude the present advancement of defense costs. The cooperation clause allows the insurer the opportunity to participate in the case by stating in pertinent part:

> The Insurer shall at all times have the right, but not the duty, to participate ... settlement ... of any Claim covered by this Policy which appears to the Insurer to be likely to involve the Insurer. [FN68]

FN68. Van Horn Aff., Ex. 4, at 2-3. However, this cooperation clause implies that the insurer must accept coverage in order to involve itself in the litigation because an insurer that has not accepted coverage should not have a right to force the insureds to forgo a settlement that is in their best interests. [FN69] Here, the Third Layer Insurers never accepted coverage for the Cardinal action and never consented to the Cardinal settlement. [FN70] Defendants contend that they had only reserved their rights with respect to coverage as of the time of the Cardinal settlement, [FN71] but Defendants have not shown that the Plaintiffs violated the cooperation clause. Because the Defendants reserved their rights with respect to coverage and later denied coverage, they should not have "veto power" [FN72] over the settlement process. [FN73] When the Defendants reserved their rights to accept coverage, Plaintiffs were allowed to take reasonable measures to defend themselves, including settlement. [FN74]

FN69. Miller v. Shugart, 316 N.W.2d 729, 733-34 (Minn.1982) (stating that "while the ... insureds have a duty to cooperate with the insurer, they also have a right to protect themselves against plaintiff's claim ... Nor, do we think, can the insurer who is disputing coverage compel the insureds to forgo a settlement which is in their best interests").

FN70. Reidy Aff., E-file 13864146, Ex. 4, at 4. (Andrew M. Reidy is a partner in the law firm of Howrey LLP in Washington D.C. and counsel for both International and the Outside Directors. Reidy Aff. at ¶ 3.)

FN71. Def. Opposition to Pl. Mot. for Partial Summ. J., at 20.

FN72. Plaintiffs state that they fear that non-participating insurers could hold a "veto" over a settlement not within their limits. Pl. Reply Brief in Support of their Mot. for Partial Summ. J., at 13.

Slip Copy
(Cite as: 2007 WL 1811265, *12 (Del.Super.))

Page 27

> FN73. See, e.g., Miller, 316 N.W.2d at 733-34 (stating that an insured did not breach the cooperation clause when the insurer was contesting coverage).
>
> FN74. Ins. Co. of N. Am. v. Spangler, 881 F.Supp. 539, 545 (D.Wy.1995) ("The insurer's insertion of a policy defense by way of reservation or nonwaiver agreement narrows the reach of the cooperation clause and permits the insured to take reasonable measures to protect himself against the danger of personal liability.").

In addition, the consent-to-settle provision does not preclude the advancement of defense costs because the consent of the Third Layer Insurers was not required. The consent-to-settle provision states:

> The Insureds shall not ... enter into any settlement agreement ... or incur any Defence Costs without the prior written consent of the Insurer. Only those settlements, stipulated judgments and Defence Costs which have been consented to by the Insurer shall be recoverable as Loss under the terms of this policy. The Insurer's consent shall not be unreasonably withheld, provided that the Insurer shall be entitled to effectively associate in the defence, the prosecution, and the negotiation of any settlement of any Claim that involves or appears reasonably likely to involve the Insurer. [FN75]

> FN75. Van Horn Aff., Ex. 1, at 10. *13 All the policy requires is that consent is obtained from the parties actually funding the settlement. Because no funds from the Third Layer Insurers were used to fund the Cardinal Settlement, Plaintiffs were not required to obtain consent. [FN76]
>
> FN76. Pl. Reply Brief in Support of their Mot. For Partial Summ. J., at 13-14.

Furthermore, the Cardinal Settlement did not prejudice the Defendants. [FN77] Even though Defendants argue that they are prejudiced because they are involved in coverage litigation and face the prospect of paying for claims other than the Cardinal Settlement, this argument fails because Defendants have failed to prove that the outcome of the underlying case would have been different had there been cooperation. [FN78] Because the Defendants were not prejudiced by the Cardinal Settlement and never accepted any coverage for the Settlement, neither the cooperation clause nor the consent-to-settle provision was breached. [FN79] Therefore, there is a duty to advance defense costs.

> FN77. M.F.A. Mut. Ins. Co. v. Cheek, 66 Ill.2d 492, 6 Ill.Dec. 862, 363 N.E.2d 809, 813 (Ill.1977) ("[U]nless the alleged breach of the cooperation clause substantially prejudices the insurer in defending the primary action, it is not a defense under the contract").
>
> FN78. 22 HOLMES' APPLEMAN ON INSURANCE 2D § 138.7 (2003) ("To prove actual prejudice, the insurer must prove that the outcome of the underlying case would have been different had the insurer received the cooperation of the insured.")
>
> FN79. Despite Plaintiffs' arguments that Joseph Smick's affidavit is prejudicial against their case, it is unnecessary for the Court to discuss credibility at this time. Tr. of March 16, 2007 Oral Argument, at 63-64.

E. The Priority-of-Payments Clause Does Not Preclude The Advancement of Defense Costs.

Lastly, the priority-of-payment provision is not an issue in the current motion because the Outside Directors will receive advancement of defense costs. Although the Defendants argue that they cannot pay International because the priority-of-payments provision states that Insured Persons must be paid before an Organization, this argument is not persuasive here because the Outside Directors are going to receive advancement of defense costs. Therefore, both the Outside Directors and International are entitled to compensation under the policy.

IV. CONCLUSION

For the above reasons, Plaintiffs' motion for partial summary judgment against the Third Layer Insurers on the duty to pay defense costs is GRANTED. [FN80]

> FN80. The Court will undertake appropriate proceedings, as requested by Plaintiffs, to determine the amount of defense costs that the Third Layer Insurers must now pay.

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Westlaw.

Slip Copy
(Cite as: 2007 WL 1811265, *13 (Del.Super.))

Page 28

IT IS SO ORDERED.

2007 WL 1811265 (Del.Super.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Westlaw