# U.S. SPECIALTY INSURANCE COMPANY
## Houston, Texas

**NOTICE: THIS IS A CLAIMS MADE POLICY WHICH APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD OR, IF APPLICABLE, THE DISCOVERY PERIOD. THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED, AND MAY BE EXHAUSTED, BY THE PAYMENT OF DEFENSE COSTS. DEFENSE COSTS WILL BE APPLIED AGAINST THE RETENTION. THE INSURER HAS NO DUTY UNDER THE POLICY TO DEFEND ANY INSURED.**

## DECLARATIONS

### DIRECTORS, OFFICERS AND CORPORATE LIABILITY INSURANCE POLICY

POLICY NUMBER: 24-MGU-05-A10821        RENEWAL OF: N/A

ITEM 1.    **NAMED CORPORATION:**    Refco Inc.
550 W. Jackson Blvd., Suite 1300
Chicago, IL 60661

ITEM 2.    **POLICY PERIOD:**    (a)  Inception Date: 8/11/2005
(b)  Expiration Date: 8/11/2006
at 12:01 a.m. at the Principal Address stated in Item 1.

ITEM 3.    **LIMIT OF LIABILITY** (inclusive of Defense Costs):
$10,000,000 in the aggregate, for INSURING AGREEMENTS A and B combined

ITEM 4.    **RETENTIONS:**
(a)  INSURING AGREEMENT A:        $0 or minimum required under applicable law, if any
(b)  INSURING AGREEMENT B(1):    $300,000 for Loss arising from Claims alleging the same Wrongful Act or related Wrongful Acts (waivable under the circumstances described in CONDITION (A)(5))
(c)  INSURING AGREEMENT B(2):    $500,000 for Loss arising from Claims alleging the same Wrongful Act or related Wrongful Acts (waivable under the circumstances described in CONDITION (A)(5))

ITEM 5.    **PREMIUM:** $395,000.00

ITEM 6.    **NOTICES REQUIRED TO BE GIVEN TO THE INSURER MUST BE ADDRESSED TO:**

HCC GLOBAL FINANCIAL PRODUCTS
P.O. Box 4018
Farmington, CT 06034
Attention: Claims Manager

ITEM 7.    **DISCOVERY PERIOD:**
(a)  Premium:  150% of the Annual Premium.
(b)  Duration:  365 days

ITEM 8.    **ENDORSEMENTS ATTACHED AT ISSUANCE:**
1117C-IL  991-301  991-302  991-319  991-322  991-412  991-415  991-442  991-444 991-701
991-804 991-830  991-861  991-876  991-1122  80016

IN WITNESS WHEREOF, the Insurer has caused this Policy to be signed on the Declarations Page by its President, a Secretary and a duly authorized representative of the Insurer.

_Michael L. Schell_
Secretary

_[signature]_
President

_Peter [signature]_
Authorized Representative

Date: September 23, 2005                                    USSIC-990 (04/2002)

**EXHIBIT**

_B_

# U. S. SPECIALTY INSURANCE COMPANY

### DIRECTORS, OFFICERS AND CORPORATE LIABILITY INSURANCE POLICY

#### This is a claims made policy. Please read it carefully.

In consideration of the payment of the premium, and in reliance upon the statements made in the **Application**, including attachments, all of which are made a part hereof and deemed attached hereto, and subject to the Declarations and the limitations, conditions, provisions, any endorsements to and all other terms of this Policy, the Insurer and the **Insureds** agree as follows:

## INSURING AGREEMENTS

(A)     The Insurer will pay to or on behalf of the **Insured Persons Loss** arising from **Claims** first made during the **Policy Period** or Discovery Period (if applicable), against the **Insured Persons** for **Wrongful Acts**, except when and to the extent that the **Company** has paid such **Loss** to or on behalf of the **Insured Persons** as indemnification or advancement.

(B)     The Insurer will pay to or on behalf of the **Company Loss** arising from:

      (1)     **Claims** first made during the **Policy Period** or the Discovery Period (if applicable) against the **Insured Persons** for Wrongful Acts, if the **Company** has paid such **Loss** to or on behalf of the **Insured Persons** as indemnification or advancement, and/or

      (2)     **Securities Claims** first made during the **Policy Period** or the Discovery Period (if applicable) against the **Company** for **Wrongful Acts**.

## DEFINITIONS

(A)     **Application** means the application attached to and forming part of this Policy, including any materials submitted in connection with such application, all of which are deemed a part of the Policy.

(B)     **Claim** means:

      (1)     any written demand for monetary or non-monetary relief,

      (2)     any civil proceeding commenced by service of a complaint or similar pleading,

      (3)     any arbitration, mediation or other similar dispute resolution proceeding,

      (4)     any criminal proceeding commenced by return of an indictment,

      (5)     the receipt by an **Insured Person** of a target letter or similar document in connection with a criminal investigation of such **Insured Person**, or

      (6)     any administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document;

including any appeal from any such proceeding.

(C)     **Company** means the Named Corporation and any **Subsidiary** thereof.

(D)     **Defense Costs** means reasonable fees, costs and expenses consented to by the Insurer (including premiums for any appeal bond, attachment bond or similar bond) resulting from the investigation,

U.S. SPECIALTY INSUR_ _CE COMPANY 

adjustment, defense or appeal of a **Claim** against an **Insured Person** (or, with respect to **Securities Claims**, against any **Insured**), but excluding salaries, wages, benefits or overhead expenses of directors, officers or employees of the **Company**.

(E)    **Insured** means the **Insured Persons** and the **Company**.

(F)    **Insured Person** means:

    (1)    any past, present or future director or officer of the **Company**, including any person in a position which is the functional equivalent of a director or officer with respect to any entity included within the definition of **Company** or **Outside Entity** located outside the United States, and

    (2)    with respect only to **Securities Claims**, any past, present or future employee of the **Company**.

(G)    **Loss** means **Defense Costs** and any damages, settlements, judgments or other amounts (including punitive or exemplary damages and the multiplied portion of any multiplied damage award, if and where insurable by law) that:

    (1)    an **Insured Person** is legally obligated to pay as a result of any **Claim**, or

    (2)    the **Company** is legally obligated to pay as a result of any **Securities Claim**;

    provided, that **Loss** will not include wages, fines, taxes or penalties or matters which are uninsurable under the law pursuant to which this Policy is construed.  For purposes of determining whether punitive or exemplary damages or the multiplied portion of any multiplied damage award arising from any **Claim** shall be insurable by law, the Insurer agrees to abide by the law of whichever jurisdiction is applicable to such **Claim** and is most favorable to the **Insureds** in that regard.

(H)    **Named Corporation** means the entity designated as such in Item 1 of the Declarations.

(I)    **No Liability** means all defendant **Insureds** obtain by reason of a motion to dismiss, motion for summary judgment or trial a final non-appealable judgment in their favor.

(J)    **Outside Capacity** means service by an **Insured Person** as a director, officer, trustee, regent or governor of, or in another equivalent executive position with respect to, an **Outside Entity**, during such time that such service is at the request of the **Company**.

(K)    **Outside Entity** means any not-for-profit corporation, association, organization or entity.

(L)    **Policy Period** means the period set forth in Item 2 of the Declarations, subject to prior termination or cancellation pursuant to CONDITION (E).

