# Exhibit 9

HELEN B. KIM (HK-8757)
BAKER & HOSTETLER LLP
333 South Grand Avenue, Suite 1800
Los Angeles, California  90071-1523
Telephone:     (213) 975-1600
Facsimile:     (213) 975-1740
Email:         hkim@bakerlaw.com

MATTHEW R. GOLDMAN (MG-0719)
BAKER & HOSTETLER LLP
3200 National City Center
1900 E. 9th Street
Cleveland, Ohio  44114
Telephone:     (216) 621-0200
Facsimile:     (216) 696-0740
Email:         mgoldman@bakerlaw.com

Attorneys for Defendants and Counterclaim Plaintiffs
DENNIS A. KLEJNA and JOSEPH MURPHY

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>REFCO, INC., et al.,<br><br>          Debtors. | Chapter 11<br><br>Case No. 05-60006 (RDD)<br><br>Jointly Administered) |
| AXIS REINSURANCE COMPANY,<br><br>          Plaintiff,<br><br>    v.<br><br>PHILLIP R. BENNETT, LEO R. BREITMAN,<br>NATHAN GANTCHER, TONE GRANT, DAVID V.<br>HARKINS, SCOTT L. JAECKEL, DENNIS A.<br>KLEJNA, THOMAS H. LEE, SANTO C. MAGGIO,<br>JOSEPH MURPHY, RONALD L. O'KELLEY, PERRY<br>ROTKOWITZ, SCOTT A. SCHOEN, WILLIAM M.<br>SEXTON, GERALD SHERER, PHILIP SILVERMAN,<br>ROBERT C. TROSTEN, AND DOES 1 TO 10,<br><br>          Defendants. | Adv. Proc. No. 07-01712 rdd<br><br>**AMENDED ANSWER AND<br>COUNTERCLAIMS OF<br>DEFENDANTS DENNIS A. KLEJNA<br>AND JOSEPH MURPHY** |

Defendants Dennis A. Klejna ("Klejna") and Joseph Murphy ("Murphy") hereby answer the Complaint, dated May 23, 2007 (the "Complaint") as follows:

To the extent the paragraphs of the Complaint are grouped under headings and sub-headings, Klejna and Murphy respond generally that such headings and sub-headings (which are not repeated below) state legal conclusions and pejorative inferences as to which no response is required. To the extent a response is necessary, Klejna and Murphy deny each and every heading and sub-heading in the Complaint and incorporate by reference this response in each paragraph below as if fully set forth therein.

1.    Klejna and Murphy deny the allegations contained in Paragraph 1, except admit that Plaintiffs purport to describe the nature of this action.

2.    Klejna and Murphy deny the allegations contained in Paragraph 2, except deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations involving defendants other than Klejna and Murphy.

3.    Klejna and Murphy deny the allegations contained in Paragraph 3, except admit that Axis issued an excess directors, officers and corporate liability insurance policy for the period August 11, 2005 to August 11, 2006 (the "Axis Policy") and respectfully refer to the Axis Policy for the terms thereof.

4.    Klejna and Murphy admit the allegations contained in Paragraph 4.

5.    Klejna and Murphy deny the allegations contained in Paragraph 5, except admit that Axis issued a letter, dated March 6, 2006, and respectfully refer to the March 6, 2006 letter for the terms thereof.

6.    Klejna and Murphy deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 6 involving defendants other than

Klejna and Murphy, except admit that they have given notice to Axis of claims since March 6, 2006 allegations.

7.    Klejna and Murphy deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 7, except admit that they have not responded to Axis' letter, dated March 6, 2006.

8.    Klejna and Murphy deny the allegations contained in Paragraph 8, except admit that U.S. Specialty, the primary carrier, provided the Insureds with reimbursement of defense costs.

9.    Klejna and Murphy admit the allegations contained in Paragraph 9.

10.    Klejna and Murphy deny the allegations contained in Paragraph 10, except admit that the Insureds will seek reimbursement of their defense costs from Axis after the first excess insurer exhausts its $7.5 million limit of liability.

11.    Klejna and Murphy deny the allegations contained in Paragraph 11, except respectfully refer the Court to Axis' letter, dated March 6, 2006, for the terms thereof.

12.    Klejna and Murphy deny the allegations contained in Paragraph 12, except admit that Plaintiff purports to describe the nature of this action.

13.    Klejna and Murphy admit the allegations contained in Paragraph 13.

14.    Klejna and Murphy admit the allegations contained in Paragraph 14.

15.    Klejna and Murphy admit the allegations contained in Paragraph 15.

16.    Klejna and Murphy admit the allegations contained in Paragraph 16.

17.    Klejna and Murphy deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 17.

18.    Klejna and Murphy deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 18, except admit that Defendant Bennett served as the Chair and Chief Executive Officer of Refco Group Ltd. LLC and that, in October 2005, Bennett was asked by the Board of Directors to take a leave of absence.

19.    Klejna and Murphy deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 19, except admit that Defendant Leo R. Breitman was a director of Refco and a member of the Company's Audit Committee.

20.    Klejna and Murphy deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 20, except admit that Defendant Nathan Gantcher was a director of Refco and a member of the Company's Audit Committee.

21.    Klejna and Murphy deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 21.

22.    Klejna and Murphy deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 22, except admit that Defendant David V. Harkins served as a director of Refco.

23.    Klejna and Murphy deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 23, except admit that Defendant Scott L. Jaeckel served as a director of Refco.

24.    Klejna and Murphy denies the allegations contained in Paragraph 24, except admit that Defendant Dennis Klejna served as Executive Vice President and General Counsel of Refco Group Ltd. LLC from January 1, 1999 until November 2005.

25.     Klejna and Murphy deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 25, except admit that Defendant Thomas H. Lee served as a director of Refco.

26.     Klejna and Murphy deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 26, except admit that Defendant Santo C. Maggio served as President and Chief Executive Officer of Refco Securities, LLC and President of Refco Capital Markets Ltd.

27.     Klejna and Murphy deny allegations contained in Paragraph 27, except admit that Defendant Joseph Murphy served as Executive Vice President of Refco Group Ltd. LLC responsible for global marketing for the futures business from 1999, and served as President of Refco Futures and Westminster Refco.  Klejna and Murphy further admit that Murphy is a resident of New Jersey.

28.     Klejna and Murphy deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 28, except admit that Defendant Ronald L. O'Kelley served as a director of Refco.

29.     Klejna and Murphy deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 29.

30.     Klejna and Murphy deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 30, except admit that Defendant Scott A. Schoen served as a director of Refco.

31.     Klejna and Murphy deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 31, except admit that Defendant

William M. Sexton served as an Executive Vice President and Chief Operating Officer of Refco Group Ltd. LLC beginning in August 2004.

32.    Klejna and Murphy deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 32, except admit that Defendant Gerald Sherer joined Refco Group Ltd. LLC as Executive Vice President and Chief Financial Officer in January 2005.

33.    Klejna and Murphy deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 33.

34.    Klejna and Murphy deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 34, except admit that Defendant Robert C. Trosten served as Executive Vice President and Chief Financial Officer of Refco Group Ltd. LLC.

35.    Klejna and Murphy deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 35.

36.    Klejna and Murphy deny the allegations contained in Paragraph 36, except admit that Axis issued an excess directors, officers and corporate liability insurance policy for the period August 11, 2005 to August 11, 2006 (the "Axis Policy") and respectfully refer to the Axis Policy for the terms thereof. Klejna and Murphy specifically deny that Plaintiff has attached a true, complete and accurate copy of the Axis Policy to the Complaint as Exhibit A.

37.    Klejna and Murphy deny the allegations contained in Paragraph 37, except admit that other insurers issued underlying insurance policies to Refco and respectfully refer the Court to the U.S. Specialty and Lexington Insurance policies for the terms thereof.

38.    Klejna and Murphy deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 38.

39-45. Klejna and Murphy deny the allegations contained in Paragraph 39-45, except admit that Axis issued an excess directors, officers and corporate liability insurance policy for the period August 11, 2005 to August 11, 2006 (the "Axis Policy") and respectfully refer to the Axis Policy for the terms thereof. Klejna and Murphy specifically deny that Plaintiff has attached a true, complete and accurate copy of the Axis Policy to the Complaint as Exhibit A.

46.    Klejna and Murphy admit the allegations contained in Paragraph 46.

47.    Deny the allegations contained in Paragraph 47, except admit that Lexington has agreed to advance defense costs upon exhaustion of the Primary Policy's limit of liability.

48.    Deny the allegations contained in Paragraph 48.

49.    Klejna and Murphy deny the allegations contained in Paragraph 49, except admit that Axis issued an excess directors, officers and corporate liability insurance policy for the period August 11, 2005 to August 11, 2006 (the "Axis Policy") and respectfully refer to the Axis Policy for the terms thereof. Klejna and Murphy specifically deny that Plaintiff has attached a true, complete and accurate copy of the Axis Policy to the Complaint as Exhibit A.

50.    Klejna and Murphy admit the allegations contained in Paragraph 50.

51.    Klejna and Murphy deny the allegations contained in Paragraph 51, except respectfully refer the Court to the February 8, 2005 application for the terms thereof.

52.    Klejna and Murphy deny the allegations contained in Paragraph 52, except admit that Axis issued an excess directors, officers and corporate liability insurance policy for the period August 11, 2005 to August 11, 2006 (the "Axis Policy") and respectfully refer to the Axis Policy for the terms thereof. Klejna and Murphy specifically deny that the Axis Policy ever

contained a Knowledge Exclusion Endorsement and aver that Axis added said Knowledge Exclusion Endorsement to the Axis Policy after the commencement of the policy period and Axis' receipt of notice of the Noticed Matters from Refco and the individual Insureds.

53. Klejna and Murphy deny the allegations contained in Paragraph 53, except admit that Axis issued an excess directors, officers and corporate liability insurance policy for the period August 11, 2005 to August 11, 2006 (the "Axis Policy") and respectfully refer the Court to the Axis Policy for the terms thereof.

54. Klejna and Murphy deny the allegations contained in Paragraph 54, except admit that Axis issued a letter on March 6, 2006, and respectfully refer the Court to the terms thereof.

55. Klejna and Murphy deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 55.

56. Klejna and Murphy admit the allegations contained in Paragraph 56.

57. Klejna and Murphy deny the allegations contained in Paragraph 57, except admit that Refco Inc. issued a press release on or about October 10, 2005 and respectfully refer the Court to that press release for the terms thereof.

58. Klejna and Murphy deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 58.

59. Klejna and Murphy deny the allegations contained in Paragraph 59, except admit that Refco Inc. issued a press release on or about October 11, 2005 and respectfully refer the Court to that press release for the terms thereof.

60. Klejna and Murphy deny the allegations contained in Paragraph 60, except admit that, on October 11, 2005, Refco Inc. filed a Form 8-K with the United States Securities and Exchange Commission and respectfully refer the Court to the Form 8-k for the terms thereof.

61.     Klejna and Murphy deny the allegations contained in Paragraph 61, except admit that on October 17, 2005, Refco Inc. and certain of its subsidiaries filed for bankruptcy in this District.

62-71. Klejna and Murphy deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraphs 62–71, except respectfully refer the Court to the Indictment of Phillip Bennett for the terms thereof.

72-75. Klejna and Murphy deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraphs 72-75, except respectfully refer the Court to the Trosten Indictment for the terms thereof.

76.     Klejna and Murphy deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 76, except respectfully refer the Court to the Grant Indictment for the terms thereof.

77-83. Klejna and Murphy deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraphs 77-83, except respectfully refer the Court to the Memorandum of Law referenced in Paragraph 77 for the terms thereof.

84-86. Klejna and Murphy deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraphs 84-86.

87-140.     Klejna and Murphy deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraphs 87-140.

141.    Klejna and Murphy deny the allegations contained in Paragraph 141.

142.    Klejna and Murphy deny the allegations contained in Paragraph 142, except admit that Refco was involved in a CFTC enforcement action in 1994 and respectfully refer the Court to the public filings for the facts thereof.

## COUNT I

143.     In response to Paragraph 143, Klejna and Murphy repeat and reallege each and every response set forth in the foregoing paragraphs as if fully set forth herein.

144.     Klejna and Murphy deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 144.

145.     Klejna and Murphy admit the allegations contained in Paragraph 145.

146.     Klejna and Murphy deny the allegations contained in Paragraph 146.

147.     Klejna and Murphy deny the allegations contained in Paragraph 147, except admit that Axis purports to seek a declaration that the Axis Policy does not provide coverage for any loss arising out of the Noticed Matters or Related Matters.

## COUNT II

148.     In response to Paragraph 148, Klejna and Murphy repeat and reallege each and every response set forth in the foregoing paragraphs as if fully set forth herein.

149.     Klejna and Murphy deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 149.

150.     Klejna and Murphy admit the allegations contained in Paragraph 150.

151.     Klejna and Murphy deny the allegations contained in Paragraph 151.

152.     Klejna and Murphy deny the allegations contained in Paragraph 152, except admit that Axis purports to seek a declaration that the Axis Policy does not provide coverage for any loss arising out of the Noticed Matters or Related Matters.

## COUNT III

153.     In response to Paragraph 153, Klejna and Murphy repeat and reallege each and every response set forth in the foregoing paragraphs as if fully set forth herein.

154.   Klejna and Murphy deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 154.

155.   Klejna and Murphy admit the allegations contained in Paragraph 155.

156.   Klejna and Murphy deny the allegations contained in Paragraph 156.

157.   Klejna and Murphy deny the allegations contained in Paragraph 157, except admit that Axis purports to seek a declaration that the Axis Policy does not provide coverage for any loss arising out of the Noticed Matters or Related Matters.

## COUNT IV

158.   In response to Paragraph 158, Klejna and Murphy repeat and reallege each and every response set forth in the foregoing paragraphs as if fully set forth herein.

159.   Klejna and Murphy deny the allegations contained in Paragraph 159.

160.   Klejna and Murphy deny the allegations contained in Paragraph 160.

161.   Klejna and Murphy deny the allegations contained in Paragraph 161, except admit that Axis purports to seek a declaration that the Axis Policy does not provide coverage for any loss arising out of the Noticed Matters or Related Matters.

162.   To the extent that Paragraph 162 states a legal conclusion, no responsive pleading is required.  To the extent that a response is required, Klejna and Murphy deny the allegations of Paragraph 162, except admit that Plaintiff purports to reserve certain purported rights.

### OTHER COVERAGE DEFENSES/RECISSION

162.    Deny each and every allegation contained in paragraph 162 of the Complaint, except admit that Axis attempts to reserve certain purported rights.

### FIRST DEFENSE

163.    Axis fails to state a claim against Klejna and Murphy upon which relief can be granted.

### SECOND DEFENSE

164.    Upon information and belief, Axis' claims against Klejna and Murphy are barred, in whole or in part, by the doctrine of laches.

### THIRD DEFENSE

165.    Upon information and belief, Axis' claims against Klejna and Murphy are barred, in whole or in part, by the doctrine of waiver.

### FOURTH DEFENSE

166.    Upon information and belief, Axis' claims against Klejna and Murphy are barred, in whole or in part, by the doctrine of estoppel.

### FIFTH DEFENSE

167.    Upon information and belief, Axis' claims against Klejna and Murphy are barred, in whole or in part, by the doctrine of unclean hands.

### SIXTH DEFENSE

168.    Upon information and belief, Axis' claims against Klejna and Murphy are barred as a result of Axis' inequitable conduct in connection with its purported denial of coverage under the Axis Policy.

## SEVENTH DEFENSE

169.    Upon information and belief, Axis' claims against Klejna and Murphy are barred because Axis has acted in bad faith in unilaterally changing the terms of the Axis Policy so as to provide purported grounds to deny coverage after receiving claims under the Policy.

## EIGHTH DEFENSE

169.    Upon information and belief, Axis' claims against Klejna and Murphy are barred in whole or in part because Axis made a unilateral change in the terms of the Axis Policy after the commencement of the Refco bankruptcy case, which change is void by the terms of 11 U.S.C. Section 362.

## COUNTERCLAIMS

Dennis Klejna ("Klejna") and Joseph Murphy ("Murphy") (collectively, the "Counterclaim Plaintiffs"), by and through their attorneys, Baker & Hostetler LLP, allege as follows for their Counterclaims against Axis Insurance Company ("Axis"):

## INTRODUCTION

1.    Axis is the second excess insurer in the "tower" of Directors and Officers ("D&O") liability insurance obtained by Refco for the policy period beginning in August 2005. The Counterclaim Plaintiffs, along with other former Refco officers and directors insured under the policies, (collectively, the "Insureds") have been named as defendants in various civil actions relating to the collapse of Refco.[1]  The Insureds have requested coverage for such actions, including defense costs, from the insurers on the D&O "tower."

---

[1]  Unless specifically noted otherwise, and consistent with the defined terms in the Axis Complaint, the term "Refco" used throughout these Counterclaims refers to Refco, Inc., the company formed pursuant to the August 2005 initial public offering, as well as Refco Group Ltd., LLC, the company through which Refco's business was conducted prior to the initial public offering.  The term "Refco" also includes subsidiaries of Refco, Inc. and Refco Group Ltd., LLC.

