UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------ x
AXIS REINSURANCE COMPANY,                  :    Adv. Proc. No. 07-01712 RDD
                                           :
                Plaintiff,                 :
      v.                                   :
                                           :
PHILLIP R. BENNETT, et al.,                :
                                           :
                Defendants.                :
------------------------------------------------------------ x
AXIS REINSURANCE COMPANY,                  :    Case No. 07-cv-07924 (GEL)
                                           :
                Plaintiff,                 :
      v.                                   :
                                           :    Electronically Filed
PHILLIP R. BENNETT, et al.,                :
                                           :
                Defendants.                :
------------------------------------------------------------ x
```

**DECLARATION OF PAMELA SYLWESTRZAK IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AGAINST AXIS REINSURANCE COMPANY**

I, PAMELA SYLWESTRZAK, hereby declare:

1.     I am a Senior Vice President of Marsh USA, Inc. ("Marsh") and I respectfully submit this declaration in support of the motion of various insureds, made pursuant to Fed. R. Civ. P. 56, for entry of summary judgment against Axis Reinsurance Company ("Axis"). This declaration is based on my personal knowledge and belief and my review of certain documents in Marsh's files.

2.     Marsh was the broker of record for a program of Directors and Officers ("D&O") liability insurance that was placed with various insurers for Refco Group Ltd., LLC ("Refco Group") for the policy period August 5, 2004 through August 11, 2005, as extended from the originally contemplated August 5, 2005 expiration date (the "2004-2005 Program"). Marsh was also the broker of record for a program of D&O liability insurance that was placed with various insurers for Refco Inc. for the policy period August 11, 2005 through August 11, 2006 (the

"2005-2006 Program"). I was the principal contact person at Marsh for the Refco entities with respect to both the 2004-2005 Program and the binding of the 2005-2006 Program. In such capacity, I was involved in the purchase of insurance coverage for the Refco entities and their directors and officers.

**The 2004-2005 Program**

3.  For the 2004-2005 Program, Refco Group's D&O insurance tower was as follows: (1) U.S. Specialty Insurance Company Directors, Officers and Organization Liability Insurance Policy No. 24-MGU-04-A4151 ($10 million primary coverage) (the "U.S. Specialty 2004-2005 Policy"); (2) Greenwich Insurance Company Policy No. ELU086772-04 ($10 million excess of $10 million) and (3) Axis SecurExcess Policy No. RNN 503865 ($10 million excess of $20 million) (the "Axis 2004-2005 Policy").

4.  Attached as Exhibit A is a true and accurate copy of the policy binder issued by U.S. Specialty Insurance Company ("U.S. Specialty") to Refco Group, dated August 5, 2004, for the U.S. Specialty 2004-2005 Policy.

5.  Attached as Exhibit B is a true and accurate copy of the U.S. Specialty 2004-2005 Policy that U.S. Specialty issued to Refco Group on or about October 23, 2004.

6.  In connection with the 2004-2005 Program and pursuant to U.S. Specialty's August 5, 2004 policy binder, Refco Group submitted a "long form" application to U.S. Specialty. Attached as Exhibit C is a true and accurate copy of the application, executed by Phillip Bennett, on behalf of Refco Group, dated February 5, 2005 (the "Application"), which Marsh submitted to U.S. Specialty in connection with the U.S. Specialty 2004-2005 Policy.

7.  Attached as Exhibit D is a true and accurate copy of the policy binder issued by Axis to Refco Group, dated August 5, 2004, for the Axis 2004-2005 Policy.

8.  The 2004-2005 Axis policy binder stated that it was subject to receipt by Axis of (a) a copy of the underlying U.S. Specialty Company policy, (b) the Application to U.S. Specialty, and (c) a warranty letter to Axis.

9.  In issuing its 2004-2005 Policy, Axis required no application of its own, relying instead upon the Application submitted to U.S. Specialty.

10. Consistent with its August 5, 2004 policy binder for the Axis 2004-2005 Policy, Axis requested that Refco provide it with a warranty letter. Attached as Exhibit E is a true and accurate copy of a letter dated January 14, 2005, executed by Refco's Phillip Bennett on or about January 21, 2005 (the "Warranty Letter"), including attachments to the letter regarding a litigation entitled *Louis Capital Markets, L.P. v. Refco Group Ltd., LLC*, which Marsh submitted to Axis in connection with the Axis 2004-2005 Policy.

