HELEN B. KIM (HK-8757)
KATTEN MUCHIN ROSENMAN LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067
Telephone:     310-788-4525
Facsimile:     310-712-8226

PHILIP A. NEMECEK (PN-3319)
KATTEN MUCHIN ROSENMAN LLP
575 Madison Avenue
New York, NY  10022-2585
Telephone:     212-940-8834
Facsimile:     212-940-8776

*Attorneys for Defendant and Counterclaim Plaintiff
Dennis A. Klejna*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ x

AXIS REINSURANCE COMPANY,                 :       Adv. Proc. No. 07-01712 RDD
                                          :
                        Plaintiff,        :
            v.                            :
                                          :       *Electronically Filed*
PHILLIP R. BENNETT, et al.,               :
                                          :
                        Defendants.       :
------------------------------------------------------------------------ x
AXIS REINSURANCE COMPANY,                 :       Case No. 07-cv-07924 (GEL)
                                          :
                        Plaintiff,        :
            v.                            :
                                          :       *Electronically Filed*
PHILLIP R. BENNETT, et al.,               :
                                          :
                        Defendants.       :
------------------------------------------------------------------------ x


**MEMORANDUM OF LAW OF DEFENDANT AND COUNTERCLAIM PLAINTIFF
DENNIS A. KLEJNA IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
DISMISSING COMPLAINT OF AXIS REINSURANCE COMPANY AND FOR ENTRY
OF DECLARATORY JUDGMENT IN FAVOR OF KLEJNA ON COUNT I OF
COUNTERCLAIMS**

# TABLE OF CONTENTS

Page(s)

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ....................................................................................................... 2

    A.    Refco and the Underlying Actions ............................................................. 2

    B.    The Refco Group Ltd., LLC Policies for the 2004-2005 Policy Period ................................................................................................................. 3

    C.    The Refco Inc. D&O Policies for the 2005-2006 Policy Period ............... 4

        1.    The U.S. Specialty Policy .................................................................. 5

        2.    The Lexington Policy ......................................................................... 6

        3.    The Axis 2005-2006 Policy ............................................................... 6

        4.    Axis' Initial Denial of Claims ........................................................... 7

    D.    U.S. Specialty's and Lexington's Payment of Coverage Obligations ................................................................................................... 8

    E.    The Settlement Between Klejna and Lead Plaintiffs in the Securities Litigation and Axis' Repeated Refusal to Participate In or Consent to That Settlement ................................................................... 8

    F.    The Axis Adversary Proceeding ................................................................ 9

    G.    Axis Files a New Complaint in this Court ............................................... 11

    H.    The Instant Motion for Summary Judgment ........................................... 11

ARGUMENT ......................................................................................................................... 11

    I.    The Applicable Legal Standards .......................................................................... 11

    A.    The Legal Standard on a Motion for Summary Judgment ...................... 11

    B.    Rules of Construction Applicable to Insurance Policies .......................... 12

    II.    The Axis Complaint Should be Dismissed With Prejudice in its Entirety as to Mr. Klejna ..................................................................................................... 14

    A.    Count I of the Axis Complaint, Based on the So-Called Warranty Letter, Should Be Dismissed ................................................................... 14

|     | B. | Count II of the Axis Complaint, Based on Refco's Incomplete Application to U.S. Specialty, Should Be Dismissed ............................... 17 |

|     | C. | Count III of the Axis Complaint, Based on The So-Called Knowledge Exclusion, Should Be Dismissed.......................................... 17 |

|     |    | 1. | The Knowledge Exclusion Is Not a Part of the Axis Policy ................. 18 |

|     |    | 2. | Even if the Knowledge Exclusion Were Part of the Axis Policy, the Severability Provisions of the 2005-2006 Primary Policy Bar Axis from Imputing Knowledge of Any Other Insured to Mr. Klejna ................................................................................................. 19 |

|     | D. | Count IV of the Axis Complaint, Based on a 1994 CFTC Enforcement Proceeding, Should be Dismissed ...................................... 22 |

| III. | This Court Should Enter a Declaratory Judgment that the Axis Policy Provides Coverage for Mr. Klejna for Losses Arising from the Securities Litigation............................................................................................................... 24 |

CONCLUSION............................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Banca Commerciale Italiana, New York Branch v. Northern Trust Int'l Banking Corp.*,
    160 F.3d 90 (2d Cir. 1998)......................................................................12

*Braunstein v. Panagiotou (In re McCabe)*,
    345 B.R. 1 (D. Mass. 2006). ...................................................................19

*Bowman v. Allstate Ins. Co.*,
    238 F.3d 468 (2d Cir. 2001).....................................................................12

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)............................................................................ 11-12

*Dister v. Continental Group, Inc.*,
    859 F.2d 1108 (2d Cir. 1988)..................................................................12

*Eames v. Nationwide Mut. Ins. Co.*,
    412 F. Supp. 2d 431 (D. Del. 2006).........................................................15

*Federal Ins. Co. v. Sheldon*,
    150 B.R. 314 (S.D.N.Y. 1993).................................................................19

*Gray v. Darien*,
    927 F.2d 69 (2d Cir.), *cert. denied*, 502 U.S. 856 (1991).......................12

*In re Berman Enterprises, Inc.*,
    168 B.R. 18 (Bankr. E.D.N.Y. 1992).......................................................16

*In re HealthSouth Corp. Ins. Lit.*,
    308 F. Supp. 2d 1253 (N.D. Ala. 2004)............................................. 20-21

*International Multifoods Corp. v. Commercial Union Ins. Co.*,
    309 F.3d 76 (2d Cir. 2002).......................................................................12

*Matter of Pester Refining Co.*,
    58 B.R. 189 (Bankr. S.D. Iowa 1985).......................................................16

*McCostis v. Home Ins. Co. of Indiana*,
    31 F.3d 110 (2d Cir. 1994).......................................................................12

*Morgan Stanley Group Inc. v. New England Ins. Co.*,
    225 F.3d 270 (2d Cir. 2000).....................................................................12

*National Union Fire Ins. Co. of Pittsburgh, Pa. v. The L.E. Myers Co. Group.,*
   1997 WL 148231 (S.D.N.Y. Mar. 31, 1997) .................................................................. 18-19

*Parker v. Chrysler Corp.,*
   929 F. Supp. 162 (S.D.N.Y. 1996) ..................................................................................12

*Parks Real Estate Purchasing Group v. St. Paul Fire & Marine Ins. Co.,*
   472 F.3d 33 (2d Cir. 2006)..........................................................................................13, 21

*Philadelphia Indem. Ins. Co. v. Horowitz, Greener & Stengel, LLP,*
   379 F. Supp. 2d 442 (S.D.N.Y. 2005)..............................................................................17

*Phoenix Mut. Life Ins. Co. v. Raddin,*
   120 U.S. 183 (1887)...........................................................................................................17

*Scottsdale Ins. Co. v. Safeco Ins. Co. of Am.,*
   111 F. Supp. 2d 1273 (M.D. Ala. 2000), *aff'd without opinion,* 254 F.3d 1084 (11th
   Cir. 2001) ..........................................................................................................................20

*Scrima v. John Devries Agency, Inc.,*
   103 B.R. 128 (Bankr. W.D. Mich. 1989)..........................................................................16

*Seidel v. Houston Casualty Co.,*
   375 F. Supp. 2d 211 (S.D.N.Y. 2005).............................................................................24

*Shapiro v. American Home Assurance Co.,*
   616 F. Supp. 900 (D. Mass. 1984) ..................................................................................16

*Wedtech Corp. v. Fed. Ins. Co.,*
   740 F. Supp. 214 (S.D.N.Y. 1990) .................................................................................16

*Wetherell v. Sentry Reinsurance, Inc.,*
   743 F. Supp. 1157 (E.D. Pa. 1990) ................................................................................19

*World Trade Center Properties, LLC v. Hartford Fire Ins. Co.,*
   345 F.3d 154 (2d Cir. 2003)............................................................................................18

## STATE CASES

*Ace Wire & Cable Co. v. Aetna Casualty & Surety Co.,*
   60 N.Y.2d 390, 469 N.Y.S.2d 655 (1983) ..............................................................13

*Bennacer v. Travelers Ins. Co.,*
   265 A.D.2d 823, 695 N.Y.S.2d 846 (4th Dep't 1999)............................................19

*County of Columbia v. Continental Ins. Co.,*
   83 N.Y.2d 618, 612 N.Y.S.2d 345 (1994) ...................................................... 21-22

*Federal Ins. Co. v. Kozlowski,*
    18 A.D.3d 33, 792 N.Y.S.2d 397 (1st Dep't 2005) ................................................................16

*Japour v. Ed Ryan & Sons Agency,*
    215 A.D.2d 817, 625 N.Y.S.2d 750 (3d Dep't 1995) ............................................................13

*National Union Fire Insurance Co. of Pittsburgh, PA v. Xerox Corp.,*
    25 A.D.3d 309, 807 N.Y.S.2d 344 (1st Dep't 2006) ............................................................15

