UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x

AXIS REINSURANCE COMPANY,               :      Adv. Proc. No. 07-01712

                                          :      (Awaiting District Court Index
No.)

                 Plaintiff,        :

       v.                           :      *Electronically Filed*

PHILLIP R. BENNETT, et al.,             :

                                          :

                Defendants.     :

------------------------------------------------------------------ x

AXIS REINSURANCE COMPANY,               :      Case No. 07-cv-07924 (GEL)

                 Plaintiff,        :

       v.                           :

                                          :      *Electronically Filed*

PHILLIP R. BENNETT, et al.,             :

                                          :

                Defendants.     :

------------------------------------------------------------------ x

### DECLARATION OF IVAN KLINE IN SUPPORT OF INSUREDS' MOTION FOR SUMMARY JUDGMENT DISMISSING THE COMPLAINT OF AXIS REINSURANCE COMPANY AND FOR ENTRY OF DECLARATORY JUDGMENT OF COVERAGE <u>FOR INSUREDS UNDER THE 2005-2006 AXIS POLICY</u>

I, IVAN KLINE, hereby declare:

        1.      I am a principal in Friedman & Wittenstein, A Professional

Corporation, attorneys for Defendants and Counterclaim Plaintiffs William M. Sexton

("Sexton") and Gerald Sherer ("Sherer"). I respectfully submit this declaration in support

of the motion of Sexton and Sherer, along with Defendants and Counterclaim Plaintiffs

Philip Silverman ("Silverman") and Joseph Murphy ("Murphy"), and Defendants Tone

Grant, Leo R. Breitman, Nathan Gantcher, David V. Harkins, Scott L. Jaeckel, Thomas

H. Lee, Ronald L. O'Kelley and Scott A. Schoen (collectively, the "Insureds"), pursuant

to Rule 56 of the Federal Rules of Civil Procedure, for entry of judgment dismissing the

Complaint of Axis Reinsurance Company ("Axis") against the Insureds, and in favor of Sexton, Sherer, Silverman and Murphy on Count I of their Counterclaims against Axis.

2.     Each of the Insureds has been named as a defendant in one or more of the various civil actions related to the collapse of Refco Inc. (collectively, the "Underlying Actions"). Such Underlying Actions were filed as early as October 2005 and include: *In re Refco, Inc. Securities Litigation,* No. 05 Civ. 8626 (GEL) (S.D.N.Y.) (the "Securities Litigation"); *In re Refco Capital Markets, Ltd. Brokerage Customer Securities Litigation*, No. 06 Civ. 643 (GEL) (S.D.N.Y.); *American Financial International Group, et al. v. Bennett*, et al., No. 05 Civ. 8988 (S.D.N.Y.); *V.R. Global Partners, L.P. v. Bennett, et al.*, No. 07 Civ. 8686 (GEL) (S.D.N.Y.); *Capital Management Select Fund Ltd. v. Bennett, et al.*, No. 07 Civ. 8688 (S.D.N.Y.); *Kirschner v. Agoglia, et al.*, Adv. Proc. No. 07-3060 (RDD) (Bankr. S.D.N.Y.); *Kirschner v. Thomas H. Lee Partners, L.P., et al.*, No. 07-7074 (GEL) (S.D.N.Y.); and *Kirschner v. Grant Thornton LLP, et al.*, No. 2007-1-008818 (Il. Circuit Ct.). Defendant Tone Grant was also named as a defendant in one criminal action, entitled *United States v. Phillip Bennett, Robert Trosten and Tone Grant*, S3 05 Cr. 1192 (NRB) (S.D.N.Y.) (the "Criminal Action").

3.     On or about May 23, 2007, Axis commenced an adversary proceeding against, among others, the Insureds and Dennis Klejna ("Klejna") entitled *Axis Reinsurance Co. v. Bennett et al.*, Adv. Proc. No. 07-01712 (Bankr. S.D.N.Y.) (the "Axis Adversary Proceeding"), seeking a declaration that it had no obligations to its insureds under the SecurExcess Policy No. RNN 506300 issued to Refco Inc. by Axis (the "2005-2006 Axis Policy") for the period covering August 11, 2005 to August 11,

2006. (*See* Declaration of Helen B. Kim in Support of the Motion by Defendant and

Counterclaim Plaintiff Dennis A. Klejna for Summary Judgment Dismissing the

Complaint of Axis Reinsurance Company and for Entry of Declaratory Judgment in

Favor of Klejna on Count I of his Counterclaims, dated March 28, 2008 (hereinafter,

"Kim Declaration"), Ex. 8).

        4.     In response to the complaint in the Axis Adversary Proceeding, on

or about July 13, 2007, four of the Insureds, Sexton, Sherer, Murphy and Silverman,

along with Klejna, answered the complaint and filed counterclaims seeking a declaration

of coverage under the 2005-2006 Axis Policy, and an injunction to compel Axis to pay

losses, including defense costs, in connection with the Underlying Actions.  A true and

correct copy of the Answer and Counterclaims of Sexton and Sherer, dated July 13, 2007,

is attached hereto as Exhibit 1.  A true and correct copy of the Answer and Counterclaim

of Silverman, dated July 13, 2007, is attached hereto as Exhibit 2.  A true and correct

copy of the Amended Answer and Counterclaims of Klejna and Murphy, dated July 31,

2007, is attached to the Kim Declaration as Exhibit 9.

        5.     On or about August 16, 2007, Axis filed its Answer to the

Counterclaims of Sexton and Sherer, a true and correct copy of which is attached hereto

as Exhibit 3.

        6.     On or about August 16, 2007, Axis filed its Answer to the

Counterclaims of Silverman, a true and correct copy of which is attached hereto as

Exhibit 4.

        7.     On or about August 23, 2007, Axis filed its Answer to the

Counterclaims of Murphy and Klejna, a true and correct copy of which is attached as

Exhibit 10 to the Kim Declaration.

        8.     Other Insureds moved to dismiss the Axis Adversary Proceeding. At oral argument on August 30, 2007, the Bankruptcy Court granted the motion by Sexton, Sherer, Murphy, Silverman and Klejna for a preliminary injunction based on their Counterclaims, and also dismissed Axis' complaint in the Axis Adversary Proceeding without prejudice.  (*See* Kim Declr. Ex. 13).

        9.     Following the dismissal of the Axis Adversary Proceeding, the Insureds (other than Sexton, Sherer, Silverman and Murphy) commenced two separate adversary proceedings – *Grant v. Axis Reinsurance Co.*, Adv. Proc. No. 07-2005-rdd (Bankr. S.D.N.Y.) and *Breitman v. Axis Reinsurance Co.*, Adv. Proc. No. 07-2032-rdd (Bankr. S.D.N.Y.) – seeking advancement of defense costs under the 2005-2006 Axis Policy.  Thereafter, such proceedings were consolidated with the Axis Adversary Proceeding.  (*See* Kim Declr. Ex. 16, at ¶ 2).

        10.    Axis' counsel has recently confirmed that Axis intends to seek repayment of all amounts that Axis has advanced to the individual insureds under the 2005-2006 Axis Policy (including the Insureds herein).

        I declare under penalty of perjury that the statements made herein are true and correct.

Dated: New York, New York
       April 8, 2008

                          /s/ Ivan Kline
                          Ivan Kline

# EXHIBIT 1

STUART I. FRIEDMAN (SF-9186)
IVAN KLINE (IK-9591)
ELIZABETH D. MEACHAM (EM-0890)
FRIEDMAN & WITTENSTEIN
A Professional Corporation
600 Lexington Avenue
New York, New York 10022
Telephone:    (212) 750-8700
Facsimile:    (212) 223-8391
Email:        ikline@friedmanwittenstein.com

*Attorneys for Defendants William M. Sexton and Gerald Sherer*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------- x
                                                       :
In re:                                                 :        Chapter 11
REFCO, INC., et al.,                                   :        Case No. 0-5-60006 (RDD)
                                                       :        (Jointly Administered)
            Debtors.                                   :
                                                       :
----------------------------------------------------- :
                                                       :
AXIS REINSURANCE COMPANY,                              :
                                                       :
            Plaintiff,                                 :
                                                       :        Adv. Proc. No. 07-01712 rdd
        v.                                             :
                                                       :        *Electronically Filed*
PHILLIP R. BENNETT, LEO R. BREITMAN,                   :
NATHAN GANTCHER, TONE GRANT,                           :        **ANSWER AND**
DAVID V. HARKINS, SCOTT L. JAECKEL,                    :        **COUNTERCLAIMS**
DENNIS A. KLEJNA, THOMAS H. LEE,                       :        **OF DEFENDANTS**
SANTO C. MAGGIO, JOSEPH MURPHY,                        :        **WILLIAM M. SEXTON**
RONALD L. O'KELLEY, PERRY                              :        **AND GERALD SHERER**
ROTKOWITZ, SCOTT A. SCHOEN,                            :
WILLIAM M. SEXTON, GERALD SHERER,                      :
PHILIP SILVERMAN, ROBERT C.                            :
TROSTEN, AND DOES 1 TO 10,                             :
                                                       :
            Defendants.                                :
                                                       :
----------------------------------------------------- :
                                                       x

Defendants William M. Sexton ("Sexton") and Gerald Sherer ("Sherer"), by and through their attorneys, Friedman & Wittenstein, A Professional Corporation, state as follows for their Answer to the Complaint of plaintiff Axis Reinsurance Company ("Axis"), dated May 23, 2007, in the above-captioned action (the "Complaint"):

1.      Deny each and every allegation contained in paragraph 1 of the Complaint, except admit that Axis purports to describe the nature of the above-captioned action and that, upon information and belief, an actual controversy exists between Axis and the Insureds.[1]

2.      Deny any involvement or culpability relating to the allegations of wrongdoing contained in paragraph 2 of the Complaint; otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 2 of the Complaint regarding defendants other than Sexton and Sherer; deny each and every remaining allegation contained in paragraph 2 of the Complaint.

3.      Deny each and every allegation contained in paragraph 3 of the Complaint, except admit, upon information and belief, that Axis bound coverage and thereafter issued an excess insurance policy to Refco, Inc., with policy number 506300 and a policy period of August 11, 2005 to August 11, 2006 (the "Axis Policy"), and refer to the Axis Policy for the contents thereof.

4.      Admit, upon information and belief, the allegations contained in paragraph 4 of the Complaint.

5.      Deny each and every allegation contained in paragraph 5 of the Complaint, and refer to the letter from counsel for Axis US Insurance dated March 6, 2006 (the "March 6, 2006 Axis Letter") for the contents thereof.

---

[1]   For purposes of this Answer only, any capitalized key term not defined herein should be given the definition provided by Axis in the Complaint.  No admission as to the veracity of any such definition is hereby intended or made.

2

6.      Deny each and every allegation contained in paragraph 6 of the Complaint as to Sexton and Sherer, except admit that Sexton and Sherer have provided notice to Axis of certain matters arising from their former employment with Refco; otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 6 of the Complaint regarding defendants other than Sexton and Sherer.

7.      Deny each and every allegation contained in paragraph 7 of the Complaint as to Sexton and Sherer; otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 7 of the Complaint regarding defendants other than Sexton and Sherer.

8.      Admit, upon information and belief, the allegations contained in paragraph 8 of the Complaint.

9.      Admit, upon information and belief, the allegations contained in paragraph 9 of the Complaint.

10.     Deny each and every allegation contained in paragraph 10 of the Complaint, except admit that Axis has denied coverage and, upon information and belief, that Insureds will seek reimbursement of their defense costs from Axis once the First Excess Insurer exhausts its $7.5 million of liability.

11.     Deny each and every allegation contained in paragraph 11 of the Complaint, except admit that Axis has purported to reserve the right to rescind the Axis Policy.

12.     Deny each and every allegation contained in paragraph 12 of the Complaint, except admit that Axis purports to seek a declaration that the Axis Policy does not provide coverage to Insureds, that the $7.5 million first excess layer will likely be exhausted, and, upon information and belief, that a criminal trial against certain of the Insureds other than Sexton and

Sherer will commence and that there will be increased litigation activity and associated defense costs in certain of the Noticed Matters and the Related Matters.

13.     Deny each and every allegation contained in paragraph 13 of the Complaint, except admit that an actual controversy exists between Plaintiff and Defendants and that Axis purports to seek a declaratory judgment or other relief from the Court resolving the dispute in its favor; and aver that Axis is entitled to no relief.

14.     Admit that Axis purports to bring this adversary proceeding pursuant to 11 U.S.C. §§ 105, et seq., 28 U.S.C. § 2201, and Rules 7001(1), (2), (7) and (9) of the Federal Rules of Bankruptcy Procedure.

15.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 15 of the Complaint, except admit that Axis avers that the Court has jurisdiction over the parties and the subject matter of this adversary proceeding pursuant to 28 U.S.C. §§ 157, 1334, 2201.

16.     Admit that Axis avers that venue is proper pursuant to 28 U.S.C. § 1409.

17.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 17 of the Complaint, except admit, upon information and belief, that Axis is an insurance company.

18.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 18 of the Complaint, except admit, upon information and belief, that defendant Phillip R. Bennett ("Bennett") is the former President, Chief Executive Officer ("CEO") and Chairman of Refco, and that in October 2005, Bennett was asked by the Refco Board of Directors to take a leave of absence.

4

19.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 19 of the Complaint, except admit, upon information and belief, that defendant Leo R. Breitman served as a director of Refco and a member of the Audit Committee.

20.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 20 of the Complaint, except admit, upon information and belief, that defendant Nathan Gantcher served as a director of Refco and a member of the Audit Committee.

21.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 21 of the Complaint.

22.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 22 of the Complaint, except admit, upon information and belief, that defendant David V. Harkins served as a director of Refco.

23.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 23 of the Complaint, except admit, upon information and belief, that defendant Scott L. Jaeckel served as a director of Refco.

24.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 24 of the Complaint, except admit, upon information and belief, that defendant Dennis A. Klejna served as Executive Vice President and General Counsel of Refco.

25.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 25 of the Complaint, except admit, upon information and belief, that defendant Thomas H. Lee served as a director of Refco.

26.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 26 of the Complaint, except admit, upon information and belief, that defendant Santo C. Maggio served as President and CEO of Refco Securities, LLC and President of Refco Capital Markets, Ltd.

27.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 27 of the Complaint, except admit, upon information and belief, that defendant Joseph Murphy served as Executive Vice President of Refco Group.

28.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 28 of the Complaint, except admit, upon information and belief, that defendant Ronald L. O'Kelley served as a director of Refco.

29.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 29 of the Complaint.

30.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 30 of the Complaint, except admit, upon information and belief, that defendant Scott A. Schoen served as a director of Refco.

31.     Deny each and every allegation contained in paragraph 31 of the Complaint, except admit that Sexton served as Executive Vice President and Chief Operating Officer of Refco beginning in August 2004 and that Sexton served as CEO of Refco from October 2005, following Bennett's resignation that month, until November 2005.

32.     Deny each and every allegation contained in paragraph 32 of the Complaint, except admit that Sherer joined Refco as Executive Vice President and Chief Financial Officer in January 2005 and that Sherer is a resident of New York.

33.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 33 of the Complaint, except admit, upon information and belief, that defendant Philip Silverman served as Secretary of Refco.

34.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 34 of the Complaint, except admit, upon information and belief, that defendant Robert C. Trosten ("Trosten") served as Executive Vice President and Chief Financial Officer of Refco Group Ltd., LLC.

35.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 35 of the Complaint.

36.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 36 of the Complaint, except admit that the Axis Policy is an excess directors, officers and corporate liability policy with a policy period of August 11, 2005 to August 11, 2006 and a limit of liability of $10 million excess of $17.5 million in underlying insurance, and refer to the Axis Policy for the contents thereof.

37.     Deny each and every allegation contained in paragraph 37 of the Complaint, except admit that U.S. Specialty and Lexington have issued underlying insurance policies to Refco, and refer to the U.S. Specialty Policy and the Lexington Policy for the contents thereof.

38.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 38 of the Complaint, except admit, upon information and belief, that there are excess layers above the Axis Policy in the "tower" of Directors and Officers liability insurance obtained by Refco for the policy period beginning in August 2005.

39.     Deny each and every allegation contained in paragraph 39 of the Complaint, except admit that the Axis Policy applies "in conformance with the provisions of the applicable

7

Primary Policy," and refer to the Axis Policy for the contents thereof.

40.    Deny each and every allegation contained in paragraph 40 of the Complaint, except admit that the Axis Policy insures losses incurred by the directors and officers of Refco for claims made against them if such loss is not indemnified by Refco and that coverage under Insuring Agreement (A) is non-rescindable, and refer to the Primary Policy and the Axis Policy for the contents thereof.

41.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 41 of the Complaint, and refer to the Axis Policy and the Primary Policy for the contents thereof.

42.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 42 of the Complaint, and refer to the Axis Policy and the Primary Policy for the contents thereof.

43.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 43 of the Complaint, and refer to the Axis Policy and the Primary Policy for the contents thereof.

44.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 44 of the Complaint, and refer to the Axis Policy and the Primary Policy for the contents thereof.

45.    Deny each and every allegation contained in paragraph 45 of the Complaint, except admit that the Primary Policy provides that the Primary Insurer will advance defense costs on an as-incurred basis, and refer to the Axis Policy and the Primary Policy for the contents thereof.

46.    Deny each and every allegation contained in paragraph 46 of the Complaint,

except admit, upon information and belief, that U.S. Specialty advanced defense costs to Insureds on an as-incurred basis, and refer to this Court's March 27, 2006 Order in In re Refco Inc., Case No. 05-60006 (Doc. No. 1567, Bankr. S.D.N.Y.) for the contents thereof.

47. Deny each and every allegation contained in paragraph 47 of the Complaint, except admit that Lexington has agreed to advance defense costs, and refer to the letter dated July 26, 2006 from counsel for Lexington (the "July 26, 2006 Lexington Letter") for the contents thereof.

48. Deny each and every allegation contained in paragraph 48 of the Complaint.

49. Admit that paragraph 49 of the Complaint substantially quotes from Endorsement 5 to the Axis Policy, and refer to the Axis Policy for the contents thereof.

50. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 50 of the Complaint, and refer to the February 8, 2005 U.S. Specialty Application for the contents thereof.

51. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 51 of the Complaint, and refer to the February 8, 2005 U.S. Specialty Application for the contents thereof.

52. Deny each and every allegation contained in paragraph 52 of the Complaint, and refer to the Axis Policy for the contents thereof.

53. Admit that paragraph 53 of the Complaint substantially quotes from Clause XI of the Axis Policy, and refer to the Axis Policy for the contents thereof.

54. Deny each and every allegation contained in paragraph 54 of the Complaint, except admit that the March 6, 2006 Axis Letter denied coverage on the purported grounds set

forth in paragraph 54 of the Complaint, and refer to the March 6, 2006 Axis Letter for the contents thereof.

55.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 55 of the Complaint, except admit that Sexton and Sherer provided notice to Axis of certain matters arising from their former employment with Refco.

56.    Deny each and every allegation contained in paragraph 56 of the Complaint, except admit that the Axis Policy provides a policy period beginning August 11, 2005 and that Refco conducted an initial public offering in August 2005.

57.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 57 of the Complaint, except admit, upon information and belief, that the Complaint quotes a portion of the October 10, 2005 press release issued by Refco.

58.    Deny each and every allegation contained in paragraph 58 of the Complaint.

59.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 59 of the Complaint, except admit, upon information and belief, that the Complaint quotes a portion of the October 11, 2005 press release issued by Refco.

60.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 60 of the Complaint.

61.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 61 of the Complaint, except admit that Refco filed for bankruptcy in the Southern District of New York on or about October 17, 2005.

62.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 62 of the Complaint, and refer to the indictment filed against

10

Bennett on or about November 10, 2005 by the United States Attorney for the Southern District

of New York (the "Bennett Indictment") for the contents thereof.

63.    Deny any involvement or culpability relating to the allegations of wrongdoing

contained in paragraph 63 of the Complaint; otherwise deny knowledge or information sufficient

to form a belief as to the truth of the allegations contained in paragraph 63 of the Complaint, and

refer to the Bennett Indictment for the contents thereof.

64.    Deny any involvement or culpability relating to the allegations of wrongdoing

contained in paragraph 64 of the Complaint; otherwise deny knowledge or information sufficient

to form a belief as to the truth of the allegations contained in paragraph 64 of the Complaint, and

refer to the Bennett Indictment for the contents thereof.

65.    Deny any involvement or culpability relating to the allegations of wrongdoing

contained in paragraph 65 of the Complaint; otherwise deny knowledge or information sufficient

to form a belief as to the truth of the allegations contained in paragraph 65 of the Complaint, and

refer to the Bennett Indictment for the contents thereof.

66.    Deny any involvement or culpability relating to the allegations of wrongdoing

contained in paragraph 66 of the Complaint; otherwise deny knowledge or information sufficient

to form a belief as to the truth of the allegations contained in paragraph 66 of the Complaint, and

refer to the Bennett Indictment for the contents thereof.

67.    Deny any involvement or culpability relating to the allegations of wrongdoing

contained in paragraph 67 of the Complaint; otherwise deny knowledge or information sufficient

to form a belief as to the truth of the allegations contained in paragraph 67 of the Complaint, and

refer to the Bennett Indictment for the contents thereof.

11

68.    Deny any involvement or culpability relating to the allegations of wrongdoing contained in paragraph 68 of the Complaint; otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 68 of the Complaint, and refer to the Bennett Indictment for the contents thereof.

69.    Deny any involvement or culpability relating to the allegations of wrongdoing contained in paragraph 69 of the Complaint; otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 69 of the Complaint, and refer to the Bennett Indictment for the contents thereof.

70.    Deny any involvement or culpability relating to the allegations of wrongdoing contained in paragraph 70 of the Complaint; otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 70 of the Complaint, and refer to the Bennett Indictment for the contents thereof.

71.    Deny any involvement or culpability relating to the allegations of wrongdoing contained in paragraph 71 of the Complaint; otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 71 of the Complaint, and refer to the Bennett Indictment for the contents thereof.

72.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 72 of the Complaint, and refer to the indictment filed against Bennett and Trosten on or about October 24, 2006 by the United States Attorney for the Southern District of New York (the "Trosten Indictment") for the contents thereof.

73.    Deny any involvement or culpability relating to the allegations of wrongdoing contained in paragraph 73 of the Complaint; otherwise deny knowledge or information sufficient

to form a belief as to the truth of the allegations contained in paragraph 73 of the Complaint, and refer to the Trosten Indictment for the contents thereof.

74.     Deny any involvement or culpability relating to the allegations of wrongdoing contained in paragraph 74 of the Complaint; otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 74 of the Complaint, and refer to the Trosten Indictment for the contents thereof.

75.     Deny any involvement or culpability relating to the allegations of wrongdoing contained in paragraph 75 of the Complaint; otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 75 of the Complaint, and refer to the Trosten Indictment for the contents thereof.

76.     Deny any involvement or culpability relating to the allegations of wrongdoing contained in paragraph 76 of the Complaint; otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 76 of the Complaint, and refer to the indictment filed against Bennett, Trosten and Tone N. Grant ("Grant") on or about January 16, 2007 by the United States Attorney for the Southern District of New York (the "Grant Indictment") for the contents thereof.

77.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 77 of the Complaint, and refer to the Government's Memorandum of Law in Opposition to Defendant Grant's Motion for a Severance filed on or about March 30, 2007 by the United States Attorney for the Southern District of New York (the "Grant Memo") for the contents thereof.

78.     Deny any involvement or culpability relating to the allegations of wrongdoing contained in paragraph 78 of the Complaint; otherwise deny knowledge or information sufficient

13

to form a belief as to the truth of the allegations contained in paragraph 78 of the Complaint, and refer to the Grant Memo for the contents thereof.

79.     Deny any involvement or culpability relating to the allegations of wrongdoing contained in paragraph 79 of the Complaint; otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 79 of the Complaint, and refer to the Grant Memo for the contents thereof.

80.     Deny any involvement or culpability relating to the allegations of wrongdoing contained in paragraph 80 of the Complaint; otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 80 of the Complaint, and refer to the Grant Memo for the contents thereof.

81.     Deny any involvement or culpability relating to the allegations of wrongdoing contained in paragraph 81 of the Complaint; otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 81 of the Complaint, and refer to the Grant Memo for the contents thereof.

82.     Deny any involvement or culpability relating to the allegations of wrongdoing contained in paragraph 82 of the Complaint; otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 82 of the Complaint, and refer to the Grant Memo for the contents thereof.

83.     Deny any involvement or culpability relating to the allegations of wrongdoing contained in paragraph 83 of the Complaint; otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 83 of the Complaint, and refer to the Grant Memo for the contents thereof.

14

84.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 84 of the Complaint, and refer to the Grant Memo and the Trosten Indictment for the contents thereof.

85.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 85 of the Complaint, and refer to the Grant Memo and the Trosten Indictment for the contents thereof.

86.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 86 of the Complaint, and refer to the Grant Memo and the Trosten Indictment for the contents thereof.

87.     Admit, upon information and belief, that beginning on October 11, 2005, various lawsuits were filed against certain of the defendants in the above-captioned action.

88.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 88 of the Complaint.

89.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 89 of the Complaint.

90.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 90 of the Complaint.

91.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 91 of the Complaint.

92.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 92 of the Complaint.

93.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 93 of the Complaint.

94.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 94 of the Complaint.

95.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 95 of the Complaint.

96.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 96 of the Complaint.

97.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 97 of the Complaint.

98.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 98 of the Complaint.

99.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 99 of the Complaint.

100.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 100 of the Complaint.

101.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 101 of the Complaint.

102.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 102 of the Complaint.

103.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 103 of the Complaint.

104.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 104 of the Complaint.

105.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 105 of the Complaint.

106.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 106 of the Complaint.

107.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 107 of the Complaint.

108.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 108 of the Complaint.

109.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 109 of the Complaint.

110.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 110 of the Complaint.

111.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 111 of the Complaint.

112.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 112 of the Complaint, and refer to the March 6, 2006 Axis Letter for the contents thereof.

113.    Deny any involvement or culpability relating to the allegations of wrongdoing contained in paragraph 113 of the Complaint; otherwise deny each and every allegation contained in paragraph 113 of the Complaint, and refer to the March 6, 2006 Axis Letter for the contents thereof.

114.    Deny each and every allegation contained in paragraph 114 of the Complaint, except admit that the March 6, 2006 Axis Letter purported to deny coverage for the Noticed

17

Matters based on an alleged January 14, 2005 "warranty letter," and refer to the March 6, 2006 Axis Letter for the contents thereof.

115.    Deny each and every allegation contained in paragraph 115 of the Complaint, except admit that the March 6, 2006 Axis Letter purported to deny coverage for the Noticed Matters based on a "Manuscript Application Endorsement" and Question 12(b) of the alleged February 8, 2005 U.S. Specialty Application, and refer to the March 6, 2006 Axis Letter for the contents thereof.

