FRIEDMAN & WITTENSTEIN
A Professional Corporation
600 Lexington Avenue
New York, New York 10022
Telephone: (212) 750-8700
Facsimile: (212) 223-8391
Stuart I. Friedman (SF-9186)
Ivan Kline (IK-9591)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Greg A. Danilow (GD-1621)
Michael F. Walsh (MW-8000)

ZUCKERMAN SPAEDER LLP
1540 Broadway, Suite 1604
New York, New York 10036
Telephone: (212) 704-9600
Norman L. Eisen (NE-1198)
Thomas G. Macauley (TM-3944)
Laura E. Neish (LN-0040)

*Attorneys for Defendants and
Counterclaim-Plaintiffs William M.
Sexton and Gerald M. Sherer*

*Attorneys for Defendants Leo R.
Breitman, Nathan Gantcher, David V.
Harkins, Scott L. Jaeckel, Thomas H.
Lee, Ronald L. O'Kelley, and Scott A.
Schoen*

-and-

HELLER EHRMAN LLP
Times Square Tower
7 Times Square
New York, New York 10036
Telephone: (212) 832-8300
Facsimile: (212) 763-7600
Richard Cashman (RC-4769)

SAUL EWING LLP
245 Park Avenue, 24th Floor
New York, New York 10167
Telephone: (212) 672-1996
Facsimile: (212) 672-1920
John J. Jerome (JJ-2413)

HANNAFAN & HANNAFAN, LTD.
One East Wacker Drive, Suite 2800
Chicago, Illinois 60601
Telephone: (312) 527-0055
Michael T. Hannafan
Blake T. Hannafan

*Attorneys for Defendant and
Counterclaim-Plaintiff Philip
Silverman*

*Attorneys for Defendant and
Counterclaim-Plaintiff Joseph Murphy*

*Co-Attorneys for Defendant Tone N.
Grant*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------------- x
AXIS REINSURANCE COMPANY,

                      Plaintiff,

    v.

PHILLIP R. BENNETT, et al.,

                      Defendants.
--------------------------------------------------------------------------- x

:
:
:
:
:
:
:
:
:
:
:

Adv. Proc. No. 07-01712
(Awaiting District Court Index
No.)

*Electronically Filed*

--------------------------------------------------------------------------- x
AXIS REINSURANCE COMPANY,

                      Plaintiff,

    v.

PHILLIP R. BENNETT, et al.,

                      Defendants.
--------------------------------------------------------------------------- x

:
:
:
:
:
:
:
:
:
:
:

Case No. 07-cv-07924 (GEL)

*Electronically Filed*

**INSUREDS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR
SUMMARY JUDGMENT DISMISSING COMPLAINT OF AXIS REINSURANCE
COMPANY AND FOR ENTRY OF DECLARATORY JUDGMENT OF
<u>COVERAGE FOR INSUREDS UNDER THE 2005-2006 AXIS POLICY</u>**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................1

STATEMENT OF FACTS ...................................................................3

A.    REFCO BACKGROUND ................................................................3

B.    THE UNDERLYING ACTIONS .......................................................3

C.    REFCO'S D&O LIABILITY INSURANCE "TOWERS".................................4

    1.    The Refco Group Ltd. "Tower" of Insurance for the 2004-2005 Policy Period ................................................................4

    2.    The Refco Inc. "Tower" of Insurance for the 2005-2006 Policy Period ................................................................5

D.    ATTEMPTS BY AXIS TO AVOID COVERAGE UNDER THE 2005-2006 AXIS POLICY ................................................................9

E.    THE AXIS ADVERSARY PROCEEDING..........................................10

F.    THE AXIS COMPLAINT IN THE SOUTHERN DISTRICT OF NEW YORK AND WITHDRAWAL OF THE BANKRUPTCY REFERENCE .................................12

G.    THE INSUREDS' MOTION FOR SUMMARY JUDGMENT .......................12

ARGUMENT ................................................................12

POINT I – AXIS' DENIAL OF COVERAGE BASED UPON THE PURPORTED WARRANTY LETTER SHOULD BE REJECTED AS A MATTER OF LAW ........................14

PONT II – AXIS' DENIAL OF COVERAGE BASED UPON THE APPLICATION TO U.S. SPECIALTY SHOULD BE REJECTED AS A MATTER OF LAW ...........................17

POINT III – AXIS' DENIAL OF COVERAGE BASED UPON THE "KNOWLEDGE EXCLUSION" SHOULD BE REJECTED AS A MATTER OF LAW .......................18

POINT IV – AXIS' DENIAL OF COVERAGE BASED UPON A 1994 CFTC ENFORCEMENT PROCEEDING SHOULD BE REJECTED AS A MATTER OF LAW ........23

i

POINT V – DECLARATORY JUDGMENT THAT THE 2005-2006 AXIS POLICY
PROVIDES COVERAGE FOR THE INSUREDS FOR LOSSES ARISING FROM
THE UNDERLYING ACTIONS SHOULD BE ENTERED ......................................................24

CONCLUSION..................................................................................................................25

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986)..................................................................................13

*Banca Commerciale Italiana, New York Branch v. Northern Trust Int'l Banking Corp.,*
  160 F.3d 90 (2d Cir. 1998) .......................................................................13

*Bowman v. Allstate Ins. Co.,*
  238 F.3d 468 (2d Cir. 2001) .....................................................................13

*Braunstein v. Panagiotou (In re McCabe),*
  345 B.R. 1 (D. Mass. 2006) .....................................................................20

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986).................................................................................12

*Eames v. Nationwide Mut. Ins. Co.,*
  412 F. Supp. 2d 431 (D. Del. 2006)..........................................................16

*Federal Insurance Co. v. Sheldon,*
  150 B.R. 314 (S.D.N.Y. 1993).................................................................20

*In re HealthSouth Corp. Ins. Lit.,*
  308 F. Supp. 2d 1253 (N.D. Ala. 2004) ...............................................21, 22

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co. Group.,*
  No. 84 Civ. 7481 TPG, 1997 WL 148231 (S.D.N.Y. Mar. 31, 1997)..............................19, 20

*Parks Real Estate Purchasing Group v. St. Paul Fire & Marine Ins. Co.,*
  472 F.3d 33 (2d Cir. 2006) .......................................................................21

*Philadelphia Indem. Ins. Co. v. Horowitz, Greener & Stengel, LLP,*
  379 F. Supp. 2d 442 (S.D.N.Y. 2005) .......................................................18

*Phoenix Mut. Life Ins. Co. v. Raddin,*
  120 U.S. 183 (1887)..................................................................................17

*Scottsdale Ins. Co. v. Safeco Ins. Co. of Am.,*
  111 F. Supp. 2d 1273 (M.D. Ala. 2000), *aff'd without opinion,*
  254 F.3d 1084 (11th Cir. 2001) .............................................................21, 22

iii

*Seidel v. Houston Casualty Co.,*
    375 F. Supp. 2d 211 (S.D.N.Y. 2005) ..............................................................24, 25

*Shapiro v. American Home Assurance Co.,*
    616 F. Supp. 900 (D. Mass. 1984)...................................................................17, 18

*United Fire & Cas. Co. v. Arkwright Mut. Ins. Co.,*
    53 F. Supp. 2d 632, 641 (S.D.N.Y. 1999)) ............................................................21

*Wedtech Corp. v. Fed. Ins. Co.,*
    740 F. Supp. 214 (S.D.N.Y. 1990) ...........................................................16, 17, 18

*Wetherell v. Sentry Reinsurance, Inc.,*
    743 F. Supp. 1157 (E.D. Pa. 1990).......................................................................20

*World Trade Center Props., LLC v. Hartford Fire Ins. Co.,*
    345 F.3d 154 (2d Cir. 2003) ...........................................................................19, 20

## STATE CASES

*Ace Wire & Cable Co. v. Aetna Casualty & Surety Co.,*
    60 N.Y.2d 390, 469 N.Y.S.2d 655 (1983)...........................................................13, 14

*Bennacer v. Travelers Ins. Co.,*
    265 A.D.2d 823, 695 N.Y.S.2d 846 (4th Dep't 1999)..............................................20

*County of Columbia v. Continental Ins. Co.,*
    83 N.Y.2d 618, 612 N.Y.S.2d 345 (1994)..............................................................21

*Fed. Ins. Co. v. Kozlowski,*
    18 A.D.3d 33, 792 N.Y.S.2d 397 (1st Dep't 2005) ...........................................17, 18

