Wayne E. Borgeest
Joan M. Gilbride
Robert A. Benjamin
**KAUFMAN BORGEEST & RYAN LLP**
**200 Summit Lake Dr**
**Valhalla, New York 10595**
**(914) 741-6100 (Telephone)**
**(914) 741-0025 (Facsimile)**
**wborgeest@kbrlaw.com**
**jgilbride@kbrlaw.com**
**rbenjamin@kbrlaw.com**

*Attorneys for AXIS Reinsurance Company*

DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK        *Electronically Filed*

------------------------------------------------------------------ X

| | | |
|---|---|---|
| AXIS REINSURANCE COMPANY, | : | No. 07-CV-07924-GEL |
|         Plaintiff, | : | |
|    v. | : | |
| | : | |
| PHILLIP R. BENNETT, et al., | : | |
| | : | |
|         Defendants. | : | |

------------------------------------------------------------------ X

| | | |
|---|---|---|
| | : | |
| In re | : | Chapter 11 |
| | : | |
| REFCO, INC., et al., | : | Case No. 05-60006-RDD |
| | : | |
|         Debtors. | : | Jointly Administered |

------------------------------------------------------------------ X

| | | |
|---|---|---|
| AXIS REINSURANCE COMPANY, | : | Adv. Proc. No. 07-01712-RDD |
| | : | Reference Withdrawn: |
| | : | No. 08-CV-03242-GEL |
|         Plaintiff, | : | Appeals: |
|    v. | : | (1) No. 07-CV-09420-GEL |
| | : | (2) No. 07-CV-09842-GEL |
| PHILLIP R. BENNETT, et al., | : | (3) No. 07-CV-10302-GEL |
| | : | |
|         Defendants. | : | |

**[caption continued on next page]**

```
------------------------------------------------------------------- X
TONE N. GRANT, et al.,                              :        Adv. Proc. 07-02005-RDD
                                                    :        consolidated with 07-01712-RDD
                                                    :        Reference Withdrawn:
                                                    :        No. 08-CV-03243-GEL
                     Plaintiffs,                    :        Appeals:
          v.                                        :        (1) No. 07-CV-09843-GEL
                                                    :        (2) No. 07-CV-10302-GEL
AXIS REINSURANCE COMPANY,                           :
                                                    :
                     Defendant.                     :
------------------------------------------------------------------- X
LEO R. BREITMAN, et al.,                            :        Adv. Proc. No. 07-02032-RDD
                                                    :        consolidated with 07-01712-RDD
                                                    :        Reference Withdrawn:
                                                    :        No. 08-CV-03303-GEL
                     Plaintiffs,                    :        Appeal:
          v.                                        :        (1) No. 07-CV-10302-GEL
                                                    :
AXIS REINSURANCE COMPANY,                           :
                                                    :
                     Defendant.                     :
------------------------------------------------------------------- X
```

**AXIS REINSURANCE COMPANY BRIEF IN OPPOSITION TO CERTAIN INSUREDS' MOTIONS FOR SUMMARY JUDGMENT: (1) DISMISSING CERTAIN INSUREDS FROM THE AXIS DECLARATORY JUDGMENT ACTION (No. 07-CV-07924-GEL); AND (2) ENTRY OF JUDGMENT IN FAVOR OF COUNT ONE OF OFFICER INSUREDS' COUNTERCLAIMS (No. 07-AP-01712-RDD, Reference Withdrawn at No. 08-CV-03242-GEL)**

**TABLE OF CONTENTS**

I.      INTRODUCTION……………………………………………………...……………1

II.     PROCEDURAL AND FACTUAL BACKGROUND…………………………….......2

III.    THE MOTIONS FOR SUMMARY JUDGMENT DISMISSING THE AXIS
        COMPLAINT ARE BOTH FACTUALLY AND PROCEDURALLY FLAWED………4

        a.  Genuine Issues of Material Fact Exist and Movants Have Not Sought
            ANY Discovery………………………….………………………………………5

            i.   The Legal Standard for Summary Judgment Has Not Been Satisfied……………5

            ii   The Warranty Letter is Part of the AXIS Policy and Affords a Basis for AXIS to
                 Deny Coverage to All Insureds…………………………………………………7

            iii. The Non-Disclosure in the Application Affords a Basis for AXIS to Deny
                 Coverage to All Insureds…………………………………………………...12

            iv. The Knowledge Exclusion Endorsement is Part of the AXIS Policy and Affords a
                Basis for AXIS to Deny Coverage to All Insureds………………………………16

            v.  The Prior Acts Exclusion (CFTC Litigation) Affords a Basis for AXIS To Deny
                Coverage to All Insureds………………………………………………………...24

            vi. The Warranty Letter, The Application, and The Knowledge Exclusion Do Not
                Contain Non-Imputation Clauses and Each Affords an Independent Basis for
                AXIS to Deny Coverage to ALL Insureds Based on the Knowledge of ANY
                Insured…………………………………………………………………………25

        b.  The Motion for Summary Judgment Dismissing Movants From the AXIS Complaint
            Was Filed In Violation of the Court Imposed Litigation Stay…………………..…32

        c.  Summary Judgment in Favor of Grant is Especially Inappropriate…………………32

IV.     PRE-DISCOVERY SUMMARY JUDGMENT ON COUNT ONE OF THE
        COUNTERCLAIMS IS INAPPROPRIATE………………………………………….33

V.      CONCLUSION………………………………………………………………..…35

i

## TABLE OF AUTHORITIES

### Cases

*2575 Owners Corp. v. Federal Ins. Co.*, 1998 WL 846123 (S.D.N.Y. 1998) .............................. 28

*Allmerica Financial Corp. v. Certain Underwriters at Lloyd's, London*, 449 Mass. 621 (2007) ................................................................................................................................ 13, 14

*American Intern. Specialty Lines Ins. Co. v. Towers Financial Corp.*, 1997 WL 906427 (S.D.N.Y. 1997) ..................................................................................................................... 27

*Anderson v. Liberty Lobby Inc.*, 477 U.S. 242 (1986) ................................................................. 6

*Berger v. Manhattan Life Ins. Co.*, 805 F.Supp. 1097 (S.D.N.Y. 1992) ...................................... 14

*Berger v. United States*, 87 F.3d 60 (2d Cir.1996) ........................................................................ 7

*Bird v. Penn Central Company*, 341 F.Supp. 291 (1972)) ........................................................... 28

*Bohlinger v. Zanger*, 306 N.Y. 228 (1954)) ............................................................................... 21

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................................. 6

*Chicago Ins. Co. v. Kreitzer & Vogelman*, 265 F.Supp.2d 335 (S.D.N.Y. 2003) ........................ 14

*Coregis Ins. Co. v. Lewis Johs Avallone Aviles & Kaufman LLP*, 2006 WL 2135782 (E.D.N.Y. 2006) ...................................................................................................................................... 28

*Cornellier v. American Casualty Co.*, 389 F.2d 641 (2d Cir. 1968)............................................ 31

*Evvtex Co., Inc. v. Hartley Cooper Assocs. Ltd.*, 911 F. Supp. 732 (S.D.N.Y. 1996)................. 21

*Government Employees Insurance Co. v. Kligler*, 42 N.Y.2d 863 (N.Y. 1977). ......................... 30

*Home Life Ins. Co. v. Myers*, 112 F. 846 (Dist. Ks. 1901) .................................................... 15, 27

*In re Ambassador Group, Inc. Litigation*, 738 F.Supp. 57 (E.D.N.Y. 1990)........................31

*Int'l Paper Co. v. Gen'l Fire Assur. Co.*, 263 F. 363 (2d Cir. 1920)............................................ 21

*Ivey v. United Nat'l Indem. Co.*, 259 F.2d 205 (9th Cir. 1958) .................................................... 21

*Keystone Shipping Co. v. Home Ins. Co.*, 840 F.2d 181 (3d Cir. 1988) ....................................... 13

*King World Pro., Inc. v. Fin. News Network, Inc.*, 660 F.Supp. 1381 (S.D.N.Y. 1987).............. 22

*Kleinman v. Vincent*, 1991 WL 2804 (S.D.N.Y. 1991) ................................................ 6

*Long Island Airports Limousine Serv. Corp. v. Playboy-Elsinore Assocs.*, 739 F.2d 101 (2d Cir.1984) ..................................................................................................... 6

*Masuda v. Kawasaki Dockyard Co.*, 328 F.2d 662 (2d Cir.1964) ................................ 22

*McCauley Enterprises Inc. v. New Hampshire Ins. Co*, 716 F.Supp. 718 (D. Conn. 1989) ......... 28

*Meloff v. New York Life Ins. Co.*, 51 F.3d 372 (2d Cir.1995)) ........................................ 7

*Moriarty v. Metropolitan Life Ins. Co.*, 202 S.W. 630 (Ky.App. 1918) ........................ 15

*Moshiko, Inc. v. Seiger & Smith, Inc.*, 529 N.Y.S.2d 284 (App. Div. 1st Dep't. 1988) ............... 30

*Nichols v. American Risk Management, Inc.*, 2002 WL 31556384 (S.D.N.Y. 2002) ................. 14

*Philadelphia Indem. Ins. Co v. Holowits, Greener & Stengel LLP*, 379 F. Supp. 2d 442 (S.D.N.Y. 2005) ....................................................................................... 15, 21

*Phoenix Mut. Life Ins. Co. v. Raddin*, 120 U.S. 183 (1887) ......................................... 15

*Revco D.S., Inc. v. Government Employees Ins. Co.*, 791 F.Supp. 1254 (N.D. Ohio 1991) ........ 14

*Scotto v. Almenas*, 143 F.3d 105 (2d Cir. 1998) ......................................................... 6

