**Wayne E. Borgeest**
**Joan M. Gilbride**
**Robert A. Benjamin**
**KAUFMAN BORGEEST & RYAN LLP**
**200 Summit Lake Dr**
**Valhalla, New York 10595**
**(914) 741-6100 (Telephone)**
**(914) 741-0025 (Facsimile)**
**wborgeest@kbrlaw.com**
**jgilbride@kbrlaw.com**
**rbenjamin@kbrlaw.com**

*Attorneys for AXIS Reinsurance Company*

DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK                          *Electronically Filed*
------------------------------------------------------------------ X
AXIS REINSURANCE COMPANY,                       :        No. 07-CV-07924-GEL
                            Plaintiff,          :
            v.                                  :
                                                :
PHILLIP R. BENNETT, et al.,                     :
                                                :
                            Defendants.         :
------------------------------------------------------------------ X
                                                :
In re                                           :        Chapter 11
                                                :
REFCO, INC., et al.,                            :        Case No. 05-60006-RDD
                                                :
                            Debtors.            :        Jointly Administered
------------------------------------------------------------------ X
AXIS REINSURANCE COMPANY,                       :        Adv. Proc. No. 07-01712-RDD
                                                :        Reference Withdrawn:
                                                :        No. 08-CV-03242-GEL
                            Plaintiff,          :        Appeals:
            v.                                  :        (1) No. 07-CV-09420-GEL
                                                :        (2) No. 07-CV-09842-GEL
PHILLIP R. BENNETT, et al.,                     :        (3) No. 07-CV-10302-GEL
                                                :
                            Defendants.         :


**[caption continued on next page]**

```
------------------------------------------------------------------- X
TONE N. GRANT, et al.,                        :    Adv. Proc. 07-02005-RDD
                                              :    consolidated with 07-01712-RDD
                                              :    Reference Withdrawn:
                                              :    No. 08-CV-03243-GEL
                    Plaintiffs,               :    Appeals:
         v.                                   :    (1) No. 07-CV-09843-GEL
                                              :    (2) No. 07-CV-10302-GEL
AXIS REINSURANCE COMPANY,                     :
                                              :
                    Defendant.                :
------------------------------------------------------------------- X
LEO R. BREITMAN, et al.,                      :    Adv. Proc. No. 07-02032-RDD
                                              :    consolidated with 07-01712-RDD
                                              :    Reference Withdrawn:
                                              :    No. 08-CV-03303-GEL
                    Plaintiffs,               :    Appeal:
         v.                                   :    (1) No. 07-CV-10302-GEL
                                              :
AXIS REINSURANCE COMPANY,                     :
                                              :
                    Defendant.                :
------------------------------------------------------------------- X
```

**AXIS REINSURANCE COMPANY STATEMENT OF ADDITIONAL MATERIAL FACTS AND RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS SUBMITTED ON BEHALF OF SEXTON, SHERER, MURPHY, SILVERMAN, GRANT, BREITMAN, GANTCHER, HARKINS, JAECKEL, LEE, O'KELLEY AND SCHOEN PURSUANT TO LOCAL RULE 56.1**

Axis Reinsurance Company ("AXIS") submits this Statement of Additional Material Facts and Response To Statement of Undisputed Material Facts Submitted on Behalf of Sexton, Sherer, Murphy, Silverman, Grant, Breitman, Gantcher, Harkins, Jaeckel, Lee, O'kelley and Schoen Pursuant to Local Rule 56.1.

1.     On or about August 11, 2005, Refco, Inc. conducted its initial public offering.

*Not Controverted.*

714082-1

2.      On October 10, 2005, Refco Inc. disclosed in a press release that it had been carrying an undisclosed receivable of approximately $430 million from an entity controlled by Phillip Bennett, the Chief Executive Officer of Refco Inc.

*Not Controverted.*

3.      On October 11, 2005, Refco Inc. issued a second press release relating to the approximately $430 million receivable.

*Not Controverted.*

4.      The Insureds are former officers or directors of Refco Inc. (or its predecessor).

*Not Controverted.*

5.      AXIS is an insurance company that is organized and exists pursuant to the laws of the State of New York, with its principal place of business in New York.

*Not Controverted.*

6.      On October 17, 2005, Refco Inc. and many of its direct and indirect subsidiaries filed voluntary petitions for relief in this Court under Chapter 11 of the United States Bankruptcy Code.