(M)    **Pollutants** means any seepage, pollution or contamination, including but not limited to any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, waste, and materials to be recycled, reconditioned or reclaimed.

(N)    **Securities Claim** means a **Claim** which:

    (1)    is brought by or on behalf of one or more securities holders of the **Company** in their capacity as such, or

U.S. SPECIALTY INSURANCE COMPANY 

(2)     arises from the purchase or sale of, or offer to purchase or sell, any securities issued by the **Company**, whether such purchase, sale or offer involves a transaction with the **Company** or occurs in the open market.

(O)     **Subsidiary** means any entity:

(1)     during any time on or before the inception of the **Policy Period** in which the **Named Corporation** owns or owned more than 50% of the issued and outstanding securities representing the right to vote for the election of such entity's directors (or the legal equivalent thereof), either directly or indirectly through one or more other **Subsidiaries**; or

(2)     created or acquired during the **Policy Period** during any time in which, as a result of such creation or acquisition, the **Named Corporation** owns more than 50% of the issued and outstanding securities representing the right to vote for the election of such entity's directors (or the legal equivalent thereof), either directly or indirectly through one or more other **Subsidiaries**.

An entity ceases to be a **Subsidiary** when the **Named Corporation** ceases to own more than 50% of its issued and outstanding securities representing the right to vote for the election of such entity's directors (or the legal equivalent thereof), either directly or indirectly through one or more other **Subsidiaries**. The coverage afforded under this Policy with respect to **Claims** against a **Subsidiary** or any **Insured Person** thereof will apply only in respect of **Wrongful Acts** committed or allegedly committed after the effective time that such entity becomes a **Subsidiary** and prior to the time that such entity ceases to be a **Subsidiary**.

(P)     **Wrongful Act** means any:

(1)     actual or alleged act, error, misstatement, misleading statement, omission or breach of duty:

(a)     by an **Insured Person** in his or her capacity as such, including in an **Outside Capacity**, or

(b)     with respect only to **Securities Claims**, by the **Company**; or

(2)     matter claimed against an **Insured Person** solely by reason of his or her service in such capacity or in an **Outside Capacity**.

## EXCLUSIONS

Unless otherwise specifically stated or provided for in CONDITION (D)(2) or elsewhere in this Policy, the Insurer will not be liable to make any payment of **Loss** in connection with a **Claim**:

(A)     arising out of based upon or attributable to the gaining by any **Insured** of any profit or advantage to which such **Insured** was not legally entitled; provided, that this EXCLUSION (A) will apply only if there has been a final adjudication adverse to such **Insured** establishing that the **Insured** gained such a profit or advantage;

(B)     arising out of, based upon or attributable to the commission by any **Insured** of any criminal or deliberately fraudulent or dishonest act; provided, that this EXCLUSION (B) will apply only if there has been a final adjudication adverse to such **Insured** establishing that the **Insured** so acted;

(C)     for any actual or alleged bodily injury, sickness, mental anguish, emotional distress, disease or death of any person or damage to or destruction of any tangible property, including the loss of use thereof, or for injury from any actual or alleged libel, slander, defamation or disparagement or

U.S. SPECIALTY INSURANCE COMPANY 

violation of a person's right of privacy; provided, that this EXCLUSION (C) will not apply to **Securities Claims;**

(D)    for the actual, alleged or threatened discharge, dispersal, release or escape of **Pollutants** or any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants;** provided, that this EXCLUSION (D) will not apply to **Securities Claims;**

(E)    for any actual or alleged violation of the Employee Retirement Income Security Act of 1974 or any regulations promulgated thereunder or of any similar law or regulation; provided, that this EXCLUSION (E) will apply only to **Claims** involving employee pension or welfare benefit plans organized or sponsored by the **Company** for its own employees, and will not apply to **Securities Claims;**

(F)    brought by or on behalf of, or in the name or right of, the **Company**, whether directly or derivatively, or any **Insured Person**, unless such **Claim** is:

    (1)    brought and maintained independently of, and without the solicitation, assistance or active participation of, the **Company** or any **Insured Person**, or

    (2)    for an actual or alleged wrongful termination of employment, or

    (3)    brought or maintained by an **Insured Person** for contribution or indemnity and directly results from another **Claim** covered under this Policy, or

    (4)    brought and maintained by an employee of the **Company** solely to enforce his or her rights as a holder of securities issued by the **Company;**

provided, that this EXCLUSION (F) will not apply to **Claims** brought by a trustee in bankruptcy, receiver, conservator, rehabilitator, liquidator or other similar official duly appointed with respect to the **Company;**

(G)    by or on behalf of, or in the name or right of, any **Outside Entity**, whether directly or derivatively, against an **Insured Person** for a **Wrongful Act** in his or her **Outside Capacity** with respect to such **Outside Entity**, unless such **Claim** is brought and maintained independently of, and without the solicitation, assistance or active participation of, the **Outside Entity**, the **Company** or any **Insured Person;**

(H)    arising out of, based upon or attributable to facts or circumstances alleged, or to the same or related **Wrongful Acts** alleged or contained, in any claim which has been reported, or with respect to which any notice has been given, under any policy of which this Policy is a renewal or replacement or which it may succeed in time; or

(I)    arising out of, based upon or attributable to any pending or prior litigation as of the inception date of this Policy, or alleging or derived from the same or essentially the same facts or circumstances as alleged in such pending or prior litigation.

For purposes of determining the application of the above EXCLUSIONS, no **Wrongful Act** of any **Insured Person** will be imputed to any other **Insured Person** who did not have actual knowledge of, or directly participate in the commission of, such **Wrongful Act** and, except for **Wrongful Acts** of the **Company's** chairman of the board, chief executive officer, president, chief financial officer or general counsel, no **Wrongful Act** of any **Insured Person** will be imputed to the **Company.**

DISCOVERY PERIOD

If the Insurer or the **Named Corporation** fails or refuses to renew this Policy or if the **Named Corporation** cancels this Policy, any **Insured** will have the right, upon payment of the Discovery Period Premium set

U.S. SPECIALTY INSURANCE COMPANY

forth in Item 7(a) of the Declarations, to an extension of the coverage granted by this Policy for the period set forth in Item 7(b) of the Declarations following the effective date of such cancellation or non-renewal (the "Discovery Period"), but only with respect to any **Wrongful Act** actually or allegedly taking place before the date of such cancellation or non-renewal. A written request for this extension, together with payment of the Discovery Period Premium, must be made within thirty (30) days after the effective date of cancellation or non-renewal of the Policy. Such Discovery Period Premium will be deemed to be fully earned as of the inception of the Discovery Period. This clause and the right contained within will not apply if this Policy is terminated by the Insurer for failure to pay any premium when due.

EXTENSIONS

(A)     Subject to its terms and conditions, this Policy will afford coverage for **Claims** for **Wrongful Acts** of an **Insured Person** if such **Claims** are made against the estates, heirs, legal representatives or assigns of an **Insured Person** who is deceased or against the legal representatives or assigns of an **Insured Person** who is incompetent, insolvent or bankrupt, to the extent that such **Claims** would have been covered by this Policy in the absence of such death, incompetence, insolvency or bankruptcy.