2.      Axis has denied coverage to the Insureds, and has commenced this action seeking a declaration that its excess D&O corporate liability insurance policy issued to Refco for claims made during the period from August 11, 2005 to August 11, 2006 (the "Axis Policy") (attached as Exhibit A hereto) does not provide coverage to any of the Insureds for any of the "Noticed Matters" or "Related Matters" described in the Complaint filed by Axis on or about August 23, 2007 (the "Complaint," or "Compl.").

3.      None of the grounds alleged in the Complaint provides Axis with a valid basis for refusing coverage to the Counterclaim Plaintiffs.  Nonetheless, it is clear that Axis does not intend to honor its contractual obligations to the Counterclaim Plaintiffs when the Axis Policy is triggered – i.e., once the D&O policies beneath the Axis Policy on the Refco insurance "tower" are exhausted.

4.      An actual controversy exists between the Counterclaim Plaintiffs and Axis.  The Counterclaim Plaintiffs seek a declaration from this Court that the Axis Policy provides coverage for them for the various civil actions in which the Counterclaim Plaintiffs have been named as defendants, as well as appropriate relief directing Axis to pay their losses, including defense costs, in such actions, in accordance with the requirements of the Axis Policy.

## JURISDICTION AND VENUE

5.      Axis commenced this adversary proceeding on or about May 24, 2007.  The counterclaims are brought pursuant to Rules 7001 and 7013 of the Federal Rules of Bankruptcy Procedure.

6.      This Court has jurisdiction over this adversary proceeding, including the counterclaims, pursuant to 28 U.S.C. §§ 157, 1334 and 2201.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

- 13 -

## PARTIES

8.      Counterclaim Plaintiff Klejna is a former officer of Refco who, at times relevant to this action, served as Executive Vice President and General Counsel of Refco. Klejna is a resident of the State of New York.

9.      Counterclaim Plaintiff Murphy is a former officer of Refco who, at times relevant to this action, served as President of Refco, Inc. and President of Refco LLC. Murphy is a resident of the State of New Jersey.

10.     Upon information and belief, Axis is an insurance company that is organized and exists pursuant to the laws of the State of New York, with its principal place of business in New York.

## GENERAL ALLEGATIONS

A.     **The Underlying Actions**

11.     On October 10, 2005, Refco disclosed in a press release that it had been carrying an undisclosed receivable of $430 million from an entity controlled by defendant Phillip R. Bennett ("Bennett"), the Chief Executive Officer of Refco. On October 11, 2005, Refco issued a second press release relating to the $430 million receivable.

12.     On October 17, 2005, Refco and many of its direct and indirect subsidiaries filed voluntary petitions for relief in this Court under Chapter 11 of the United States Bankruptcy Code.

13.     These events in October 2005 led to a series of civil lawsuits, government investigations and criminal proceedings against certain of the Insureds. On November 10, 2005, Bennett was indicted by the United States Attorney for the Southern District of New York on charges of, inter alia, securities fraud.

- 14 -

14.   The Counterclaim Plaintiffs have not been charged with any crimes or otherwise accused of any wrongdoing by any governmental entity, including the United States Attorney's Office.  However, solely on account of their services to Refco, the Counterclaim Plaintiffs (along with other Insureds) have been named as defendants in several civil lawsuits brought by private plaintiffs, including the following actions:

(i)    In re Refco, Inc. Sec. Litig., No. 05 Civ. 8626 (GEL) (S.D.N.Y.);

(ii)   In re Refco Capital Markets, Ltd. Brokerage Customer Sec. Litig., No. 06 Civ. 643 (GEL) (S.D.N.Y.);[2] and

(iii)  American Financial International Group-Asia, LLC et al., v. Bennett et al., No. 05 Civ. 8988 (GEL) (S.D.N.Y.).[3]

These actions are collectively referred to herein as the "Underlying Actions."

15.   The Counterclaim Plaintiffs properly gave notice of each of the Underlying Actions to the insurers on the Refco "tower" of liability insurance, including Axis, and requested coverage from such insurers under the policies described below.

**B.    The Refco "Tower" of D&O Insurance**

16.   As indicated above, Refco procured a "tower" of D&O insurance coverage.  Such coverage consists of a primary policy and five excess policies for the period beginning August 11, 2005 to August 11, 2006 (the "policy period").

The U.S. Specialty Policy

17.   U.S. Specialty Insurance Company ("U.S. Specialty") issued the primary policy, Directors, Officers and Corporate Liability Insurance Policy No. 24-MGU-05-A10821, for the

---

[2]  Plaintiffs in Refco Capital Markets voluntarily dismissed Klejna from the action without prejudice.  Motions to dismiss are currently sub judice.

[3]  Plaintiffs in American Financial voluntarily dismissed Klejna and Murphy from the action without prejudice. However, the court recently issued a decision dismissing the complaint for failure to state a claim, but granting plaintiffs leave to replead their claim for fraud.

- 15 -

policy period with a $10 million limit of liability (the "U. S. Specialty Policy," or "Primary Policy"). (A copy of the U.S. Specialty Policy is attached as Ex. B hereto).

18.    The U.S. Specialty Policy names as an "Insured Person" under the Policy "any past, present or future director or officer of the Company." (Ex. B, at Definition (F)). The U.S. Specialty Policy provides those directors and officers with coverage for "Loss arising from Claims . . . against the Insured Persons for Wrongful Acts." (Id. at Insuring Agreement (A)).

19.    The Underlying Actions are Claims for "Wrongful Acts," as defined in the U.S. Specialty Policy. (See id. at Definition (P)).

20.    "Loss" is defined by the U.S. Specialty Policy so as to include defense costs. (Id. at Definition (G) and Endorsement No. 4).

21.    The U.S. Specialty Policy further requires the Insurer to advance defense costs as incurred during the pendency of Claims:

> The Insurer will pay covered Defense Costs on an as-incurred basis. If it is finally determined that any Defense Costs paid by the Insurer are not covered under this Policy, the Insureds agree to repay such non-covered Defense Costs to the Insurer.

(Id. at Condition (D)(2)).

22.    The U.S. Specialty Policy also includes a "Full Severability" Endorsement, which provides that "[n]o knowledge or information possessed by any Insured will be imputed to any other Insured." (Id. at Endorsement No. 10).

23.    The U.S. Specialty Policy further provides that "notwithstanding anything in this Policy to the contrary, the Insurer shall not be entitled under any circumstances to rescind the coverage provided under Insuring Agreement (A) of this Policy." (Id. at Endorsement No. 13).

24.    U.S. Specialty recognized its coverage obligations to the Counterclaim Plaintiffs as well as other Insureds. After obtaining approval from this Court to comply with the terms of

its policy and advance defense costs to Insureds, U.S. Specialty paid the defense costs of the Insureds until the limits of the U.S. Specialty Policy were exhausted earlier this year.

The Lexington Policy

25.     Lexington Insurance Company ("Lexington") issued the first excess policy above the U.S. Specialty Policy, Directors and Officers Liability and Corporation Reimbursement Follow Form Excess Liability Policy No. 1620926, for the policy period with a $7.5 million limit of liability in excess of $10 million (the "Lexington Policy," or "First Excess Policy"). (A copy of the Lexington Policy is attached as Ex. C hereto).

26.     The Lexington Policy "follows form" with the U.S. Specialty Policy. This means that the Lexington Policy "indemnif[ies] the Insured named in the Declarations . . . in accordance with the applicable insuring agreements, terms, conditions and exclusions . . . of the Underlying Policy." (Ex. C, at (I) Insuring Agreements).

27.     Lexington has also agreed to comply with its duties and to advance defense costs. With the approval of this Court, Lexington is presently advancing defense costs to the Counterclaim Plaintiffs as well as other Insureds.

28.     Upon information and belief, the Lexington Policy is being rapidly depleted and will be exhausted in the very near future.

The Axis Policy

29.     Axis is the second excess insurer on the Refco "tower" of D&O liability insurance.

30.     Upon information and belief, on or about August 11, 2005, Axis provided Refco with a binder pursuant to which Axis agreed to provide $10,000,000 coverage that would follow

the Primary Policy and the First Excess Policy (the "Axis Binder"). (A copy of the Axis Binder is attached hereto as Ex. D).

31.    The Axis Binder states that coverage would be provided pursuant to the "Axis SecurExcess Form," with four endorsements listed. A "Knowledge Exclusion" was not included among the four endorsements, or referred to elsewhere in the Axis Binder. Upon information and belief, Refco paid the premium quoted in the Axis Binder (i.e., $302,176) and thereby obtained coverage from Axis in accordance therewith.

32.    Although the Axis Policy is dated September 11, 2005, with an inception date of August 11, 2005, upon information and belief, it was not actually issued until on or about March 1, 2006, and was backdated by Axis. (See Ex. E hereto).

33.    Upon information and belief, the actual issuance of the Axis Policy was therefore months after the "Noticed Matters," including the "Underlying Actions," were commenced, and notice of such actions had been provided to the insurers in the "tower" of Refco D&O liability insurance, including Axis.

34.    As provided in the Axis Binder, the Axis Policy has a limit of liability of $10,000,000. (Ex. A, at Declarations Page and Endorsement No. 1).

35.    The Axis Policy states that it provides coverage "in conformance with the provisions of" the U.S. Specialty Policy. (Id. at (I) Insuring Agreement).

36.    The Axis Policy specifically defines "Insureds" as the same persons who may be entitled to insurance under the U.S. Specialty Policy. (Id. at (II) Definitions (C)).

37.    The Axis Policy defines "Claim(s)" as "event(s) which take place during the **Policy Period** and which trigger(s) coverage under the insuring agreement(s) of the **Underlying Insurance**." (Id. at (II) Definitions (A); emphasis in original).

- 18 -

38.    Accordingly, any "Claim" for a "Wrongful Act" brought against the Counterclaim Plaintiffs that falls within Insuring Agreement (A) of the U.S. Specialty Policy also falls within the "Insuring Agreement" of the Axis Policy.

39.    Each of the Underlying Actions is a "Claim" against the Counterclaim Plaintiffs (and other Insureds) for "Wrongful Acts" covered by Insuring Agreement (A) in the U.S. Specialty Policy and by the Insuring Agreement in the Axis Policy.

40.    The Axis Policy specifically states that when the policies underlying it are exhausted, it will "continue as primary insurance." (Ex. A, at (IV) Reduction or Exhaustion of Underlying Limits (B)).  Specifically, the Policy provides that "[i]f the **Underlying Limits** are wholly exhausted solely due to actual payment under the **Underlying Insurance**, this Policy shall continue to apply as primary insurance with respect to the applicable **Insurance Product(s)** . . . ." (Id.; emphasis in original).

41.    The Axis Policy also explicitly acknowledges, in bold, capital letters, that it covers defense costs:

>    **THE LIMITS OF LIABILITY AVAILABLE TO PAY**
>    **DAMAGES OR SETTLEMENT AMOUNTS SHALL BE**
>    **REDUCED AND MAY BE TOTALLY EXHAUSTED BY**
>    **PAYMENT OF DEFENSE COSTS.**

(Id. at Declarations Page).

42.    Endorsement No. 5 to the Axis Policy, the "Manuscript Application Endorsement," states in pertinent part that "[i]n consideration of the premium charged, it is agreed by the **Insurer** and **Insureds** that the application or proposal signed February 8, 2005 and submitted to *Axis Reinsurance Company* on *U.S. Specialty Insurance Company's* form shall be accepted by the **Insurer** as the Application for this Policy." (Id. at Endorsement No. 5; emphasis in original).

- 19 -

43.     Upon information and belief, when Axis issued the Axis Policy on or about

March 1, 2006, it added to the policy Endorsement No. 6, a "Knowledge Exclusion," which was

not included or referred to in the Axis Binder, and which addition was also in violation of the

automatic stay of the Bankruptcy Code, 11 U.S.C. Section 362.   (See Ex. A, at Endorsement No.

6; Ex. D).

44.     This purported endorsement states in pertinent part that:

> this Policy does not respond to **Claims** based upon, arising out of,
> directly or indirectly resulting from, in consequence of, or in any
> way involving any fact, circumstance, situation, transaction, or
> event, which as of the inception date of the **Policy Period**, any
> **Insured** had knowledge and had reason to suppose might give rise
> to a **Claim** that would fall within the scope of the insurance
> afforded by this Policy.

(Id. at Ex. A, Endorsement No. 6; emphasis in original).

45.     Upon information and belief, Axis unilaterally added the "Knowledge Exclusion"

to the Axis Policy in an improper, bad faith attempt to avoid coverage for the Noticed Matters,

including the Underlying Actions.

46.     The "Knowledge Exclusion" endorsement is not properly a part of the Axis

Policy, and cannot be used to deny coverage to the Counterclaim Plaintiffs.

Other Excess Insurance

47.     There are three additional excess policies above (i.e., in excess of) the Axis Policy

in the Refco D&O insurance "tower."

**C.     Attempts by Axis to Avoid Coverage under the Axis Policy**

The March 6, 2006 Axis Letter

48.     By letter dated March 6, 2006 (the "March 6, 2006 Axis Letter," or "Denial

Letter"), and by subsequent letters, Axis purported to deny coverage to the Counterclaim

- 20 -

Plaintiffs and the other Insureds for all of the Noticed Matters and the Related Matters, including the Underlying Actions. (A copy of the March 6, 2006 Axis Letter is attached hereto as Ex. F).

49.     In the March 6, 2006 Axis Letter, Axis asserted several purported grounds for denying coverage.

(i)     The January 14, 2005 Letter

50.     First, Axis relied upon a purported "Warranty Letter" dated January 14, 2005 signed by Bennett as President and CEO of Refco Group Ltd., LLC ("Refco Group") (the "January 14, 2005 Letter"). (A copy of the January 14, 2005 Letter on which Axis relies is attached to the Complaint as Ex. E).

51.     According to Axis, the January 14, 2005 Letter states, in pertinent part, that "[n]o person(s) or entity(ies) proposed for this insurance is cognizant of any fact, circumstance, situation, act, error or omission which he[ ] has reason to suppose might afford grounds for any Claim . . . within the scope of the proposed insurance" and that "if such knowledge exists, any claim arising therefrom is excluded from the proposed insurance. . . ." (See Ex. F, at pp. 8-9; Compl. Ex. E).

52.     Upon information and belief, the January 14, 2005 Letter was signed by Bennett, as President and Chief Executive Officer of Refco Group, with respect to an excess D&O policy issued by Axis for a policy period beginning August 5, 2004 to August 5, 2005 (the "Prior Policy"), and not with respect to the Axis Policy (which policy period did not begin until August 11, 2005).

53.     Refco Group was the policyholder on the Prior Policy, but is not the policyholder on the Axis Policy.

54.    In the March 6, 2006 Axis Letter, Axis asserted that the Noticed Matters were "brought in connection with the alleged financial fraud orchestrated by Mr. Bennett, among others" and that it is "inconceivable that Mr. Bennett was not aware of the alleged fraud when he executed the Axis Warranty 'on behalf of all Insureds under the Policy'" (Ex. F, at p. 9).

55.    The March 6, 2006 Axis Letter further asserted that the January 14, 2005 Letter "explicitly excludes coverage for all Insureds for any Claim arising from the undisclosed knowledge," and that all of the Noticed Matters fell within such exclusion. (Id.).

(ii)    The U.S. Specialty Application

56.    The March 6, 2006 Axis Letter also relied upon Bennett's alleged failure to answer Question 12(b) in a February 8, 2005 application to U.S. Specialty for coverage (the "Application") (see Compl. Ex. F, at p. 3), which Axis contended was incorporated as the application to Axis pursuant to Endorsement No. 5 of the Axis Policy.

57.    Specifically, according to Axis, Question 12(b) of the Application inquired as to whether any proposed Insured was "aware of any fact, circumstance or situation involving the Applicant . . . which he . . . has reason to believe might result in a claim being made." (See Ex. F, at p. 8; Compl. Ex. F, at p. 3).

58.    The March 6, 2006 Axis Letter asserted that "Mr. Bennett had a duty to disclose the alleged financial fraud in [the] answer to Application question 12(b)," and that his failure to do so resulted in all of the Noticed Matters being excluded from coverage. (See Ex. F, at p. 10).

(iii)    The "Claim Made Date"

59.    The March 6, 2006 Axis Letter further denied coverage for the Noticed Matters on the additional ground that each was purportedly a Claim first made before the inception date of the Axis Policy (i.e., prior to August 11, 2005). The March 6, 2006 Axis Letter contended in

- 22 -

this regard that each of the Noticed Matters was sufficiently related to a complaint filed on

June 30, 2005 in an action filed by the Bankruptcy Trust of Gerard Sillam (the "Sillam" action),

so that each could be treated as a single interrelated Claim made prior to August 11, 2005. (See

id. at pp. 4, 10).

> (iv)    The "Knowledge Exclusion"

60.    Finally, the March 6, 2006 Axis Letter denied coverage for all of the Noticed

Matters based on the "Knowledge Exclusion" endorsement that Axis contended was part of the

Axis Policy.

61.    Specifically, the March 6, 2006 Axis Letter asserted that "[e]ach of the Noticed

Matters is brought in connection with the alleged financial fraud orchestrated by Mr. Bennett"

and that it is "inconceivable that Mr. Bennett was not aware that his actions 'might give rise to a

Claim that would fall within the scope of the insurance afforded by this Policy' on the

[August 11, 2005] inception date of the [Axis Policy]." (Id. at p. 11).