11. The Warranty Letter that Marsh submitted to Axis in connection with the Axis 2004-2005 Policy was, to the best of my recollection, never submitted to U.S. Specialty nor was it ever attached to the Application to U.S. Specialty.

12. On or about April 25, 2005, Axis issued the Axis 2004-2005 Policy (SecurExcess Policy No. RNN 503865) to Refco Group for the period August 5, 2004 to August 5, 2005. A true and accurate copy of this policy, as extended to August 11, 2005, is attached as Exhibit F.

**The 2005-2006 Program**

13. It was not until approximately April or May of 2005, around the time that Refco announced that it planned an initial public offering, that Marsh first had discussions with Refco regarding insurance coverage that was later obtained through the 2005-2006 Program.

14. For the 2005-2006 Program, the tower of Refco's D&O insurance was as follows: (1) U.S. Specialty Directors, Officers and Corporation Liability Insurance Policy No. 24-MGU-05-A10821 ($10 million primary coverage); (2) Lexington Insurance Company Directors and

Officers Liability and Corporation Reimbursement Follow Form Excess Liability Policy No. 1620924 ($7.5 million excess of $10 million); (3) Axis SecurExcess Policy No. RNN 506300 ($10 million excess of $17.5 million) (the "Axis 2005-2006 Policy"); (4) Allied World Assurance Company Excess Directors and Officers Insurance and Company Reimbursement Policy No. AW0418197 ($12.5 million excess of $27.5 million); (5) Arch Insurance Company Excess Insurance Policy No. DOX0009322-00 ($10 million excess of $40 million); and (6) XL Specialty Insurance Company Classic A-Side Management Liability Insurance Policy No. ELU089673-05 ($20 million excess of $50 million).

15. Attached as Exhibit G is a true and accurate copy of the Directors, Officers and Corporate Liability Insurance Policy No. 24-MGU-05-A10821 issued to Refco Inc. by U.S. Specialty for the period August 11, 2005 to August 11, 2006.

16. In issuing the 2005-2006 Policy, U.S. Specialty did not require a new application from Refco Inc., relying, instead, upon the Application submitted for the prior year by Refco Group.

17. Attached as Exhibit H is a true and accurate copy of the Directors and Officers Liability and Corporation Reimbursement Follow Form Excess Liability Policy No. 1620924 issued to Refco LLC by Lexington Insurance Company for the period August 11, 2005 to August 11, 2006.

18. In connection with the 2005-2006 Program, Axis issued a policy binder to Refco, Inc. through Marsh on August 11, 2005. Attached as Exhibit I is a true and accurate copy of the policy binder issued to Refco Inc. by Axis on August 11, 2005 for the period August 11, 2005 to August 11, 2006.

31425905

19.     Attached as Exhibit J is a true and accurate copy of the Axis 2005-2006 Policy (SecurExcess Policy No. RNN 506300) issued to Refco Inc. by Axis on or about March 1, 2006 (although dated September 11, 2005) for the period August 11, 2005 to August 11, 2006.

20.     Although the Axis 2005-2006 Policy bears the date of September 11, 2005, it was not issued to Refco until March 1, 2006. Attached as Exhibit K is a true and accurate copy of the letter dated March 1, 2006 from Wayne E. Borgeest of Kaufman Borgeest & Ryan LLP, counsel for Axis, to me, enclosing the Axis 2005-2006 Policy. The copy of the Axis 2005-2006 Policy that was enclosed with Mr. Borgeest's letter included, at Endorsement No. 6, a Knowledge Exclusion.

21.     To the best of my knowledge, Marsh never authorized Axis to add a Knowledge Exclusion to the Axis 2005-2006 Policy in contravention of the Axis policy binder.

22.     To the best of my knowledge, at no time prior to binding did Axis or any of the other excess carriers in the 2005-2006 Program request modification of the severability provisions in the Primary Policy. Thus, I understood Axis and the other excess carriers to follow form with respect to the severability provisions of the Primary Policy.

23.     Attached as Exhibit L is a true and accurate copy of a letter, dated March 6, 2006, from Wayne E. Borgeest of Kaufman Borgeest & Ryan LLP, counsel for Axis, to me.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: Chicago, Illinois
       March 27, 2008

                                                /s/ Pamela Sylwestrzak
                                                  Pamela Sylwestrzak

31425905