*Seaboard Surety Co. v. Gillette Co.,*
    64 N.Y.2d 304, 486 N.Y.S.2d 873 (1984) .....................................................................13, 21

*Springer v. Allstate Life Ins. Co.,*
    94 N.Y.2d 645, 710 N.Y.S.2d 298 (2000) ............................................................................18

*Westview Assoc. v. Guaranty Nat. Ins. Co.,*
    95 N.Y.2d 334, 717 N.Y.2d 75 (2000) ................................................................................13


## FEDERAL STATUTES

11 U.S.C. § 362(a) ......................................................................................................................19

28 U.S.C. § 157(d) ......................................................................................................................10


## RULES

Fed. R. Civ. P. 56 .......................................................................................... 1, 11-12, 24

Fed. R. Civ. P. 56(c) ....................................................................................................11

Defendant and Counterclaim Plaintiff Dennis A. Klejna submits this Memorandum of Law in support of his motion, pursuant to Fed. R. Civ. P. 56, for summary judgment dismissing the Complaint against him in *Axis Reinsurance Co. v. Bennett, et al.,* 07-cv-07924 (S.D.N.Y.) (GEL), and for judgment on the Counterclaims he has made in *Axis Reinsurance Co. v. Bennett, et al.,* 07-cv-01712 (S.D.N.Y.) (RDD), declaring that Mr. Klejna is covered by that Policy for losses arising out of the action entitled *In re Refco, Inc. Sec. Litig.,* 05 Civ. 8626 (S.D.N.Y.) (GEL), and related cases under the terms of the SecurExcess Policy No. RNN 506300 issued by Plaintiff Axis Reinsurance Company.

## PRELIMINARY STATEMENT

Axis Reinsurance Company ("Axis") is the second excess insurer in a tower of Directors and Officers ("D&O") liability insurance obtained by Refco Inc. for the policy period August 11, 2005 through August 11, 2006 (SecurExcess Policy No. RNN 506300) (the "Axis 2005-2006 Policy"). Mr. Klejna is a former officer of Refco Inc. and is an insured under that Policy.

Mr. Klejna has been named a defendant in *In re Refco, Inc. Sec. Litig.,* 05 Civ. 8626 (S.D.N.Y.) (GEL) (the "Securities Litigation") and other related matters. Since March 6, 2006, Axis has denied any contractual obligation to provide insurance coverage to Mr. Klejna (or other former Refco personnel) under the Axis 2005-2006 Policy. On July 30, 2007, and several times since, Mr. Klejna has asked Axis to fund a $7.5 million settlement he had reached with Lead Plaintiffs' counsel in the Securities Litigation, but Axis has refused to consent to or fund that settlement. In addition, although Axis has been compelled by court order to advance defense costs to Mr. Klejna (and other former Refco personnel), Axis maintains the right to recoup those defense payments.

Neither Axis nor any of the other carriers in Refco Inc.'s D&O tower has ever disputed that the claims made against Mr. Klejna in the Securities Litigation fall squarely within the definition of "Claims" that are covered by the D&O policies, including the Axis 2005-2006 Policy. In fact, the primary insurer, U.S. Specialty Insurance Company, has recognized and honored its contractual obligation to pay losses arising out of the Securities Litigation. On behalf of Mr. Klejna and others, it paid the cost of defending that litigation. With respect to other insureds, it paid the cost of defending other Refco-related actions, as well. And after the U.S. Specialty policy was exhausted

-1-

last year, the first excess carrier, Lexington Insurance Company, likewise paid losses, comprised of defense costs, until its policy, too, was exhausted in early August 2007.

In stark contrast to U.S. Specialty and Lexington, Axis contends that its 2005-2006 Policy does not provide coverage to Mr. Klejna or any of the other former Refco Inc. officers and directors who have been sued. In support of its position, Axis cites (1) a so-called "Warranty Letter," dated January 25, 2005, written in connection with a policy that Axis had issued for the *prior* year covering Refco Inc.'s predecessor, Refco Group Ltd., LLC; (2) an incomplete application submitted to U.S. Specialty Company; (3) a "Knowledge Exclusion" that Axis unilaterally added to its policy on March 1, 2006, in contravention of the policy binder Axis had earlier issued; and (4) Clause XI of the Axis 2005-2006 Policy excluding coverage for any claim arising out of the same circumstances as those underlying any action or proceeding against any Insured that was pending on or prior to June 4, 2004. Regarding the latter, Axis cites allegations made a decade earlier in a Commodity Futures Trading Commission ("CFTC") proceeding.

There is no dispute regarding the material facts concerning the terms of the Axis 2005-2006 Policy, the U.S. Specialty Policy, the August 11, 2005 Axis policy binder, the so-called "Warranty Letter," the incomplete application submitted to U.S. Specialty and the claims made in the Securities Litigation and in the 1994 CFTC proceeding. As applied to these undisputed facts, as we demonstrate below, it is clear as a matter of law that Axis had and continues to have a contractual obligation to provide coverage to Mr. Klejna for the Securities Litigation and other Refco-related actions. Accordingly, this Court should enter summary judgment dismissing as to Mr. Klejna the Complaint in *Axis Reinsurance Co. v. Bennett, et al.,* 07-CV-01712 (S.D.N.Y.) (RDD) ("Axis Complaint II" or the "Axis Complaint"), and should issue a declaratory judgment that Mr. Klejna is covered under the Axis 2005-2006 Policy for losses arising out of the Securities Litigation and other Refco-related actions.

## STATEMENT OF FACTS

### A.    Refco and the Underlying Actions

On or about October 17, 2005, Refco Inc. and most of its direct and indirect subsidiaries (collectively, "Refco") filed with the United States Bankruptcy Court for the Southern District of New York voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code.

The collapse of Refco in October 2005 and the bankruptcy filings that quickly followed led to the commencement of a series of civil actions, government investigations, and criminal proceedings against certain of Refco's officers and directors (the "Underlying Actions"). A number of these remain pending.[1] Relevant to the instant motion, Mr. Klejna is a defendant in *In re Refco, Inc. Securities Litigation*, 05 Civ. 8626 (S.D.N.Y.) (GEL) (the "Securities Litigation"), a putative class action brought on behalf of Refco bondholders and shareholders. (Declaration of Helen B. Kim, dated March 28, 2008, submitted herewith ("Kim Decl.") ¶ 2 & Ex. 1.)

**B.    The Refco Group Ltd., LLC Policies for the 2004-2005 Policy Period**

Axis has issued two separate D&O liability insurance policies for the benefit of Refco entities and their personnel. During 2004-2005, Axis provided $10 million in excess coverage for Refco Group Ltd., LLC ("Refco Group"). During 2005-2006, Axis provided $10 million in excess coverage to Refco Group's successor, Refco Inc.

For the policy period August 5, 2004 to August 11, 2005 (the "2004-2005 Policy Period"), Refco Group's D&O insurance was structured as a "tower," consisting of a primary policy and two excess policies providing for a total of $30 million of coverage ("the 2004-2005 Program"). Under the 2004-2005 Program, U.S. Specialty provided $10 million of primary coverage (Directors, Officers and Organization Liability Insurance Policy No. 24-MGU-04-A4151) (the "U.S. Specialty 2004-2005 Policy"); Greenwich Insurance Company provided the first excess layer of $10 million in excess of $10 million (Policy No. ELU086772-04); and Axis provided the second excess layer of $10 million in excess of $20 million (SecurExcess Policy No. RNN 503865) (the "Axis 2004-2005 Policy").

In connection with the U.S. Specialty 2004-2005 Policy and pursuant to U.S. Specialty's August 5, 2004 policy binder, Refco Group submitted a "long form" application to U.S. Specialty (the "Application"). U.S. Specialty issued its 2004-2005 Policy on October 23, 2004. (Declaration of Pamela Sylwestrzak, dated March 27, 2008, submitted herewith ("Sylwestrzak Decl.") ¶¶ 5-6 & Ex. B.

---

[1] Mr. Klejna properly gave notice of the Underlying Actions in which he was named to the insurers on the Refco "tower" of liability insurance, and requested coverage from such insurers under the policies described below. Axis does not dispute that it was given proper notice of the Underlying Actions. (Kim Decl. Ex. 8 ¶¶ 6, 88-11, 121-139; Ex. 20 ¶¶ 7, 85-136.)

In issuing the Axis 2004-2005 Policy, Axis required no application of its own, relying instead upon the application submitted to U.S. Specialty. (Sylwestrzak Decl. ¶ 9.) But even after U.S. Specialty had already issued its 2004-2005 Policy, Axis would not issue the Axis 2004-2005 Policy until Refco Group Ltd. LLC had also supplied Axis with a so-called Warranty Letter stating that "[n]o [proposed insured] is cognizant of any fact, circumstance, situation, act, error or omission which he[] has reason to suppose might afford grounds for any Claim ... within the scope of the proposed insurance" and that "if such knowledge exists, any claim arising therefrom is excluded." (Sylvestrzak Decl. ¶ 10.)