116.    Deny each and every allegation contained in paragraph 116 of the Complaint, except admit that the March 6, 2006 Axis Letter purported to deny coverage for the Noticed Matters based on an alleged "Knowledge Exclusion Endorsement," and refer to the March 6, 2006 Axis Letter for the contents thereof.

117.    Deny each and every allegation contained in paragraph 117 of the Complaint, except admit that the March 6, 2006 Axis Letter purported to deny coverage for the Noticed Matters based on the alleged "claim made date," and refer to the March 6, 2006 Axis Letter for the contents thereof.

118.    Deny each and every allegation contained in paragraph 118 of the Complaint, except admit that the March 6, 2006 Axis Letter purported to reserve the right to rescind the Axis Policy and a prior policy issued by Axis to Refco, and refer to the March 6, 2006 Axis Letter for the contents thereof.

119.    Deny each and every allegation contained in paragraph 119 of the Complaint, except admit that the March 6, 2006 Axis Letter purported to reserve the right to deny coverage based on other terms and conditions of the Axis Policy, and refer to the March 6, 2006 Axis Letter for the contents thereof.

18

120.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 120 of the Complaint, except admit that Sexton and Sherer have provided notice to Axis of certain matters arising from their former employment with Refco.

121.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 121 of the Complaint.

122.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 122 of the Complaint.

123.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 123 of the Complaint.

124.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 124 of the Complaint.

125.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 125 of the Complaint.

126.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 126 of the Complaint.

127.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 127 of the Complaint.

128.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 128 of the Complaint.

129.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 129 of the Complaint.

130.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 130 of the Complaint.

131.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 131 of the Complaint.

132.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 132 of the Complaint.

133.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 133 of the Complaint.

134.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 134 of the Complaint.

135.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 135 of the Complaint.

136.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 136 of the Complaint.

137.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 137 of the Complaint.

138.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 138 of the Complaint.

139.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 139 of the Complaint.

140.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 140 of the Complaint.

141.     Deny each and every allegation contained in paragraph 141 of the Complaint.

142.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 142 of the Complaint, and refer to the purported October 13, 2005 article in Bloomberg Newswires for the contents thereof.

**COUNT I**

143.     Repeat and reallege each response to paragraphs 1 through 142 above.

144.     Deny knowledge or information sufficient to form a belief as the truth of the allegations contained in paragraph 144 of the Complaint.

145.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 145 of the Complaint, except admit that certain matters arising from Sexton's and Sherer's former employment with Refco constitute claims under the Axis Policy.

146.     Deny each and every allegation contained in paragraph 146 of the Complaint.

147.     Deny each and every allegation contained in paragraph 147 of the Complaint, except admit that Axis purports to seek a declaration, based on an alleged "Warranty," that the Axis Policy does not provide coverage for any loss arising out of the Noticed Matters or the Related Matters.

**COUNT II**

148.     Repeat and reallege each response to paragraphs 1 through 147 above.

149.     Deny knowledge or information sufficient to form a belief as the truth of the allegations contained in paragraph 149 of the Complaint.

21

150.    Deny each and every allegation contained in paragraph 150 of the Complaint, except admit that certain matters arising from Sexton's and Sherer's former employment with Refco constitute claims under the Axis Policy.

151.    Deny each and every allegation contained in paragraph 151 of the Complaint, and refer to the February 8, 2005 U.S. Specialty Application for the contents thereof.

152.    Deny each and every allegation contained in paragraph 152 of the Complaint, except admit that Axis purports to seek a declaration that, based on the matters referred to, the Axis Policy does not provide coverage for any loss arising out of the Noticed Matters or the Related Matters.

## COUNT III

153.    Repeat and reallege each response to paragraphs 1 through 152 above.

154.    Deny knowledge or information sufficient to form a belief as the truth of the allegations contained in paragraph 154 of the Complaint.

155.    Deny each and every allegation contained in paragraph 155 of the Complaint, except admit that certain matters arising from Sexton's and Sherer's former employment with Refco constitute claims under the Axis Policy.

156.    Deny each and every allegation contained in paragraph 156 of the Complaint, and refer to the Axis Policy for the contents thereof.

157.    Deny each and every allegation contained in paragraph 157 of the Complaint, except admit that Axis purports to seek a declaration that, based on an alleged "Knowledge Exclusion Endorsement," the Axis Policy does not provide coverage for any loss arising out of the Noticed Matters or the Related Matters.

## COUNT IV

158.    Repeat and reallege each response to paragraphs 1 through 157 above.

159.    Deny each and every allegation contained in paragraph 159 of the Complaint, and refer to the Axis Policy for the contents thereof.

160.    Deny each and every allegation contained in paragraph 160 of the Complaint.

161.    Deny each and every allegation contained in paragraph 161 of the Complaint, except admit that Axis purports to seek a declaration that, based on Clause XI, the Axis Policy does not provide coverage for any loss arising out of the Noticed Matters or the Related Matters.

## OTHER COVERAGE DEFENSES/RECISSION

162.    Deny each and every allegation contained in paragraph 162 of the Complaint, except admit that Axis attempts to reserve certain purported rights.

## FIRST DEFENSE

163.    Axis fails to state a claim against Sexton and Sherer upon which relief can be granted.

## SECOND DEFENSE

164.    Upon information and belief, Axis' claims against Sexton and Sherer are barred, in whole or in part, by the doctrine of laches.

## THIRD DEFENSE

165.    Upon information and belief, Axis' claims against Sexton and Sherer are barred, in whole or in part, by the doctrine of waiver.

## FOURTH DEFENSE

166.    Upon information and belief, Axis' claims against Sexton and Sherer are barred, in whole or in part, by the doctrine of estoppel.

### FIFTH DEFENSE

167.    Upon information and belief, Axis' claims against Sexton and Sherer are barred, in whole or in part, by the doctrine of unclean hands.

### SIXTH DEFENSE

168.    Upon information and belief, Axis' claims against Sexton and Sherer are barred as a result of Axis' inequitable conduct in connection with its purported denial of coverage under the Axis Policy.

### SEVENTH DEFENSE

169.    Upon information and belief, Axis' claims against Sexton and Sherer are barred because Axis has acted in bad faith in unilaterally changing the terms of the Axis Policy so as to provide purported grounds to deny coverage after receiving claims under the Policy.

**COUNTERCLAIMS**

William M. Sexton ("Sexton") and Gerald Sherer ("Sherer") (collectively, the

"Counterclaim Plaintiffs"), by and through their attorneys, Friedman & Wittenstein, A

Professional Corporation, allege as follows for their counterclaims against Axis Insurance

Company ("Axis"):

**INTRODUCTION**

1.        Axis is the second excess insurer in the "tower" of Directors and Officers

("D&O") liability insurance obtained by Refco for the policy period beginning in August 2005.

The Counterclaim Plaintiffs, along with other former Refco officers and directors insured under

the policies, (collectively, the "Insureds") have been named as defendants in various civil actions

relating to the collapse of Refco.[2]  The Insureds have requested coverage for such actions,

including defense costs, from the insurers on the D&O "tower."

2.        Axis has denied coverage to the Insureds, and has commenced this action seeking

a declaration that its excess D&O corporate liability insurance policy issued to Refco for claims

made during the period from August 11, 2005 to August 11, 2006 (the "Axis Policy") (attached

as Exhibit A hereto) does not provide coverage to any of the Insureds for any of the "Noticed

Matters" or "Related Matters" described in the Complaint filed by Axis on or about August 23,

2007 (the "Complaint," or "Compl.").

3.        None of the grounds alleged in the Complaint provides Axis with a valid basis for

refusing coverage to the Counterclaim Plaintiffs.  Nonetheless, it is clear that Axis does not

intend to honor its contractual obligations to the Counterclaim Plaintiffs when the Axis Policy is

---

[2]   Unless specifically noted otherwise, and consistent with the defined terms in the Axis Complaint, the term
"Refco" used throughout these Counterclaims refers to Refco, Inc., the company formed pursuant to the August
2005 initial public offering, as well as Refco Group Ltd., LLC, the company through which Refco's business was
conducted prior to the initial public offering.  The term "Refco" also includes subsidiaries of Refco, Inc. and Refco
Group Ltd., LLC.

triggered – i.e., once the D&O policies beneath the Axis Policy on the Refco insurance "tower" are exhausted.

4.      An actual controversy exists between the Counterclaim Plaintiffs and Axis. The Counterclaim Plaintiffs seek a declaration from this Court that the Axis Policy provides coverage for them for the various civil actions in which the Counterclaim Plaintiffs have been named as defendants, as well as appropriate relief directing Axis to pay their losses, including defense costs, in such actions, in accordance with the requirements of the Axis Policy.

## JURISDICTION AND VENUE

5.      Axis commenced this adversary proceeding on or about May 24, 2007. The counterclaims are brought pursuant to Rules 7001 and 7013 of the Federal Rules of Bankruptcy Procedure.

6.      This Court has jurisdiction over this adversary proceeding, including the counterclaims, pursuant to 28 U.S.C. §§ 157, 1334 and 2201.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

## PARTIES

8.      Counterclaim Plaintiff Sexton is a former officer of Refco who, at times relevant to this action, served as Executive Vice President and Chief Operating Officer of Refco. Sexton is a resident of the State of New York.

9.      Counterclaim Plaintiff Sherer is a former officer of Refco who, at times relevant to this action, served as Executive Vice President and Chief Financial Officer of Refco. Sherer is a resident of the State of New York.

10.    Upon information and belief, Axis is an insurance company that is organized and exists pursuant to the laws of the State of New York, with its principal place of business in New York.

## GENERAL ALLEGATIONS

### A.    The Underlying Actions

11.    On October 10, 2005, Refco disclosed in a press release that it had been carrying an undisclosed receivable of $430 million from an entity controlled by defendant Phillip R. Bennett ("Bennett"), the Chief Executive Officer of Refco.  On October 11, 2005, Refco issued a second press release relating to the $430 million receivable.

12.    On October 17, 2005, Refco and many of its direct and indirect subsidiaries filed voluntary petitions for relief in this Court under Chapter 11 of the United States Bankruptcy Code.

13.    These events in October 2005 led to a series of civil lawsuits, government investigations and criminal proceedings against certain of the Insureds.  On November 10, 2005, Bennett was indicted by the United States Attorney for the Southern District of New York on charges of, inter alia, securities fraud.

14.    The Counterclaim Plaintiffs have not been charged with any crimes or otherwise accused of any wrongdoing by any governmental entity, including the United States Attorney's Office.  However, solely on account of their services to Refco, the Counterclaim Plaintiffs (along with other Insureds) have been named as defendants in several civil lawsuits brought by private plaintiffs, including the following actions:

(i)    In re Refco, Inc. Sec. Litig., No. 05 Civ. 8626 (GEL) (S.D.N.Y.);

(ii)    In re Refco Capital Markets, Ltd. Brokerage Customer Sec. Litig., No. 06 Civ. 643 (GEL) (S.D.N.Y.); and

27

(iii)     <u>American Financial International Group-Asia, LLC et al., v. Bennett et al.</u>, No. 05 Civ. 8988 (GEL) (S.D.N.Y.).[3]

These actions are collectively referred to herein as the "Underlying Actions."

15.     The Counterclaim Plaintiffs properly gave notice of each of the Underlying Actions to the insurers on the Refco "tower" of liability insurance, including Axis, and requested coverage from such insurers under the policies described below.

**B.     The Refco "Tower" of D&O Insurance**

16.     As indicated above, Refco procured a "tower" of D&O insurance coverage. Such coverage consists of a primary policy and five excess policies for the period beginning August 11, 2005 to August 11, 2006 (the "policy period").

The U.S. Specialty Policy

17.     U.S. Specialty Insurance Company ("U.S. Specialty") issued the primary policy, Directors, Officers and Corporate Liability Insurance Policy No. 24-MGU-05-A10821, for the policy period with a $10 million limit of liability (the "U. S. Specialty Policy," or "Primary Policy"). (A copy of the U.S. Specialty Policy is attached as Ex. B hereto).

18.     The U.S. Specialty Policy names as an "Insured Person" under the Policy "any past, present or future director or officer of the Company." (Ex. B, at Definition (F)). The U.S. Specialty Policy provides those directors and officers with coverage for "Loss arising from Claims . . . against the Insured Persons for Wrongful Acts." (<u>Id.</u> at Insuring Agreement (A)).

19.     The Underlying Actions are Claims for "Wrongful Acts," as defined in the U.S. Specialty Policy. (<u>See id.</u> at Definition (P)).

---

[3]  Although the court in <u>American Financial</u> recently issued a decision dismissing all claims against Sexton and Sherer for failure to state a claim, the court granted plaintiffs leave to replead their claim for fraud. It is not presently clear whether plaintiffs will replead that claim as against Sexton or Sherer.

20.     "Loss" is defined by the U.S. Specialty Policy so as to include defense costs. (Id.
at Definition (G) and Endorsement No. 4).

21.     The U.S. Specialty Policy further requires the Insurer to advance defense costs as
incurred during the pendency of Claims:

> The Insurer will pay covered Defense Costs on an as-incurred
> basis.  If it is finally determined that any Defense Costs paid by the
> Insurer are not covered under this Policy, the Insureds agree to
> repay such non-covered Defense Costs to the Insurer.

(Id. at Condition (D)(2)).

22.     The U.S. Specialty Policy also includes a "Full Severability" Endorsement, which
provides that "[n]o knowledge or information possessed by any Insured will be imputed to any
other Insured." (Id. at Endorsement No. 10).

23.     The U.S. Specialty Policy further provides that "notwithstanding anything in this
Policy to the contrary, the Insurer shall not be entitled under any circumstances to rescind the
coverage provided under Insuring Agreement (A) of this Policy." (Id. at Endorsement No. 13).

24.     U.S. Specialty recognized its coverage obligations to the Counterclaim Plaintiffs
as well as other Insureds.  After obtaining approval from this Court to comply with the terms of
its policy and advance defense costs to Insureds, U.S. Specialty paid the defense costs of the
Insureds until the limits of the U.S. Specialty Policy were exhausted earlier this year.

The Lexington Policy

25.     Lexington Insurance Company ("Lexington") issued the first excess policy above
the U.S. Specialty Policy, Directors and Officers Liability and Corporation Reimbursement
Follow Form Excess Liability Policy No. 1620926, for the policy period with a $7.5 million limit
of liability in excess of $10 million (the "Lexington Policy," or "First Excess Policy").  (A copy
of the Lexington Policy is attached as Ex. C hereto).

29

26.    The Lexington Policy "follows form" with the U.S. Specialty Policy. This means that the Lexington Policy "indemnif[ies] the Insured named in the Declarations . . . in accordance with the applicable insuring agreements, terms, conditions and exclusions . . . of the Underlying Policy." (Ex. C, at (I) Insuring Agreements).

27.    Lexington has also agreed to comply with its duties and to advance defense costs. With the approval of this Court, Lexington is presently advancing defense costs to the Counterclaim Plaintiffs as well as other Insureds.

28.    Upon information and belief, the Lexington Policy is being rapidly depleted and will be exhausted in the very near future.

The Axis Policy

29.    Axis is the second excess insurer on the Refco "tower" of D&O liability insurance.

30.    Upon information and belief, on or about August 11, 2005, Axis provided Refco with a binder pursuant to which Axis agreed to provide $10,000,000 coverage that would follow the Primary Policy and the First Excess Policy (the "Axis Binder"). (A copy of the Axis Binder is attached hereto as Ex. D).

31.    The Axis Binder states that coverage would be provided pursuant to the "Axis SecurExcess Form," with four endorsements listed. A "Knowledge Exclusion" was not included among the four endorsements, or referred to elsewhere in the Axis Binder. Upon information and belief, Refco paid the premium quoted in the Axis Binder (i.e., $302,176) and thereby obtained coverage from Axis in accordance therewith.

32.    Although the Axis Policy is dated September 11, 2005, with an inception date of August 11, 2005, upon information and belief, it was not actually issued until on or about March 1, 2006, and was backdated by Axis. (See Ex. E hereto).

33.    Upon information and belief, the actual issuance of the Axis Policy was therefore months after the "Noticed Matters," including the "Underlying Actions," were commenced, and notice of such actions had been provided to the insurers in the "tower" of Refco D&O liability insurance, including Axis.

34.    As provided in the Axis Binder, the Axis Policy has a limit of liability of $10,000,000. (Ex. A, at Declarations Page and Endorsement No. 1).

35.    The Axis Policy states that it provides coverage "in conformance with the provisions of" the U.S. Specialty Policy. (Id. at (I) Insuring Agreement).

36.    The Axis Policy specifically defines "Insureds" as the same persons who may be entitled to insurance under the U.S. Specialty Policy. (Id. at (II) Definitions (C)).

37.    The Axis Policy defines "Claim(s)" as "event(s) which take place during the **Policy Period** and which trigger(s) coverage under the insuring agreement(s) of the **Underlying Insurance**." (Id. at (II) Definitions (A); emphasis in original).

38.    Accordingly, any "Claim" for a "Wrongful Act" brought against the Counterclaim Plaintiffs that falls within Insuring Agreement (A) of the U.S. Specialty Policy also falls within the "Insuring Agreement" of the Axis Policy.

39.    Each of the Underlying Actions is a "Claim" against the Counterclaim Plaintiffs (and other Insureds) for "Wrongful Acts" covered by Insuring Agreement (A) in the U.S. Specialty Policy and by the Insuring Agreement in the Axis Policy.

31

40.     The Axis Policy specifically states that when the policies underlying it are exhausted, it will "continue as primary insurance." (Ex. A, at (IV) Reduction or Exhaustion of Underlying Limits (B)).  Specifically, the Policy provides that "[i]f the **Underlying Limits** are wholly exhausted solely due to actual payment under the **Underlying Insurance**, this Policy shall continue to apply as primary insurance with respect to the applicable **Insurance Product(s)** . . . ." (Id.; emphasis in original).

41.     The Axis Policy also explicitly acknowledges, in bold, capital letters, that it covers defense costs:

> **THE LIMITS OF LIABILITY AVAILABLE TO PAY
> DAMAGES OR SETTLEMENT AMOUNTS SHALL BE
> REDUCED AND MAY BE TOTALLY EXHAUSTED BY
> PAYMENT OF DEFENSE COSTS.**

(Id. at Declarations Page).

42.     Endorsement No. 5 to the Axis Policy, the "Manuscript Application Endorsement," states in pertinent part that "[i]n consideration of the premium charged, it is agreed by the **Insurer** and **Insureds** that the application or proposal signed February 8, 2005 and submitted to *Axis Reinsurance Company* on *U.S. Specialty Insurance Company's* form shall be accepted by the **Insurer** as the Application for this Policy." (Id. at Endorsement No. 5; emphasis in original).

43.     Upon information and belief, when Axis issued the Axis Policy on or about March 1, 2006, it added to the policy Endorsement No. 6, a "Knowledge Exclusion," which was not included or referred to in the Axis Binder.   (See Ex. A, at Endorsement No. 6; Ex. D).

44.     This purported endorsement states in pertinent part that:

> this Policy does not respond to **Claims** based upon, arising out of,
> directly or indirectly resulting from, in consequence of, or in any
> way involving any fact, circumstance, situation, transaction, or
> event, which as of the inception date of the **Policy Period**, any

32

> **Insured** had knowledge and had reason to suppose might give rise
> to a **Claim** that would fall within the scope of the insurance
> afforded by this Policy.

(Id. at Ex. A, Endorsement No. 6; emphasis in original).

45.    Upon information and belief, Axis unilaterally added the "Knowledge Exclusion" to the Axis Policy in an improper, bad faith attempt to avoid coverage for the Noticed Matters, including the Underlying Actions.

46.    The "Knowledge Exclusion" endorsement is not properly a part of the Axis Policy, and cannot be used to deny coverage to the Counterclaim Plaintiffs.

Other Excess Insurance

47.    There are three additional excess policies above (i.e., in excess of) the Axis Policy in the Refco D&O insurance "tower."

**C.    Attempts by Axis to Avoid Coverage under the Axis Policy**

The March 6, 2006 Axis Letter

48.    By letter dated March 6, 2006 (the "March 6, 2006 Axis Letter," or "Denial Letter"), and by subsequent letters, Axis purported to deny coverage to the Counterclaim Plaintiffs and the other Insureds for all of the Noticed Matters and the Related Matters, including the Underlying Actions.  (A copy of the March 6, 2006 Axis Letter is attached hereto as Ex. F).

49.    In the March 6, 2006 Axis Letter, Axis asserted several purported grounds for denying coverage.

(i)    The January 14, 2005 Letter

50.    First, Axis relied upon a purported "Warranty Letter" dated January 14, 2005 signed by Bennett as President and CEO of Refco Group Ltd., LLC ("Refco Group") (the

33

"January 14, 2005 Letter").  (A copy of the January 14, 2005 Letter on which Axis relies is attached to the Complaint as Ex. E).

51.     According to Axis, the January 14, 2005 Letter states, in pertinent part, that "[n]o person(s) or entity(ies) proposed for this insurance is cognizant of any fact, circumstance, situation, act, error or omission which he[ ] has reason to suppose might afford grounds for any Claim . . . within the scope of the proposed insurance" and that "if such knowledge exists, any claim arising therefrom is excluded from the proposed insurance. . . ."  (See Ex. F, at pp. 8-9; Compl. Ex. E).

52.     Upon information and belief, the January 14, 2005 Letter was signed by Bennett, as President and Chief Executive Officer of Refco Group, with respect to an excess D&O policy issued by Axis for a policy period beginning August 5, 2004 to August 5, 2005 (the "Prior Policy"), and not with respect to the Axis Policy (which policy period did not begin until August 11, 2005).

53.     Refco Group was the policyholder on the Prior Policy, but is not the policyholder on the Axis Policy.

54.     In the March 6, 2006 Axis Letter, Axis asserted that the Noticed Matters were "brought in connection with the alleged financial fraud orchestrated by Mr. Bennett, among others" and that it is "inconceivable that Mr. Bennett was not aware of the alleged fraud when he executed the Axis Warranty 'on behalf of all Insureds under the Policy'" (Ex. F, at p. 9).

55.     The March 6, 2006 Axis Letter further asserted that the January 14, 2005 Letter "explicitly excludes coverage for all Insureds for any Claim arising from the undisclosed knowledge," and that all of the Noticed Matters fell within such exclusion.  (Id.).

34

    (ii)    The U.S. Specialty Application

56.    The March 6, 2006 Axis Letter also relied upon Bennett's alleged failure to answer Question 12(b) in a February 8, 2005 application to U.S. Specialty for coverage (the "Application") (see Compl. Ex. F, at p. 3), which Axis contended was incorporated as the application to Axis pursuant to Endorsement No. 5 of the Axis Policy.

57.    Specifically, according to Axis, Question 12(b) of the Application inquired as to whether any proposed Insured was "aware of any fact, circumstance or situation involving the Applicant . . . which he . . . has reason to believe might result in a claim being made." (See Ex. F, at p. 8; Compl. Ex. F, at p. 3).

58.    The March 6, 2006 Axis Letter asserted that "Mr. Bennett had a duty to disclose the alleged financial fraud in [the] answer to Application question 12(b)," and that his failure to do so resulted in all of the Noticed Matters being excluded from coverage. (See Ex. F, at p. 10).

    (iii)    The "Claim Made Date"

59.    The March 6, 2006 Axis Letter further denied coverage for the Noticed Matters on the additional ground that each was purportedly a Claim first made before the inception date of the Axis Policy (i.e., prior to August 11, 2005). The March 6, 2006 Axis Letter contended in this regard that each of the Noticed Matters was sufficiently related to a complaint filed on June 30, 2005 in an action filed by the Bankruptcy Trust of Gerard Sillam (the "Sillam" action), so that each could be treated as a single interrelated Claim made prior to August 11, 2005. (See id. at pp. 4, 10).

(iv)    The "Knowledge Exclusion"

60.    Finally, the March 6, 2006 Axis Letter denied coverage for all of the Noticed

Matters based on the "Knowledge Exclusion" endorsement that Axis contended was part of the

Axis Policy.

61.    Specifically, the March 6, 2006 Axis Letter asserted that "[e]ach of the Noticed

Matters is brought in connection with the alleged financial fraud orchestrated by Mr. Bennett"

and that it is "inconceivable that Mr. Bennett was not aware that his actions 'might give rise to a

Claim that would fall within the scope of the insurance afforded by this Policy' on the

[August 11, 2005] inception date of the [Axis Policy]." (Id. at p. 11).

The Axis Adversary Proceeding

62.    On or about May 24, 2007, Axis commenced the instant Adversary Proceeding,

seeking a declaration that the Axis Policy does not provide insurance coverage for the Noticed

Matters or the Related Matters for any of the Insureds.

63.    The Complaint contains four counts, each of which purports to set forth a separate

ground for Axis' position that there is no coverage under the Axis Policy.  Counts I, II and III

rely upon, respectively, Axis' arguments based on the purported January 14, 2005 Letter, the

Application, and the alleged Knowledge Exclusion endorsement as set forth in the March 6, 2006

Axis Letter and discussed above.

64.    Count IV of the Complaint relies upon Clause XI of the Axis Policy.  This clause

provides that:

> [t]he **Insurer** shall not be liable for any amount in any **Claim**
> taking place during the **Policy Period** and arising under any
> **Insurance Product**, which is based upon, arising out of, directly
> or indirectly resulting from, in consequence of or in any way
> involving:

**A.** Any demand, suit or other proceeding pending, or order, decree or judgment entered, against any **Insured** on or prior to the Pending or Prior Claim Date set forth in Item 7 of the Declarations or any wrongful act, fact, circumstance or situation underlying or alleged therein; or

**B.** Any other wrongful act, fact, circumstance or situation whenever occurring, which together with a wrongful act, fact, circumstance or situation described in (a) above are casually or logically interrelated by a common nexus."

(Ex. A, at (XI) Exclusions; emphasis in original).

65.     Count IV asserts that the Noticed Matters allege many of the same wrongful acts previously alleged in a 1994 CFTC enforcement action (the "1994 CFTC Action"), and that the Axis Policy thus does not provide coverage for any of the Noticed Matters or the Related Matters.  (See Compl. ¶¶ 142, 160-61).

66.     Axis failed to include this basis under Clause XI for its position that there is no coverage under the Axis Policy in the March 6, 2006 Axis Letter.  Instead, as set forth above, in the March 6, 2006 Axis Letter, Axis purported to deny coverage based upon the Silliam action, a basis for denial that Axis did not allege in its Complaint.

## COUNT I

### (Declaratory Relief)

67.     Counterclaim Plaintiffs repeat and reallege paragraphs 1 through 66 of these Counterclaims as if fully set forth herein.

68.     Pursuant to the terms of the Axis Policy, Axis is contractually obligated to provide coverage to Counterclaim Plaintiffs for all Loss (as defined in the U.S. Specialty Policy) arising from the Underlying Actions, including but not limited to, Defense Costs, upon exhaustion of the limits of liability of the underlying U.S. Specialty Policy and the Lexington Policy.

69.    As of the present date, Axis has denied its contractual obligations and has denied coverage under the Axis Policy.