*Japour v. Ed Ryan & Sons Agency,*
    215 A.D.2d 817, 625 N.Y.S.2d 750 (3d Dep't 1995)..............................................13

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Xerox Corp.,*
    25 A.D.3d 309, 807 N.Y.S.2d 344 (1st Dep't), *appeal dismissed,*
    7 N.Y.3d 886, 826 N.Y.S.2d 178 (2006)................................................................16

*Seaboard Surety Co. v. Gillette Co.,*
    64 N.Y.2d 304, 486 N.Y.S.2d 873 (1984)...........................................................14, 21

*Springer v. Allstate Life Ins. Co.,*
    94 N.Y.2d 645, 710 N.Y.S.2d 298 (2000)..............................................................20

*Westview Assocs. v. Guaranty Nat'l Ins. Co.*,
  95 N.Y.2d 334, 717 N.Y.S.2d 75 (2000) ...............................................................13

### FEDERAL STATUTES AND RULES

11 U.S.C. § 362(a) ...............................................................................................20

Fed. R. Civ. P. 56 ..........................................................................................1, 13, 25

Fed. R. Civ. P. 56(c) ............................................................................................12

### OTHER AUTHORITIES

2 Couch on Insurance 2d (Rev. ed.) § 14:37 .......................................................20

44A Am. Jur. 2d Insurance § 1603 ................................................................17, 18

Defendants William M. Sexton, Gerald Sherer, Joseph Murphy, Philip Silverman, Tone Grant,

Leo R. Breitman, Nathan Gantcher, David V. Harkins, Scott L. Jaeckel, Thomas H. Lee, Ronald L.

O'Kelley and Scott A. Schoen (collectively, the "Insureds"), by and through their undersigned counsel,

respectfully submit this memorandum of law in support of their motion, pursuant to Rule 56 of the

Federal Rules of Civil Procedure, for summary judgment dismissing the Complaint against them in *Axis*

*Reinsurance Co. v. Bennett, et al.,* No. 07-cv-07924 (S.D.N.Y.) (the "Axis District Court Action"). Four

of the Insureds, William M. Sexton, Gerald Sherer, Joseph Murphy and Philip Silverman (the

"Counterclaim Plaintiffs"), also move for summary judgment on their counterclaims in *Axis Reinsurance*

*Co. v. Bennett, et al.,* No. 07-cv-01712 (Bankr. S.D.N.Y.) (awaiting District Court Index No.) (the "Axis

Adversary Proceeding"), declaring that they are covered under the terms of the SecurExcess Policy No.

RNN506300 issued by Plaintiff Axis Reinsurance Company ("Axis") for losses arising out of various

proceedings related to the collapse of Refco Inc. (collectively, the "Underlying Actions").[1]

## Preliminary Statement

Axis is the second excess insurer in a "tower" of Directors and Officers ("D&O") liability

insurance obtained by Refco Inc. The Insureds are former Refco officers and directors and are insured

under Axis' policy. Since March 6, 2006, Axis has denied any contractual obligation to provide coverage.

Though compelled by court order to advance defense costs to the Insureds under its policy, Axis

maintains its right to recoup these defense payments, and continues to assert that the Insureds' claims are

excluded. The dispute between Axis and the Insureds is thus ripe for declaratory relief. For the reasons

---

[1]  In its November 13, 2007 Order, this Court withdrew the reference for the Consolidated Adversary Proceedings (as defined below) and stayed the Axis District Court Action "until 30 days have elapsed from this Court's decision regarding the appeals" in the Consolidated Adversary Proceedings. (Kim Declr. Ex. 16 at ¶ 4). The Insureds respectfully request that the Court lift the stay of such action to allow them to proceed with their motion for summary judgment dismissing Axis' claims. A lifting of the stay for this purpose will allow the eight Defendant Insureds who (unlike the Counterclaim Plaintiffs) have no pending Counterclaims against Axis in the Consolidated Adversary Proceedings, to also move for summary judgment regarding coverage under the Axis policy. Coverage issues under such policy are the same, whether in the context of the Complaint in the Axis District Court Action, or in connection with the Counterclaims in the Axis Adversary Proceeding.

set forth below, each of the Counts in Axis' Complaint in the Axis District Court Action should be dismissed as against the Insureds, and declaratory judgment on the Counterclaims asserted by Counterclaim Plaintiffs in the Axis Adversary Proceeding should be granted.

Count I of Axis' Complaint relies upon a purported "Warranty Letter" to contest coverage. Not only does the language of Axis' policy preclude reliance on the Warranty Letter, but it is clear that the Warranty Letter was executed in connection with an *earlier* policy issued by Axis, and not the policy pursuant to which the Insureds have made their claims for coverage. Moreover, a severability provision in the primary policy on the Refco D&O tower, to which the Axis policy "follows form," prevents Axis from relying on the Warranty Letter to deny coverage for the Insureds.

Count II of Axis' Complaint relies upon the failure of Refco's former Chief Executive Officer ("CEO"), Phillip Bennett ("Bennett"), to answer a question in an application to the primary insurer that was incorporated into Axis' policy. This Count fails because it is well-settled that where a question on an insurance application is not answered at all, the issuance of a policy without further inquiry waives the insurer's right to cite that lack of information as a ground for denying coverage. In addition, a severability provision of the primary policy specifically provides that any untrue statement in the application precludes coverage *only* as to any insured who knew of such untruth.

In Count III of the Complaint, Axis seeks to deny coverage based upon a purported "Knowledge Exclusion" that it added as an endorsement to its policy. However, because the Knowledge Exclusion was not included in the binder for Axis' policy, but was instead inserted unilaterally by Axis following the collapse of Refco, the exclusion is not properly part of Axis' policy. Moreover, as with Counts I and II, severability provisions of the primary policy bar Axis from relying upon the knowledge of other insureds to deny coverage to the Insureds here on the basis of the Knowledge Exclusion.

Finally, Count IV of the Complaint, which alleges no coverage for the Insureds on the grounds

that the Underlying Actions are based on many of the same wrongful acts previously alleged in a 1994

action filed by the CFTC, is meritless. Axis failed to assert this basis for excluding coverage in its initial

denials of coverage, and its Complaint provides virtually no facts that could even conceivably support

application of the exclusion it relies upon.

## STATEMENT OF FACTS

### A.    Refco Background

On or about August 11, 2005, Refco, Inc. conducted its initial public offering ("IPO"). (Kim

Declr. Ex. 8 at ¶ 56).[2]  Two months later, on October 10, 2005, Refco Inc. disclosed in a press release that

it had been carrying an undisclosed $430 million receivable from an entity controlled by defendant

Bennett, the CEO of Refco Inc. (*Id.* at ¶¶ 57, 59; Kline Declr. Ex. 1 at p.27, ¶ 11 and Ex. 3 at ¶ 11).  On

October 11, 2005, Refco Inc. issued a second press release relating to the $430 million receivable. (*Id.*).

On or about October 17, 2005, Refco Inc. and many of its direct and indirect subsidiaries

(collectively, "Refco" or the "Company"), filed voluntary petitions for relief under Chapter 11 of the

United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New

York. (Kim Declr. Ex. 8 at ¶ 61; Kline Declr. Ex. 3 at ¶ 12).

### B.    The Underlying Actions

The collapse of Refco in October 2005 and the bankruptcy filings that quickly followed led to the

commencement of the Underlying Actions against certain of Refco's officers and directors.  A number of

these Underlying Actions remain pending.  Civil actions against the Insureds were filed as early as

October 2005 and include the following: *In re Refco, Inc. Securities Litigation,* No. 05 Civ. 8626 (GEL)

---

[2] To avoid duplicative submission of underlying documents, the Insureds' motion cites whenever possible to the Declarations submitted in support of the motion for summary judgment filed on March 28, 2008 by insured Dennis Klejna, as the briefing on the Insureds' motion has been consolidated with Klejna's motion.  Klejna's motion includes allegations relating to the settlement agreement between Klejna and Lead Plaintiffs in the Securities Litigation (the "Settlement").  Those allegations, and the Settlement itself, are not relevant to the issue of coverage under the 2005-2006 Axis Policy (as defined below) for the Underlying Actions.  The Insureds reserve all rights with respect to the Settlement.