*S.E.C. v. Credit Bancorp, Ltd.*, 147 F.Supp.2d 238 (S.D.N.Y. 2001) ............................ 22

*Seneca Ins. Co. v. Kemper Ins. Co.*, 2004 WL 1145830 (S.D.N.Y. 2004) ..................... 24

*Town of Wilson v. Town of Newfane*, 181 A.D.2d 1045 (4th Dep't. 1992) ...................... 6

*Tractebel Energy Marketing, Inc. v. AEP Power Marketing, Inc.*, 487 F.3d 89 (2d Cir. 2007) .......................................................................................... ....5, 23

*Varda, Inc. v. Ins. Co. of North America*, 1992 WL 122759 (S.D.N.Y. 1992) ............... 21

*Wells Fargo Bank Northwest, N.A. v. Taca Intern. Airlines, S.A.*, 247 F.Supp.2d 352 (S.D.N.Y. 2002)............................................................................................. 6

*Wen Kroy Realty Co. v. Public Nat'l Bank & Trust Co.*, 260 N.Y. 84 (1932) ................ 22

*Weyant v. Okst*, 101 F3d 845 (2d Cir. 1996) ............................................................... 6

**AXIS REINSURANCE COMPANY BRIEF IN OPPOSITION TO CERTAIN
INSUREDS' MOTIONS FOR SUMMARY JUDGMENT: (1) DISMISSING
CERTAIN INSUREDS FROM THE AXIS DECLARATORY JUDGMENT ACTION
(No. 07-CV-07924-GEL); AND (2) ENTRY OF JUDGMENT IN FAVOR OF
COUNT ONE OF OFFICER INSUREDS' COUNTERCLAIMS
(No. 07-AP-01712-RDD, Reference Withdrawn at No. 08-CV-03242-GEL)**

## I.    INTRODUCTION

The instant Motions for Summary Judgment are at best premature, and at worst

completely frivolous. Messrs. Bennett, Trosten and Maggio have now pleaded guilty to criminal

charges arising out of the fraud at Refco, Inc. ("Refco").[1] Mr. Grant was convicted by a jury in

his criminal trial. These criminal pleas and criminal conviction confirm that AXIS's denial of

coverage was correct. In fact, Messrs. Bennett and Trosten have consented to a stipulated order

of *no coverage* with respect to another excess policy, which excluded coverage based on similar

exclusionary language, and that excess insurer is continuing to litigate with the other insureds.

Now, lacking the ability to argue that the terms of the AXIS Policy require coverage, Movants

are forced to argue the terms are not really the terms.[2] The Bankruptcy Court has already ruled

that the arguments raised by the Movants in their Summary Judgment Motions raise factual

issues and discovery is appropriate.[3] AXIS never objected to engaging in discovery on these

---

[1] The name "Refco," as used throughout this opposition, unless specifically noted otherwise, refers to Refco, Inc., the publicly traded company formed pursuant to the August 2005 initial public offering, as well as to Refco Group Ltd., LLC, the company through which Refco's business was primarily conducted prior to the IPO. "Refco" also refers to subsidiaries of Refco, Inc. and Refco Group Ltd., LLC.

[2] The "AXIS Policy" is AXIS Reinsurance Company Securexcess Policy No. RNN506300, issued to Refco Inc. with a Policy Period of August 11, 2005 to August 11, 2006.

[3] AXIS denied coverage to all Insureds for all claims arising out of Refco's demise. The Insureds other than Refco, have divided themselves into four categories: (1) the "Officer Defendants" – Klejna, Murphy, Sexton, Sherer and Silverman; (2) the "Director Defendants" – Breitman, Gantcher, Harkins, Jaeckel, Lee, O'Kelley, and Schoen; (3) the "Criminal Defendants" – Bennett, Grant and Trosten; and (4) the "Cooperating Defendant" – Maggio.

Page 1

issues.  Instead, the Movants ignored the Bankruptcy Court's instructions and filed these

Motions for Summary Judgment without requesting one shred of discovery.  As is shown in the

accompanying Rule 56.1 Statement, AXIS disputes virtually every single material factual

assertion made by the Movants.

These Motions for Summary Judgment unquestionably raise material issues of disputed

fact.  Accordingly, they should be denied in their entirety.


## II.    PROCEDURAL AND FACTUAL BACKGROUND

The instant Motions for Summary Judgment must be viewed in the context of the

substantial litigation concerning the towers of Refco D&O insurance.  AXIS denied coverage for

all litigation arising out of the demise of Refco, Inc. by letter dated March 6, 2006.  *See* Exhibit

A to the May 2, 2008 Declaration of Joan M. Gilbride (hereinafter "Gilbride Decl.").  In that

letter, AXIS made several requests for information – including the identification by the Insureds

of any other insurance which might respond to this matter.  None of the Insureds responded to

this denial of coverage in any way.  As the primary layer of insurance below AXIS neared

exhaustion, on May 23, 2007, AXIS filed an adversary proceeding in the Bankruptcy Court for

the Southern District of New York (No. 07-AP-01712-RDD) seeking a declaration that the

Insureds were not entitled to coverage under the AXIS Policy.  The Bankruptcy Court dismissed

---

Although not entirely clear from their pleadings, it appears to AXIS that: (1) the Officer Insureds are seeking Summary Judgment on Count One of their Counterclaims; and (2) the Officer Insureds, the Director Insureds and Grant seek Summary Judgment dismissing them from the AXIS Complaint. AXIS's Opposition Brief opposes both the Summary Judgment Motion filed by Mr. Klejna, as well as the separate Summary Judgment Motion filed by the Director Defendants, Murphy, Sexton, Sherer, Silverman and Grant (the "Other Movants") (collectively, with Klejna, referred to herein as "Movants"). Messrs. Bennett, Trosten and Maggio – all of whom have now pleaded guilty to criminal charges – have not filed motions for Summary Judgment. Mr. Grant, who was convicted of criminal charges by a jury, is part of the group moving for summary judgment against AXIS.

AXIS's complaint seeking a *declaration of no coverage*, but permitted the Officer Insureds' counterclaims seeking a *declaration of coverage* to continue.  The Bankruptcy Court improperly bifurcated the issues of advancement of Defense Costs and coverage under the AXIS Policy.  At the direction of the Bankruptcy Court, on September 7, 2007, AXIS filed the AXIS Complaint in this Court seeking a declaration of no coverage against Movants and other Insureds (No. 07-CV-07924-GEL).[4]

Meanwhile, through a series of preliminary injunction motions in the Bankruptcy Court, *wherein Insureds knowingly made material misrepresentations to the Bankruptcy Court and to AXIS* regarding the availability of other insurance to pay their Defense Costs, the Bankruptcy Court ordered AXIS to pay the Insureds' Defense Costs.[5]  The Bankruptcy Court later entered a permanent injunction requiring AXIS to pay the Insureds' Defense Costs.  AXIS appealed the Bankruptcy Court orders and those appeals were fully briefed on January 9, 2008.

Despite its protestations, AXIS complied with the Bankruptcy Court Order requiring AXIS to advance the Insureds' Defense Costs.  While AXIS was in the midst of paying its $10 million Limit of Liability to the Insureds, Messrs. Bennett, Trosten and Maggio all pleaded guilty to various criminal counts underlying the fraud at Refco – the very fraud which is the basis for AXIS's denial of coverage.  AXIS sought to have this Court stay its obligation to continue paying its Limit of Liability for a Claim that – based on the guilty pleas – was now clearly not covered by the AXIS Policy.  The Court denied that request.  On March 6, 2008, AXIS paid out the last of its $10 million excess policy to the Insureds.

---

[4] For a complete recitation of the plethora of motions filed in the Bankruptcy Court, AXIS refers the Court to pages six through nine of AXIS's Brief in Support of its Appeal.  Index No. 07-CV-07924-GEL, Doc. No. 9, November 28, 2007.

[5] *See* March 12, 2008 Letter to Judge Drain, attached as Exhibit N to the Gilbride Decl.

The AXIS Policy requires the Insureds to repay the Defense Costs AXIS has advanced if it turns out coverage was not available under the AXIS Policy. Based on the guilty pleas and in-court admissions made by Messrs. Bennett, Trosten and Maggio, it is now clear that no coverage is available for these matters under the terms of the AXIS Policy. Accordingly, AXIS has requested that the Insureds immediately repay AXIS the $10 million it has advanced.

Upon any payment under the Policy, the Insureds are required to subrogate to AXIS all rights of recovery against third parties, and to execute all documents necessary for AXIS to bring suit in their name. AXIS has requested that the Director Insureds comply with this provision of the insurance contract, and the Director Insureds have refused.

In short, AXIS has done everything it is supposed to do as a responsible insurer who denied coverage for a Claim – including paying $10 million it has little hope of ever recovering. Conversely, the Insureds have done everything possible to abuse the court system – including outright misrepresentations to the Court and to AXIS – in order to obtain money from AXIS to which they are not entitled under the insurance contract. Now, upon receiving everything they could from AXIS, they have refused to comply with material terms of the AXIS Policy.

## III.    THE MOTIONS FOR SUMMARY JUDGMENT DISMISSING THE AXIS COMPLAINT ARE BOTH FACTUALLY AND PROCEDURALLY FLAWED

The Movants seek Summary Judgment dismissing them from the AXIS Complaint: (1) where there is a factual dispute concerning the terms of the AXIS Policy; (2) where, in fact, no coverage is provided to Movants for this Claim under the AXIS Policy;[6] (3) where there has been

---

[6] Through dismissal from the AXIS Complaint, the Movants seek to have this Court essentially declare they are entitled to coverage under the AXIS Policy, where: (1) three Insureds have pleaded guilty to criminal charges

no discovery in this insurance dispute whatsoever; (4) where another Court has already opined that material facts are in dispute; and (5) where the AXIS Complaint has been stayed by this Court.