*Not Controverted.*

7.      The Insureds have been named as defendants in various proceedings related to the collapse of Refco Inc. (collectively, the "Underlying Actions"). Such Underlying actions were filed as early as October 2005 and include *In re Refco, Inc. Securities Litigation, No. 05* Civ.8626 (GEL) (S.D.N.Y.) (the "Securities Litigation").

*Not Controverted.*

8.       Other Underlying Actions in which various Insureds have been named as defendants include: *In re Refco Capital markets, Ltd. Brokerage Customer Securities Litigation,* No.06 Civ. 643 (GEL) (S.D.N.Y.); *American Financial International Group, et al. v. Bennett et. al.,* No. 05 Civ. 8988 (S.D.N.Y.); *V.R. Global Partners, L.P. v. Bennett, et al.,* No. 07 Civ. 8686 (GEL) (S.D.N.Y.); *Capital Management select Fund Ltd., v. Bennett, et al.,* No. 07 Civ. 8688 (GEL) (S.D.N.Y.); *Kirschner v. Agoglia, et al., Adv. Proc No. 07-3060 (*RDD) Bankr. S.D.N.Y.); *Kirschner v. Thomas H. Lee Partners, L.P. et al.,* No. 07-7074 (GEL) (S.D.N.Y.); and *Kirschner v. Grant Thornton LLP et al.,* No. 2007-1-008818 (I1. Circuit Ct.).

***Not Controverted.***

9.       Insured Tone Grant was also named as a defendant in one criminal action, entitled *United States v. Phillip Bennett, Robert Trosten and Tone Grant,* S3 05 Cr. 1192 (NRB) (S.D.N.Y.) (the "Criminal Action").

***Not Controverted.***

10.      For the policy period of August 5, 2004 to August 11, 2005, Refco Group Ltd., LLC had a Directors and Officers ("D&O") insurance tower as follows: (1) U.S. Specialty Insurance Company, Directors, Officers and Organization Liability Insurance Policy No. 24-MGU-04-A4151 ($10 million primary coverage) (the "2004-2005 U.S. Specialty Policy," or "2004-2005 Primary Policy"); (2) Greenwich Insurance Company Policy No. ELU086772-04 ($10 million excess of $10 million); and (3) AXIS SecurExcess Policy No. RNN 503865 ($10 million excess of $20 million) (the "2004-2005 AXIS Policy").

***Not Controverted, although the policies speak for themselves.***

11.    U.S. Specialty Insurance Co. ("U.S. Specialty") issued to Refco Group Ltd., LLC a policy binder dated August 5, 2004.

*Not Controverted.*

12.    Pursuant to U.S. Specialty's August 5, 2004 policy binder, Refco Group Ltd., LLC submitted an application to U.S. Specialty.

*Not Controverted.*

13.    AXIS issued a policy binder, dated August 5, 2004, to Refco Group Ltd., LLC.

*Not Controverted.*

14.    AXIS required no application of its own in issuing the 2004-2005 AXIS Policy.

*Not Controverted.*

15.    AXIS relied upon the application submitted by Refco Group Ltd., LLC to U.S. Specialty for the 2004-2005 Primary Policy in issuing its 2004-2005 AXIS Policy.

*Not Controverted.*

16.    Consistent with its August 5, 2004 policy binder, AXIS requested that Refco Group Ltd., LLC provide it with a warranty letter.

*Not Controverted.*

17.    Refco Group Ltd., LLC submitted to AXIS a letter that was executed by Phillip Bennett, as President and CEO of Refco Group Ltd., LLC, on or about January 21, 2005 (the "Warranty Letter).

*Not Controverted.*

18.    The Warranty Letter was never submitted to U.S. Specialty.

*Not Controverted.*

714082-1

19.    The Warranty Letter was not attached to Refco Group Ltd., LLC's application to U.S. Specialty.

*Not Controverted.  The Warranty Letter expressly became part of the "proposed insurance" ie. the 2005-2006 AXIS Policy.  The Warranty Letter had nothing whatsoever to do with the U.S. Specialty Policy.  Evidence: See Exhibit O to the Declaration of Joan M. Gilbride ("Gilbride Decl.").*

20.    On or about April 25, 2005, AXIS issued SecurExcess Policy No. RNN 503865 to Refco Group Ltd., LLC for the period August 5, 2004 to August 11, 2005.

*Not Controverted.*

21.    The Warranty Letter was submitted By Refco Group Ltd., LLC to AXIS before any discussions commenced regarding insurance coverage that was later purchased by Refco Inc. for the policy period August 11, 2005 to August 11, 2006 (the "2005-2006 Policy Period").