(B)     Subject to its terms and conditions, this Policy will afford coverage for **Claims** for **Wrongful Acts** of an **Insured Person** if such **Claims** are made against the **Insured Person's** lawful spouse solely by reason of such spouse's legal status as a spouse of the **Insured Person** or such spouse's ownership interest in property which the claimant seeks as recovery for alleged **Wrongful Acts** of the **Insured Person**. For purposes of the Policy, amounts which such spouse becomes legally obligated to pay by reason of such **Claim** will be treated as **Loss** which the **Insured Person** is legally obligated to pay on account of the **Claim** made against the **Insured Person**. This coverage extension does not apply, however, to the extent the **Claim** alleges any wrongful act or omission by the **Insured Person's** spouse.

CONDITIONS

(A)     Limit of Liability and Retention

(1)     The Insurer's maximum aggregate liability for all **Loss** on account of all **Claims** first made during the same **Policy Period**, whether covered under one or more INSURING AGREEMENTS, will not exceed the Limit of Liability set forth in Item 3 of the Declarations.

(2)     **Defense Costs** will be part of and not in addition to the Limit of Liability, and payment of **Defense Costs** will reduce the Limit of Liability. **Defense Costs**, as incurred, will also be applied against the retention.

(3)     The retention stated in Item 4(b) of the Declarations will apply to **Loss**, including **Defense Costs**, which the **Company** is required or permitted to pay as indemnification or advancement to or on behalf of the **Insured Persons**, whether or not such **Loss** is actually paid, unless the **Company** is unable to pay such **Loss** as indemnification or advancement solely by reason of its financial insolvency. For purposes of this CONDITION (A)(3), the certificate of incorporation, charter, articles of association or other organizational documents of the **Named Corporation**, each **Subsidiary** and each **Outside Entity**, including the bylaws and resolutions thereof, will be deemed to have been adopted or amended to provide indemnification and advancement to the **Insured Persons** to the fullest extent permitted by law.

(4)     The Insurer will be liable only for the amount of **Loss** in connection with any **Claim**, which is in excess of the applicable retention stated in Item 4 of the Declarations. Such retention is to be borne by the **Insureds** and remain uninsured. A single retention will

U.S. SPECIALTY INSURANCE COMPANY 

apply to **Loss** arising from all **Claims** alleging the same **Wrongful Act** or related **Wrongful Acts**.

(5)     Notwithstanding the foregoing, with respect to **Securities Claims** the retentions stated in Items 4(b) and 4(c) of the Declarations will apply only to **Defense Costs**; provided, that if a **Securities Claim** is finally resolved by a determination of **No Liability**, no retention will apply to such **Securities Claim** even as respects **Defense Costs** and the Insurer will thereupon reimburse **Defense Costs** within the retention which shall already have been paid by the **Insureds**.

(6)     One retention amount will apply to the covered portion of each and every single **Claim**. If a single **Claim** is covered under more than one INSURING AGREEMENT, the retentions stated in Item 4 of the Declarations will be applied separately to the portions of the **Claim** covered by each INSURING AGREEMENT, and the sum of the retentions so applied will constitute the retention for each single **Claim**, which in total will not exceed the largest of the applicable retentions.

(B)     <u>Notice of Claims and Reporting Provisions</u>

(1)     The **Insureds** must, as a condition precedent to the obligations of the Insurer under this Policy, give written notice, including full details, to the Insurer of any **Claim** as soon as practicable after it is made.

(2)     If written notice of a **Claim** has been given to the Insurer pursuant to CONDITION (B)(1) above, then any **Claim** subsequently made against the **Insureds** and reported to the Insurer alleging, arising out of, based upon or attributable to the facts alleged in the **Claim** of which such notice has been given, or alleging any **Wrongful Act** which is the same as or related to any **Wrongful Act** alleged in the **Claim** of which such notice has been given, will be considered to have been made at the time such notice was given.

(3)     If, during the **Policy Period** or the Discovery Period (if applicable), the **Insureds** become aware of any circumstances which may reasonably be expected to give rise to a **Claim** against the **Insureds** and if, before the end of the **Policy Period** or the Discovery Period (if applicable), the **Insureds** give written notice to the Insurer of the circumstances and the reasons for anticipating such a **Claim**, with full particulars as to dates, persons and entities involved, potential claimants and the consequences which have resulted or may result from such **Wrongful Act**, then any **Claim** subsequently made against the **Insureds** and reported to the Insurer alleging, arising out of, based upon or attributable to such circumstances or alleging any **Wrongful Act** which is the same as or related to any **Wrongful Act** described in such notice will be considered to have been made at the time such notice of circumstances was given.

(4)     All notices under this CONDITION (B) must refer to the Policy Number, must be in writing, must request coverage under this Policy, and must be given by certified mail or prepaid express courier to the address set forth in Item 6 of the Declarations.

(C)     <u>Interrelationship of Claims</u>

All **Claims** alleging, arising out of, based upon or attributable to the same facts, circumstances, situations, transactions or events or to a series of related facts, circumstances, situations, transactions or events will be considered to be a single **Claim** and will be considered to have been made at the time the earliest such **Claim** was made.

(D)     <u>Defense Costs, Settlements, Allocation of Loss, Priority of Payments</u>

U.S. SPECIALTY INSURANCE COMPANY

(1) The Insurer will have no duty under this Policy to defend any **Claim**. The **Insureds** must defend any **Claim** made against them. The **Insureds** may not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any **Defense Costs** without the Insurer's prior written consent. Only those settlements, stipulated judgments and **Defense Costs** to which the Insurer has consented will be recoverable as **Loss** under this Policy. The Insurer's consent may not be unreasonably withheld; provided, that the Insurer will be entitled to effectively associate in the defense and the negotiation of any settlement of any **Claim**.

(2) The Insurer will pay covered **Defense Costs** on an as-incurred basis. If it is finally determined that any **Defense Costs** paid by the Insurer are not covered under this Policy, the **Insureds** agree to repay such non-covered **Defense Costs** to the Insurer.

(3) If **Loss** covered by this Policy and loss not covered by this Policy are both incurred in connection with a single **Claim**, either because the **Claim** includes both covered and uncovered matters, or because the **Claim** is made both against **Insured Persons** (or, with respect only to **Securities Claims**, against **Insureds**) and against others not included within the definition of **Insured Person** (or, with respect only to **Securities Claims**, the definition of **Insured**), the **Insureds** and the Insurer agree to use their best efforts to determine a fair and proper allocation of all such amounts, taking into account the relative legal and financial exposures of the parties to the **Claim** and the relative benefits to be obtained by the resolution of the **Claim**. The Insurer will be obligated to pay only those amounts or portions of **Loss** allocated to covered matters claimed against **Insured Persons** (or, with respect only to **Securities Claims**, against **Insureds**). If the **Insureds** and the Insurer are unable to agree upon an allocation, then until a final allocation is agreed upon or determined pursuant to the provisions of this Policy and applicable law, the Insurer will be obligated to make an interim payment of that amount or portion of **Loss**, including **Defense Costs**, which the parties agree is not in dispute.