The Axis Adversary Proceeding

62.    On or about May 24, 2007, Axis commenced the instant Adversary Proceeding,

seeking a declaration that the Axis Policy does not provide insurance coverage for the Noticed

Matters or the Related Matters for any of the Insureds.

63.    The Complaint contains four counts, each of which purports to set forth a separate

ground for Axis' position that there is no coverage under the Axis Policy. Counts I, II and III

rely upon, respectively, Axis' arguments based on the purported January 14, 2005 Letter, the

Application, and the alleged Knowledge Exclusion endorsement as set forth in the March 6, 2006

Axis Letter and discussed above.

64.     Count IV of the Complaint relies upon Clause XI of the Axis Policy. This clause provides that:

> [t]he **Insurer** shall not be liable for any amount in any **Claim** taking place during the **Policy Period** and arising under any **Insurance Product**, which is based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving:
>
> **A.** Any demand, suit or other proceeding pending, or order, decree or judgment entered, against any **Insured** on or prior to the Pending or Prior Claim Date set forth in Item 7 of the Declarations or any wrongful act, fact, circumstance or situation underlying or alleged therein; or
>
> **B.** Any other wrongful act, fact, circumstance or situation whenever occurring, which together with a wrongful act, fact, circumstance or situation described in (a) above are casually or logically interrelated by a common nexus."

(Ex. A, at (XI) Exclusions; emphasis in original).

65.     Count IV asserts that the Noticed Matters allege many of the same wrongful acts previously alleged in a 1994 CFTC enforcement action (the "1994 CFTC Action"), and that the Axis Policy thus does not provide coverage for any of the Noticed Matters or the Related Matters. (See Compl. ¶¶ 142, 160-61).

66.     Axis failed to include this basis under Clause XI for its position that there is no coverage under the Axis Policy in the March 6, 2006 Axis Letter. Instead, as set forth above, in the March 6, 2006 Axis Letter, Axis purported to deny coverage based upon the Silliam action, a basis for denial that Axis did not allege in its Complaint.

## COUNT I

### (Declaratory Relief)

67.     Counterclaim Plaintiffs repeat and reallege paragraphs 1 through 66 of these Counterclaims as if fully set forth herein.

68.     Pursuant to the terms of the Axis Policy, Axis is contractually obligated to provide coverage to Counterclaim Plaintiffs for all Loss (as defined in the U.S. Specialty Policy) arising from the Underlying Actions, including but not limited to, Defense Costs, upon exhaustion of the limits of liability of the underlying U.S. Specialty Policy and the Lexington Policy.

69.     As of the present date, Axis has denied its contractual obligations and has denied coverage under the Axis Policy.

70.     Upon information and belief, Refco paid all premiums for the Axis Policy and has performed all of the terms and conditions of the Axis Policy on its part to be performed, unless otherwise excused.

71.     Counterclaim Plaintiffs, as Insureds under the Axis Policy, and therefore, parties to the insurance contract, have performed all the terms and conditions of the Axis Policy on their part to be performed, unless otherwise excused.

72.     At all relevant times mentioned herein, the Axis Policy was, and is, in full force and effect.

73.     None of the grounds asserted by Axis for the denial of coverage under the Axis Policy provides a valid basis for denying coverage to the Counterclaim Plaintiffs.

74.     Three of the four grounds asserted by Axis in the March 6, 2006 Axis Letter and in the Complaint – specifically, the purported January 14, 2005 Letter, the Application and the alleged "Knowledge Exclusion" endorsement – rest on Bennett's alleged knowledge of wrongdoing, which has not been established in any proceeding.

75.    Regardless of whether Bennett is hereafter found to have knowledge of wrongdoing, as alleged by Axis, none of these three grounds described in paragraph 74, above, allows Axis to deny coverage to the Counterclaim Plaintiffs.

76.    The January 14, 2005 Letter does not relate to the Axis Policy, and was neither included nor incorporated therein. Neither the Axis Binder nor the Axis Policy describes or even refers to the January 14, 2005 Letter. The January 14, 2005 Letter is thus not a proper ground for denial of coverage.

77.    Upon information and belief, Axis issued its policy with full knowledge that Question 12(b) in the Application was not answered, and without having done anything to inquire as to such failure. Axis has therefore waived, and is estopped from asserting, any failure by Bennett to disclose information requested in Question 12(b) of the Application as a ground for denying coverage under the Axis Policy.

78.    The "Knowledge Exclusion" endorsement relied upon by Axis was not referred to in the Axis Binder, and is materially inconsistent therewith. Upon information and belief, this endorsement was unilaterally and improperly added by Axis to the Axis Policy on or about March 1, 2006 – months after the Noticed Matters had commenced and notice of such matters had been provided to Axis – in a bad faith attempt to avoid coverage for the Noticed Matters.

79.    The "Knowledge Exclusion" endorsement is not a part of the insurance contract between Axis and the Counterclaim Plaintiffs.

80.    The "Full Severability" Endorsement to the U.S. Specialty Policy (Endorsement No. 10), which is incorporated into the Axis Policy, also precludes Axis from using any alleged knowledge of Bennett (or any other Insured) as a ground for denying coverage to the Counterclaim Plaintiffs, and thus precludes Axis from relying upon the purported January 14,

2005 Letter, the Application, or the alleged "Knowledge Exclusion" endorsement to deny coverage to the Counterclaim Plaintiffs.

81.    Neither of the Counterclaim Plaintiffs had any knowledge, at any time prior to the inception of the Axis Policy, of any wrongdoing relating to Refco, or of any facts or circumstances that might give rise to a Claim under the "tower" of D&O insurance obtained by Refco for the policy period.

82.    Coverage for the Underlying Actions is not excluded under Clause XI of the Axis Policy. Upon information and belief, the Underlying Actions do not arise from or allege any of the same wrongful acts that formed the basis for the 1994 CFTC Action.

83.    The 1994 CFTC Action was not raised by Axis in the March 6, 2006 Axis Letter as a ground for denial of coverage.

84.    Similarly, upon information and belief, the Underlying Actions are not related in any way to the June 2005 complaint in the Sillam action, which was relied upon in the Denial Letter but is not referred to in the Complaint.

85.    The Underlying Actions do not constitute Claims that were first brought prior to the inception of the Axis Policy.

86.    An actual controversy exists between Axis and the Counterclaim Plaintiffs as to whether the Counterclaim Plaintiffs are entitled to coverage for the Underlying Actions under the Axis Policy, and judicial resolution of the parties' rights and obligations is necessary.

87.    This Court should issue a judgment declaring that the Counterclaim Plaintiffs are entitled to coverage under the Axis Policy for Loss arising out of the Underlying Actions, including, but not limited to, defense costs as they are incurred.

## COUNT II

### (Injunctive Relief)

88.     Counterclaim Plaintiffs repeat and reallege paragraphs 1 through 87 of these Counterclaims as if fully set forth herein.

89.     Upon exhaustion of the Lexington Policy, Axis will become obligated to make payments to the Counterclaim Plaintiffs for Losses in the Underlying Actions, in accordance with the Axis Policy.

90.     The Counterclaim Plaintiffs are entitled to permanent injunctive relief requiring Axis to make such payments in accordance with Axis' contractual obligations.

### PRAYER FOR RELIEF

WHEREFORE, Counterclaim Plaintiffs Dennis A. Klejna and Joseph Murphy respectfully request entry of judgment in their favor as follows:

1.     Dismissing all counts of the Complaint with prejudice;

2.     On Count I of the Counterclaims, declaring that the Counterclaim Plaintiffs are entitled to coverage under the Axis Policy for Loss arising out of the Underlying Actions, including but not limited to Defense Costs;

3.     On Count II of the Counterclaims, requiring Axis to make payments to the Counterclaim Plaintiffs for Loss in the Underlying Actions, in accordance with the Axis Policy;

4.     Awarding the Counterclaim Plaintiffs their attorneys' fees and costs and disbursements of this action; and

5.     Granting such other and further relief as the Court may deem proper.

## JURY DEMAND

Klejna and Murphy hereby demand trial by jury on all issues in the Complaint or in the

Counterclaims so triable.

Dated: July 31, 2007

Respectfully submitted,

HELEN B. KIM (HK-8757)
BAKER & HOSTETLER LLP


 /s/ Helen B. Kim
Helen B. Kim
333 South Grand Avenue, Suite 1800
Los Angeles, California 90071-1523
Telephone:    (213) 975-1600
Facsimile:    (213) 975-1740
Email:    hkim@bakerlaw.com

MATTHEW R. GOLDMAN (MG-0719)
BAKER & HOSTETLER LLP
3200 National City Center
1900 E. 9th Street
Cleveland, Ohio 44114
Telephone:    (216) 621-0200
Facsimile:    (216) 696-0740
Email:    mgoldman@bakerlaw.com

Attorneys for Defendants and Counterclaim
Plaintiffs
DENNIS A. KLEJNA and JOSEPH MURPHY

501447421

-29-

# Exhibit 10

Wayne E. Borgeest (WB-3034)
Joan M. Gilbride (JG-6238)
Ann Marie Collins(AC-7125)
Robert A. Benjamin (RB-9891)
KAUFMAN BORGEEST & RYAN LLP
200 Summit Lake Dr
Valhalla, New York 10595
(914) 741-6100 (Telephone)
(914) 741-0025 (Facsimile)
wborgeest@kbrlaw.com
jgilbride@kbrlaw.com
acollins@kbrlaw.com
rbenjamin@kbrlaw.com

*Attorneys for Axis Reinsurance Company*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| REFCO, INC., et al., | : | Case No. 05-60006(RDD) |
| Debtors. | : | (Jointly Administered) |

-----------------------------------------------------------x

AXIS REINSURANCE COMPANY,          :
                                   :
                 Plaintiff,        :
                                   :
        v.                         :     Adv. Proc. No. 07-01712 (RDD)
                                   :
PHILLIP R. BENNETT, LEO R. BREITMAN,  :
NATHAN GANTCHER, TONE GRANT,       :
DAVID V. HARKINS, SCOTT L. JAECKEL,  :
DENNIS A. KLEJNA, THOMAS H. LEE,   :
SANTO C. MAGGIO, JOSEPH MURPHY,    :
RONALD L. O'KELLEY, PERRY ROTKOWITZ, :
SCOTT A. SCHOEN, WILLIAM M. SEXTON,  :
GERALD SHERER, PHILIP SILVERMAN,   :
ROBERT C. TROSTEN, AND DOES 1 TO 10, :
                                   :
                 Defendants.       :

-----------------------------------------------------------x

## ANSWER OF AXIS REINSURANCE COMPANY TO DEFENDANTS DENNIS A. KLEJNA AND JOSEPH MURPHY'S COUNTERCLAIMS

Plaintiff Axis Reinsurance Company ("Axis"), by counsel, hereby answers the defendants

Dennis A. Klejna's and Joseph Murphy's Counterclaims as follows:

## INTRODUCTION

1.    Axis denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "1" of the Counterclaims, except admits that Axis bound coverage for a Secureexcess policy issued to Refco, Inc. ("Refco") for claims made during the period from August 11, 2005 to August 11, 2006 (the "Axis Policy" or the "Policy"), and further admits that, upon information and belief, the Counterclaim Plaintiffs and other former Refco officers and directors have been named as defendants in various civil actions and that the Counterclaim Plaintiffs have requested coverage from Axis in connection with certain civil actions that have been named in Axis's Complaint.

2.    Axis denies that the Complaint was filed on or about August 23, 2007, and otherwise admits the truth of the allegations contained in paragraph "2" of the Counterclaims.

3.    Axis denies the allegations contained in of paragraph "3" of the Counterclaims.

4.    Axis denies the allegations in paragraph "4" of the Counterclaims insofar as they relate to the Counterclaim Plaintiffs' proposed interpretation and application of the Policy, admits the allegation regarding the existence of an actual controversy, and otherwise is without knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations contained in paragraph "4" of the Counterclaims.

## JURISDICTION AND VENUE

5.    Axis is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "5" of the Counterclaims, except states that it filed the Complaint commencing this adversary proceeding on or about May 23, 2007.

6.    Axis admits the allegations contained in paragraph "6" of the Counterclaims.

7.    Axis admits the allegations contained in paragraph "7" of the Counterclaims.

<u>PARTIES</u>

8.     Axis denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph "8" of the Counterclaims except admits, upon information and belief, that Klejna served as Executive Vice President and General Counsel of Refco Group Ltd., LLC at times relevant to this action.

9.     Axis denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph "9" of the Counterclaims except admits, upon information and belief, that Murphy served as the Executive Vice President of Refco Group at times relevant to this action.

10.     Axis admits the allegations contained in paragraph "10" of the Counterclaims.

<u>GENERAL ALLEGATIONS</u>

A.     <u>The Underlying Actions</u>

11.     Upon information and belief, Axis admits the allegations contained in paragraph "11" of the Counterclaims.

12.     Axis denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "12" of the Counterclaims, except admits, upon information and belief, that on October 17, 2005, Refco and certain of its unregulated subsidiaries filed for protection under Chapter 11 of the Bankruptcy Code.

13.     Axis denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "13" of the Counterclaims.

14.     Axis denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "14" of the Counterclaims, except admits, upon information and belief, that the Counterclaim Plaintiffs have been named as defendants in civil lawsuits.

3

15.    Axis denies the allegations contained in paragraph "15" of the Counterclaims insofar as they relate to Axis, and otherwise is without knowledge or information sufficient to form a belief as to the truth of the allegations insofar as they relate to the other insurers.

**B.    The Refco "Tower" of D&O Insurance**

16.    Axis denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "16" of the Counterclaims, except admits that Axis bound coverage for a Secureexcess policy issued to Refco, Inc. for claims made during the period from August 11, 2005 to August 11, 2006.

The U.S Specialty Policy

17.    Upon information and belief, Axis admits that U.S. Specialty Insurance Company (the "Primary Insurer") issued a primary policy with a limit of liability of $10 million excess of applicable self-insured retentions (the "Primary Policy") and, with respect to the remainder of the allegations in paragraph "17" of the Counterclaims, asserts that the document referenced therein speaks for itself.

18.    Axis denies the allegations contained in paragraph "18" of the Counterclaims except asserts that, to the extent the allegations purport to describe the Primary Policy, the Primary Policy speaks for itself.

19.    Axis denies the allegations contained in paragraph "19" of the Counterclaims except asserts that, to the extent the allegations purport to describe the Primary Policy, the Primary Policy speaks for itself.  Axis further states that, to the extent paragraph "19" sets forth a legal conclusion, no response is necessary.

20.    Axis denies the allegations contained in paragraph "20" of the Counterclaims except asserts that, to the extent the allegations purport to describe the Primary Policy, the

4

Primary Policy speaks for itself and, to the extent it calls for a legal conclusion, no response it necessary.

21.    Axis denies the allegations contained in paragraph "21" of the Counterclaims except asserts that, to the extent the allegations purport to describe the Primary Policy, the Primary Policy speaks for itself.

22.    Axis denies the allegations contained in paragraph "22" of the Counterclaims except asserts that, to the extent the allegations purport to describe the Primary Policy, the Primary Policy speaks for itself.

23.    Axis denies the allegations contained in paragraph "23" of the Counterclaims except asserts that, to the extent the allegations purport to describe the Primary Policy, the Primary Policy speaks for itself.

24.    Axis denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "24" of the Counterclaims.

The Lexington Policy

25.    Axis denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "25" of the Counterclaims, and further asserts that, to the extent the allegations purport to describe the contents of a document, the document speaks for itself.

26.    Axis denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "26" of the Counterclaims, and further asserts that, to the extent the allegations purport to describe the contents of a document, the document speaks for itself.

27.    Axis denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "27" of the Counterclaims.

28.    Upon information and belief, Axis admits the truth of the allegations contained in paragraph "28" of the Counterclaims.

The Axis Policy

29.    Axis denies the allegations contained in paragraph "29" of the Counterclaims, except admits that there are two D&O policies with lower attachment points than that of the Axis Policy, both of which must be fully exhausted due to actual payment of their limits before coverage under the Axis Policy may be triggered.

30.    Axis denies the allegations contained in paragraph "30" of the Counterclaims, except admits that it bound coverage for a Secureexcess policy issued to Refco, Inc. ("Refco") for claims made during the period from August 11, 2005 to August 11, 2006 (the "Axis Policy"), and that the Axis Policy has a limit of liability of $10 million. Axis further states that to the extent paragraph "30" of the Counterclaims purports to recite the contents of the referenced document, no response is necessary, as the document speaks for itself.

31.    Axis denies the allegations contained in paragraph "31" of the Counterclaims, except admits that Refco paid the premium, and further asserts that, to the extent the allegations purport to recite the contents of the referenced document, no response is necessary, as the document speaks for itself.

32.    Axis denies the allegations contained paragraph "32" of the Counterclaims, except admits that the Axis Policy was sent to Refco's agent on March 1, 2006.

33.    Axis denies the allegations contained paragraph "33" of the Counterclaims, except admits that the Policy was sent to Refco's agent on March 1, 2006.

34.    Axis asserts that no response to paragraph "34" of the Counterclaims is necessary, as the document referred to speaks for itself.

35.     Axis asserts that no response to paragraph "35" of the Counterclaims is necessary, as the document referred to speaks for itself.

36.     Axis asserts that no response to paragraph "36" of the Counterclaims is necessary, as the document referred to speaks for itself.