On January 14, 2005, Axis sent a letter to Refco Group requesting that Refco Group execute the Warranty Letter. On or about January 21, 2005, Phillip Bennett, as President and CEO of Refco Group, signed the Warranty Letter and submitted it to Axis. ((Declaration of Ellen Brooks, dated March 27, 2008, submitted herewith ("Brooks Decl.") Ex. A; Sylwestrzak Decl. Ex. E.) On or about April 25, 2005, Axis issued the Axis 2004-2005 Policy. (Sylwestrzak Decl. Ex. F.)

The Warranty Letter that Refco Group executed and submitted to Axis in connection with the Axis 2004-2005 Policy was never submitted to U.S. Specialty nor was it ever made a part of the application to U.S. Specialty. (Sylwestrzak Decl. ¶ 11.) Mr. Klejna has not submitted any claims for coverage under the Axis 2004-2005 Policy. (Kim Decl. ¶ 11.)

**C.    The Refco Inc. D&O Policies for the 2005-2006 Policy Period**

In 2005, in preparation for its initial public offering, Refco Inc. obtained D&O liability insurance for the benefit of its directors and officers (the "Insureds") for the policy period August 11, 2005 to August 11, 2006 (the "2005-2006 Policy Period"). Refco's Inc's D&O insurance was likewise structured as a tower, but consisted of a primary policy and five excess policies providing for a total of $70 million of coverage.[2]

---

[2] The tower of Refco Inc.'s D&O insurance for the policy period August 11, 2005 through August 11, 2006 was as follows: (1) U.S. Specialty Insurance Company Directors, Officers and Corporation Liability Insurance Policy No. 24-MGU-05-A10821 ($10 million primary coverage); (2) Lexington Insurance Company Directors and Officers Liability and Corporation Reimbursement Follow Form Excess Liability Policy No. 1620924 ($7.5 million excess of $10 million); (3) Axis Reinsurance Co. SecurExcess Policy No. RNN 506300 ($10 million excess of $17.5 million); (4) Allied World Assurance Company Excess Directors and Officers Insurance and Company Reimbursement Policy No. AW0418197 ($12.5 million excess of $27.5 million); (5) Arch Insurance Company Excess Insurance Policy No. DOX0009322-00 ($10 million excess of $40 million); and (6) XL Insurance Company Class A-Side Management Liability Insurance Policy NO. ELU089673-05 ($20 million excess of $50 million). (Sylwestrzak Decl. ¶ 14.)

1.    **The U.S. Specialty Policy**

U.S. Specialty Insurance Company ("U.S. Specialty") issued the primary policy for the 2005-2006 Policy Period with a $10 million limit of liability (Directors, Officers and Corporate Liability Insurance Policy No. 24-MGU-05-A10821) (the "U.S. Specialty 2005-2006 Policy," or "2005-2006 Primary Policy".) (Sylwestrzak Decl. Ex. G.) For this purpose, it did not require a new application from Refco Inc., relying, instead, upon the application submitted for the prior year by Refco Group. (*Id.* ¶ 16.)

The 2005-2006 Primary Policy names as "Insured Persons" "any past, present or future director or officer of the Company...." (*Id.* Ex. G at Definition (F).) Mr. Klejna was an officer of Refco Inc. during the 2005-2006 Policy Period. (Kim Decl. ¶ 2.) The 2005-2006 Primary Policy provides the Refco directors and officers with coverage for any "Loss arising from Claims . . . against the Insured Persons for Wrongful Acts." (Sylwestrzak Decl. Ex. G at Insuring Agreement (A).) "Loss" is defined by the 2005-2006 Primary Policy to include "any damages, settlement, judgments or other amounts ... that ... an Insured Person is legally obligated to pay as a result of any Claim ..." (Sylwestrzak Decl. Ex. G at Definition (G) and Endorsement No. 4.) And Axis does not dispute that the Securities Litigation involves "Claims" against Mr. Klejna for "Wrongful Acts" as defined in the 2005-2006 Primary Policy.

The 2005-2006 Primary Policy also contains two severability provisions. With respect to exclusions, the 2005-2006 Primary Policy states, in pertinent part:

> [N]o Wrongful Act of any Insured Person will be imputed to any other Insured Person who did not have actual knowledge of, or directly participate in the commission of, such Wrongful Act ...

(Sylwestrzak Decl. Ex. G at 5 (Exclusions).) The 2005-2006 Primary Policy also contains a "Full Severability" endorsement, providing, at Endorsement No. 10 (emphasis added):

> The Insureds represent that the particulars and statements contained in the Application are true, accurate and complete and are deemed material to the acceptance of the risk assumed by the Insurer under this Policy. This Policy is issued in reliance upon the truth of such representations. *No knowledge or information possessed by any Insured will be imputed to any other Insured. If any of the particulars or statements in the Application is untrue, this Policy will be void with respect to any Insured who knew of such untruth.*

(Sylwestrzak Decl. Ex. G at Endorsement No. 10.)

2.    **The Lexington Policy**

Lexington Insurance Company ("Lexington") issued the first excess policy for the 2005-2006 Policy Period in the amount of $7.5 million (Directors and Officers Liability and Corporation Reimbursement Follow Form Excess Liability Policy No. 1620924) (the "Lexington Policy"). (Sylwestrzak Decl. Ex. H.)

The Lexington Policy "follows the form" of the 2005-2006 Primary Policy.  Accordingly, the Lexington Policy "indemnif[ies] the Insureds ... in accordance with the applicable insuring agreements, terms, conditions and exclusions of the Underlying Policy ...." (*Id.* at § I.)

3.    **The Axis 2005-2006 Policy**

On August 11, 2005, Axis issued a policy binder to Refco Inc. for the second excess policy it was to issue for the 2005-2006 Policy Period. (Sylwestrzak Decl. Ex. I.)

On March 1, 2006, Axis issued the second excess policy for the 2005-2006 Policy Period in the amount of $10 million (SecurExcess Policy No. RNN 506300) (the "Axis 2005-2006 Policy"). (Sylwestrzak Decl. Exs. J, K.)

Like the Lexington Policy, the Axis 2005-2006 Policy also "follows the form" of the 2005-2006 Primary Policy and, accordingly, provides coverage "in conformance with the provisions of the applicable 2005-2006 Primary Policy and, to the extent coverage is further limited or restricted thereby, to any other applicable Underlying Insurance [*i.e.* the Lexington Policy]," except to the extent that the Axis 2005-2006 Policy may contain its own provisions that further limit or restrict coverage otherwise provided by the 2005-2006 Primary Policy and the Lexington Policy. (*Id.* at § I.)

The Axis 2005-2006 Policy defines "Claim(s)" as "event(s) which take place during the Policy Period and which trigger(s) coverage under the insuring agreement(s) of the Underlying Insurance." (*Id.* at (II), Definitions (A).)  Accordingly, a "Claim" for a "Wrongful Act" brought against Mr. Klejna (and other Insureds) that falls within the 2005-2006 Primary Policy also falls within the Axis 2005-2006 Policy.  There is no dispute that the Securities Litigation involves "Claims" against Mr. Klejna for "Wrongful Acts" that are covered by the Axis 2005-2006 Policy.

The Axis 2005-2006 Policy expressly states that when, as here, the 2005-2006 Primary Policy and Lexington Policy are exhausted, it will "continue as primary insurance." (Sylwestrzak Decl. Ex. J at § IV (Reduction or Exhaustion of Underlying Limits (B)).)  Specifically, it provides

that "[i]f the Underlying Limits are wholly exhausted solely due to actual payment under the Underlying Insurance, this Policy shall continue to apply as primary insurance with respect to the applicable Insurance Product(s) . . . ." (*Id.*)

The Axis 2005-2006 Policy also purports to include a "Knowledge Exclusion" that excludes Claims

> based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstances, situation, transaction, or event, which as of the inception date of the Policy Period, any Insured had knowledge and had reason to suppose might give rise to a Claim that would fall within the scope of the insurance afforded by this Policy.

(*Id.* at Endorsement No. 6). The August 11, 2005 policy binder that Axis issued for the 2005-2006 Period makes no reference to the issuance or inclusion of any Knowledge Exclusion. (Sylwestrzak Decl. Ex. I.)

### 4.    **Axis' Initial Denial of Claims**

By letter dated March 6, 2006, Axis denied coverage to Mr. Klejna (and all other Insureds) regarding the "Claims" made against him for "Wrongful Acts" as defined in the 2005-2006 Primary Policy. (Sylwestrzak Decl. Ex. L). It asserts several grounds:

First, Axis relies on the Warranty Letter that it had required Refco Group to submit in connection with the Axis 2004-2005 Policy. Although the Warranty Letter was submitted to Axis by Refco Group in connection with the Axis 2004-2005 Policy, Axis contends that the Warranty Letter was false and entitles Axis to deny coverage to Refco Inc. and its officers and directors under the Axis 2005-2006 Policy. (*Id.* at 9-10.)