70.    Upon information and belief, Refco paid all premiums for the Axis Policy and has performed all of the terms and conditions of the Axis Policy on its part to be performed, unless otherwise excused.

71.    Counterclaim Plaintiffs, as Insureds under the Axis Policy, and therefore, parties to the insurance contract, have performed all the terms and conditions of the Axis Policy on their part to be performed, unless otherwise excused.

72.    At all relevant times mentioned herein, the Axis Policy was, and is, in full force and effect.

73.    None of the grounds asserted by Axis for the denial of coverage under the Axis Policy provides a valid basis for denying coverage to the Counterclaim Plaintiffs.

74.    Three of the four grounds asserted by Axis in the March 6, 2006 Axis Letter and in the Complaint – specifically, the purported January 14, 2005 Letter, the Application and the alleged "Knowledge Exclusion" endorsement – rest on Bennett's alleged knowledge of wrongdoing, which has not been established in any proceeding.

75.    Regardless of whether Bennett is hereafter found to have knowledge of wrongdoing, as alleged by Axis, none of these three grounds described in paragraph 74, above, allows Axis to deny coverage to the Counterclaim Plaintiffs.

76.    The January 14, 2005 Letter does not relate to the Axis Policy, and was neither included nor incorporated therein.  Neither the Axis Binder nor the Axis Policy describes or even refers to the January 14, 2005 Letter.  The January 14, 2005 Letter is thus not a proper ground for denial of coverage.

38

77.    Upon information and belief, Axis issued its policy with full knowledge that Question 12(b) in the Application was not answered, and without having done anything to inquire as to such failure. Axis has therefore waived, and is estopped from asserting, any failure by Bennett to disclose information requested in Question 12(b) of the Application as a ground for denying coverage under the Axis Policy.

78.    The "Knowledge Exclusion" endorsement relied upon by Axis was not referred to in the Axis Binder, and is materially inconsistent therewith. Upon information and belief, this endorsement was unilaterally and improperly added by Axis to the Axis Policy on or about March 1, 2006 – months after the Noticed Matters had commenced and notice of such matters had been provided to Axis – in a bad faith attempt to avoid coverage for the Noticed Matters.

79.    The "Knowledge Exclusion" endorsement is not a part of the insurance contract between Axis and the Counterclaim Plaintiffs.

80.    The "Full Severability" Endorsement to the U.S. Specialty Policy (Endorsement No. 10), which is incorporated into the Axis Policy, also precludes Axis from using any alleged knowledge of Bennett (or any other Insured) as a ground for denying coverage to the Counterclaim Plaintiffs, and thus precludes Axis from relying upon the purported January 14, 2005 Letter, the Application, or the alleged "Knowledge Exclusion" endorsement to deny coverage to the Counterclaim Plaintiffs.

81.    Neither of the Counterclaim Plaintiffs had any knowledge, at any time prior to the inception of the Axis Policy, of any wrongdoing relating to Refco, or of any facts or circumstances that might give rise to a Claim under the "tower" of D&O insurance obtained by Refco for the policy period.

82.     Coverage for the Underlying Actions is not excluded under Clause XI of the Axis Policy.  Upon information and belief, the Underlying Actions do not arise from or allege any of the same wrongful acts that formed the basis for the 1994 CFTC Action.

83.     The 1994 CFTC Action was not raised by Axis in the March 6, 2006 Axis Letter as a ground for denial of coverage.

84.     Similarly, upon information and belief, the Underlying Actions are not related in any way to the June 2005 complaint in the <u>Sillam</u> action, which was relied upon in the Denial Letter but is not referred to in the Complaint.

85.     The Underlying Actions do not constitute Claims that were first brought prior to the inception of the Axis Policy.

86.     An actual controversy exists between Axis and the Counterclaim Plaintiffs as to whether the Counterclaim Plaintiffs are entitled to coverage for the Underlying Actions under the Axis Policy, and judicial resolution of the parties' rights and obligations is necessary.

87.     This Court should issue a judgment declaring that the Counterclaim Plaintiffs are entitled to coverage under the Axis Policy for Loss arising out of the Underlying Actions, including, but not limited to, defense costs as they are incurred.

<u>COUNT II</u>

(Injunctive Relief)

88.     Counterclaim Plaintiffs repeat and reallege paragraphs 1 through 87 of these Counterclaims as if fully set forth herein.

89.     Upon exhaustion of the Lexington Policy, Axis will become obligated to make payments to the Counterclaim Plaintiffs for Losses in the Underlying Actions, in accordance with the Axis Policy.

40

90.     The Counterclaim Plaintiffs are entitled to permanent injunctive relief requiring

Axis to make such payments in accordance with Axis' contractual obligations.

## PRAYER FOR RELIEF

WHEREFORE, Counterclaim Plaintiffs William M. Sexton and Gerald Sherer

respectfully request entry of judgment in their favor as follows:

1.     Dismissing all counts of the Complaint with prejudice;

2.     On Count I of the Counterclaims, declaring that the Counterclaim Plaintiffs are

entitled to coverage under the Axis Policy for Loss arising out of the Underlying Actions,

including but not limited to Defense Costs;

3.     On Count II of the Counterclaims, requiring Axis to make payments to the

Counterclaim Plaintiffs for Loss in the Underlying Actions, in accordance with the Axis Policy;

4.     Awarding the Counterclaim Plaintiffs their attorneys' fees and costs and

disbursements of this action; and

5.     Granting such other and further relief as the Court may deem proper.

## JURY DEMAND

Sexton and Sherer hereby demand trial by jury on all issues in the Complaint or in the

Counterclaims so triable.

Dated: July 13, 2007
       New York, New York

**FRIEDMAN & WITTENSTEIN**
**A Professional Corporation**


By:   /s/ Ivan Kline
      Stuart I. Friedman (SF-9186)
      Ivan Kline (IK-9591)
      Elizabeth D. Meacham (EM-0890)

600 Lexington Avenue
New York, New York 10022
Telephone:     (212) 750-8700
Facsimile:      (212) 223-8391

*Attorneys for Defendants William M. Sexton*
*and Gerald Sherer*

42

# EXHIBIT 2

7/13/07

Holly K. Kulka (HK-9712)
Chakshu Patel (CP-2563)
HELLER EHRMAN LLP
Times Square Tower
7 Times Square
New York, New York  10036
Tel: (212) 832-8300
Fax: (212) 763-7600

*Attorneys for Defendant Philip Silverman*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

In re:                                               Chapter 11
REFCO, INC., et al.,                                 Case No. 05-60006(RDD)
                                                     (Jointly Administered)
                    Debtors.
-----------------------------------------------------------------x
AXIS REINSURANCE COMPANY,

                    Plaintiff,

            v.                                       Adv. Proc. No. 07-01712(RDD)

PHILLIP R. BENNETT, LEO R. BREITMAN,
NATHAN GANTCHER, TONE GRANT,
DAVID V. HARKINS, SCOTT L. JAECKEL,                  **ANSWER OF DEFENDANT**
DENNIS A. KLEJNA, THOMAS H. LEE,                     **PHILIP SILVERMAN**
SANTO C. MAGGIO, JOSEPH MURPHY,                      **AND COUNTERCLAIM**
 RONALD L. O'KELLEY, PERRY ROTKOWITZ,
SCOTT A. SCHOEN, WILLIAM M. SEXTON,
GERALD SHERER, PHILIP SILVERMAN,
ROBERT C. TROSTEN, AND DOES 1 TO 10,

                    Defendants.
-----------------------------------------------------------------x

        Defendant Philip Silverman, by and through his attorneys, Heller Ehrman LLP, hereby

answers the Complaint, dated May 23, 2007 (the "Complaint"), as follows:

## NATURE OF THE ACTION

¶1:    This action concerns an actual controversy between Axis and the Insureds, regarding a contract of excess directors, officers and corporate liability insurance between Axis and the Insureds.

Paragraph 1 contains no factual allegations to which a response is required.

Mr. Silverman admits that the allegations in Paragraph 1 purport to describe this action.

¶2:    Refco, Inc. ("Refco"), and at least some of its directors and officers, engaged in a massive fraud involving hundreds of millions of dollars. Refco's insurers were also victims of this fraud. The representations and documents Axis relied upon when evaluating the risk and deciding whether or not to insure Refco's directors and officers, turned out to be false.

Mr. Silverman denies the allegations in Paragraph 2 to the extent they purport to describe

Mr. Silverman's conduct.  Mr. Silverman lacks sufficient information to form a belief as to the

truth or falsity of the allegations to the extent they purport to describe the conduct of other

defendants.

¶3:    Axis bound coverage for an excess directors, officers and corporate liability insurance policy issued to Refco for claims made during the period from August 11, 2005 to August 11, 2006 (the "Axis Policy"). The Axis Policy follows the terms and conditions of the primary policy, or more restrictive underlying excess policy. The Axis Policy also contains its own terms and conditions which further restrict coverage otherwise provided by the primary or first excess policies.

Mr. Silverman denies the allegations contained in Paragraph 3, except that he admits that

Axis issued an excess directors, officers, and corporate liability policy.  To the extent that

Paragraph 3 purports to describe the Axis Policy and the underlying excess policy, those

documents speak for themselves.

¶4:    Since October 11, 2005, various lawsuits, governmental and/or regulatory investigations (the "Noticed Matters") involving certain individuals insured under the Axis Policy have been instituted and those individuals have sought coverage for the Noticed Matters under the Axis Policy.

Mr. Silverman admits the allegations contained in Paragraph 4 to the extent they relate to

coverage sought by him; Mr. Silverman lacks sufficient information to form a belief as to the

truth or falsity of the allegations to the extent they purport to describe coverage sought by others.

¶5:    Axis denied coverage for the Noticed Matters on March 6, 2006, based on various terms and conditions of the Axis Policy, including a warranty received during the underwriting of the Axis Policy.

Mr. Silverman denies the allegations contained in Paragraph 5, except admits that Axis

has denied coverage.  To the extent that Paragraph 5 purports to describe the contents of the

March 6, 2006 letter, that document speaks for itself.

¶6:    Since March 6, 2006, Axis has received notice from certain of the Insureds of several other matters related to the Noticed Matters, and Axis has denied coverage for these other matters (the "Related Matters") based on various terms and conditions of the Axis Policy, including a warranty received during the underwriting of the Axis Policy.

Mr. Silverman admits the allegations contained in Paragraph 6 to the extent that his

counsel sent notice of Related Matters and that Axis denied coverage for those Related Matters.

Mr. Silverman lacks sufficient information to form a belief as to the truth or falsity of the

allegations to the extent they purport to describe the conduct of other defendants.

¶7:    To date, none of the Insureds has responded to Axis's declination of coverage.

Mr. Silverman lacks sufficient information to form a belief as to the truth or falsity of the

allegations in Paragraph 7 to the extent they purport to describe the conduct of other defendants.

¶8:    Axis is the third layer of directors, officers and corporate liability insurance coverage. The two layers below Axis have reserved rights, but not declined coverage. Accordingly, the $10 million primary layer had been providing Insureds with reimbursement of defense costs.

Mr. Silverman denies the allegations contained in Paragraph 8, except admits that

reimbursement of certain defense costs has been provided by the primary layer and first excess

layer.

¶9:    The primary layer has now exhausted its $10 million limit of liability, subject to its reservation of rights, through the payment of Insureds' defense costs. It is expected that the $7.5 million first excess insurer will exhaust its limit of liability, subject to its reservation of rights, through continued payment of Insureds' defense costs prior to the end of 2007.

Mr. Silverman admits the allegations contained in Paragraph 9.

¶10:    Once the first excess insurer exhausts its $7.5 million limit of liability, Axis expects that the Insureds will seek reimbursement of their defense costs from Axis. However, Axis has denied coverage based, in part, on specific terms and conditions present in the Axis Policy (including a warranty received during the underwriting of the Axis Policy) not present in the primary or first excess policy.

Mr. Silverman lacks sufficient knowledge to form a belief as to the truth or falsity of the

first sentence of Paragraph 10, except admits that Axis has denied coverage and that Mr.

Silverman will seek coverage from Axis.  Mr. Silverman specifically denies that the stated

reasons for that denial are valid or applicable.

¶11:    Axis has also reserved the right to partially rescind the Axis Policy, and a prior directors, officers and corporate liability insurance policy issued to Refco by Axis.

Mr. Silverman lacks sufficient information to form a belief as to the truth or falsity of the

allegations contained in Paragraph 11.

¶12:    Axis seeks a declaration that the Axis Policy does not provide coverage to Insureds for the Noticed Matters or the Related Matters. Axis seeks this declaration given the following facts: (1) the likely exhaustion of the $7.5 million first excess limit of liability, ending the Insureds' reimbursement of defense costs; (2) the commencement of the criminal trial against certain of the Insureds; (3) increased litigation activity (and associated defense costs), including commencement of discovery, in certain of the Noticed Matters and Related Matters; and (4) possible settlement demands in one or more of the Noticed Matters or Related Matters.

Paragraph 12 contains no factual allegations to which a response is required.  Mr.

Silverman admits that the allegations purport to describe this action.

¶13:    An actual controversy exists between Plaintiff and Defendants, and Plaintiff seeks a declaratory judgment or other relief from the Court resolving this dispute in its favor.

Paragraph 13 contains no factual allegations to which a response is required.  Mr.

Silverman admits that the allegations purport to describe this action.

## JURISDICTION AND VENUE

¶14:    This adversary proceeding is brought pursuant to Rules 7001(1), (2), (7) and (9) of the Federal Rules of Bankruptcy Procedure, section 105 of Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 105, et seq. (the "Bankruptcy Code") and 28 U.S.C. §2201.

Paragraph 14 contains no factual allegations to which a response is required.  Mr.

Silverman admits that the allegations purport to describe this action.

¶15:    This Court has jurisdiction over the parties and the subject matter of this adversary proceeding pursuant to 28 U.S.C. §§ 157, 1334, and 2201.

Paragraph 15 contains legal conclusions that do not require a response; to the extent a

response is deemed necessary, Mr. Silverman denies the allegations in that Paragraph.

¶16:    Venue is proper pursuant to 28 U.S.C. § 1409.

Paragraph 16 contains legal conclusions that do not require a response; to the extent a

response is deemed necessary, Mr. Silverman denies the allegations in that Paragraph.

## PARTIES

¶17:    Axis is an insurance company that is organized and exists pursuant to the laws of the state of New York. Axis has its principal place of business in New York.

Mr. Silverman lacks sufficient information to form a belief as to the truth or falsity of the

allegations contained in Paragraph 17.

¶18:    Defendant Phillip R. Bennett ("Bennett") served as the Chairman, President and Chief Executive Officer of Refco until October 2005, when he took a leave of absence at the request of the Refco board of directors. Upon information and belief, Bennett is a citizen of New Jersey.

Mr. Silverman lack sufficient knowledge or information to form a belief as to the truth or

falsity of the allegations contained in Paragraph 18, except admits that at various times Bennett

was the Chairman, Chief Executive Officer and President of various Refco entities.

¶19:    Defendant Leo R. Breitman ("Breitman") served as a Director of Refco and member of the Audit Committee at times relevant to this action. Upon information and belief, Breitman is a citizen of Florida.

Mr. Silverman lacks sufficient knowledge or information to form a belief as to the truth or

falsity of the allegations contained in Paragraph 19, except admits that Breitman was a member

of the Audit Committee.

¶20:    Defendant Nathan Gantcher ("Gantcher") served as a Director of Refco and member of the Audit Committee at times relevant to this action. Upon information and belief, Gantcher is a citizen of New York.

Mr. Silverman lacks sufficient knowledge or information to form a belief as to the truth or

falsity of the allegations contained in Paragraph 20, except admits that Gantcher was a member of

the Audit Committee.

¶21:    Defendant Tone Grant ("Grant") served as President and Chief Executive Officer of Refco Group Ltd., LLC at times relevant to this action. Upon information and belief, Grant is a citizen of Illinois.

Mr. Silverman lacks sufficient knowledge or information to form a belief as to the truth or

falsity of the allegations contained in Paragraph 21, except admits that at various times Grant

held positions at various Refco entities.

¶22:    Defendant David V. Harkins ("Harkins") served as a Director of Refco at times relevant to this action. Upon information and belief, Harkins is a citizen of Massachusetts.

Mr. Silverman lacks sufficient knowledge or information to form a belief as to the truth or

falsity of the allegations contained in Paragraph 22.

¶23:    Defendant Scott L. Jaeckel ("Jaeckel") served as a Director of Refco at times relevant to this action. Upon information and belief, Jaeckel is a citizen of Massachusetts.

Mr. Silverman lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraph 23.

¶24:    Defendant Dennis A. Klejna ("Klejna") served as Executive Vice President and General Counsel of Refco Group Ltd., LLC at times relevant to this action. Upon information and belief, Klejna is a citizen of Washington D.C.

Mr. Silverman lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraph 24, except admits that at various times Klejna served as Executive Vice President and General Counsel of Refco Group.

¶25:    Defendant Thomas H. Lee ("Lee") served as a Director of Refco at times relevant to this action. Upon information and belief, Lee is a citizen of New York.

Mr. Silverman lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraph 25.

¶26:    Defendant Santo C. Maggio ("Maggio") served as President and Chief Executive Officer of Refco Securities, LLC and Refco Capital Markets, Ltd. at times relevant to this action. Upon information and belief, Maggio is a citizen of Florida.

Mr. Silverman lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraph 26, except admits that at various times Maggio held positions at Refco and its subsidiaries.

¶27:    Defendant Joseph Murphy ("Murphy") served as Executive Vice President of Refco Group and was responsible for global marketing since 1999. Murphy was also President of various Refco subsidiaries, including Refco Futures and Westminster Refco at times relevant to this action. Upon information and belief, Murphy is a citizen of New Jersey.

Mr. Silverman lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraph 27, except admits that at various times Murphy held positions at various Refco entities.

¶28:    Defendant Ronald L. O'Kelley ("O'Kelley") served as a Director of Refco at times relevant to this action. Upon information and belief, O'Kelley is a citizen of Florida.

Mr. Silverman lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraph 28, except admits that O'Kelley was a member of the Audit Committee.

¶29:    Defendant Perry Rotkowitz ("Rotkowitz") served as Secretary of Refco Capital LLC at times relevant to this action. Upon information and belief, Rotkowitz is a citizen of New York.

Mr. Silverman lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraph 29, except denies that Rotkowitz was Secretary of Refco Capital LLC.

¶30:    Defendant Scott A. Schoen ("Schoen") served as a Director of Refco at times relevant to this action. Upon information and belief, Schoen is a citizen of Massachusetts.

Mr. Silverman lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraph 30.

¶31:    Defendant William M. Sexton ("Sexton") served as Executive Vice President and Chief Operating Officer of Refco at times relevant to this action. Sexton also briefly served as Chief Executive Officer of Refco. Upon information and belief, Sexton is a citizen of Iowa.

Mr. Silverman lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraph 31, except admits that at various times Sexton held positions at Refco and its subsidiaries.

¶32:    Defendant Gerald Sherer ("Sherer") served as Executive Vice President and Chief Financial Officer of Refco at times relevant to this action. Upon information and belief, Sherer is a citizen of New York.

Mr. Silverman lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraph 32, except admits that at various times Sherer

was Executive Vice President and Chief Financial Officer of Refco Group.

¶33:    Defendant Philip Silverman ("Silverman") served as Secretary of Refco Group Holdings, Inc. at times relevant to this action. Silverman also served as Secretary of various Refco subsidiaries and Controller of Refco Group. Upon information and belief, Silverman is a citizen of New Jersey.

As to the allegation in Paragraph 33, Mr. Silverman admits that at various times he served

as Secretary of various Refco entities and that he is a citizen of New Jersey; Mr. Silverman

denies that he was Controller of Refco Group.

¶34:    Defendant Robert C. Trosten ("Trosten") served as Executive Vice President and Chief Financial Officer of Refco Group Ltd., LLC at times relevant to this action. Upon information and belief, Trosten is a citizen of New Jersey.

Mr. Silverman lacks sufficient knowledge or information to form a belief as to the truth or

falsity of the allegations contained in Paragraph 34, except admits that at various times Trosten

held positions at various Refco entities.

¶35:    The true names and capacities of DOES 1 to 10 are currently unknown to Plaintiff, and therefore, Plaintiff sues those Defendants by such fictitious names. Upon information and belief, each fictitiously named Defendant is an Insured which may seek coverage under the Axis Policy. Plaintiff is entitled to the relief sought herein against the fictitious Defendants, and therefore, sues these Defendants by such fictitious names. Plaintiff will seek leave to insert the true names and capacities of these fictitiously named Defendants, together with charging allegations, when obtained, if not already set forth herein.

Paragraph 35 contains no factual allegations to which a response is required.

## THE D&O INSURANCE POLICIES

¶36:    The Axis Policy is an excess directors, officers and corporate liability policy. It has a policy period of August 11, 2005 to August 11, 2006 and a limit of liability of $10 million excess of $17.5 million in underlying insurance. A true, complete and accurate copy of the Axis Policy is attached as Exhibit A.

Mr. Silverman denies the allegations contained in Paragraph 36, except that he admits that

Axis issued an excess directors, officers, and corporate liability policy. To the extent that

Paragraph 36 purports to describe the Axis Policy, that document speaks for itself.

¶37:    Various other insurers issued underlying insurance policies to Refco. U.S. Specialty Insurance Company (the "Primary Insurer") issued a primary policy with a limit of liability of $10 million excess of applicable self insured retentions (the "Primary Policy"). A true, complete and accurate copy of the Primary Policy is attached as Exhibit B. Lexington Insurance Company (the "First Excess Insurer") issued a first excess policy with a limit of liability of $7.5 million excess of $10 million (the "First Excess Policy"). A true, complete and accurate copy of the First Excess Policy is attached as Exhibit C.

Mr. Silverman denies the allegations contained in Paragraph 37, except that he admits that

other insurers issued underlying insurance policies to Refco.  To the extent that Paragraph 37

purports to describe the  underlying insurance policies, those documents speak for themselves.

¶38:    Axis is aware of other policies issued to Refco which are excess of the Axis Policy. However, the terms and conditions of these policies are not relevant to this action.

Mr. Silverman lacks sufficient information to form a belief as to the truth or falsity of the

allegations contained in Paragraph 38.

¶39:    In general, the Axis Policy applies "in conformance with the provisions of the applicable Primary Policy and, to the extent coverage is further limited or restricted thereby, to [the First Excess Policy]." Axis Policy, Section I. However, the Axis Policy also contains its own provisions which further limit or restrict coverage otherwise provided by the Primary Policy or the First Excess Policy. The Axis Policy provides that "[i]n no event shall this Policy grant broader coverage than would be provided by the most restrictive policy constituting part of the applicable Underlying Insurance." *Id.*

Mr. Silverman denies the allegations contained in Paragraph 39.  To the extent that

Paragraph 39 purports to describe the Axis Policy and the underlying policies, those documents

speak for themselves.

¶40:    Subject to all of the terms and conditions, the Axis Policy affords five types of specified coverage. First, the Axis Policy insures covered loss incurred by the directors and officers of Refco and its subsidiaries for claims made against them if such loss is not indemnified by Refco. *See* Primary Policy, Insuring Agreement A. Coverage under Insuring Agreement A, and only coverage under Insuring Agreement A, is deemed non-rescindable. *See* Primary Policy, Endorsement 13.

Mr. Silverman denies the allegations contained in Paragraph 40.  To the extent that

Paragraph 40 purports to describe the Axis Policy and the underlying policies, those documents

speak for themselves.

¶41:   Second, the Axis Policy insures Refco and its subsidiaries to the extent they indemnify any directors or officers for covered loss in connection with claims made against the officers or directors. *See* Primary Policy Insuring Agreement B(1).

Mr. Silverman denies the allegations contained in Paragraph 41 except admits Axis issued

a policy.  To the extent that Paragraph 41 purports to describe the Axis Policy and the underlying

policies, those documents speak for themselves.

¶42:   Third, the Axis Policy insures Refco and its subsidiaries for covered loss in connection with "Securities Claims" (as defined in the Primary Policy) asserted against them. *See* Primary Policy, Insuring Agreement B(2).

Mr. Silverman denies the allegations contained in Paragraph 42 except admits Axis issued

a policy.  To the extent that Paragraph 42 purports to describe the Axis Policy and the underlying

policies, those documents speak for themselves.

¶43:   Fourth, the Axis Policy recognizes depletion of the Primary Policy's limit of liability as a result of the Primary Policy's $250,000 sub-limit for "Derivative Demand Investigative Costs" (as defined in the Primary Policy) incurred in connection with any derivative demand received by Refco's Board of Directors. *See* Primary Policy Endorsement No. 11.

Mr. Silverman denies the allegations contained in Paragraph 43 except admits Axis issued

a policy.  To the extent that Paragraph 43 purports to describe the Axis Policy and the underlying

policies, those documents speak for themselves.

¶44:   Fifth, the Axis Policy insures the "Controlling Shareholder" (defined as Bennett in the Primary Policy) for covered loss incurred in connection with "Securities Claims" (as defined in the Primary Policy) asserted against him, provided one or more other individual insureds and/or Refco are, and remain, co-defendants in such "Securities Claim" along with the "Controlling Shareholder." *See* Primary Policy Endorsement No. 15.

Mr. Silverman denies the allegations contained in Paragraph 44 except admits Axis issued

a policy. To the extent that Paragraph 44 purports to describe the Axis Policy and the underlying

policies, those documents speak for themselves.

¶45:    The Axis Policy (and the Primary and First Excess Policies) does not provide a duty to defend the insureds against claims made against them. Instead, the Primary Policy provides that the "Insureds must defend any Claim made against them." Primary Policy Condition D(1). The Primary Policy provides that the Primary Insurer will advance defense costs on an as-incurred basis in excess of the retention amount. As a condition for advancement, the insureds have agreed that if "it is finally determined that any Defense Costs paid by the Insurer are not covered under this Policy, the Insureds agree to repay such non-covered Defense Costs to the Insurer." Primary Policy, Condition (D)(2).

Mr. Silverman denies the allegations contained in Paragraph 45 except admits Axis issued

a policy. To the extent that Paragraph 45 purports to describe the Axis Policy and underlying

policies, those documents speak for themselves.

¶46:    Pursuant to this Court's March 27, 2006 Order in *In re Refco Inc.,* Case No. 05-60006 (Doc. No. 1567, Bankr. S.D.N.Y.), the Primary Insurer has been advancing defense costs to the insureds on an as-incurred basis.

Mr. Silverman admits the allegations contained in Paragraph 46.

¶47:    The First Excess Insurer has taken the position that the First Excess Policy does not provide coverage for defense costs in connection with claims otherwise covered under the Primary Policy. Nevertheless, the First Excess Insurer has now agreed to advance defense costs, upon exhaustion of the Primary Policy's limit of liability, provided the insureds provide an undertaking - in the event it is determined that the First Excess Policy does not provide coverage for defense costs, each of the insureds must agree to repay defense costs advanced by the First Excess Insurer. *See* July 26, 2006 letter on behalf of Lexington Insurance Company, attached as Exhibit D.