(S.D.N.Y.) (the "Securities Litigation"); *In re Refco Capital Markets, Ltd. Brokerage Customer Securities Litigation*, No. 06 Civ. 643 (GEL) (S.D.N.Y.); *American Financial International Group, et al. v. Bennett, et al.*, No. 05 Civ. 8988 (S.D.N.Y.); *V.R. Global Partners, L.P. v. Bennett, et al.*, No. 07 Civ. 8686 (GEL) (S.D.N.Y.); *Capital Management Select Fund Ltd. v. Bennett, et al.*, No. 07 Civ. 8688 (GEL) (S.D.N.Y.); *Kirschner v. Agoglia, et al.*, Adv. Proc. No. 07-3060 (RDD) (Bankr. S.D.N.Y.); *Kirschner v. Thomas H. Lee Partners, L.P., et al.*, No. 07-7074 (GEL) (S.D.N.Y.); and *Kirschner v. Grant Thornton LLP, et al.*, No. 2007-1-008818 (Il. Circuit Ct.). (Kline Declr. ¶ 2). Defendant Tone Grant was also named as a defendant in one criminal action, entitled *United States v. Phillip Bennett, Robert Trosten and Tone Grant*, S3 05 Cr. 1192 (NRB) (S.D.N.Y.) (the "Criminal Action"). (*Id.*).[3]

There is no dispute that each of the Insureds gave proper notice of the Underlying Actions in which they were named to the insurers on the Refco "tower" of liability insurance for the 2005-2006 policy period, including Axis, and requested coverage from each such insurer under the policies described below. (*See, e.g.,* Kim Declr. Ex. 20 at ¶¶ 5, 90, 98, 120, 129-30, 134).

C.    **Refco's D&O Liability Insurance "Towers"**

    1.    The Refco Group Ltd. "Tower" of Insurance for the 2004-2005 Policy Period

Refco Group Ltd. ("RGL"), then Refco's parent company, obtained for the period of August 5, 2004 to August 11, 2005 (the "2004-2005 Policy Period"), a "tower" of D&O insurance consisting of a primary policy and two excess policies (the "2004-2005 Program").[4]

Under the 2004-2005 Program, U.S. Specialty Insurance Company ("U.S. Specialty") provided the primary policy (the "2004-2005 U.S. Specialty Policy"). (Sylwestrzak Declr. Ex. B). U.S. Specialty issued the policy binder for the 2004-2005 U.S. Specialty Policy, dated August 5, 2004, and thereafter

---

[3]  On February 15, 2008, Bennett pled guilty to the counts against him in the Criminal Action. On February 20, 2008, Robert Trosten ("Trosten"), Refco's former Chief Financial Officer, also pled guilty to certain of the charges against him in the Criminal Action. Neither Bennett nor Trosten is a movant on the Insureds' summary judgment motion.

issued the 2004-2005 U.S. Specialty Policy to RGL on or about October 23, 2004. (*Id.* at ¶¶ 4-5 and Exs. A, B). In connection with the 2004-2005 U.S. Specialty Policy, RGL submitted a "long form" application to U.S. Specialty that was executed by Bennett, on behalf of RGL ("Application"). (*Id.* at ¶ 6 and Ex. C). Greenwich Insurance Company provided the first excess layer of coverage. (*Id.* at ¶ 3).

Axis provided the second excess layer of coverage to RGL (the "2004-2005 Axis Policy"). (Sylwestrzak Declr. ¶¶ 3, 12 and Ex. F). In issuing the 2004-2005 Axis Policy, Axis did not require an application of its own, but instead relied upon the Application submitted to U.S. Specialty. (*Id.* at ¶ 9). However, Axis would not issue the 2004-2005 Axis Policy unless RGL supplied it with a so-called "Warranty Letter," stating that "[n]o [proposed insured] is cognizant of any fact, circumstance, situation, act, error or omission which he[] has reason to suppose might afford grounds for any Claim . . . within the scope of the proposed insurance" and that "if such knowledge exists, any claim arising therefrom is excluded." (Sylwestrzak Declr. ¶ 10 and Ex. E; Brooks Declr. ¶ 3 and Ex. A).

On January 14, 2005, Axis sent the unsigned Warranty Letter to RGL, requesting that RGL execute it. (*See* Brooks Declr. ¶ 3). On or about January 21, 2005, Bennett, as President and CEO of RGL, signed the Warranty Letter and submitted it to Axis. (*See* Brooks Declr. ¶ 3 and Ex. A; Sylwestrzak Declr. ¶ 10 and Ex. E). The Warranty Letter was never submitted to U.S. Specialty, nor was it ever made a part of the Application. (Sylwestrzak Declr. ¶ 11).

On or about April 25, 2005, Axis issued the 2004-2005 Axis Policy to RGL. (Sylwestrzak Declr. ¶ 12 and Ex. F). There were no claims made against the Insureds while the 2004-2005 Axis Policy was in effect, and the policy is not in issue.

2.    The Refco Inc. "Tower" of Insurance for the 2005-2006 Policy Period

In preparation for its August 2005 IPO, Refco obtained D&O insurance for the benefit of its

---

[4]    Refco Inc. was formed in connection with an August 2005 IPO. (*See* Kim Declr. Ex. 8 at ¶ 56).

officers and directors (including the Insureds) for the policy period of August 11, 2005 to August 11,

2006 (the "2005-2006 Policy Period"). Refco's D&O insurance was again structured as a "tower,"

consisting of a primary policy and five excess policies totaling $70 million in coverage. (*See* Sylwestrzak

Delcr. ¶ 14) (listing carriers and coverage).

    (a)    *The 2005-2006 U.S. Specialty Policy*

U.S. Specialty issued the primary policy for the 2005-2006 Policy Period, with a $10 million limit

of liability (the "2005-2006 Primary Policy"). (*Id.* at ¶ 15 and Ex. G). U.S. Specialty did not require a

new application from Refco, but instead relied upon the Application submitted by RGL for the 2004-2005

Policy Period. (*Id.* at ¶ 16).

The 2005-2006 Primary Policy names as "Insured Persons" "any past, present or future director or

officer of the Company." (*Id.* at Ex. G, Definition (F).) The "Company" is defined as Refco Inc. "and

any Subsidiary thereof." (*Id.* at Definition (C). *See also id.* at Declarations Page, Item 1). Axis does not

dispute that each of the Insureds was an officer or director of the Company, and is an Insured Person.

(Kim Declr. Ex. 8 at ¶¶ 19-23, 25, 27-28, 30-33).

The 2005-2006 Primary Policy provides Refco directors and officers with coverage for "Loss

arising from Claims . . . against the Insured Persons for Wrongful Acts." (Sylwestrzak Declr. Ex. G, at

Insuring Agreement (A)). "Loss" is defined by the 2005-2006 Primary Policy to include defense costs.

(*Id.* at Definition (G) and Endorsement No. 4). Axis does not dispute that the Underlying Actions are

Claims for "Wrongful Acts," as defined in the 2005-2006 Primary Policy. (*See id.* at Definition (P)).

The 2005-2006 Primary Policy also contains two severability provisions. With respect to

exclusions, the Policy states, in pertinent part, that "no Wrongful Act of any Insured Person will be

imputed to any other Insured Person who did not have knowledge of, or directly participate in the

commission of, such Wrongful Act . . . ." (Sylwestrzak Decl. Ex. G at p. 5 (Exclusions)). The 2005-2006

Primary Policy also contains a "Full Severability" Endorsement, providing, *inter alia*, that:

> No knowledge or information possessed by any Insured will be imputed to any other Insured. If any of the particulars or statements in the Application is untrue, this Policy will be void with respect to any Insured who knew of such untruth.

(Sylwestrzak Decl. Ex. G at Endorsement No. 10). The 2005-2006 Primary Policy further provides that "notwithstanding anything in this Policy to the contrary, the Insurer shall not be entitled under any circumstances to rescind the coverage provided under Insuring Agreement A of this Policy," (*id.* at Endorsement No. 13), thereby further evidencing a clear intent that one insured not lose his coverage as a result of the knowledge of another insured.

U.S. Specialty recognized its coverage obligations and paid the defense costs of the Insureds until the limits of the 2005-2006 Primary Policy were exhausted last year. (*See* Kim Declr. Ex. 8 at ¶¶ 8-9).

(b)  *The Lexington Policy*

Lexington Insurance Company ("Lexington") issued the first excess policy for the 2005-2006 Policy Period, with a $7.5 million limit of liability in excess of $10 million in underlying coverage (the "Lexington Policy" or "First Excess Policy"). (Sylwestrzak Decl. Ex. H). After the 2005-2006 Primary Policy was exhausted, Lexington paid the defense costs of the Insureds in connection with the Underlying Actions, until the limits of the Lexington Policy were exhausted in July 2007. (*See* Kim Declr. Ex. 3).