### a. Genuine Issues of Material Fact Exist and Movants Have Not Sought ANY Discovery

The Movants seem to view the AXIS Policy as if it were a candy store where they can take what they want and ignore the rest. The AXIS Policy is a contract containing various terms. Movants cannot be allowed to run to court seeking enforcement of those terms they like and then argue that they never agreed to other terms they don't like as much. Either the AXIS Policy exists as written, and as the Movants have already demanded a Court enforce, or there was never a "meeting of the minds" and no contract exists at all. *See Tractebel Energy Marketing, Inc. v. AEP Power Marketing, Inc.,* 487 F.3d 89 (2d Cir. 2007) (to create a binding contract under New York law, there must be an objective meeting of the minds). The Insureds cannot pick and choose among the terms of the AXIS Policy that suit their desires.

### i. The Legal Standard for Summary Judgment Has Not Been Satisfied

When ruling on a motion for summary judgment, a court must resolve all ambiguities in favor of the nonmoving party (AXIS). *See e.g., Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir.

---

stemming from the Refco fraud; (2) one Insured **who is a Movant seeking dismissal** – Grant – has now been convicted by a jury of criminal charges arising out of the Refco fraud; and (3) Bennett – the person who signed the Warranty Letter and the Application – has, along with Trosten, consented to entry of an Order of *no coverage* under an excess policy, which denied coverage based on similar exclusionary language.

1998). The court must view the evidence in the light most favorable to the party opposing

summary judgment (AXIS) and draw all reasonable inferences in favor of that party (AXIS). *See*

*e.g., Weyant v. Okst*, 101 F.3d 845 (2d Cir. 1996). Granting the motion for summary judgment is

appropriate only when there is no genuine issue of material fact and the moving party is entitled

to a judgment as a matter of law. Fed.R.Civ.P. 56(c). The Movants must bear the initial burden

of proving the absence of any genuine issue of material fact. *See e.g., Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986).

A party may move for summary judgment "at any time." Fed.R.Civ.P. 56(b). However, a

pre-discovery motion for summary judgment is only granted "in the clearest of cases." *Kleinman*

*v. Vincent*, 1991 WL 2804 *1 (S.D.N.Y. 1991); *See Celotex Corp.*, 477 U.S. at 322 (stating that

summary judgment typically granted only after adequate time for discovery). Under

Fed.R.Civ.P. 56(f), summary judgment is inappropriate where the party opposing it establishes

that it cannot currently present facts essential to justify its opposition. *See Anderson v. Liberty*

*Lobby Inc.*, 477 U.S. 242, 250 (1986); *See also Celotex Corp.*, 477 U.S. at 326 (holding that

when a reasonable opportunity to develop materials has not been provided, the motion should be

denied or hearing on the motion continued). Resolving an ambiguous term in a written contract

through extrinsic evidence remains squarely within the province of the trier of fact. *See Town of*

*Wilson v. Town of Newfane*, 181 A.D.2d 1045 (4th Dep't. 1992). For that reason, summary

judgment in such circumstances is inappropriate. *See Long Island Airports Limousine Serv.*

*Corp. v. Playboy-Elsinore Assocs.*, 739 F.2d 101, 103 (2d Cir.1984).

The Court in *Wells Fargo Bank Northwest, N.A. v. Taca Intern. Airlines, S.A.* set forth the

following factors in determining whether to grant summary judgment in the absence of

discovery: (1) whether the lack of discovery was in any way due to fault or delay on the part of

the non-movant; (2) whether the non-movant filed a sufficient Rule 56(f) affidavit explaining: (i) what facts are sought and how they are to be obtained, (ii) how those facts are reasonably expected to create a genuine issue of material fact, (iii) what effort the affiant has made to obtain them, and (iv) why the affiant was unsuccessful in those efforts; and (3) whether the non-movant provided any basis for its belief that further discovery would alter the outcome of the summary judgment motion. 247 F.Supp.2d 352, 360 (S.D.N.Y. 2002) (citing *Berger v. United States*, 87 F.3d 60, 65 (2d Cir.1996); *Meloff v. New York Life Ins. Co.*, 51 F.3d 372, 375 (2d Cir.1995)).

Movants have the heavy burden of establishing that there are no genuine issues of material fact which would alter the outcome of the litigation. It is highly unusual for a court to grant summary judgment before any discovery has taken place, and to defeat these motions all AXIS must establish is that, if given a reasonable opportunity to engage in discovery, AXIS has a basis to believe a genuine issue of material fact would emerge.

Movants have not even come close to carrying their legal burden.

### ii.  The Warranty Letter is Part of the AXIS Policy and Affords a Basis for AXIS to Deny Coverage to All Insureds

The Movants argue that a Warranty Letter, sent to AXIS just prior to the planned-inception of the AXIS Policy, which was signed by Mr. Bennett on behalf of all Insureds, is not part of the AXIS Policy.[7] Given Mr. Bennett's recent guilty plea, the Warranty Letter is false as

---

[7] In connection with the underwriting of the AXIS Policy, AXIS received a warranty letter (the "Warranty Letter") which provides, in pertinent part:

> No person(s) or entity(ies) proposed for this insurance is cognizant of any fact, circumstance, situation, act, error or omission which he/she/it has reason to suppose might afford grounds for any Claim, as such term is defined within the Policy, such as would fall within the scope of the proposed insurance, EXCEPT: [Louis Capital Markets, LP v. Refco Group Ltd., LLC, et al.]

a matter of law. In fact, Messrs. Bennett and Trosten have now consented to entry of an Order of *no coverage* in litigation commenced by an excess insurer, excess to the AXIS Policy, which denied coverage based on similar exclusionary language. *See* Exhibit P to the Gilbride Decl. To preserve the illusion of coverage, Movants therefore must argue that the Warranty Letter somehow doesn't exist – because, if it does exist, it unquestionably precludes coverage for all Insureds under the AXIS Policy for this matter. In opposition, AXIS asserts that the January 21, 2005 Warranty Letter was executed just prior to the planned-inception of the AXIS Policy, applies to the AXIS Policy, and was relied upon by AXIS's underwriter when issuing the AXIS Policy.

AXIS issued excess D&O insurance to Refco Group Ltd. LLC for the Policy Period of August 5, 2004 to August 5, 2005 (extended to August 10, 2005) (the "04/05 Policy"). When Refco contemplated its IPO, AXIS was asked to issue excess D&O insurance to the public company. The Refco IPO was originally scheduled to go forward in June 2005, but was delayed until August 2005.

By the time AXIS received the Warranty Letter, which was signed on January 21, 2005 by Mr. Bennett, on behalf of all Insureds, the 04/05 Policy had already been in force for nearly six months. Movants appear to argue that the Warranty Letter was issued in connection with the 04/05 Policy, and it does not apply to the AXIS Policy (which ran from August 2005 to August

---

It further provides that:

> It is agreed by the undersigned on behalf of all Insureds under the Policy, that with respect to the above statements, that if such knowledge exists, any claim arising therefrom is excluded from the proposed insurance.

The Warranty Letter was signed by Phillip Bennett, "on behalf of all Insureds under the Policy," on January 21, 2005. *See* Exhibit O to the Gilbride Decl.

2006). This argument by Movants is belied by the very text of the Warranty Letter itself. The Warranty Letter uses the phrase "*proposed* for this insurance" (emphasis added).[8] The only insurance which was still <u>proposed</u> in January 2005 was the AXIS Policy – the 04/05 Policy was no longer *proposed*; it had been in force for almost six months.

The AXIS underwriter understood that the Warranty Letter was sent in connection with the AXIS Policy, and the AXIS underwriter relied upon the Warranty Letter when deciding to issue the AXIS Policy. *See* May 2, 2008 Affidavit of Steven Kane (the "Kane Aff."), at Paragraph 7. The AXIS Policy specifically provides at the top of the first page that the AXIS Policy is issued "in reliance on. . . **all information** provided to [AXIS]." *See* Exhibit E to the Gilbride Decl. (emphasis added). "[A]ll information" includes the Warranty Letter. Importantly, none of the Insureds ever renounced the statements made in the Warranty Letter when applying for the AXIS Policy. *See* Paragraph 8 to the Kane Aff.

Movants attach artificial significance to the fact that the Warranty Letter's references to Refco are to "Refco Group Ltd. LLC" and not "Refco Inc." This is simply because Refco Inc. *did not exist* in January 2005 – it was only formed as part of the August 2005 IPO. Representations by Bennett on behalf of all proposed Insured D&Os of the not-yet-public company, necessarily were made on Refco Group Ltd. LLC letterhead.

Movants attach the Declaration of Ellen Brooks to their Motion for Summary Judgment.[9] Ms. Brooks's Declaration never disputes that the Warranty Letter was issued in connection with the AXIS Policy. Instead, it vaguely implies that the Warranty Letter was requested in

---

[8] The word "proposed" appears in the Warranty Letter five times.

[9] AXIS notes that the Brooks Declaration does not state that it is made based on personal knowledge, as is required by F.R.C.P. 56(e)(1).

connection with the 04/05 Policy. AXIS has not had any opportunity to cross-examine Ms. Brooks or to review any of her files maintained in connection with the placement of D&O insurance with AXIS.

Movants also attach the Declaration of Pamela Sylwestrzak to their Motion for Summary Judgment. Ms. Sylwestrzak also never directly disputes that the Warranty Letter was issued in connection with the AXIS Policy. AXIS has not had any opportunity to cross-examine Ms. Sylwestrzak or to review any of her files maintained in connection with the placement of D&O insurance with AXIS.