*Controverted.  The Warranty Letter was provided to AXIS as part of the underwriting of the "2005-2006 Policy Period").  Evidence: See Paragraph 7 of the May 2, 2008 Affidavit of Steven Kane ("Kane Aff.")*

22.    In 2005, Refco Inc. procured a tower of Directors and Officers liability insurance for the 2005-2006 Policy Period consisting of a primary policy and five excess policies.

*Not Controverted.*

23.    For the 2005-2006 Policy Period, U.S. Specialty issued the primary policy in the "tower" of D&O insurance, Directors, Officers and Corporate Liability Insurance Policy No. 24-MGU-05-A10821, with a $10 million limit of liability (the "2005-2006 U.S. Specialty Policy," or "2005-2006 Primary Policy").

***Not Controverted.***

24.    In issuing the 2005-2006 Primary Policy, U.S. Specialty did not require a new application from Refco Inc., relying instead upon the application submitted by Refco Group Ltd., LLC to U.S. Specialty for the policy period August 5, 2004 to August 11, 2005.

***Not Controverted.***

25.    The 2005-2006 Primary Policy names as an "Insured Person" under the Policy "any past, present or future director or officer of the Company."

***Not Controverted, although the Policy speaks for itself.***

26.    "Company" is defined in the 2005-2006 Primary Policy as Refco Inc. and "any Subsidiary thereof." Kim Declr. Ex. 8 (AXIS Adversary Compl.) at Ex. B; Kim Declr. Ex. 20 (AXIS Compl.) at Ex. B; Sylwestrzak Declr. Ex. G at p. 2 (Definition (c) and Item 1).

***Not Controverted, although the Policy speaks for itself.***

27.    The 2005-2006 Primary Policy provides that "[t]he Insurer will pay to or on behalf of the Insured Persons Loss arising from Claims…against the Insured Persons for Wrongful Acts."

***Not Controverted, although the Policy speaks for itself.***

28.    U.S. Specialty paid the defense costs of the Insureds until the limits of the 2005-2006 U.S. Specialty Policy were exhausted.

***Controverted. This statement is incomplete. U.S. Specialty paid its Limit of Liability subject to a strong reservation of rights and pursuant to an interim funding agreement with the Insureds which expressly permits U.S. Specialty to recover all amounts paid upon an adjudication of no coverage under the U.S. Specialty Policy. Evidence: See Exhibits C and D to the Gilbride Decl.***

29.    The Complaints in the AXIS Adversary Proceeding and the AXIS District Court Action list various lawsuits for which AXIS has received notice from its insureds under the 2005-2006 AXIS Policy, including the Securities Litigation.

***Not Controverted, although AXIS has now received notice of additional lawsuits.***

30.    The Underlying Actions for which the Insureds have sought coverage under the 2005-2006 AXIS Policy are "Claims" for "Wrongful Acts," as defined in the 2005-2006 Primary Policy.

***Controverted.  Most are, but at least one is not.  AXIS's coverage letters speak for themselves. Also, the Policy speaks for itself.***

31.    "Loss" is defined by the 2005-2006 Primary Policy so as to include Defense Costs and any damages, settlements and judgments that result from a "Claim."

***Controverted.  As stated, this is overly broad and is not how "Loss" is defined in the Primary Policy.  Loss is also constrained by applicable exclusions and other terms to the Primary Policy. The Primary Policy speaks for itself.  See Exhibit I to the Gilbride Decl., at p.3.  For purposes of the AXIS Policy, the definition of "Loss" is further constrained by the terms of the AXIS Policy and any other Underlying Insurance.  See Exhibit E to the Gilbride Decl.***

32.    Lexington Insurance Company ("Lexington") issued the first excess policy above the 2005-2006 U.S. Specialty Policy, for the period of August 11, 2005 to August 11, 2006, with a $7.5 million limit of liability in excess of $10 million (the "Lexington Policy," or "First Excess Policy ").

***Not Controverted, although the Lexington Policy speaks for itself.***

33.    Lexington paid the defense costs of the Insureds until the limits of the Lexington Policy were exhausted.

*Controverted. This statement is incomplete. Lexington paid its Limit of Liability subject to a strong reservation of rights and pursuant to an interim funding agreement with the Insureds which expressly permits Lexington to recover all amounts paid upon an adjudication of no coverage under the Lexington Policy. Evidence: See Exhibits C and D to the Gilbride Decl.*

34.    On August 11, 2005, AXIS issued to Marsh, as broker for Refco Inc., a policy binder (the "AXIS Binder") for its SecurExcess Policy No. RNN 506300 for the 2005-2006 Policy Period.