(4) If the Insurer is obligated to pay **Loss**, including **Defense Costs**, under more than one INSURING AGREEMENT, whether in connection with a single **Claim** or multiple **Claims**, the Insurer will first pay any **Loss** payable under INSURING AGREEMENT (A) and, if the Insurer concludes that the amount of all **Loss**, including **Defense Costs**, is likely to exceed the Insurer's Limit of Liability, the Insurer shall be entitled to withhold some or all of any **Loss** payable under INSURING AGREEMENT (B)(1) or (B)(2) to ensure that as much of the Limit of Liability as possible is available for the payment of **Loss** under INSURING AGREEMENT (A). If no **Loss** is payable under INSURING AGREEMENT (A), or if the Insurer's obligations under INSURING AGREEMENT (A) have been satisfied, then, subject to the Insurer's Limit of Liability as set forth in Item 3 of the Declarations, the Insurer will pay such **Loss** as it is required to pay under INSURING AGREEMENT (B)(1) or (B)(2) in such manner and, in the event of multiple **Claims**, apportioned among such **Claims** as the **Named Corporation** shall direct in writing.

(E) <u>Cancellation or Nonrenewal</u>

(1) The Insurer may cancel this Policy for non-payment of premium by sending not less than ten (10) days notice to the **Named Corporation** at its last known address. The Insurer may not otherwise cancel this Policy.

(2) The **Named Corporation** may cancel this Policy by mailing the Insurer written notice stating when such cancellation will be effective; provided, that the **Named Corporation** may not cancel this Policy after the effective date of any acquisition of the **Named Corporation** as described in CONDITION (F) below. If the **Named Corporation** cancels this Policy, the Insurer will retain the customary short rate premium. Premium adjustment may be made either at the time cancellation is effective or as soon as

U.S. SPECIALTY INSURANCE COMPANY 

practicable after cancellation becomes effective, but payment of unearned premium is not a condition of cancellation.

(3)     If the Insurer elects not to renew this Policy, the Insurer must give the **Named Corporation** notice of non-renewal no less than sixty (60) days before the end of the **Policy Period**.

(4)     If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period will be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

(F)     <u>Changes in Control</u>

(1)     If, during the **Policy Period**, any of the following transactions or events (each a "Change in Control") occurs with respect to the **Named Corporation**:

(a)     the **Named Corporation** merges into or consolidates with another entity such that the **Named Corporation** is not the surviving entity, or

(b)     another entity, person or group of entities and/or persons acting in concert acquires securities or voting rights which result in ownership or voting control by the other entity(ies) or person(s) of more than 50% of the outstanding securities representing the present right to vote for the election of directors of the **Named Corporation**, or

(c)     a trustee in bankruptcy, receiver, conservator, rehabilitator, liquidator or other similar official is duly appointed with respect to the **Named Corporation**;

then coverage under this Policy will continue in full force and effect until the end of the **Policy Period** with respect to **Claims** for **Wrongful Acts** committed or allegedly committed before the effective date of such Change in Control, but coverage will cease with respect to **Claims** for **Wrongful Acts** committed or allegedly committed thereafter and the premium will be considered fully earned in consideration of the coverage extended.

(2)     If, during the **Policy Period**, any of the following transactions or events (each a "Change in Control") occurs with respect to a **Subsidiary**:

(a)     the **Subsidiary** ceases to be a **Subsidiary**, or

(b)     a trustee in bankruptcy, receiver, conservator, rehabilitator, liquidator or other similar official is duly appointed with respect to the **Subsidiary**;

then coverage under this Policy with respect to **Claims** against such **Subsidiary** or any **Insured Person** thereof will continue in full force and effect until the end of the **Policy Period** with respect to **Claims** for **Wrongful Acts** committed or allegedly committed before the effective date of such Change in Control, but coverage under this Policy with respect to **Claims** against such **Subsidiary** or any **Insured Person** thereof will cease with respect to **Claims** for **Wrongful Acts** committed or allegedly committed thereafter.

(G)     <u>Other Insurance and Other Indemnification</u>

(1)     Such insurance as is provided by this Policy will apply only as excess over and will not contribute with any other valid and collectible insurance.

**U.S. SPECIALTY INSURANCE COMPANY**

(2) All coverage for **Loss** from **Claims** against **Insured Persons** for **Wrongful Acts** in their **Outside Capacities** will be specifically excess of, and will not contribute with,

    (a) any other insurance available to such **Insured Persons** by reason of their service in **Outside Capacities**, and

    (b) any indemnification available to such **Insured Persons** in connection with their service in **Outside Capacities** from any source other than the **Company**, including but not limited to **Outside Entities**.

(H) <u>Cooperation and Subrogation</u>

    (1) In the event of any notice under CONDITION (B) of a **Claim** or of circumstances which may reasonably be expected to give rise to a **Claim**, the **Insureds** will give the Insurer all information, assistance and cooperation that the Insurer may reasonably request with respect thereto.

    (2) In the event of any payment under this Policy, the Insurer will be subrogated to the extent of such payment to all of the **Insureds'** rights of recovery, including without limitation the **Insured Persons'** rights to indemnification or advancement from the **Company**. The **Insureds** must execute all papers required and do everything necessary to secure such rights and to enable the Insurer to bring suit in their name.

(I) <u>No Action against the Insurer</u>

No action may be taken against the Insurer unless, as a condition precedent thereto, there has been full compliance with all of the terms of this Policy and until the amount of the **Insured's** obligation to pay shall have been finally determined either by judgment against an **Insured** after actual trial or by written agreement of the **Insured**, the claimant and the Insurer. No person or organization will have any right under this Policy to join the Insurer as a party to any action against the **Insureds** to determine the Insurer's liability; nor may the Insurer be impleaded by the **Insureds** or their legal representatives in any such action.

(J) <u>Notices and Authority</u>

By acceptance of this Policy, the **Insureds** agree that the **Named Corporation** may act on behalf of all **Insureds** with respect to the giving and receiving of any notices, the payment of premiums and the receiving of any return premium, the cancellation or renewal of this Policy and the acceptance of any amendments thereto.

(K) <u>Assignment</u>

No assignment of interest under this Policy will bind the Insurer without the Insurer's written consent.

(L) <u>Titles and Headings</u>

The titles and headings to the various paragraphs and sections in this Policy, including endorsements attached, are included solely for ease of reference and do not in any way limit, expand or otherwise affect the provisions of such paragraphs and sections to which they relate.

(M) <u>Representations and Severability</u>

The **Insureds** represent that the particulars and statements contained in the **Application** are true, accurate and complete and are deemed material to the acceptance of the risk assumed by the Insurer under this Policy. This Policy is issued in reliance upon the truth of such representations.

**U.S. SPECIALTY INSURANCE COMPANY**

No knowledge or information possessed by any **Insured** will be imputed to any other **Insured** except for material facts or information known to the person or persons who signed the **Application**. If any of the particulars or statements in the **Application** is untrue, this Policy will be void with respect to any **Insured** who knew of such untruth or to whom such knowledge is imputed.

(N)    <u>Changes</u>

Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the Insurer will not effect a waiver or a change in any part of this Policy or stop the Insurer from asserting any right under the terms of this Policy. This Policy cannot be waived or changed, except by written endorsement issued to form a part of this Policy.

(O)    <u>Entire Agreement</u>

By acceptance of this Policy, the **Insureds** and the Insurer agree that this Policy (including the **Application** and any materials submitted therewith) and any written endorsements attached hereto constitute the entire agreement between the parties with respect to this insurance.

(P)    <u>Territory</u>

This Policy applies to **Wrongful Acts** actually or allegedly taking place or **Claims** made anywhere in the world.