37.     Axis asserts that no response to paragraph "37" of the Counterclaims is necessary, as the document referred to speaks for itself.

38.     Axis states that paragraph "38" of the Counterclaims calls for a legal conclusion and, as such, no answer is required.

39.     Axis states that paragraph "39" of the Counterclaims calls for a legal conclusion and, as such, no answer is required.

40.     Axis denies the allegations contained in paragraph "40" of the Counterclaims, and further asserts that, to the extent paragraph "40" purports to recite the contents of the referenced document, no response is necessary, as that document speaks for itself.

41.     Axis denies the allegations contained in paragraph "41" of the Counterclaims, and further asserts that, to the extent paragraph "41" purports to recite the contents of the referenced document, no response is necessary, as that document speaks for itself.

42.     Axis asserts that no response to paragraph "42" of the Counterclaims is necessary, as the document referred to speaks for itself.

43.     Axis denies the allegations contained in paragraph "43" of the Counterclaims, except admits that the Axis Policy was sent to Refco on March 1, 2006, and it contained a Knowledge Exclusion at Endorsement 6.

44.     Axis asserts that no response to paragraph "44" of the Counterclaims is necessary, as the document referred to speaks for itself.

45.     Axis denies the allegations contained in paragraph "45" of the Counterclaims.

46.     Axis denies the allegations contained in paragraph "46" of the Counterclaims.

Other Excess Insurance

47.     Axis denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "47" of the Counterclaims.

## C. Attempts by Axis to Avoid Coverage Under the Policy

The March 6, 2007 Letter

48.     Axis denies the allegations contained in paragraph "48" of the Counterclaims, except admits that it denied coverage for the Noticed Matters on March 6, 2006, based on various terms and conditions of the Axis Policy and, to the extent paragraph "48" purports to recite the contents of the referenced document, states that no response is necessary, as the document speaks for itself.

49.     Axis asserts that no response to paragraph "49" of the Counterclaims is necessary, as the document referred to speaks for itself.

(i) The January 14, 2005 Letter

50.     Axis denies the allegations contained in paragraph "50" of the Counterclaims, except admits that it based its March 6, 2006 disclaimer, in part, on the January 14, 2005 Warranty signed by Phillip Bennett "on behalf of all Insureds under the Policy."

51.     Axis asserts that no response to paragraph "51" of the Counterclaims is necessary, as the document referred to speaks for itself.

52.     Axis denies the allegations contained in paragraph "52" of the Counterclaims.

53.     Axis denies the allegations contained in paragraph "53" of the Counterclaim, and asserts that the meaning of the term "Refco Group," as used in this paragraph, is unclear.

54.     Axis asserts that no response to paragraph "54" of the Counterclaims is necessary, as the document referred to speaks for itself.

8

55.    Axis asserts that no response to paragraph "55" of the Counterclaims is necessary, as the document referred to speaks for itself.

### (ii) The U.S. Specialty Application

56.    Axis denies the allegations contained in paragraph "56" of the Counterclaims, and further states that, to the extent paragraph "56" purports to allege what is set forth in the referenced document, no response is necessary, as the document referred to speaks for itself.

57.    Axis asserts that no response to paragraph "57" of the Counterclaims is necessary, as the document referred to speaks for itself.

58.    Axis asserts that no response to paragraph "58" of the Counterclaims is necessary, as the document referred to speaks for itself.

### (iii) The Claim Made Date

59.    Axis asserts that no response to paragraph "59" of the Counterclaims is necessary, as the document referred to speaks for itself.

### (iv) The Knowledge Exclusion

60.    Axis asserts that no response to paragraph "60" of the Counterclaims is necessary, as the document referred to speaks for itself.

61.    Axis asserts that no response to paragraph "61" of the Counterclaims is necessary, as the document referred to speaks for itself.

The Axis Adversary Proceeding

62.    Axis denies the allegations contained in paragraph "62" of the Counterclaims, except admits that it commenced the instant action on May 23, 2007, seeking a declaration that the Axis Policy does not provide insurance coverage for the Noticed Matters or the Related Matters for any of the defendants.

63. Axis asserts that, to the extent paragraph "63" of the Counterclaims states what is set forth in the referenced document, no response is necessary, and otherwise admits that the Complaint sets forth four separate grounds for Axis's position that there is no coverage under the Axis Policy.

64. Axis asserts that no response to paragraph "64" of the Counterclaims is necessary, as the document referred to speaks for itself.

65. Axis asserts that no response to paragraph "65" of the Counterclaims is necessary, as the document referred to speaks for itself.

66. Axis denies the allegations contained in paragraph "66" of the Counterclaims, except admits that in the March 6, 2006 letter, Axis denied coverage based on, among other things, the <u>Silliam</u> action.

## COUNT I

### (Declaratory Relief)

67. Axis repeats and realleges its responses to paragraphs "1" through "66" of the Counterclaims, as set forth in paragraphs "1" through "66," above.

68. Axis denies the allegations contained in paragraph "68" of the Counterclaims.

69. Axis denies the allegations contained in paragraph "69" of the Counterclaims, except admits that it has denied coverage under the Axis Policy to the Counterclaim Plaintiffs.

70. Axis denies the allegations contained in paragraph "70" of the Counterclaims, except admits, upon information and belief, that Refco has paid the premium due for the Axis Policy.

71. Axis denies the allegations contained in paragraph "71" of the Counterclaims.

72. Axis denies the allegations contained in paragraph "72" of the Counterclaims, except states that the Axis Policy has a policy period of August 11, 2005 to August 11, 2006.

73.    Axis denies the allegations contained in paragraph "73" of the Counterclaims.

74.    Axis denies the allegations contained in paragraph "74" of the Counterclaims.

75.    Axis denies the allegations contained in paragraph "75" of the Counterclaims.

76.    Axis denies the allegations contained in paragraph "76" of the Counterclaims.

77.    Axis denies the allegations contained in paragraph "77" of the Counterclaims.

78.    Axis denies the allegations contained in paragraph "78" of the Counterclaims.

79.    Axis denies the allegations contained in paragraph "79" of the Counterclaims.

80.    Axis denies the allegations contained in paragraph "80" of the Counterclaims.

81.    Axis denies the allegations contained in paragraph "81" of the Counterclaims.

82.    Axis denies the allegations contained in paragraph "82" of the Counterclaims.

83.    Axis denies the allegations contained in paragraph "83" of the Counterclaims.

84.    Axis denies the allegations contained in paragraph "84" of the Counterclaims.

85.    Axis denies the allegations contained in paragraph "85" of the Counterclaims.

86.    Axis admits the allegations contained in paragraph "86" of the Counterclaims.

87.    Axis denies the allegations contained in paragraph "87" of the Counterclaims.

## COUNT II

### (Injunctive Relief)

88.    Axis repeats and realleges its responses to paragraphs "1" through "87" of the Counterclaims, as set forth in paragraphs "1" through "87," above.

89.    Axis denies the allegations contained in paragraph "89" of the Counterclaims.

90.    Axis denies the allegations contained in paragraph "90" of the Counterclaims.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Counterclaims fail to state a claim upon which relief may be granted.

11

## SECOND AFFIRMATIVE DEFENSE

The Counterclaim Plaintiffs' claims are barred, in whole or in part, by the terms, conditions, endorsements and exclusions of the Axis Policy and the underlying and/or primary insurance policies, and by application of law and principles of equity. Axis hereby expressly gives notice of and reserves the right to rely upon all the terms, conditions, endorsements and exclusions of the Policy to deny or limit coverage on additional or different grounds as discovery reveals.

## THIRD AFFIRMATIVE DEFENSE

The Counterclaim Plaintiffs have failed to mitigate any damages they may have sustained as a result of the matters alleged in the Counterclaims.

## FOURTH AFFIRMATIVE DEFENSE

The Counterclaim Plaintiffs' claims are barred by the failure to comply with the terms and conditions of the Axis Policy and any underlying policies.

## FIFTH AFFIRMATIVE DEFENSE

The Counterclaim Plaintiffs' claims are barred, in whole or in part, by the doctrines of unclean hands, laches, waiver, and/or estoppel.

## SIXTH AFFIRMATIVE DEFENSE

The Counterclaim Plaintiffs have failed to exhaust all primary and underlying insurance limits of liability.

## SEVENTH AFFIRMATIVE DEFENSE

Axis is not responsible for the Counterclaim Plaintiffs' attorneys' fees and costs incurred in bringing these Counterclaims.

12

### EIGHTH AFFIRMATIVE DEFENSE

The Counterclaim Plaintiffs' claims are barred to the extent they have failed to join in this action all parties necessary for the adjudication of this matter.

### NINTH AFFIRMATIVE DEFENSE

The Counterclaim Plaintiffs' rights and claims, if any, are barred by their negligent and fraudulent misrepresentations.

### TENTH AFFIRMATIVE DEFENSE

The Counterclaim Plaintiffs' claims are completely or partially barred because Axis shall not be liable for any settlement, Defense Costs, assumed obligation or admission to which it has not consented.

### ELEVENTH AFFIRMATIVE DEFENSE

Axis reserves its right to assert affirmatively and/or rely on any other matter that properly constitutes an avoidance or an affirmative defense.

### TWELFTH AFFIRMATIVE DEFENSE

Axis has timely reserved its rights under the Axis Policy, at law, and in equity to deny coverage or to rescind the Axis Policy.

### THIRTEENTH AFFIRMATIVE DEFENSE

Axis hereby incorporates by reference all of the allegations and causes of action it asserts in its Complaint against the Counterclaim Plaintiffs.

WHEREFORE, Axis respectfully requests that this Court dismiss the Counterclaims in their entirety, with prejudice, and enter judgment in Axis's favor and against the Counterclaim Plaintiffs, and award Axis the costs of this action, its attorneys' fees and all other relief that this Court deems to be appropriate under the facts and circumstances of this case.

13

Dated: August 23, 2007

KAUFMAN, BORGEEST & RYAN LLP

By: _Ann Marie Collins_

Wayne E. Borgeest, Esq. (WB 3034)
Joan M. Gilbride, Esq. (JG 6238)
Ann Marie Collins, Esq. (AC 7125)
Robert Benjamin (RB 9891)
200 Summit Lake Drive
Valhalla, New York 10598
(914) 741-6100