Second, Axis cites Bennett's failure to answer a question in the application for coverage that had been submitted to U.S. Specialty. Bennett had not checked either box for Question 12 on the application, which inquired as to knowledge of any circumstances that might give rise to a claim. (*Id.*)

Third, Axis cites a "Knowledge Exclusion Endorsement" it inserted in the Axis 2005-2006 Policy after its binder had issued, and asserts that Bennett's knowledge, when the policy was issued, of facts that might give rise to claims bars coverage not only for himself, but also for all other Insureds. (*Id.* at 8,10.)

Fourth, Axis cites Clause XI of the Axis 2005-2006 Policy, which is said to exclude coverage for any claim arising out of the same circumstances as those underlying any action or proceeding against any Insured that was pending on or prior to June 4, 2004. (*Id.*; Kim Decl. Ex. 20 (Axis Compl. II) ¶¶ 138-139, 156-158; Ex. 8 ¶¶ 141-142, 159-162.) Axis suggests that wrongful acts alleged in a 1994 CFTC enforcement action are also alleged in the Securities Litigation, commenced in 2005. (*Id.*)

### D.    U.S. Specialty's and Lexington's Payment of Coverage Obligations

Complying with the terms of Refco's D&O insurance policies, U.S. Specialty and Lexington – the primary and first excess insurers – both honored their contractual obligations and paid defense costs of Mr. Klejna (and other former Refco officers and directors) until the limits of their respective policies were exhausted. (Kim Decl. Exs. 2, 3.) Lexington's policy was exhausted on or about August 8, 2007. (*Id.* Ex. 3.)

### E.    The Settlement Between Klejna and Lead Plaintiffs in the Securities Litigation and Axis' Repeated Refusal to Participate In or Consent to That Settlement

On July 30, 2007, shortly before the exhaustion of the Lexington Policy, Mr. Klejna received an offer from the Lead Plaintiffs in the Securities Litigation to settle the claims made against Mr. Klejna in the Securities Litigation. As required by the terms of the 2005-2006 Primary Policy, Mr. Klejna promptly tendered that settlement offer to Lexington for its approval and consent. (Kim Decl. ¶ 5 & Ex. 4.) Lexington's counsel responded that, prior to receiving Mr. Klejna's settlement demand, Lexington had already received bills for defense costs that would exhaust the Lexington Policy. Lexington further advised that, in view of the 2005-2006 Primary Policy's silence on the issue of priority of payments as between defense costs and settlements, Lexington was adhering to the "first come, first serve" doctrine to determine how Lexington should pay out its remaining limit of liability. (Kim Decl. ¶ 6 & Ex. 5.)

In light of Lexington's response, Mr. Klejna promptly tendered the settlement offer to the next excess carrier, Axis, for its approval and consent, as required by the terms of the 2005-2006 Primary Policy. On July 31, 2007, when Mr. Klejna tendered his settlement to Axis, the full $10 million limit of liability was available to fund the settlement. Nevertheless, since August 1, 2007, Axis has consistently refused to consent to or to fund the settlement, citing *inter alia,* its March 6, 2006 denial of coverage. (*Id.* ¶ 7 & Ex. 6.)

On January 22, 2008, this Court entered an Order preliminarily approving Mr. Klejna's settlement of the Securities Litigation claims on the terms first offered on July 30, 2007. (*Id.* Ex. 7.) In preliminarily approving the settlement, the Court stated that "no party or prospective class member has raised any suggestion that the proposed settlement terms are unfair or unreasonable." (*Id.* Ex. 7 at 2.)

Notwithstanding this Court's January 22, 2008 Order, however, Axis has continued to refuse to consent to or to fund Mr. Klejna's settlement in the Securities Litigation. (Kim Decl. ¶ 9.)

**F.    The Axis Adversary Proceeding**

In the meantime, on May 23, 2007, Axis commenced this adversary proceeding (the "Axis Adversary Proceeding") by filing a complaint (hereinafter "Axis Complaint I") containing four counts, each tracking one of the four grounds cited in its March 6, 2006 letter denying coverage. (Kim Decl. Ex. 8.) Notably, in Counts I, II and III of its Complaint, which respectively rely upon the Warranty Letter, the incomplete application and the purported Knowledge Exclusion, Axis rests its case entirely on the knowledge and conduct of Bennett. Nowhere does Axis allege that as of the inception date of the Axis 2005-2006 Policy Mr. Klejna had any knowledge of the facts and circumstances giving rise to the Underlying Actions . (*Id.*)

On June 12, 2007, Mr. Klejna and other former Refco officers filed a motion for a preliminary injunction to compel Axis to advance defense costs under the Axis 2005-2006. (Kim Decl. ¶ 14.)

On or about July 31, 2007, Mr. Klejna filed an Amended Answer and Counterclaims in response to Axis' complaint. His counterclaims seek both a declaration that he is covered under the Axis 2005-2006 Policy with respect to the claims made in the Securities Litigation, and an injunction requiring Axis to pay for Losses incurred in the Securities Litigation and other Refco-related actions in accordance with the Axis 2005-2006 Policy. (Kim Decl. Ex. 9.) At or about the same time, other insureds moved to dismiss the Axis Complaint.

On August 23, 2007, Axis filed its answer to Mr. Klejna's Counterclaims. (Kim Decl. Ex. 10.)

On August 30, 2007, the Bankruptcy Court dismissed Axis Complaint I. (Kim Decl. Ex. 11.) Mr. Klejna's counterclaims, however, were not dismissed. That same day, in court, Mr. Klejna's counsel executed a Memorandum of Understanding ("MOU") with Lead Plaintiffs

regarding their settlement of the Securities Litigation and tendered the fully executed MOU to Axis' counsel that day. (Kim Decl. Ex. 12.)

The next day, the Bankruptcy Court entered a preliminary injunction requiring Axis to advance defenses costs for attorneys' fees and costs submitted to Axis as of the date of the Court's Order. (Kim Decl. Ex. 13.)

On or about September 11, 2007, defendants Tone Grant, Robert Trosten and Phillip Bennett also moved for a preliminary injunction requiring Axis to advance their defense costs and fees. In its opposition papers, Axis specifically requested the Bankruptcy Court to rule on the issue of priority of payments as between settlements and defense costs. By Order dated September 12, 2007, the Bankruptcy Court granted the motion to advance defense costs. It ruled, however, that "Nothing in this Order shall constitute determination of, or affect the priority of payments to which insured[s] are entitled under the Axis Policy." (Kim Decl. Ex. 14.)

On or about September 25, 2007, Mr. Klejna and the other insureds moved for summary judgment against Axis, seeking, *inter alia*, to compel Axis to pay their defense costs as incurred, pending a final determination of coverage under the Axis 2005-2006 Policy or until the Axis 2005-2006 Policy is exhausted.

Axis cross-moved seeking, *inter alia*, a determination of the priority and proper allocation of Defense Costs and other Losses under the Axis Policy.

Following a hearing on the motions, by Order dated October 19, 2007, as amended on October 22, 2007, the Bankruptcy Court granted the Insureds' motions for summary judgment in their entirety. The court denied Axis' cross-motion for a determination of the priority and proper allocation of Defense Costs and other Losses under the Axis Policy "without prejudice to the rights of all parties to and beneficiaries of the Axis Policy regarding such issue." (Kim Decl. Ex. 15.)

Axis filed an appeal to this Court from the Bankruptcy Court's October 19, 2007 Order requiring the advancement of defense costs, but it did not appeal from the Bankruptcy Court's denial of its cross-motion on the issue of priority of payments. The appeal has been fully briefed and is presently pending before this Court. (Kim Decl.¶ 20.)

On November 13, 2007, pursuant to the parties' agreement and 28 U.S.C. § 157(d), this Court withdrew the reference to the Bankruptcy Court with respect to the Axis adversary proceedings. (Kim Decl. Ex. 16.)

By letter dated December 20, 2007, and thereafter by supplemental briefing directed by this Court, Axis sought a stay of the advancement order based upon a guilty plea entered by Santo Maggio, a former Refco executive. (Kim Decl. Ex. 17.) On February 19, 2008, Axis brought to this Court's further attention the fact that, on February 15, 2008, Phillip Bennett ("Bennett"), the former Chief Executive Officer of Refco, had pled guilty to each of the twenty counts of the indictment against him. (Kim Decl. Ex. 18.) On February 19, this Court issued an order denying Axis' motion for a stay. (Kim Decl. Ex. 19.)

As evidenced by its appeal and in correspondence, Axis maintains the right to recoup all defense payments made to the Insureds, including Mr. Klejna.