Mr. Silverman denies the allegations contained in Paragraph 47 except admits Lexington

has agreed to advance fees. To the extent that Paragraph 47 purports to describe the contents of

the July 26, 2006 letter on behalf of Lexington Insurance Company, that document speaks for

itself.

¶48:    In connection with the underwriting of the Axis Policy, Axis requested and received a warranty letter (the "Warranty") which provides as follows:

(a)    No person(s) or entity(ies) proposed for this insurance is cognizant of any fact, circumstance, situation, act, error or omission which he/she/it has reason to suppose might afford grounds for any Claim, as such term is defined within the Policy, such as would fall within the scope of the proposed insurance, EXCEPT: [Louis Capital Markets, LP v. Refco Group Ltd., LLC, et al.]

(b)    No person(s) or entity(ies) proposed for this insurance is cognizant of any inquiry, investigation or communication which he/she/it has reason to suppose might give rise to a Claim, as such term is defined within the Policy, such as would fall within the scope of the proposed insurance.

It is agreed by the undersigned on behalf of all Insureds under the Policy, that with respect to the above statements, that if such knowledge exists, any claim arising therefrom is excluded from the proposed insurance.

The Warranty is dated January 14, 2005, and was signed by Phillip Bennett, "on behalf of all Insureds under the Policy," on January 21, 2005. A true, accurate, and complete copy of the Warranty is attached as Exhibit E.

Mr. Silverman denies the allegations contained in Paragraph 48.


¶49:    The Axis Policy contains a Manuscript Application Endorsement at Endorsement 5, stating:

In consideration of the premium charged, it is agreed by the Insurer and the Insureds that the application or proposal signed February 8, 2005 and submitted to Axis Reinsurance Company on U.S. Specialty Insurance Company's form shall be accepted by the Insurer as the Application for this Policy.

Any and all references to an Application or application in this Policy shall mean the application or proposal described above. The Insurer has relied upon all statements, warranties and other information and documents contained in or submitted with such other application or proposal as if they were submitted directly to Insurer using its own Application form.

Endorsement 5 is marked effective August 11, 2005 and is dated September 11, 2005.

Mr. Silverman denies the allegations contained in Paragraph 49.


¶50:    The February 8, 2005 application (the "Application") submitted to Axis asks at Question 12:

(a)    Have any claims been made during the last 5 years against any person or entity proposed for this insurance in his or her capacity as a director, officer or trustee of any corporation or organization?

_____Yes    _____No

If yes, please provide complete details (use a separate sheet of paper, if necessary):

(b)    Is any person or entity proposed for this insurance aware of any fact, circumstance or situation involving the Applicant or any Insured Person or Organization which he, she or it has reason to believe might result in a claim being made?

_____Yes   _____ No

If yes, please provide complete details (use a separate sheet of paper, if necessary):
Without prejudice to any other rights of the Insurer, it is understood and agreed
that the Insurer will not be liable under any policy that may be issued on the basis
of this Application to make any payment of Loss, including Defense Costs, in
connection with any Claim arising out of, based upon or attributable to any claim,
fact, circumstance or situation disclosed or required to be disclosed in response to
questions 12(a) and 12(b).

Neither box was checked for Questions 12(a) and 12(b). A true and accurate copy of the February
8, 2005 application (without attachments) is attached as Exhibit F.

Mr. Silverman lacks sufficient knowledge or information to form a belief as to the truth or

falsity of the allegations contained in Paragraph 50. To the extent that Paragraph 50 purports to

describe the Application, that document speaks for itself.


¶51:    The Application was signed by Phillip Bennett on February 8, 2005. Under
Bennett's signature, the following words appear, "Note: This Application must be signed by the
President and/or CEO of the Applicant **acting as the authorized agent of the persons and
entity(ies) proposed for this insurance."** (emphasis added)

Mr. Silverman denies the allegations contained in Paragraph 51.


¶52:    The Axis Policy also contains a Knowledge Exclusion Endorsement at
Endorsement 6 which states:

In consideration of the premium charged, it is agreed that this Policy does not
respond to Claims based upon, arising out of, directly or indirectly resulting from,
in consequence of, or in any way involving any fact, circumstance, situation,
transaction, or event, which as of the inception date of the Policy Period, any
Insured had knowledge and had reason to suppose might give rise to a Claim that
would fall within the scope of the insurance afforded by this Policy.

Endorsement 6 is marked effective August 11, 2005 and is dated September 11, 2005.

Mr. Silverman denies the allegations contained in Paragraph 52.


¶53:    The Axis Policy provides, at Clause XI:

The Insurer shall not be liable for any amount in any Claim taking place during the
Policy Period and arising under any Insurance Product, which is based upon,
arising out of, directly or indirectly resulting from, in consequence of or in any way
involving:

A.      Any demand, suit or other proceeding pending, or order, decree of judgment
entered, against any Insured on or prior to the Pending or Prior Claim Date set forth in

Item 7 of the Declarations [June 4, 2004] or any wrongful act, fact, circumstance or situation underlying or alleged therein; or

B.       Any other wrongful act, fact, circumstance or situation whenever occurring, which together with a wrongful act, fact, circumstance or situation described in (a) above are causally or logically interrelated by a common nexus.

Mr. Silverman denies the allegations contained in Paragraph 53.


¶54:    On March 6, 2006, Axis disclaimed coverage for the Noticed Matters based on: (1) the Warranty; (2) the Manuscript Application Endorsement and question 12 of the Application; (3) the Knowledge Exclusion Endorsement; and (4) the claim made date. A true, accurate, and complete copy of the March 6, 2006 letter denying coverage is attached as Exhibit G.

Mr. Silverman admits that Axis denied coverage for the Noticed Matters, but denies that

the referenced bases are valid or applicable.  To the extent that Paragraph 54 purports to describe

the March 6, 2006 letter, that document speaks for itself.


¶55:    At various times after March 6, 2006, Insureds provided Axis with notices of the Related Matters and Axis responded that each was related to the Noticed Matters for which Axis denied coverage. Axis's response to each of the Related Matters was to incorporate the March 6, 2006 letter.

Mr. Silverman admits that he provided notice of the Related Matters to Axis, but lacks

sufficient knowledge or information to form a belief as to the truth or falsity of the allegations to

the extent they relate to other Insureds.  To the extent that Paragraph 55 purports to describe

Axis's responses each of the notices of Related Maters, those responses and the March 6, 2006

letter speak for themselves.


**THE REFCO SCANDAL**

¶56:    The Axis Policy incepted on August 11, 2005. On the same day, Refco conducted its initial public offering.

Mr. Silverman lacks sufficient information to form a belief as to the truth or falsity of the

allegations contained in Paragraph 56; Mr. Silverman respectfully refers the Court to public

filings for the date of the Refco initial public offering.

¶57:    Two months later, on October 10, 2005, Refco issued a press release. The press release announced that Refco had been carrying an undisclosed receivable of $430 million from an entity controlled by Bennett. Refco stated that "[b]ased on the results of the review to date, the Company believes that the receivable was the result of the assumption by an entity controlled by Mr. Bennett of certain historical obligations owed by unrelated third parties to the Company, which may have been uncollectible." Moreover, Refco stated that although the receivable "was reflected on the Company's prior period financials, as well as on the Company's May 31, 2005 balance sheet", the receivable "was not shown as a related party transaction in any such financials. For that reason, and after consultation by the Audit Committee with the Company's independent accountants, the Company determined, on October 9, 2005, that its financial statements, as of, and for the periods ended, February 28, 2002, February 28, 2003, February 28, 2004, February 28, 2005, and May 31, 2005, taken as a whole, for each of Refco Inc., Refco Group Ltd., LLC and Refco Finance, Inc. should no longer be relied upon."

Mr. Silverman lacks sufficient information to form a belief as to the truth or falsity of the

allegations contained in Paragraph 57.  To the extent that Paragraph 57 purports to describe the

October 10, 2005 Refco press release, that document speaks for itself.


¶58:    Many of these financial statements were part of the application Axis expressly relied upon when deciding whether or not to enter into the insurance contract.

Mr. Silverman lacks sufficient information to form a belief as to the truth or falsity of the

allegations contained in Paragraph 58.


¶59:    On October 11, 2005, Refco issued a second press release. The press release announced that Bennett had repaid the $430 million receivable in full. The press release also provided further information on the nature of the receivable: "Based on the results of the internal investigation to date, the Company believes that the receivable consisted in major part of uncollectible historical obligations owed by unrelated third parties to the Company, that arose as far back as at least 1998. These obligations were transferred periodically to the entity controlled by Mr. Bennett, and the Company's books and records then reflected a receivable from that entity, rather than a receivable from the originating accounts. The fact that the receivable was from a company controlled by Mr. Bennett was hidden at the end of quarterly and annual reporting periods by reason of transfers to a third party customer account that we currently believe is unaffiliated with Mr. Bennett or anyone else at the Company."

Mr. Silverman lacks sufficient information to form a belief as to the truth or falsity of the

allegations contained in Paragraph 59.  To the extent that Paragraph 59 purports to describe the

October 11, 2005 Refco press release, that document speaks for itself.

¶60:    On October 11, 2005, Refco filed the October 10, 2005 and October 11, 2005 press releases with the U.S. Securities and Exchange Commission (the "SEC").

Mr. Silverman lacks sufficient information to form a belief as to the truth or falsity of the

allegations contained in Paragraph 60.

¶61:    On October 17, 2005, Refco and certain of its unregulated subsidiaries filed for protection under Chapter 11 of the Bankruptcy Code.

Mr. Silverman respectfully refers the Court to public filings for the date of Refco's

Chapter 11 filing.  Mr. Silverman lacks sufficient information to form a belief as to the truth or

falsity of the allegations contained in Paragraph 61.

¶62:    On November 10, 2005, Bennett was indicted on charges of securities fraud, conspiracy to commit securities fraud, false filings to the SEC, and wire fraud. A true, accurate and complete copy of the publicly available indictment (the "Bennett Indictment") is attached as Exhibit H.

To the extent that Paragraph 62 purports to describe the Bennett Indictment, that

document speaks for itself.  Mr. Silverman lacks sufficient information to form a belief as to the

truth or falsity of the allegations contained in Paragraph 62.

¶63:    According to the Bennett Indictment, Bennett "sought to hide from, among others, Refco's auditors and investors, losses sustained by Refco through its own and its customers' trading in the financial markets. To that end, Bennett transferred losses from Refco to a company controlled by Bennett, directed a repeated series of transactions designed to conceal those losses at year- and quarter-end from Refco's auditors and others, and caused Refco to make false and fraudulent public filings with the [SEC]." Bennett Indictment, at ¶4.

Mr. Silverman denies the allegations contained in Paragraph 63 as to himself and lacks

sufficient information to form a belief as to the truth or falsity of those allegations as to the other

defendants.  To the extent that Paragraph 63 purports to describe the Bennett Indictment, that

document speaks for itself.

¶64:    The Bennett Indictment alleges that, as part of its brokerage business, Refco extended credit to customers for their securities and commodities trading. When certain

customers were unable to repay that credit, rather than noting the losses on Refco's balance sheet, Bennett directed the transfer of those losses to an entity called Refco Group Holdings, Inc. ("RGHI"), which he controlled. As a result, Refco's balance sheet showed a receivable from RGHI.

Mr. Silverman denies the allegations contained in Paragraph 64 as to himself and lacks

sufficient information to form a belief as to the truth or falsity of those allegations as to the other

defendants. To the extent that Paragraph 64 purports to describe the Bennett Indictment, that

document speaks for itself.

¶65:    According to the Bennett Indictment, beginning in or around 1999, Bennett took steps to hide the RGHI receivable from Refco's auditors. Specifically, Bennett arranged transactions with third parties to temporarily pay down the RGHI receivable at quarter- or year-end and mask the related-party nature of the RGHI debt.

Mr. Silverman denies the allegations contained in Paragraph 65 as to himself and lacks

sufficient information to form a belief as to the truth or falsity of those allegations as to the other

defendants. To the extent that Paragraph 65 purports to describe the Bennett Indictment, that

document speaks for itself.

¶66:    According to the Bennett Indictment, Bennett caused Refco to enter into certain transactions at the close of Refco's fiscal year ending February 2004 that had the effect of temporarily hiding RGHI's debt to Refco (the "February 2004 Transactions"). On or about February 20, 2004, Bennett allegedly caused Refco Capital Markets, Ltd. to loan approximately $720 million to a Refco customer. On the same day, the customer loaned $720 million to RGHI. RGHI then used the $720 million to pay down its debt to Refco. These loans were unwound on or about March 4, 2004, after Refco's fiscal year-end.

Mr. Silverman denies the allegations contained in Paragraph 66 as to himself and lacks

sufficient information to form a belief as to the truth or falsity of those allegations as to the other

defendants. To the extent that Paragraph 66 purports to describe the Bennett Indictment, that

document speaks for itself.

¶67:    According to the Bennett Indictment, Bennett executed the loan agreement between the Refco customer and RGHI. In addition, Bennett allegedly signed a letter of guaranty stating that Refco Group, ltd. would repay the customer $720 million if RGHI defaulted.

Mr. Silverman denies the allegations contained in Paragraph 67 as to himself and lacks

sufficient information to form a belief as to the truth or falsity of those allegations as to the other

defendants. To the extent that Paragraph 67 purports to describe the Bennett Indictment, that

document speaks for itself.

¶68:    According to the Bennett Indictment, Bennett caused Refco to enter into certain transactions at the close of Refco's fiscal year ending February 2005 that had the effect of temporarily hiding RGHI's debt to Refco (the "February 2005 Transactions)". On or about February 23, 2005, Bennett allegedly caused Refco Capital Markets, Ltd. to loan approximately $345 million to a Refco customer. On the same day, the customer loaned $345 million to RGHI. RGHI then used the $345 million to pay down its debt to Refco. These loans were unwound on or about March 8, 2005, after Refco's fiscal year-end.

Mr. Silverman denies the allegations contained in Paragraph 68 as to himself and lacks

sufficient information to form a belief as to the truth or falsity of those allegations as to the other

defendants. To the extent that Paragraph 68 purports to describe the Bennett Indictment, that

document speaks for itself.

¶69:    According to the Bennett Indictment, Bennett executed the loan agreement between the Refco customer and RGHI. In addition, Bennett allegedly signed a letter of guaranty stating that Refco Group, Ltd. would repay the customer $345 million if RGHI defaulted.

Mr. Silverman denies the allegations contained in Paragraph 69 as to himself and lacks

sufficient information to form a belief as to the truth or falsity of those allegations as to the other

defendants. To the extent that Paragraph 69 purports to describe the Bennett Indictment, that

document speaks for itself.

¶70:    According to the Bennett Indictment, Bennett caused Refco to enter into certain transactions at the close of Refco's fiscal first quarter end for 2005 that had the effect of temporarily hiding RGHI's debt to Refco (the "May 2005 Transactions"). On or about May 25, 2005, Bennett allegedly caused Refco Capital Markets, Ltd. to loan approximately $450 million

to a Refco customer. On the same day, the customer loaned $450 million to RGHI. RGHI then used the $450 million pay down its debt to Refco. These loans were unwound on or about June 6, 2005, after Refco's fiscal first quarter-end.

Mr. Silverman denies the allegations contained in Paragraph 70 as to himself and lacks

sufficient information to form a belief as to the truth or falsity of those allegations as to the other

defendants. To the extent that Paragraph 70 purports to describe the Bennett Indictment, that

document speaks for itself.

¶71: According to the Bennett Indictment, Bennett executed the loan agreement between the Refco customer and RGHI. In addition, Bennett allegedly signed a letter of guaranty stating that Refco Group, Ltd. would repay the customer $450 million if RGHI defaulted.

Mr. Silverman denies the allegations contained in Paragraph 71 as to himself and lacks

sufficient information to form a belief as to the truth or falsity of those allegations as to the other

defendants. To the extent that Paragraph 71 purports to describe the Bennett Indictment, that

document speaks for itself.

¶72: On October 24, 2006, Trosten was indicted on charges of conspiracy, securities fraud, and wire fraud. A true, accurate and complete copy of the publicly available indictment (the "Trosten Indictment") is attached as Exhibit I.

Mr. Silverman denies the allegations contained in Paragraph 72 as to himself and lacks

sufficient information to form a belief as to the truth or falsity of those allegations as to the other

defendants. To the extent that Paragraph 72 purports to describe the Trosten Indictment, that

document speaks for itself.

¶73: According to the Trosten Indictment, Trosten "lied to Refco's auditors about the existence and size of related party debts and transactions between RGHI and Refco."

Mr. Silverman denies the allegations contained in Paragraph 73 as to himself and lacks

sufficient information to form a belief as to the truth or falsity of those allegations as to the other

defendants. To the extent that Paragraph 73 purports to describe the Trosten Indictment, that

document speaks for itself.

¶74:    According to the Trosten Indictment, Trosten "concealed the size and related party nature of the debt owed by RGHI to Refco by causing Refco and others to carry out loan transactions over fiscal year-end and fiscal quarter-end dates to move the RGHI receivable to one or more Refco customers."

Mr. Silverman denies the allegations contained in Paragraph 74 as to himself and lacks

sufficient information to form a belief as to the truth or falsity of those allegations as to the other

defendants. To the extent that Paragraph 74 purports to describe the Trosten Indictment, that

document speaks for itself.

¶75:    According to the Trosten Indictment, on or about April 27, 2004, Trosten "signed a letter to Refco's auditors representing, among other things, that all related party transactions and related party amounts receivable had been fully disclosed to the auditors." Nevertheless, on or about August 5, 2004, Bennett transferred approximately $48 million from RGHI to Trosten.

Mr. Silverman denies the allegations contained in Paragraph 75 as to himself and lacks

sufficient information to form a belief as to the truth or falsity of those allegations as to the other

defendants. To the extent that Paragraph 75 purports to describe the Trosten Indictment, that

document speaks for itself.

¶76:    In addition to the foregoing, Bennett and Trosten were not the only people at Refco who knew of the ongoing fraud. On January 16, 2007, Grant was indicted on charges of conspiracy, securities fraud, wire fraud, bank fraud, and money laundering. A true, accurate, and complete copy of the publicly available indictment (the "Grant Indictment") is attached as Exhibit J.

Mr. Silverman denies the allegations contained in Paragraph 76 as to himself and lacks

sufficient information to form a belief as to the truth or falsity of those allegations as to the other

defendants. To the extent that Paragraph 76 purports to describe the Grant Indictment, that

document speaks for itself.

¶77:    On March 30, 2007, the government filed a memorandum of law detailing some of the evidence the government expected to introduce against Grant at trial. A true, accurate, and

complete copy of the government's memorandum of law (the "Grant Memo") is attached as Exhibit K.

Mr. Silverman denies the allegations contained in Paragraph 77 as to himself and lacks

sufficient information to form a belief as to the truth or falsity of those allegations as to the other

defendants. To the extent that Paragraph 77 purports to describe the Grant Memo, that document

speaks for itself.

¶78:    According to the Grant Memo, "by February 1999, prior to the close of Refco's fiscal year, Grant was fully briefed, in Refco's offices on the core issues of the fraud: the round-trip loan transactions set forth in the Indictment; that Refco had covered up several of the large losses set forth in the Indictment; and that Refco had been moving expenses (including a large portion of its computer expenses) off of Refco's books and on to the parent company's books."

Mr. Silverman denies the allegations contained in Paragraph 78 as to himself and lacks

sufficient information to form a belief as to the truth or falsity of those allegations as to the other

defendants. To the extent that Paragraph 78 purports to describe the Grant Memo, that document

speaks for itself.

¶79:    According to the Grant Memo, "[during the interval between 1999 and 2004, the evidence will show that Grant continued to discuss with Sandy Maggio, a Refco executive, the continuing financial problems at Refco, including continued rolling fails, where Refco, because it was using customer money to cover its financial losses, purposefully failed to cover its daily cash obligations to its creditors."

Mr. Silverman denies the allegations contained in Paragraph 79 as to himself and lacks

sufficient information to form a belief as to the truth or falsity of those allegations as to the other

defendants. To the extent that Paragraph 79 purports to describe the Grant Memo, that document

speaks for itself.

¶80:    According to the Grant Memo, "in May 2004, prior to the LBO, Bennett met with Grant for the purpose of fully discussing with him the structure of the LBO and how, through the LBO, Bennett and Grant were going to deal with the more than $1 billion debt that they (as owners of RGHI) owed to Refco."

Mr. Silverman denies the allegations contained in Paragraph 80 as to himself and lacks

sufficient information to form a belief as to the truth or falsity of those allegations as to the other

defendants. To the extent that Paragraph 80 purports to describe the Grant Memo, that document

speaks for itself.

¶81:    According to the Grant Memo, "Grant was a knowing and active participant from as early as 1997, had full knowledge of the means used to hide Refco's losses as of at least February 1999, and stood to reap a 50% share of the rewards of the fraud if it were successful. Between 1999 and 2004, while Grant had no day-to-day role in running Refco, he was intermittently briefed by Bennett and Santo Maggio, another Refco executive, on the status of Refco's ongoing economic troubles, including on the status of the massive debt from RGHI to Refco."

Mr. Silverman denies the allegations contained in Paragraph 81 as to himself and lacks

sufficient information to form a belief as to the truth or falsity of those allegations as to the other

defendants. To the extent that Paragraph 81 purports to describe the Grant Memo, that document

speaks for itself.

¶82:    The Grant Memo further notes that Grant "was not on the periphery of the fraud, he was a founding member and had full knowledge of its methods by 1999."

Mr. Silverman denies the allegations contained in Paragraph 82 as to himself and lacks

sufficient information to form a belief as to the truth or falsity of those allegations as to the other

defendants. To the extent that Paragraph 82 purports to describe the Grant Memo, that document

speaks for itself.

¶83:    According to the Grant Memo, the government expects Maggio to testify that "on several occasions prior to the May 2004 meeting between Grant and Bennett, Maggio expressed concern to Bennett about the increasingly dire financial circumstances at Refco. In response, Bennett told Maggio, in substance and in part, that he was keeping Grant abreast of ths [sic] situation at Refco (including that the company's situation was not as reflected on its books), and that Maggio was not alone in that he, Grant and Bennet [sic] were /in [sic] it together. 6 [sic] Bennett further stated, in substance, that if the fraud were to be discovered, Bennett told Grant that Bennett was not going to be alone (e.g., Grant would be responsible as well)."

Mr. Silverman denies the allegations contained in Paragraph 83 as to himself and lacks

sufficient information to form a belief as to the truth or falsity of those allegations as to the other

defendants. To the extent that Paragraph 83 purports to describe the Grant Memo, that document

speaks for itself.

¶84:    Based on his knowledge of the RGHI receivables to Refco, the February 2004 Transactions, the February 2005 Transactions, the May 2005 Transactions, the allegations in the Trosten Indictment and the allegations in the Grant Memo, as of August 11, 2005, Bennett possessed knowledge of facts, circumstances, situations, transactions, or events, which he had reason to suppose might give rise to a "claim" (as that term is defined in the Primary Policy) that would fall within the scope of the insurance afforded by the Axis Policy.

Mr. Silverman denies the allegations contained in Paragraph 84 as to himself and lacks

sufficient information to form a belief as to the truth or falsity of those allegations as to the other

defendants. Paragraph 84 contains legal conclusions that do not require a response; to the extent

a response is deemed necessary, Mr. Silverman lacks sufficient information to form a belief as to

the truth or falsity of the allegations contained in that Paragraph.

¶85:    Based on his knowledge of the RGHI receivables to Refco, the February 2004 Transactions, the allegations in the Trosten Indictment, and the allegations in the Grant Memo, as of January 14, 2005, Bennett possessed knowledge of facts, circumstances, situations, acts, errors or omissions which he had reason to suppose might afford grounds for a "claim" (as that term is defined in the Primary Policy) such as would fall within the scope of the Axis Policy.

Paragraph 85 contains legal conclusions that do not require a response; to the extent a

response is deemed necessary, Mr. Silverman lacks sufficient information to form a belief as to

the truth or falsity of the allegations contained in that Paragraph.

¶86:    Based on his knowledge of the RGHI receivables to Refco, the February 2004 Transactions, the February 2005 Transactions, the allegations in the Trosten Indictment, and the allegations in the Grant Memo, as of February 8, 2005, Bennett was aware of facts, circumstances or situations involving Refco which Bennett had reason to believe might result in a "claim" (as that term is defined in the Primary Policy) being made.

Paragraph 86 contains legal conclusions that do not require a response; to the extent a

response is deemed necessary, Mr. Silverman lacks sufficient information to form a belief as to

the truth or falsity of the allegations contained in that Paragraph.

## THE NOTICED MATTERS AND THE RELATED MATTERS

¶87:    Beginning on October 11, 2005, various lawsuits were filed against the Defendants.

Mr. Silverman admits the allegations contained in Paragraph 87.

¶88:    On October 13, 2005, Axis received notice of <u>Frontpoint Financial Services Fund, LP, On Behalf of Plaintiff and All Others Similarly Situated v. Refco, Inc., Phillip R. Bennett, Gerald M. Sherer, Leo R. Breitman, David V. Harkins, Scott L. Jaeckel, Thomas H. Lee, Ronald L. O'Kelley, Scott A. Schoen, Credit Suisse First Boston LLC, Goldman, Sachs & Co.</u>, No. 05-cv-08663-GEL, (S.D.N.Y. 10/11/05).

Mr. Silverman lacks sufficient information to form a belief as to the truth or falsity of the

allegations contained in Paragraph 88.

¶89:    On October 13, 2005, Axis received notice of <u>Jonathan Glaubach, Individually and on Behalf of all Others Similarly Situated v. Refco Inc., Phillip R. Bennett, Gerald Sherer, Leo R. Breitman, Nathan Gantcher, David V. Harkins, Scott L. Jaeckel, Thomas H. Lee, Ronald L. O'Kelley and Scott A. Schoen</u>, No. 05-cv-08692, (S.D.N.Y. 10/12/05).

Mr. Silverman lacks sufficient information to form a belief as to the truth or falsity of the

allegations contained in Paragraph 89.

¶90:    On October 13, 2005, Axis received notice of <u>Miriam Lieber, Individually And On Behalf of All Others Similarly Situated v. Refco, Inc., Phillip R. Bennett, Gerald M. Sherer, Credit Suisse First Boston LLC, Goldman, Sachs & Co., Banc of America Securities, LLC, Merrill Lynch, Pierce, Fenner & Smith Incorporated, Deutsche Bank Securities, Inc., J.P. Morgan Securities Inc., and Grant Thornton LLP</u>, No. 05-cv-08667-LAP, (S.D.N.Y. 10/12/05).

Mr. Silverman lacks sufficient information to form a belief as to the truth or falsity of the

allegations contained in Paragraph 90.

¶91:    On October 13, 2005, Axis received notice of <u>United States of America v. Phillip R. Bennett</u>, No. 05-MAG-1720, (S.D.N.Y. 10/12/05).

Mr. Silverman lacks sufficient information to form a belief as to the truth or falsity of the

allegations contained in Paragraph 91.