(c)  *The 2005-2006 Axis Policy*

Axis was the second excess insurer for the 2005-2006 Policy Period. (Sylwestrzak Declr. ¶ 14). On August 11, 2005, Axis provided Refco with a binder (the "Axis Binder") pursuant to which Axis agreed to provide $10 million in coverage that would follow the 2005-2006 Primary Policy and the First Excess Policy. (Sylwestrzak Declr. ¶ 18 and Ex. I). The Axis Binder states that coverage would be provided pursuant to the "Axis SecurExcess Form," with four endorsements listed. (*See* Sylwestrzak Declr. Ex. I). A "Knowledge Exclusion" was not included among the four endorsements, or referred to elsewhere in the Axis Binder. (*See id.*). Nor does the Axis Binder refer to the Warranty Letter. (*See id.*).

Although it is dated September 11, 2005, with an inception date of August 11, 2005, Axis did not actually issue its SecurExcess Policy No. RNN 506300 (the "2005-2006 Axis Policy") until March 1, 2006. (*See id.* at ¶¶ 19-20 and Ex. K). Therefore, the actual issuance of the 2005-2006 Axis Policy was months after certain of the Underlying Actions were commenced and notice of such actions had been provided to the insurers in the Refco "tower" of D&O insurance, including Axis. As provided in the Axis Binder, the 2005-2006 Axis Policy has a $10 million limit of liability. (*See id.* at Exs. I, J).

The 2005-2006 Axis Policy "follows the form" of the 2005-2006 Primary Policy and, accordingly, provides coverage "in conformance with the provisions of" the 2005-2006 Primary Policy. (*Id.* at Ex. J, (I) Insuring Agreement). The 2005-2006 Axis Policy specifically defines "Insureds" as the same persons who may be entitled to insurance under the 2005-2006 Primary Policy and defines "Claim(s)" as "event(s) which take place during the Policy Period and which trigger(s) coverage under the insuring agreement(s) of the Underlying Insurance." (Sylwestrzak Declr. Ex. J at (II), Definitions (A) and (C)). Accordingly, a "Claim" for a "Wrongful Act" brought against the Insureds that falls within Insuring Agreement A of the 2005-2006 Primary Policy also falls within the Insuring Agreement of the 2005-2006 Axis Policy.

Endorsement No. 5 to the 2005-2006 Axis Policy, provides that the Application submitted to U.S. Specialty will also be considered the application for the 2005-2006 Axis Policy. This Endorsement states in pertinent part that "it is agreed by the Insurer and Insureds that the application or proposal signed February 8, 2005 and submitted to Axis Reinsurance Company on U.S. Specialty Insurance Company's form shall be accepted by the Insurer as the Application for this Policy." (*Id.* at Endorsement No. 5).

The 2005-2006 Axis Policy (as issued in March 2006) added as a final endorsement a "Knowledge Exclusion," purporting to exclude Claims:

> based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, or event, which as of the inception date of the Policy Period, any Insured had knowledge and had reason to suppose might give rise to a Claim that would fall within the scope of the insurance afforded by

8

this Policy.

(*Id.* at Endorsement No. 6).  However, as stated above, the Axis Binder makes no reference to the inclusion of any Knowledge Exclusion.  (*See* Sylwestrzak Decl. Ex. I).

**D.  Attempts by Axis to Avoid Coverage under the 2005-2006 Axis Policy**

By letter dated March 6, 2006 (the "Denial Letter"), and by subsequent letters, Axis purported to deny coverage to the Insureds for "Claims" made against them for "Wrongful Acts" as defined in the 2005-2006 Primary Policy.  (Sylwestrzak Declr. Ex. L).  In the Denial Letter, Axis asserted four grounds for denying coverage:

- First, Axis relied upon the Warranty Letter that was submitted to Axis by RGL in connection with the 2004-2005 Axis Policy.  Axis contended that Bennett's representation in the Warranty Letter was false, and entitled Axis to deny coverage to Refco and its officers and directors under the subsequent 2005-2006 Axis Policy.  (*See id.* at p. 9).

- Axis also relied upon Bennett's failure to answer Question 12(b) in the Application to U.S. Specialty for coverage.  (Sylwestrzak Declr. Ex. L at pp. 9-10).  Question 12(b) of the Application inquired as to whether any proposed Insured was "aware of any fact, circumstance or situation involving the Application . . . which he . . . has reason to believe might result in a claim being made."  (*See* Sylwestrzak Declr. Ex. L, at p. 8).  The Denial Letter asserted that Bennett's failure to disclose the alleged financial fraud in the answer to that question resulted in the Claims being excluded from coverage.  (*See* Sylwestrzak Declr. Ex. L at p. 10).

- Axis also relied upon the purported "Knowledge Exclusion" endorsement, unilaterally added by Axis to its 2005-2006 Axis Policy.  (Sylwestrzak Declr. Ex. L. at p. 9).  The Denial Letter asserted that Bennett's knowledge, when the 2005-2006 Axis Policy was issued, of facts that might give rise to claims under the Policy, barred coverage not only for Bennett, but also for all other insureds for each of the matters for which notice had been given.  (*Id.* at p. 11).

- Axis also asserted that each Claim was purportedly a Claim first made before the inception date of the 2005-2006 Axis Policy (*i.e.*, prior to August 11, 2005).  The Denial Letter contended in this regard that each of the Claims was sufficiently related to a complaint filed on June 30, 2005 in an action filed by the Bankruptcy Trust of Gerard Sillam (the "*Sillam*

Action"), so that each could be treated as a single interrelated Claim made prior to August 11, 2005. (*See id.* at pp. 4, 10).[5]

**E.    The Axis Adversary Proceeding**

On or about May 24, 2007, Axis commenced the Axis Adversary Proceeding in the Bankruptcy Court for the Southern District of New York, seeking a declaration that the 2005-2006 Axis Policy does not provide coverage for the Insureds. (Kim Declr. ¶ 10 and Ex. 8). Axis' Complaint contained four counts, each of which purported to set forth a separate ground for Axis' position that there is no coverage under the 2005-2006 Axis Policy. (*See* Kim Declr. Ex. 8 at ¶¶ 143-161). Counts I, II and III relied upon, respectively, the Warranty Letter, the Application and the alleged Knowledge Exclusion endorsement, consistent with the Denial Letter. (*See id.* at ¶¶ 143-157). However, Count IV of Axis' Complaint relied upon Clause XI of the 2005-2006 Axis Policy. In essence, this clause excludes coverage for any claim that is based upon a suit against any insured, taking place on or prior to June 4, 2004, and any wrongful act alleged therein, or any wrongful act that is logically interrelated to such prior wrongful act by a common nexus. (*See* Sylwestrzak Declr. Ex. J at (XI) Exclusions. *See also* Kim Declr. Ex. 8 at ¶¶ 158-161). Axis asserted that wrongful acts alleged in a 1994 CFTC enforcement action (the "1994 CFTC Action") are also alleged in the Underlying Actions (the earliest of which were commenced in 2005), and thus the 2005-2006 Axis Policy does not provide coverage for these actions pursuant to Clause XI. (Kim Declr. Ex. 8 at ¶¶ 160-161). The Complaint failed to provide any details regarding the 1994 CFTC Action. Notably, Axis had failed to even cite to Clause XI, or the 1994 CFTC Action, in its Denial Letter.[6]

On or about July 12, 2007, four of the Insureds, Sexton, Sherer, Murphy and Silverman, along

---

[5]  As set forth below, Axis has apparently abandoned this ground for denying coverage.

[6]  The Complaint did not assert that the *Sillam* Action was a ground for denying coverage, as had been previously asserted in the Denial Letter.

with Dennis Klejna, answered the Complaint in the Axis Adversary Proceeding, and filed Counterclaims seeking a declaration of coverage under the 2005-2006 Axis Policy, and an injunction to compel Axis to pay losses, including defense costs, in the Underlying Actions.[7] These former officers also then filed a motion for preliminary injunctive relief to compel Axis to advance defense costs under the Policy. (*See* Kim Declr. ¶ 14 and Ex. 9; Kline Declr. ¶ 4 and Exs. 1, 2). The other Insureds moved to dismiss the Axis Adversary Proceeding. (*See* Kline Declr. ¶ 8). On August 30, 2007, the Bankruptcy Court granted the motion by Sexton, Sherer, Murphy, Silverman and Klejna, for a preliminary injunction based on their Counterclaims, and also dismissed the Complaint without prejudice. (*See* Kim Declr. Ex. 13).