AXIS maintains the Warranty Letter was issued in connection with the AXIS Policy, running from August 11, 2005 to August 11, 2006 – the Policy on which this Claim is made. Movants assert that the Warranty Letter was issued in connection with the earlier 04/05 Policy. As evidence, Movants have obtained the Declaration of a Refco employee and a broker, neither of whom ever actually disputes AXIS's assertion that the Warranty Letter was issued in connection with the August 11, 2005 to August 11, 2006 AXIS Policy. AXIS attaches the Affidavit of Steven Kane, the underwriter involved in the placement of both the 04/05 Policy and the AXIS Policy. Mr. Kane clearly states that the Warranty Letter was received and considered in connection with the August 11, 2005 to August 11, 2006 AXIS Policy.

Whether the Warranty Letter applies to the 04/05 Policy or the AXIS Policy is a question of disputed material fact at this time. If the Movants are correct, and the Warranty Letter has no application to the AXIS Policy, then AXIS cannot rely on the exclusionary terms of the Warranty Letter to deny coverage. However, if AXIS is correct, and the Warranty Letter does apply to the AXIS Policy, the Warranty Letter clearly excludes coverage for all Insureds for this matter under the AXIS Policy. In order to determine whether AXIS or Movants are correct, the fact finder

will need to consider testimony from those involved with the Warranty Letter, as well as the examination of any documentary evidence in connection with the Warranty Letter. Surely, AXIS should have the opportunity to ask the individual who signed the Warranty Letter – Phillip Bennett – what he thought he was signing.

The Bankruptcy Court has already opined that Summary Judgment without discovery was inappropriate with respect to whether the Warranty Letter applies to the AXIS Policy, saying:

> as to the argument that the warranty doesn't apply. . . even that, I believe is a factual issue given the language of the warranty. If it does arguably apply to this policy, the severability provision doesn't refer to it -- it refers to the application, so I would assume that Axis would need a suitable period to take discovery as to - - and you [Klejna] would, too -- as to what the warranty was meant to apply to. . . . I don't think it's right to schedule summary judgment at this point. I think you needed to go through discovery.

October 24, 2007 Tr., at p. 22-23, attached as Exhibit B to the Gilbride Decl. ("October 24, 2007 Tr.").

There are genuine issues of material fact at this time with respect to the application of the Warranty Letter. Accordingly, Summary Judgment is inappropriate at this time. AXIS has not had any opportunity to conduct any discovery whatsoever. Its declaratory judgment action in the Bankruptcy Court was dismissed and its declaratory judgment action in this Court has been stayed.[10] AXIS wants to depose certain individuals known and unknown at the broker, Marsh, who were involved with the underwriting process. AXIS wants to depose each of the Insureds with respect to the intended purpose of the Warranty Letter. AXIS wants to depose Mr. Bennett

---

[10] *See November 13, 2007 Order*, Index No. 07-CV-07924-GEL, Doc. 5 ("The civil action pending before this Court as No. 07-CV-7924-GEL is hereby stayed until 30 days have elapsed from this Court's decision regarding the appeals described in paragraph 1 of this Order."), attached as Exhibit K to the Gilbride Decl. (the "Stay Order").

**AXIS BRIEF IN OPPOSITION TO SUMMARY JUDGMENT**

to learn what he thought he was signing. AXIS wants to depose certain individuals known and unknown at Refco, including Ms. Brooks, who were involved in the underwriting process. AXIS also needs the opportunity to review material documents in Marsh's files and in Refco's files regarding the Warranty Letter.

The Warranty Letter is properly applicable to the AXIS Policy and excludes coverage to the Insureds for this Claim. As discussed in detail below, the exclusion in the Warranty Letter excludes coverage to all Insureds based on the knowledge of any single Insured.

### iii. The Non-Disclosure in the Application Affords a Basis For AXIS to Deny Coverage to All Insureds

Movants argue that AXIS is prevented from arguing that the non-disclosure in the Application bars coverage, because the Underlying Insurers did not also use the Application to deny coverage.[11] The Movants misrepresent to the Court the coverage position of the Underlying Insurers. Far from paying "claims to the full extent of their respective policies,"

---

[11] Phillip Bennett completed the Application and signed it on February 8, 2005, "acting as the authorized agent of the persons and entity(ies) proposed for this insurance." The Application asks at Question 12:

> (b)     Is any person or entity proposed for this insurance aware of any fact, circumstance or situation  involving the Applicant or any Insured Person or Organization which he, she or it has reason to believe might result in a claim being made? __ Yes       __ No
>
> If yes, please provide complete details (use a separate sheet of paper, if necessary):
>
> Without prejudice to any other rights of the Insurer, it is understood and agreed that the Insurer will not be liable under any policy that may be issued on the basis of this Application to make any payment of Loss, including Defense Costs, in connection with any Claim arising out of, based upon or attributable to any claim, fact, circumstance or situation *disclosed **or required to be disclosed** in response to questions 12(a) and 12(b).*

February 5, 2005 Application, attached as Exhibit J to the Gilbride Decl. (the "Application") (emphasis added). Bennett did not check either box for Question 12(b).

(Klejna Motion, at 17. *See also* Other Insureds Motion, at 7), the Underlying Insurers (US Specialty and Lexington) issued strongly worded reservation of rights letters. *See* Exhibit C to the Gilbride Decl. AXIS also understands that the Underlying Insurers entered into interim funding agreements with the Insureds whereby each of the Underlying Insurers agreed to advance defense costs, subject to repayment in full upon a finding that there was no coverage under the Underlying Policies. *See* Exhibit D to the Gilbride Decl. It is disingenuous for the Insureds to portray the payments from the Underlying Insurers as final with no-strings-attached.

Moreover, as an excess insurer, AXIS is perfectly within its rights to take a different coverage position than the Underlying Insurers. The Supreme Judicial Court of Massachusetts, in *Allmerica Financial Corp. v. Certain Underwriters at Lloyd's, London*, 449 Mass. 621 (2007) ruled that an excess insurer on a follow-form excess policy is free to make an independent coverage evaluation that differs from the primary carrier's coverage position. A follow-form policy merely incorporates the terms of the primary policy, not the primary carrier's interpretation of such terms. An excess carrier's intent to adopt the words of the primary policy does not imply an intent by the excess carrier to be bound by the primary carrier's coverage decisions. *Allmerica Financial Corp.*, 449 Mass. at 633 (holding that the excess carrier need not "accept decisions made by the primary carrier about the extent of its obligations under its own agreement"). Rather, each excess insurance policy is a separate and distinct contract from other excess policies and the primary policy. As such, excess insurers have the right to make coverage decisions independent of other insurers. *Id.* Various United States Courts of Appeal and District Court holdings also recognize the right of an excess insurer to make its own independent evaluation of its policy. *See e.g.*, *Keystone Shipping Co. v. Home Ins. Co.*, 840 F.2d 181 (3d Cir. 1988) (holding that excess insurer was free not to join other insurers' settlement agreement);

*Revco D.S., Inc. v. Government Employees Ins. Co.*, 791 F.Supp. 1254 (N.D. Ohio 1991) (in settlement and defense, rights and responsibilities of primary and excess insurer are separate and distinct). The Court in *Allmerica* noted that it was unable to identify any case holding to the contrary. *Allmerica*, 449 Mass. at fn. 17.

Notably, the Movants never argue that the non-disclosure in the Application would not act as a bar to coverage. The Movants also do not argue that the Application is not part of the AXIS Policy. Instead, they argue that AXIS is legally estopped from using the Application as a coverage defense. Their position on the law is flat wrong.

By its express and unambiguous terms, the Application excludes coverage for any Claim "arising out of, based upon or attributable to any claim, fact, circumstance or situation" which "was required to be disclosed" in answer to question 12(b) of the Application. The Insureds owe their insurer a duty of candor when applying for insurance. *See Nichols v. American Risk Management, Inc.*, 2002 WL 31556384 *2 (S.D.N.Y. 2002) (the insured has the duty to disclose to potential insurers all "material facts" regarding the original risk of loss, and failure to do so renders an insurance agreement voidable or rescindable). The application is the most material basis upon which an insurer gauges the risk underwritten by the contract of insurance. *See Chicago Ins. Co. v. Kreitzer & Vogelman*, 265 F.Supp.2d 335 (S.D.N.Y. 2003) (the particular insurance policy issued would have contained different terms if the application were answered truthfully, because insurer would have perceived greater risk). The failure to disclose a material fact – especially in light of a specific question on the application – materially changes the risk underwritten. *See Berger v. Manhattan Life Ins. Co.*, 805 F.Supp. 1097, 1102 (S.D.N.Y. 1992) (it is well settled law in New York that even an innocent misrepresentation in the application is sufficient to allow an insurer to avoid a contract of insurance). Instead of the harsh rescission

remedy available to insurers where there is a material misrepresentation in an application for insurance, this Application provides an express remedy for non-disclosure – exclusion of the Claim from coverage.

The Movants cite two cases for the proposition that an insurer cannot rely on an incomplete application to deny coverage. The first case, *Phoenix Mut. Life Ins. Co. v. Raddin*, 120 U.S. 183 (1887), concerns a life insurance policy and has nothing whatsoever to do with corporate D&O insurance. The holding of this one-hundred-twenty-one year old case has been distinguished in instances, such as here, where the application asks for disclosure of a pre-existing condition and the lack of an answer constitutes non-disclosure of that condition. *See e.g., Moriarty v. Metropolitan Life Ins. Co.*, 202 S.W. 630, 631 (Ky.App. 1918) ("It would be a far-fetched construction to hold that this provision applied only in the event that the word 'nothing' was written. . . . no answer was necessary unless the insured desired to qualify the declaration."); *Home Life Ins. Co. v. Myers*, 112 F. 846, 852 (Dist. Ks. 1901) ("Here there is neither a truthful nor an imperfect answer. On the contrary, a false answer, which, by the terms of the contract, avoids the policy.").