*Not Controverted, although the AXIS Binder speaks for itself.*

35.    The AXIS Binder does not contain or refer to a Knowledge Exclusion.

*Controverted. The AXIS Binder was issued in reliance on Marsh's representations of the terms, conditions, exclusions, and endorsements which would be contained within the Primary Policy, to which AXIS would "follow form." The AXIS Binder expressly lists the Primary Policy as "Underlying Insurance." AXIS was told by Marsh that a Knowledge Exclusion would be contained within the Primary Policy. Accordingly, through AXIS's incorporation of the Primary Policy terms, conditions, etc.,   the Knowledge Exclusion is contained in the AXIS Binder. Evidence: See Paragraphs 23 through 49 of the Kane Aff.*

36.    On March 1, 2006, AXIS issued SecurExcess Policy No. RNN 506300 for the 2005-2006 Policy Period (the "2005-2006 AXIS Policy").

*Not Controverted.*

37.    The 2005-2006 AXIS Policy states that, except as specifically set forth in the 2005-2006 AXIS Policy, "the insurance afforded hereunder should apply in conformance with the provisions of" the 2005-2006 Primary Policy.

*Controverted. As quoted, that statement is inaccurate and incomplete. The AXIS Policy speaks for itself. See Exhibit E to the Gilbride Decl.*

38.    The 2005-2006 AXIS Policy defines "Insureds" as the same persons who may be entitled to insurance under the 2005-2006 Primary Policy.

*Controverted. This statement is an incomplete definition of Insureds under the AXIS Policy. The AXIS Policy speaks for itself. See Exhibit E to the Gilbride Decl., at p.1.*

39.    Each of the Insureds is an "Insured" under the 2005-2006 AXIS Policy.

*Not Controverted.*

40.    The 2005-2006 AXIS Policy defines "Claim(s)" as "event(s) which take place during the Policy Period and which trigger(s) coverage under the insuring agreement(s) of the Underlying Insurance."

*Not Controverted.*

41.    Any "Claim" for a "Wrongful Act" brought against the Insureds that falls within Insuring Agreement (A) of the Primary Policy also falls within the "Insuring Agreement" of the 2005-2006 AXIS Policy.

*Controverted. The Insuring Agreement of the AXIS Policy is more restrictive than simply providing coverage for anything which falls within Insuring Agreement (A) of the Primary Policy. The Insuring Agreement of the AXIS Policy speaks for itself and includes restrictions on coverage by the terms, conditions, exclusions and endorsements to any of the Underlying Insurance, as well as to the AXIS Policy itself. Evidence: See Exhibit E to the Gilbride Decl. at p.1.*

42.    The 2005-2006 AXIS Policy covers Defense Costs, as defined in the 2005-2006 Policy.

*Controverted.   The AXIS Policy covers Defense Costs incurred in connection with a Claim otherwise covered by the AXIS Policy.  See Exhibits E and I to the Gilbride Decl.*

43.    The 2005-2006 AXIS Policy provides that "[i]f the Underlying Limits are wholly exhausted solely due to actual payment under the Underlying Insurance, this Policy shall continue to apply as primary insurance with respect to the applicable Insurance Product(s)...."

*Not Controverted, although the AXIS Policy speaks for itself and the quotation provided is incomplete.*

44.    Refco Inc.'s insurance broker, Marsh USA, Inc., never authorized AXIS to add a "Knowledge Exclusion" to the 2005-2006 AXIS Policy.

*Controverted.  Refco's insurance broker, Marsh USA, Inc., provided in writing that a Knowledge Exclusion would be a term of the AXIS Policy, through its incorporation of the Primary Policy. Evidence: See Paragraphs 23 through 49 of the Kane Aff.*

45.    AXIS added a "Knowledge Exclusion" endorsement to the 2005-2006 AXIS Policy when it issued the AXIS Policy on or about March 1, 2006.

*Controverted.  The word "added" in this statement is misleading.  AXIS issued the AXIS Policy containing all of the terms agreed upon by the Insureds, including a Knowledge Exclusion.  The Knowledge Exclusion term was placed as an endorsement to the AXIS Policy because the Primary Policy was not issued in conformance with the terms represented to AXIS in writing by Marsh.  Evidence:  See Paragraphs 23 through 49 of the Kane Aff.*

46.    At no time prior to binding coverage did AXIS request modification of the severability provisions in the 2005-2006 Primary Policy.