(Q)    <u>Conformity to Statute</u>

Any terms of this Policy which are in conflict with the terms of any applicable laws construing this Policy, including any endorsement to this Policy which is required by any state Department of Insurance (or equivalent authority) ("State Amendatory Endorsement"), are hereby amended to conform to such laws. Nothing herein will be construed to restrict the terms of any State Amendatory Endorsement. In addition, to the extent permissible by law, nothing in any State Amendatory Endorsement will be construed to restrict the terms of this Policy.

In witness whereof the Insurer has caused this Policy to be executed by its authorized officers, but this Policy will not be valid unless countersigned on the Declarations Page by a duly authorized representative of the Insurer.

Secretary                    President

U.S. SPECIALTY INSURANCE COMPANY

ENDORSEMENT NUMBER: 1

## ILLINOIS AMENDATORY ENDORSEMENT

This Endorsement, effective at 12:01 a.m. on 8/11/05, forms part of Policy No. 24-MGU-05-A10821, issued to Refco Inc. by U.S. Specialty Insurance Company:

In consideration of the premium charged:

DEFINITIONS (D) Defense Costs of the policy has been amended to read:

Defense Costs means reasonable fees, costs and expenses consented to by the Insurer (including premiums for any appeal bond, attachment bond or similar bond) resulting from the investigation, adjustment, defense or appeal of a Claim against an Insured Person (or, with respect to Securities Claims, against any Insured), but excluding salaries, wages, benefits or overhead expenses of directors, officers or employees of the Company or the Insurer.

DISCOVERY PERIOD of the policy has been amended to read:

If the Insurer or the Named Corporation fails or refuses to renew this Policy or if the Named Corporation cancels this Policy, any Insured will have the right, upon payment of the Discovery Period Premium set forth in Item 7(a) of the Declarations, to an extension of the coverage granted by this Policy for the period set forth in Item 7(b) of the Declarations following the effective date of such cancellation or non-renewal (the "Discovery Period"), but only with respect to any Wrongful Act actually or allegedly taking place before the date of such cancellation or non-renewal. A written request for this extension, together with payment of the Discovery Period Premium, must be made within thirty (30) days after the effective date of cancellation or non-renewal of the Policy. Such Discovery Period Premium will be deemed to be fully earned as of the inception of the Discovery Period.

CONDITIONS (G)(1) Other Insurance and Other Indemnification of the policy has been amended to read:

(1)    Such insurance as is provided by this Policy will share proportionately with similar coverages provided under any other valid and collectible insurance.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

USSIC 1117C-IL (06/04)                    Page 1 of 1

ENDORSEMENT NUMBER: 2

**EMPLOYMENT PRACTICES LIABILITY EXTENSION – NONENTITY**

To be attached to and made a part of Policy No. 24-MGU-05-A10821, issued to Refco Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged it is hereby understood and agreed that:

(1) DEFINITION (P) Wrongful Act is amended to include any **Employment Practices Wrongful Act** by an **Insured Person** in his or her capacity as such.

(2) DEFINITION (F) **Insured Person**, subsection (2) is amended to read:

(2) with respect only to **Securities Claims** and **Claims** for **Employment Practices Wrongful Acts**, any past, present or future employee of the **Company**.

(3) The following DEFINITIONS are added to the Policy:

**Discrimination** means:

(1) any failure or refusal to hire, failure or refusal to promote, demotion or discharge of, or wrongful failure to grant tenure to, any person, or

(2) any limitation, segregation or classification of any employee or applicant for employment in any way that would deprive or tend to deprive any person of employment opportunities or otherwise adversely affect his or her status as an employee;

because of such person's race, color, age, sex, disability, pregnancy, sexual orientation or preference, national origin, religion, or other status that is protected pursuant to any applicable federal, state or local statute or ordinance.

**Employment Practices Wrongful Act** means any actual or alleged:

(1) **Discrimination,**
(2) **Retaliation,**
(3) **Sexual Harassment,**
(4) **Workplace Harassment,**
(5) **Workplace Tort,** or
(6) **Wrongful Termination.**

**Retaliation** means retaliatory treatment against an employee of the **Company** on account of such employee's exercise or attempted exercise of his or her rights under law.

**Sexual Harassment** means unwelcome sexual advances, requests for sexual favors, or other verbal, visual or physical conduct of a sexual nature that is made a condition of employment with the **Company**, is used as a basis for employment decisions by the

991-301                         Page 1 of 2
Ed (01/03)

**Company**, creates a work environment with the **Company** that interferes with performance, or creates an intimidating, hostile or offensive working environment.

**Workplace Harassment** means conduct that creates a work environment with the **Company** that interferes with performance, or creates an intimidating, hostile or offensive working environment.

**Workplace Tort** means misrepresentation, defamation (including libel and slander), invasion of privacy, false imprisonment, negligent evaluation, negligent training or supervision, wrongful discipline or wrongful deprivation of career opportunity, if actually or allegedly related to the claimant's employment by the **Company**.

**Wrongful Termination** means actual or constructive termination of the employment of, or demotion of, or failure or refusal to promote, any employee, which is in violation of law, against public policy or in breach of an implied agreement to continue employment.

(4)     EXCLUSION (C) will not apply to Loss for mental anguish, emotional distress, libel, slander, defamation or disparagement or violation of a person's right of privacy caused by an **Employment Practices Wrongful Act**.

(5)     EXCLUSION (F), subsection (2) is amended to read as follows:

(2)     for an actual or alleged **Employment Practices Wrongful Act**;

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the policy or is not to be effective with the policy.

Effective Date of this endorsement: .

By:_____
            Attorney-in-fact

ENDORSEMENT NUMBER: 3

### ADD SPECIFIC INDIVIDUALS AS "INSURED PERSONS"

To be attached to and made a part of Policy No. 24-MGU-05-A10821, issued to Refco Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, DEFINITION (F) **"Insured Person"** is amended to include the following individuals:

Insurance Manager and General Counsel

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete Only When This Endorsement Is Not Prepared With The Policy Or Is Not To Be Effective With The Policy.

Effective Date of this endorsement:

By: _____
                         Attorney-in-Fact

991-302                            Page 1 of 1
Ed (05/00)

ENDORSEMENT NUMBER: 4

## AMEND "LOSS" TO INCLUDE PRE-JUDGMENT
## AND POST-JUDGMENT INTEREST

To be attached to and made a part of Policy No. 24-MGU-05-A10821, issued to Refco Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, DEFINITION (G) **Loss** is amended to read as follows:

(G)     **Loss** means **Defense Costs** and any damages, settlements, judgments, pre-judgment interest, post-judgment interest, or other amounts (including punitive or exemplary damages and the multiplied portion of any multiplied damage award, if and where insurable by law) that:

      (1)     an **Insured Person** is legally obligated to pay as a result of any **Claim**, or

      (2)     the **Company** is legally obligated to pay as a result of any **Securities Claim**;

provided, that **Loss** will not include wages, fines, taxes or penalties or matters which are uninsurable under the law pursuant to which this Policy is construed.  For purposes of determining whether punitive or exemplary damages or the multiplied portion of any multiplied damage award arising from any **Claim** shall be insurable by law, the Insurer agrees to abide by the law of whichever jurisdiction is applicable to such **Claim** and is most favorable to the **Insureds** in that regard.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the policy or is not to be effective with the policy.