ATTORNEYS FOR AXIS REINSURANCE
COMPANY

14

# Exhibit 11

.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------x
In re                                 :    Chapter11
REFCO, INC., et al.,                  :    Case No. 05-60006 (RDD)
                       Debtors.       :    (Jointly Administered)
-------------------------------------x
AXIS REINSURANCE COMPANY,             :
                                      :
                       Plaintiff,     :
                                      :
          v.                          :    Adv. Proc. No. 07-01712 (RDD)
                                      :
PHILLIP R.BENNETT, LEOR. BREITMAN,    :
NATHAN GANTCHER, TONE GRANT,          :
DAVID V.HARKINS, SCOTTL. JAECKEL,     :
DENNIS A. KLEJNA, THOMAS H. LEE,      :
SANTO C. MAGGIO, JOSEPH MURPHY,       :
RONALD L.O'KELLEY, SCOTTA. SCHOEN,    :
PERRY ROTKOWITZ, GERALD SHERER,       :
WILLIAM M.SEXTON, PHILIP SILVERMAN,   :
ROBERT C.TROSTEN, ANDDOES 1TO 10,     :
                                      :
                       Defendants.    :
-------------------------------------x
```

## ORDER DISMISSING THE COMPLAINT
## OF AXIS REINSURANCE COMPANY

Upon the motion (the "Motion"), dated July 12, 2007, of Defendants Leo R.

Breitman, Nathan Gantcher, David V. Harkins, Scott L. Jaeckel, Thomas H. Lee, Ronald L.

O'Kelley, and Scott A. Schoen (the "Director Defendants"), for an order dismissing the

Complaint, dated May 23, 2007, of Axis Reinsurance Company ("Axis") pursuant to Rule

7012(b) of the Federal Rules of Bankruptcy Procedure, as more fully set forth in the Motion; and

the Court having jurisdiction to consider and determine the Motion pursuant to 28 U.S.C. §§ 157,

1334 and 2201; and due notice of the Motion having been provided; and upon all pleadings filed

with this Court, and the hearing held before the Court on August 30, 2007 (the "Hearing"); and it

appearing that the relief requested is appropriate; and all objections to the relief requested having

been overruled by the Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor for the reasons stated by the Court on the record of the Hearing:

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

      A.      Applying New York choice of law rules, the Court concludes that New York law applies to the Axis directors and officers liability insurance policy referenced in the Complaint, the interpretation and application of the policy, and the dispute raised by the Complaint.

      B.      Under New York law, a declaratory judgment action commenced by an insurer seeking a determination of coverage under an insurance contract should be dismissed without prejudice or stayed where there is a substantial overlap of the underlying factual issues in such coverage determination action and factual issues that will be adjudicated in a pending underlying tort action or criminal proceeding.

      C.      There is substantial overlap of the factual issues raised in this coverage determination action commenced by Axis and the underlying tort and criminal proceedings referenced in the Complaint pending before the United States District Court for the Southern District of New York.

NOW, THEREFORE, It Is Ordered that:

      1.      The Motion is granted in all respects.

      2.      The Axis Complaint filed in the above-captioned adversary proceeding is dismissed, without prejudice.

Dated:    August 31, 2007
         New York, New York

                          /s/ Robert D. Drain
                          United States Bankruptcy Judge

# Exhibit 12

## MEMORANDUM OF UNDERSTANDING

This Memorandum of Understanding ("MOU") is entered into as of this 30th day of August, 2007, by and among Lead Plaintiffs RH Capital LLC and Pacific Investment Management Company, LLC ("Lead Plaintiffs"), on their own behalf and on behalf of all other persons and entities who purchased or otherwise acquired Refco Finance Holdings 9% Senior Subordinated Notes due 2012 (the "Bonds") and/or Refco Inc. common stock during the period beginning August 5, 2004 through and including October 17, 2005 (the "Class Period"), either in the respective initial offering, pursuant to a registration statement, or in the secondary market, and claim to have been injured thereby (collectively the "Class"), and Defendant Dennis A. Klejna ("Settling Defendant") (collectively, the "Parties").

This MOU is intended by the Parties hereto to be a binding agreement that sets forth the terms and obligations of the Parties for the complete and final resolution of all claims relating to Refco Inc. and its predecessors and affiliates (collectively "the Company" or "Refco") asserted against Settling Defendant in *In re Refco, Inc. Securities Litigation*, No. 05 Civ. 8626 (GEL) (S.D.N.Y.) (the "*Refco Securities Litigation*").

## RECITALS

WHEREAS, by Order dated February 8, 2006, the United States District Court for the Southern District of New York (the "Court") appointed Lead Plaintiffs to serve as the lead plaintiffs on behalf of the Class in the *Refco Securities Litigation*; and

WHEREAS, Lead Plaintiffs' First Amended Consolidated Class Action Complaint (the "Complaint") in the *Refco Securities Litigation*, filed on May 5, 2006, asserted claims against Settling Defendant under Section 15 of the Securities Act of 1993 (the "Securities Act"), Section

1

11 of the Securities Act, Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5(b) promulgated thereunder, and Section 20(a) of the Exchange Act; and

WHEREAS, counsel for the Parties have participated in arm's-length negotiations to resolve the claims against Settling Defendant and have reached an agreement in principle to settle those claims on the terms and conditions set forth below (the "Settlement").

## TERMS AND CONDITIONS OF THE SETTLEMENT

NOW, THEREFORE, without any concession by Lead Plaintiffs that the claims asserted in the *Refco Securities Litigation* lacked merit, and without any concession by the Settling Defendant of any liability or wrongdoing or lack of merit in his defenses, in consideration of the mutual terms, conditions, releases, covenants and agreements set forth in this MOU, Lead Plaintiffs, on their own behalf and on behalf of the Class, and Settling Defendant hereby agree on the following (the "Settlement"):

1.     Lead Plaintiffs and the Class. Solely and exclusively for purposes of the Settlement, the Settling Defendant agrees to stipulate to the certification of the Class, as defined in paragraph 78 of the Complaint, and to the appointment of Lead Plaintiffs as representatives of the Class.

2.     Settlement Amount. In full settlement of all claims arising in connection with the purchase or sale of securities of Refco that are or could have been asserted in the *Refco Securities Litigation* by Lead Plaintiffs and the Class against the Settling Defendant, the following payments shall be made to the Class in the aggregate sum of $7,600,000 cash (the "Settlement Amount"):

        a.  Insurance Proceeds. $7,550,000 cash that the Settling Defendant will cause to be paid out of insurance proceeds that are available to the Settling Defendant as an

2

"Insured Person" under one or more primary or excess insurance policies issued by Refco's Directors & Officers liability insurers (the "Relevant Insurers"). Said payment shall be made to an escrow account to be maintained by Lead Plaintiffs' counsel within 10 days after the later of (i) entry of the Notice and Preliminary Approval Order by the Court and (ii) provided that the Relevant Insurers agree in writing within ~~thirty (30)~~ sixty (60) days after the date of this MOU to fund the payment of the Insurance Proceeds portion of the Settlement Amount if such an order is entered, an order from the United States Bankruptcy Court (the "Bankruptcy Court") in *In re Refco Inc., et al.*, Case No. 05-60006 (S.D.N.Y.) (RDD), which (x) grants relief from or modification of the automatic stay to the extent necessary to authorize the Relevant Insurers to pay the sum set forth in Paragraph 2(a) herein or (y) finds that the automatic stay does not prevent such payment (hereinafter "Automatic Stay Order"),[1] and

b. Personal Contribution. $50,000 cash paid by the Settling Defendant as a personal contribution from the Settling Defendant's own assets and for which the Settling Defendant agrees not to seek indemnity and/or contribution from any source. Said payment shall be made within 30 days after the later of the date upon which (i) the order granting final approval of the Settlement (the "Approval Order") becomes a final order not subject to appeal or (ii) an order becomes final not subject to appeal regarding the availability of Insurance Proceeds in any insurance coverage litigation pursuant to Paragraph 6 herein.

---

[1]   Lead Plaintiffs and the Settling Defendant do not concede that the automatic stay prevents payment of the Insurance Proceeds by the Relevant Insurers, and believe that those proceeds are not property of the Refco bankruptcy estate. However, to meet concerns expressed by Relevant Insurers, the Settling Defendant agrees to seek an Automatic Stay Order if the Relevant Insurers otherwise agree to fund the Settlement Amount as set forth herein.

3

c. Lead Plaintiffs represent and warrant that they have not entered into a settlement with any other individual defendant in the Refco Securities Litigation that requires a personal contribution of less than $50,000. Notwithstanding the provisions of Paragraph 2(b) herein, Lead Plaintiffs agree that, in the event that Lead Plaintiffs enter into such a settlement agreement with any other individual defendant in the Refco Securities Litigation between the date hereof and the earlier of (i) the date by which Settling Defendant must pay the personal contribution herein, or (ii) 150 days after the date of this MOU, the personal contribution portion of the Settlement Amount herein shall be amended to match the personal contribution portion of any such lower settlement.

3.   Implementing Agreements. As promptly as is practical, the Parties will document this Settlement through a separate Stipulation of Settlement that is subject to approval by the Parties. Such fact does not, however, change the binding nature of this MOU. Such Stipulation of Settlement will provide for, among other things, the following upon final approval of the Settlement:

a.   The entry of a judgment of dismissal of the Settling Defendant, with prejudice, from the *Refco Securities Litigation*;

b.   a release by Lead Plaintiffs, on their own behalf and on behalf of the Class (the "Plaintiffs' Release"), as against the Settling Defendant of all claims and causes of action of every nature and description, whether known or unknown, whether arising under federal, state, common or foreign law, that Lead Plaintiffs or any member of the Class (a) asserted in the Complaint, or (b) could have asserted in any forum that arise out of or are

4

based upon the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Complaint and that relate to the purchase of shares of Refco common stock or Bonds during the Class Period (the "Released Plaintiffs' Claims");

c.    a bar order permanently barring and enjoining all members of the Class who do not opt out from filing, commencing, prosecuting or maintaining, either directly or indirectly, in the Court before which the *Refco Securities Litigation* is pending or in any other federal, state or local court, forum or tribunal any Released Plaintiffs' Claims against the Settling Defendant;

d.    a bar order (the "Bar Order") permanently barring and enjoining any other party to the *Refco Securities Litigation* from filing, commencing, prosecuting or maintaining, either directly or indirectly, in the Court before which the *Refco Securities Litigation* is pending or in any other federal, state or local court, forum or tribunal any claim against the Settling Defendant arising under federal, state, or foreign statutory or common-law rule, however styled, whether for indemnification or contribution or otherwise denominated, where the claim is a Released Plaintiffs' Claim and the alleged injury to such party arises from that party's alleged liability to the Class or any Class Member

e.    a release by the Settling Defendant (the "Settling Defendants' Release") of all claims relating to or arising out of the *Refco Securities Litigation* (or, in whole or in part, the subject matters set forth therein) against Lead

Plaintiffs and their predecessors, successors, affiliates, direct and indirect subsidiaries, parents, agents, clients, attorneys and any past, present or future officers, directors or employees;

f.   provided the Relevant Insurers have agreed in writing within ~~thirty (30)~~ sixty (60) days after execution of this MOU to fund the Insurance Proceeds portion of the Settlement Amount if such an order is entered, a commitment by the Settling Defendant to seek an order from the Bankruptcy Court in *In re Refco Inc., et al.*, Case No. 05-60006 (S.D.N.Y.) (RDD), for (i) relief from or modification of the automatic stay to the extent necessary to authorize the Relevant Insurers to pay the sum set forth in Paragraph 2(a) herein or (ii) a finding that the automatic stay does not prevent such payment;

g.   an order approving the Settlement as fair, reasonable and adequate to the Class, which order shall include and decree the Bar Order, the Plaintiffs' Release and the Settling Defendants' Release, and shall be in form and substance reasonably satisfactory to the parties.

4.   <u>Court Approval.</u> This MOU and this Settlement are conditioned upon final court approval of the Settlement, dismissal of the *Refco Securities Litigation* as to the Settling Defendant with prejudice, the Approval Order becoming a final order not subject to appeal, and, so long as the Relevant Insurers have agreed in writing within ~~thirty (30)~~ sixty (60) days after the execution of this MOU to fund the Insurance Proceeds portion of the Settlement Amount if such an order is entered, an order from the Bankruptcy Court in *In re Refco Inc., et al.*, Case No. 05-60006 (S.D.N.Y.) (RDD), (i) for relief from or modification of the automatic stay to the extent necessary to authorize the Relevant Insurers to pay the sum set forth in Paragraph 2(a) herein or

6

(ii) finding that the automatic stay does not prevent such payment. Should those conditions (to the extent applicable) not be met, the MOU and the Settlement shall be null and void.

5.    Cooperation in the Continued Prosecution of the *Refco Securities Litigation.* The Settling Defendant agrees to provide reasonable cooperation to assist Lead Plaintiffs in their continued prosecution of the claims raised against the other Defendants or potential Defendants in the *Refco Securities Litigation.* For that purpose, the Settling Defendant agrees to respond to any requests for discovery that Lead Plaintiffs have served, or may serve in the future, including but not limited to Requests for the Production of Documents, Interrogatories, Requests for Admission, and Notices of Deposition, without the need for service of subpoenas or other compulsory process. Lead Plaintiffs and the Settling Defendant agree that this agreement to cooperate constitutes a demand by Lead Plaintiffs for non-monetary relief that survives the entry of judgment of dismissal of the Settling Defendant. The Settling Defendant will make himself reasonably available to Lead Plaintiffs at their request for interview(s) concerning the allegations of the Complaint. Lead Plaintiffs agree that the time, location, total duration and conduct of such interview(s) shall be reasonable. Lead Plaintiffs acknowledge that the Settling Defendant's ability to cooperate fully may be constrained by the claimed assertion of the attorney-client and work-product privilege by Refco and its affiliates. The Settling Defendant agrees to seek a waiver of the attorney-client and work product privileges of Refco and its affiliates from the Litigation Trustee and the Litigation Trust Committee in *In re Refco, Inc.,* Case No. 05-60006 (Bankr. S.D.N.Y.) RDD), and Refco and its affiliates to the extent necessary for the Settling Defendant to fulfill his obligations hereunder to cooperate with Lead Plaintiffs. If such waiver is not obtained, Lead Plaintiffs may, in their sole discretion, deem the material condition of cooperation as not satisfied and void this settlement agreement.

6.    Responsibility for Insurance Coverage Disputes.  The Settling Defendant agrees to assume sole responsibility in connection with insurance coverage relating to the claims against Settling Defendant asserted in the *Refco Securities Litigation*, and resolving any dispute or litigation concerning such insurance coverage.  If it should be finally determined by any court or courts that insurance coverage is not available to Settling Defendant sufficient to pay the Insurance Proceeds portion of the Settlement Agreement as provided in Paragraph 2(a), the MOU and the Settlement shall be null and void.

7.    Lead Plaintiffs' Satisfaction Concerning Parallel Settlements.  This MOU is subject to Lead Plaintiffs' satisfaction that the terms of any other settlements entered into between Settling Defendant and other parties do not undermine the basic assumptions upon which this Settlement is based.

8.    Allocation of the Settlement Amount.  The allocation of the Settlement Amount among members of the Class will be set out in such other documents that the Parties may agree should contain such allocation.  The Settling Defendant may be consulted by Co-Lead Counsel with regard to the allocation but takes no position on any plan of allocation proposed by Lead Plaintiffs to the Court and Class.  Court approval of any plan of allocation shall not be a condition of this Settlement or affect in any way the Settling Defendant's obligations under this Agreement. This is not a claims-made settlement. The Settling Defendant will not have the right to, or ability to obtain, return of any of the settlement monies paid to Lead Plaintiff for the benefit of the Class or any interest earned thereon, except as set forth in Paragraph 2(c) herein.

9.    Settlement Not an Admission of Liability.  Neither the execution of this MOU nor the execution of any Stipulation of Settlement nor the fact of the Settlement shall be, or shall be construed as, an admission of liability or an admission of the validity of any claim or defense on

8

the part of any Party in any respect. Specifically, the Settling Defendant denies that he has violated any law or engaged in any wrongful conduct and denies any liability whatsoever to Lead Plaintiffs or any member of the Class, and denies the allegations of wrongdoing in the Complaint. Neither the MOU nor the Stipulation of Settlement shall be admissible in any action or proceeding for any reason, other than an action or proceeding to enforce the terms thereof, or to rebut an allegation that there has been an admission of liability or an admission of the validity of any claim or defense on the part of any Party in any respect.

10.     Good Faith.    Lead Plaintiffs and the Settling Defendant agree not to assert in any forum that the *Refco Securities Litigation* was brought or defended in bad faith or without a reasonable basis. The parties hereto shall assert no claims of any violation of Rule 11 of the Federal Rules of Civil Procedure relating to the maintenance, defense or settlement of the *Refco Securities Litigation.*

11.     Counterparts.    This MOU may be executed in two or more counterparts, each of which shall be deemed an original and may be exchanged by facsimile, but all of which taken together shall constitute one and the same instrument.

12.     Costs and Claims for Fees.    The Parties agree to bear their own attorneys' fees and costs incurred in connection with the *Refco Securities Litigation,* except that nothing herein shall prevent Lead Plaintiffs or their counsel from applying to the Court for an award of attorneys' fees and expenses to be paid from the Settlement Amount based on the aggregate recovery provided for the Class, and nothing herein shall prevent the Settling Defendant from seeking reimbursement as an "Insured Person" under Refco's Directors & Officers liability insurance policy and excess policies for any legal fees and costs incurred by the Settling Defendant in connection with his performance of his obligations under this agreement. The

Settling Defendant agrees to take no position on any request for attorneys' fees by counsel for Lead Plaintiffs. Court approval of payment of attorneys' fees or costs to counsel for Lead Plaintiffs shall not be a condition of this Settlement or affect in any way the Settling Defendant's obligations under this Agreement. Subject to Court approval, expenses for class notice and any and all other expenses for allocation and distribution of the Settlement Amount to Class members will be paid from the Settlement Amount.

13. <u>Representations and Warranties.</u> Each of the Parties hereto represents and warrants to each of the other Parties that it has the authority to enter into this MOU, and that the persons signing this MOU on behalf of each Party are fully authorized to bind such Party to the terms of this MOU.

14. <u>Jurisdiction.</u> The MOU and the Settlement shall be interpreted in accordance with the internal laws of the State of New York without regard to conflicts of laws (except to the extent that federal law requires that federal law govern), and the Parties hereby submit to the jurisdiction of the United States District Court for the Southern District of New York for purposes of enforcement of the Terms and Conditions of the Settlement.

15. <u>Termination.</u> If the Settlement outlined in this MOU is not approved by the Court or is terminated: (a) the Settlement shall be without prejudice, and none of its terms shall be effective or enforceable; (b) the Settling Defendant and Lead Plaintiffs shall revert to their litigation positions immediately prior to the execution of this MOU; and (c) the fact and terms of this Settlement shall not be admissible in any trial of this Action.

IN WITNESS WHEREOF, the following duly authorized representatives of Lead Plaintiffs and of the Settling Defendant acknowledge and agree to the foregoing.

10

GRANT & EISENHOFER P.A.

By _Megan D. McIntyre_
Stuart M. Grant (SG-8157)
Megan D. McIntyre
Chase Manhattan Centre
1201 N. Market Street, 21st Floor
Wilmington, DE 19801
(302) 622-7000

- and -

James J. Sabella (JS-5454)
485 Lexington Avenue, 29th Floor
New York, NY 10017
(646) 722-8500

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

By _John C. Browne_
Max W. Berger (MB-5010)
John P. Coffey (JC-3832)
John C. Browne (JB-0391)
1285 Avenue of the Americas
New York, NY 10019
(212) 554-1400

*Co-Lead Counsel for Lead Plaintiffs and the Putative Class*

BAKER & HOSTETLER LLP

By _Helen B. Kim_
Helen B. Kim (HK-8757)
333 South Grand Avenue
Los Angeles, CA 90071
(213) 975-1611

NATHAN LAW OFFICE
Richard E. Nathan (RN 6487)
123 South June Street
Los Angeles, CA 90004
(323) 931-8080

*Attorneys for Defendant Dennis A. Kleina*

501443409

11

# Exhibit 13

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re | Chapter 11 |
| REFCO INC., et al., | Case No. 05-60006 (RDD) |
| Debtors. | Jointly Administered |

------------------------------------------------------------

|  |  |
|---|---|
| AXIS REINSURANCE COMPANY, | |
| Plaintiff, | Adv. Proc. No. 07-01712-rdd |
| v. | |
| PHILLIP R. BENNETT, et al., | |
| Defendants. | |

------------------------------------------------------------

**ORDER GRANTING, IN PART, MOTION TO REQUIRE AXIS REINSURANCE
COMPANY TO PAY OFFICER AND DIRECTOR DEFENSE COSTS IN UNDERLYING
LITIGATIONS AND FOR RELIEF FROM THE AUTOMATIC STAY,
TO THE EXTENT APPLICABLE, FOR THE ADVANCEMENT OF SUCH DEFENSE
COSTS AND TO PERMIT CERTAIN OFFICERS TO PROSECUTE CLAIMS
AGAINST AXIS REINSURANCE COMPANY**

Upon the motion(the "Motion"), dated July 12, 2007,of Dennis Klejna,Joseph Murphy,

William M. Sexton, Gerald Sherer and Philip Silverman ("Movants") To Require Plaintiff to

Pay their Defense Costs In Underlying Litigations And For Relief From The Automatic Stay, To

the Extent Applicable, To Permit Plaintiff To Advance And/Or Pay Such Defense Costs And To

Permit Defendants To Prosecute Claims Against Insurance Company, pursuant to 11 U.S.C. §

362(d), Bankruptcy Rule 4001(a), and Bankruptcy Rule 7065; and the Court having reviewed the

Motion and the objections and other pleadings related thereto; and upon the record of the August 30, 2007 hearing thereon (the "Hearing"); and the Court having found that (i) the Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334, (ii) adequate and sufficient notice of the Motion and the Hearing were given to all parties in interest and no other or further notice is necessary or required, and (iii) the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor for the reasons stated by the Court at the Hearing.

Therefore, it is hereby ORDERED that:

1.  The Motion is granted to the extent provided herein and otherwise denied without prejudice.

2.  All capitalized terms used but not defined herein have the meanings ascribed to them in the Motion or the Axis Policy, as may be the case.

3.  Under Bankruptcy Rule 7065, effective ten days after entry of this Order Axis is directed, upon the exhaustion of the Lexington Policy, to advance, subject to a complete reservation of rights, privileges and defenses of the parties under the Axis Policy, the payment of the Defense Costs of Movants in the Underlying Actions that have been billed through the date of this Order, pending a final determination by this Court of Movants' claim that Axis has no right to withhold Defense Cost advances (a) unilaterally or (b) until there is a final determination by a court of competent jurisdiction of Axis' denial of coverage under the Axis Policy.

4.  The automatic stay imposed by 11 U.S.C. § 362(a), to the extent applicable, is hereby

2

modified (a) to permit the foregoing advancement of Defense Costs and (b) to permit the Movants to bring declaratory judgments or actions seeking monetary or equitable relief against Axis relating to Side A of the Axis Policy and matters related thereto.

5.  Axis shall notify counsel to the Plan Administrators of the Modified Joint Chapter 11 Plan (the "Refco Plan") of Refco, Inc. and Certain of Its Direct and Indirect Subsidiaries (the "Plan Administrators") when the advancement of Defense Costs hereunder exceeds $100,000 in the aggregate, and in increments of $100,000 thereafter; provided, that if individual statements for Defense Costs exceed $100,000, Axis need only notify the Plan Administrators of payment of such bills, without breaking such advances into $100,000 increments.

6.  Entry of this Order shall be without prejudice to the right of the Plan Administrators or any party in interest to seek the reimposition of the automatic stay, to the extent it applies, on a prospective basis with respect to any advances of Defense Costs not yet made, for cause shown on appropriate notice to Movants and Axis.

7.  Nothing in this Order shall modify this Court's Order confirming the Refco Plan, including paragraph 34(b) thereof, or constitute a determination that the automatic stay under 11 U.S.C. § 362(a) applies to the actions described in paragraph 4 hereof.

8.  The Movants have stated that they intend to make a dispositive motion for a determination of whether Axis is entitled under the Axis Policy to withhold the advance of Defense Costs unilaterally or before coverage therefor is finally determined, and this Court has informed the parties that, subject to proper notice and briefing, it has reserved time on October 12, 2007 to hold a hearing on such a motion. Axis has informed the Court and the Movants that it intends to seek an expedited appeal of this Order, and the Court therefore has not directed the parties to propose a briefing schedule for such a dispositive motion. Subject to any ruling in

3

connection with such appeal, this Court will hold a telephonic status conference on September

14, 2007 at 2:00 p.m. on the scheduling of briefing and a hearing on the dispositive motion.

Counsel for the Movants shall initiate such call.


Dated: August 31, 2007
      New York, New York


                          _____ /s/ Robert D. Drain _____
                          UNITED STATES BANKRUPTCY JUDGE

4

# Exhibit 14

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

In re

REFCO, INC., et al.,

                Debtors.

------------------------------------------------------------x

TONE N. GRANT, ROBERT C. TROSTEN, AND
PHILLIP R. BENNETT,

                Plaintiffs,

      v.

AXIS REINSURANCE COMPANY,

                Defendant.

------------------------------------------------------------x

Chapter 11

Case No. 05-60006 (RDD)

Jointly Administered

Adv. Proc. No. 07-2005-rdd

*Electronically Filed*

## ORDER GRANTING, IN PART, MOTION TO REQUIRE AXIS REINSURANCE COMPANY TO PAY OFFICER AND DIRECTOR DEFENSE COSTS IN UNDERLYING LITIGATIONS AND FOR RELIEF FROM THE AUTOMATIC STAY, TO THE EXTENT APPLICABLE, FOR THE ADVANCEMENT OF SUCH DEFENSE COSTS AND TO PERMIT CERTAIN OFFICERS TO PROSECUTE CLAIMS AGAINST AXIS REINSURANCE COMPANY

Upon the motion(the "Motion"), datedSeptember 5, 2007,of Tone N.Grant, Robert C.

Trosten, and Phillip R. Bennett ("Movants") To Require Defendant to Pay their Defense Costs In

Underlying Litigations And For Relief From The Automatic Stay, To the Extent Applicable, To

Permit Defendant To Advance And/Or Pay Such Defense Costs And To Permit Plaintiffs To

Prosecute Claims Against Insurance Company, pursuant to 11 U.S.C. § 362(d), Bankruptcy Rule

4001(a), and Bankruptcy Rule 7065; and the Court having reviewed the Motion and the

objections and other pleadings related thereto at a hearing on September 11, 2007 (the

"Hearing"); and upon the record of the September 11, 2007 hearing thereon (the "Hearing"); and

the Court having found that: (i) the Court has jurisdiction to consider the Motion pursuant to 28

U.S.C. §§ 157 and 1334, (ii) adequate and sufficient notice of the Motion and the Hearing were

given to all parties in interest and no other or further notice is necessary or required, and (iii) the

legal and factual bases set forth in the Motion and at the Hearing establish just cause for the

relief granted herein; and after due deliberation and sufficient cause appearing therefor for the

reasons stated by the Court at the Hearing.

Therefore, it is hereby ORDERED that:

1. The Motion is granted to the extent provided herein and otherwise denied without prejudice.

2. All capitalized terms used but not defined herein have the meanings ascribed to them in the

   Motion or the Axis Policy, as may be the case.

3. Under Bankruptcy Rule 7065, effective ten days after entry of this Order Axis is directed,

   upon the exhaustion of the Lexington Policy, to advance, subject to a complete reservation of

   rights, privileges and defenses of the parties under the Axis Policy, including with respect to

   allocation and priority of payments, the payment of the Defense Costs of Movants in the

   Underlying Actions that have been submitted to Axis on or before August 31, 2007, pending

   a final determination by this Court of Movants' claim that Axis has no right to withhold

   Defense Cost advances (a) unilaterally or (b) until there is a final determination by a court of

   competent jurisdiction of Axis' denial of coverage under the Axis Policy.

4. The automatic stay imposed by 11 U.S.C. § 362(a), or any injunction issued in respect of

   section 10.5 of the Refco Plan by paragraph 34(c) of the Confirmation Order (the "Plan

   Injunction"), to the extent applicable, is hereby modified (a) to permit the foregoing

   advancement of Defense Costs and (b) to permit the Movants to bring declaratory judgments

1465998.1

or actions seeking monetary or equitable relief against Axis relating to Side A of the Axis Policy and matters related thereto.

5. Axis shall notify counsel to the Plan Administrators of the Modified Joint Chapter 11 Plan (the "Refco Plan") of Refco, Inc. and Certain of Its Direct and Indirect Subsidiaries (the "Plan Administrators") when the advancement of Defense Costs hereunder exceeds $100,000 in the aggregate, and in increments of $100,000 thereafter; provided, that if individual statements for Defense Costs exceed $100,000, Axis need only notify the Plan Administrators of payment of such bills, without breaking such advances into $100,000 increments.

6. Entry of this Order shall be without prejudice to the right of the Plan Administrators or any party in interest to seek the reimposition of the automatic stay or Plan Injunction, to the extent it applies, on a prospective basis with respect to any advances of Defense Costs not yet made, for cause shown on appropriate notice to Movants and Axis.

7. Nothing in this Order shall modify this Court's Order confirming the Refco Plan, including paragraph 34(c) thereof, or constitute a determination that the automatic stay under 11 U.S.C. § 362(a) applies to the actions described in paragraph 4 hereof.

8. The Movants have stated that they intend to make a dispositive motion for a determination of whether Axis is entitled under the Axis Policy to withhold the advance of Defense Costs unilaterally or before coverage therefor is finally determined, and this Court has informed the parties that, subject to proper notice and briefing, it has reserved time on October 12, 2007 to hold a hearing on such a motion. The Court will hold a telephonic status conference on September 14, 2007 at 2:00 p.m. on the scheduling of briefing and a hearing on the dispositive motion.

1465998.1

9.  Nothing in this Order shall constitute determination of, or affect the priority of payments to

which insured are entitled under the Axis Policy.

Dated: New York, New York
       September 12, 2007

                              /s/Robert D. Drain
                              UNITED STATES BANKRUPTCY JUDGE

4

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re | : | |
| | : | **Chapter 11** |
| REFCO, INC., et al., | : | |
| | : | **Case No. 05-60006 (RDD)** |
| | : | |
| Debtors. | : | **(Jointly Administered)** |
| | : | |
| AXIS REINSURANCE COMPANY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **Adv. Proc. No. 07–01712 (RDD)** |
| | : | |
| | : | |
| PHILLIP R. BENNETT, et al., | : | |
| | : | [caption continued on next page] |
| Defendants. | : | |

## ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT

```
----------------------------------------x
                                        :
TONE N. GRANT, et al.,                  :
                                        :
            Plaintiffs,                 :
                                        :
       v.                               :   Adv. Proc. No. 07-2005 (RDD)
                                        :
AXIS REINSURANCE COMPANY,               :
                                        :
            Defendant.                  :
----------------------------------------x
                                        :
LEO R. BREITMAN, et al.,                :
                                        :
            Plaintiffs,                 :
                                        :
       v.                               :   Adv. Proc. No. 07-2032 (RDD)
                                        :
AXIS REINSURANCE COMPANY,               :
                                        :
            Defendant.                  :
----------------------------------------x
```

Upon the motions (the "Motions"), dated September 25, 2007, of Tone N. Grant, Robert C. Trosten, Phillip R. Bennett, Dennis Klejna, William M. Sexton, Gerald Sherer, Philip Silverman, Joseph Murphy, Leo R. Breitman, Nathan Gantcher, David V. Harkins, Scott L. Jaeckel, Thomas H. Lee, Ronald L. O'Kelley, and Scott A. Schoen (the "Moving Insureds"), for entry of an order, pursuant to Fed. R. Civ. P. 56, applicable to this proceeding pursuant to Fed. R. Bankr. P. 7056, granting summary judgment against Axis Reinsurance Company ("Axis"), all as more fully set forth in the Motions; and the Court having jurisdiction to consider the Motions and the relief requested therein pursuant to 28 U.S.C. §§ 157, 1334, and 2201; and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motions having been provided; and the Court having reviewed the Motions and the objections and other pleadings related thereto; and upon the record of the October 12, 2007

2

hearing thereon; and after due deliberation and sufficient cause appearing therefor, the Court

having found for the reasons stated in Exhibit A hereto, which amends and supersedes the

Court's bench ruling appearing in the October 12, 2007 hearing transcript, that no genuine issue

of material fact exists and that the Moving Insureds are entitled to judgment as a matter of law, it

is hereby

ORDERED thatthe Motionsare grantedin allrespects; andit isfurther

ORDERED that under the terms of the Axis Policy Axis shall advance, subject to

a complete reservation of rights, privileges, and defenses of the parties under the Axis Policy,[1]

Defense Costs incurred by the Moving Insureds in defense of the various matters asserted against

them related to the demise of Refco, Inc. (the "Claim"), unless and until: (1) there is a final

determination that (a) the Claim is not covered by the Axis Policy, or (b) such Defense Costs are

not covered under the Axis Policy; or (2) the Limit of Liability of the Axis Policy has been

exhausted; and it is further

ORDERED that Axis shall notify counsel to the Plan Administrators of the

Modified Joint Chapter 11 Plan (the "Refco Plan") of Refco Inc. and Certain of Its Direct and

Indirect Subsidiaries (the "Plan Administrators") when the advancement of Defense Costs

hereunder exceeds $2 million in the aggregate, and in increments of $100,000 thereafter;

provided, that if individual statements for Defense Costs exceed $100,000, Axis need only notify

the Plan Administrators of payment of such bills, without breaking such advances into $100,000

increments; and it is further

ORDERED that entry of this Order shall be without prejudice to the right of the

Plan Administrators or any party in interest to seek the re-imposition of the injunction provided

---

[1] Capitalized terms used but not defined herein having the meanings ascribed to such terms in the Motions and the insurance policies referred to therein.

for in the Refco Plan, on a prospective basis with respect to any advances of Defense Costs not yet made, for cause shown on appropriate notice to the Insureds and Axis; and it is further

ORDERED that nothing in this Order shall modify this Court's Order confirming the Refco Plan, including paragraph 34(b) thereof, or constitute a determination that the automatic stay under 11 U.S.C. § 362(a) applies to the actions described in the third decretal paragraph hereof; and it is further

ORDERED that Axis' (a) motion seeking a declaratory judgment with regard to the Moving Insureds' obligations under the Axis policy to refund advanced Defense Costs and (b) request for a determination of the priority and proper allocation of Defense Costs or other Losses under the Axis Policy and denied without prejudice to the rights of all parties to and beneficiaries of the Axis Policy regarding such issue; and it is further

ORDERED that the requirement pursuant to Local Rule 9013-1(b) that the Moving Insureds file a memorandum of law in support of the Motion is hereby waived, and it is further

ORDERED that this Order shall be deemed to constitute a separate order on each of the Motions.


Dated: October 19, 2007
       New York, New York


                                    /s/Robert D. Drain
                                    UNITED STATES BANKRUPTCY JUDGE


4



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

EXHIBIT A

# Exhibit 15

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
-----------------------------------------x
                                         :
In re                                    :
                                         :   Chapter 11
REFCO, INC., et al.,                     :
                                         :   Case No. 05-60006 (RDD)
                                         :
          Debtors.                       :   (Jointly Administered)
-----------------------------------------x
                                         :
AXIS REINSURANCE COMPANY,                :
                                         :
          Plaintiff,                     :
                                         :
          v.                             :   Adv. Proc. No. 07-01712 (RDD)
                                         :
                                         :
PHILLIP R. BENNETT, et al.,              :
                                         :   [caption continued on next page]
          Defendants.                    :
-----------------------------------------x
```

## ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT

*402488.1*

```
------------------------------------------------x
                                                :
TONE N. GRANT, et al.,                          :
                                                :
               Plaintiffs,                      :
                                                :
          v.                                    :    Adv. Proc. No. 07-2005 (RDD)
                                                :
AXIS REINSURANCE COMPANY,                       :
                                                :
               Defendant.                       :
------------------------------------------------x
                                                :
LEO R. BREITMAN, et al.,                        :
                                                :
               Plaintiffs,                      :
                                                :
          v.                                    :    Adv. Proc. No. 07-2032 (RDD)
                                                :
AXIS REINSURANCE COMPANY,                       :
                                                :
               Defendant.                       :
------------------------------------------------x
```

Upon the motions (the "Motions"), dated September 25, 2007, of Tone N. Grant, Robert C. Trosten, Phillip R. Bennett, Dennis Klejna, William M. Sexton, Gerald Sherer, Philip Silverman, Joseph Murphy, Leo R. Breitman, Nathan Gantcher, David V. Harkins, Scott L. Jaeckel, Thomas H. Lee, Ronald L. O'Kelley, and Scott A. Schoen (the "Moving Insureds"), for entry of an order, pursuant to Fed. R. Civ. P. 56, applicable to this proceeding pursuant to Fed. R. Bankr. P. 7056, granting summary judgment against Axis Reinsurance Company ("Axis"), all as more fully set forth in the Motions; and the Court having jurisdiction to consider the Motions and the relief requested therein pursuant to 28 U.S.C. §§ 157, 1334, and 2201; and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motions having been provided; and the Court having reviewed the Motions and the objections and other pleadings related thereto; and upon the record of the October 12, 2007

hearing thereon; and after due deliberation and sufficient cause appearing therefor, the Court

having found for the reasons stated in Exhibit $\underline{A}$ hereto, which amends and supersedes the

Court's bench ruling appearing in the October 12, 2007 hearing transcript, that no genuine issue

of material fact exists and that the Moving Insureds are entitled to judgment as a matter of law, it

is hereby

ORDERED that the Motions are granted in all respects; and it is further

ORDERED that under the terms of the Axis Policy Axis shall advance, subject to

a complete reservation of rights, privileges, and defenses of the parties under the Axis Policy,[1]

Defense Costs incurred by the Moving Insureds in defense of the various matters asserted against

them related to the demise of Refco, Inc. (the "Claim"), unless and until: (1) there is a final

determination that (a) the Claim is not covered by the Axis Policy, or (b) such Defense Costs are

not covered under the Axis Policy; or (2) the Limit of Liability of the Axis Policy has been

exhausted; and it is further

ORDERED that Axis shall notify counsel to the Plan Administrators of the

Modified Joint Chapter 11 Plan (the "Refco Plan") of Refco Inc. and Certain of Its Direct and

Indirect Subsidiaries (the "Plan Administrators") when the advancement of Defense Costs

hereunder exceeds $2 million in the aggregate, and in increments of $100,000 thereafter;

provided, that if individual statements for Defense Costs exceed $100,000, Axis need only notify

the Plan Administrators of payment of such bills, without breaking such advances into $100,000

increments; and it is further

ORDERED that entry of this Order shall be without prejudice to the right of the

Plan Administrators or any party in interest to seek the re-imposition of the injunction provided

---

[1] Capitalized terms used but not defined herein having the meanings ascribed to such terms in the Motions and the insurance policies referred to therein.

for in the Refco Plan, on a prospective basis with respect to any advances of Defense Costs not yet made, for cause shown on appropriate notice to the Insureds and Axis; and it is further

ORDERED that nothing in this Order shall modify this Court's Order confirming the Refco Plan, including paragraph 34(b) thereof, or constitute a determination that the automatic stay under 11 U.S.C. § 362(a) applies to the actions described in the third decretal paragraph hereof; and it is further

ORDERED that Axis' (a) motion seeking a declaratory judgment with regard to the Moving Insureds' obligations under the Axis policy to refund advanced Defense Costs and (b) request for a determination of the priority and proper allocation of Defense Costs or other Losses under the Axis Policy and denied without prejudice to the rights of all parties to and beneficiaries of the Axis Policy regarding such issue; and it is further

ORDERED that the requirement pursuant to Local Rule 9013-1(b) that the Moving Insureds file a memorandum of law in support of the Motion is hereby waived, and it is further

ORDERED that this Order shall be deemed to constitute a separate order on each of the Motions.

Dated: October 19, 2007
New York, New York

/s/Robert D. Drain
UNITED STATES BANKRUPTCY JUDGE

4

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

**EXHIBIT A**

2

1

2          THE COURT:  All right.  I have before me in this

3   adversary proceeding motions for summary judgment in respect of

4   the claim that Axis Reinsurance Company is obligated to advance

5   defense costs to the insureds under its excess liability policy

6   on behalf of directors and officers of Refco, Inc.

7          The movants, all former directors or officers of

8   Refco, are Messrs. Klejna, Sexton, Sherer and Silverman,

9   Murphy, Breitman, Gantcher, Harkins, Jaeckel, Lee, O'Kelley and

10  Shoene and Grant, Trosten and Bennett.  I believe that includes

11  all the moving insureds.

12         Federal Rule of Civil Procedure 56(c), which is made

13  applicable in adversary proceedings in bankruptcy cases

14  pursuant to Bankruptcy Rule 7056, controls the standard in

15  respect of these motions for summary judgment.  Rule 56(c)

16  provides that summary judgment shall be granted if the

17  pleadings, depositions, answers to interrogatories and

18  omissions on file together with the affidavits, if any, show

19  that there is no genuine issue as to any material fact and that

20  the moving party is entitled to judgment as a matter of law.