## G.    Axis Files a New Complaint in this Court

Notwithstanding the Bankruptcy Court's August 30, 2007 dismissal of Axis Complaint I in the Axis Adversary Proceeding, on September 10, 2007, Axis promptly filed a nearly identical complaint in this Court. (Kim Decl. Ex. 20, *i.e.* Axis Complaint II.) Like Axis Complaint I dismissed by the Bankruptcy Court, Axis Complaint II seeks a determination that, based on the knowledge of Bennett, there is no coverage regarding the Underlying Actions for any of the former officers or directors of Refco, including Mr. Klejna. (*Id.*)

## H.    The Instant Motion for Summary Judgment

Mr. Klejna now brings the instant motion, pursuant to Fed. R. Civ. P. 56, for summary judgment dismissing Axis' renewed September 10, 2007 Complaint in *Axis Reinsurance Co. v. Bennett, et al.,* 07-cv-07924 (S.D.N.Y.) (GEL), and for judgment on Count I of Mr. Klejna's Counterclaims in *Axis Reinsurance Co. v. Bennett, et al.,* 07-cv-01712 (S.D.N.Y.) (RDD), declaring that Mr. Klejna is covered by the Axis 2005-2006 Policy for losses arising out of the Underlying Actions.

## ARGUMENT

## I.    THE APPLICABLE LEGAL STANDARDS

### A.    The Legal Standard on a Motion for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure mandates that summary judgment "shall be rendered" where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c). In *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986), the United States Supreme Court held:

31423565                                    -11-

> Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action."

*Id.* at 327.

There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *Banca Commerciale Italiana, New York Branch v. Northern Trust Int'l Banking Corp.*, 160 F.3d 90, 93 (2d Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988) ("a plaintiff must offer concrete evidence from which a reasonable juror could return a verdict in his favor"). Furthermore, as both Rule 56 and the relevant case law make clear, not every factual dispute precludes summary judgment:

> [T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson*, 477 U.S. at 247-48 (original emphasis).

Material facts are those facts the determination of which will affect the outcome of a suit. *Id.* at 248. A nonmoving party cannot create a genuine issue of material fact by providing evidence that is "merely colorable, conclusory, speculative or not significantly probative." *Parker v. Chrysler Corp.*, 929 F. Supp. 162, 165 (S.D.N.Y. 1996). As the Second Circuit noted in *Gray v. Darien*, 927 F.2d 69, 74 (2d Cir.), *cert. denied*, 502 U.S. 856 (1991), a plaintiff's "mere hope" that evidence might develop at trial to breathe life into his claim is insufficient to overcome a motion for summary judgment. *Id.*

## B.    Rules of Construction Applicable to Insurance Policies

Under New York law, "an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract. The initial interpretation of a contract is a matter of law for the court to decide." *Bowman v. Allstate Ins. Co.,* 238 F.3d 468, 470 (2d Cir. 2001) (citation omitted).

To the extent an ambiguity exists and cannot be resolved by extrinsic evidence, such ambiguity must be read against the insurer. *See, e.g., International Multifoods Corp. v. Commercial Union Ins. Co.,* 309 F.3d 76, 83, 88 n.7 (2d Cir. 2002); *Morgan Stanley Group Inc. v. New England Ins. Co.*, 225 F.3d 270, 276 (2d Cir. 2000); *McCostis v. Home Ins. Co. of Indiana*, 31 F.3d 110, 113

(2d Cir. 1994). Accordingly, even the claimed existence of possible different interpretations of a policy does not require a trial when the issue can be resolved on the basis of the policy alone. *See, e.g, Japour v. Ed Ryan & Sons Agency*, 215 A.D.2d 817, 818, 625 N.Y.S.2d 750, 751 (3d Dep't 1995) ("[T]he interpretation of any contract presents a question of law to be determined by the court when the ambiguity can be resolved on the basis of the contract alone, without reference to extrinsic evidence"); *see also Westview Assoc. v. Guaranty Nat. Ins. Co.*, 95 N.Y.2d 334, 339, 717 N.Y.2d 75, 77 (2000) ("At the very least, defendant's interpretation presents an ambiguity in the umbrella policy which must be resolved against the insurer [on summary judgment] as drafter of the agreement").

Thus, in order for an insurance carrier to prevail on its interpretation of an insurance policy, it "must demonstrate that its interpretation is not only reasonable, but the only fair interpretation." *Japour*, 215 A.D.2d at 818, 625 N.Y.S.2d at 751.

This rule providing that any ambiguities in an insurance policy be strictly construed against the insurer has particularly application with respect to exclusions, exceptions and words of limitation. *See, e.g., Ace Wire & Cable Co. v. Aetna Casualty & Surety Co.*, 60 N.Y.2d 390, 398, 469 N.Y.S.2d 655, 658 (1983). If an insurer wishes to limit its policy obligations, it must do so "in clear and unmistakable language." *Seaboard Surety Co. v. Gillette Co.*, 64 N.Y.2d 304, 311, 486 N.Y.S.2d 873, 876 (1984). Any exceptions from policy coverage must be specific and clear in order to be enforced, and "are to be accorded a strict and narrow construction." *Id.* Indeed, before an insurance company is permitted to avoid policy coverage, it must satisfy the burden which it bears of establishing that the exclusions or exemptions apply in the particular case, and that they are "subject to no other reasonable interpretation." *Id.; see also Parks Real Estate Purchasing Group v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006) ("to 'negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case and that its interpretation of the exclusion is the only construction that [could] fairly be placed thereon'" (citation omitted)).

## II.    THE AXIS COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE IN ITS ENTIRETY AS TO MR. KLEJNA

### A.    Count I of the Axis Complaint, Based on the So-Called Warranty Letter, Should Be Dismissed

Count I of the Axis Complaint cites the so-called Warranty Letter, dated January 14, 2005, as grounds for denying coverage under the Axis 2005-2006 Policy.  Axis observes that the Warranty Letter provides that [n]o [proposed insured] is cognizant of any fact, circumstance, situation, act, error or omission which he[] has reason to suppose might afford grounds for any claim ... within the scope of the proposed insurance," and "if such knowledge exists, any claim arising therefrom is excluded form the proposed insurance." Axis alleges that "Bennett possessed knowledge of facts, circumstances, situations, acts, errors or omissions which he had reason to suppose might afford grounds for a 'claim' (as that term is defined in the [2005-2006] Primary Policy) such as would fall within the scope of the Axis Policy." (Kim Decl. Ex. 20 ¶ 141.)  Axis therefore concludes that Bennett's knowledge excludes coverage for all Insureds" under the Axis Policy.  (*Id.* ¶ 143.)

But the Warranty Letter was not executed in connection with the Axis 2005-2006 Policy. To the contrary, the Warranty Letter, dated January 14, 2005, was executed on January 21, 2005 in connection with the policy that Axis issued on April 25, 2005 to Refco Inc.'s predecessor, Refco Group Ltd., LLC, for the *prior* 2004-2005 policy year.[3] (Brooks Decl.¶ 3 & Ex. A; Sylwetrzak Decl. ¶ 6 & Ex. C.)

In a contemporaneous memorandum, dated January 14, 2005, Ellen Brooks, a Refco employee, advised Phillip Bennett that:

> Axis Reinsurance Company is one of three insurance carriers for our present D&O coverage that was placed August 5, 2004. ... They are requiring you to sign a warranty letter confirming that we currently do not have a claim against our D&O policy.

(Sylwestrzak Decl. Ex. E.)  Pamela Sylwestrzak of Marsh USA, Inc. ("Marsh"), Refco's broker, similarly confirms that U.S. Specialty issued its 2004-2005 Primary Policy on October 23, 2004, but

---

[3]  For the policy period August 5, 2004 to August 11, 2005 (as extended from the originally contemplated August 5, 2005 expiration date), Refco Group Ltd., LLC's D&O insurance tower was as follows: (1) U.S. Specialty Directors, Officers and Organization Liability Insurance Policy No. 24-MGU-04-A4151 ($10 million primary coverage) (the "U.S. Specialty 2004-2005 Policy"); (2) Greenwich Insurance Company ELU086772-04 ($10 million excess of $10 million) and (3) Axis Reinsurance Co. SecurExcess Policy No. RNN 503865 ($10 million excess of $20 million) (the "Axis 2004-2005 Policy").  (Sylwetrzak Decl. ¶ 3.)

that Axis had refused to issue its 2004-2005 Policy until Refco Group had submitted both a "long form" application to U.S. Specialty and the Warranty Letter on which Axis now mistakenly relies. (Sylwestrzak Decl. ¶¶ 7-9.)