¶92:    On October 27, 2005, Axis received notice of <u>Todd Weiss, Individually and On Behalf of All Others Similarly Situated v. Phillip R. Bennett and Gerald M. Sherer</u>. No. 05-cv-08691-GEL, (S.D.N.Y. 10/12/05).

Mr. Silverman lacks sufficient information to form a belief as to the truth or falsity of the

allegations contained in Paragraph 92.

¶93:    On October 18, 2005, Axis received notice of <u>Varun Mehta, Derivatively on Behalf of Refco Inc. v. Phillip R. Bennett, William J. Sexton, Gerald M. Sherer, Joseph J. Murphy, Leo R. Breitman, Nathan Gantcher, David V. Harkins, Scott L. Jaeckel, Thomas H. Lee, Ronald L. O'Kelley, Scott A. Schoen, Credit Suisse First Boston, Goldman, Sachs & Co., Banc Of America Securities LLC, Deutsche Bank Securities, JP Morgan, Merrill Lynch & Co., Sandier O'Neill & Partners, L.P., HSBC And Thomas H. Lee Partners, L.P., and Refco, Inc.</u>, A Delaware corporation. No. 05-cv-08748, (S.D.N.Y. 10/14/05).

Mr. Silverman lacks sufficient information to form a belief as to the truth or falsity of the

allegations contained in Paragraph 93.

¶94:    On October 18, 2005, Axis received notice of <u>Anthony L. Wakefield, Individually and on Behalf of All Others Similarly Situated v. Refco, Inc., Phillip R. Bennett, Gerald J. Sherer, Leo R. Breitman, Nathan Gantcher, David V. Harkins, Scott L. Jaeckel, Thomas H. Lee, Ronald L. O'Kelley, Scott A. Schoen, Credit Suisse First Boston LLC, Goldman, Sachs & Co., Banc Of America Securities, LLC, Merrill Lynch, Pierce, Fenner & Smith Inc. Deutsche Bank Securities, Inc., J.P. Morgan Securities Inc., Sandier O'Neill & Partners. L.P.. HSBC Securities (USA) Inc.. William Blaire & Company. L.L.C.. Harris Nesbitt Corp.. CMG Institutional Trading, LLC, Samuel A. Ramirez & Company, Inc., Muriel Siebert & Co.. Inc.. The Williams Capital Group. L.P., and Utendahl Capital Partners. L.P.</u>  No. 05-cv-08742-GEL, (S.D.N.Y. 10/14/05).

Mr. Silverman lacks sufficient information to form a belief as to the truth or falsity of the

allegations contained in Paragraph 94.

¶95:    On October 28, 2005, Axis received notice of <u>Banesco Holding C.A., Banesco International Bank Corp.. Banesco International Bank Inc. and Banesco Banco Universal C.A. Panama Branch v. Refco, Inc. and Refco Capital Markets. Ltd.</u> No. 05603681 (Supreme Court of New York, 10/17/05).

Mr. Silverman lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in Paragraph 95.

¶96:    On October 28, 2005, Axis received notice of <u>Miura Financial Services v. Refco, Inc. and Refco Capital Markets, Ltd.</u>, No. 05603682 (Supreme Court of New York, 10/17/05).

Mr. Silverman lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in Paragraph 96.

¶97:    On October 28, 2005, Axis received notice of <u>Multiplicas Casa De Bolsa v. Refco, Inc. and Refco Capital Markets, Ltd.</u>, No. 05603683 (Supreme Court of New York, 10/17/05).

Mr. Silverman lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in Paragraph 97.

¶98:    On October 21, 2005, Axis received notice of <u>Jacob Baker, Individually and On Behalf of All Others Similarly Situated v. Phillip R. Bennett and Gerald M.</u> Sherer, No. 05-cv-08923, (S.D.N.Y. 10/19/05).

Mr. Silverman lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in Paragraph 98.

¶99:    On October 21, 2005, Axis received notice of <u>Craig Becker, On Behalf of Himself and All Others Similarly Situated v. Refco, Inc., Phillip R. Bennett, Gerald M. Sherer, Leo R. Breitman, David H. Harkins, Scott L. Jaeckel, Thomas H. Lee, Ronald L. O'Kelley, Scott A. Schoen, Grant Thornton, LLP, Credit Suisse First Boston LLC, Goldman, Sachs & Co., Banc of America Securities LLC, Liberty Corner Capital, Refco Group Holdings Inc.</u>, No. 05-cv-08929-GEL, (S.D.N.Y. 10/20/05).

Mr. Silverman lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in Paragraph 99.

¶100:    On October 21, 2005, Axis received notice of <u>Bruce Nathanson, Individually and On Behalf of All Others Similarly Situated v. Phillip R. Bennett, Gerald M. Sherer. Leo R. Breitman, Nathan Gantcher, David V. Harkins, Scott L. Jaeckel, Thomas H. Lee, Ronald L. O'Kelley, Scott A. Schoen, Grant Thornton LLP, Credit Suisse First Boston, Goldman, Sachs & Co., Banc of America Securities LLC, Merrill Lynch, Pierce, Fenner & Smith Incorporated.</u>

Deutsche Bank Securities, Inc., JP Morgan Securities Inc., Liberty Corner Capital, and Refco Group Holdings Inc., No. 05-cv-08926-GEL, (S.D.N.Y. 10/20/05).

Mr. Silverman lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in Paragraph 100

¶101:  On October 25, 2005, Axis received notice of American Financial International Group - Asia, LLC, individually and on behalf of all other similarly situated v. Refco, Inc., Refco F/X Associates, LLC, Phillip R. Bennett and Does 1 through 50, et al, No. 05-cv-08988-PKC, (S.D.N.Y. 10/21/05).

Mr. Silverman lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in Paragraph 101.

¶102:  On October 25, 2005, Axis received notice of Ravindra Mettupatti v. Phillip R. Bennett, Gerald M. Sherer, Leo R. Breitman, Nathan Gantcher, David Harkins, Scott L. Jaeckel, Thomas Lee, Ronald L. O'Kelley, Scott A. Schoen, Credit Suisse First Boston LLC, Goldman, Sachs & Co., Banc of America Securities LLC, Deutsche Bank Securities Inc., JP Morgan Securities Inc., Pierce, Fenner & Smith Inc., No. 05-cv-09048, (S.D.N.Y. 10/24/05).

Mr. Silverman lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in Paragraph 102.

¶103:  On October 27, 2005, Axis received notice of Todd Weiss, Individually and On Behalf of All Others Similarly Situated v. Phillip R. Bennett and Gerald M. Sherer. No. 05-cv-09126, (S.D.N.Y. 10/26/05).

Mr. Silverman lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in Paragraph 103.

¶104:  On November 21, 2005, Axis received notice of Bankruptcy Trust Of Gerard Sillam, Gerard Sillam v. Refco Group LLC, Refco Overseas Ltd., Phillip Bennett, Refco Group Holdings Inc. Liberty Corner Capital, New York Stock Exchange Inc, Grant Thornton LLP, Grant Thornton UK LLP, Thomas H Lee Partners LP, Thomas H Lee Partners Fund V, Thomas H Lee, Scott A Schoen, David V Harkins, Gerald M Sherer, Leo R Breitman, Scott Jaeckel, Nathan Gantcher, Ronald O Kelley, Halim Saad. Dennis A Klejna, Mark Slade, Julian Courtney, Richard Reinert, David Campbell, Credit Suisse First Boston LLC, Goldman Sachs & Co, Bank Of America Securities LLC, Merrill Lynch Pierce Fenner & Smith Inc, Deutsche Bank Securities Inc, JP Morgan Securities Inc, Sandier O Neil & Partners LP, HSBC Securities USA Inc, William Blair & Company LLC, Harris Nesbitt Corp, CMG Institutional Trading LLC, Samuel A Ramirez

& Company Inc., Muriel Siebert & Co Inc, The William Capital GLP, Utendahl Capital Partners, et al.. No. 05603931 (Supreme Court of New York 11/04/05).

Mr. Silverman lacks sufficient information to form a belief as to the truth or falsity of the

allegations contained in Paragraph 104.

¶105:  On November 21, 2005, Axis received notice of Scott K. Weit, Individually and On Behalf of All Others Similarly Situated v Phillip R. Bennett, Gerald M. Sherer, Leo R. Breitman, David V. Harkins, Scott L. Jaeckel, Thomas H. Lee, Ronald L. O'Kelley, Scott A. Schoen, Nathan Gantcher, Credit Suisse First Boston, Goldman, Sachs & Co., Grant Thornton LLP, Banc of America Securities LLC, Merrill Lynch Pierce, Fenner & Smith Inc., Deutsche Bank Securities, Inc., J.P. Morgan Securities, Inc., Sandier O'Neill & Partners, L.P., HSBC Securities (USA) Inc., William Blair & Company, L.L.C., Harris Nesbitt Corp., CMG Institutional Trading LLC, Samuel A. Ramirez & Company, Inc., Muriel Siebert & Co., Inc., The Williams Capital Group, L.P., Utendahl Capital Partners, L.P., Liberty Corner Capital, and Refco Group Holdings, Inc., No. 05-cv-09611-GEL, (S.D.N.Y. 11/11/05).

Mr. Silverman lacks sufficient information to form a belief as to the truth or falsity of the

allegations contained in Paragraph 105

¶106:  On November 30, 2005, Axis received notice of Bawag P.S.K. Bank Fur Arbeit Und Wirtschaft Und Osterreichische Postsparkasse Aktiengesellschaft v. Refco, Inc.; Refco Group Holdings, Inc.; The Phillip R. Bennett Three Year Annuity Trust; Refco Capital Markets, Ltd.; Refco Group Ltd., LLC; Bersec International LLC; Kroeck & Associates, LLC; Marshall Metals LLC; New Refco Group Ltd., LLC; Refco Administration LLC; Refco Capital LLC; Refco Capital Holdings LLC; Refco Capital Management LLC; Refco Capital Trading LLC; Refco Finance Inc.; Refco Financial LLC; Refco Fixed Assets Management LLC; Refco F/X Associates LLC; Refco Global Capital Management LLC; Refco Global Finance Ltd.; Refco Global Futures LLC; Refco Global Holdings LLC; Refco Information Services LLC; Refco Mortgage Securities, LLC; Refco Regulated Companies, LLC; Summitt Management, LLC; Refco Securities LLC; Refco Clearing LLC; Phillip R. Bennett; John Does 1-10; And XYZ Corporations 1-10, The Last Two Names Being Fictitious, Inc., et al,, No. 05-03161-rdd (Bankr. S.D.N.Y., 11/16/05).

Mr. Silverman lacks sufficient information to form a belief as to the truth or falsity of the

allegations contained in Paragraph 106

¶107:  On November 30, 2005, Axis received notice of Markwood Investments v. Refco Capital Markets, Ltd. and Refco Securities LLC, No. 05-03166-rdd (Bankr. S.D.N.Y., 11/17/05).

Mr. Silverman lacks sufficient information to form a belief as to the truth or falsity of the

allegations contained in Paragraph 107.

¶108:  On November 30, 2005, Axis received notice of <u>Banco De America Central. S.A. v. Refco Capital Markets, Ltd.,</u> No. 05-03171-rdd (Bankr. S.D.N.Y., 11/18/05).

Mr. Silverman lacks sufficient information to form a belief as to the truth or falsity of the

allegations contained in Paragraph 108

¶109:  On November 30, 2005, Axis received notice of <u>BAC International Banks, Inc. v. Refco Capital Markets, Ltd.,</u> No. 05-03170-rdd(Bankr. S.D.N.Y., 11/18/05).

Mr. Silverman lacks sufficient information to form a belief as to the truth or falsity of the

allegations contained in Paragraph 109

¶110:  On November 30, 2005, Axis received notice of <u>Reserve Invest (Cyprus) Ltd. v. Refco Capital Markets, Ltd., Michael W. Morrison, and Richard Heis, Michael W. Morrison, and Richard Heis,</u> No. 05-03168-rdd (Bankr. S.D.N.Y., 11/18/05).

Mr. Silverman lacks sufficient information to form a belief as to the truth or falsity of the

allegations contained in Paragraph 110

¶111:  On November 30, 2005, Axis received notice of <u>City of Pontiac General Employees' Retirement System, On Behalf of Itself and All Others Similarly Situated v. Phillip R. Bennett, Thomas H. Lee Partners, L.P., Thomas H. Lee, Gerald M. Sherer, Scott A. Schoen, Bank of America Corp., Banc of America Securities LLC, Deutsche Bank AG, Deutsche Banc Securities, Inc., Credit Suisse Group, Credit Suisse First Boston LLC, Goldman Sachs Group, Inc., Goldman Sachs & Co., J.P. Morgan Securities, Inc., J.P. Morgan Chase & Co., Merrill Lynch, Pierce, Fenner & Smith, Inc., Merrill Lynch & Co.. Inc. Sandier O'Neill & Partners, L.P., HSBC Securities (USA) Inc., HSBC Holdings pic and Grant Thornton LLP,</u> No. 05-cv-09941, (S.D.N.Y. 11/23/05).

Mr. Silverman lacks sufficient information to form a belief as to the truth or falsity of the

allegations contained in Paragraph 111.

¶112:  Axis responded to each of the notices received in Paragraphs 88 through 111 (the "Noticed Matters") by letter from Axis's counsel on March 6, 2006. A true, accurate and complete copy of this letter was previously attached as Exhibit G.

Mr. Silverman lacks sufficient information to form a belief as to the truth or falsity of the

allegations contained in Paragraph 112.

¶113:  The March 6, 2006 letter noted that the Noticed Matters were interrelated, as that term is defined in Condition (C) of the Primary Policy, because all of the Noticed Matters arise out of the financial fraud allegedly orchestrated by Mr. Bennett, and others whereby unreported loans were made between various entities in an effort to disguise financial losses. Accordingly, the Noticed Matters constitute a single "claim," as that term is defined in the Primary Policy.

To the extent that Paragraph 113 purports to describe the March 6, 2006 letter from

Axis's counsel, that document speaks for itself.  The final sentence of the Paragraph contains

legal conclusions that do not require a response; to the extent a response is deemed necessary,

Mr. Silverman denies the allegations in that sentence.

¶114:  The March 6, 2006 letter denied coverage for the Noticed Matters based on the January 14, 2005 Warranty.

Mr. Silverman admits that Axis denied coverage for the Noticed Matters in a March 6,

2006 letter, but denies that the Warranty was a valid basis for that denial. To the extent that

Paragraph 112 purports to describe the March 6, 2006 letter from Axis's counsel and the

Warranty, those documents speak for themselves.

¶115:  The March 6, 2006 letter denied coverage for the Noticed Matters based on the Manuscript Application Endorsement and question 12 of the Application.

Mr. Silverman admits that Axis denied coverage for the Noticed Matters in a March 6,

2006 letter, but denies that the Manuscript Application Endorsement and question 12 of the

Application were valid bases for that denial.  To the extent that Paragraph 115 purports to

describe the March 6, 2006 letter from Axis's counsel and the Manuscript Application

Endorsement, those documents speak for themselves.

¶116:  The March 6, 2006 letter denied coverage for the Noticed Matters based on the Knowledge Exclusion Endorsement in the Axis Policy.

Mr. Silverman admits that Axis denied coverage for the Noticed Matters in a March 6,

2006 letter, but denies that the Knowledge Exclusion Endorsement was a valid basis for that

denial.  To the extent that Paragraph 116 purports to describe the March 6, 2006 letter from

Axis's counsel and the Knowledge Exclusion Endorsement, those documents speak for

themselves.

¶117:  The March 6, 2006 letter denied coverage for the Noticed Matters based on the
claim made date.

Mr. Silverman admits that Axis denied coverage for the Noticed Matters in a March 6,

2006 letter but denies that the claims made date was a valid basis for denial.  To the extent that

Paragraph 117 purports to describe the March 6, 2006 letter from Axis's counsel, that document

speaks for itself.

¶118:  The March 6, 2006 letter reserved the right to rescind the Axis Policy and an
earlier D&O policy issued by Axis to Refco.

Mr. Silverman admits that Axis purported to reserve the right to rescind the Axis Policy

and an earlier D&O policy in a March 6, 2006 letter, but denies that that reservation was valid or

proper.  To the extent that Paragraph 118 purports to describe the March 6, 2006 letter from

Axis's counsel, that document speaks for itself.

¶119:  The March 6, 2006 letter reserved the right to deny coverage based on various
other terms and conditions of the Axis Policy.

Mr. Silverman admits that Axis purported to reserve the right to deny coverage in a

March 6, 2006 letter, but denies that that reservation was valid or proper.  To the extent that

Paragraph 119 purports to describe the March 6, 2006 letter from Axis's counsel, that document

speaks for itself.

¶120:  After denying coverage for the Noticed Matters on March 6, 2006, Axis continued
to receive notice of additional matters related to the Noticed Matters.

Mr. Silverman lacks sufficient information to form a belief as to the truth or falsity of the

allegations contained in Paragraph 120.

¶121: On March 14, 2006, Axis received notice of <u>Klaus Gensheimer, Individually and On Behalf of All Others Similarly Situated v. Phillip R. Bennett, Gerald M. Sherer, Leo R Breitman, David V. Harkins, Scott L. Jaeckel, Thomas H. Lee, Thomas H. Lee Partners, L.P., Ronald L. O'Kelley, Scott A. Schoen, Nathan Gantcher, Joseph J. Murphy, William M. Sexton, Santo C. Maggio, Dennis Klejna, Perry Rotkowitz, Credit Suisse First Boston LLC, Credit Suisse First Boston, Goldman Sachs & Co., Goldman Sachs Group Inc., Grant Thornton LLP, Banc of America Securities LLC, Bank of America Corp., Merrill Lynch, Pierce, Fenner & Smith, Inc., Merrill Lynch & Co., Inc., Deutsche Bank Securities Inc., Deutsche Bank AG, J.P. Morgan Securities Inc., J.P. Morgan Chase & Co., Sandier O'Neill & Partners, L.P., HSBC Securities (USA) Inc., HSBC Holdings pic, William Blair & Company LLC, Harris Nesbitt Corp., CMG Institutional Trading LLC, Samuel A. Ramirez & Company, Inc., Muriel Siebert & Co. Inc., The Williams Capital Group, L.P., Utendahl Capital Partners, L.P., Liberty Corner Capital Strategies LLC, and Refco Group Holdings, Inc.,</u> No. 05-cv-10318 (S.D.N.Y. 12/8/05). On March 27, 2006, Axis denied coverage for this matter noting that it was interrelated, as that term is defined in Condition (C) of the Primary Policy, with the Noticed Matters. Axis incorporated by reference the March 6, 2006 letter denying coverage for the Noticed Matters.

Mr. Silverman lacks sufficient information to form a belief as to the truth or falsity of the

allegations contained in Paragraph 121.

¶122: 122. On March 14, 2006, Axis received notice of <u>Teachers' Retirement System of the State of Illinois, Bumper Fund L.P., Irwin Geduld IRA, as Trustee and as Partner of Geduld Capital Management, Brookstreet Securities Corp., and City of Pontiac General Employees' Retirement System, On Behalf of Themselves and All Others Similarly Situated v. Thomas H. Lee, Scott A. Schoen, David V. Harkins, Ronald L. O'Kelley, Scott L. Jaeckel, Thomas H. Lee Partners, L.P., Phillip R. Bennett, Refco Group Holdings, Inc., Gerald M. Sherer, Dennis A. Klejna, Robert Trosten, Nathan Gantcher, Leo R. Breitman, William M. Sexton, Santo Maggio, Liberty Corner Advisors, Liberty Corner Capital, Liberty Corner Capital Strategies, Terry Pigott, Grant Thornton LLP, Mark A. Ramler, Banc of America Securities LLC, Bank of America Corp., Deutsche Bank Securities Inc., Deutsche Bank AG, Credit Suisse First Boston LLC, Goldman Sachs Group, Inc., Goldman Sachs & Co., J.P. Morgan Securities, Inc., J.P. Morgan Chase & Co., Merrill Lynch, Pierce, Fenner & Smith, Inc., Merrill Lynch & Co., Inc., Sandier O'Neill & Partners, L.P., HSBC Securities (USA) Inc., HSBC Holdings pic, Joseph P. Collins, and Mayer Brown, Rowe & Maw, LLP.,</u> No. 05-cv-10403 (S.D.N.Y. 12/12/05). On March 27, 2006, Axis denied coverage for this matter noting that it was interrelated, as that term is defined in Condition (C) of the Primary Policy, with the Noticed Matters. Axis incorporated by reference the March 6, 2006 letter denying coverage for the Noticed Matters.

Mr. Silverman lacks sufficient information to form a belief as to the truth or falsity of the

allegations contained in Paragraph 122.

¶123: On May 10, 2006, Axis received notice of <u>Global Management Worldwide</u> <u>Limited, Individually and on Behalf of All Others Similarly Situated v. Phillip R. Bennett, Gerald</u> <u>M. Sherer, Leo R Breitman, David V. Harkins, Scott L. Jaeckel, Thomas H. Lee, Thomas H. Lee</u> <u>Partners, L.P., Ronald L. O'Kelley, Scott A. Schoen, Nathan Gantcher, Joseph J. Murphy,</u> <u>William M. Sexton, Santo C. Maggio, Dennis Klejna, Perry Rotkowitz, Thomas H. Lee Partners,</u> <u>L.P., Thomas H. Lee Equity Fund V, L.P., Thomas H. Lee Parallel Fund V, L.P., Thomas H. Lee</u> <u>Equity (Cayman) Fund V, L.P., Credit Suisse Group, Credit Suisse First Boston, Goldman Sachs</u> <u>& Co., Goldman Sachs Group Inc., Banc of America Securities LLC, Bank of America Corp.,</u> <u>Merrill Lynch, Pierce, Fenner & Smith, Inc., Merrill Lynch & Co., Inc., Grant Thornton LLP, J.P.</u> <u>Morgan Securities Inc., J.P. Morgan Chase & Co., Sandier O'Neill & Partners, L.P., HSBC</u> <u>Securities (USA) Inc., HSBC Holdings pic, William Blair & Company LLC, Harris Nesbitt Corp.,</u> <u>CMG Institutional Trading LLC, Samuel A. Ramirez & Company, Inc., The Williams Capital</u> <u>Group, L.P., Utendahl Capital Partners, L.P., and Refco Securities LLC</u>, No. 06-cv-00643, (S.D.N.Y. 1/26/06). On July 10, 2006, Axis denied coverage for this matter noting that it was interrelated, as that term is defined in Condition (C) of the Primary Policy, with the Noticed Matters. Axis incorporated by reference the March 6,2006 letter denying coverage for the Noticed Matters.

Mr. Silverman lacks sufficient information to form a belief as to the truth or falsity of the

allegations contained in Paragraph 123.

¶124: On May 10, 2006, Axis received notice of <u>In re Refco Inc., et al. - Leo A. Breitman</u> <u>Subpoena</u>, No. 05-60006 (Bankr. S.D.N.Y. 12/5/05). On May 16, 2006, Axis denied coverage for this matter noting that it was interrelated, as that term is defined in Condition (C) of the Primary Policy, with the Noticed Matters. Axis incorporated by reference the March 6, 2006 letter denying coverage for the Noticed Matters.

Mr. Silverman lacks sufficient information to form a belief as to the truth or falsity of the

allegations contained in Paragraph 124.

¶125: On May 10, 2006, Axis received notice of <u>In re Refco Inc., et. al. - David V.</u> <u>Harkins Subpoena</u>, No. 05-60006 (Bankr. S.D.N.Y. 12/5/05). On May 16, 2006, Axis denied coverage for this matter noting that it was interrelated, as that term is defined in Condition (C) of the Primary Policy, with the Noticed Matters. Axis incorporated by reference the March 6, 2006 letter denying coverage for the Noticed Matters.

Mr. Silverman lacks sufficient information to form a belief as to the truth or falsity of the

allegations contained in Paragraph 125.

¶126:  On May 10, 2006, Axis received notice of <u>In re Refco Inc., et al. - Ronald O'Kelley Subpoena</u>, No. 05-60006 (Bankr. S.D.N.Y. 12/5/05). On May 16, 2006, Axis denied coverage for this matter noting that it was interrelated, as that term is defined in Condition (C) of the Primary Policy, with the Noticed Matters. Axis incorporated by reference the March 6, 2006 letter denying coverage for the Noticed Matters.

Mr. Silverman lacks sufficient information to form a belief as to the truth or falsity of the

allegations contained in Paragraph 126

¶127:  On May 10, 2006, Axis received notice of <u>In re Refco Inc., et. al. - Nathan Gatcher Subpoena</u>, No. 05-60006 (Bankr. S.D.N.Y. 12/5/05). On May 16, 2006, Axis denied coverage for this matter noting that it was interrelated, as that term is defined in Condition (C) of the Primary Policy, with the Noticed Matters. Axis incorporated by reference the March 6, 2006 letter denying coverage for the Noticed Matters

Mr. Silverman lacks sufficient information to form a belief as to the truth or falsity of the

allegations contained in Paragraph 127.

¶128:  On May 10, 2006, Axis received notice of <u>In re Refco Inc., et. al. - Scott L. Jaeckel Subpoena</u>, No. 05-60006 (Bankr. S.D.N.Y. 12/5/05). On May 16, 2006, Axis denied coverage for this matter noting that it was interrelated, as that term is defined in Condition (C) of the Primary Policy, with the Noticed Matters.   Axis incorporated by reference the March 6, 2006 letter denying coverage for the Noticed Matters.

Mr. Silverman lacks sufficient information to form a belief as to the truth or falsity of the

allegations contained in Paragraph 128.

¶129:  On May 10, 2006, Axis received notice of <u>In re Refco Inc., et. al. - Scott A. Schoen Subpoena</u>. No. 05-60006 (Bankr. S.D.N.Y. 12/5/05). On May 16, 2006, Axis denied coverage for this matter noting that it was interrelated, as that term is defined in Condition (C) of the Primary Policy, with the Noticed Matters. Axis incorporated by reference the March 6, 2006 letter denying coverage for the Noticed Matters.

Mr. Silverman lacks sufficient information to form a belief as to the truth or falsity of the

allegations contained in Paragraph 129.

¶130:  On May 10, 2006, Axis received notice of <u>In re Refco Inc., et. al. -Thomas H. Lee Partners. L.P. Subpoena</u>. No. 05-60006 (Bankr. S.D.N.Y. 12/5/05). On May 16, 2006, Axis denied coverage for this matter noting that it was interrelated, as that term is defined in Condition

(C) of the Primary Policy, with the Noticed Matters. Axis incorporated by reference the March 6, 2006 letter denying coverage for the Noticed Matters.

Mr. Silverman lacks sufficient information to form a belief as to the truth or falsity of the

allegations contained in Paragraph 130.

¶131:  On May 10, 2006, Axis received notice of In the Matter of Refco Inc. -Subpoena of Thomas H. Lee Partners, L.P. for Production of Documents Pursuant to Rule 8, No. 05-60006 (Bankr. S.D.N.Y. 12/5/05). On May 16, 2006, Axis denied coverage for this matter noting that it was interrelated, as that term is defined in Condition (C) of the Primary Policy, with the Noticed Matters. Axis incorporated by reference the March 6,2006 letter denying coverage for the Noticed Matters.