On or about September 25, 2007, the Insureds herein (along with Dennis Klejna) moved for summary judgment and a permanent injunction compelling Axis to pay the defense costs as incurred, pending a final determination of coverage under the 2005-2006 Axis Policy, or until the Policy is exhausted.[8] By Order dated October 19, 2007, as amended on October 22, 2007, the Bankruptcy Court granted the motions for summary judgment in their entirety. (Kim Declr. ¶ 20 and Ex. 15). Axis filed an appeal to this Court from the Bankruptcy Court's October 19, 2007 Order requiring the advancement of defense costs, which remains pending. (Kim Declr. ¶ 20).

Following the summary judgment order, Axis advanced Insureds' defense costs in connection with the Underlying Actions until the 2005-2006 Axis Policy was exhausted. Axis has steadfastly maintained its right to recoup defense payments made to the Insureds. (*See* Kim Declr. ¶ 26; Kline Declr. ¶ 10).

---

[7] Dennis Klejna and Joseph Murphy later filed an Amended Answer and Counterclaims on July 31, 2007. (Kim Declr. ¶ 14 and Ex. 9).

[8] The Insureds (other than Sexton, Sherer, Silverman, Murphy and Klejna) had commenced two separate adversary proceedings – *Grant v. Axis Reinsurance Co.,* Adv. Proc. No. 07-2005-rdd (Bankr. S.D.N.Y) and *Breitman v. Axis Reinsurance Co.,* Adv. Proc. No. 07-2032-rdd (Bankr. S.D.N.Y.) – seeking advancement under the 2005-2006 Axis Policy, which were consolidated with the Axis Adversary Proceeding (collectively, the "Consolidated Adversary Proceedings"). (Kim Declr. Ex. 16 at ¶ 2).

**F.    The Axis Complaint in the Southern District of New York
       and Withdrawal of the Bankruptcy Reference**

Shortly after the dismissal of its Complaint in the Axis Adversary Proceeding, on September 10,

2007, Axis filed a nearly identical complaint in this Court (the "Axis Complaint").  (Kim Declr. ¶ 25 and

Ex. 20).  Essentially, in Counts I, II and III, Axis seeks a determination that, based upon the knowledge of

Bennett, there is no coverage for any of Refco's former officers or directors in connection with the

Underlying Actions, while Count IV relies upon the 1994 CFTC Action.  (*See* Kim Declr. Ex. 20 at ¶¶

140-158).

By agreement of the parties and pursuant to this Court's Order of November 13, 2007, the

bankruptcy reference was withdrawn for the Consolidated Adversary Proceedings, so that all coverage

issues could be determined in this Court.  (Kim Declr. ¶ 21 and Ex. 16).

**G.    The Insureds' Motion for Summary Judgment**

The Insureds now bring the instant motion for summary judgment dismissing Axis' Complaint

against them in the Axis District Court Action.  Insureds Sexton, Sherer, Silverman and Murphy also

bring the instant motion for summary judgment on Count I of their Counterclaims in the Axis Adversary

Proceeding, declaring that they are covered by the 2005-2006 Axis Policy for losses arising out of the

Underlying Actions in which they are named.

**ARGUMENT**

Summary judgment is mandated where "there is no genuine issue as to any material fact" and "the

moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The U.S. Supreme

Court has instructed that "[s]ummary judgment procedure is properly regarded not as a disfavored

procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to

secure the just, speedy and inexpensive determination of every action.'"  *Celotex Corp. v. Catrett*, 477

U.S. 317, 327 (1986) (citation omitted).

There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *Banca Commerciale Italiana, New York Branch v. Northern Trust Int'l Banking Corp.*, 160 F.3d 90, 93 (2d Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). And, as both Rule 56 and the relevant case law make clear, not every factual dispute precludes summary judgment. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original).

Under New York law, "an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract. The initial interpretation of a contract is a matter of law for the court to decide." *Bowman v. Allstate Ins. Co.*, 238 F.3d 468, 470 (2d Cir. 2001) (citation omitted). Even the claimed existence of possible different interpretations of a policy does not require a trial when the issue can be resolved on the basis of the policy alone. *See, e.g., Japour v. Ed Ryan & Sons Agency*, 215 A.D.2d 817, 818, 625 N.Y.S.2d 750, 751 (3d Dep't 1995) ("[T]he interpretation of any contract presents a question of law to be determined by the court when the ambiguity can be resolved on the basis of the contract alone, without reference to extrinsic evidence."). *See also Westview Assocs. v. Guaranty Nat'l Ins. Co.*, 95 N.Y.2d 334, 339, 717 N.Y.S.2d 75, 77 (2000) ("At the very least, defendant's interpretation presents an ambiguity in the umbrella policy which must be resolved against the insurer [on summary judgment] as drafter of the agreement."). Thus, in order for an insurance carrier to prevail on its interpretation of an insurance policy, it "must demonstrate that its interpretation is not only reasonable, but the only fair interpretation." *Japour*, 215 A.D.2d at 818, 625 N.Y.S.2d at 752.

This rule providing that any ambiguities in an insurance policy should be strictly construed against the insurer applies with particular strength to exclusions, exceptions and words of limitation. *See, e.g., Ace Wire & Cable Co. v. Aetna Casualty & Surety Co.*, 60 N.Y.2d 390, 398, 469 N.Y.S.2d 655, 658

(1983).  Accordingly, if an insurer wishes to limit its policy obligations, it must do so "in clear and

unmistakable language."  *Seaboard Surety Co. v. Gillette Co.*, 64 N.Y.2d 304, 311, 486 N.Y.S.2d 873,

876 (1984).  Any exceptions from policy coverage must be specific and clear in order to be enforced, and

"are to be accorded a strict and narrow construction."  *Id.*

## POINT I

### AXIS' DENIAL OF COVERAGE BASED UPON THE PURPORTED WARRANTY LETTER SHOULD BE REJECTED AS A MATTER OF LAW

Count I of Axis' Complaint alleges that the Warranty Letter excludes coverage under the 2005-

2006 Axis Policy.  (*See* Kim Declr. Ex. 20 at ¶¶ 140-144).  The Warranty Letter, dated January 14, 2005,

was signed by Bennett as President and CEO of RGL.  The letter states that Bennett is not aware of any

fact which might give rise to a claim under the Policy and that, if such knowledge does exist, any claim

arising therefrom is excluded from coverage.  (Brooks Declr. Ex. A).  Axis alleges that Bennett's

knowledge of fraud at Refco when he executed the Warranty Letter excludes coverage for all insureds.

(Kim Declr. Ex. 20 at ¶¶ 141, 143).

For multiple reasons, it is clear that Axis cannot rely upon the Warranty Letter in denying

coverage to the Insureds under the 2005-2006 Axis Policy.  First, this January 14, 2005 Warranty Letter is

simply not part of the 2005-2006 Axis Policy at issue here.  The facts clearly establish that the Warranty

Letter was executed by Bennett in connection with the 2004-2005 Axis Policy to RGL – and not the

2005-2006 Axis Policy to Refco Inc.

Under RGL's 2004-2005 Program, U.S. Specialty provided the Primary Policy, and Axis provided

the second excess layer of coverage.  RGL was the policyholder named in the 2004-2005 Axis Policy, and

Bennett signed the Warranty Letter on January 21, 2005 as President of CEO of RGL.  Refco Inc., the

policyholder named in the 2005-2006 Axis Policy, did not even exist at the time the Warranty Letter was

executed.  In fact, it was some four months after the Warranty Letter was executed that Refco announced

its planned public offering and began the process of seeking insurance for the 2005-2006 Policy Period

that would provide coverage to Refco's directors and officers following an IPO. (Brooks Declr. ¶ 4;

Sylwestrzak Declr. ¶ 10).

In a memorandum contemporaneous to the Warranty Letter, Refco employee Ellen Brooks

advised Bennett that "Axis . . . is one of three insurance carriers for our *present D&O coverage that was*

*placed August 5, 2004*" and that "[Axis is] requiring you to sign a warranty letter confirming that we do

not currently have a claim against our D&O policy." (Brooks Declr. Ex. A) (emphasis added). Pamela

Sylwestrzak of Marsh USA, Inc. ("Marsh"), Refco's insurance broker, similarly confirms that while U.S.