The second case cited, *Philadelphia Indem. Ins. Co v. Holowits, Greener & Stengel LLP*, 379 F.Supp. 2d 442 (SDNY 2005), is likewise inapplicable to the facts of this case. In *Philadelphia Indem.*, the insured affirmatively answered a question requesting disclosure of pending potential claims, but failed to attach a schedule of such potential claims to the application. The insurer never asked for the schedule and was estopped from arguing non-disclosure of a particular potential claim. Here, the Movants never provided any signal to AXIS which would trigger follow-up to the Application question. They simply failed to disclose that anything was amiss.

The Bankruptcy Court also already opined that factual issues exist with respect to the Application preventing summary judgment prior to discovery: "Similarly, as far as the application is concerned, since I think that the argument ultimately depends upon a theory of waiver, I could envision there being factual issues as to that point." October 24, 2007 Tr. at 22.

The Movants have not provided any factual evidence that AXIS was not permitted to rely on question 12 of the Application. Accordingly, it appears there is no dispute that question 12 is properly part of the Application, or that the Application is properly part of the AXIS Policy. Instead, the Movants incorrectly argue the law, and their Motion for Summary Judgment should be denied. Question 12 of the Application unquestionably excludes coverage for this Claim. As discussed in depth below, this exclusion applies to the entire Claim and to all Insureds.

### iv. The Knowledge Exclusion Endorsement is Part of the AXIS Policy and Affords a Basis for AXIS to Deny Coverage to All Insureds

Movants continue in their quest to pick and choose among the terms of the AXIS Policy by arguing that the Knowledge Exclusion is not part of the AXIS Policy. The Knowledge Exclusion, at Endorsement 6 of the AXIS Policy, provides:

> In consideration of the premium charged, it is agreed that this Policy does not respond to Claims based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, or event, which as of the inception date of the Policy Period, any Insured had knowledge and had reason to suppose might give rise to a Claim that would fall within the scope of the insurance afforded by this Policy.

*See* Exhibit E to the Gilbride Decl., at Endorsement 6.

By its express terms, the Knowledge Exclusion excludes coverage for all Insureds if "any Insured had knowledge" of something he or she "had reason to suppose might give rise to a

Claim" under the AXIS Policy. Insureds Bennett, Trosten and Maggio have all pleaded guilty and admitted they had knowledge of the fraud at Refco prior to the inception of the AXIS Policy, and that they knew it was wrong. *See* Exhibits F, G, and H to the Gilbride Decl. Movant Grant has been convicted by a jury of criminal charges stemming from the fraud at Refco. *See* Exhibit Q to the Gilbride Decl. Based on these in-court admissions made under oath, and criminal conviction by a jury, the Knowledge Exclusion undoubtedly excludes claims arising out of the Refco fraud from the coverage otherwise afforded by the AXIS Policy. As discussed in depth below, this exclusion applies to the entire Claim and to all Insureds.

The Insureds argue that the Knowledge Exclusion is not properly part of the AXIS Policy because it was not listed on the August 11, 2005 binder. This argument fails because factual evidence clearly establishes that the Insureds agreed that the Knowledge Exclusion would be a part of the AXIS Policy, through AXIS's incorporation of the Primary Policy.[12] Because the Knowledge Exclusion was a term agreed to by the Insureds, it is properly part of the AXIS Policy. The Insureds, through their agent Marsh, represented to AXIS that a Knowledge Exclusion would be part of the Primary Policy – the policy to which the AXIS Policy "follows form." As such, it would have been entirely irregular for the AXIS binder to identify an endorsement to the Primary Policy.

When the Primary Policy was issued, without the Knowledge Exclusion, AXIS simply incorporated the agreed-upon term into its policy when the AXIS Policy was issued. The Insureds and AXIS had already agreed that the Knowledge Exclusion would be a term of the AXIS Policy. The Insureds represented to AXIS that AXIS would obtain the benefit of the

---

[12] It is worth noting that the policies excess of the AXIS Policy also all contain a Knowledge Exclusion.

Knowledge Exclusion through AXIS's incorporation of the Primary Policy. The fact that the Primary Policy was issued without this term does not change the fact that the Insureds agreed to be bound by it.[13]

As evidence of the Insureds' agreement to be bound by the Knowledge Exclusion, AXIS submits the affidavit of Steven Kane, the AXIS underwriter involved in the placement of the AXIS Policy. The Movants have had notice of why AXIS included the Knowledge Exclusion as an endorsement to the AXIS Policy for many months – Mr. Kane's affidavit laying out these same facts was attached to the first preliminary injunction opposition in the Bankruptcy Court in August 2007. Notably, the Movants have not submitted any rebuttal whatsoever in their Motion for Summary Judgment to Mr. Kane's factual description of the correspondence with Marsh regarding the Knowledge Exclusion.

Although AXIS had received a warranty letter signed by Phillip Bennett on behalf of all Insureds on January 21, 2005, AXIS was told by Marsh that Refco would not be updating the warranty statement in connection with the underwriting for the August 11, 2005 IPO. *See* Kane Aff. at Paragraph 24. The IPO was originally scheduled for June 2005, but was delayed until August 11, 2005. *See* Kane Aff. at Paragraph 25. Instead of an updated warranty statement, Marsh agreed that an "inverted warranty endorsement" could be part of the post-IPO policy. *See* Kane Aff. at Paragraph 25, *see also* Exhibit A to the Kane Aff. An "inverted warranty endorsement" is the same thing as a Knowledge Exclusion. *See* Kane Aff. at Paragraph 26.

The primary insurer, US Specialty, was also the primary insurer on the pre-IPO policy. Refco completed an application in connection with the pre-IPO policy which AXIS received in

---

[13] AXIS has no information why the Primary Policy was issued without the Knowledge Exclusion the broker represented would be included in that policy, to which AXIS would follow form.

February 2005. *See* Kane Aff. at Paragraphs 26-7; *see also* Exhibit J to the Gilbride Decl. This application contained warranty language (at question 12(b)), and AXIS expected that Refco would be completing a new application for the post-IPO policy. *See* Kane Aff. at Paragraphs 29-30. AXIS expected the application for the post-IPO policy would contain essentially the same questions contained in the pre-IPO policy – specifically, including the warranty language at question 12(b). *See* Kane Aff. at Paragraph 30.

On August 10, 2005, AXIS issued a binder for a post-IPO policy incepting on August 11, 2005. *See* Kane Aff. at Paragraph 31; *see also* Exhibit B to the Kane Aff. The August 10, 2005 binder, among other things, includes a list of endorsements that AXIS would place on its policy and a list of items that AXIS must receive, review and accept, as a pre-condition to the effectiveness of the binder. The items that AXIS must receive, review and accept as a pre-condition to the effectiveness of the binder are known in the industry as "subjectivities." One of the endorsements listed on the August 10, 2005 binder is "Reliance endorsement (e.g. on the primary carrier's application)." *See* Kane Aff. at Paragraph 33. This reliance endorsement was listed because AXIS expected a new application would be completed which would include a warranty statement and AXIS wanted to incorporate and adopt that application directly as an application for the AXIS post-IPO policy.

In conjunction with the reference to the "Reliance endorsement (e.g. on the primary carrier's application)," the August 10, 2005 binder also listed "Copy of the primary carrier's application" as one of the items that AXIS must receive, review and accept as a pre-condition to the effectiveness of the August 10, 2005 binder (a subjectivity). *See* Kane Aff. at Paragraph 34. The August 10, 2005 binder was sent to Kenny Li at Marsh. On August 11, 2005 (the next day), AXIS received an email from Kenny Li at Marsh, forwarding an email from another Marsh

employee (Senior Vice President, Pamela Sylwestrzak) sent to Mr. Li earlier on August 11,

2005. *See* Kane Aff. at Paragraph 36; *see also* Exhibit C to the Kane Aff.  Mr. Li's August 11,

2005 email simply stated "Please see below and confirm that this will satisfy the application

subjectivities." *See* Exhibit C to the Kane Aff..  Mr. Li's August 11, 2005 email forwarded an

email sent to him earlier that day by Pamela Sylwestrzak (a senior Marsh employee).  Ms.

Sylwestrzak's August 11, 2005 email stated:

> With respect to the open subjectivities, here is a copy of the HCC long form
> application submitted for the 8/4/04 placement.  HCC did not require a new
> application for the 8/11/05 binding of the IPO.  You will note the warranty is not
> signed.  It was agreed by HCC to accept the app as is ***and to add on the inverted
> warranty statement to the policy.***"

*See* Kane Aff. at Paragraph 38; *see also* Exhibit C to the Kane Aff. (emphasis added).  US

Specialty, the primary insurer, is also known by the name HCC.

Based on Marsh's representation, as Refco's agent, that the primary post-IPO policy

would have an inverted warranty, AXIS was satisfied that the policy to which the AXIS excess

policy would follow form, would contain an inverted warranty.  Accordingly, AXIS issued a

revised binder on August 11, 2005. *See* Kane Aff. at Paragraph 42; *see also* Exhibit D to the

Kane Aff.  The only difference between the August 10, 2005 and August 11, 2005 binders is that

AXIS removed the subjectivity regarding the receipt of the primary application from the August

11, 2005 binder.