*Controverted. This statement is unclear and ambiguous. There is no requirement for AXIS to "request modification" of any term in the Primary Policy. The AXIS Policy is a separate insurance contract with its own terms. Where those terms conflict with terms in the incorporated Underlying Insurance policies, the terms of the AXIS Policy govern. Evidence: See Exhibit E to the Gilbride Decl.*

47.    On March 6, 2006, AXIS' counsel issued a letter denying coverage to the Insureds and other Refco Inc. officers and/or directors for various lawsuits noticed to AXIS pursuant to the 2005-2006.

*Not Controverted.*

48.    On or about May 23, 2007, AXIS commenced the AXIS Adversary Proceeding by filing a Complaint seeking a declaration that the 2005-2006 AXIS Policy does not provide coverage for the Insureds, among others, for various lawsuits noticed to AXIS pursuant to the 2005-2006 AXIS Policy.

*Not Controverted.*

49.    On or about July 13, 2007, Insureds Sexton, Sherer, Murphy, Silverman as well as Dennis Klejna ("Klejna"), answered the complaint in the AXIS Adversary Proceeding and filed counterclaims against AXIS.

*Not Controverted.*

50.    On or about July 31, 2007, Murphy and Klejna filed an Amended Answer and Counterclaim against AXIS in the AXIS adversary Proceeding.

*Not Controverted.*

51.     Count I of each Insureds Sexton, Sherer, Murphy and Silverman's counterclaims in the AXIS Adversary Proceeding seek a declaratory judgment that he is entitled to coverage under the 2005-2006 AXIS Policy for Losses arising out of various Refco-related actions.

*Controverted.  The counterclaims seek a declaration with respect to coverage for the Underlying Actions – a defined term – not for "various Refco-related actions."  The counterclaims speak for themselves.  Evidence: See Exhibit 1 to the Kline Declr. And Exhibit 9 to the Kim Declr..*

52.     On or about August 16, 2007, AXIS filed its Answers to the Counterclaims of Sexton, Sherer and Silverman in the AXIS Adversary Proceeding.

*Not Controverted.*

53.     On or about August 23, 2007, AXIS filed its Answer to the Counterclaims of Murphy and Klejna in the AXIS Adversary Proceeding.

*Not Controverted.*

54.     On or about July 12, 2007, Insureds Grant, Breitman, Gantcher, Harkins, Jaeckel, Lee, O'Kelley and Schoen, moved to dismiss the AXIS Adversary Proceeding.

*Not Controverted, although other Insureds were also party to the motions to dismiss, including Insureds who have pleaded guilty to criminal indictments and an Insured who has been convicted by a criminal jury.*

55.     At oral argument on August 30, 2007, the Bankruptcy Court granted the motion by Sexton, Sherer, Murphy, Silverman, and Klejna for a preliminary injunction based on their Counterclaims, and also dismissed AXIS complaint in the AXIS Adversary Proceeding without prejudice.

*Not Controverted.*

56.    Following their dismissal in the AXIS Adversary Proceeding, the Insureds (other than

Sexton, Sherer, Silverman and Murphy) commenced two separate adversary proceedings-*Grant v.

AXIS Reinsurance Co.,* Adv. Proc. No. 07-2005-rdd (Bankr. S.D.N.Y.) (the "Grant Adversary

Proceeding") and *Breitman v. AXIS Reinsurance Co.,* Adv. Proc. No. 07-2032-rdd (Bankr.

S.D.N.Y.) (the "Breitman Adversary Proceeding")-seeking advancement under the 2005-2006

AXIS Policy.

*Not Controverted.*

57.    On or about November 13, 2007, this Court withdrew the bankruptcy reference with

respect to the remaining claims then pending in the United States Bankruptcy Court for the

Southern District of New York in the AXIS Adversary Proceeding, the Grant Adversary

Proceeding and the Breitman Adversary Proceeding, and consolidated these adversary proceedings.

*Not Controverted.*

58.    On or about September 10, 2007, AXIS filed its complaint in the AXIS District Court

Action.

*Not Controverted.*


Pursuant to Local Rule 56.1(b), and Federal Rule of Civil Procedure 56(f), AXIS respectfully

submits the following statement of additional material facts:


1.    The Warranty Letter is part of the AXIS Policy.

**Evidence:** *See* **Paragraphs 6 through 14 of the Kane Aff.  In addition, there has not been any**

**discovery to date because a litigation stay is in place and AXIS has reason to believe that**

discovery will yield additional admissible evidence relevant to this issue. *See* **Gilbride Decl. at Rule 56(f) Statement.**

      2.      The exclusionary language in the Warranty Letter applies to all Insureds based on the knowledge of any single Insured.