Effective Date of this endorsement:

          By: _____

                Attorney-in-Fact

991-319
Ed (06/03)                           Page 1 of 1

ENDORSEMENT NUMBER: 5

**EMPLOYED LAWYERS EXTENSION**
**(SEPARATE LIMIT AND RETENTION)**

To be attached to and made a part of Policy No. 24-MGU-05-A10821, issued to
Refco Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged:

(1)     DEFINITION (F) **Insured Person** is amended to include any **Employed Lawyer**.

(2)     DEFINITION (P) **Wrongful Act** is amended to include any act, error, misstatement,
misleading statement, omission or breach of duty by an **Employed Lawyer**, in his or her
capacity as such, in the rendering or failure to render professional legal services for the
**Company**; provided, that **Wrongful Act** shall not include any act, error, misstatement,
misleading statement, omission or breach of duty by such **Employed Lawyer** in
connection with any activities: (1) that are not related to such **Employed Lawyer's**
employment with the **Company**; (2) that are not rendered on the behalf of the **Company**
at the **Company's** written request; or (3) that are performed by the **Employed Lawyer**
for others for a fee.

(3)     The following DEFINITION is added to the Policy:

**Employed Lawyer** means any past, present or future full-time, salaried employee of the
**Company** who is admitted to practice law and who is employed at the time of any
alleged **Wrongful Act** as a lawyer full-time for and salaried by the **Company**.

(4)     The EXCLUSIONS section of the Policy is amended by the addition of the following:

The Insurer will not be liable to make any payment of **Loss** in connection with any
**Claim** made against an **Employed Lawyer**:

(a)     alleging, arising out of, based upon or attributable to any **Wrongful Act**
occurring at a time when such **Employed Lawyer** was not employed as a lawyer
by the **Company**;

(b)     alleging, arising out of, based upon or attributable to any **Claim** made or any
prior or pending litigation as of 8/11/05, or alleging or derived from the same
facts or circumstances as alleged in such pending or prior litigation;

(c)     alleging, arising out of, based upon or attributable to any **Wrongful Act**, if as of
8/11/05, such **Employed Lawyer** knew or could have reasonably foreseen that
such **Wrongful Act** could give rise to a **Claim**;

(d)     alleging, arising out of, based upon or attributable to any activities by such
**Employed Lawyer** as an officer or director of any entity other than the
**Company**.

(5)     For purposes of the applicability of the coverage provided by this endorsement, the
**Company** will be conclusively deemed to have indemnified the **Employed Lawyer** to
the extent that the **Company** is permitted or required to indemnify him or her pursuant to

991-322                                         Page 1 of 1
(Ed. 09/03)

law, common or statutory, or contract, or the charter or by-laws of the **Company** (which are hereby deemed to adopt the broadest provisions of the law which determines and defines such rights of indemnity). The **Company** hereby agrees to indemnify the **Employed Lawyer** to the fullest extent permitted by law including the making in good faith of any required application for court approval and the passing of any corporate resolution or the execution of any contract.

(6)     The coverage provided by this endorsement shall apply only to **Claims** made against an **Employed Lawyer**, provided that, and only for so long as, one or more **Insured Persons** (other than such **Employed Lawyer**) are and remain co-defendants in the proceeding along with such **Employed Lawyer**.

(7)     The coverage provided by this endorsement is specifically excess over any other valid or collectible lawyers professional liability insurance, including but not limited to legal malpractice or other errors and omissions insurance, and shall not drop down and serve as primary insurance unless and until such other insurance has been exhausted due to actual payment of losses paid thereunder.

(8)     Solely for purposes of the coverage provided under this endorsement:

    (a)     The Insurer's maximum aggregate liability for all **Loss** on account of all **Claims** first made during the same **Policy Period** will not exceed $100,000 ("the Employed Lawyers Coverage Limit"). The Employed Lawyers Coverage Limit shall be separate from and in addition to the Limit of Liability set forth in ITEM 3 of the Declarations, and ITEM 3 of the Declarations is amended accordingly.

    (b)     A retention of $100,000 shall apply to **Loss** resulting from each **Claim**; provided, such retention shall not apply to **Loss** incurred by any **Employed Lawyer** if indemnification of such **Loss** by the **Company** is not legally permitted or cannot be done solely by reason of its financial insolvency, subject to paragraph (5) above.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the policy or is not to be effective with the policy.

Effective Date of this endorsement:

By: _____

              Attorney-in-Fact

991-322
(Ed. 09/03)

ENDORSEMENT NUMBER: 6

**ERRORS AND OMISSIONS EXCLUSION
WITH MANAGEMENT CARVEBACK**

To be attached to and made a part of Policy No. 24-MGU-05-A10821, issued to Refco Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that the Insurer will not be liable to make any payment of **Loss** in connection with a **Claim** arising out of, based upon or attributable to any actual or alleged rendering of or failure to render, whether by the **Company** or by any **Insured Person**, any service for others for a fee; provided, that this exclusion will not apply to a **Claim** against an **Insured Person** for a **Wrongful Act** in connection with the management or supervision of the **Company** or any division or group therein.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the policy or is not to be effective with the policy.

Effective Date of this endorsement:

By: _____
                      Attorney-in-Fact

ENDORSEMENT NUMBER: 7

SPECIFIC LITIGATION EXCLUSION

To be attached to and made a part of Policy No. 24-MGU-05-A10821, issued to Refco Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that the Insurer will not be liable to make any payment of **Loss** in connection with any **Claim** arising out of, based upon or attributable to the following litigation:

Edward McElwreath Case

or alleging or derived from the same or essentially the same facts or circumstances as alleged in such litigation.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By:_____
              Attorney-in-Fact

991-415
Ed. 09/05

Page 1 of 1

ENDORSEMENT NUMBER: 8

**AMEND POLLUTION EXCLUSION ENDORSEMENT**
**(A-SIDE CARVEBACK)**

To be attached to and made a part of Policy No. 24-MGU-05-A10821, issued to Refco Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that EXCLUSION (D) of this Policy is amended to read in its entirety as follows:

(D)    for the actual, alleged or threatened discharge, dispersal, release or escape of **Pollutants** or any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**; provided, that this EXCLUSION (D) will not apply to **Securities Claims**; provided further, that this EXCLUSION (D) will not apply to **Claims** for **Loss** payable under INSURING AGREEMENT (A);

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the policy or is not to be effective with the policy.

Effective Date of this endorsement:

By: _____
                    Attorney-in-Fact

991-442                          Page 1 of 1
Ed (05/04)

ENDORSEMENT NUMBER:  9

## AMEND EXCLUSION (C) ENDORSEMENT –
## A-SIDE CARVEBACK

To be attached to and made a part of Policy No. 24-MGU-05-A10821, issued to Refco Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that EXCLUSION (C) is amended to read in its entirety as follows:

(C)     for any actual or alleged bodily injury, sickness, mental anguish, emotional distress, disease or death of any person or damage to or destruction of any tangible property, including the loss of use thereof, or for injury from any actual or alleged libel, slander, defamation or disparagement or violation of a person's right of privacy; provided, that this EXCLUSION (C) will not apply to:

(1)     **Securities Claims,** or

(2)     **Claims** for **Loss** payable under INSURING AGREEMENT (A);

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By:_____
            Attorney-in-Fact

991-444                            Page 1 of 1
Ed. (01/05)

ENDORSEMENT NUMBER: 10

### FULL SEVERABILITY

To be attached to and made a part of Policy No. 24-MGU-05-A10821, issued to Refco Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, CONDITION (M) Representations and Severability is amended to read as follows:

(M)    Representations and Severability

The **Insureds** represent that the particulars and statements contained in the **Application** are true, accurate and complete and are deemed material to the acceptance of the risk assumed by the Insurer under this Policy. This Policy is issued in reliance upon the truth of such representations. No knowledge or information possessed by any **Insured** will be imputed to any other **Insured**. If any of the particulars or statements in the **Application** is untrue, this Policy will be void with respect to any **Insured** who knew of such untruth.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the policy or is not to be effective with the policy.