21  Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).

22         In deciding a motion for summary judgment, the Court

23  must determine if there are any material factual issues to be

24  tried while at the same time, since the nonmoving party would

25  be precluded from a trial if the relief were granted, the Court

3

1   should resolve ambiguities and draw reasonable inferences in

2   favor of the party opposing the motion. Matsushita v. Zenith

3   Radio Corporation, 475 U.S. 574, 587 (1986); Knight v. U.S.

4   Fire Insurance Company, 804 F.2d 911 (2d Cir. 1986).

5          The burden ultimately rests on the moving party to

6   establish the absence of a genuine issue as to any material

7   fact, Celotex, 477 U.S. at 322-23. The nonmoving party may

8   oppose a summary judgment motion only by making a showing that

9   there's a genuine issue as to a material fact in support of a

10   verdict for that party, Anderson v. Liberty Lobby, Inc., 477

11   U.S. 242, 247-48 (1986). That is, the mere existence of a

12   scintilla of evidence in support of its position will be

13   insufficient. There must be evidence on which a jury could

14   reasonably find for the nonmoving party. Id.

15          Thus, the nonmoving party may not defeat a summary

16   judgment motion by relying on self-serving or conclusory

17   statements. There must be something more than some

18   metaphysical doubt as to a material fact. There needs to be

19   specific evidence of a material fact at issue, although of

20   course, once that evidence is shown, the Court moves on to the

21   trial stage; that is, the evidence need not be probative at the

22   summary judgment stage. See generally, again, Matsushita v.

23   Zenith, 475 U.S. at 586.

24        In this case, the question before the Court is

25   whether there's a genuine issue of material fact as to whether

4

1   Axis' unilateral decision to deny payment of defense costs to

2   the plaintiff insureds breaches the Axis policy.   In

3   determining that issue on summary judgment, the parties have

4   directed me primarily to the terms of the policy and, in

5   particular, the terms of the provision governing the

6   advancement of defense costs, paragraph (d)(2), as well as

7   various alleged coverage exclusions in the policy and other

8   claimed defenses to payment.   They have submitted their

9   statements of undisputed material facts, and in Axis's case a

10  response in certain instances controverting the plaintiffs'

11  statements.

12         In reviewing that record, it is clear to me that this

13  is a dispute upon which the Court must focus primarily on the

14  language of the relevant provisions of the insurance policy.

15  Accordingly, this type of dispute, involving as it does the

16  scope of insurance coverage for defense costs, is a

17  particularly appropriate vehicle, as noted by numerous courts,

18  for summary judgment. See United Capital Corporation v.

19  Travelers Indemnity Company of Illinois, 237 F. Supp. 2d 270,

20  274 (S.D.N.Y. 2002).   And that is because, generally, insurance

21  policy disputes hinge, as this one does, on the terms of the

22  contract, and contract determination often lends itself to

23  summary judgment analysis.

24         I previously determined in this proceeding that the

25  dispute -- and in particular the interpretation of the contract

5

1   at issue -- is governed by New York law, having applied a New

2   York choice of law analysis and determined, as I set forth on

3   the record of the hearing on August 30, 2007, that New York

4   choice of law principles, given the locus of the dispute and

5   the domicile of the parties, would lead to the application of

6   New York law.

7        That transcript is attached to the parties'

8   submissions, to both Ms. Kim's declaration as well as

9   Ms. Gilbride's declaration in support of Axis's cross motion at

10  Exhibit B.

11       Under New York law, a written contract is to be

12  interpreted so as to give effect to the intention of the

13  parties as expressed in the unequivocal language they've

14  employed, Kruden v. Bank of New York, 957 F.2d 961, 976 (2d

15  Cir. 1992).  Under New York law, if a contract is unambiguous

16  on its face its proper construction is a question of law.  The

17  Court should not look beyond its confines to extrinsic evidence

18  if its relevant provisions are clear and unambiguous.  See

19  generally Metropolitan Life Insurance Company v. RJR Nabisco,

20  Inc., 906 F.2d 884, 889 (2d Cir. 1990); W.W.W. Associates, Inc.

21  v. Giancontieri, 77 NY 2d 157, 162 (1990); and Vermont Teddy

22  Bear Company, Inc. v. 538 Madison Realty Company, 1 NY 3d 470

23  (2004).

24       Giving the terms of the contract their plain meaning,

25  a court should find contractual provisions ambiguous only if

6

1    they are reasonably susceptible to more than one interpretation

2    by reference to the contract alone. Krumme v. Westpoint

3    Stevens, Inc., 238 F.3d 133, 139 (2d Cir. 2000). Contract

4    language is unambiguous if it has a definite and precise

5    meaning unattended by danger of misconception in the purport of

6    the contract itself and concerning which there's no reasonable

7    basis for a difference of opinion. Metropolitan Life Insurance

8    v. RJR Nabisco, 986 F.2d at 889. Language whose meaning is

9    otherwise plain is not ambiguous merely because the parties

10   urge different interpretations in the litigation.  Id.

11          Those contract interpretation rules are generally

12   followed in New York in respect of insurance policies, but, in

13   addition to those general principles, there are specific

14   contract interpretation rules that apply to insurance policies

15   that are relevant to this dispute, or potentially relevant.

16          Thus, with regard to the interpretation of an

17   insurance contract, the courts view the plain language of the

18   contract as the best and, if plain, the only, measure of the

19   parties intentions; and the initial interpretation of the

20   contract is a matter of law for the Court to decide, as set

21   forth in, among other decisions cited by the parties, In Re:

22   WorldCom, Inc. Securities Litigation, 354 F.Supp. 2d 455, 463-

23   464 (S.D.N.Y. 2005).

24          However, in that opinion District Judge Cote goes on

25   to state additional, well-established rules with regard to  the

7

1   interpretation of insurance contracts under the law of New

2   York.  First, to the extent an ambiguity exists in respect of

3   an insurance contract governed by New York law that is

4   unresolved by extrinsic evidence, such ambiguity must be read

5   against the insurer. WorldCom, 354 F.Supp.2d at 464. See also

6   McCostis v. Home Insurance Company of Indiana, 31 F.3d 910, 113

7   (2d Cir. 1994).  Second, Judge Cote notes that the rule that

8   insurance policies are to be construed in favor of the insured

9   is most rigorously applied in construing the meaning of

10  exclusions incorporated into a policy of insurance or

11  provisions seeking to narrow the insurer's liability. WorldCom,

12  354 F.Supp.2d at 464.  And, finally, under New York law where a

13  contract of insurance includes the duty to defend or to pay for

14  the defense of the insured (and I note that Judge Cote makes no

15  distinction between the two concepts, *i.e.*, the duty to defend

16  and the duty to pay for the defense of the insured), that duty

17  is "a heavy one" and, indeed, has been found for many years to

18  apply even if the policy of indemnity does not specifically

19  provide for advancement. Id.  "In sum" -- again I'm quoting

20  from the WorldCom opinion at page 464 -- "the duty to pay

21  defense costs is construed liberally and any doubts about

22  coverage are resolved in the insured's favor."

23          My review of Axis's statement of uncontroverted facts

24  and its response to the statements of undisputed material facts

25  submitted in various of the movants' Rule 7056(1) statements

26  confirms that most of the issues in this case are

8

1  uncontroverted, including, obviously, the terms of the

2  underlying policy, which incorporates, with the specific

3  exceptions stated in the Axis policy, the primary policy issued

4  by the primary insurer.  In addition, Axis does not dispute

5  that claims in the underlying litigation against the insureds

6  constitute "claims" as a defined term in the primary policy for

7  "wrongful acts," as also defined in the primary policy, or that

8  the movants here are insured or are "insureds," and that they

9  have incurred and will continue to incur defense costs under or

10  in response to the underlying litigations.

11      There's also no dispute, and of course the policy

12  speaks for itself, that the term "loss" in the primary policy,

13  as incorporated with specific exceptions by the Axis policy,

14  includes defense costs that an insured is legally obligated to

15  pay as a result of any claim.  It's also not disputed that the

16  insureds have given Axis notice on a timely basis of their

17  claims under the policy.

18      What is disputed by Axis is, first, whether

19  exclusions unique to its policy, which I primarily take to be

20  the prior knowledge exclusion set forth in endorsement number

21  six to the policy, but also other potential exclusions and

22  defenses, apply here to prevent the defense costs from being

23  covered claims under the Axis policy.

24      In addition, the parties also dispute whether, under

25  the language of the primary policy -- specifically paragraph

26  (d)(2) -- Axis is obligated to pay defense costs on an as-

9

1  incurred basis in light of Axis' contention that the exclusions

2  that it has noted apply here to preclude coverage.  The issue

3  was first raised by Axis apparently in a letter, attached as

4  Exhibit 9 to the Kim declaration, disclaiming coverage on the

5  basis of various exclusions as well as an alleged breach of

6  warranty.

7         Notably, Axis has not offered any material fact as to

8  any extrinsic aid to interpretation of paragraph (d)(2) in the

9  primary policy or as to any other provision, for that matter,

10  of the applicable insurance policies.

11         I conclude based on the record before me for purposes

12  of these motions that, in fact, there is a hotly contested

13  dispute as to whether the policy exclusions alleged by Axis

14  would apply here to render the insureds' losses, including

15  defense costs, to not be covered by the policy.  Specifically,

16  each of the movants, each of the insureds, has in this

17  adversary proceeding taken the position that it is not

18  precluded from coverage by the knowledge exclusion in the Axis

19  policy or the prior acts exclusion or breach of warranty

20  defense, and, furthermore, certain of the insureds (as set

21  forth in Exhibits 10, 12 and 13 of the Kim declaration at

22  paragraphs 43 through 45) have in addition taken the position

23  that the knowledge exclusion itself is an improper endorsement

24  to the policy.

25         I previously ruled, as set forth in the transcript of

26  the August 30, 2007 hearing, that the issue of whether, in

10

1  fact, the insureds' losses are covered under the Axis policy in

2  light of the prior knowledge exclusion -- as well as the other

3  exclusions and defenses raised by Axis -- should not be decided

4  at this time in light of the substantial overlap of those

5  issues, *i.e.*, whether in fact there was prior knowledge of a

6  claim and/or loss, with the issues pending before the District

7  Courts in the multi-district securities litigation as well as

8  in respect of certain of the insureds' pending criminal

9  litigation in the Southern District.  I won't repeat that

10 ruling now except to note that in my view it was dictated by

11 clear precedent which, as was brought out at the hearing as set

12 forth in the transcript, essentially subordinates the interest

13 of the insurer to have a prompt determination of such a

14 coverage dispute behind the interest of the insured to pursue

15 its overlapping defense in the primary litigation that

16 allegedly gives rise to the insured claim or loss.

17         That context is important to keep in mind in

18 connection with the present motions, because it sets the stage

19 for the fairly narrow issue before me -- whether Axis is

20 contractually bound to advance defense costs before the final

21 determination of a dispute over whether a claim therefor is

22 covered under the Axis policy.

23         Again, that issue ultimately depends upon the Court's

24 interpretation of the following provision, paragraph (d)(2) of

25 the primary policy, which is incorporated by reference into the

26 Axis policy.  Section (d)(2) states: "The insurer will pay

11

1    covered defense costs on an as-incurred basis.  If it is

2    finally determined that any defense costs paid by the insurer

3    are not covered under this policy, the insured has agreed to

4    repay such noncovered defense costs to the insurer."

5           Axis contends that it is permitted by the foregoing

6    language to determine unilaterally not to pay defense costs on

7    an as-incurred basis if it believes that such defense costs are

8    not covered under its policy, that is, that they would be

9    subject to the exclusion or the exclusions under the policy or

10   another valid defense.  The movants contend, to the contrary,

11   that Axis is obligated under the paragraph that I just read --

12   particularly when construed in light of relevant case law and

13   the presumptions that I noted earlier that apply to exclusions

14   and insurance policies generally -- to advance their defense

15   costs until there is a final determination by an objective fact

16   finder that the defense costs are not covered. They take this

17   position, again, because they contend, and I conclude that the

18   record supports this, that there is a legitimate dispute as to

19   whether defense costs are covered, or not, under the terms of

20   the policy.

21          Both sides have asserted principles or maxims of

22   contract interpretation to assist the Court in determining

23   whether the language that I just quoted is ambiguous or not.

24   Not surprisingly, they both contend that the language is not

25   ambiguous, although, perhaps equally not surprisingly they both

26   contend that it means the opposite of what the other says it

12

1   means.

2           The interpretive principle they rely on primarily is

3   that a court should read a contract as a whole, giving meaning

4   to all of its parts, and should avoid an interpretation that

5   would render other provisions useless and meaningless; and I

6   have looked, as they have urged, at the other provisions of the

7   contract, including paragraph (d)(3) as well as the interplay

8   of the two sentences in paragraph (d)(2), in light of that

9   maxim.

10          Frankly, after having done so, I do not believe,

11  however, that the contract interpretation maxim that I just

12  recited is of much help, in that one could at least conceive of

13  uses for all of the language in paragraph (d)(2) to support

14  both sides' position.  I believe that paragraph (d)(3),

15  moreover, is really a provision going to a separate proposition

16  and consistent with, again, the principles pursuant to which

17  courts in New York interpret insurance policies, and,

18  particularly, policy exclusions bearing on the advancement of

19  defense costs, (d)(3) should be read narrowly, stand on its

20  own, and not be used to extend over, or into, an interpretation

21  of (d)(2).  See Associated Electronic & Gas Insurance Services,

22  Ltd. v. Rigas, 382 F.Supp.2d 685, 696-700 (E.D. Pa. 2004).

23          However, there is a more meaningful point to note

24  about the rest of the policy, which is that nowhere does it

25  state that, or even imply, except in (d)(3) in the specific and

26  limited instance covered thereby, that the insurer can

13

1  unilaterally or in the exercise of its reasonable judgment or

2  in any other way withhold defense costs absent a court

3  determination in the event of a dispute as to whether defense

4  costs are covered.  In light of the case law that I will go

5  into in a minute, which emphasizes the logic and policy behind

6  requiring the advancement of disputed defense costs, I conclude

7  that the absence of such language, in addition to the language

8  of (d)(2), which, again, says that the insurer will pay covered

9  costs and in the next sentence provides for a refund mechanism

10 if defense costs are finally determined to have not been

11 covered, that the reasonable and ordinary course colloquial

12 interpretation of paragraph (d)(2) is that, absent a final

13 determination by an objective fact finder, the insurer is

14 obligated to pay defense costs that the insured reasonably

15 contends are covered, notwithstanding the insurer's view that

16 those costs are excluded or not covered under the policy. In

17 other words, unless the insured's position on coverage is

18 clearly, facially wrong, the agreement contemplates that

19 defense costs will be advanced subject to later refund if the

20 coverage dispute ultimately is determined in the insurer's

21 favor.

22         As I said, I believe this interpretation is clear in

23 the context of the entire agreement, particularly because of

24 the refund mechanism in (d)(2) and the absence in the agreement

25 of any provision conferring on the insurer the unilateral

26 ability to make such a determination, but I note, too, that to

14

1  the extent that an ambiguity exists the insurer has offered up

2  no extrinsic evidence to support its interpretation of

3  paragraph (d)(2).  Consequently, I believe that under the law

4  of New York, in the absence of Axis offering up such evidence,

5  such an ambiguity would have to be interpreted against the

6  insurer.  Again, see <u>McCostis v. Home Insurance Company in</u>

7  <u>Indiana</u>, 31 F.3d 110, 113 (2d Cir. 1994), as well as the

8  discussion in <u>Multi-Foods Corporation v. Commercial Union</u>

9  <u>Insurance Company,</u>309 F.3d 76, 78 n.7 (2d Cir. 2002).

10        As I alluded to a moment ago, I'm not writing on a

11 clean slate with regard to this issue.  As far as I can tell,

12 every court that has considered the issue (and again I believe

13 it's a narrow issue as to whether, during the pendency of a

14 dispute as to coverage under a policy, an insurer may

15 unilaterally withhold the payment of defense costs) has

16 concluded that, to the contrary, the insurer is obligated to

17 advance the defense costs -- with the caveat that if it is

18 clear from the policy itself that all claims made against the

19 insured would not be covered, for example on a motion to

20 dismiss or summary judgment basis, the defense costs would need

21 to be advanced.

22        Here, as I noted, the applicability of the prior

23 knowledge exclusion and Axis' other defenses are hotly disputed

24 and the resolution of that dispute is not clear from the face

25 of the policy and the undisputed facts and may not be decided

26 until the overlapping issues are resolved in the underlying

15

1    district court securities and criminal litigation against the

2    insureds. Consequently, I believe that the case law would

3    support my conclusion that Axis is obligated to advance the

4    defense costs pending such determination. This issue has most

5    recently been dealt with, quite thoroughly, in Federal

6    Insurance Company v. Tyco International Limited, 784 N.Y.S.2d

7    920 (N.Y.Sup. 2004), aff'd in part mod. in part, Federal

8    Insurance Co. v. Kozlowski, 792 N.Y.S.2d 397 (1st Dep't. 2005),

9    in which the court, after noting numerous cases that considered

10   the issue in other jurisdictions, found that it is "... well

11   settled that the duty of an insurer to defend its insured or

12   pay its defense costs is distinct from and broader than its

13   duty to indemnify.  The duty exists whenever a complaint

14   against the insured alleges claims that may be covered under

15   the insurer's policy.  If any portion of a complaint might

16   result in coverage, the insurer must defend or pay defense

17   expenses for all claims, both covered and noncovered.