Thus the "Axis Policy" referred to in the January 14, 2005 Warranty Letter is not the Axis 2005-2006 Policy at issue before this Court. Nor is the "Primary Policy," to which the Warranty Letter refers, the U.S. Specialty Policy for the 2005-2006 policy year. Indeed, it was some four months after the Warranty Letter had been written – after the April 2005 announcement that Refco planned an initial public offering later that year – that Refco Inc. first began the process of seeking insurance for 2005-2006 that would provide coverage to Refco Inc.'s directors and officers for securities claims. (Brooks Decl. ¶ 4; Sylwetrzak Decl. ¶ 10)

A merger clause in the 2005-2006 Primary Policy also precludes reliance by Axis upon the Warranty Letter. The 2005-2006 Primary Policy defines the entire universe of documents upon which U.S. Specialty and the excess carriers relied in issuing their D&O policies for the 2005-2006 policy period. The 2005-2006 U.S. Specialty Policy, as to which the Axis 2005-2006 Policy "follows form," provides that "[b]y acceptance of this Policy the Insureds and the Insurer agree that this Policy (including the Application and any materials submitted therewith) and any written endorsements attached hereto constitute the entire agreement between the parties with respect to this insurance." (*See* Sylwestrzak Decl. Ex. G, Condition O.). The term "Application," in turn, is defined in the 2005-2006 Primary Policy as "the application attached to and forming part of this [U.S. Specialty 2005-2006] Policy, including any materials submitted in connection with such application, all of which are deemed a part of the Policy." (*Id.* at A (Definitions).)

As Refco's broker, Marsh confirms the "Warranty Letter" solicited by Axis in connection with the Axis 2004-2005 Policy was never attached to the Application to U.S. Specialty or otherwise submitted to U.S. Specialty either in connection with the 2004-2005 Policy or the subsequent 2005-2006 Policy relevant to the instant case. (Sylvestrzak Decl. ¶¶ 8,11.) Thus, Axis is barred by the "entire agreement" clause from treating the Warranty Letter as part of the 2005-2006 Primary Policy. *See, e.g., National Union Fire Insurance Co. of Pittsburgh, PA v. Xerox Corp.*, 25 A.D.3d 309, 309-310, 807 N.Y.S.2d 344, 345 (1st Dep't 2006) (term not included or incorporated into policy was not part of the policy and could not be relied upon by insurer to deny coverage); *Eames v. Nationwide Mut. Ins. Co.*, 412 F. Supp. 2d 431 (D. Del. 2006) (documents

other than policy text and accompanying declarations were not part of insurance contract where policy text stated only that "the enclosed Declarations" were part of policy contract and declarations similarly provided that they were part of policy).

Most significantly, even assuming *arguendo* that the Warranty Letter could somehow be construed to be a part of the Axis 2005-2006 Policy or the U.S. Specialty Application, and assuming it might thus bar a claim by Bennett, the severability provision contained at Endorsement No. 10 of the U.S. Specialty 2005-2006 Policy prevents Axis from relying on the Warranty Letter to bar coverage for Mr. Klejna.

Axis claims that it was induced to issue its policy based upon representations made by Bennett in the Warranty Letter that have proven to be false. But it cites those misrepresentations as a basis to deny coverage not only to Bennett but also to Mr. Klejna and other innocent Insureds. Endorsement No. 10 provides, however, that "[n]o knowledge or information possessed by any Insured will be imputed to any other Insured," and that untrue statements in the Application will void the policy only "with respect to any Insured who knew of such untruth."(Sylwestrzak Decl. Ex. G, Endorsement 10). Thus, as a matter of law, Endorsement No. 10 expressly bars Axis from imputing Bennett's knowledge – or the knowledge of any other insured – to Mr. Klejna. *See Wedtech Corp. v. Fed. Ins. Co.*, 740 F. Supp. 214, 218-19 (S.D.N.Y. 1990) (effect of severability provision in insurance policy was "to bar coverage only for those insureds who participated in the fraudulent inducement" of the policy); *Federal Ins. Co. v. Kozlowski,* 18 A.D.3d 33, 39, 792 N.Y.S.2d 397, 401 (1st Dep't 2005); *accord Shapiro v. American Home Assurance Co.,* 616 F. Supp. 900, 903-05 (D. Mass. 1984).[4]

---

[4] Moreover, Axis has asserted the "right to rescind the Policy based on material misrepresentations made to Axis" (Sylwestrzak Decl. Ex. L). To the extent Axis claims that the "Warranty Letter" contains misrepresentations that warrant rescission of the Axis 2005-2006 Policy, it cannot obtain such relief in the action before this Court. To the contrary, Axis must first obtain relief from the Refco Bankruptcy Plan Injunction. The automatic stay applies to stay post-petition cancellation of insurance policies that are property of estate, and any purported cancellation that violates the stay is void *ab initio*. *In re Berman Enterprises, Inc.*, 168 B.R. 18 (Bankr. E.D.N.Y. 1992); *Scrima v. John Devries Agency, Inc.*, 103 B.R. 128 (Bankr. W.D. Mich. 1989); *Matter of Pester Refining Co.*, 58 B.R. 189 (Bankr. S.D. Iowa 1985).

**B.**  **Count II of the Axis Complaint, Based on Refco's Incomplete Application to U.S. Specialty, Should Be Dismissed**

In Count II of the Axis Complaint, Axis cites Bennett's failure to answer Question 12b in the application for primary coverage under the U.S. Specialty 2005-2006 Policy. (*See* Kim Decl. Ex. 20 at p. 37.) Axis alleges that Bennett's knowledge of "facts, circumstances or situations involving Refco" and his "failure to make the necessary disclosures pursuant to Question 12 of the Application, exclude coverage for all Insureds." (*Id.* ¶¶ 146-148.)

But it is "black letter" law that a failure to answer a question altogether, as occurred here, cannot be used by an insurer as a ground to deny coverage after issuing the policy, as such failure is apparent at the time to the insurer. *See Phoenix Mut. Life Ins. Co. v. Raddin*, 120 U.S. 183, 190 (1887) ("where upon the face of the application, a question appears to be not answered at all, or to be imperfectly answered, and the insurers issue a policy without further inquiry, they waive the want or imperfection in the answer, and render the omission to answer more fully immaterial"); *see also Philadelphia Indem. Ins. Co. v. Horowitz, Greener & Stengel, LLP*, 379 F. Supp. 2d 442, 453 (S.D.N.Y. 2005); 44A Am. Jur. 2d Insurance § 1603 (2007).

Tellingly, both U.S. Specialty and Lexington paid claims to the full extent of their respective policies, and neither attempted to utilize the incomplete Application as a ground for denying their contractual obligation to provide coverage.

With respect to its 2004-2005 Policy, Axis sought and obtained the "Warranty Letter." But with respect to its 2005-2006 Policy, Axis sought no similar assurance (*compare* Sylwestrzak Decl. Ex. C *with* Sylwestrzak Decl. Ex. I) – apparently hoping to rely, instead, on a "Knowledge Exclusion" it asserted without authorization into its 2005-2006 Policy (*see* discussion below.) Axis' decision to issue the Axis 2005-2006 Policy, without directly challenging the omission of an answer to Question 12 of the Application constitutes a waiver of any objection based on Bennett's failure to answer. Accordingly, Count II of the Axis Complaint must be dismissed as a matter of law.

**C.**  **Count III of the Axis Complaint, Based on the So-Called Knowledge Exclusion, Should Be Dismissed**

Axis further contends that there is no coverage under the Axis 2005-2006 Policy because of a "Knowledge Exclusion" it unilaterally added to that Policy. (*See* Kim Decl. Ex. 20 ¶¶ 150-153.) According to Axis, the Knowledge Exclusion excludes coverage for matters "which as of the

inception date of the Policy period, any Insured had knowledge and had reason to suppose might give rise to a Claim that would fall within the scope of the insurance afforded by this Policy." (*Id.* ¶ 153.) In its Complaint, Axis relied solely on the knowledge of Bennett to "trigger" the purported Knowledge Exclusion. In subsequent correspondence to this Court, Axis contends that the Knowledge Exclusion has been triggered, as well, by the guilty pleas of Santo C. Maggio and Robert Trosten. (Kim Decl. Exs. 17, 18.) But as we demonstrate below, the knowledge of Bennett, Maggio and Trosten is irrelevant to Axis' obligation to provide coverage to Mr. Klejna.

### 1.    The Knowledge Exclusion Is Not a Part of the Axis Policy

As a matter of law, Axis cannot rely upon the Knowledge Exclusion to deny advancement of defense costs because that exclusion is not properly a part of its policy. On August 11, 2005, Axis issued a policy binder to Refco that made no reference to any such provision. (Sylwestrzak Decl. Ex. I.) After claims had already been made on the basis of that policy binder, and without the agreement of Refco or any other Insured, Axis unilaterally added the Knowledge Exclusion to the policy when issued. It now asserts that provision as a defense to those claims.

The Axis 2005-2006 Policy, although bearing the date of September 11, 2005, was not in fact issued to Refco until March 1, 2006 – nearly six months after the date on the policy, and nearly seven months after the binder was issued. (*See* Sylwestrzak Decl. ¶¶19-20 & Exs. J, K.) Thus, between August 11, 2005 and March 1, 2006, the policy binder issued on August 11, 2005 was the operative insurance contract. *See, e.g., World Trade Center Properties, LLC v. Hartford Fire Ins. Co.*, 345 F.3d 154, 167 (2d Cir. 2003) (an insurance binder is "a fully enforceable 'present contract of insurance'" (citation omitted)); *Springer v. Allstate Life Ins. Co.*, 94 N.Y.2d 645, 649, 710 N.Y.S.2d 298, 300 (2000) ("an insurance binder is a temporary or interim policy until a formal policy is issued" (citations omitted)).