Mr. Silverman lacks sufficient information to form a belief as to the truth or falsity of the

allegations contained in Paragraph 131.

¶132:  On May 10, 2006, Axis received notice of Global Management Worldwide Limited v. Refco Capital Markets, Ltd., No. 05-03144 (Bankr. S.D.N.Y 11/11/05). On May 15, 2006, Axis denied coverage for this matter noting that it was interrelated, as that term is defined in Condition (C) of the Primary Policy, with the Noticed Matters. Axis incorporated by reference the March 6, 2006 letter denying coverage for the Noticed Matters.

Mr. Silverman lacks sufficient information to form a belief as to the truth or falsity of the

allegations contained in Paragraph 132.

¶133:  On June 16, 2006, Axis received notice of the amended complaint in In re Refco, Inc. Securities Litigation, No. 05-cv-8626 (S.D.N.Y. 5/5/06). On June 5, 2006, Axis denied coverage for this matter noting that it was interrelated, as that term is defined in Condition (C) of the Primary Policy, with the Noticed Matters. Axis incorporated by reference the March 6, 2006 letter denying coverage for the Noticed Matters.

Mr. Silverman admits that Axis denied coverage for the In re Refco, Inc. Securities

Litigation. To the extent that Paragraph 133 purports to describe the June 5, 2006 letter from

Axis's counsel, that document speaks for itself.

¶134:  On June 26, 2006, Axis received notice of Gary L. Franzen v. IDS Futures Corporation, Refco Commodity Management, Inc., No. 06-cv-03012 (N.D. Ill. 6/1/06). On July 10, 2006, Axis denied coverage for this matter noting that it was interrelated, as that term is

defined in Condition (C) of the Primary Policy, with the Noticed Matters. Axis incorporated by reference the March 6, 2006 letter denying coverage for the Noticed Matters.

Mr. Silverman lacks sufficient information to form a belief as to the truth or falsity of the

allegations contained in Paragraph 134.

¶135:  On March 9, 2006, Axis received notice of Arch Insurance Company v. Phillip R. Bennett, Leo R. Breitman, Nathan Gantcher, Tone Grant, David V. Harkins, Scott L. Jaeckel, Dennis A. Klejna, Thomas H. Lee, Santo C. Maggio, Joseph Murphy, Ronald L. O'Kelley, Perry Rotkowitz, Scott A. Schoen, William M. Sexton, Gerald Sherer, Philip Silverman and Robert C. Trosten. No. 600805/06 (N.Y. Supp. 3/9/06). On October 12, 2006, Axis denied coverage for this matter noting that it was interrelated, as that term is defined in Condition (C) of the Primary Policy, with the Noticed Matters. Axis incorporated by reference the March 6, 2006 letter denying coverage for the Noticed Matters.

Mr. Silverman lacks sufficient information to form a belief as to the truth or falsity of the

allegations contained in Paragraph 135.

¶136:  On November 3, 2006, Axis received notice of an SEC inquiry into Refco, Inc. On January 8, 2007, Axis denied coverage for this matter noting that it was interrelated, as that term is defined in Condition (C) of the Primary Policy, with the Noticed Matters. Axis incorporated by reference the March 6, 2006 letter denying coverage for the Noticed Matters.

Mr. Silverman lacks sufficient information to form a belief as to the truth or falsity of the

allegations contained in Paragraph 136.

¶137:  On November 3, 2006, Axis received notice of In re Refco Capital Markets, Ltd. Brokerage Customer Securities Litigation, No. 06-cv-0643 (S.D.N.Y. 1/26/06). On January 8, 2007, Axis denied coverage for this matter noting that it was interrelated, as that term is defined in Condition (C) of the Primary Policy, with the Noticed Matters. Axis incorporated by reference the March 6, 2006 letter denying coverage for the Noticed Matters.

Mr. Silverman admits that Axis denied coverage for the In re Refco Capital Markets, Ltd.

Brokerage Customer Securities Litigation. To the extent that Paragraph 133 purports to describe

the January 8, 2007 letter from Axis's counsel, that document speaks for itself.

¶138:  On November 3, 2006, Axis received notice of Thomas H. Lee Equity Fund V, LP et ah No. 05-cv-09608 (S.D.N.Y. 11/14/05). On January 8, 2007, Axis denied coverage for this matter noting that it was interrelated, as that term is defined in Condition (C) of the Primary

Policy, with the Noticed Matters. Axis incorporated by reference the March 6, 2006 letter denying coverage for the Noticed Matters.

Mr. Silverman lacks sufficient information to form a belief as to the truth or falsity of the

allegations contained in Paragraph 138.

¶139:  On January 27, 2007, Axis received notice of United States of America v. Phillip R. Bennett, Robert C. Trosten and Tone N. Grant, No. S3 05-cr-1192 (S.D.N.Y. 1/16/07). On February 20, 2007, Axis denied coverage for this matter noting that it was interrelated, as that term is defined in Condition (C) of the Primary Policy, with the Noticed Matters.  Axis incorporated by reference the March 6, 2006 letter denying coverage for the Noticed Matters.

Mr. Silverman lacks sufficient information to form a belief as to the truth or falsity of the

allegations contained in Paragraph 139.

¶140:  Each of the matters identified in Paragraph s 121 through 139 (the "Related Matters") is interrelated, as that term is defined in the Primary Policy, with each of the other Related Matters and with the Noticed Matters. Axis has denied coverage for each of the Related Matters based on the same reasons enumerated in the March 6, 2006 letter.

Paragraph 140 contains legal conclusions that do not require a response; to the extent a

response is deemed necessary, Mr. Silverman denies the allegations in that Paragraph , except

that Mr. Silverman lacks sufficient information to form a belief as to the truth or falsity of the last

sentence of that Paragraph.

## PRIOR LITIGATION

¶141:  Refco was previously involved in litigation involving the same scheme of improperly shifting client funds between related party accounts - the same type of transactions that Refco allegedly used to hide the fraud alleged in the Noticed Matters and the Related Matters.

Mr. Silverman denies the allegations in Paragraph 141.

¶142:  Refco was involved in a CFTC enforcement action which alleged that Refco used funds in client accounts to pay off its own debts (the "1994 CFTC Action"). In 1994, the CFTC fined Refco $1.2 million and Refco promised to stop unlawfully commingling funds. As discussed in an October 13, 2005 article available from Bloomberg Newswires, according to the

CFTC at the time, Refco improperly availed itself of as much as $123 million in client funds on an "almost daily basis" in order to pay off debts owed by Refco Capital.

Mr. Silverman lacks sufficient information to form a belief as to the truth or falsity of the

Paragraph 142.

## COUNT I

## DECLARATORY JUDGMENT THAT THE AXIS WARRANTY BARS COVERAGE FOR THE NOTICED MATTERS AND THE RELATED MATTERS

¶143:  Axis incorporates by reference each of the allegations contained in Paragraph s 1 thorough 142 above.

Paragraph 143 contains no factual allegations to which a response is required.

¶144:  As alleged herein, as of January 14, 2005, Bennett possessed knowledge of facts, circumstances, situations, acts, errors or omissions which he had reason to suppose might afford grounds for a "claim" (as that term is defined in the Primary Policy) such as would fall within the scope of the Axis Policy.

Paragraph 144 contains legal conclusions that do not require a response; to the extent a

response is deemed necessary, Mr. Silverman lacks sufficient information to form a belief as to

the truth or falsity of the Paragraph 144.

¶145:  The Noticed Matters and the Related Matters constitute a "claim" (as that term is defined in the Primary Policy) arise therefrom.

Paragraph 145 contains legal conclusions that do not require a response; to the extent a

response is deemed necessary, Mr. Silverman denies the allegations in that Paragraph.

¶146: The Warranty provides that "It is agreed by the undersigned **on behalf of all Insureds under the Policy,** that with respect to the above statements, that if such knowledge exists, **any claim arising therefrom is excluded** from the proposed insurance." (emphasis added). Accordingly, Bennett's knowledge excludes coverage for all Insureds.

To the extent that Paragraph 146 purports to describe the Warranty, that document speaks

for itself. The last sentence of the Paragraph contains legal conclusions that do not require a

response; to the extent a response is deemed necessary, Mr. Silverman denies the allegations in

that sentence.

¶147:   Axis seeks a declaration that as a result of the Axis Warranty, the Axis Policy does not provide coverage for any loss arising out of the Noticed Matters or the Related Matters.

Paragraph 147 contains no factual allegations to which a response is required.  Mr. Silverman admits that the allegations purport to describe this action.

## COUNT II

### DECLARATORY JUDGMENT THAT THE AXIS MANUSCRIPT APPLICATION ENDORSEMENT AND QUESTION 12 OF THE APPLICATION BARS COVERAGE FOR THE NOTICED MATTERS AND THE RELATED MATTERS

¶148:   Axis incorporates by reference each of the allegations contained in Paragraph s 1 thorough 147 above.

Paragraph 148 contains no factual allegations to which a response is required.

¶149:  As alleged herein, as of February 8, 2005, Bennett was aware of facts, circumstances or situations involving Refco which Bennett had reason to believe might result in a "claim" (as that term is defined in the Primary Policy) being made.

Mr. Silverman lacks sufficient information to form a belief as to the truth or falsity of the

Paragraph 149.

¶150:   The Noticed Matters and the Related Matters constitute a "claim" (as that term is defined in the Primary Policy) arising out of, based upon or attributable to such facts, circumstances or situations.

Paragraph 150 contains legal conclusions that do not require a response; to the extent a

response is deemed necessary, Mr. Silverman denies the allegations in that Paragraph.

¶151:   The Application notes that it "must be signed by the President and/or CEO of the Applicant **acting as authorized agent** of the persons and entity(ies) proposed for this insurance." (emphasis added).  Accordingly, Bennett's knowledge, and failure to make the necessary disclosures pursuant to Question 12 of the Application, exclude coverage for all Insureds.

To the extent that Paragraph 151 purports to describe the Application, that document

speaks for itself. The last sentence of the Paragraph contains legal conclusions that do not require

a response; to the extent a response is deemed necessary, Mr. Silverman denies the allegations in

that sentence.

¶152: Axis seeks a declaration that as a result of Axis Manuscript Application Endorsement and question 12 of the Application, the Axis Policy does not provide coverage for any loss arising out of the Noticed Matters or the Related Matters.

Paragraph 152 contains no factual allegations to which a response is required. Mr.

Silverman admits that the allegations purport to describe this action.

## COUNT III

### DECLARATORY JUDGMENT THAT THE AXIS KNOWLEDGE EXCLUSION ENDORSEMENT BARS COVERAGE FOR THE NOTICED MATTERS AND THE RELATED MATTERS

¶153: Axis incorporates by reference each of the allegations contained in Paragraph s 1 thorough 152 above.

Paragraph 153 contains no factual allegations to which a response is required.

¶154: As alleged herein, as of August 11, 2005, Bennett possessed knowledge of facts, circumstances, situations, transactions, or events, which he had reason to suppose might give rise to a "claim" (as that term is defined in the Primary Policy) that would fall within the scope of the insurance afforded by the Axis Policy.

Mr. Silverman lacks sufficient information to form a belief as to the truth or falsity of the

Paragraph 154.

¶155: The Noticed Matters and the Related Matters consist of "claims" (as that term is defined in the Primary Policy) based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving such facts, circumstances, situations, transactions or events.

Paragraph 155 contains legal conclusions that do not require a response; to the extent a

response is deemed necessary, Mr. Silverman denies the allegations in that Paragraph.

¶156:  The Knowledge Exclusion excludes coverage for "claims" (as that term is defined in the Primary Policy) based upon, etc. "which as of the inception date of the Policy Period, **any Insured** had knowledge and had reason to suppose might give rise to a Claim that would fall within the scope of the insurance afforded by this Policy." (emphasis added). Accordingly, Bennett's knowledge, or the knowledge of *any* insured, excludes coverage for all insureds.

To the extent that Paragraph 156 purports to describe the Knowledge Exclusion, that

document speaks for itself.  The last sentence of the Paragraph contains legal conclusions that do

not require a response; to the extent a response is deemed necessary, Mr. Silverman denies the

allegations in that sentence.

¶157:  Axis seeks a declaration that as a result of the Axis Knowledge Exclusion Endorsement, the Axis Policy does not provide coverage for any loss arising out of the Noticed Matters or the Related Matters.

Paragraph 157 contains no factual allegations to which a response is required.  Mr.

Silverman admits that the allegations purport to describe this action.

## COUNT IV

### DECLARATORY JUDGMENT THAT CLAUSE XI OF
### THE AXIS POLICY BARS COVERAGE FOR
### THE NOTICED MATTERS AND THE RELATED MATTERS

¶158:  Axis incorporates by reference each of the allegations contained in Paragraph s 1 thorough 157 above.

Paragraph 158 contains no factual allegations to which a response is required.

¶159:  As alleged herein, Clause XI of the Axis Policy excludes coverage for any "claim" (as that term is defined in the Primary Policy) based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving, any demand, suit or other proceeding, on or prior to June 4, 2004, or any other wrongful act, fact, circumstance or situation whenever occurring, which together with a wrongful act, fact, circumstance or situation occurring on or prior to June 4, 2004, are causally or logically interrelated by a common nexus.

Mr. Silverman denies the allegations contained in Paragraph 159.  To the extent that

Paragraph 159 purports to describe the Axis Policy, that document speaks for itself.

¶160:  The Noticed Matters and the Related Matters allege many of the same wrongful acts previously alleged in the 2004 CFTC Action.

Paragraph 160 contains legal conclusions that do not require a response; to the extent a

response is deemed necessary, Mr. Silverman denies the allegations in that Paragraph

¶161:  Axis seeks a declaration that, as a result of Clause XI, the Axis Policy does not provide coverage for any loss arising out of the Noticed Matters or the Related Matters.

Paragraph 161 contains no factual allegations to which a response is required.  Mr.

Silverman admits that the allegations purport to describe this action.

### OTHER COVERAGE DEFENSES/RESCISSION

¶162:  Other Axis Policy terms, conditions and endorsements may ultimately be implicated. Axis has reserved the right to disclaim coverage for the Noticed Matters and the Related Matters based on various terms, conditions and endorsements of the Axis Policy. Nothing in this Adversary Complaint is intended to waive any rights Axis may have in the Axis Policy, at law or in equity, including the right to rescind the Axis Policy and prior policies issued by Axis to Refco, its subsidiaries or predecessors, based on material misrepresentations in the applications for such other policies. Axis reserves the right to raise such other coverage defenses as appropriate and/or to seek rescission.

Paragraph 162 contains no factual allegations to which a response is required.

### COUNTERCLAIMS

Mr. Silverman alleges as follows for his Counterclaims against Axis:

### INTRODUCTION

1.      Axis is the second excess insurer in the "tower" of Directors and Officers

("D&O") liability insurance obtained by Refco for the policy period beginning in August 2005.

The Counterclaim Plaintiff, along with other former Refco officers and directors insured under

the policies, (collectively, the "Insureds") has been named as a defendant in various civil actions

relating to the collapse of Refco.[1]  The Insureds have requested coverage for such actions, including defense costs, from the insurers on the D&O "tower" on which Axis is the second excess insurer.

2.      Axis has denied coverage to the Insureds, and has commenced this action seeking a declaration that its excess D&O corporate liability insurance policy issued to Refco for claims made during the period from August 11, 2005 to August 11, 2006 (the "Axis Policy") does not provide coverage to any of the Insureds for any of the "Noticed Matters" or "Related Matters" described in the Axis Complaint ("Complaint," or "Compl.").

3.      None of the grounds alleged in the Complaint provides Axis with a valid basis for refusing coverage to the Counterclaim Plaintiff.  Nonetheless, it is clear that Axis does not intend to honor its contractual obligations to the Counterclaim Plaintiff when the Axis Policy is triggered – i.e., once the D&O policies beneath the Axis Policy on the "tower" are exhausted.

4.      An actual controversy exists between the Counterclaim Plaintiff and Axis.  The Counterclaim Plaintiff seeks a declaration from this Court that the Axis Policy provides coverage for them for the various civil actions in which the Counterclaim Plaintiff has been named as defendant, as well as appropriate relief directing Axis to pay defendant's losses, including defense costs, in such actions, in accordance with the requirements of the Axis Policy.

## JURISDICTION AND VENUE

5.      Axis commenced this adversary proceeding on or about May 24, 2007.  This

---

[1]  Unless specifically noted otherwise, as set forth in the Axis Complaint, the term "Refco" used throughout these Counterclaims refers to Refco, Inc., the company formed pursuant to the August 2005 initial public offering, as well as Refco Group Ltd., LLC, the company through which Refco's business was conducted prior to the initial public offering.  The term "Refco" also includes subsidiaries of Refco, Inc. and Refco Group Ltd., LLC.

counterclaim is brought pursuant to Rules 7001 and 7013 of the Federal Rules of Bankruptcy Procedure.

6.      This Court has jurisdiction over this adversary proceeding, including the counterclaims, pursuant to 28 U.S.C. §§ 157, 1334 and 2201.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

## PARTIES

8.      Counterclaim Plaintiff Silverman is a former officer of certain Refco entities who, at times relevant to this action, served as Secretary.

9.      Counterclaim Plaintiff Silverman is a resident of the State of New Jersey.

10.     Upon information and belief, Axis is an insurance company that is organized and exists pursuant to the laws of the State of New York, with its principal place of business in New York.

## GENERAL ALLEGATIONS

### A.      The Underlying Actions

11.     On October 10, 2005, Refco disclosed in a press release that it had been carrying an undisclosed receivable of $430 million from an entity controlled by Phillip Bennett, the Chief Executive Officer of Refco.  On October 11, 2005, Refco issued a second press release relating to the $430 million receivable.

12.     On October 17, 2005, Refco and many of its direct and indirect subsidiaries filed voluntary petitions for relief in this Court under Chapter 11 of the United States Bankruptcy Code.

13.     These events in October 2005 led to a series of civil lawsuits, government investigations, and criminal proceedings against certain of the Insureds.  On November 10, 2005, Bennett was indicted by the United States District Attorney for the Southern District of New York on charges of, inter alia, securities fraud.

14.     The Counterclaim Plaintiff has not been charged with any crimes.  However, solely on account of his services to Refco, the Counterclaim Plaintiff (along with other Insureds) has been named as defendants in several civil lawsuits brought by private plaintiffs, including the following actions:

(i)     In re Refco, Inc. Sec. Litig., No. 05 Civ. 8626 (GEL) (S.D.N.Y.);

(ii)    American Financial International Group-Asia, LLC et al., v. Bennett et al., No. 05 Civ. 8988 (GEL) (S.D.N.Y.);[2] and

(iii)   In re Refco Capital Markets, Ltd. Brokerage Customer Sec. Litig., No. 06 Civ. 643 (GEL) (S.D.N.Y.).

These actions are collectively referred to herein as the "Underlying Actions."

15.     The Counterclaim Plaintiff properly gave notice for each of the Underlying

---

[2]  Although the court in American Financial recently issued a decision dismissing all claims against Silverman for failure to state a claim, the court granted plaintiffs leave to replead their claim for fraud.  It is not presently clear whether plaintiffs will replead that claim as against Silverman.

Actions to the insurers on the Refco "tower" of liability insurance, including Axis, and requested

coverage from such insurers under the policies described below.

**B.      The Refco "Tower" of D&O Insurance**

16.      As indicated above, Refco procured a "tower" of D&O insurance coverage.  Such

coverage consists of a primary policy and five excess policies for the period beginning August

11, 2005 to August 11, 2006 (the "policy period").

The U.S. Specialty Policy

17.      U.S. Specialty Insurance Company ("U.S. Specialty") issued the primary policy,

Directors, Officers and Corporate Liability Insurance Policy No. 24-MGU-05-A10821, for the

policy period with a $10 million limit of liability (the "U. S. Specialty Policy," or "Primary

Policy").  (A copy of the U. S. Specialty Policy is attached as Exhibit B to the Axis Complaint).

18.      The U. S. Specialty Policy names as "Insured Persons" under the Policy "any past,

present or future director or officer of the Company."  (Compl. Ex. B at p. 3.)  The Policy

provides those directors and officers with coverage for "Loss arising from Claims . . . Against

Insured Persons for Wrongful Acts."  (Id. at p. 2, Insuring Agreement (A)).

19.      The Underlying Actions are Claims for "Wrongful Acts," as defined in the U.S.

Specialty Policy.  (See id. at p. 4, Definition (P)).

20.      "Loss" is defined by the U.S. Specialty Policy so as to include defense costs.  (Id.

at p. 3, Definition (G) and Endorsement No. 4).

21.      The Policy further requires the Insurer to advance defense costs as incurred during

the pendency of Claims:

> The Insurer will pay covered Defense Costs on an as-incurred basis. If it is finally
> determined that any Defense Costs paid by the Insurer are not covered under this
> Policy, the Insureds agree to repay such non-covered Defense Costs to the Insurer.
>
> (Id. at p.8, Condition (D)(2)).

22.    The U.S. Specialty Policy also includes a "Full Severability" Endorsement, which

provides that "[n]o knowledge or information possessed by any Insured will be imputed to any

other Insured." (Compl. Ex. B, at Endorsement No. 10.)

23.    The U.S. Specialty Policy further provides that "notwithstanding anything in this

Policy to the contrary, the Insurer shall not be entitled under any circumstances to rescind the

coverage provided under Insuring Agreement (A) of this Policy." (Id. at Endorsement No. 13.)

24.    U.S. Specialty recognized its coverage obligations to the Counterclaim Plaintiff as

well as the other Insureds. After obtaining approval from this Court to comply with the terms of

its policy and advance defense costs to Insureds, U.S. Specialty paid the defense costs of the

Insureds until the limits of the U.S. Specialty Policy were exhausted earlier this year.

The Lexington Policy

25.    Lexington Insurance Company ("Lexington") issued the first excess policy above

the U.S. Specialty Policy, Directors and Officers Liability and Corporation Reimbursement

Follow Form Excess Liability Policy No. 1620926, for the policy period with a $7.5 million limit

of liability in excess of $10 million (the "Lexington Policy," or "First Excess Policy"). (A copy

of the Lexington Policy is attached to the Complaint as Exhibit C.)

26.    The Lexington Policy "follows form" to the U.S. Specialty Policy. This means

that the Lexington Policy "indemnif[ies] the Insured named in the Declarations . . . in accordance with the applicable insuring agreements, terms, conditions, and exclusions . . . of the Underlying Policy." (Compl. Ex. C, at (I) Insuring Agreements).

27.     Lexington has also agreed to comply with its duties and to advance defense costs. With the approval of this Court, Lexington is presently advancing defense costs to the Counterclaim Plaintiff as well as the other Insureds.  (See, e.g., Compl. Ex. D).

28.     Upon information and belief, the Lexington Policy is being rapidly depleted and will be exhausted in the near future.

The Axis Policy

29.     Axis is the second excess insurer on the Refco "tower" of insurance.

30.     Upon information and belief, on or about August 11, 2005, Axis provided Refco with a binder pursuant to which Axis agreed to provide $ 10,000,000 coverage that would follow the Primary Policy and the First Excess Policy (the "Axis Binder").  (A copy of the Axis Binder is attached hereto as Exhibit A).

31.     The Axis Binder states that coverage would be provided pursuant to the "Axis SecurExcess Form," with four endorsements listed.  A "Knowledge Exclusion" was not included among the four endorsements or referred to elsewhere in the Axis Binder.  Upon information and belief, Refco paid the premium quoted in the Axis Binder (i.e., $302,176) and thereby obtained coverage from Axis in accordance therewith.

32.     Although the Axis Policy is dated September 11, 2005, upon information and belief, it was not actually issued until on or about March 1, 2006.  (See Exhibit B hereto),

33.    Upon information and belief, the actual issuance of the Axis Policy was therefore months after the "Noticed Matters," including the Underlying Actions," were commenced and notice of such actions had been provided to the Refco D&O insurers, including Axis.

34.    As provided in the Binder, the Axis Policy has a limit of liability of $10,000,000. (Compl. Ex. A, at p. 1 and Endorsement No. 1).

35.    The Axis Policy states that it provides coverage "in conformance with the provisions of" the U.S. Specialty Policy. (Id. at (I) Insuring Agreement).

36.    The Axis Policy specifically defines "Insureds" as the same persons who are insureds under the U.S. Specialty Policy. (Id. at (II) Definitions (C)).

37.    The Axis Policy defines "Claim(s)" as "event(s) which take place during the **Policy Period** and which trigger(s) coverage under the insuring agreement(s) of the **Underlying Insurance**." (Id. at (II) Definitions (A)) (Emphasis in original).

38.    Accordingly, any "Claim" for a "Wrongful Act" brought against the Counterclaim Plaintiff that falls within Insuring Agreement (A) of the U.S. Specialty Policy also falls within the "Insuring Agreement" of the Axis Policy.

39.    Each of the Underlying Actions is a "Claim" against the Counterclaim Plaintiff (and the other Insureds) for "Wrongful Acts" covered by Insuring Agreement (A) in the U.S. Specialty Policy and by the Insuring Agreement in the Axis Policy.

40.    The Axis Policy specifically states that when the policies underlying it are exhausted, it will "continue as primary insurance." (Compl. Ex. A, at (IV) Reduction or Exhaustion of Underlying Limits (B)). Specifically, the Policy provides that "[i]f the **Underlying**

**Limits** are wholly exhausted solely due to actual payment under the **Underlying Insurance**, this Policy shall continue to apply as primary insurance with respect to the applicable **Insurance Products . . . .**" (Id.) (Emphasis in original).

41.     The Axis Policy also explicitly acknowledges, in bold, capital letters, that it covers defense costs:

> **THE LIMITS OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENT AMOUNTS SHALL BE REDUCED AND MAY BE TOTALLY EXHAUSTED BY PAYMENT OF DEFENSE COSTS.**

(Id. at Declarations Page).

42.     Endorsement No. 5 to the Axis Policy, the "Manuscript Application Endorsement," states in pertinent part that "[i]n consideration of the premium charged, it is agreed by the **Insurer** and **Insureds** that the application or proposal signed February 8, 2005 and submitted to *Axis Reinsurance Company* on *U.S. Specialty Insurance Company's* form shall be accepted by the **Insurer** as the Application for this Policy." (Compl. Ex. A, at Endorsement No. 5).

43.     Upon information and belief, when Axis issued the Axis Policy on or about March 1, 2006, it unilaterally added to the policy Endorsement No. 6, a "Knowledge Exclusion." (See Compl. Ex. A, at Endorsement No. 6).

44.     This purported endorsement states in pertinent part that:

this Policy does not respond to **Claims** based upon, arising out of,

directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, or event, which

as of the inception date of the **Policy Period**, any **Insured** had knowledge and had reason to suppose might give rise to a **Claim** that would fall within the scope of

the insurance afforded by this Policy.