Specialty had issued its 2004-2005 Primary Policy on October 23, 2004, Axis refused to issue its 2004-

2005 Axis Policy until RGL had submitted both a "long form" application to U.S. Specialty, as well as the

Warranty Letter. (Sylwestrzak Declr. ¶¶ 8-11). Indeed, the 2004-2005 Axis Policy did not issue until

April 25, 2005 – three months after Bennett executed the Warranty Letter. (*Id.* at ¶¶ 10, 12). For these

reasons, the "Policy" to which the Warranty Letter refers is the 2004-2005 Axis Policy, and not the 2005-

2006 Axis Policy at issue before this Court.

In addition, the language of the 2005-2006 Axis Policy itself precludes reliance by Axis upon the

Warranty Letter. The Warranty Letter is not referred to in *either* the Axis Binder or the 2005-2006 Axis

Policy. Moreover, the 2005-2006 Primary Policy, to which the 2005-2006 Axis Policy "follows form,"

specifically provides that "[b]y acceptance of this Policy, the Insureds and the Insurer agree that this

Policy (including the Application and any materials submitted therewith) and any written endorsements

attached hereto constitute the entire agreement between the parties with respect to this insurance." (*See*

Sylwestrzak Declr. Ex. G, at Condition (O)). The term "Application" is defined in the 2005-2006

Primary Policy as "the application attached to and forming a part of this [2005-2006 Primary] Policy,

including any materials submitted in connection with such application, all of which are deemed a part of

the Policy.") (*Id.* at Definitions (A)).  In fact, Marsh confirms that the Warranty Letter was never attached

to the Application or otherwise submitted to U.S. Specialty in connection with either the 2004-2005 U.S.

Specialty Policy, or the subsequent 2005-2006 Primary Policy that is relevant to the instant case.

(Sylwestrzak Declr. ¶ 11).  Thus, Axis is barred by the above-described "entire agreement" clause from

treating the Warranty Letter as part of the 2005-2006 Primary Policy.  *See, e.g., Nat'l Union Fire Ins. Co.*

*of Pittsburgh, Pa. v. Xerox Corp.*, 25 A.D.3d 309, 309-10, 807 N.Y.S.2d 344, 345 (1st Dep't) (term not

included or incorporated into policy was not part of the policy and could not be relied upon by insurer to

deny coverage), *appeal dismissed*, 7 N.Y.3d 886, 826 N.Y.S.2d 178 (2006); *Eames v. Nationwide Mut.*

*Ins. Co.,* 412 F. Supp. 2d 431, 436 (D. Del. 2006) (documents other than policy text and accompanying

declarations were not part of insurance contract where policy text stated only that "the enclosed

Declarations" were part of policy contract and declarations similarly provided that they were part of

policy).

      Finally, even assuming *arguendo* that the Warranty Letter could somehow be construed to be a

part of the 2005-2006 Axis Policy or the Application (which it is clearly not), a severability provision of

the 2005-2006 U.S. Specialty Policy prevents Axis from relying on the Warranty Letter to bar coverage

for the Insureds.  As indicated above, Endorsement No. 10 states that "[n]o knowledge or information

possessed by any Insured will be imputed to any other Insured" and that "[i]f any of the particulars or

statements in the Application is untrue, this Policy will be void with respect to any Insured who knew of

such untruth." (Sylwestrzak Declr. Ex. G, at Endorsement No. 10).  There is nothing in the 2005-2006

Axis Policy stating that it does not "follow form" with respect to this provision.  Thus, as a matter of law,

Endorsement No. 10 expressly bars Axis from imputing Bennett's knowledge – or the knowledge of any

other insured – to the Insureds here and the innocent insureds remain entitled to coverage, despite any

misrepresentations by Bennett when he signed the Warranty Letter.  *See Wedtech Corp. v. Fed. Ins. Co.,*

740 F. Supp. 214, 218-19 (S.D.N.Y. 1990) (effect of severability provision in insurance policy was "to

bar coverage only for those insureds who participated in the fraudulent inducement" of the policy); *Fed.*

*Ins. Co. v. Kozlowski,* 18 A.D.3d 33, 39, 792 N.Y.S.2d 397, 401 (1st Dep't 2005). *Accord Shapiro v.*

*American Home Assurance Co.,* 616 F. Supp. 900, 903-05 (D. Mass. 1984).

## POINT II

## AXIS' DENIAL OF COVERAGE BASED UPON THE APPLICATION TO U.S. SPECIALTY SHOULD BE REJECTED AS A MATTER OF LAW

Count II of the Axis Complaint alleges that there is no coverage for any insured due to Bennett's

failure to answer Question 12 in the Application. (Kim Declr. Ex. 20 at ¶¶ 145-149). As set forth above,

the Application became the application for the 2005-2006 Axis Policy pursuant to Endorsement No. 5.

(*See* Sylwestrzak Declr. Ex. J at Endorsement No. 5). Bennett did not check either box for Questions

12(a) and 12(b) on the Application, and Axis argues that Bennett's knowledge of "facts, circumstances or

situations involving Refco," and his "failure to make the necessary disclosures pursuant to Question 12 of

the Application, exclude coverage for all Insureds." (Kim Declr. Ex. 20 at ¶¶ 146-148).[9]

Axis' reliance upon the incomplete Application fails for two reasons. First, it is well-settled that

"where upon the face of an [insurance] application a question appears to be imperfectly or incompletely

answered, *or not answered at all*, the issuance of a policy without further inquiry waives the want of, or

the imperfection in, the answer." 44A Am. Jur. 2d Insurance § 1603 (emphasis added). *See also Phoenix*

*Mut. Life Ins. Co. v. Raddin*, 120 U.S. 183, 190 (1887) ("[W]here upon the face of the application, a

question appears to be not answered at all, or to be imperfectly answered, and the insurers issue a policy

without further inquiry, they waive the want or imperfection in the answer, and render the omission to

---

[9]  The Application at Question 12 asked (a) whether "any claims [have] been made during the last 5 years against any person or entity proposed for this insurance," and (b) whether "any person or entity proposed for this insurance [is] aware of any fact, circumstance or situation . . . which he, she or it has reason to believe might result in a claim being made." (Sylwestrzak Declr. Ex. C at p. 3).

answer more fully immaterial."); *Philadelphia Indem. Ins. Co. v. Horowitz, Greener & Stengel, LLP*, 379 F. Supp. 2d 442 (S.D.N.Y. 2005) (Insurer was estopped from claiming that policy was void due to insured's failure to provide supplemental forms explaining truthful answer to question about potential claims, and failure to include supplemental forms did not result in material misrepresentation). This is because "[a]n insurer's issuance of a policy in the face of what appears to be a lack of sufficient information to allow the insurer to determine its risks, therefore, estops the insurer from, or waives the insurer's right to, cite that lack of information as a ground for avoiding coverage." 44A Am. Jur. 2d Insurance § 1603. Thus, Axis' decision to issue the 2005-2006 Axis Policy without directly challenging the omission of an answer to Question 12 of the Application constitutes a waiver of any objection based upon Bennett's failure to answer.

Second, even if, as Axis alleges, "Bennett's knowledge, and failure to make the necessary disclosures pursuant to Question 12 of the Application" (*see* Kim Declr. Ex. 20 at ¶ 148) provides a basis for denying coverage as to Bennett, the severability provision of Endorsement No. 10 to the 2005-2006 Primary Policy expressly prevents Axis from denying coverage to the Insureds on this basis. (*See* Sylwestrzak Declr. Ex. G at Endorsement No. 10 ("No knowledge or information possessed by any Insured will be imputed to any other Insured. If any of the particulars or statements in the Application is untrue, this Policy will be void with respect to any Insured who knew of such untruth.")). As set forth above, nothing in the 2005-2006 Axis Policy alters that severability provision, which thus applies to the Axis Policy. *See Wedtech*, 740 F. Supp. 214 at 218-19; *Kozlowski*, 18 A.D.3d at 39, 792 N.Y.S.2d at 401. *Accord Shapiro*, 616 F. Supp. at 903-05.