Based on the foregoing: (1) AXIS understood that Refco would not execute an updated

warranty for the post-IPO policies; (2) AXIS understood that Refco would accept the inclusion

of an inverted warranty in the post-IPO policies in place of an updated warranty letter; (3) AXIS

understood that the AXIS Policy would follow the terms and conditions of the primary policy,

unless otherwise stated; and (4) AXIS understood that the primary policy would be issued with

the inclusion of an inverted warranty, to which the AXIS policy would follow-form. Because AXIS expected the inverted warranty to be included in the primary policy, there was absolutely no reason to include an inverted warranty in the August 11, 2005 binder. To do so would be contrary to established underwriting practices. *See* Kane Aff. at Paragraph 45. Excess insurers do not list the terms and conditions of underlying policies in their own binders. For reasons unknown to AXIS, the primary policy was ultimately issued without the inclusion of an inverted warranty statement.

On March 1, 2006, AXIS issued the post-IPO policy and included its standard form Knowledge Exclusion endorsement. *See* Kane Aff. at Paragraph 47; *see also* Exhibit E to the Gilbride Decl. AXIS included the Knowledge Exclusion endorsement in the AXIS Policy because it was agreed by Refco's agent (Marsh) that one of the terms of the AXIS Policy would be an inverted warranty.

Under New York law, insurance brokers generally act as agents on behalf of an insured and not the insurer. *See Int'l Paper Co. v. Gen'l Fire Assur. Co.*, 263 F. 363, 364 (2d Cir. 1920); *Philadelphia Indem. Ins. Co.*, 379 F.Supp.2d at 457; *Evvtex Co., Inc. v. Hartley Cooper Assocs. Ltd.*, 911 F.Supp. 732, 738 (S.D.N.Y. 1996) (citing *Bohlinger v. Zanger*, 306 N.Y. 228 (1954)); *Varda, Inc. v. Ins. Co. of North America*, 1992 WL 122759 at *3 (S.D.N.Y. 1992). Specifically, the broker will be considered an agent of the insured as to matters connected with the application and procurement of the insurance, including representations and warranties. *See Ivey v. United Nat'l Indem. Co.*, 259 F.2d 205 (9th Cir. 1958) (holding that the broker is the agent for insured in procuring insurance coverage); Couch on Insurance 3d §45:4 (concluding that the broker is the agent of insureds in connection with procurement of insurance).

An agent has the power to bind a principal in a contract when the agent is acting within the scope of actual or apparent authority. *See e.g., King World Pro., Inc. v. Fin. News Network, Inc.*, 660 F.Supp. 1381, 1383 (S.D.N.Y. 1987). As defined under New York law, actual authority may be either express or implied. Implied authority means "actual authority given implicitly by a principal to his agent," or "a kind of authority arising solely from the designation by the principal of a kind of agent who ordinarily possesses certain powers." *Masuda v. Kawasaki Dockyard Co.,* 328 F.2d 662, 664-65 (2d Cir.1964). The general rule in New York with regard to implied authority is that "an agent employed to do an act is deemed authorized to do it in the manner in which business entrusted to him is usually done." *King World,* 660 F.Supp. at 1383 (quoting *Wen Kroy Realty Co. v. Public Nat'l Bank & Trust Co.,* 260 N.Y. 84, 89-90 (1932). Accordingly, the representations by Marsh, that an "inverted warranty" or Knowledge Exclusion would be a term of the AXIS Policy, constituted an agreement by the Insureds to be bound by that term.

AXIS also notes that the AXIS Policy was delivered to the Insureds on March 1, 2006. *See* Gilbride Decl. at E. On March 6, 2006, AXIS disclaimed coverage for these matters based, in large part, on the Knowledge Exclusion. Importantly, none of the Insureds, including the Movants, raised any objection to AXIS's inclusion of the Knowledge Exclusion or denial of coverage until well over a year later. At that time, the Insureds (including these Movants) sought to enforce the contract delivered to them on March 1, 2006. By seeking to enforce the terms of the contract, as written, they waived any ability to challenge the terms of the contract through their ratification of the contract. *See e.g., S.E.C. v. Credit Bancorp, Ltd.*, 147 F.Supp.2d 238, 256 (S.D.N.Y. 2001) ("When determining ratification, the key factors are whether the party silently acquiesced in the contract or rather promptly interposed his objections upon discovering the

basis for the claim of rescission." (internal citation omitted)).  To the extent that the Movants

now repudiate the terms of the insurance contract, to which their agent, Marsh, agreed, there

never was a "meeting of the minds" and no contract was ever formed.  *See Tractebel Energy*

*Marketing, Inc.,* 487 F.3d at 95 (to create a binding contract under New York law, there must be

an objective meeting of the minds).  The Knowledge Exclusion was a material term of the

insurance contract.

The Bankruptcy Court has already opined that factual issues prevent summary judgment

with respect to the Knowledge Exclusion:

> there are currently credible nonspeculative contentions by Axis that there are
> factual issues, *i.e.*, did it sneak it in, *i.e.*, did it sneak in the endor -- the prior
> knowledge endorsement or was that something that was understood with the
> broker and/or Refco from the get-go or was it agreed upon at some point in the
> middle of the process?

October 24, 2007 Tr. at 22.

There are genuine issues of material fact with respect to the Knowledge Exclusion.

Accordingly, Summary Judgment is inappropriate at this time.  AXIS has not had any

opportunity to conduct any discovery whatsoever.  Its declaratory judgment action in the

Bankruptcy Court was dismissed and its declaratory judgment action in this Court has been

stayed.[14]  AXIS would want to depose certain individuals known and unknown at the broker,

Marsh, who were involved with the underwriting process.  AXIS would like to depose certain

individuals known and unknown at Refco, including Ms. Brooks, who were involved in the

underwriting process.  AXIS also would like an opportunity to review material documents in

---

[14] *See November 13, 2007 Order*, Index No. 07-CV-07924-GEL, Doc. 5 ("The civil action pending before this Court
as No. 07-CV-7924-GEL is hereby stayed until 30 days have elapsed from this Court's decision regarding the
appeals described in paragraph 1 of this Order."), attached as Exhibit K to the Gilbride Decl. (the "Stay Order").

Marsh's files and in Refco's files regarding the Knowledge Exclusion.    For the foregoing reasons, the Motion for Summary Judgment should be denied.

The Knowledge Exclusion is properly part of the terms of the AXIS Policy.  As discussed below, the Knowledge Exclusion excludes coverage for all Insureds based on the knowledge of any single Insured.

### v.    The Prior Acts Exclusion (CFTC Litigation) Affords a Basis for AXIS To Deny Coverage to All Insureds

The final basis for AXIS's denial of coverage is based on the prior acts exclusion at Clause XI. of the AXIS Policy, which provides:

> The Insurer shall not be liable for any amount in any Claim taking place during the Policy Period and arising under any Insurance Product, which is based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving:
>
> A.    Any demand, suit or other proceeding pending, or order, decree or judgment entered, against any Insured on or prior to the Pending or Prior Claim Date set forth in Item 7 of the Declarations [August 5, 2004] or any wrongful act, fact, circumstance or situation underlying or alleged therein; or
>
> B.    Any other wrongful act, fact, circumstance or situation whenever occurring, which together with a wrongful act, fact, circumstance or situation described in (a) above are causally or logically interrelated by a common nexus.

See Exhibit E to the Gilbride Decl.

Accordingly, if litigation were pending on or before August 5, 2004, which is an any way related to the allegations in the current suits, this provision would exclude coverage for the current suits.   Simply because two lawsuits involve different parties, legal theories, wrongful acts, or requests for relief, does not mean that the matters do not have a similar factual nexus. See Seneca Ins. Co. v. Kemper Ins. Co., 2004 WL 1145830 (S.D.N.Y. 2004) (Leisure, J.) at *8.

AXIS is aware of a 1994 CFTC complaint which generally alleges the same type of transactions – improperly shifting client funds among accounts – which were used to perpetrate the fraud that ultimately destroyed Refco. AXIS should have the opportunity to review Refco's files concerning the specific allegations brought by the CFTC.

Mr. Klejna argues that the Refco Inc., which was the subject of the 1994 CFTC complaint, is different from the Refco which went public in August 2005. Mr. Klejna offers no evidence whatsoever that supports the proposition that the two entities are unrelated. In fact, the evidence he submits, as part of the Kim Declaration, confirms that the entities are related. Accordingly, Mr. Klejna's Motion for Summary Judgment raises two factual questions: (1) whether the 1994 litigation and the current litigation were related; and (2) whether the two Refco entities are related. AXIS believes that, if given a reasonable opportunity to conduct discovery, those factual questions would be answered in its favor.

### vi. The Warranty Letter, The Application, and The Knowledge Exclusion Do Not Contain Non-Imputation Clauses and Each Affords an Independent Basis for AXIS to Deny Coverage to ALL Insureds Based on the Knowledge of ANY Insured

The Movants argue that one sentence excised from its context within an endorsement to the Primary Policy overrides the express contractual language of the AXIS Policy. They are wrong. The Warranty Letter, the exclusion at Question 12 of the Application, and the Knowledge Exclusion each permit exclusion as to *all* Insureds (including so-called "innocent" Insureds), based on the knowledge of *any* single Insured.

The Movants point to Endorsement 10 of the Primary Policy, which provides:

> The Insureds represent that the particulars and statements contained in the Application are true, accurate and complete and are deemed material to the acceptance of the risk assumed by the Insurer under this Policy. This Policy is issued in reliance upon the truth of such representations. No knowledge or information possessed by any Insureds will be imputed to any other Insured. If any of the particulars or statements in the Application is untrue, this Policy will be voided with respect to any Insured who knew of such untruth.

*See* Exhibit I to the Gilbride Decl.

This endorsement is completely inapplicable to the exclusion in the Warranty Letter, the Exclusion at question 12 of the Application, or the Knowledge Exclusion. Endorsement 10 is limited, by its express terms, to statements in the Application – and only where the particular application question does not expressly carve itself out from the non-imputation language found in Endorsement 10. Movants concede in their briefs that the Warranty Letter was not part of the Application. *See Klejna* Brief at 15; Other Movants Brief at 15-16.