**Evidence:** **Paragraphs 6 through 14 of the Kane Aff. In addition, there has not been any discovery to date because a litigation stay is in place and AXIS has reason to believe that discovery will yield additional admissible evidence relevant to this issue.** *See* **Gilbride Decl. at Rule 56(f) Statement.**

      3.      The Warranty Letter excludes coverage for all Insureds for the Underlying Litigation.

**Evidence:** **Paragraphs 6 through 14 of the Kane Aff. In addition, there has not been any discovery to date because a litigation stay is in place and AXIS has reason to believe that discovery will yield additional admissible evidence relevant to this issue.** *See* **Gilbride Decl. at Rule 56(f) Statement.**

      4.      There was a material non-disclosure in the Application.

**Evidence:** **Paragraphs 15 through 22 of the Kane Aff. In addition, there has not been any discovery to date because a litigation stay is in place and AXIS has reason to believe that discovery will yield additional admissible evidence relevant to this issue.** *See* **Gilbride Decl. at Rule 56(f) Statement.**

      5.      The exclusionary language at question 12 of the Application excludes coverage for the Underlying Litigation for all Insureds based on the knowledge of any single Insured.

**Evidence:** **Paragraphs 15 through 22 of the Kane Aff. In addition, there has not been any discovery to date because a litigation stay is in place and AXIS has reason to believe that**

discovery will yield additional admissible evidence relevant to this issue. *See* Gilbride Decl. at Rule 56(f) Statement.

6.     The Knowledge Exclusion is a term of the AXIS Policy.

**Evidence:  Paragraphs 23 through 49 of the Kane Aff.  In addition, there has not been any discovery to date because a litigation stay is in place and AXIS has reason to believe that discovery will yield additional admissible evidence relevant to this issue.** *See* **Gilbride Decl. at Rule 56(f) Statement.**

7.     The Knowledge Exclusion excludes coverage for the Underlying Litigation for all Insureds based on the knowledge of any single Insured.

**Evidence:  Paragraphs 23 through 49 of the Kane Aff.  In addition, there has not been any discovery to date because a litigation stay is in place and AXIS has reason to believe that discovery will yield additional admissible evidence relevant to this issue.** *See* **Gilbride Decl. at Rule 56(f) Statement.**

8.     Litigation prior to August 5, 2004 is related to the current litigation.

**Evidence:  Paragraphs 50 through 51 of the Kane Aff.  In addition, there has not been any discovery to date because a litigation stay is in place and AXIS has reason to believe that discovery will yield additional admissible evidence relevant to this issue.** *See* **Gilbride Decl. at Rule 56(f) Statement.**

9.     The Refco Inc. named in a 1994 CFTC complaint is related to the Refco Inc. which was formed as part of the August 2005 IPO.

**Evidence:  Paragraphs 50 through 51 of the Kane Aff.  In addition, there has not been any discovery to date because a litigation stay is in place and AXIS has reason to believe that**

discovery will yield additional admissible evidence relevant to this issue.  *See* **Gilbride Decl. at Rule 56(f) Statement.**

10.     The Prior Litigation Exclusion excludes coverage for all Insureds for the Underlying Litigation.

**Evidence:  Paragraphs 50 through 51 of the Kane Aff.  In addition, there has not been any discovery to date because a litigation stay is in place and AXIS has reason to believe that discovery will yield additional admissible evidence relevant to this issue.** *See* **Gilbride Decl. at Rule 56(f) Statement.**

11.     Whether each of the Movants had knowledge of the fraud at Refco.

**Evidence:  There has not been any discovery to date because a litigation stay is in place and AXIS has reason to believe that discovery will yield additional admissible evidence relevant to this issue.** *See* **Gilbride Decl. at Rule 56(f) Statement.**

Dated: May 2, 2008

Respectfully submitted,

KAUFMAN BORGEEST & RYAN LLP

By: _____

Wayne E. Borgeest
Joan M. Gilbride
Robert A. Benjamin

200 Summit Lake Drive
Valhalla, New York 10595
(914) 741-6100 (Telephone)
(914) 741-0025 (Facsimile)
wborgeest@kbrlaw.com
jgilbride@kbrlaw.com
rbenjamin@kbrlaw.com
*Attorneys for AXIS Reinsurance Company*

714082-1