Effective Date of this endorsement:

By: _____
        Attorney-in-Fact

991-701                            Page 1 of 1
Ed (09/03)

ENDORSEMENT NUMBER: 11

## DERIVATIVE DEMAND INVESTIGATION COSTS COVERAGE

To be attached to and made a part of Policy No. 24-MGU-05-A10821, issued to Refco Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged:

(1)   INSURING AGREEMENTS is amended by the addition of the following:

The Insurer will pay to or on behalf of the **Company** all **Derivative Demand Investigation Costs** incurred by the **Company** as a result of a **Derivative Demand** first received by the **Company's** Board of Directors and reported in writing to the Insurer during the **Policy Period** or the Discovery Period, if purchased, up to the amount of the **Derivative Demand Investigation Costs Sub-Limit**.

(2)   DEFINITIONS is amended by the addition of the following:

**Derivative Demand** means a written demand by one or more shareholders of the **Company** made upon its Board of Directors to bring a civil proceeding in a court of law against an **Insured Person** for a **Wrongful Act**.

**Derivative Demand Investigation Costs** means reasonable fees, costs and expenses (including but not limited to attorneys' fees and experts' fees) incurred in connection with the investigation or evaluation of any **Derivative Demand**, but excluding wages, salaries, fees, benefits or overhead expenses of any **Insured Person**.

**Derivative Demand Investigation Costs Sub-Limit** means $250,000.

(3)   The Insurer's maximum aggregate liability for **Derivative Demand Investigation Costs** resulting from all **Derivative Demands** shall be the amount set forth in the definition of **Derivative Demand Investigation Costs Sub-Limit**, regardless of the number of **Derivative Demands** received during the **Policy Period** or the Discovery Period, if purchased.  The **Derivative Demand Investigation Costs Sub-Limit** shall be part of and not in addition to the Limit of Liability set forth in Item 3 of the Declarations, and payment of such **Derivative Demand Investigation Costs** shall reduce such Limit of Liability.

(4)   There shall be no retention applicable to **Derivative Demand Investigation Costs**.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the policy or is not to be effective with the policy.

Effective Date of this endorsement:

By:_____
                                       Attorney-in-Fact

991-804                              Page 1 of 1
Ed (06/00)

ENDORSEMENT NUMBER: 12

**SEPARATE RETENTION FOR SECURITIES CLAIMS
UNDER INSURING AGREEMENT (B)(1)**

To be attached to and made a part of Policy No. 24-MGU-05-A10821, issued to Refco Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that, solely for purposes of **Loss** payable under INSURING AGREEMENT (B)(1) arising from any **Securities Claim**, the retention stated in Item 4(b) of the Declarations is amended to be $500,000.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By:_____
                    Attorney-in-Fact

991-830                         Page 1 of 1
Ed. 07/05

ENDORSEMENT NUMBER: 13

**NON-RESCINDABLE:**
**INSURING AGREEMENT (A) ONLY**

To be attached to and made a part of Policy No. 24-MGU-05-A10821 , issued to Refco Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that, notwithstanding anything in this Policy to the contrary, the Insurer shall not be entitled under any circumstances to rescind the coverage provided under Insuring Agreement (A) of this Policy.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the policy or is not to be effective with the policy.

Effective Date of this endorsement:

By: _____
　　　　Attorney-in-Fact

991-861                    Page 1 of 1
Ed (04/04)

ENDORSEMENT NUMBER: 14

**SPECIFIC EVENT(S) EXCLUSION**

       To be attached to and made a part of Policy No. 24-MGU-05-A10821, issued to Refco Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that the Insurer will not be liable to make any payment of Loss in connection with a **Claim** arising out of, based upon or attributable to any event described hereunder.

       <u>Excluded Event(s):</u>
       Wells Notice/SEC Investigation

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

       Effective date of this endorsement:

                           By:_____
                                   Attorney-in-Fact

ENDORSEMENT NUMBER: 15

## CONTROLLING SHAREHOLDER COVERAGE – SPECIFIC PERSON(S)

To be attached to and made a part of Policy No. 24-MGU-05-A10821, issued to Refco Inc. by U.S. Specialty Insurance Company.


In consideration of the premium charged, it is agreed that:

(1)    The following INSURING AGREEMENT is added to the Policy:

The Insurer will pay to or on behalf of the **Controlling Shareholder Loss** arising from a **Securities Claim** first made during the **Policy Period** or the Discovery Period (if applicable) against such **Controlling Shareholder** for **Wrongful Acts**, provided, that one or more **Insured Persons** and/or the **Company** are and remain co-defendants in such **Securities Claim** along with such **Controlling Shareholder**.

(2)    The following DEFINITION is added to the Policy:

**Controlling Shareholder** means the following person(s):

Philip Bennett

(3)    DEFINITION (E) **Insured** is amended to read as follows:

(E)    Insured means: (1) the **Insured Persons**; (2) the **Company**; or (3) the **Controlling Shareholder** but only with respect to **Securities Claims**.

(4)    DEFINITION (G) **Loss**, subsection (2), is amended to read as follows:

(2)    the **Company** or **Controlling Shareholder** is legally obligated to pay as a result of any **Securities Claim**;

(5)    DEFINITION (P) **Wrongful Act**, subsection (1)(b), is amended to read as follows:

(b)    with respect only to **Securities Claims**, by the **Company** or by the **Controlling Shareholder** in his or her capacity as such or any matter claimed against such **Controlling Shareholder** by reason of his or her status as such; or

(6)    EXCLUSION (F) is amended to read as follows:

(F)    brought by or on behalf of, or in the name or right of, the **Company**, whether directly or derivatively, or any **Insured Person** or **Controlling Shareholder**, unless such **Claim** is:

(1)    brought and maintained independently of, and without the solicitation, assistance or active participation of, the **Company** or any **Insured Person**, or

(2)     for an actual or alleged wrongful termination of employment, or

(3)     brought or maintained by an **Insured Person** or a **Controlling Shareholder** for contribution or indemnity and directly results from another **Claim** covered under this Policy, or

(4)     brought and maintained by an employee of the **Company** solely to enforce his or her rights as a holder of securities issued by the **Company**;

provided, that this EXCLUSION (F) will not apply to **Claims** brought by a trustee in bankruptcy, receiver, conservator, rehabilitator, liquidator or other similar official duly appointed with respect to the **Company**;

(7)    A retention of $300,000 will apply to **Loss** resulting from each **Claim** for which coverage is provided under this endorsement; provided, however, that such retention will apply only to Defense Costs and will not apply to any other **Loss**.