18   Conversely, the insurer has no duty if, as a matter of law, the

19   allegations in the complaint could not give rise to any

20   obligation to indemnify, or the allegations fall within the

21   policy exclusion.  But the duty to defend or pay defense costs

22   is construed liberally and any doubts about coverage are

23   resolved in insured's favor.  Furthermore, an insurer can only

24   evoke a policy exclusion to avoid coverage if it can show that

25   the allegations in the complaint cast that pleading solely and

26   entirely within the policy exclusions."  And, as noted in the

16

1   Appellate Division opinion, "[W]hile Federal must pay defense

2   costs as they are incurred in the securities action and the

3   criminal proceeding, its ultimate liability for such costs is

4   only with respect to such liabilities as fall under the

5   coverage provided. To the extent such liabilities are excluded

6   from coverage by the personal profit exclusion, Federal is not

7   required to pay for defense costs. Since this allocation cannot

8   be made at this juncture and the duty to defend is broader than

9   the duty to indemnify, Federal must pay all defense costs as

10  incurred, subject to recoupment when Kozlowski's liabilities,

11  if any, are determined." Federal Insurance Co. v. Kozlowski,

12  792 N.Y.S.2d at 404.

13          Thus, given the doubt raised by Mr. Kozlowski, the

14  insured, in his summary judgment motion as to whether the

15  insurer had met those stringent tests, the Appellate Division

16  concluded that pending a final determination of the disputed

17  coverage issues the insurer would need to advance defense

18  costs.  (I note that the court did so notwithstanding

19  allegations by the insurer regarding the obvious merits of its

20  various alleged defenses to payment, as Axis has alleged in

21  this proceeding that at least with regard to the alleged

22  conduct of Mr. Bennett the prior knowledge exclusion "clearly"

23  applies here.)

24          The New York courts have twice since the Koslowski

25  case adopted its rationale, although in one case in dicta.  In

26  Ghose v. CNA Reinsurance Company Limited, 841 N.Y.S.2d 519 (1st

17

1   Dept. 2007), the court stated, "We note, however, that if the

2   complaint were not being dismissed on grounds of inconvenient

3   forum, the interim award of defense costs would not be

4   disturbed.  New York law requires that a judicial order is a

5   condition precedent to the cessation of payment for defense

6   costs in circumstances where a claim has already been made,"

7   citing Koslowski.

8          Similarly, in Trustees of Princeton University v.

9   National Union Fire Insurance Company of Pittsburgh, 839

10  N.Y.S.2d 437 (Sup. Ct. 2007), the court, after noting many of

11  the same rules of construction that I quoted from the Koslowski

12  and WorldCom cases, stated,  "The insurer's duty to pay defense

13  costs arises when the insured incurs the expenses.  Where

14  coverage is disputed, insurers are required to make

15  contemporaneous interim advances of defense expenses subject to

16  recoupment in the event it is ultimately determined the policy

17  does not cover the claim."

18          A similar finding, albeit in respect of slightly

19  different policy language, was reached by Judge Cote in the

20  WorldCom opinion that I cited earlier, In re WorldCom

21  Securities Litigation, 354 F.Supp.2d at 455.  Axis has

22  attempted to distinguish the WorldCom opinion on two bases,

23  neither of which succeed.  The first is that Judge Cote was

24  dealing with a defense of rescission as opposed to a specific

25  alleged exclusion in the policy.  I don't accept that

26  distinction, however, because I believe that, in either case,

18

1   the key point was that there was a dispute as to whether there

2   was any obligation to pay on the insurer's part.

3          The second basis is that the advancement language in

4   the policy in WorldCom did not contain the word "covered"

5   before "defense costs," and used the word "shall" as opposed

6   to "will" before the word "pay." But, for the same reason that

7   I don't believe the first distinction is meaningful, I don't

8   believe the second one is, either. In either case, the issue

9   hinged upon whether the insurer could unilaterally act to

10  withhold payment based on its interpretation of whether it was

11  obligated to pay: here, whether the claim was excluded from

12  coverage, in WorldCom, whether the policy was void ab initio.

13  I believe Judge Cote's logic in finding a duty to pay pending

14  judicial determination of the underlying dispute would apply

15  under either scenario.

16         The claimed distinction that I just discussed was

17  addressed expressly, moreover, by the District Court for the

18  Eastern District of Pennsylvania in Associated Electric and Gas

19  Insurance Services Limited v. Rigas, 382 F. Supp. 2d 685 (E.D.

20  Pa. 2004). Because of a prior Third Circuit opinion, Little v.

21  MGIC Indemnity Corporation, 836 F.2d 789 (3d Cir. 1987), the

22  court in the Rigas case had little trouble finding that the

23  insurer's rescission allegation did not give it the unilateral

24  right to withhold defense costs. The Rigas court then

25  separately considered, however, whether a unilateral right

26  existed in respect to withholding advancement of defense costs

1  because of alleged applicable exclusions from coverage,

2  including a prior knowledge exclusion, which, like the Axis

3  policy exclusion, did not expressly require a final

4  adjudication for the exclusion to take effect.  As here,

5  however, the court in the Rigas case noted that the prior

6  knowledge exclusion also did not contain any language to

7  suggest that it operated at the discretion of the insurer.

8         In the Rigas case, the court determined that the

9  carrier had a duty to contemporaneously pay the disputed

10  defense costs, given the policy's language in respect of

11  defense costs and the generally recognized obligation under an

12  indemnity policy to pay whenever the insured is legally

13  obligated to pay such costs.  As here, there was no dispute in

14  the Rigas case that the insureds owed money to the lawyers

15  defending them and that this was a legal obligation.  Thus, the

16  carriers had a duty to contemporaneously pay such defense costs

17  unless that duty was altered by some other provision in the

18  policy.

19         The Rigas court concluded that the policy's knowledge

20  exclusion and other provisions were ambiguous on this point,

21  permitting two different interpretations of whether a

22  unilateral right to withhold payment was lodged in the insurer

23  (although, here, no other policy provision gave the insurer

24  such a right.)  However, since under Pennsylvania law,

25  similarly to New York law, the policy exclusion had to be

26  construed in favor of the insureds and against the insurer, the

20

1  ambiguity would not be read to permit unilateral insurer

2  action. Rigas, 382 F.Supp.2d at 700.

3        Here, as I said, I go further and find that the

4  absence of a provision giving the insurer the unilateral right

5  to withhold defense costs, especially in light of paragraph

6  (d)(2)'s second sentence, means that (d)(2) is not ambiguous;

7  but as I said before, based on the absence of any extrinsic

8  evidence offered to clarify any alleged ambiguity, under New

9  York law the provision would in any event be construed in favor

10 of the insureds and against the insurer here, as in Rigas.

11       Two recent cases from other jurisdictions which

12 generally have the same basic insurance law contract

13 interpretation principles as New York are also worth noting.

14 First, in G-1 Holdings, Inc. v. Reliance Insurance Company,

15 2006 U.S. District Lexis 17597 (D.N.J. March 22, 2006), the

16 court concluded that although the defendants argued that

17 various exclusions operated to bar coverage, "An insurer's duty

18 to defend is determined by comparing the allegations in the

19 underlying complaint with the language of the policy at issue.

20 Here, the Court has already found that there is a potential for

21 coverage should the alleged facts be proven true... Moreover,

22 should it later be adjudicated that the policy does not apply

23 to the underlying allegations, the policy specifically provides

24 for the insurer to be reimbursed." Thus the insurer was

25 required to advance the defense costs.

26       The court in Sun-Times Media Group, Inc. v. Royal &

21

1   Sunalliance Insurance Company of Canada, 2007 WL 1881 265 (Del.

2   Super. June 20, 2007), makes a similar point: "Furthermore,

3   the personal exclusions do not override a present contractual

4   duty to advance defense costs unless the defendants can

5   unequivocally now show that all of the obligations in the

6   underlying Illinois class action complaint fall within the

7   personal conduct exclusions.... Because the defendants have

8   failed to show at this time the applicability of the exclusions

9   to International, the Court need not decide the potential

10  applicability of the exclusions at this time." Again, the Sun-

11  Times court noted that the policy provided, as paragraph (d)(2)

12  does here, that "Such advance payments by the insurer shall be

13  repaid to the insurer to the extent that any such insured shall

14  not be entitled under the policy ultimately to such payment."

15  And then it concluded, "Therefore, the plain language of the

16  policy guaranteeing an advancement of defense costs is not

17  precluded by any imputation of exclusions to International, as

18  well as (as explained earlier) to the outside directors."

19         In light of that case law, I find that under the

20  language of the Axis policy -- including its implicit

21  incorporation of the extensive case law regarding how such

22  policies are to be interpreted under New York law -- that

23  pending a resolution of the coverage dispute, Axis is obligated

24  to advance defense costs. That coverage dispute is an issue

25  that the Court could and would normally decide promptly.

26  However, as I ruled on August 30, 2007, that issue cannot be

22

1  decided by me here because of the substantial overlap doctrine.

2  But that is not a reason for changing the rule that I have just

3  articulated, as is, again, I believe, supported by the Rigas

4  case, where the District Court was precluded by the stay in the

5  Adelphia bankruptcy case from deciding the coverage issue but

6  nevertheless concluded that the insurer was obligated to

7  advance the defense costs pending the resolution of the

8  coverage dispute. 382 F.Supp.2d at 700. The holding also

9  comports with the policy, discussed in WorldCom, Tyco, and

10 Rigas, of not depriving the director and officer insureds of

11 the means to contest their underlying liability.

12         So, for those reasons, I will grant the insureds'

13 motions for summary judgment.

14         Let me turn then to the cross motion for summary

15 judgment by Axis, which seeks a declaratory judgment that if,

16 in fact, it is subsequently determined by a court that the

17 defense costs are not covered, i.e., that an exclusion applies,

18 or for some other reason the defense costs are not covered by

19 the policy, the insureds who have been paid their defense costs

20 by Axis are obligated to reimburse Axis for those costs.

21         Obviously, the contract provision that I quoted

22 earlier, paragraph (d)(2), says what it says.  And the fact

23 that it provides for repayment is an element of my reasoning,

24 as were similar refund or recoupment provisions in numerous

25 other cases that I have cited.  However, I do not believe that

26 Axis has set forth the basis under the Declaratory Judgment Act

23

1   for a ruling on its motion, given that I believe there is no

2   justiciable controversy before me, as no insured has refused to

3   return any funds (obviously because there's yet to be any

4   determination that such payments were not covered or such

5   losses were not covered under the policy).

6         Nor, to my knowledge, has any insured disclaimed that

7   the refund of defense costs would be the appropriate result if

8   such a determination of non-coverage eventually is made, and

9   Axis has not pointed out any such disclaimer to me or cited

10   another basis to sustain an argument that, notwithstanding the

11   apparent absence of a ripe controversy it has a legitimate

12   concern that such contractual provision would be breached and,

13   therefore, it would be entitled to a determination now.  So,

14   consequently, I will deny that motion, without prejudice, on

15   the basis that, again, it does not set forth the basis under

16   the Declaratory Judgment Act for relief, given the absence of a

17   case or controversy and a lack of ripeness for declaratory

18   judgment purposes.

19         There was no formal motion for an allocation of the

20   priority of the payments to be made by Axis.  I have, I

21   believe, dealt with this issue before in my prior rulings in

22   this matter.  I do not believe that Axis' request on this

23   issue, made at the end of its initial memorandum of law in

24   opposition to the summary judgment motions, is properly before

25   me in the form of a motion or a properly raised controversy.

26   It may ultimately be one, but in the first instance I believe

24

1  that there has to be some actual dispute as to the allocation

2  or priority of payments under the policies and that in the

3  absence of such a dispute the terms of the contract will guide

4  the parties' conduct.

5          So the order granting the summary judgment motions

6  should provide that the Court has not determined any issue with

7  respect to the priority of the advancement of defense costs and

8  that all parties' rights and indeed all nonparties' rights in

9  respect of priority allocations under the Axis policy are fully

10  preserved and reserved.

11          As I normally do when I give a lengthy bench ruling,

12  particularly when I quote cases, I'll go over the transcript of

13  my ruling and reserve the right to amend it, both to correct it

14  and to add something if I believe it should be properly added,

15  but my ruling won't change, which is that the summary judgment

16  motions are granted.

17          So I would ask each of the -- well, not each of you,

18  but the respective counsel for the groups of movants and

19  Mr. Murphy to submit orders for their respective clients

20  consistent with my ruling.

21

```
―――――――――――――――――――x
                                        :
TONE N. GRANT, et al.,                  :
                                        :
              Plaintiffs,               :
                                        :
       v.                               :   Adv. Proc. No. 07-2005 (RDD)
                                        :
AXIS REINSURANCE COMPANY,               :
                                        :
              Defendant.                :
―――――――――――――――――――x
                                        :
LEO R. BREITMAN, et al.,                :
                                        :
              Plaintiffs,               :
                                        :
       v.                               :   Adv. Proc. No. 07-2032 (RDD)
                                        :
AXIS REINSURANCE COMPANY,               :
                                        :
              Defendant.                :
―――――――――――――――――――x
```

**ORDERED**, that the Order Granting Motions for Summary Judgment, dated October 19, 2007,

Docket Number 125, be amended as follows:

1. Page 4, second full paragraph, second line from the bottom, reading, "…Losses under

   the Axis Policy and denied without prejudice…" should be corrected to read as follows:

   "…Losses under the Axis Policy are denied without prejudice…"


Dated: New York, New York
       October 22, 2007

                              /s/Robert D. Drain_____
                              HON. ROBERT D. DRAIN
                              UNITED STATES BANKRUPTCY JUDGE

## Kennedy, Barbara

| | |
|---|---|
| **From:** | Maxwell, Sarah |
| **Sent:** | Monday, October 22, 2007 8:13 AM |
| **To:** | Goldman, Matthew; Gibson, Wendy; Kim, Helen B.; Chairez, Joseph; Burgan, Kelly; Kennedy, Barbara |
| **Subject:** | Refco / Axis |

FYI

——Original Message——
**From:** nysbinfo@nysb.uscourts.gov [mailto:nysbinfo@nysb.uscourts.gov]
**Sent:** Monday, October 22, 2007 11:10 AM
**To:** courtmail@nysb.uscourts.gov
**Subject:** 07-01712-rdd Order (GENERIC)

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* You may view the filed documents once without charge. To avoid later charges, download a copy of each document during this first viewing.**

### U.S. Bankruptcy Court

### Southern District of New York

Notice of Electronic Filing

The following transaction was received from Li, Dorothy entered on 10/22/2007 at 11:09 AM and filed on 10/22/2007

**Case Name:** Axis Reinsurance Company v. Bennett et al
**Case Number:** 07-01712-rdd
**Document Number:** 127

**Docket Text:**
ERRATA Order signed on 10/22/2007 (related document(s)[125]). (Li, Dorothy)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** A:\Errata Order (Axis - Refco Summary Judgment Order).pdf
**Electronic document Stamp:**
[STAMP NYSBStamp_ID=842906028 [Date=10/22/2007] [FileNumber=6244200-0]
[711d2b48ef9d941104c4058f8921b68868de58acd08b4f4a7d1ecf7e293bc8d03a57
4789708487c6edd66bc5f17d07a0abeceef607db3286884d9f159e8e5488]]

**07-01712-rdd Notice will be electronically mailed to:**

Robert A. Benjamin    rbenjamin@kbrlaw.com

Richard Cashman    richard.cashman@hellerehrman.com

Gabriel Del Virginia, Esq.    gabriel.delvirginia@verizon.net

10/22/2007

Jonathan L. Flaxer    jflaxer@golenbock.com,
ssmith@golenbock.com;avassallo@golenbock.com;eneuman@golenbock.com

Wendy J. Gibson    wgibson@bakerlaw.com

Matthew R. Goldman    mgoldman@bakerlaw.com, smaxwell@bakerlaw.com

John J. Jerome    jjerome@saul.com

Helen B. Kim    hkim@bakerlaw.com

Ivan O. Kline    ikline@friedmanwittenstein.com

Holly Kulka    ! bkulka@hewm.com

Barbara Moses    bmoses@orrick.com

Richard Soto    rsoto@hunton.com

Dylan G. Trache    dtrache@wileyrein.com, rours@wileyrein.com

Michael F. Walsh    brian.link@weil.com;andrea.saavedra@weil.com

**07-01712-rdd Notice will not be electronically mailed to:**

Axis Reinsurance Company
,

Robert A Benjamin
Kaufman Borgeest & Ryan LLP
200 Summit Lake Drive
Valhalla, NY 10595

Wayne E Borgeest
Kaufman Borgeest & Ryan LLP
200 Summit Lake Drive
Valhalla, NY 10595

Norman L. Eisen
Zuckerman Spaeder LLP
1800 M Street, N.W.
Washington, DC 20036-5802
jchen@zuckerman.com

Joan M Gilbride
Kaufman Borgeest & Ryan LLP
200 Summit Lake Drive
Valhalla, NY 10595

Perry Rotkowitz
1980 Cynthia Road
Merrick, NY 11566

TypeWrite Word Processing Service

10/22/2007