The policy binder that Axis issued on August 11, 2005, does not include a "Knowledge Exclusion" or anything akin thereto. (*See* Sylwestrzak Decl. Ex. I). And Refco's broker, Marsh USA, Inc., confirms that it never authorized Axis to add a Knowledge Exclusion to Axis Policy in contravention of the Axis policy binder. (*See* Sylwestrzak Decl.¶ 21.)

Courts have repeatedly held that to the extent that an insurance policy departs from what was agreed upon in the binder for that policy, such departures cannot be used to deny coverage, particularly when, as here, the claim arises while the binder is effective. *See, e.g. National Union*

*Fire Ins. Co. of Pittsburgh, Pa. v. The L.E. Myers Co. Group.*, 1997 WL 148231, * 9 (S.D.N.Y. Mar. 31, 1997) ("[t]o the extent that the insurance policy departed from the binder, the policy is ineffective since such a departure constituted a breach of duty on the part of [the insurer] to draft a policy in accordance with the binder"); *Bennacer v. Travelers Ins. Co.*, 265 A.D.2d 823, 695 N.Y.S.2d 846 (4th Dep't 1999) (automobile insurance binder issued by agency, which provided coverage for non-owned vehicles or was at least ambiguous, obligated insurer to indemnify and defend insured with respect to accident, which occurred while binder was effective, even though subsequently-issued policy excluded coverage for non-owned vehicles); *Wetherell v. Sentry Reinsurance, Inc.*, 743 F. Supp. 1157, 1170 (E.D. Pa. 1990) (an "insurer cannot avoid liability under the terms of the binder by issuing a policy at variance with the binder. Thus where the parties agree in writing on the specific terms of the coverage, the insurer cannot avoid liability by issuing a policy which does not cover the risk contemplated by the binder, especially after loss has occurred and liability attaches" (quoting Couch on Insurance 2d (Rev. ed.) § 14:37)).

In any event, by unilaterally making such post-petition changes to debtor's insurance, Axis violated the automatic stay of the Bankruptcy Code, 11 U.S.C. § 362(a). As the court noted in *Federal Ins. Co. v. Sheldon*, 150 B.R. 314, 319-20 (S.D.N.Y. 1993), while invalidating an insurance company's post-petition attempt to exercise an early termination clause:

> The section 362(a) stay applies to "any action to obtain possession of property of the estate or ... to exercise control over the property of the estate." Included within the scope of the automatic stay are rights flowing to a debtor under a contract of insurance. Further, actions taken in violation of the stay are void even where the acting party had no actual notice of the stay. [Citations omitted][5]

Thus, Axis' unjustifiable departure from the terms of its policy binder must be rejected.

### 2.    Even if the Knowledge Exclusion Were Part of the Axis Policy, the Severability Provisions of the 2005-2006 Primary Policy Bar Axis from Imputing Knowledge of Any Other Insured to Mr. Klejna

Even if the Knowledge Exclusion had any arguable validity, the severability provision set forth at Endorsement No. 10 in the U.S. Specialty 2005-2006 Policy bars Axis from imputing Bennett's knowledge to Mr. Klejna. (Sylwestrzak Decl. Ex. G at Endorsement 10.)

---

[5] *See also, Braunstein v. Panagiotou (In re McCabe)*, 345 B.R. 1 (D. Mass. 2006) (action of defendant in amending an LLC agreement so as to affect debtor's *interest* in the LLC violated the automatic stay even if, as alleged, the amendment merely adjusted the language to formalize the parties' actual agreed-upon interests.)

As discussed above, the Axis 2005-2006 Policy "follows the form" of the 2005-2006 Primary Policy. The Axis Policy states that it provides "coverage ... in accordance with the same warranties, terms, conditions, exclusions and limitations of the Followed Policy...." (Sylwestrzak Decl. Exs. J, I.) Such a "following form" clause in a policy of excess coverage incorporates by reference all the terms and conditions of the underlying policy "except to the extent that the [excess] contract by its own terms specifically defines the scope of coverage differently, *i.e.* via exclusion ..." *In re HealthSouth Corp. Ins. Lit.,* 308 F. Supp. 2d 1253, 1282 (N.D. Ala. 2004) (quoting *United Fire & Cas. Co. v. Arkwright Mut. Ins. Co.,* 53 F. Supp. 2d 632, 651 (S.D.N.Y. 1999). Thus, "excess policies are typically following-form instruments that incorporate by reference the terms of the underlying policies *unless there is a specific term to the contrary in the excess policy.*" *Scottsdale Ins. Co. v. Safeco Ins. Co. of Am.,* 111 F. Supp. 2d 1273, 1278 (M.D. Ala. 2000) (citations omitted) (emphasis added), *aff'd without opinion,* 254 F.3d 1084 (11th Cir. 2001).

Among the conditions in the form-followed U.S. Specialty 2005-2006 Policy are two severability provisions: one expressly applicable to the exclusions to the 2005-2006 Primary Policy (Sylwestrzak Decl. Ex. G at 5) and the other set forth in Endorsement No. 10, entitled "Full Severability," which expressly provides that "No knowledge or information possessed by any Insured will be imputed to any other Insured." (*Id.* at Endorsement No. 10.) At no time prior to binding did Axis or any of the other excess carriers in the 2005-2006 Program request modification of the severability provisions in the Primary Policy. (Sylwestrzak Decl. ¶ 22.)

Even assuming, *arguendo*, that the Knowledge Exclusion were properly a part of the Axis 2005-2006 Policy, nowhere does the Axis 2005-2006 Policy state that it does not "follow form" as to the severability provisions in the 2005-2006 Primary Policy. (*Id.* Ex. J.) Nor is there any language in the Axis Knowledge Exclusion that is contrary to or even inconsistent with the severability provisions in the 2005-2006 Primary Policy. (*Id.*) In fact, the Axis 2005-2006 Policy, including the Knowledge Exclusion, is silent on the issue of severability. (*Id.*)

In construing the applicability of a severability provision to excess carriers in a D&O tower of insurance, the court in *HealthSouth* held that "[s]ilence does not provide the insured with the notice needed that the excess carrier is not following the form of the severability clause, and therefore, silence cannot supply a specific term to the contrary." 308 F. Supp. 2d at 1282. Moreover, as the *HealthSouth* Court reasoned, "if an insurance company meant to say that

knowledge of [an entity] was to be imputed to [individual insureds], it could have provided so in the policy. Insurance companies clearly know how to address imputation issues." *Id.* at 1284.

Here, too, the D&O carriers clearly knew "how to address imputation issues." For example, the 2005-2006 Primary Policy, which contains the severability provisions concerning imputation noted above, also specifically provides that "Wrongful Acts of the Company's chairman of the board, chief executive officer, president, chief financial officer or general counsel ... will be imputed to the Company." (Sylwestrzak Decl. Ex. G at Exclusions.)

Arguing in the face of these provisions that its "Knowledge Exclusion" operates to impute the knowledge of "any Insured" to any other Insured, Axis places great weight on its use of the phrase, "any Insured." But, particularly in the context of the severability provisions that Axis ignores, that phrase is more likely to be read as an exclusion of coverage for "any insured" who had the relevant knowledge than, as Axis suggests, an exclusion of coverage for any other insured. Indeed, this ambiguity, without more, would require the provisions to be interpreted in favor of the innocent insureds. And, even if that were not so, a number of the exclusions in the 2005-2006 Primary Policy also refer to "any Insured" – *e.g.* the unfair profit or advantage exclusion (Sylwestrzak Decl. Ex. G at Exclusion (A)); criminal, fraudulent or dishonest act exclusion (*id.* at Exclusion (B)). These exclusions, nevertheless, are expressly subject to the severability provisions in the 2005-2006 Primary Policy. Thus, the mere reference or inclusion of the phrase, "any Insured"-- without more – does not express an intent to abandon the severability language incorporated into the Axis Policy.

As we noted above, "before an insurance company is permitted to avoid policy coverage, it must satisfy the burden ... of establishing that the exclusions or exemptions apply in the particular case, and *that they are subject to no other reasonable interpretation.*" *Seaboard Sur. Co.,* 64 N.Y.2d at 311, 486 N.Y.S.2d at 876 (emphasis supplied). The insurer likewise bears the burden of establishing that its interpretation of the exclusionary language "is *the only construction* that [could] fairly be placed thereon." *Parks Real Estate Purchasing Group*, 472 F.3d at 42 (emphasis supplied). Axis has not and cannot satisfy that burden here.