(Id.) (Emphasis in original).

45.     Upon information and belief, the "Knowledge Exclusion" endorsement is not properly a part of the Axis Policy, and cannot be used to deny coverage to the Counterclaim Plaintiff.

### Other Excess Insurance

46.  There are three additional excess policies above (i.e., in excess of) the Axis Policy in the Refco D&O Insurance "tower."

## C.     Attempts by Axis to Avoid Coverage under the Axis Policy

### The March 6, 2006 Axis Letter

47.     By letter dated March 6, 2006 (the "March 6, 2006 Axis Letter," or "Denial Letter"), and by subsequent letters, Axis denied coverage to the Counterclaim Plaintiff and the other Insureds for all of the Noticed Matters and the Related Matters, including the Underlying Actions.  (A copy of the March 6, 2006 Axis Letter is attached to the Complaint as Exhibit G).

48.     In the March 6, 2006 Axis Letter, Axis asserted several grounds for denying coverage.

#### (i)     The January 14, 2005 Letter

49.     First, Axis relied upon a purported "Warranty Letter" dated January 14, 2005 signed by Bennett as President and CEO of Refco Group Ltd., LLC ("Refco Group") (the "January 14, 2005 Letter").  (A copy of the January 14, 2005 Letter is attached to the Complaint

as Exhibit E).

49.     The January 14, 2005 letter states, in pertinent part, that "[n]o person(s) or entity(ies) proposed for this insurance is cognizant of any fact, circumstance, situation, act, error or omission which he[ ] has reason to suppose might afford grounds for any Claim . . . within the scope of the proposed insurance" and that "if such knowledge exists, any claim arising therefrom is excluded from the proposed insurance. . . ." (Compl. Ex. E).

50.     Upon information and belief, the January 14, 2005 Letter was signed by Bennett with respect to an excess D&O policy issued by Axis for a policy period beginning August 5, 2004 to August 5, 2005 (the "Prior Policy"), and not with respect to the Axis Policy (which policy period did not begin until August 11, 2005).

51.     Refco Group was the policyholder on the Prior Policy, but is not the policyholder on the Axis Policy.

52.     In the March 6, 2006 Axis Letter, Axis asserted that the Noticed Matters were "brought in connection with the alleged financial fraud orchestrated by Mr. Bennett, among others" and that it is "inconceivable that Mr. Bennett was not aware of the alleged fraud when he executed the Axis Warranty 'on behalf of all Insureds under the Policy'" (Compl. Ex. G, at p. 9).

53.     The March 6, 2006 Axis Letter further asserted that the January 14, 2005 Letter "explicitly excludes coverage for all Insureds for any Claim arising from the undisclosed knowledge," and that all of the Noticed Matters fell within such exclusion. (Id.)

                (ii)     The U.S. Specialty Application

54.     The March 6, 2006 Axis Letter also relied upon Bennett's failure to answer

Question 12(b) in the application to U.S. Specialty for coverage (the "Application") (see Compl.
Ex. F, at p. 3), which Axis contended was incorporated as the application to Axis pursuant to
Endorsement No. 5 to the Axis Policy.

55.    Specifically, Question 12(b) of the Application inquired as to whether any
proposed Insured was "aware of any fact, circumstance or situation involving the Applicant . . .
which he . . . has reason to believe might result in a claim being made." (Compl. Ex. F, at p. 3).

56.    The March 6, 2006 Axis Letter asserted that "Mr. Bennett had a duty to disclose
the alleged financial fraud in answer to Application question 12(b)," and further asserted that his
failure to do resulted in all of the Noticed Matters being excluded from coverage. (See Compl.
Ex. G, p. 10).

(iii)    The Claim Made Date

57.    The March 6, 2006 Axis Letter further denied coverage for the Noticed Matters on
the additional ground that each was purportedly a Claim first made before the inception date of
the Axis Policy (i.e., prior to August 11, 2005). The March 6, 2006 Axis Letter contended in this
regard that each of the Noticed Matters was sufficiently related to a complaint filed on June 30,
2005 in the "Sillam" action, so that each could be treated as a single interrelated Claim made
prior to August 11, 2005. (See id.)

(iv)    The Knowledge Exclusion

58.    Finally, the March 6, 2006 Axis Letter denied coverage for all of the Noticed
Matters based on the "Knowledge Exclusion" endorsement that Axis contended was part of the
Axis Policy.

59.     Specifically, the March 6, 2006 Axis Letter asserted that "each of the Noticed
Matters is brought in connection with the alleged financial fraud orchestrated by Mr. Bennett and
that "it is inconceivable that Mr. Bennett was not aware that his actions 'might give rise to a
Claim that would fall within the scope of the insurance afforded by this Policy.'" (Id. at p.11).

2.     The Axis Adversary Proceeding

60.     On or about May 24, 2007, Axis commenced the instant Adversary Proceeding,
seeking a declaration that the Axis Policy does not provide insurance coverage for the Noticed
Matters or the Related Matters for any of the Insureds.

61.     The Complaint contains four counts, each of which purports to set forth a separate
ground for Axis' position that there is no coverage under the Axis Policy.  Counts I, II and III
rely upon, respectively, Axis' arguments based on the purported Warranty Letter, the
Application, and the alleged Knowledge Exclusion endorsement set forth in the March 6, 2006
Axis Letter and discussed above.

62. Count IV of the Complaint relies upon Clause XI of the Axis Policy.  This clause
provides that:

> [t]he **Insurer** shall not be liable for any amount in any **Claim** taking place during
> the **Policy Period** and arising under any **Insurance Product**, which is based upon,
> arising out of, directly or indirectly resulting from, in consequence of or in any
> way involving:
> **A.**     Any demand, suit or other proceeding pending, or order, decree or
> judgment entered, against any **Insured** on or prior to the Pending or Prior Claim
> Date set forth in Item 7 of the Declarations or any wrongful act, fact, circumstance
> or situation underlying or alleged therein; or
> **B.**     Any other wrongful act, fact, circumstance or situation whenever
> occurring, which together with a wrongful act, fact, circumstance or situation
> described in (a) above are casually or logically interrelated by a common nexus."

(Compl. Ex. A at (XI) Exclusions) (Emphasis in original).

63.    Count IV asserts that the Noticed Matters allege many of the same wrongful acts previously alleged in a 1994 CFTC enforcement action (the "1994 CFTC Action"), and that the Axis Policy thus does not provide coverage for any of the Noticed Matters or the Related Matters. (See Compl. ¶¶ 142, 160-61.)

64.    Axis failed to include this basis under Clause XI for its position that there is no coverage under the Axis Policy in the March 6, 2006 Axis Letter.  Instead, as set forth above, in the March 6, 2006 Axis Letter, Axis purported to deny coverage based upon the Silliam action, a basis for denial that Axis did not allege in its Complaint.

### COUNT I

### (Declaratory Relief)

65.    Counterclaim Plaintiff repeats and realleges paragraphs 1 through 64 of this Counterclaim as if fully set forth herein.

66.    Pursuant to the terms of the Axis Policy, Axis is contractually obligated to provide coverage to Counterclaim s for all Losses (as defined in the U.S. Specialty Policy) arising from the Underlying Actions, including but not limited to, Defense Costs, upon exhaustion of the limits of liability of the underlying U.S. Specialty Policy and the Lexington Policy.

67.    As of the present date, Axis has denied its contractual obligations and have denied coverage under the Axis Policy.

68.    Upon information and belief, Refco paid all premiums for the Axis Policy and had and has performed all of the terms and conditions of the Axis Policy on its part to be performed, unless otherwise excused.

69.     Counterclaim Plaintiff, as an Insured under the Axis Policy, and therefore, party to the insurance contract, had and has performed all the terms and conditions of the Axis Policy on their part(s) to be performed, unless otherwise excused.

70.     At all relevant times mentioned herein, the Axis Policy was, and is, in full force and effect.

71.     None of the grounds asserted by Axis for the denial of coverage under the Axis Policy provides a valid basis for the denial of coverage to the Counterclaim Plaintiff.

72.     Three of the four grounds asserted by Axis in the March 6, 2006 Axis Letter and in the Complaint – specifically, the purported January 15, 2005 Letter, the Application and the alleged "Knowledge Exclusion" endorsement – rest on Bennett's alleged knowledge of wrongdoing, which has not been established.

73.     Regardless of whether Bennett is hereafter found to have knowledge of wrongdoing as alleged by Axis, none of these three grounds described in paragraph 61, above, allows Axis to deny coverage to the Counterclaim Plaintiff.

74.     The January 15, 2006 Letter does not relate to the Axis Policy, and was neither included nor incorporated therein, and is thus not a proper ground for denial of coverage.  Neither the Axis Binder nor the Axis Policy refers to the January 15, 2006 Letter.

75.     Axis cannot rely upon the Application because, upon information and belief, Axis issued a policy with full knowledge that Question 12(b) in the Application was not answered and did nothing to inquire as to such failure to answer.  As a result, Axis has waived and is estopped from asserting any failure by Bennett to disclosure information requested in Question 12(b) of the

Application as ground for denying of coverage.

76.     The "Knowledge Exclusion" endorsement relied upon by Axis was not referred to in the Axis Binder, and is materially inconsistent therewith.  Upon information and belief, this endorsement was unilaterally and improperly added by Axis to the Axis Policy on or about March 1, 2006, months after the Noticed Matters had commenced, in an attempt to avoid coverage for such matters.

77.     Upon information and belief, the "Knowledge Exclusion" endorsement is not part of the insurance contract between Axis and the Counterclaim Plaintiff.

78.     The "Full Severability" Endorsement to the U.S. Specialty Policy (Endorsement No. 10), which is incorporated into the Axis Policy, also precludes Axis from using any alleged knowledge of Bennett (on any other Insured) as a ground for denying coverage to the Counterclaim Plaintiff, and thus precludes Axis from relying upon the purported January 15, 2006 Letter, the Application, or the alleged "Knowledge Exclusion" endorsement to deny coverage to Counterclaim Plaintiff.

80.     Axis is also unable to establish its fourth ground for the denial of coverage.  Upon information and belief, the Underlying Actions do not arise from or allege any of the same wrongful acts that formed the basis for the 1994 CFTC Action – which was not even raised in the March 6, 2006 Axis Letter as a ground for denial of coverage – and thus coverage for the Underlying Actions is not excluded under Clause XI of the Axis Policy.  Similarly, the Underlying Actions are not related in any way to the June 2005 complaint in the Sillam action – which was relied upon in the Denial Letter but is not referred to in the Complaint – and thus Axis cannot properly contend that the Underlying Actions constitute Claims that were first brought

prior to the inception of the Axis Policy.

81.    An actual controversy exists between Axis and the Counterclaim Plaintiff as to whether the Counterclaim Plaintiff is entitled to coverage for the Underlying Actions under the Axis Policy, and judicial resolution of the parties' rights and obligations is necessary.

82.    This Court should issue a judgment declaring that the Counterclaim Plaintiff is entitled to coverage under the Axis Policy for Losses arising out of the Underlying Actions, including, but not limited to, Defense Costs.

## COUNT II

### (Injunctive Relief)

83.    Counterclaim Plaintiff repeats and realleges paragraphs 1 through 82 of this Counterclaim as if fully set forth herein.

84.    Upon exhaustion of the Lexington Policy, Axis will become obligated to make payments to the Counterclaim Plaintiff for Losses in the Underlying Actions, in accordance with the Axis Policy.

85.    The Counterclaim Plaintiff is entitled to permanent injunctive relief requiring Axis to make such payments in accordance with Axis' contractual obligations.

## PRAYER FOR RELIEF

WHEREFORE, Counterclaim Plaintiff Philip Silverman respectfully requests entry of judgment in his favor as follows:

1.    Dismissing all Counts of Axis' Complaint with prejudice.

    2.       On Count I of the Counterclaims, declaring that the Counterclaim Plaintiff is entitled to coverage under the Axis Policy for Losses arising out of the Underlying Actions, including but not limited to Defense Costs.

    3.       On Count II of the Counterclaims, requiring Axis to make payments to Counterclaim Plaintiff for Losses in the Underlying Actions, in accordance with the Axis Policy.

    4.       Awarding Counterclaim Plaintiff his attorneys' fees and costs and disbursements of this action; and

    5.       Granting such other and further relief as the Court may deem proper.

Dated:    New York, New York
           July 13, 2007

                           HELLER EHRMAN LLP

                           By: _/s/ Holly K. Kulka_____
                              Holly K. Kulka (HK-9712)
                              Chakshu Patel (CP-2563)
                              Times Square Tower
                              7 Times Square
                              New York, New York  10036
                              Tel: (212) 847-8601
                              Fax: (212) 763-7600

                           *Attorneys for Defendant Philip Silverman*

Holly K. Kulka (HK-9712)
Chakshu Patel (CP-2563)
HELLER EHRMAN LLP
Times Square Tower
7 Times Square
New York, New York  10036
Tel: (212) 832-8300
Fax: (212) 763-7600

*Attorneys for Defendant Philip Silverman*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

| | |
|---|---|
| In re:<br>REFCO, INC., et al.,<br><br>                 Debtors. | Chapter 11<br>Case No. 05-60006(RDD)<br>(Jointly Administered) |

-------------------------------------------------------------x

AXIS REINSURANCE COMPANY,

                        Plaintiff,

            v.                                    Adv. Proc. No. 07-01712(RDD)

PHILLIP R. BENNETT, LEO R. BREITMAN,
NATHAN GANTCHER, TONE GRANT,
DAVID V. HARKINS, SCOTT L. JAECKEL,         **CERTIFICATE OF SERVICE**
DENNIS A. KLEJNA, THOMAS H. LEE,
SANTO C. MAGGIO, JOSEPH MURPHY,
 RONALD L. O'KELLEY, PERRY ROTKOWITZ,
SCOTT A. SCHOEN, WILLIAM M. SEXTON,
GERALD SHERER, PHILIP SILVERMAN,
ROBERT C. TROSTEN, AND DOES 1 TO 10,

                        Defendants.

-------------------------------------------------------------x

## CERTIFICATE OF SERVICE

This is to certify that a copy of the Answer and Counterclaims of Philip Silverman has been served upon all parties in interest contained in Exhibit "A" attached hereto and made a part hereof. Service was accomplished via First Class Mail, sent out on July 13, 2007.

Dated: New York, New York
      July 13, 2007

                                    Respectfully Submitted


                                      HELLER EHRMAN LLP

                                      By:  /s/ Holly K. Kulka
                                          Holly K. Kulka (HK-9712)
                                          Chakshu Patel (CP-2563)
                                          Times Square Tower
                                          7 Times Square
                                          New York, New York  10036
                                          Tel: (212) 847-8601
                                          Fax: (212) 763-7600


                                      *Attorneys for Defendant Philip Silverman*

**SERVICE LIST**

| | |
|---|---|
| J. Gregory Milmoe<br>Skadden, Arps, Slate, Meagher & Flom LLP<br>Four Times Square<br>New York, NY 10036-6522 | Luc A. Despins<br>Milbank, Tweek, Hadley & McCloy LLP<br>1 Chase Manhattan Plaza<br>New York, NY 10005 |
| Andrew D. Velez-Rivera<br>Office of the U.S. Trustee<br>33 Whitehall Street, Suite 2100<br>New York, NY 10004 | Donald S. Bernstein<br>Davis Polk & Wardwell<br>450 Lexington Avenue<br>New York, NY 10017 |
| Robert M. Novick<br>Jeffrey R. Gleit<br>Kasowitz Benson Torres & Friedman LLP<br>1633 Broadway<br>New York, NY 10019 | Timothy B. DeSieno<br>Mark W. Deveno<br>Bingham McCutcheon LLP<br>399 Park Avenue<br>New York, NY 10022-4689 |
| Wayne E. Borgeest<br>Joan M. Gilbride<br>Robert A. Benjamin<br>Kaufman Borgeest & Ryan LLP<br>200 Summit Lake Dr.<br>Valhalla, New York 10595 | Barbara Moses<br>Rachel Marissa Korenblat<br>Morvillo, Abramowitz, Grand, Lason, Anello &<br>    Bohrer, P.C.<br>565 Fifth Avenue<br>New York, NY 10017 |
| Stuart I. Friedman<br>Friedman & Wittenstein<br>Ivan Kline<br>600 Lexington Avenue<br>New York, NY 10022 | Jeffrey T. Golenbock<br>Golenbock Eiseman Assor Bell & Peskoe LLP<br>437 Madison Avenue<br>New York, NY 10022 |
| Laura E. Neish<br>Norman L. Eisen<br>Thomas G. Macauley<br>Zuckerman, Spaeder LLP<br>1540 Broadway, Suite 1604<br>New York, NY 10036-4039 | Scott E. Hershman<br>Stephen R. Blacklocks<br>Richard Soto<br>Hunton & Williams LLP<br>200 Park Avenue<br>New York, NY 10166 |
| Gabriel Del Virginia<br>Law Offices of Gabriel Del Virginia<br>641 Lexington Avenue, 21st Floor<br>New York, NY 10022 | Susheel Kirpalani<br>Quinn Emanuel Urquhart Oliver & Hedges LLP<br>51 Madison Avenue<br>New York, NY 10017 |
| Steven Wilamowsky<br>Bingham McCutchen<br>399 Park Avenue<br>New York, NY 10022-4689 | Blake Tyler Hannafan<br>Michael T. Hannafan & Associates, Ltd.<br>One East Wacker Drive, Suite 1208<br>Chicago, IL 60601 |
| Greg A. Danilow<br>Paul A. Ferrillo<br>Weil Gotshal & Manges LLP<br>767 Fifth Avenue, 35th Floor<br>New York, NY 10153 | |

# EXHIBIT 3

Wayne E. Borgeest (WB-3034)
Joan M. Gilbride (JG-6238)
Ann Marie Collins(AC-7125)
Robert A. Benjamin (RB-9891)
KAUFMAN BORGEEST & RYAN LLP
200 Summit Lake Dr
Valhalla, New York 10595
(914) 741-6100 (Telephone)
(914) 741-0025 (Facsimile)
wborgeest@kbrlaw.com
jgilbride@kbrlaw.com
acollins@kbrlaw.com
rbenjamin@kbrlaw.com

*Attorneys for Axis Reinsurance Company*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:                                              :        Chapter 11
REFCO, INC., et al.,                                :        Case No. 05-60006(RDD)
                                        Debtors.    :        (Jointly Administered)
------------------------------------------------------------x
AXIS REINSURANCE COMPANY,                           :
                                                    :
                                        Plaintiff,  :
                                                    :
             v.                                     :        Adv. Proc. No. 07-01712 (RDD)
                                                    :
PHILLIP R. BENNETT, LEO R. BREITMAN,                :
NATHAN GANTCHER, TONE GRANT,                        :
DAVID V. HARKINS, SCOTT L. JAECKEL,                 :
DENNIS A. KLEJNA, THOMAS H. LEE,                    :
SANTO C. MAGGIO, JOSEPH MURPHY,                     :
RONALD L. O'KELLEY, PERRY ROTKOWITZ,                :
SCOTT A. SCHOEN, WILLIAM M. SEXTON,                 :
GERALD SHERER, PHILIP SILVERMAN,                    :
ROBERT C. TROSTEN, AND DOES 1 TO 10,                :
                                                    :
                                        Defendants. :
------------------------------------------------------------x

## ANSWER OF AXIS REINSURANCE COMPANY TO DEFENDANTS WILLIAM M. SEXTON AND GERALD SHERER'S COUNTERCLAIMS

Plaintiff Axis Reinsurance Company ("Axis"), by counsel, hereby answers the defendants

William M. Sexton's and Gerald Sherer's Counterclaims as follows:

## INTRODUCTION

1.     Axis denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "1" of the Counterclaims, except admits that Axis bound coverage for an excess directors, officers and corporate liability policy issued to Refco, Inc. ("Refco") for claims made during the period from August 11, 2005 to August 11, 2006 (the "Axis Policy" or the "Policy"), and further admits that, upon information and belief, the Counterclaim Plaintiffs and other former Refco officers and directors have been named as defendants in various civil actions and that the Counterclaim Plaintiffs have requested coverage from Axis in connection with certain civil actions that have been named in Axis's Complaint.

2.     Axis denies that the Complaint was filed on or about August 23, 2007, and otherwise admits the truth of the allegations contained in paragraph "2" of the Counterclaims.

3.     Axis denies the allegations contained in of paragraph "3" of the Counterclaims.

4.     Axis denies the allegations in paragraph "4" of the Counterclaims insofar as they relate to the Counterclaim Plaintiffs' proposed interpretation and application of the Policy, admits the allegation regarding the existence of an actual controversy, and otherwise is without knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations contained in paragraph "4" of the Counterclaims.

## JURISDICTION AND VENUE

5.     Axis is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "5" of the Counterclaims, except states that it filed the Complaint commencing this adversary proceeding on or about May 23, 2007.

6.     Axis admits the allegations contained in paragraph "6" of the Counterclaims.

7.     Axis admits the allegations contained in paragraph "7" of the Counterclaims.

2

**PARTIES**

8.      Axis denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph "8" of the Counterclaims except admits, upon information and belief, that Sexton served as Executive Vice President and Chief Operating Officer of Refco at times relevant to this action.

9.      Axis denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph "9" of the Counterclaims except admits, upon information and belief, that Sherer served as Executive Vice President and Chief Financial Officer of Refco at times relevant to this action.

10.     Axis admits the allegations contained in paragraph "10" of the Counterclaims.

**GENERAL ALLEGATIONS**

A.      **The Underlying Actions**

11.     Upon information and belief, Axis admits the allegations contained in paragraph "11" of the Counterclaims.

12.     Axis denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "12" of the Counterclaims, except admits, upon information and belief, that on October 17, 2005, Refco and certain of its unregulated subsidiaries filed for protection under Chapter 11 of the Bankruptcy Code.

13.     Axis denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "13" of the Counterclaims.

14.     Axis denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "14" of the Counterclaims, except admits, upon information and belief, that the Counterclaim Plaintiffs have been named as defendants in civil lawsuits.

15.      Axis denies the allegations contained in paragraph "15" of the Counterclaims insofar as they relate to Axis, and otherwise is without knowledge or information sufficient to form a belief as to the truth of the allegations insofar as they relate to the other insurers.

**B.      The Refco "Tower" of D&O Insurance**

16.      Axis denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "16" of the Counterclaims, except admits that Axis bound coverage for a Secureexcess policy issued to Refco, Inc. for claims made during the period from August 11, 2005 to August 11, 2006.

The U.S Specialty Policy

17.      Upon information and belief, Axis admits that U.S. Specialty Insurance Company (the "Primary Insurer") issued a primary policy with a limit of liability of $10 million excess of applicable self-insured retentions (the "Primary Policy") and, with respect to the remainder of the allegations in paragraph "17" of the Counterclaims, asserts that the document referenced therein speaks for itself.

18.      Axis denies the allegations contained in paragraph "18" of the Counterclaims except asserts that, to the extent the allegations purport to describe the Primary Policy, the Primary Policy speaks for itself.

19.      Axis denies the allegations contained in paragraph "19" of the Counterclaims except asserts that, to the extent the allegations purport to describe the Primary Policy, the Primary Policy speaks for itself. Axis further states that, to the extent paragraph "19" sets forth a legal conclusion, no response is necessary.

20.      Axis denies the allegations contained in paragraph "20" of the Counterclaims except asserts that, to the extent the allegations purport to describe the Primary Policy, the

Primary Policy speaks for itself and, to the extent it calls for a legal conclusion, no response it necessary.

21.    Axis denies the allegations contained in paragraph "21" of the Counterclaims except asserts that, to the extent the allegations purport to describe the Primary Policy, the Primary Policy speaks for itself.

22.    Axis denies the allegations contained in paragraph "22" of the Counterclaims except asserts that, to the extent the allegations purport to describe the Primary Policy, the Primary Policy speaks for itself.

23.    Axis denies the allegations contained in paragraph "23" of the Counterclaims except asserts that, to the extent the allegations purport to describe the Primary Policy, the Primary Policy speaks for itself.

24.    Axis denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "24" of the Counterclaims.

The Lexington Policy

25.    Axis denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "25" of the Counterclaims, and further asserts that, to the extent the allegations purport to describe the contents of a document, the document speaks for itself.

26.    Axis denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "26" of the Counterclaims, and further asserts that, to the extent the allegations purport to describe the contents of a document, the document speaks for itself.

27.    Axis denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "27" of the Counterclaims.

28.    Upon information and belief, Axis admits the truth of the allegations contained in paragraph "28" of the Counterclaims.

The Axis Policy

29.    Axis denies the allegations contained in paragraph "29" of the Counterclaims, except admits that there are two D&O policies with lower attachment points than that of the Axis Policy, both of which must be fully exhausted due to actual payment of their limits before coverage under the Axis Policy may be triggered.

30.    Axis denies the allegations contained in paragraph "30" of the Counterclaims, except admits that it bound coverage for a Secureexcess policy issued to Refco, Inc. ("Refco") for claims made during the period from August 11, 2005 to August 11, 2006 (the "Axis Policy"), and that the Axis Policy has a limit of liability of $10 million.  Axis further states that to the extent paragraph "30" of the Counterclaims purports to recite the contents of the referenced document, no response is necessary, as the document speaks for itself.

31.    Axis denies the allegations contained in paragraph "31" of the Counterclaims, except admits that Refco paid the premium, and further asserts that, to the extent the allegations purport to recite the contents of the referenced document, no response is necessary, as the document speaks for itself.

32.    Axis denies the allegations contained paragraph "32" of the Counterclaims, except admits that the Axis Policy was sent to Refco's agent on March 1, 2006.

33.    Axis denies the allegations contained paragraph "33" of the Counterclaims, except admits that the Policy was sent to Refco's agent on March 1, 2006.

34.    Axis asserts that no response to paragraph "34" of the Counterclaims is necessary, as the document referred to speaks for itself.

6

35.     Axis asserts that no response to paragraph "35" of the Counterclaims is necessary, as the document referred to speaks for itself.

36.     Axis asserts that no response to paragraph "36" of the Counterclaims is necessary, as the document referred to speaks for itself.

37.     Axis asserts that no response to paragraph "37" of the Counterclaims is necessary, as the document referred to speaks for itself.

38.     Axis states that paragraph "38" of the Counterclaims calls for a legal conclusion and, as such, no answer is required.

39.     Axis states that paragraph "39" of the Counterclaims calls for a legal conclusion and, as such, no answer is required.

40.     Axis denies the allegations contained in paragraph "40" of the Counterclaims, and further asserts that, to the extent paragraph "40" purports to recite the contents of the referenced document, no response is necessary, as that document speaks for itself.

41.     Axis denies the allegations contained in paragraph "41" of the Counterclaims, and further asserts that, to the extent paragraph "41" purports to recite the contents of the referenced document, no response is necessary, as that document speaks for itself.

42.     Axis asserts that no response to paragraph "42" of the Counterclaims is necessary, as the document referred to speaks for itself.