## POINT III

### AXIS' DENIAL OF COVERAGE BASED UPON THE "KNOWLEDGE EXCLUSION" SHOULD BE REJECTED AS A MATTER OF LAW

In Count III of the Axis Complaint, Axis contends that there is no coverage under the 2005-2006

Axis Policy as a result of the "Knowledge Exclusion" that was unilaterally added by Axis as an endorsement to the Policy. Axis alleges that "Bennett possessed knowledge [as of August 11, 2005] of facts, circumstances, situations, transactions or events, which he had reason to suppose might give rise to a 'claim,'" and thus the Knowledge Exclusion "excludes coverage for all insureds." (Kim Declr. Ex. 20 at ¶¶ 151, 153). For the reasons set forth below, as a matter of law, Axis may not rely on the purported Knowledge Exclusion to deny coverage to the Insureds.

First, the facts clearly establish that the Knowledge Exclusion is not properly a part of the 2005-2006 Axis Policy and thus cannot be relied upon to deny coverage to *any* insured. The Axis Binder was issued on August 11, 2005, and does not list a "Knowledge Exclusion" as an endorsement to be added to the "SecurExcess" policy form to be issued. (*See* Sylwestrzak Declr. Ex. I). The actual 2005-2006 Axis Policy – which *did* include the purported Knowledge Exclusion as an endorsement – was not issued until March 1, 2006, months after the alleged fraud was revealed at Refco in October 2005 and months after claims were made on the basis of the Axis Binder.[10] Marsh never authorized Axis to add a Knowledge Exclusion to the 2005-2006 Axis Policy in contravention of the Axis Binder. (*See* Sylwestrzak Declr. ¶ 21).

Courts have repeatedly held that, to the extent that an insurance policy departs from what is agreed upon in the binder for that policy, such departures cannot be used to deny coverage. This is particularly so, where, as is generally the case here, the claim arises while the binder is effective. *See, e.g., Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co. Group.*, No. 84 Civ. 7481 TPG, 1997 WL 148231, at * 3 (S.D.N.Y. Mar. 31, 1997) ("To the extent that the insurance policy departed from the binder, the policy is ineffective since such a departure constituted a breach of duty on the part of [the

---

[10]    Between August 11, 2005 and March 1, 2006, the Axis Binder was the operative insurance contract. *See, e.g., World Trade Center Props., LLC v. Hartford Fire Ins. Co.*, 345 F.3d 154, 167 (2d Cir. 2003) (an insurance binder is "a fully enforceable

insurer] to draft a policy in accordance with the binder."); *Bennacer v. Travelers Ins. Co.*, 265 A.D.2d 823, 695 N.Y.S.2d 846 (4th Dep't 1999) (automobile insurance binder issued by agency, which provided coverage for non-owned vehicles or was at least ambiguous, obligated insurer to indemnify and defend insured with respect to accident, which occurred while binder was effective, even though subsequently-issued policy excluded coverage for non-owned vehicles); *Wetherell v. Sentry Reinsurance, Inc.*, 743 F. Supp. 1157, 1170 (E.D. Pa. 1990) (An "insurer cannot avoid liability under the terms of the binder by issuing a policy at variance with the binder" and "where the parties agree in writing on the specific terms of the coverage, the insurer cannot avoid liability by issuing a policy which does not cover the risk contemplated by the binder, especially after loss has occurred and liability attaches.") (citing 2 Couch on Insurance 2d (Rev. ed.) § 14:37).

Accordingly, because, contrary to the terms of the Axis Binder, Axis unilaterally changed the terms of the 2005-2006 Axis Policy after learning of events that would give rise to a claim under the Policy so as to provide grounds for denying coverage, Axis' attempts to deny coverage on the basis of the Knowledge Exclusion should be rejected as a matter of law.[11]

Second, even if the Knowledge Exclusion was properly a part of the 2005-2006 Axis Policy, the severability provisions in the 2005-2006 Primary Policy bar Axis from imputing Bennett's knowledge to the Insureds. "[B]efore an insurance company is permitted to avoid policy coverage, it must satisfy the

---

'present contract of insurance'") (citation omitted); *Springer v. Allstate Life Ins. Co.*, 94 N.Y.2d 645, 649, 710 N.Y.S.2d 298, 300 (2000) ("an insurance binder is a temporary or interim policy until a formal policy is issued") (citations omitted).

[11] In any event, by unilaterally making such post-petition changes to debtor's insurance, Axis violated the automatic stay of the Bankruptcy Code pursuant to 11 U.S.C. § 362(a). In *Federal Insurance Co. v. Sheldon*, 150 B.R. 314, 319-20 (S.D.N.Y. 1993), while invalidating an insurance company's post-petition attempt to exercise an early termination clause, the court stated that "the section 362(a) stay applies to 'any act to obtain possession of property of the estate or ... to exercise control over the property of the estate.'" (citation omitted). The court noted that "[i]ncluded within the scope of the automatic stay are rights flowing to a debtor under a contract of insurance" and determined that "actions taken in violation of the stay are void even where the acting party had no actual notice of the stay." *Id.* As a result, Axis' unjustified, unilateral departure from the terms of the Axis Binder must be rejected. *See also Braunstein v. Panagiotou (In re McCabe)*, 345 B.R. 1 (D. Mass. 2006) (action of defendant in amending an LLC agreement so as to affect debtor's *interest* in the LLC violated the automatic stay even if, as alleged, the amendment merely adjusted the language to formalize the parties' actual agreed-upon interests).

burden . . . of establishing that the exclusions or exemptions apply in the particular case, and *that they are subject to no other reasonable interpretation.*" *Seaboard Sur. Co.,* 64 N.Y.2d at 311, 486 N.Y.S.2d at 876 (emphasis added). *See also Parks Real Estate Purchasing Group v. St. Paul Fire & Marine Ins. Co., 472 F.3d 33, 42 (2d Cir. 2006),* (insurer likewise bears the burden of establishing that its interpretation of the exclusionary language "is *the only construction* that [could] fairly be placed thereon.") (emphasis added) (citation omitted). Furthermore, it is axiomatic that, "in construing an endorsement to an insurance policy, the endorsement and the policy must be read together, and the words of the policy remain in full force and effect except as altered by the words of the endorsement." *County of Columbia v. Continental Ins. Co.,* 83 N.Y.2d 618, 628, 612 N.Y.S.2d 345, 349 (1994). Similarly, "an insurance contract should not be read so that some provisions are rendered meaningless." *Id.* Thus, if there is a reasonable interpretation that gives meaning to both the 2005-2006 Primary Policy's severability provisions and the 2005-2006 Axis Policy's alleged Knowledge Exclusion, that interpretation must control. Here, Axis has failed to establish that the Knowledge Exclusion bars coverage for the Insureds.

As set forth above, the 2005-2006 Axis Policy states that it provides "coverage . . . in conformance with" the 2005-2006 Primary Policy. (Sylwestrzak Decl. Ex. J at (I) Insuring Agreement). Such a "following form" clause in a policy of excess coverage incorporates by reference all the terms and conditions of the underlying policy "except to the extent that the [excess] contract by its own terms specifically defines the scope of coverage differently." *In re HealthSouth Corp. Ins. Lit.,* 308 F. Supp. 2d 1253, 1282 (N.D. Ala. 2004) (applying New York law and quoting *United Fire & Cas. Co. v. Arkwright Mut. Ins. Co.,* 53 F. Supp. 2d 632, 641 (S.D.N.Y. 1999)). *See also Scottsdale Ins. Co. v. Safeco Ins. Co. of Am.,* 111 F. Supp. 2d 1273, 1278 (M.D. Ala. 2000) ("[E]xcess policies are typically following-form instruments that incorporate by reference the terms of the underlying policies *unless there is a specific term to the contrary in the excess policy.*") (citations omitted) (emphasis added), *aff'd without opinion,*

254 F.3d 1084 (11th Cir. 2001).

Here, the 2005-2006 Primary Policy includes two severability provisions.  The first is expressly for purposes of determining the application of exclusions to the 2005-2006 Primary Policy, and provides that "no Wrongful Act of any Insured Person will be imputed to any other Insured Person who did not have actual knowledge of, or directly participate in the commission of, such Wrongful Act . . . ." (Sylwestrzak Decl. Ex. G at p. 5 (Exclusions)).  The second, "Full Severability" provision, expressly states that "[n]o knowledge or information possessed by any Insured will be imputed to any other Insured." (*Id.* at Endorsement No. 10).

The decision in *HealthSouth* is instructive regarding the applicability of a severability provision to excess carriers in a D&O "tower" of insurance.  In *HealthSouth*, the court determined that "silence [in an excess policy] cannot supply a specific term . . . contrary [to the primary policy]" because "[s]ilence does not provide the insured with the notice needed that the excess carrier is not following the form of the severability clause." *HealthSouth*, 308 F. Supp. 2d at 1282.  Recognizing that "[i]nsurance companies clearly know how to address imputation issues," the court reasoned that "if an insurance company meant to say that knowledge of [an entity] was to be imputed to [individual insureds], it could have provided so in the policy." *Id.* at 1284.