Movants also argue that a non-imputation clause, binding upon AXIS, is found within the Primary Policy. They misleadingly remove the most important phrase from the provision quoted in their briefs – "For purposes of determining the application of **the above** EXCLUSIONS, no Wrongful Act. . .". (emphasis added) *See Klejna* Brief at 5; Other Movants Brief at 22. None of the exclusions appearing above the phrase misquoted by Klejna and the Other Movants is a current basis for AXIS's denial of coverage. (Appearing directly above the misquoted passage are nine exclusions.) Thus, this language is inapplicable and only included in the Movants' briefs in an attempt to mislead the Court. The full quotation of the clause is:

> For purposes of determining the application of the above EXCLUSIONS, no Wrongful Act of any Insured Person will be imputed to any other Insured Person who did not have actual knowledge of, or directly participate in the commission of, such Wrongful Act and, except for Wrongful Acts of the Company's chairman of the board, chief executive officer, president, chief financial officer or general counsel, no Wrongful Acts of any Insured Person will be Imputed to the Company.

*See* Exhibit I to the Gilbride Decl. at p. 5.

Under settled law in this Circuit, a "follow form" excess insurer is bound to the terms and conditions of the underlying policy, unless the excess policy provides otherwise. *See Home Ins. Co.,* 902 F.2d at 1113 (excess policy controls the excess insurer's obligations if there is any conflict between the insuring agreement of the followed policy and the excess policy). With respect to non-imputation, AXIS asserts Endorsement 10 of the Primary Policy does not apply, or, to the extent it does, the AXIS Policy conflicts with this provision and "provides otherwise." *Id.*

The AXIS Policy follows the provisions of the Primary Policy, unless the AXIS Policy provides otherwise. The coverage provided by the AXIS Policy can also be narrowed by more restrictive coverage provided by any of the excess policies between AXIS and the Primary Insurer. It is expressly provided that the coverage provided by the AXIS Policy will be narrower and different than that provided by the Primary or other Underlying Insurers. *See* Exhibit E to the Gilbride Decl. at p. 1.

Courts in the Second Circuit do not decide the question of coverage for supposed "innocent insureds" lightly. *See American Intern. Specialty Lines Ins. Co. v. Towers Financial Corp.,* 1997 WL 906427, at *9 (S.D.N.Y. 1997). "Whichever way a court rules on this question, it will cause hardship to an innocent party: either the innocent insureds who did not make any misrepresentation, or the innocent insurance company which was deceived." *Id.* While a decision of no coverage may seem unfair to the so-called innocent insureds who find themselves without insurance coverage through no fault of their own, "a contrary decision would have resulted in similar hardship to the insurance company, which would find itself

supplying coverage to a risk it never meant to insure" *Id.* Thus, courts in this district have adopted the following approach: "(w)hile we sympathize with (the innocent insureds') position, and recognize that innocent (employees) are likely to suffer if the entire policy is voidable because of one man's fraudulent response, it must be recognized that plaintiff insurers are likewise innocent parties." *Id.* (referencing *Bird v. Penn Central Company*, 341 F.Supp. 291, 294 (1972)). Of course, it is important to note that none of the Movants have been determined to be "not guilty" or "not liable" – and certainly none has been adjudicated "innocent." In fact, one Movant – Grant – has been found "guilty" by a jury.

The Warranty Letter expressly states that the representation is made "by the undersigned *on behalf of all Insureds* under the Policy" (emphasis added) – that is, all Insureds are party to the warranty. The Warranty Letter itself states that "No person(s). . . is cognizant. . ." – they *each* warrant that *none* of them has knowledge. The remedy provided by the Warranty Letter also clearly applies to all Insureds – "any claim arising therefrom is excluded from the proposed insurance." There is nothing in the language of the Warranty Clause to imply that the exclusion would only be limited to the individual with knowledge. It says just the opposite, using the phrases "No Person(s)", "on behalf of all Insureds under the Policy," and "any claim". Similar language has been found by courts to exclude coverage for all insureds when only one insured had the knowledge. *See, e.g., Coregis Ins. Co. v. Lewis Johs Avallone Aviles & Kaufman LLP*, 2006 WL 2135782, at *4 (E.D.N.Y. 2006) (enforcing policy language excluding claims if any insured knew or could have reasonably known of anything which might have given rise to a claim); *McCauley Enterprises Inc. v. New Hampshire Ins. Co*, 716 F.Supp. 718, 721 (D. Conn. 1989) (excluding coverage for innocent insured where policy excluded coverage for fraudulent, dishonest or criminal act by any insured). *See also 2575 Owners Corp. v. Federal Ins. Co.*, 1998

WL 846123, at *2 (S.D.N.Y. 1998) (excluding coverage for all insureds where policy required disclosure by "any individual" who knew of facts which might give rise to a claim).

The Application exclusion at question 12 also contains language whereby it is expressly agreed that knowledge by any single Insured will exclude coverage for all Insureds. Question 12(b) asks: "Is any person or entity proposed for this insurance aware of any fact, circumstance or situation involving the Applicant or any Insured Person or Organization which he, she or it has reason to believe might result in a claim being made?" Nothing is disclosed in connection with the answer to this question. The Application continues by saying:

> **Without prejudice to any other rights of the Insurer, it is understood and agreed that the Insurer will not be liable under any policy that may be issued on the basis of this Application to make <u>any payment of Loss</u>, including <u>Defense Costs</u>, in connection with <u>any Claim</u> arising out of, based upon or attributable to any claim, fact, circumstance or situation disclosed <u>or required to be disclosed</u> in response to questions 12(a) and 12(b).**

*See* Exhibit J to the Gilbride Decl. at p. 3. (bold in original, underlining added). The Application itself was signed by Philip Bennett "acting as the authorized agent of the persons and entity(ies) proposed for this insurance." *See* Exhibit J to the Gilbride Decl., at p. 5.

The plain language of the Application clearly provides that if any of the Insureds had knowledge of something "required to be disclosed" AXIS would not respond to that Claim in any way. The exclusion excludes "any payment of Loss" – it doesn't say Loss on behalf of the person who withheld such knowledge.

Mr. Bennett – who has already pleaded guilty to criminal charges arising from the fraud at Refco – signed the Application, "as the authorized agent" of all Insureds. Legally, it is as if he polled all the Insureds and asked if any of them knew of anything that might result in a claim. Acting as their agent, Bennett confirmed that they all agreed to be bound by the exclusion if any

AXIS BRIEF IN OPPOSITION TO SUMMARY JUDGMENT

of them failed to disclose anything "required to be disclosed" in response to the Application

question. In addition to pleading guilty to criminal charges, Messrs. Bennett and Trosten have

also consented to entry of an Order of "no coverage" under a policy excess to the AXIS Policy,

which denied coverage based on similar exclusionary language.

The Knowledge Exclusion likewise excludes coverage for all Insureds based on the

knowledge of any single Insured. The Endorsement begins with the clear notation that "This

endorsement modifies the insurance provided . . .". The Knowledge Exclusion provides:

> In consideration of the premium charged, it is agreed that this **Policy does not respond to Claims** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, or event, which as of the inception date of the Policy Period, **any Insured** had knowledge and had reason to suppose might give rise to a Claim that would fall within the scope of the insurance afforded by this Policy.

*See* Exhibit E to the Gilbride Decl., at Endorsement 6 (emphasis added).

The Knowledge Exclusion uses the "any Insured" language and notes that the "Policy

does not respond to Claims" – it doesn't say "does not respond to Claims by the person who had

knowledge." The clear and unavoidable language of this exclusion excludes coverage for all

Insureds based on the knowledge of any single Insured.

If the Insureds wanted non-imputation of knowledge to apply to these provisions, they

should have asked for it and paid for it. They did not. Under New York law, if the terms of an

insurance contract are clear and unambiguous, they must be accorded their plain and ordinary

meaning and the policy enforced as written. *Government Employees Insurance Co. v. Kligler*, 42

N.Y.2d 863, 864, (N.Y. 1977). New York law views the plain meaning of an insurance contract,

such as the AXIS Policy, from the viewpoint of sophisticated business people. *Moshiko, Inc. v.*

*Seiger & Smith, Inc.*, 529 N.Y.S.2d 284, 288 (App. Div. 1st Dep't. 1988), *aff'd*, 529 N.E.2d 420

(N.Y. 1988). Most importantly, New York courts have historically noted that "it is not the function of a court to rewrite insurance policies so as to provide coverage which the court might have considered more equitable." *In re Ambassador Group, Inc. Litigation*, 738 F. Supp. 57, 63 (E.D.N.Y. 1990) (citing *Cornellier v. American Casualty Co.*, 389 F.2d 641, 644 (2d Cir. 1968)). The fact that an insured may have contracted for coverage that was of little use to it at the time of the loss does not mean that it is entitled to more beneficial coverage for which it did not contract. *Id.* at 62 (citing *Moshiko*, 529 N.Y.S.2d at 288).

Finally, for purposes of opposing Summary Judgment, AXIS notes that even if this Court determines that the non-imputation provision applies to each of the provisions AXIS relies on to deny coverage – something AXIS vigorously disputes – AXIS still must be permitted to make an alternate factual showing that each of the Movants had sufficient individual knowledge of the fraud at Refco to preclude coverage under those provisions. AXIS believes that by establishing Bennett's knowledge, coverage is excluded for all. If this Court disagrees, however, AXIS must be given the opportunity to prove that each of the Movants had the requisite knowledge. Each of the Movants is a defendant in one or more civil and/or criminal lawsuits alleging – at their core – that each Movant had knowledge of the fraud. AXIS must be permitted adequate opportunity to make its case that each Movant had knowledge of the fraud. The fact that the Movants dispute the allegations in the underlying litigation serves to prove that genuine questions of material fact exist in this coverage action and pre-discovery summary judgment is inappropriate.