(8)    CONDITION (F) Changes in Control, subsection (2), is amended to read as follows:

(2)    If, during the **Policy Period**, any of the following transactions or events (each a "Change in Control") occurs with respect to a **Subsidiary**:

(a)    the **Subsidiary** ceases to be a **Subsidiary**, or

(b)    a trustee in bankruptcy, receiver, conservator, rehabilitator, liquidator or other similar official is duly appointed with respect to the **Subsidiary**;

then coverage under this Policy with respect to **Claims** against such **Subsidiary** or any **Insured Person** or **Controlling Shareholder** thereof will continue in full force and effect until the end of the **Policy Period** with respect to **Claims** for **Wrongful Acts** committed or allegedly committed before the effective date of such Change in Control, but coverage under this Policy with respect to **Claims** against such **Subsidiary** or any **Insured Person** or **Controlling Shareholder** thereof will cease with respect to **Claims** for **Wrongful Acts** committed or allegedly committed thereafter.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By:_____
                Attorney-in-Fact

ENDORSEMENT NUMBER: 16

## POLICYHOLDER DISCLOSURE – TERRORISM PREMIUM NOTICE

To be attached to and made a part of Policy No. 24-MGU-05-A10821, issued to Refco Inc. by U.S. Specialty Insurance Company.

Your policy contains coverage for certain losses caused by terrorism. We are required to notify you of the portion of the premium, if any, attributable to the coverage for terrorist acts certified under the Terrorism Risk Insurance Act of 2002. The Act also requires us to provide disclosure of Federal participation in payment of terrorism losses. For a further description of an act of terrorism as provided under the Act, see below.

You should know that effective November 26, 2002 any losses caused by certified acts of terrorism would be partially reimbursed by the United States government, Department of Treasury, under a formula established by federal law. Under this formula, the United States pays 90% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The premium charged for this coverage is shown below; it does not include any charges for the portion of loss covered by the federal government under the Act.

The portion of your premium that is attributable to coverage for terrorist acts certified under the Act is $0.

The following excerpt from the Act is provided for your information:

According to Section 102(1) of the Terrorism Risk Insurance Act of 2002: "The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and the Attorney General of the United States —– (1) to be an act of terrorism; (ii) to be a violent act or an act that is dangerous to (I) human life; (II) property; or (III) infrastructure; (iii) to have resulted in damage within the United States, or premises of a United States mission; and (iv) to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion." Section 102(1)(B) states: "No act shall be certified by the Secretary as an act of terrorism if (i) the act is committed as part of the course of war declared by the Congress, except that this clause shall not apply with respect to any coverage for workers' compensation; or (ii) property and casualty insurance losses resulting from the act, in the aggregate, do not exceed $5,000,000." Section 102(C) and (D) specify that the determination are final and not subject to judicial review and that the Secretary of the Treasury cannot delegate the determination to anyone.

ENDORSEMENT NUMBER: 17

**EMPLOYED LAWYERS EXTENSION**
**(SEPARATE LIMIT AND RETENTION)**

To be attached to and made a part of Policy No. 24-MGU-05-A10821, issued to Refco Inc. by U.S. Specialty Insurance Company.

This endorsement replaces and supersedes Endorsement Number 5 ("Employed Lawyers Extension (Separate Limit and Retention") as of the effective date of this endorsement.

In consideration of the premium charged:

(1)     DEFINITION (F) **Insured Person** is amended to include any **Employed Lawyer**.

(2)     DEFINITION (P) **Wrongful Act** is amended to include any act, error, misstatement, misleading statement, omission or breach of duty by an **Employed Lawyer**, in his or her capacity as such, in the rendering or failure to render professional legal services for the **Company**; provided, that **Wrongful Act** shall not include any act, error, misstatement, misleading statement, omission or breach of duty by such **Employed Lawyer** in connection with any activities: (1) that are not related to such **Employed Lawyer's** employment with the **Company**; (2) that are not rendered on the behalf of the **Company** at the **Company's** written request; or (3) that are performed by the **Employed Lawyer** for others for a fee.

(3)     The following DEFINITION is added to the Policy:

**Employed Lawyer** means any past, present or future full-time, salaried employee of the **Company** who is admitted to practice law and who is employed at the time of any alleged **Wrongful Act** as a lawyer full-time for and salaried by the **Company**.

(4)     The EXCLUSIONS section of the Policy is amended by the addition of the following:

The Insurer will not be liable to make any payment of Loss in connection with any **Claim** made against an **Employed Lawyer**:

(a)     alleging, arising out of, based upon or attributable to any **Wrongful Act** occurring at a time when such **Employed Lawyer** was not employed as a lawyer by the **Company**;

(b)     alleging, arising out of, based upon or attributable to any **Claim** made or any prior or pending litigation as of 8/11/05, or alleging or derived from the same facts or circumstances as alleged in such pending or prior litigation;

(c)     alleging, arising out of, based upon or attributable to any **Wrongful Act**, if as of 8/11/05, such **Employed Lawyer** knew or could have reasonably foreseen that such **Wrongful Act** could give rise to a **Claim**;

991-322                              Page 1 of 1
(Ed. 09/03)

(d)     alleging, arising out of, based upon or attributable to any activities by such **Employed Lawyer** as an officer or director of any entity other than the **Company**.

(5)     For purposes of the applicability of the coverage provided by this endorsement, the **Company** will be conclusively deemed to have indemnified the **Employed Lawyer** to the extent that the **Company** is permitted or required to indemnify him or her pursuant to law, common or statutory, or contract, or the charter or by-laws of the **Company** (which are hereby deemed to adopt the broadest provisions of the law which determines and defines such rights of indemnity). The **Company** hereby agrees to indemnify the **Employed Lawyer** to the fullest extent permitted by law including the making in good faith of any required application for court approval and the passing of any corporate resolution or the execution of any contract.

(6)     The coverage provided by this endorsement shall apply only to **Claims** made against an **Employed Lawyer**, provided that, and only for so long as, one or more **Insured Persons** (other than such **Employed Lawyer**) are and remain co-defendants in the proceeding along with such **Employed Lawyer**.

(7)     The coverage provided by this endorsement is specifically excess over any other valid or collectible lawyers professional liability insurance, including but not limited to legal malpractice or other errors and omissions insurance, and shall not drop down and serve as primary insurance unless and until such other insurance has been exhausted due to actual payment of losses paid thereunder.

(8)     Solely for purposes of the coverage provided under this endorsement:

(a)     The Insurer's maximum aggregate liability for all **Loss** on account of all **Claims** first made during the same **Policy Period** will not exceed $1,000,000 ("the Employed Lawyers Coverage Limit"). The Employed Lawyers Coverage Limit shall be separate from and in addition to the Limit of Liability set forth in ITEM 3 of the Declarations, and ITEM 3 of the Declarations is amended accordingly.

(b)     A retention of $100,000 shall apply to **Loss** resulting from each **Claim**; provided, such retention shall not apply to **Loss** incurred by any **Employed Lawyer** if indemnification of such **Loss** by the **Company** is not legally permitted or cannot be done solely by reason of its financial insolvency, subject to paragraph (5) above.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the policy or is not to be effective with the policy.

Effective Date of this endorsement:    8/11/2005

By

Attorney-in-Fact

991-322                                Page 1 of 1
(Ed. 09/03)