It is axiomatic that, "in construing an endorsement to an insurance policy, the endorsement and the policy must be read together, and the words of the policy remain in full force and effect except as altered by the words of the endorsement." *County of Columbia v. Continental Ins. Co.,* 83

N.Y.2d 618, 628, 612 N.Y.S.2d 345, 349 (1994). Similarly, "an insurance contract should not be read so that some provisions are rendered meaningless." *Id.* Thus, if there is a reasonable interpretation that gives meaning both to the 2005-2006 Primary Policy's severability provisions and the Axis 2005-2006 Policy's alleged Knowledge Exclusion, that interpretation must control. And it is perfectly clear that the Axis Knowledge Exclusion and the 2005-2006 Primary Policy's severability provisions can be read together and given full force and effect.

Even when limited by the 2005-2006 Primary Policy's severability provisions, the Axis Knowledge Exclusion would operate to bar coverage to those individuals – *e.g.,* Bennett – who, as of the inception date of the Primary Policy, had knowledge of facts and circumstances which they had reason to know would give rise to claims under the policy. The severability provision would apply merely to limit the scope of the exclusion to the wrongful actor, while maintaining coverage for innocent insureds. Such an interpretation is entirely reasonable here, since the two severability provisions in the 2005-2006 Primary Policy make clear a fundamental intent of the 2005-2006 Primary Policy to provide coverage to innocent officers and directors.

To interpret the Axis Knowledge Exclusion as overriding the express severability provisions in the 2005-2006 Primary Policy would produce an anomalous result. In this litigation, Axis has argued that it was necessary to include the Knowledge Exclusion in order to compensate for the lack of warranty from Refco in Refco's Application to U.S. Specialty – *i.e.* the unanswered Question 12. (Kim Decl. Ex. 20 ¶¶ 145-149.) But if Bennett had answered Question 12 – and had lied – the innocent Refco officers and directors would nevertheless have been covered under the Axis Policy by virtue of the severability provision set forth in Endorsement No. 10 to the 2005-2006 Primary Policy. Yet, Axis is not satisfied with this – the result it claims to have sought by the insertion of the Knowledge Exclusion. It now seeks to go further and interpret the exclusion to put Axis in a *better position* than if Bennett had fully completed the U.S. Specialty Application's warranty section.

### D.    Count IV of the Axis Complaint, Based on a 1994 CFTC Enforcement Proceeding, Should be Dismissed

In Count IV of its Complaint, Axis contends that the Underlying Actions are barred by Clause XI of the Axis Policy. That exclusion bars claims that are "causally or logically interrelated by a common nexus" with a "wrongful act, fact, circumstances or situation" that existed on or

before June 4, 2004. (*See* Sylwestrzak Decl. Ex. J at ¶ XI). For this purpose, Axis contends that

that an enforcement action brought against "Refco, Inc." in 1994 by the Commodity Future Trading

Commission ("CFTC"), *In re Refco, Inc.,* 1994 CFTC Lexis 348 (1994), was a litigation "involving

the same scheme of improperly shifting client funds between related party accounts – the same type

of transactions allegedly used to hide the fraud alleged in the Noticed Matters and the Related

Matters." (Kim Decl. Ex. 20 ¶¶ 138-139.) On this basis, Axis seeks to deny coverage to Mr. Klejna

(and other insureds) for the Securities Litigation and other Refco-related actions. (Kim Decl. Ex. 20

¶¶ 155-158.)

But the CFTC's 1994 Complaint has nothing in common with the Securities Litigation

instituted in 2005 or any of the other Underlying Actions before this Court.

In the first place, the "Refco, Inc." that was the subject of the 1994 CFTC proceeding is not

the same "Refco Inc." that is involved in the Underlying Actions. As the Axis Complaint

acknowledges, the "Refco Inc." that went into bankruptcy and the conduct of which is the subject of

the Underlying Actions is an entity that was not formed until 2005, in anticipation of the initial

public offering. (Kim Decl. Ex. 8 at p. 2 n.1 and Ex. 20 at p. 2 n.1.) The "Refco, Inc." that was the

subject of the CFTC's 1994 Complaint changed its name, as well as its form of organization, in

2001, and became Refco, LLC. (Kim Decl. Exs. 21, 22.)

Of at least equal importance, there is at a very substantial gap between the conduct that was

the subject of the 1994 CFTC proceeding and the conduct alleged in the Underlying Actions before

this Court. The CFTC's Complaint concerned events that occurred in 1990 and 1991. *See* 1994

CFTC Lexis 348 at n.1, *8. But the conduct at issue in the Underlying Actions is alleged to have

begun no earlier than 1997 – more than 6 years after the conduct challenged by the CFTC. (Kim

Decl. Ex. 1 at ¶¶ 92-96.)

Furthermore, in the 1994 CFTC proceeding, Refco, Inc., a registered futures commission

merchant, was alleged to have violated Sections 4d(2) and 6(c) of the Commodity Exchange Act , 7

U.S.C. §§ 6d(2), 9. *See* 1994 CFTC Lexis 348 at n.1, *8. In contrast, the Second Amended

Consolidated Class Action Complaint in the Securities Litigation sets forth claims for violation of

Section 11 of the Securities Act of 1933, 15 U.S.C. § 77ka, and Section 10(b) of the Securities

Exchange Act, 15 U.S.C. § 78j(b), and seeks to impose liability upon controlling persons pursuant

to Section 15 of the Securities Act, 15 U.S.C. § 77o, and Section 20(a) of the Securities Exchange

Act, 15 U.S.C. § 78t(a), all in connection with public offerings of securities made in 2004 and 2005. There is no allegation in the Securities Litigation or the other Underlying Actions regarding any conduct regulated under the Commodity Exchange Act or alleged to violate its provisions.

For all of these reasons, the claims pending in the Underlying Actions are in no sense "causally or logically" related in any relevant way to the transactions challenged by the CFTC in 1994.

**III.    THIS COURT SHOULD ENTER A DECLARATORY JUDGMENT THAT THE AXIS POLICY PROVIDES COVERAGE FOR MR. KLEJNA FOR LOSSES ARISING FROM THE SECURITIES LITIGATION**

As discussed above, Axis sought in its Complaint a declaratory judgment that it had no contractual obligation to provide coverage under the Axis 2005-2006 Policy to any of the Refco individual Insureds, including Mr. Klejna. In his Counterclaims, Mr. Klejna seeks a judgment declaring that Axis has an obligation to provide coverage to him for losses arising from the Securities Litigation and related cases.

Under similar circumstances, this Court has held that a claim by insured officers for coverage under a Directors and Officers liability insurance policy for losses incurred in underlying litigation "presents a classic controversy ripe for declaratory relief." *Seidel v. Houston Casualty Co.*, 375 F. Supp. 2d 211, 226 (S.D.N.Y. 2005) (Lynch, J.). Observing that "[d]isputes over coverage afforded by an insurance policy present an actual case or controversy, so that declaratory judgment is appropriate," this Court ruled that where the insured officers "have already incurred substantial fees in defense of the [underlying] lawsuit, and [the D&O insurer] has not only disclaimed coverage, but has demanded repayment of fees it has 'mistakenly' reimbursed," the controversy was ripe for decision. *Id.*

Here, for the reasons stated above, Mr. Klejna has established that he is entitled to coverage under the terms of the Axis 2005-2006 Policy. The complaints brought against him in the Underlying Actions constitute "Claims" for "Wrongful Acts, " first asserted while the Axis 2005-2006 Policy was in effect, that have resulted in "Loss," as those terms are defined in the 2005-2006 Primary Policy and the Axis 2005-2006 Policy. Axis has failed to establish the applicability of the exclusionary provisions upon which it relies in disclaiming coverage. As in *Seidel*, this Court should grant Mr. Klejna's motion for summary judgment declaring that Mr. Klejna is entitled to

coverage under the Axis 2005-2006 Policy for Losses arising out of the Underlying Actions, including without limitation his defense costs.

## CONCLUSION

Based on the foregoing, this Court should enter summary judgment, pursuant to Fed. R. Civ. P. 56, dismissing as to Mr. Klejna the Complaint of Plaintiff Axis Reinsurance Company in *Axis Reinsurance Co. v. Bennett, et al.,* 07-cv-07924 (S.D.N.Y.) (GEL), and should enter judgment in favor of Mr. Klejna on Count I of his Counterclaims in *Axis Reinsurance Co. v. Bennett, et al.*, 07-cv-01712 (S.D.N.Y.) (RDD), declaring that Mr. Klejna is covered by the Axis Policy for losses arising out of the Underlying Actions.

Dated:  March 28, 2008

Respectfully submitted,

HELEN B. KIM (HK-8757)
KATTEN MUCHIN ROSENMAN LLP


 /s/ Helen B. Kim
2029 Century Park East, Suite 2600
Los Angeles, CA 90068
Telephone: 310-788-4525
Facsimile:  310-712-8226

PHILIP A. NEMECEK (PN-3319)
KATTEN MUCHIN ROSENMAN LLP
575 Madison Avenue
New York, NY  10022-2585
Telephone:212-940-8834
Facsimile: 212-940-8776

*Attorneys for Defendant and Counterclaim Plaintiff
Dennis A. Klejna*