43.     Axis denies the allegations contained in paragraph "43" of the Counterclaims, except admits that the Axis Policy sent to Refco on March 1, 2006, and contained a Knowledge Exclusion at Endorsement 6.

44.     Axis asserts that no response to paragraph "44" of the Counterclaims is necessary, as the document referred to speaks for itself.

45.     Axis denies the allegations contained in paragraph "45" of the Counterclaims.

46.    Axis denies the allegations contained in paragraph "46" of the Counterclaims.

Other Excess Insurance

47.    Axis denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "47" of the Counterclaims.

**C. Attempts by Axis to Avoid Coverage Under the Policy**

The March 6, 2007 Letter

48.    Axis denies the allegations contained in paragraph "48" of the Counterclaims, except admits that it denied coverage for the Noticed Matters on March 6, 2006, based on various terms and conditions of the Axis Policy and, to the extent paragraph "48" purports to recite the contents of the referenced document, states that no response is necessary, as the document speaks for itself.

49.    Axis asserts that no response to paragraph "49" of the Counterclaims is necessary, as the document referred to speaks for itself.

(i)    The January 14, 2005 Letter

50.    Axis denies the allegations contained in paragraph "50" of the Counterclaims, except admits that it based its March 6, 2006 disclaimer, in part, on the January 14, 2005 Warranty signed by Phillip Bennett "on behalf of all Insureds under the Policy."

51.    Axis asserts that no response to paragraph "51" of the Counterclaims is necessary, as the document referred to speaks for itself.

52.    Axis denies the allegations contained in paragraph "52" of the Counterclaims.

53.    Axis denies the allegations contained in paragraph "53" of the Counterclaims.

54.    Axis asserts that no response to paragraph "54" of the Counterclaims is necessary, as the document referred to speaks for itself.

8

55.     Axis asserts that no response to paragraph "55" of the Counterclaims is necessary, as the document referred to speaks for itself.

(ii)  The U.S. Specialty Application

56.     Axis denies the allegations contained in paragraph "56" of the Counterclaims, and further states that, to the extent paragraph "56" purports to allege what is set forth in the referenced document, no response is necessary, as the document referred to speaks for itself.

57.     Axis asserts that no response to paragraph "57" of the Counterclaims is necessary, as the document referred to speaks for itself.

58.     Axis asserts that no response to paragraph "58" of the Counterclaims is necessary, as the document referred to speaks for itself.

(iii)  The Claim Made Date

59.     Axis asserts that no response to paragraph "59" of the Counterclaims is necessary, as the document referred to speaks for itself.

(iv)  The Knowledge Exclusion

60.     Axis asserts that no response to paragraph "60" of the Counterclaims is necessary, as the document referred to speaks for itself.

61.     Axis asserts that no response to paragraph "61" of the Counterclaims is necessary, as the document referred to speaks for itself.

The Axis Adversary Proceeding

62.     Axis denies the allegations contained in paragraph "62" of the Counterclaims, except admits that it commenced the instant action on May 23, 2007, seeking a declaration that the Axis Policy does not provide insurance coverage for the Noticed Matters or the Related Matters for any of the defendants.

9

63.    Axis asserts that, to the extent paragraph "63" of the Counterclaims states what is set forth in the referenced document, no response is necessary, and otherwise admits that the Complaint sets forth four separate grounds for Axis's position that there is no coverage under the Axis Policy.

64.    Axis asserts that no response to paragraph "64" of the Counterclaims is necessary, as the document referred to speaks for itself.

65.    Axis asserts that no response to paragraph "65" of the Counterclaims is necessary, as the document referred to speaks for itself.

66.    Axis denies the allegations contained in paragraph "66" of the Counterclaims, except admits that in the March 6, 2006 letter, Axis denied coverage based on, among other things, the <u>Silliam</u> action.

## COUNT I

### (Declaratory Relief)

67.    Axis repeats and realleges its responses to paragraphs "1" through "66" of the Counterclaims, as set forth in paragraphs "1" through "66," above.

68.    Axis denies the allegations contained in paragraph "68" of the Counterclaims.

69.    Axis denies the allegations contained in paragraph "69" of the Counterclaims, except admits that it has denied coverage under the Axis Policy to the Counterclaim Plaintiffs.

70.    Axis denies the allegations contained in paragraph "70" of the Counterclaims, except admits, upon information and belief, that Refco has paid the premium due for the Axis Policy.

71.    Axis denies the allegations contained in paragraph "71" of the Counterclaims.

72.    Axis denies the allegations contained in paragraph "72" of the Counterclaims, except states that the Axis Policy has a policy period of August 11, 2005 to August 11, 2006.

10

73.    Axis denies the allegations contained in paragraph "73" of the Counterclaims.

74.    Axis denies the allegations contained in paragraph "74" of the Counterclaims.

75.    Axis denies the allegations contained in paragraph "75" of the Counterclaims.

76.    Axis denies the allegations contained in paragraph "76" of the Counterclaims.

77.    Axis denies the allegations contained in paragraph "77" of the Counterclaims.

78.    Axis denies the allegations contained in paragraph "78" of the Counterclaims.

79.    Axis denies the allegations contained in paragraph "79" of the Counterclaims.

80.    Axis denies the allegations contained in paragraph "80" of the Counterclaims.

81.    Axis denies the allegations contained in paragraph "81" of the Counterclaims.

82.    Axis denies the allegations contained in paragraph "82" of the Counterclaims.

83.    Axis denies the allegations contained in paragraph "83" of the Counterclaims.

84.    Axis denies the allegations contained in paragraph "84" of the Counterclaims.

85.    Axis denies the allegations contained in paragraph "85" of the Counterclaims.

86.    Axis admits the allegations contained in paragraph "86" of the Counterclaims.

87.    Axis denies the allegations contained in paragraph "87" of the Counterclaims.

## COUNT II

### (Injunctive Relief)

88.    Axis repeats and realleges its responses to paragraphs "1" through "87" of the Counterclaims, as set forth in paragraphs "1" through "87," above.

89.    Axis denies the allegations contained in paragraph "89" of the Counterclaims.

90.    Axis denies the allegations contained in paragraph "90" of the Counterclaims.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Counterclaims fail to state a claim upon which relief may be granted.

11

## SECOND AFFIRMATIVE DEFENSE

The Counterclaim Plaintiffs' claims are barred, in whole or in part, by the terms, conditions, endorsements and exclusions of the Axis Policy and the underlying and/or primary insurance policies, and by application of law and principles of equity. Axis hereby expressly gives notice of and reserves the right to rely upon all the terms, conditions, endorsements and exclusions of the Policy to deny or limit coverage on additional or different grounds as discovery reveals.

## THIRD AFFIRMATIVE DEFENSE

The Counterclaim Plaintiffs have failed to mitigate any damages it may have sustained as a result of the matters alleged in the Counterclaims.

## FOURTH AFFIRMATIVE DEFENSE

The Counterclaim Plaintiffs' claims are barred by the failure to comply with the terms and conditions of the Axis Policy and any underlying policies.

## FIFTH AFFIRMATIVE DEFENSE

The Counterclaim Plaintiffs' claims are barred, in whole or in part, by the doctrines of unclean hands, laches, waiver, and/or estoppel.

## SIXTH AFFIRMATIVE DEFENSE

The Counterclaim Plaintiffs have failed to exhaust all primary and underlying insurance limits of liability.

## SEVENTH AFFIRMATIVE DEFENSE

Axis is not responsible for the Counterclaim Plaintiffs' attorneys' fees and costs incurred in bringing these Counterclaims.

## EIGHTH AFFIRMATIVE DEFENSE

The Counterclaim Plaintiffs' claims are barred to the extent they have failed to join in this action all parties necessary for the adjudication of this matter.

## NINTH AFFIRMATIVE DEFENSE

The Counterclaim Plaintiffs' rights and claims, if any, are barred by their negligent and fraudulent misrepresentations.

## TENTH AFFIRMATIVE DEFENSE

The Counterclaim Plaintiffs' claims are completely or partially barred because Axis shall not be liable for any settlement, Defense Costs, assumed obligation or admission to which it has not consented.

## ELEVENTH AFFIRMATIVE DEFENSE

Axis reserves its right to assert affirmatively and/or rely on any other matter that properly constitutes an avoidance or an affirmative defense.

## TWELFTH AFFIRMATIVE DEFENSE

Axis has timely reserved its rights under the Axis Policy, at law, and in equity to deny coverage or to rescind the Axis Policy.

## THIRTEENTH AFFIRMATIVE DEFENSE

Axis hereby incorporates by reference all of the allegations and causes of action it asserts in its Complaint against the Counterclaim Plaintiffs.

WHEREFORE, Axis respectfully requests that this Court dismiss the Counterclaims in their entirety, with prejudice, and enter judgment in Axis's favor and against the Counterclaim Plaintiffs, and award Axis the costs of this action, its attorneys' fees and all other relief that this Court deems to be appropriate under the facts and circumstances of this case.

13

Dated: August 16, 2007

KAUFMAN, BORGEEST & RYAN LLP

By: *Ann Marie Collins*

Wayne E. Borgeest, Esq. (WB 3034)
Joan M. Gilbride, Esq. (JG 6238)
Ann Marie Collins, Esq. (AC 7125)
Robert Benjamin (RB 9891)
200 Summit Lake Drive
Valhalla, New York 10598
(914) 741-6100

ATTORNEYS FOR AXIS REINSURANCE
COMPANY

# EXHIBIT 4

Wayne E. Borgeest (WB-3034)
Joan M. Gilbride (JG-6238)
Ann Marie Collins(AC-7125)
Robert A. Benjamin (RB-9891)
KAUFMAN BORGEEST & RYAN LLP
200 Summit Lake Dr
Valhalla, New York 10595
(914) 741-6100 (Telephone)
(914) 741-0025 (Facsimile)
wborgeest@kbrlaw.com
jgilbride@kbrlaw.com
acollins@kbrlaw.com
rbenjamin@kbrlaw.com

*Attorneys for Axis Reinsurance Company*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:                                          :    Chapter 11
REFCO, INC., et al.,                            :    Case No. 05-60006(RDD)
                    Debtors.                     :    (Jointly Administered)
-----------------------------------------------------------x
AXIS REINSURANCE COMPANY,                        :
                                                 :
                    Plaintiff,                   :
                                                 :
                                                 :
             v.                                  :    Adv. Proc. No. 07-01712 (RDD)
                                                 :
PHILLIP R. BENNETT, LEO R. BREITMAN,             :
NATHAN GANTCHER, TONE GRANT,                     :
DAVID V. HARKINS, SCOTT L. JAECKEL,              :
DENNIS A. KLEJNA, THOMAS H. LEE,                 :
SANTO C. MAGGIO, JOSEPH MURPHY,                  :
RONALD L. O'KELLEY, PERRY ROTKOWITZ,             :
SCOTT A. SCHOEN, WILLIAM M. SEXTON,              :
GERALD SHERER, PHILIP SILVERMAN,                 :
ROBERT C. TROSTEN, AND DOES 1 TO 10,             :
                                                 :
                    Defendants.                  :
-----------------------------------------------------------x

## ANSWER OF AXIS REINSURANCE COMPANY TO DEFENDANT PHILIP SILVERMAN'S COUNTERCLAIM

Plaintiff Axis Reinsurance Company ("Axis"), by counsel, hereby answers the defendant

Phillip Silverman's Counterclaim as follows:

**INTRODUCTION**

1.     Axis denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "1" of the Counterclaim, except admits that Axis bound coverage for an excess directors, officers and corporate liability policy issued to Refco, Inc. ("Refco") for claims made during the period from August 11, 2005 to August 11, 2006 (the "Axis Policy" or the "Policy"), and further admits that, upon information and belief, the Counterclaim Plaintiff and other former Refco officers and directors have been named as defendants in various civil actions and that the Counterclaim Plaintiff has requested coverage from Axis in connection with certain civil actions that have been named in Axis's Complaint.

2.     Axis admits the allegations contained in paragraph "2" of the Counterclaim.

3.     Axis denies the allegations contained in of paragraph "3" of the Counterclaim.

4.     Axis denies the allegations in paragraph "4" of the Counterclaim insofar as they relate to the Counterclaim Plaintiff's proposed interpretation and application of the Policy, admits the allegation regarding the existence of an actual controversy, and otherwise is without knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations contained in paragraph "4" of the Counterclaim.

**JURISDICTION AND VENUE**

5.     Axis is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "5" of the Counterclaim, except admits that it filed the Complaint commencing this adversary proceeding on or about May 23, 2007.

6.     Axis admits the allegations contained in paragraph "6" of the Counterclaim.

7.     Axis admits the allegations contained in paragraph "7" of the Counterclaim.

2

## PARTIES

8.     Axis denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "8" of the Counterclaim, except admits, upon information and belief, that Silverman served as Secretary of Refco Group Holdings, Inc. at times relevant to this action, and also served as Secretary of various Refco subsidiaries and Controller of Refco Group.

9.     Upon information and belief, Axis admits the allegations contained in paragraph "9" of the Counterclaim.

10.     Axis admits the allegations contained in paragraph "10" of the Counterclaim.

## GENERAL ALLEGATIONS

**A.     The Underlying Actions**

11.     Upon information and belief, Axis admits the allegations contained in paragraph "11" of the Counterclaim.

12.     Axis denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "12" of the Counterclaim, except admits, upon information and belief, that on October 17, 2005, Refco and certain of its unregulated subsidiaries filed for protection under Chapter 11 of the Bankruptcy Code.

13.     Axis denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "13" of the Counterclaim.

14.     Axis denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "14" of the Counterclaim, except admits, upon information and belief, that the Counterclaim Plaintiff has been named as a defendant in civil lawsuits.

3

15.    Axis denies the allegations contained in paragraph "15" of the Counterclaim insofar as they relate to Axis, and otherwise is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "15" of the Counterclaim insofar as they relate to other insurers.

**B.    The Refco "Tower" of D&O Insurance**

16.    Axis denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "16" of the Counterclaim, except admits that Axis bound coverage for a Secureexcess policy issued to Refco, Inc. for claims made during the period from August 11, 2005 to August 11, 2006.

The U.S Specialty Policy

17.    Upon information and belief, Axis admits that U.S. Specialty Insurance Company (the "Primary Insurer") issued a primary policy with a limit of liability of $10 million excess of applicable self-insured retentions (the "Primary Policy") and, with respect to the remainder of the allegations in paragraph "17" of the Counterclaim, asserts that the document referenced therein speaks for itself.

18.    Axis denies the allegations contained in paragraph "18" of the Counterclaim except asserts that, to the extent the allegations purport to describe the Primary Policy, the Primary Policy speaks for itself.

19.    Axis denies the allegations contained in paragraph "19" of the Counterclaim except asserts that, to the extent the allegations purport to describe the Primary Policy, the Primary Policy speaks for itself. Axis further states that, to the extent paragraph "19" sets forth a legal conclusion, no response is necessary.

20.    Axis denies the allegations contained in paragraph "20" of the Counterclaim except asserts that, to the extent the allegations purport to describe the Primary Policy, the

Primary Policy speaks for itself and, to the extent it calls for a legal conclusion, no response it necessary.

21.     Axis denies the allegations contained in paragraph "21" of the Counterclaim except asserts that, to the extent the allegations purport to describe the Primary Policy, the Primary Policy speaks for itself.

22.     Axis denies the allegations contained in paragraph "22" of the Counterclaim except asserts that, to the extent the allegations purport to describe the Primary Policy, the Primary Policy speaks for itself.

23.     Axis denies the allegations contained in paragraph "23" of the Counterclaim except asserts that, to the extent the allegations purport to describe the Primary Policy, the Primary Policy speaks for itself.

24.     Axis denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "24" of the Counterclaim.

The Lexington Policy

25.     Axis denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "25" of the Counterclaim, and further asserts that, to the extent the allegations purport to describe the contents of a document, the document speaks for itself.

26.     Axis denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "26" of the Counterclaim, and further asserts that, to the extent the allegations purport to describe the contents of a document, the document speaks for itself.

27.     Axis denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "27" of the Counterclaim.

28.    Upon information and belief, Axis admits the truth of the allegations contained in paragraph "28" of the Counterclaim.

The Axis Policy

29.    Axis denies the allegations contained in paragraph "29" of the Counterclaim, except admits that there are two D&O policies with lower attachment points than that of the Axis Policy, both of which must be fully exhausted due to actual payment of their limits before coverage under the Axis Policy may be triggered.

30.    Axis denies the allegations contained in paragraph "30" of the Counterclaim, except admits that it bound coverage for a Secureexcess policy issued to Refco, Inc. ("Refco") for claims made during the period from August 11, 2005 to August 11, 2006 (the "Axis Policy"), and that the Axis Policy has a limit of liability of $10 million. Axis further states that to the extent paragraph "30" of the Counterclaim purports to set forth the contents of the referenced document, no response is necessary, as the document speaks for itself.

31.    Axis denies the allegations contained in paragraph "31" of the Counterclaim, except admits that Refco paid the premium, and further asserts that, to the extent the allegations purport to recite the contents of the referenced document, no response is necessary, as the document speaks for itself.

32.    Axis denies the allegations contained in paragraph "32" of the Counterclaim, except admits that the Axis Policy was sent to Refco's agent on March 1, 2006.

33.    Axis denies the allegations contained in paragraph "33" of the Counterclaim, except admits that the Axis Policy was sent to Refco's agent on March 1, 2006.

34.    Axis asserts that no response to paragraph "34" of the Counterclaim is necessary, as the document referred to speaks for itself.

6

35.    Axis asserts that no response to paragraph "35" of the Counterclaim is necessary, as the document referred to speaks for itself.

36.    Axis asserts that no response to paragraph "36" of the Counterclaim is necessary, as the document referred to speaks for itself.

37.    Axis asserts that no response to paragraph "37" of the Counterclaim is necessary, as the document referred to speaks for itself.

38.    Axis states that paragraph "38" of the Counterclaim calls for a legal conclusion and, as such, no answer is required.

39.    Axis states that paragraph "39" of the Counterclaim calls for a legal conclusion and, as such, no answer is required.

40.    Axis denies the allegations contained in paragraph "40" of the Counterclaim, and further asserts that, to the extent paragraph "40" purports to recite the contents of the referenced document, no response is necessary, as that document speaks for itself.

41.    Axis denies the allegations contained in paragraph "41" of the Counterclaim, and further asserts that, to the extent paragraph "41" purports to recite the contents of the referenced document, no response is necessary, as that document speaks for itself.

42.    Axis asserts that no response to paragraph "42" of the Counterclaim is necessary, as the document referred to speaks for itself.

43.    Axis denies the allegations contained in paragraph "43" of the Counterclaim, except admits that the Axis Policy sent to Refco on March 1, 2006 contained a Knowledge Exclusion at Endorsement 6.

44.    Axis asserts that no response to paragraph "44" of the Counterclaim is necessary, as the document referred to speaks for itself.

45.    Axis denies the allegations contained in paragraph "45" of the Counterclaim.

7

<u>Other Excess Insurance</u>

46.    Axis denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "46" of the Counterclaim.

**C.  <u>Attempts by Axis to Avoid Coverage Under the Policy</u>**

47.    Axis denies the allegations contained in paragraph "47" of the Counterclaim, except admits that it denied coverage for the Noticed Matters on March 6, 2006, based on various terms and conditions of the Axis Policy and, to the extent paragraph "47" purports to recite the contents of the referenced document, states that no response is necessary, as the document speaks for itself.

48.    Axis asserts that no response to paragraph "48" of the Counterclaim is necessary, as the document referred to speaks for itself.

(i)  <u>The January 14, 2005 Letter</u>

49.    Axis denies the allegations contained in the first paragraph "49[1]" of the Counterclaim, except admits that it based its March 6, 2006 disclaimer, in part, on the January 14, 2005 Warranty signed by Phillip Bennett "on behalf of all Insureds under the Policy."

50.    Axis asserts that no response to the second paragraph "49" of the Counterclaim is necessary, as the document referred to speaks for itself.

51.    Axis denies the allegations contained in paragraph "50" of the Counterclaim.

52.    Axis denies the allegations contained in paragraph "51" of the Counterclaim.

53.    Axis asserts that no response to paragraph "52" of the Counterclaim is necessary, as the document referred to speaks for itself.

54.    Axis asserts that no response to paragraph "53" of the Counterclaim is necessary, as the document referred to speaks for itself.

---

[1]    There are two paragraph "49"s in the Counterclaim.

(ii) The U.S. Specialty Application

55.    Axis denies the allegations contained in paragraph "54" of the Counterclaim, and further states that, to the extent paragraph "54" purports to allege what is set forth in the referenced document, no response is necessary, as the document referred to speaks for itself.

56.    Axis asserts that no response to paragraph "55" of the Counterclaim is necessary, as the document referred to speaks for itself.

57.    Axis asserts that no response to paragraph "56" of the Counterclaim is necessary, as the document referred to speaks for itself.

(iii) The Claim Made Date

58.    Axis asserts that no response to paragraph "57" of the Counterclaim is necessary, as the document referred to speaks for itself.

(iv) The Knowledge Exclusion

59.    Axis asserts that no response to paragraph "58" of the Counterclaim is necessary, as the document referred to speaks for itself.

60.    Axis asserts that no response to paragraph "59" of the Counterclaim is necessary, as the document referred to speaks for itself.

2.    The Axis Adversary Proceeding

61.    Axis denies the allegations contained in paragraph "60" of the Counterclaim, except admits that it commenced the instant action on May 23, 2007, seeking a declaration that the Axis Policy does not provide insurance coverage for the Noticed Matters or the Related Matters for any of the defendants.

62.    Axis asserts that, to the extent paragraph "61" of the Counterclaim purports to allege what is set forth in the referenced document, no response is necessary, as that document

9

speaks for itself, and otherwise admits that the Complaint sets forth four separate grounds for Axis's position that there is no coverage under the Axis Policy.

63.    Axis asserts that no response to paragraph "62" of the Counterclaim is necessary, as the document referred to speaks for itself.

64.    Axis asserts that no response to paragraph "63" of the Counterclaim is necessary, as the document referred to speaks for itself.

65.    Axis denies the allegations contained in paragraph "64" of the Counterclaim, except admits that in the March 6, 2006 letter, Axis denied coverage based on, among other things, the Silliam action.

## COUNT I

### (Declaratory Relief)

66.    Axis repeats and realleges its responses to paragraphs "1" through "64" of the Counterclaim, as set forth in paragraphs "1" through "65," above.

67.    Axis denies the allegations contained in paragraph "66" of the Counterclaim.

68.    Axis denies the allegations contained in paragraph "67" of the Counterclaim, except admits that it has denied coverage under the Axis Policy to the Counterclaim Plaintiff.

69.    Axis denies the allegations contained in paragraph "68" of the Counterclaim, except admits, upon information and belief, that Refco has paid the premium due for the Axis Policy.

70.    Axis denies the allegations contained in paragraph "69" of the Counterclaim.

71.    Axis denies the allegations contained in paragraph "70" of the Counterclaim, except states that the Axis Policy has a policy period of August 11, 2005 to August 11, 2006.

72.    Axis denies the allegations contained in paragraph "71" of the Counterclaim.

73.    Axis denies the allegations contained in paragraph "72" of the Counterclaim.

74.    Axis denies the allegations contained in paragraph "73" of the Counterclaim.

75.    Axis denies the allegations contained in paragraph "74" of the Counterclaim.

76.    Axis denies the allegations contained in paragraph "75" of the Counterclaim.

77.    Axis denies the allegations contained in paragraph "76" of the Counterclaim.

78.    Axis denies the allegations contained in paragraph "77" of the Counterclaim.

79.    Axis denies the allegations contained in paragraph "78" of the Counterclaim.

80.    Axis denies the allegations contained in paragraph "80[2]" of the Counterclaim.

81.    Axis admits the allegations contained in paragraph "81" of the Counterclaim.

82.    Axis denies the allegations contained in paragraph "82" of the Counterclaim.

## COUNT II

### (Injunctive Relief)

83.    Axis repeats and realleges its responses to paragraphs "1" through "82" of the Counterclaim, as set forth in paragraphs "1" through "82", above.

84.    Axis denies the allegations contained in paragraph "84" of the Counterclaim.

85.    Axis denies the allegations contained in paragraph "85" of the Counterclaim.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Counterclaim fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

The Counterclaim Plaintiff's claims are barred, in whole or in part, by the terms, conditions, endorsements and exclusions of the Axis Policy and the underlying and/or primary insurance policies, and by application of law and principles of equity. Axis hereby expressly gives notice of and reserves the right to rely upon all the terms, conditions, endorsements and

---

[2]    There is no paragraph "79" in the Counterclaim.

11

exclusions of the Policy to deny or limit coverage on additional or different grounds as discovery reveals.

### THIRD AFFIRMATIVE DEFENSE

The Counterclaim Plaintiff has failed to mitigate any damages it may have sustained as a result of the matters alleged in the Counterclaim.

### FOURTH AFFIRMATIVE DEFENSE

The Counterclaim Plaintiff's claims are barred by the failure to comply with the terms and conditions of the Axis Policy and any underlying policies.

### FIFTH AFFIRMATIVE DEFENSE

The Counterclaim Plaintiff's claims are barred, in whole or in part, by the doctrines of unclean hands, laches, waiver, and/or estoppel.

### SIXTH AFFIRMATIVE DEFENSE

The Counterclaim Plaintiff has failed to exhaust all primary and underlying insurance limits of liability.

### SEVENTH AFFIRMATIVE DEFENSE

Axis is not responsible for the Counterclaim Plaintiff's attorneys' fees and costs incurred in bringing this action.

### EIGHTH AFFIRMATIVE DEFENSE

The Counterclaim Plaintiff's claims are barred to the extent he has failed to join in this action all parties necessary for the adjudication of this matter.

### NINTH AFFIRMATIVE DEFENSE

The Counterclaim Plaintiff's rights and claims, if any, are barred by his negligent and fraudulent misrepresentations.

12

### TENTH AFFIRMATIVE DEFENSE

The Counterclaim Plaintiff's claims are completely or partially barred because Axis shall not be liable for any settlement, Defense Costs, assumed obligation or admission to which it has not consented.

### ELEVENTH AFFIRMATIVE DEFENSE

Axis reserves its right to assert affirmatively and/or rely on any other matter that properly constitutes an avoidance or an affirmative defense.

### TWELFTH AFFIRMATIVE DEFENSE

Axis has timely reserved its rights under the Axis Policy, at law, and in equity to deny coverage or to rescind the Axis Policy.

### THIRTEENTH AFFIRMATIVE DEFENSE

Axis hereby incorporates by reference all of the allegations and causes of action it asserts in its Complaint against the Counterclaim Plaintiff.

Dated: August 16, 2007

KAUFMAN, BORGEEST & RYAN LLP

By: _____
Wayne E. Borgeest, Esq. (WB 3034)
Joan M. Gilbride, Esq. (JG 6238)
Ann Marie Collins, Esq. (AC 7125)
Robert Benjamin (RB 9891)
200 Summit Lake Drive
Valhalla, New York 10598
(914) 741-6100
ATTORNEYS FOR AXIS INSURANCE COMPANY

13