Here, at no time prior to binding did Axis request modification of the severability provisions in the Primary Policy. (Sylwestrzak Decl. ¶ 22).  Moreover, nowhere does the 2005-2006 Axis Policy state that it does not "follow form" as to the severability provisions in the 2005-2006 Primary Policy. (*See id.* at Ex. J).  Rather, the 2005-2006 Axis Policy, including the Knowledge Exclusion, is silent on the issue of severability. (*Id.* at Ex. J).  The Knowledge Exclusion thus can and must be interpreted in a manner consistent with the severability provisions in the 2005-2006 Primary Policy.  Indeed, when read with the 2005-2006 Primary Policy's severability provisions, the Knowledge Exclusion operates to bar coverage

only as to those individuals (such as Bennett) with knowledge of facts and circumstances, as of the August 11, 2005 inception date, which they had reason to know would give rise to claims under the Policy. Coverage for insureds with no such knowledge, as the Insureds here, would be maintained. This interpretation gives effect to the Knowledge Exclusion, as without it an insured's own knowledge, as compared to his conduct that might otherwise trigger another exclusion, would not be a basis to deny coverage. Such an interpretation is also entirely reasonable, since the two severability provisions in the 2005-2006 Primary Policy make clear a fundamental intent to provide coverage to officers and directors who do not have knowledge of circumstances likely to give rise to a claim.[12]

For all of these reasons, Axis may not rely on the purported Knowledge Exclusion to deny coverage to the Insureds as a matter of law.

## POINT IV

### AXIS' DENIAL OF COVERAGE BASED UPON A 1994 CFTC ENFORCEMENT PROCEEDING SHOULD BE REJECTED AS A MATTER OF LAW

In Count IV of its Complaint, Axis contends that coverage for the Insureds in connection with the Underlying Actions is excluded pursuant to Clause XI of the 2005-2006 Axis Policy. (Kim Declr. Ex. 20 at ¶¶ 155-158). Specifically, Axis alleges that an enforcement action brought by the CFTC in 1994 constitutes a "Pending or Prior Claim" that is "causally or logically interrelated by a common nexus" with the "wrongful act, fact, circumstances or situation" alleged in each of the Underlying Actions. (Kim Decl. Ex. 20 at ¶¶ 138-139, 155-158). The 2005-2006 Axis Policy excludes coverage for any claim arising out of the same circumstances as those underlying any action or proceeding against any Insured that was pending on or prior to June 4, 2004. (*See* Sylwestrzak Decl. Ex. J at (XI) Exclusions).

---

[12]    Indeed, to interpret the Axis Knowledge Exclusion as overriding these express severability provisions would produce an anomalous result. Axis has argued that it was necessary to include the Knowledge Exclusion in order to compensate for the lack of warranty from Refco in the Application – *i.e.* the unanswered Question 12. However, if Bennett had answered

Notably, this basis for excluding coverage was not mentioned by Axis in its Denial Letter.  In its

Complaint, Axis provides virtually no information about the 1994 CFTC Action and fails to explain, in

any way or to any extent, how the Underlying Actions are "causally or logically interrelated by a common

nexus" to the allegations at issue in the 1994 CFTC Action.  Despite these failures, it is clear that the

claims pending in the Underlying Actions are entirely unrelated to the transactions challenged in the 1994

CFTC Action because each the of the purported violations in the Underlying Actions is not even alleged

to have begun until 1997 – at the very earliest.  (See, e.g., Kim Decl. Ex. 1 at ¶¶ 5, 92-96, 425, 431-440,

451, 460, 520, 550, 563, 571-572, 573-575).  Moreover, each of the Underlying Actions makes clear that

the alleged fraud at Refco that is the basis for the plaintiffs' claims was not even uncovered until October

2005, over a decade after the 1994 CFTC Action was filed.  (See, e.g., Kim Decl. Ex. 1 at ¶¶ 9-10).  As a

result, the Underlying Actions cannot involve activity that was the subject of the 1994 CFTC Action for

purposes of Clause XI of the 2005-2006 Axis Policy.

Axis' denial of coverage on the basis of the 1994 CFTC Action should therefore be rejected as a

matter of law and Count IV of the Axis Complaint dismissed.

**POINT V**

**DECLARATORY JUDGMENT THAT THE 2005-2006 AXIS POLICY
PROVIDES COVERAGE FOR THE INSUREDS FOR LOSSES
<u>ARISING FROM THE UNDERLYING ACTIONS SHOULD BE ENTERED</u>**

This Court has specifically recognized that a claim by insured officers for coverage under a D&O

policy for losses incurred in underlying litigation "presents a classic controversy ripe for declaratory

relief."  Seidel v. Houston Casualty Co., 375 F. Supp. 2d 211, 226 (S.D.N.Y. 2005) (Lynch, J.).

In their Counterclaims in the Axis Adversary Proceeding, Insureds Sexton, Sherer, Murphy and

Silverman seek a judgment declaring that Axis has an obligation to provide coverage for losses arising

---

Question 12 – and had lied – the innocent Refco officers and directors would nevertheless have been covered under the Axis

from the Underlying Actions in which they are named. For the reasons set forth above, the Insureds have clearly established that they are entitled to coverage under the terms of the 2005-2006 Axis Policy. This Court should therefore grant the Insureds' motion for summary judgment declaring that they are entitled to coverage under the 2005-2006 Axis Policy for "Losses" arising out of the Underlying Actions, including their defense costs. *See Seidel*, 375 F. Supp. 2d at 226.

## CONCLUSION

For all of the foregoing reasons, this Court should enter summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, dismissing the Complaint in the Axis District Court Action. This Court should also, based on the foregoing, enter judgment in favor of Insureds Sexton, Sherer, Murphy and Silverman on Count I of their Counterclaims in the Axis Adversary Proceeding, declaring that these Insureds are covered by the 2005-2006 Axis Policy for losses arising out of the Underlying Actions.

Dated:  April 9, 2008
      New York, New York

---

Policy by virtue of the severability provision set forth in Endorsement No. 10 to the 2005-2006 Primary Policy.

**FRIEDMAN & WITTENSTEIN**
**A Professional Corporation**


By: /s/ Stuart I. Friedman
Stuart I. Friedman (SF-9186)
Ivan Kline (IK-9591)

600 Lexington Avenue
New York, New York 10022
Telephone: (212) 750-8700
Facsimile: (212) 223-8391

*Attorneys for Defendants and Counterclaim-*
*Plaintiffs William M. Sexton and Gerald M.*
*Sherer*

**HELLER EHRMAN LLP**


By: /s/ Richard Cashman
Richard Cashman (RC-4769)

Times Square Tower
7 Times Square
New York, New York 10036
Telephone: (212) 832-8300
Facsimile: (212) 763-7600

*Attorneys for Defendant and Counterclaim-*
*Plaintiff Philip Silverman*

**ZUCKERMAN SPAEDER LLP**


By: /s/ Norman L. Eisen
Norman L. Eisen (NE-1198)
Thomas G. Macauley (TM-3944)
Laura E. Neish (LN-0040)

**WEIL, GOTSHAL & MANGES LLP**


By: /s/ Greg A. Danilow
Greg A. Danilow (GD-1621)
Michael F. Walsh (MW-8000)

767 Fifth Avenue
New York, New York 10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Defendants Leo R. Breitman,*
*Nathan Gantcher, David V. Harkins, Scott*
*L. Jaeckel, Thomas H. Lee, Ronald L.*
*O'Kelley, and Scott A. Schoen*

**SAUL EWING LLP**


By: /s/ John J. Jerome
 John J. Jerome (JJ-2413)

245 Park Avenue, 24th Floor
New York, New York 10167
Telephone: (212) 672-1996
Facsimile: (212) 672-1920

*Attorneys for Defendant and Counterclaim-*
*Plaintiff Joseph Murphy*

26

1540 Broadway, Suite 1604
New York, New York 10036
Telephone: (212) 704-9600

-and-

**HANNAFAN & HANNAFAN, LTD.**
One East Wacker Drive, Suite 2800
Chicago, Illinois 60601
Telephone: (312) 527-0055
Michael T. Hannafan
Blake T. Hannafan

*Co-Attorneys for Defendant Tone N. Grant*