### b. The Motion for Summary Judgment Dismissing Movants From the AXIS Complaint Was Filed In Violation of the Court Imposed Litigation Stay

A litigation stay was imposed by Order of this Court dated November 13, 2007.  *See* Exhibit K to the Gilbride Decl.  That Order permitted a summary judgment filing only with respect to the adversary proceedings, wherein the reference to the Bankruptcy Court was withdrawn.  Importantly, the AXIS Complaint at Index No. 07-CV-7924-GEL was stayed "until 30 days have elapsed from this Court's decision regarding the appeals described in paragraph 1 of this Order."  The appeals have not been decided by the Court, and the litigation stay is still in place.  Accordingly, AXIS believes the Motion for Summary Judgment seeking dismissal from the AXIS Complaint was filed in violation of the litigation stay imposed by this Court.[15]

It is that very litigation stay which has prevented AXIS from conducting any of the discovery it now asserts is a necessary prerequisite to the determination of any of the factual issues raised by Movants.  In fact, AXIS has not even served the AXIS Complaint and, if the stay were lifted, would seek to amend the AXIS Complaint prior to service.  *See* FRCP 15(a).

### c. Summary Judgment in Favor of Grant is Especially Inappropriate

Grant, one of the Movants seeking Summary Judgment dismissing him from the AXIS Complaint, was convicted by a jury of the five criminal counts against him arising out of the fraud at Refco.[16]  *See* Exhibit Q to the Gilbride Decl.  Even if this Court were to determine non-

---

[15] AXIS requests that this Court lift the stay to permit AXIS to file this opposition to the Motions for Summary Judgment.

[16] Grant was found guilty of conspiracy, securities fraud, wire fraud, bank fraud and money laundering.

imputation were to apply to the Warranty Letter, the question 12 of the Application, and the Knowledge Exclusion – something AXIS vehemently disputes – it has now been determined by a jury that Grant also possessed the requisite knowledge. These exclusions would still exclude coverage for Grant as a matter of law. Accordingly, it would be particularly inappropriate for Grant to obtain dismissal from the AXIS Complaint.

AXIS also notes that, upon sentencing on August 7, 2008, additional grounds for denial of coverage for Grant will be triggered. The AXIS Policy expressly excludes coverage for any Claim "arising out of based upon or attributable to the gaining by any Insured of any profit or advantage to which such Insured was not legally entitled" and any Claim "arising out of based upon or attributable to the commission by any Insured of any criminal or deliberately fraudulent or dishonest act." *See* Exhibit I to the Gilbride Decl. at p.4, Exclusions A and B. Both of these exclusions require a final adjudication and expressly are subject to non-imputation. Accordingly, upon sentencing, a final adjudication will have occurred and AXIS will have two additional grounds upon which to deny coverage to Grant. Upon the lifting of the litigation stay presently in place with respect to the AXIS Complaint, AXIS will seek to amend its Complaint accordingly.[17]

## IV.    PRE-DISCOVERY SUMMARY JUDGMENT ON COUNT ONE OF THE COUNTERCLAIMS IS INAPPROPRIATE

The Officer Insureds have filed counterclaims which precisely mirror the relief AXIS seeks through its declaratory judgment action. AXIS seeks a declaration that no coverage exists,

---

[17] AXIS also notes that, given the criminal conviction and Condition D(2), AXIS demanded that Grant immediately repay to AXIS the $2,659,503.92 in Defense Costs it advanced on his behalf. To date, Grant has not repaid a single penny to AXIS.

and count one of the counterclaims seek a declaration of coverage. AXIS relies on all of the same arguments advanced in support of AXIS's Complaint seeking a declaration of no coverage, to defend the Officer Insureds' counterclaims seeking a declaration of coverage. Accordingly, AXIS incorporates each of the foregoing arguments opposing Summary Judgment dismissing Movants from the AXIS Complaint into its opposition of Summary Judgment granting a declaration of coverage. Each form of relief is a mirror image of the other; the arguments in support and in opposition are the same.

AXIS further notes that Mr. Klejna's Local Rule 56.1 Statement and the Declaration of Helen Kim, both of which were filed as part of the Klejna Motions for Summary Judgment, make reference to a purported settlement Mr. Klejna reached in one of the underlying lawsuits. This purported settlement is not mentioned anywhere in the argument section of Mr. Klejna's brief in support of his motion. AXIS disputes that the purported settlement constitutes Loss under the AXIS Policy at any time when sufficient funds remained in the AXIS Policy to fund the purported settlement. The definition of Loss includes amounts an Insured "is legally obligated to pay." *See* Exhibit I to the Gilbride Decl., at p. 3. The purported settlement specifically contains several conditions precedent before there is a legal obligation for payment. One of those conditions, final court approval, still has not occurred. Accordingly, the purported settlement does not constitute Loss. AXIS also notes that it agreed not to raise non-consent as defense to coverage and that several of the other Insureds objected to any possibility that AXIS would fund the purported settlement. Of course, having denied coverage, AXIS refused to fund the purported settlement. *See* Exhibit L to the Gilbride Decl.

AXIS denied coverage for this matter and was under a Court Order to pay Defense Costs until the AXIS Policy $10 million Limit of Liability was reached. If AXIS had agreed to fund

the purported settlement, it would have been in direct violation of the Court Order. *See* Exhibit R to the Gilbride Decl. Mr. Klejna was always free to seek an Order from a Court requiring AXIS to fund his purported settlement, instead of paying Defense Costs, but he never did that. In fact, he affirmatively opposed each and every attempt AXIS made to prevent erosion of its Limit of Liability through continued payments of Defense Costs, or to seek a declaration of the priority between the Court Ordered payment of Defense Costs and Mr. Klejna's purported settlement. *See* Exhibit M to the Gilbride Decl.

Based on the foregoing, AXIS adamantly disputes Mr. Klejna's factual presentation of his tender of the purported settlement to AXIS and any legal conclusions he intends to infer from those disputed factual contentions. It bears repeating that as of March 6, 2008, AXIS made payments to the Insureds totaling $10 million – the Limit of Liability for the AXIS Policy.


V.    **CONCLUSION**

Movants' Motion for Summary Judgment should be denied because there are many unresolved disputed genuine issues of material fact at this time. The parties have also not had any opportunity to engage in any discovery whatsoever – something the Bankruptcy Court has already told these Movants they must do before any Summary Judgment Motion could reasonably be filed.

Disputed facts include, but are not limited to: (1) whether the Warranty Letter is part of the AXIS Policy; (2) whether the exclusionary language in the Warranty Letter was intended to apply to all Insureds based on the knowledge of any single Insured; (3) whether there was a material non-disclosure in the Application; (4) whether the exclusionary language at question 12

of the Application was intended to exclude coverage for all Insureds based on the knowledge of any single Insured; (5) whether the Knowledge Exclusion is a term of the AXIS Policy; (6) whether the Knowledge Exclusion was intended to exclude coverage for all Insureds based on the knowledge of any single Insured; (7) whether litigation prior to August 5, 2004 is related to the current litigation; (8) whether the Refco Inc. named in a 1994 CFTC complaint is related to the Refco Inc. which was formed as part of the August 2005 IPO; and (9) whether each of the Movants had knowledge of the fraud at Refco.

In the context of the Movants' Summary Judgment Motion, each and every one of these disputed facts is viewed in the light most favorable to AXIS – that is, the exclusions are part of the AXIS Policy and they operate to exclude coverage for all Insureds. With that necessary factual backdrop, Summary Judgment in favor of the Movants – a declaration of coverage – is entirely unjustified.

Three of the Insureds have pleaded guilty to criminal charges stemming from the fraud at Refco. One Insured – and a Movant seeking Summary Judgment – was convicted of criminal charges arising out of the fraud at Refco. Bennett – the Insured who signed the Warranty Letter and Application – in addition to pleading guilty, also consented to the entry of an Order of *no coverage* with respect to an insurer excess of the AXIS Policy, which denied coverage based on nearly identical exclusionary language to that which AXIS relies upon to deny coverage.[18]

The parties have not had the opportunity to engage in any discovery whatsoever. AXIS's complaint has been stayed by this Court. With the exception of the skirmish regarding the advancement of Defense Costs, AXIS has respected the Insureds' wishes for the coverage

---

[18] Trosten, another Insured who has pleaded guilty to criminal charges, also consented to the entry of an Order of no coverage with respect to an insurer excess of the AXIS Policy, which denied coverage based on nearly identical exclusionary language.

**AXIS BRIEF IN OPPOSITION TO SUMMARY JUDGMENT**

litigation to "take a back seat" to the underlying litigation. This is not to say that AXIS has not requested information from the Insureds – it has been requesting information for over two years. Nevertheless, the Insureds have not responded to any of AXIS's reasonable requests for information.

Because genuine issues of material fact remain, the parties have not had any opportunity to engage in any discovery, and AXIS has a reasonable basis to believe that adequate discovery would enable it to obtain a judgment in its favor – and not in Movants' favor - the Summary Judgment Motions must be denied in their entirety.

Dated: May 2, 2008

Respectfully submitted,

KAUFMAN BORGEEST & RYAN LLP

By: _____
Wayne E. Borgeest
Joan M. Gilbride
Robert A. Benjamin

200 Summit Lake Drive
Valhalla, New York 10595
(914) 741-6100 (Telephone)
(914) 741-0025 (Facsimile)
wborgeest@kbrlaw.com
jgilbride@kbrlaw.com
rbenjamin@kbrlaw.com

*Attorneys for AXIS Reinsurance Company*