# EXHIBIT E

# KAUFMAN BORGEEST & RYAN LLP

ANDREW S. KAUFMAN‡
WAYNE B. BORGEEST
JULIANNA RYAN
LEE E. BERGER
LORETTA A. KREZ*
JOAN M. GILBRIDE†‡
JONATHAN D. REKEN†
JUDITH M. FISHER*
A. MICHAEL FURMAN*
MICHAEL P. MEZZACAPPA*†
DOUGLAS J. FITZMORRIS
STEVEN D. WEINER
SCOTT A. SCHECHTER*
CHRISTOPHER E. DIGIACINTO†
ANN MARIE COLLINS*†
JONATHAN B. BRUNO*
PAUL J. COLUCCI

OF COUNSEL,
MARIBETH SLEVIN
SHERRI M. FELDMAN*
MARGARET J. DAVINO†‡

APPELLATE COUNSEL
JACQUELINE MANDELL

JONATHAN R. HAMMERMAN
HEATHER LASCHEWER*
CAROL S. DOTY†‡
ADEOLA I. ADELE
BARBARA-ANN M. COSTELLO
MELINDA R. MARGOLIES*
JEFFREY K. WHITTINGTON
ROCCO E MATRAO
ELIZABETH O'BRIEN TOTTEN
RICHARD A. PRETTI
REBECCA KILDUFF
KRISTOPHER M. DENNIS*
CHRISTINE HEENAN
BELINDA DODDS-MARSHALL*‡
JULIE A. KEEGAN
STEPHANIE E. GLINIK
JEFFREY W. KLEINER*
FRANK K. STRIANO†‡
JENNIFER FILZ
GINA M. HOGUE*
MICHAEL R. JAMES
YAEL WEPMAN*
R. EVON HOWARD*
LEONARD B. COOPER†‡

JULIE ANN LEVENSOHN*
JOHN B. MULLAHY*
JEFFREY C. GERSON†‡
CATHERINE KELLEHER*
REBECCA GOODMAN
PETER IANNACCI†
ANDREW R. JONES†
CHRISTOPHER GOMPRECHT
JAMES T. DE SILVA
KEITH L. KAPLAN†‡
DANIEL C. LYNCH*
VINCENT C. ANSALDO†
BRENDA CORREA*
DAVID J. VARRIALE†‡
DOUGLAS J. DOMSKY
KIMBERLY CRESPO
TIMOTHY E. MCCARTHY*
JEFFREY A. GRALNICK
TRACEY REZER-PERTGSON†
KATHERINE J. HOOPER†‡
DAMIEN SMITH
ANDREW S. KOWLOWITZ*+
MATTHEW M. FERGUSON*
JEANNE M. VALENTINE

EDWARD R. NORIEGA*
MATTHEW SPENGEL
PAUL T. CURLEY
ROBERT A. BENJAMIN*

† ALSO ADMITTED IN PA
* ALSO ADMITTED IN NJ
‡ ALSO ADMITTED IN DC
■ALSO ADMITTED IN CT
• ALSO ADMITTED IN MA
◊ ALSO ADMITTED IN TX
§ ALSO ADMITTED IN FL
⬥ ADMITTED IN FL ONLY
♦ ADMITTED IN NJ ONLY
□ ADMITTED IN CA ONLY
° ADMITTED IN NJ & MA ONLY
+ ADMITTED IN CA, NJ, DC ONLY
☆ BARRISTER AT LAW
ADMITTED IN ENGLAND & WALES

ATTORNEYS AT LAW

200 SUMMIT LAKE DRIVE
VALHALLA, NEW YORK 10595

TELEPHONE: 914-741-6100
FACSIMILE: 914-741-0025
www.kbrlaw.com

March 1, 2006

**VIA FEDERAL EXPRESS**

Pam Sylwestrzak
Senior Vice President
Marsh USA, Inc.
500 West Monroe Street
Chicago, IL 60661-3630

Re: Insured        :     Refco, Inc.
    Policy No.      :     RNN 506300
    Our File        :     481.001

Dear Pam:

As you know, this office represents AXIS US Insurance ("Axis") in connection with the captioned Insureds and excess directors and officers liability insurance policy. Your office has requested, on behalf of the Insureds, that Axis issue and deliver that policy referenced in the August 11, 2005 Policy Binder previously issued by Axis. Accordingly, we now enclose Axis Policy No. RNN 506300 (the "Policy"). Please disseminate this to all Insureds.

Please note and communicate to all Insureds that in issuing and delivering this Policy, Axis reserves all rights under the Policy, in equity and at law, including the right to rescind the Policy based on material misrepresentations made to Axis. The issuance and delivery of the enclosed Policy by Axis should not be interpreted as a ratification of the existence of a valid insurance contract.

NEW YORK CITY OFFICE
99 PARK AVENUE
NEW YORK, NEW YORK 10016
TELEPHONE: 212-980-9600
FACSIMILE: 212-980-9291

LONG ISLAND OFFICE
1305 FRANKLIN AVENUE
GARDEN CITY, NEW YORK 11530
TELEPHONE: 516-248-6000
FACSIMILE: 516-248-0677

CALIFORNIA OFFICE
CORPORATE CENTER AT MALIBU CANYON
26635 WEST AGOURA ROAD
CALABASAS, CALIFORNIA 91502
TELEPHONE: 818-880-0992
FACSIMILE: 818-880-0993

NEW JERSEY OFFICE
9 CAMPUS DRIVE
PARSIPPANY, NEW JERSEY 07054
TELEPHONE: 973-451-9600
FACSIMILE: 973-451-0150

By issuing the Policy, Axis does not intend to waive any rights, privileges or defenses available to Axis under the Policy, at law, or in equity, all of which are expressly reserved.

We will be providing a more detailed coverage position regarding the many matters that have been submitted for coverage. In the interim, please do not hesitate to contact the undersigned with any questions.

Very truly yours,

KAUFMAN BORGEEST & RYAN LLP

Wayne E. Borgeest

Enclosure

KAUFMAN BORGEEST & RYAN LLP



## SECUREXCESS DECLARATIONS

**SUBJECT TO THE PROVISIONS OF THE UNDERLYING INSURANCE, THIS POLICY MAY ONLY APPLY TO CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD. THE LIMITS OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENT AMOUNTS SHALL BE REDUCED AND MAY BE TOTALLY EXHAUSTED BY PAYMENT OF DEFENSE COSTS. PLEASE READ THIS POLICY CAREFULLY.**

| COMPANY: Axis Reinsurance Company | POLICY NUMBER: RNN 506300 |
|---|---|

| Item 1.  Policyholder:<br>Refco, Inc.<br>550 West Jackson Boulevard<br>Suite 1300<br>Chicago, IL 60661 | Item 2.  Policy Period:<br>a. Inception Date: <u>August 11, 2005</u><br>b. Expiration Date: <u>August 11, 2006</u><br><br>Both dates at 12:01 a.m. at the<br>address listed in Item 1 |
|---|---|

Item 3.   Limits of Liability (inclusive of defense costs):
    a.  Each Claim                                    $ 10,000,000
    b.  Maximum aggregate Limit of Liability for all Claim(s)
        During the **Policy Period** of all **Insurance Products**    $ 10,000,000

Item 4.  **Underlying Insurance** and **Insurance Products**:   See Endorsement No. 1

Item 5.  Endorsements Attached at Inception: SE 1000, SE 1300, SE 0522, SE 1010, MU 1032, Manuscript #6

| Item 6.  Notices to Insurer:<br>Notice of Claim(s) To Be Sent To:<br>Axis Financial Insurance Solutions Claims<br>Address:  Connell Corporate Park<br>Three Connell Drive<br>P.O. Box 357<br>Berkeley Heights, NJ 07922-0357 | All Other Notices To Be Sent To:<br>Axis Financial Insurance Solutions<br>Address:  Connell Corporate Park,<br>Three Connell Drive<br>P.O. Box 357<br>Berkeley Heights, NJ 07922-0357 |
|---|---|

| Item 7.  <u>Pending and Prior Claim Date: 06/04/04</u> | Item. 8  Terrorism Coverage Premium:<br>$10,000 |
|---|---|

The Insurer has caused this Policy to be signed and attested by its authorized officers, but it shall not be valid unless also signed by another duly authorized representative of the Insurer.

_____                    _____9/1/05_____
Authorized Representative                                                    Date


Kevin D. McLean                                                  Michael E. Morell


          Secretary                                                                    President


SE 0100 (Ed. 02 03)                    Page 1 of 1                    Printed in U.S.A.

## SECUREXCESS POLICY

In consideration of the payment of the premium, and in reliance on all statements made in the application(s) for this Policy and the **Underlying Insurance** and all information provided to the **Insurer** and any or all of the **Underlying Insurers**, and subject to the provisions of this Policy, the **Insurer** and the **Policyholder**, on its own behalf and on behalf of all **Insureds**, agree as follows.

### I.   INSURING AGREEMENT

With respect to each **Insurance Product**, the **Insurer** shall provide the **Insureds** with insurance during the **Policy Period** excess of all applicable **Underlying Insurance**. Except as specifically set forth in the provisions of this Policy, the insurance afforded hereunder shall apply in conformance with the provisions of the applicable **Primary Policy** and, to the extent coverage is further limited or restricted thereby, to any other applicable **Underlying Insurance**.  In no event shall this Policy grant broader coverage than would be provided by the most restrictive policy constituting part of the applicable **Underlying Insurance**.

The insurance afforded under this Policy shall apply only after all applicable **Underlying Insurance** with respect to an **Insurance Product** has been exhausted by actual payment under such **Underlying Insurance**, and shall only pay excess of any retention or deductible amounts provided in the **Primary Policy** and other exhausted **Underlying Insurance**.

### II.   DEFINITIONS

A.   **Claim(s)** means the event(s) which take place during the **Policy Period** and which trigger(s) coverage under the insuring agreement(s) of the **Underlying Insurance**.

B.   **Insurance Product** means each separate type of insurance identified as an "**Insurance Product**" in Endorsement No. 1 to this Policy.

C.   **Insured(s)** means any person(s) or entity(ies) that may be entitled to coverage under the **Primary Policy** at its inception.

D.   **Insurer** means the company identified as "**Insurer**" in the Declarations.

E.   **Policy Period** means the period from the inception date to the expiration date of this Policy stated in Item 2. in the Declarations, or its earlier cancellation or termination date, if any.

F.   **Policyholder** means the person(s) or entity(ies) identified in Item 1. in the Declarations.

G.   **Primary Policy** means the specific policy identified as the "**Primary Policy**" under the applicable **Insurance Product** listed in Endorsement No. 1 to this Policy.

H.   **Sublimit** means any **Underlying Limits** which:

   1.      applies only to a particular grant of coverage under such **Underlying Insurance**; and
   2.      reduces and is part of the otherwise applicable limits of liability of such **Underlying Insurance** set forth in Item 4 of the Declarations.

I.   **Underlying Insurance** means each insurance policy which constitutes all or part of an **Insurance Product**, as scheduled in Endorsement No. 1 to this Policy.

J.   **Underlying Insurers** means any or all of the companies who issued the policies of **Underlying Insurance**.

K.   **Underlying Limits** means, with respect to each **Insurance Product**, an amount equal to the aggregate of all limits of liability for each **Insurance Product** stated in Endorsement No. 1 to this Policy, plus the

uninsured retention or deductible, if any, applicable to the **Primary Policy** under such **Insurance Product.**

### III. CONDITIONS OF COVERAGE

    **A.** For purposes of determining when insurance under this Policy shall attach and the limitations under which such insurance shall apply:

        **1.** All of the **Underlying Insurance** in effect as of the inception date of the **Policy Period** shall be maintained in full effect with solvent insurers throughout the **Policy Period** except for any reduction or exhaustion of the **Underlying Limits** as provided in Section IV. below; and

        **2.** All **Insureds** shall comply fully with all of the provisions of this Policy.

    **B.** As a condition precedent to coverage under this Policy, the **Insured** shall give to the **Insurer** as soon as practicable, but in no event later than thirty (30) days thereafter, written notice and the full particulars of i) the exhaustion of the aggregate limit of liability of any **Underlying Insurance**, ii) any **Underlying Insurance** not being maintained in full effect during the **Policy Period**, or iii) an **Underlying Insurer** becoming subject to a receivership, liquidation, dissolution, rehabilitation or similar proceeding or being taken over by any regulatory authority.

    **C.** If during the **Policy Period** the provisions of the **Primary Policy** are changed in any manner, as a condition precedent to coverage under this Policy, the **Insured** shall give written notice to the **Insurer** of the full particulars of such change as soon as practicable but in no event later than thirty (30) days following the effective date of such change. No amendment to any **Primary Policy** or **Underlying Insurance** during the **Policy Period** shall be effective in broadening or extending the coverage afforded by this Policy or extending or increasing the limits of liability afforded by this Policy unless the **Insurer** so agrees in writing. The **Insurer** may, in its sole discretion, condition its agreement to follow any changes to the **Primary Policy** or the **Underlying Insurance** on the **Insured** paying any additional premium required by the **Insurer** for such change.

As soon as practicable, but in no event later than thirty (30) days thereafter, the **Policyholder** must give the **Insurer** written notice of any additional or return premiums charged or allowed in connection with any **Underlying Insurance.**

### IV. REDUCTION OR EXHAUSTION OF UNDERLYING LIMITS

    **A.** If the **Underlying Limits** are partially reduced solely due to actual payment under the **Underlying Insurance**, this Policy shall continue to apply as excess insurance over the remaining **Underlying Limits.**

    **B.** If the **Underlying Limits** are wholly exhausted solely due to actual payment under the **Underlying Insurance**, this Policy shall continue to apply as primary insurance with respect to the applicable **Insurance Product(s)** and the retention or deductible, if any, applicable under the **Primary Policy(ies)** shall apply under this Policy.

    **C** If any **Underlying Limits** are subject to a **Sublimit** then coverage hereunder shall not apply to any **Claim** which is subject to such **Sublimit**, provided however, that the **Underlying Limit** shall be recognized hereunder as depleted to the extent of any payment of such **Claim** subject to such **Sublimit.**

### V. LIMITS OF LIABILITY

    **A.** The amount stated in Item 3.a. in the Declarations shall be the maximum limit of the **Insurer's** liability for each **Claim** under the applicable **Primary Policy**, and shall be the maximum amount payable by the **Insurer** under this Policy for a single **Claim**, which amount shall be part of, and not in addition to, the amount stated in Item 3.b. in the Declarations.

B. The amount stated in Item 3.b. In the Declarations shall be the maximum aggregate amount payable by the **Insurer** under this Policy with respect to all **Claims** during the **Policy Period** for all **Insurance Products**.

C. This Policy does not provide coverage for any **Claim** not covered by the **Underlying Insurance**, and shall drop down only to the extent that payment is not made under the **Underlying Insurance** solely by reason of exhaustion of the **Underlying Insurance** through payments thereunder, and shall not drop down for any other reason. If any **Underlying Insurer** fails to make payments under such **Underlying Insurance** for any reason whatsoever, including without limitation the insolvency of such **Underlying Insurer**, then the **Insureds** shall be deemed to have retained any such amounts which are not so paid. If the **Underlying Insurance** is not so maintained, the **Insurer** shall not be liable under this Policy to a greater extent than it would have been had such **Underlying Insurance** been so maintained.

D. Payment by the **Insurer** of any amount, including but not limited to defense costs, shall reduce the limits of liability available under this Policy.

**VI. SETTLEMENTS AND DEFENSE**

A. No **Insured** under this Policy may, without the **Insurer's** prior written consent, which consent shall not be unreasonably withheld, admit liability for or settle any matter for which insurance may be sought under this Policy.

B. The **Insurer** may, at its sole discretion, elect to participate in the investigation, defense and/or settlement of any claim under this Policy, regardless of whether the applicable **Underlying Insurance** has been exhausted.

C. The **Insured**, and not the **Insurer**, has the duty to defend all **Claims** under this Policy.

**VII. SUBROGATION**

A. In the event of payment under this Policy, the **Insurer** shall be subrogated to all rights of recovery of each and all **Insureds** against any person or organization, and the **Insureds** shall do whatever is necessary to secure those rights to the satisfaction of the **Insurer**, including the execution of such documents necessary to enable the **Insurer** effectively to bring suit in the name of such **Insureds**.

B. Any amount recovered after payment under this Policy and any **Underlying Insurance** policies shall be apportioned among the Insurer and the **Underlying Insurers** net of the expense of such recovery in the reverse order of actual payment. The expenses attendant to such recovery shall be apportioned among those benefiting from the recovery in proportion to the amount of benefit to each party.

**VIII. AUTHORIZATION**

Except as stated in paragraph IX.A. below, the **Policyholder** shall be the sole agent of all **Insureds** with respect to all matters, including but not limited to giving and receiving notices and other communications, effecting or accepting any endorsements to or notices of cancellation of this Policy, the payment of premium and the receipt of any return premiums.

**IX. NOTICE**

A. With respect to any **Claim**, situation that could give rise to a **Claim**, or other matter as to which insurance may be sought under this Policy, the **Policyholder** or any **Insured** must give the **Insurer** written notice contemporaneously with and in the identical manner required by the applicable **Primary Policy**.

B. All notices under this Policy shall be sent to the **Insurer** at the address set forth in Item 6. In the Declarations.

**X. MODIFICATION, CANCELLATION AND NONRENEWAL**

    **A.** No modification of this Policy shall be effective unless made by endorsement signed by an authorized representative of the Insurer.

    **B.** The Policyholder may cancel this Policy at any time by written notice stating when thereafter such cancellation is to be effective.

    **C.** The Insurer may cancel this Policy only for nonpayment of premium, and only by delivering or mailing to the Policyholder written notice stating when, not less than ten (10) days thereafter, such cancellation shall become effective. The delivery or mailing of such notice shall be sufficient proof thereof and this Policy and the Policy Period shall terminate at the date and hour specified in the notice.

    **D.** The Insurer shall refund the unearned premium, computed at the customary short rate, if the Policy is cancelled by the Policyholder.

    **E.** The Insurer shall have no obligation to renew this Policy upon its expiration. If the Insurer decides not to renew this Policy, the Insurer shall provide written notice to the Policyholder by messenger, express delivery or first class mail at least sixty (60) days prior to the expiration of the Policy.

    **F.** Notwithstanding anything to the contrary set forth elsewhere in the Policy, in the event that any Underlying Insurance is rescinded by agreement or legal process for fraud or other material misrepresentation by the Policyholder or any of the Insureds, then this Policy shall be deemed to be automatically and immediately rescinded, but only with respect to any Insurance Product containing such rescinded Underlying Insurance.

**XI. EXCLUSIONS**

The Insurer shall not be liable for any amount in any Claim taking place during the Policy Period and arising under any Insurance Product, which is based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving:

    **A.** Any demand, suit or other proceeding pending, or order, decree or judgment entered against any Insured on or prior to the Pending or Prior Claim Date set forth in Item 7 of the Declarations or any wrongful act, fact, circumstance or situation underlying or alleged therein; or

    **B.** Any other wrongful act, fact, circumstance or situation whenever occurring, which together with a wrongful act, fact, circumstance or situation described in (a) above are causally or logically interrelated by a common nexus.

Endorsement No. 1

Effective date of this endorsement: 12:01 a.m. on: August 11, 2005
To be attached to and form part of Policy Number: RNN 506300
Issued to: Refco, Inc.
By: Axis Reinsurance Company

## SCHEDULE OF UNDERLYING INSURANCE AND INSURANCE PRODUCTS

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

SECUREXCESS POLICY

The Schedule of Underlying Insurance and Insurance Products is as follows:

A. **Insurance Product:**   **Directors and Officers Liability**

1. **Primary Policy**

| Insurer | Policy Number | Limits | Policy Period |
|---------|--------------|--------|---------------|
| HCC | 24-MGU-05-A10821 | $10,000,000 | 08/11/05-08/11/06 |

2. **Other Underlying Policies**

| Insurer | Policy Number | Limits | Policy Period |
|---------|--------------|--------|---------------|
| Lexington | 1620924 | $7,500,000 | 08/11/05-08/11/86 |

All other provisions remain unchanged.

_Dead Lukas_
Authorized Representative

_9/11/05_
Date

Endorsement No. 2

Effective date of this endorsement: 12:01 a.m. on: August 11, 2005
To be attached to and form part of Policy Number: RNN 506300
Issued to: Refco, Inc.
By: Axis Reinsurance Company

## IMPORTANT NOTICE TO ALL ILLINOIS POLICYHOLDERS

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

**SECUREXCESS POLICY**

In the event you need to contact someone about this Policy for any reason, please contact us at:

Axis Reinsurance Company
Connell Corporate Park
Three Connell Drive
P.O. Box 357
Berkeley Heights, NJ 07922-0357
Fax No.: 1 (908) 286-5600

If you have been unable to contact or obtain satisfaction from the insurer, you may contact the Illinois Department of Insurance to obtain information or make a complaint at:

Illinois Department of Insurance
Consumer Division of Public
Services Section
Springfield, Illinois 62767

SE13 00 (Ed. 02 03)                    Page 1 of 1                    Printed in U.S.A.

Endorsement No. 3

Effective date of this endorsement: 12:01 a.m. on: August 11, 2005
To be attached to and form part of Policy Number: RNN 506300
Issued to: Refco, Inc.
By: Axis Reinsurance Company

## ILLINOIS AMENDATORY ENDORSEMENT

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

SECUREXCESS POLICY

1.  Section X., MODIFICATION, CANCELLATION AND NONRENEWAL, paragraph C. is amended by deleting
the words "delivering or" in the first sentence and the words "delivery or" in the second sentence of that
provision.

2.  Section X., MODIFICATION, CANCELLATION AND NONRENEWAL, paragraph F. is deleted.  Provided,
however, the Insureds and the Insurer hereby agree that the Insurer shall have the same rights under law
to rescission that it had if Section X. F. had not been included in the Policy or deleted by this endorsement.

All other provisions remain unchanged.

_____
Authorized Representative

_____
Date    9/1/05

SE 0522 (Ed. 0205)                                                                    Printed in U.S.A.

Endorsement No. 4

Effective date of this endorsement: 12:01 a.m. on: August 11, 2005
To be attached to and form part of Policy Number: RNN 506300
Issued to: Refco, Inc.
By: Axis Reinsurance Company

## PRIOR NOTICE EXCLUSION

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

## SECUREXCESS POLICY

In consideration of the premium charged, it is agreed that the Insurer shall not be liable for any amount from any Claim which is based upon, arising from, or attributable to or in consequence of any fact, circumstance or situation which has been the subject of any written notice given under any other policy of insurance.

All other provisions remain unchanged.

_____
Authorized Representative

_____
Date

SE1010 0203

Endorsement No. 5

Effective date of this endorsement: 12:01 a.m. on: August 11, 2005
To be attached to and form part of Policy Number: RNN 506300
Issued to: Refco, Inc.
By: Axis Reinsurance Company

## MANUSCRIPT APPLICATION ENDORSEMENT

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

**SECUREXCESS POLICY**

In consideration of the premium charged, it is agreed by the Insurer and Insureds that the application or proposal signed *February 8, 2005* and submitted to *Axis Reinsurance Company* on *U.S. Specialty Insurance Company's* form shall be accepted by the Insurer as the Application for this Policy.

Any and all references to an Application or application in this Policy shall mean the application or proposal described above.  The Insurer has relied upon all statements, warranties and other information and documents contained in or submitted with such other application or proposal as if they were submitted directly to Insurer using its own Application form.

All other provisions remain unchanged.

_____
Authorized Representative

_____
Date

MU1032  2/2003

Endorsement No. 6

Effective date of this endorsement: 12:01 a.m. on: August 11, 2005
To be attached to and form part of Policy Number: RNN 506300
Issued to: Refco, Inc.
By: Axis Reinsurance Company

**Knowledge Exclusion**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

## SECUREXCESS POLICY

In consideration of the premium charged, it is agreed that this Policy does not respond to **Claims** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, or event, which as of the inception date of the **Policy Period**, any **Insured** had knowledge and had reason to suppose might give rise to a **Claim** that would fall within the scope of the insurance afforded by this Policy.

All other provisions remain unchanged.

_____
Authorized Representative

8/11/05
_____
Date

Page 1 of 1

# EXHIBIT F

7CJAAMAGP2.txt

1

7CJAAMAGP                    Plea
1   UNITED STATES DISTRICT COURT
1   SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x
2
3   UNITED STATES OF AMERICA,
3
4              v.                         07 SD 312 (RLE)
4
5   SANTO C. MAGGIO,
5
6              Defendant.
6
7   ------------------------------x
7
8                                         New York, N.Y.
8                                         December 19, 2007
9                                         11:30 a.m.
9
10
10  Before:
11
11                  HON. RONALD L. ELLIS,
12
12                                        Magistrate Judge
13
13
14                     APPEARANCES
14
15  JAMES B. COMEY
15       United States Attorney for the
16       Southern District of New York
16  NEIL BAROFSKY
17  CHRISTOPHER GARCIA
17       Assistant United States Attorney
18
18  PAUL SHECHTMAN
19       Attorney for Defendant Maggio
19
20  SCOTT E. HERSHMAN
20       Attorney for Defendant Maggio
21
22
23
24
25
                SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300

2

7CJAAMAGP                    Plea
1            (Case called)
2            MR. BAROFSKY:  Neil Barofsky and Christopher Garcia
3   for the government.
4            Good morning, your Honor.
5            MR. SCHECHTMAN:  Paul Shechtman, for Mr. Maggio, with
6   Scott Hershman, for Mr. Maggio.
7            THE COURT:  Okay.  I understand that he is going to be
8   pleading to an information.
9            MR. SCHECHTMAN:  Correct, your Honor.
10           THE COURT:  Has he waived indictment yet?
11           MR. SCHECHTMAN:  You have the paperwork.  We're ready
12  to waive.
                        Page 1

```
                          7CJAAMAGP2.txt
13              THE COURT:  We will do those separately.  Treat the
14    waiver as it should be and then I'll consider the taking of the
15    plea.
16              MR. SCHECTMAN:  Sounds right.
17              COURTROOM DEPUTY:  You are Santo Maggio?
18              THE DEFENDANT:  Yes.
19              COURTROOM DEPUTY:  Have you signed this waiver of
20    indictment.
21              THE DEFENDANT:  Yes.
22              COURTROOM DEPUTY:  Before you signed it did you
23    discussion it with your attorney?
24              THE DEFENDANT:  Yes.
25              COURTROOM DEPUTY:  Did he explain it to you?
                      SOUTHERN DISTRICT REPORTERS, P.C.
                             (212) 805-0300
```

3

```
7CJAAMAGP                     Plea
 1              THE DEFENDANT:  Yes.
 2              THE COURT:  Do you understand what you are doing?
 3              THE DEFENDANT:  Yes.
 4              COURTROOM DEPUTY:  Do you understand that you are
 5    under no obligation to waive indictment?
 6              THE DEFENDANT:  Yes.
 7         .    COURTROOM DEPUTY:  Do you understand that if you do
 8    not waive indictment, if the government wants to prosecute you
 9    they will have to present this case to a grand jury which may
10    or may not indict you?
11              THE DEFENDANT:  Yes.
12              THE COURT:  Do you realize by that by signing this
13    waiver of indictment you have given up your right to have this
14    case presented to a grand jury?
15              THE DEFENDANT:  Yes, I do.
16              COURTROOM DEPUTY:  Have you seen a copy of the
17    information?
18              THE DEFENDANT:  Yes, I did.
19              THE COURT:  Would you like for me to read it to you?
20              THE DEFENDANT:  No.
21              COURTROOM DEPUTY:  How do you plead?
22              THE DEFENDANT:  Guilty.
23              COURTROOM DEPUTY:  The case has already been assigned
24    to Judge Stein.
25              MR. SCHECTMAN:  Correct.
                      SOUTHERN DISTRICT REPORTERS, P.C.
                             (212) 805-0300
```

4

```
7CJAAMAGP                     Plea
 1              MR. BAROVSKY:  Your Honor, we consent to the defendant
 2    being released on his own recognizance.
 3              MR. SCHECTMAN:  We don't object to that.
 4              THE COURT:  Technically to the information you are
 5    supposed to plead "not guilty".
 6              MR. SCHECTMAN:  I think that is right and it is my
 7    apologies.
 8              THE DEFENDANT:  I plead not guilty now and then later
 9    of guilty.
10              MR. SCHECTMAN:  Not guilty at this time, your Honor,
11    but we will be entering a guilty plea.
12              THE COURT:  Objection.  All right.  Now, the actual
13    plea has been referred by Judge Stein; is that it?
14              MR. BAROFSKY:  Yes, your Honor.
15              THE COURT:  And how many counts in the information?
16              MR. BAROFSKY:  Your Honor, there are four counts.
17              THE COURT:  What is he pleading to?
                               Page 2
```

7CJAAMAGP2.txt
18      MR. BAROFSKY:  All four counts, Judge.
19      THE COURT:  Okay.  Mr. Maggio, this matter has been
20 referred to me before Judge Stein for the purpose of taking
21 your plea.  Did you consent to proceed before a United States
22 magistrate judge on your felony plea allocution?
23      THE DEFENDANT:  Yes.
24      THE COURT:  Before you signed it did you discuss it
25 with your attorneys?
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                                    5

7CJAAMAGP                         Plea
1       THE DEFENDANT:  Yes, your Honor.
2       THE COURT:  Did they explain it to you?
3       THE DEFENDANT:  Yes.
4       THE COURT:  Do you understand that you have an
5 absolute right to have this proceeding before a United States
6 district judge?
7       THE DEFENDANT:  Yes, I do.
8       THE COURT:  You are voluntarily proceeding before a
9 United States magistrate judge?
10      THE DEFENDANT:  Yes.
11      THE COURT:  Mr. Maggio, you are charged in a four
12 count information.  Count One of the information charges you,
13 well, conspiracy to commit securities fraud, wire fraud, bank
14 fraud and money laundering and to make false filings with the
15 SEC and material misstatements to auditors in violation of
16 Title 18 U.S.C. Sections 371.  This crime carries a maximum
17 sentence of five years imprisonment, a maximum fine which is
18 the greatest of either $250,5000 or twice the gross pecuniary
19 gain derived from the offense or twice the gross pecuniary loss
20 to persons other than yourself as a result of the offense.
21 There is a $100 special assessment and a term of supervised
22 release of three years.
23      Counts Two and Three of the information charge you
24 with securities fraud in violation of Title 15 U.S.C. Section
25 78 (J) (B) and 78 (F) (F) and Title 17 Code of Federal
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                                    6

7CJAAMAGP                         Plea
1 Regulations Section 240, 10 (B) (5) and each of those counts
2 carries a maximum sentence of 20 years imprisonment, a maximum
3 fine which is the greatest of either five million dollars or
4 twice the gross pecuniary gain derived from the offense and
5 twice the gross pecuniary loss of persons other than yourself
6 as a result of the offense.  Each also has a $100 special
7 assessment and a term of supervised release of three years.
8       Count four of the information charges you with wire
9 fraud in violation of Title 18 U.S.C. Section 1343 and carries
10 a maximum sentence of 0 years imprisonment, a maximum fine
11 which is the greatest of either $250,000 or twice the gross
12 pecuniary gain derived from the offense, or twice the gross
13 pecuniary loss to person others than yourself as a result of
14 the offense.  It carries a $100 special assessment and a term
15 of supervised release of three years.
16      A total maximum sentence of incarceration on the
17 information is 65 years imprisonment.  In addition to the
18 foregoing the Court must order restitution with respect to the
19 information and in accordance with U.S.C.
20      In addition, if you are sentenced to any period of
21 supervised release and violate the conditions of your
22 supervised release you may be sentenced to all or part of the
                            Page 3

7CJAAMAGP2.txt
23    supervised release as authorized by statute without any credit
24    for time already served on supervised release.
25            Do you understand that?
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

7

7CJAAMAGP              Plea
 1            THE DEFENDANT:  Yes.
 2            THE COURT:  So you understand these penalties as I've
 3    read them to you?
 4            THE DEFENDANT:  Yes, I do.
 5            THE COURT:  Have you seen a copy of the information in
 6    which the government makes these charges against you?
 7            THE DEFENDANT:  Yes, I do.
 8            THE COURT:  Have you discussed it with your attorneys?
 9            THE DEFENDANT:  Yes, your Honor.
10            THE COURT:  Are you prepared to enter a plea today?
11            THE DEFENDANT:  Yes, I am.
12            THE COURT:  Santo Maggio, how do you plead?
13            THE DEFENDANT:  Guilty.
14            THE COURT:  Mr. Maggio, before I can recommend that
15    your plea be accepted I must determine that you understand the
16    plea and its consequences, that the plea is voluntary and that
17    there's a factual basis for the plea.  For that purpose I must
18    ask you a number of questions and your answers must be under
19    oath.  Do you understand that the answers you give under oath
20    may subject you to prosecution for perjury if you do not tell
21    the truth?
22            THE DEFENDANT:  Yes, I do.
23            THE COURT:  Raise your right hand.
24            (Defendant Santo C. Maggio sworn)
25            THE COURT:  Thank you.  Please state your full name
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

8

7CJAAMAGP              Plea
 1    for record.
 2            THE DEFENDANT:  Santo C. Maggio.
 3            THE COURT:  How far did you go in school?
 4            THE DEFENDANT:  I finished high school.
 5            THE COURT:  Are you currently being treated by a
 6    doctor or psychiatrist for any reason?
 7            THE DEFENDANT:  No.
 8            THE COURT:  Are you currently on any medications which
 9    might effect you in being alert for this proceeding?
10            THE DEFENDANT:  No.
11            THE COURT:  Are you any difficulty seeing, hearing or
12    understanding anything that I am saying?
13            THE DEFENDANT:  No.
14            THE COURT:  Have you had enough time to discuss with
15    your attorneys how you wish to plead?
16            THE DEFENDANT:  Yes.
17            THE COURT:  Are you satisfied with your attorneys?
18            THE DEFENDANT:  Yes.
19            THE COURT:  Do you understand what the government says
20    that you did?
21            THE DEFENDANT:  Yes.
22            THE COURT:  Do you understand that have you a right to
23    plead not guilty?
24            THE DEFENDANT:  Yes.
25            THE COURT:  Do you understand that you have a right to
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
                        Page 4

7CJAAMAGP2.txt

9

7CJAAMAGP                    Plea
1  trial by jury on these charges?
2            THE DEFENDANT:  Yes.
3            THE COURT:  Do you understand that if you are to plead
4  not guilty and go to trial you would be presumed innocent until
5  the government proved your guilt beyond a reasonable doubt?
6            THE DEFENDANT:  Yes, I do.
7            THE COURT:  Do you understand that if you were to go
8  to trial you would have a number of important constitutional
9  rights including the right to be represented by counsel and to
10 have counsel appointed for you if you cannot afford an
11 attorney?
12           THE DEFENDANT:  Yes.
13           THE COURT:  Do you understand that at trial you cannot
14 be forced to testify against yourself?
15           THE DEFENDANT:  Yes.
16           THE COURT:  Do you understand at a trial you would
17 have the right to confront and cross-examine witnesses called
18 by the government?
19           THE DEFENDANT:  Yes.
20           THE COURT:  Do you understand that at a trial you
21 would have the right to testify yourself and to call witnesses
22 on your behalf and to compel their attendance by subpoena if
23 necessary?
24           THE DEFENDANT:  Yes.
25           THE COURT:  Do you understand that if your guilty plea
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

10

7CJAAMAGP                    Plea
1  is accepted there will be no trial of any kind and the only
2  remaining steps in your case will be a presentence report and
3  sentencing by Judge Stein?
4            THE DEFENDANT:  Yes.
5            THE COURT:  Have you discussed with your attorney the
6  role that the sentencing guidelines play in sentencing?
7            THE DEFENDANT:  Yes.
8            THE COURT:  Do you understand that the district judge
9  will retain discretion regardless of what calculations there
10 are under the guidelines?
11           THE DEFENDANT:  Yes.
12           THE COURT:  Do you understand that the calculation
13 under the guidelines will take into account a number of factors
14 including the actual conduct in which you engaged, any victims
15 of the offense, the role that you played in the offense,
16 whether or not you have accepted responsibility for your acts,
17 whether you have any criminal history or whether you have
18 engaged in any obstruction of justice; do you understand that?
19           THE DEFENDANT:  Yes.
20           THE COURT:  Between now and the date of sentencing the
21 probation department will conduct an investigation and will
22 prepare a presentence report.  Your attorney, the government
23 and Judge Stein will receive copies.  Both your attorney and
24 the government will have the opportunity to object if they
25 believe anything in the report is inaccurate; do you understand
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

11

7CJAAMAGP                    Plea
1  that?
2            THE DEFENDANT:  Yes.
3            THE COURT:  Do you understand that until the
                              Page 5

7CJAAMAGP2.txt

4  presentence report is prepared neither your attorney nor the
5  government, nor Judge Stein will be able to determine precisely
6  what range of penalties will be calculated under the
7  guidelines.
8          THE DEFENDANT:  Yes.
9          THE COURT:  Do you understand than regardless of
10  calculation and the guidelines your sentence cannot exceed the
11  maximums that I advised you of earlier?
12          THE DEFENDANT:  Yes.
13          THE COURT:  Do you understand that under certain
14  circumstances both you and the government may have the right to
15  appeal the sentence imposed.
16          THE DEFENDANT:  Yes.
17          THE COURT:  Do you understand that if the sentence is
18  more severe than you expected you will be bound by your guilty
19  plea and will not be permitted to withdraw it?
20          THE DEFENDANT:  Yes.
21          THE COURT:  You understand that parole has been
22  abolished and that if you are sentenced to any term of
23  imprisonment you will be required to serve the entire term?
24          THE DEFENDANT:  Yes.
25          THE COURT:  Mr. Maggio, are you a citizen of the
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

                                                              12

7CJAAMAGP              Plea
1  United States?
2          THE DEFENDANT:  Yes, I am.
3          THE COURT:  Mr. Maggio, I have been handed up a plea
4  agreement from your case.  Have you had an opportunity to
5  review and go over this agreement with your attorneys?
6          THE DEFENDANT:  Yes.
7          THE COURT:  Do you understand that one of the
8  provisions in the plea agreement is that you admit the
9  forfeiture allegation in the information and that you agree to
10  forfeit to the United States a sum of money equal to two
11  billion, four hundred million dollars?
12          THE DEFENDANT:  Yes.
13          THE COURT:  That is what it says, right?
14          MR. BAROFSKY:  Yes, your Honor, that number is
15  correct.
16          Your Honor, the plea cooperation agreement also
17  provides, however, that in satisfaction of that amount there
18  are certain schedules attached to the plea agreement which the
19  government will accept in satisfaction of that judgment.
20          MR. SCHECTMAN:  We don't have quite that much, your
21  Honor.
22          THE COURT:  Okay.  I thought had I too many zeros
23  myself at first.
24          MR. SCHECTMAN:  No, you read it right.
25          THE COURT:  That represents the amount of the
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

                                                              13

7CJAAMAGP              Plea
1  proceedings obtained as a result of the offense; do you
2  understand that?
3          THE DEFENDANT:  Yes.
4          THE COURT:  You also understand that any forfeiture
5  would not be treated as satisfaction of any fine, restitution,
6  cause of imprisonment or any other penalty the Court may
7  impose?
8          THE DEFENDANT:  Yes.
                          Page 6

7CJAAMAGP2.txt
```
 9          THE COURT:  And as indicated in the agreement, there
10  is a scheduled pay of assets.  You have seen the schedule and
11  you have gone over it with your attorneys?
12          THE DEFENDANT:  Yes.
13          THE COURT:  To make sure that it's accurate?
14          THE DEFENDANT:  Yes.
15          MR. SCHECTMAN:  Judge, I might point out for the
16  record there is a Schedule B as well, which are assets that are
17  in Mrs.~Maggio's name that are being forfeited as part of the
18  plea and there is a separate agreement that need not concern
19  your Honor in this matter involving Mrs.~Maggio.
20          THE COURT:  Is that correct, Mr. Maggio, there is also
21  a Schedule B?
22          THE DEFENDANT:  Yes.
23          THE COURT:  That's Mrs.~Maggio's assets?
24          THE DEFENDANT:  Yes.
25          THE COURT:  That is also covered by the agreement that
                  SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300
```

14

7CJAAMAGP              Plea
```
 1  you made with the government?
 2          THE DEFENDANT:  Yes.
 3          THE COURT:  You are also understand the agreement
 4  provides that you cooperate fully with the United States
 5  attorney's office?
 6          THE DEFENDANT:  Yes.
 7          THE COURT:  And that in exchange for that cooperation,
 8  assuming that the office determines that you have made full and
 9  accurate disclosures to them, the government has agreed that it
10  will submit a motion pursuant to Section 5K1.1 of the
11  sentencing guidelines in your favor?
12          THE DEFENDANT:  Yes.
13          THE COURT:  Do you understand that if for any reason
14  the government determines that it will not file such a motion
15  you will not be allowed to withdraw your plea?
16          THE DEFENDANT:  Yes.
17          THE COURT:  You understand that even if the government
18  files such a motion sentencing will still be at the sole
19  discretion of the Court?
20          THE DEFENDANT:  Yes, I did.
21          THE COURT:  Is there anything else in the agreement
22  that I might want to highlight?
23          MR. BAROFSKY:  No, your Honor.
24          THE COURT:  All right.  Other than the representations
25  in this agreement, have any promises been made to you by anyone
                  SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300
```

15

7CJAAMAGP              Plea
```
 1  to influence you to plead guilty?
 2          THE DEFENDANT:  No.
 3          THE COURT:  This constitutes the sole agreement that
 4  you have?
 5          THE DEFENDANT:  Yes.
 6          THE COURT:  Has anyone promised you a specific
 7  sentence if you plead guilty?
 8          THE DEFENDANT:  No.
 9          THE COURT:  Has anyone made any threats to you to
10  influence you to plead guilty?
11          THE DEFENDANT:  No.
12          THE COURT:  Are you making this plea voluntarily of
13  your own freewill and choice?
```
                           Page 7

```
                              7CJAAMAGP2.txt
14          THE DEFENDANT:  Yes, I am.
15          THE COURT:  The elements of the offense is?
16          MR. BAROFSKY:  Your Honor, for Counts One defendant's
17    is charged with conspiracy.  The government would be required
18    to prove each of the elements beyond a reasonable doubt.
19    First, that there is an assistance of a an agreement or
20    understanding to commit one of the objects charged in the
21    information.
22          Second, the defendant knowingly became a member of
23    that agreement or understanding.
24          And third, that one of the conspirators or
25    coconspirators or Mr. Maggio knowingly committed at least one
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

```
7CJAAMAGP                    Plea
1     overt act in furtherance of the conspiracy during its life.
2           With respect to the securities frauds counts in two
3     and three, first, the defendant in connection with the purchase
4     or sale of securities, here the notes that are described in
5     Count Two and the common stock of Revko that's referenced in
6     Count Three did one or more of the following:  Employed a
7     devise, scheme or artifice to defraud or made an untrue
8     statement of a material fact or admitted to state a material
9     fact which made what was said under the circumstances
10    misleading or engaged in an act, practice or course of business
11    that operated or would operate as a fraud or deceit upon a
12    purchase of a seller for securities.
13          Second the defendant acted knowingly, willfully with
14    the intent to defraud.
15          And third, the defendant used or caused to be used any
16    means or instruments of transportation or communication in
17    interstate commerce or use of the mails in furtherance of that
18    fraudulent conduct.
19          and with respect to the Count Four wire fraud, first,
20    that there was a scheme or artifice to defraud that existence
21    the defendant must have participated in the scheme with the
22    intent to defraud misrepresentations or omissions must have
23    related to a material fact, that the scheme was executed to
24    obtain money or property.
25          And finally, that in execution of the scheme the
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

```
7CJAAMAGP                    Plea
1     defendant used or caused to be used interstate wires or that
2     such use was reasonably foreseeable to him.
3           THE COURT:  Mr. Maggio, did you hear that recitation?
4           THE DEFENDANT:  Yes.
5           THE COURT:  Did you understand that if the government
6     were to proceed to trial against you it would have the burden
7     of proving each element for each offense, that is, each count
8     beyond a reasonable doubt.
9           THE DEFENDANT:  Yes.
10          THE COURT:  Did you commit the offenses for which you
11    have been charged, Mr. Maggio?
12          THE DEFENDANT:  Yes.
13          THE COURT:  Tell me what you did.
14          MR. SCHECTMAN:  Judge, if it's acceptable to you
15    Mr. Maggio has written out a statement that I think speaks to
16    all four crimes.
17          THE COURT:  Considering the complexities here I'll
18    allow him to read and then if it's not he could fill in the
                              Page 8
```

7CJAAMAGP2.txt

19   gaps.
20         THE DEFENDANT: Your Honor, from the late 1990s to
21   October 2005 I was a senior executive at Revko Ink. During
22   that period I participated with others to hide the true
23   financial health of Revko from banks, counter-parties, auditors
24   and investors. With my knowledge and active participation
25   Revko's substantial losses were covered up as revenues padded

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

18

7CJAAMAGP           Plea
1   and certain operating expenses were moved off its book. Among
2   the acts I personally engaged in the signing of loan agreements
3   referencing paragraphs 61-D and 61-P of the indictment.
4         As a result of my conduct and that of my
5   coconspirators false financial statements were issued to obtain
6   debt financing from the public including 9 percent senior
7   subordinated notes referenced in Count Two of the indictment.
8         To consummate the sale of 57 percent of Revko to a
9   group headed by Thomas H. Lee in 2004 and to obtain $800
10   million in bank financing the same year and to effect the Revko
11   initial public offering in 2005. Moreover, with my knowledge
12   false financial statements were filed with the SEC including
13   form 10K referencing Count Four. The mails and interstate
14   wires were used as part of the fraudulent scheme.
15         I deeply regret my conduct and the harm that it has
16   caused.
17         THE COURT: First of all, with respect to all of the
18   activities that you've indicate you participated in it
19   knowingly?
20         THE DEFENDANT: Yes.
21         THE COURT: Okay. Where did this take place.
22         THE DEFENDANT: In New York, New York. Manhattan, New
23   York.
24         THE COURT: You said coconspirators, so other people
25   had agreed with you to effectuate this scheme?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

19

7CJAAMAGP           Plea
1         THE DEFENDANT: Yes.
2         THE COURT: And the intent of this scheme was to
3   defraud?
4         THE DEFENDANT: Yes.
5         THE COURT: Now, I know you mentioned the notes and I
6   think you mentioned the 2005 initial offering that was
7   addressed to Count Three of the information, that is, whether
8   or not you had a scheme to defraud people based on the value of
9   the stock?
10         THE DEFENDANT: Correct, your Honor.
11         THE COURT: Mr. Maggio?
12         THE DEFENDANT: Yes.
13         THE COURT: That did involve false statements?
14         THE DEFENDANT: Yes.
15         THE COURT: False filings that you've indicated?
16         THE DEFENDANT: Yes.
17         THE COURT: Now, you said you used the mails which
18   interstate -- I mean, you used the mails, a phone? How did you
19   use --
20         THE DEFENDANT: Yes, used regular mail. We used
21   Express Mail. We used e-mail all to effect the scheme.
22         THE COURT: You submitted false statements in the
23   mail?

Page 9

7CJAAMAGP2.txt

24          THE DEFENDANT:  False statements, loan agreements as
25     referenced here, yes.

                SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300

                                                              20

7CJAAMAGP                    Plea
 1          THE COURT:  Okay.  Any --
 2          MR. BAROFSKY:  Your Honor, I'll just represent to the
 3     Court that with respect to Count Four, the wire transmission
 4     did in fact originate in the Southern District of New York in
 5     Manhattan and was wired outside of the Southern District to
 6     Virginia.
 7          THE COURT:  Anything else?
 8          MR. SCHECTMAN:  Nothing, your Honor.
 9          MR. BAROFSKY:  No, your Honor.
10          THE COURT:  I am depending on you here.  Does any
11     either counsel know of any reason why I should not recommend
12     that this plea not be accepted?
13          MR. BAROFSKY:  No, your Honor.
14          MR. SCHECTMAN:  No, your Honor.
15          THE COURT:  Based on defendant's allocution and the
16     recommendations by the government I find that the defendant
17     understands the nature, the charges and consequences of his
18     guilty plea.  I also find that the plea is voluntary and that
19     there is a factual basis for the plea.  I, therefore, recommend
20     that the plea be accepted and direct that a presentence report
21     be reaped.
22          Sentencing will take place before Judge Stein on.
23          MR. BAROFSKY:  May 9, at 2 p.m.
24          THE COURT:  Is there anything else that needs to be
25     addressed today.

                SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300

                                                              21

7CJAAMAGP                    Plea
 1          MR. BAROVSKY:  Not from the government, your Honor.
 2          MR. SCHECTMAN:  Not from the offense.
 3          THE COURT:  We are adjourned.
 4                          o O o
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

                SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300

# EXHIBIT G

82FVBENP.txt

1

82FVBENP                    Plea
1   UNITED STATES DISTRICT COURT
1   SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x
2
3   UNITED STATES OF AMERICA,
3
4             v.                      05 CR 001192 (NRB)
4
5   PHILLIP BENNETT,
5
6                 Defendant.
6
7   ------------------------------x
7
8                                   New York, N.Y.
8                                   February 15, 2008
9                                   5:40 p.m.
9
10
10  Before:
11
11               HON. NAOMI REICE BUCHWALD,
12
12                                   District Judge
13
13
14                      APPEARANCES
14
15  MICHAEL J. GARCIA
15       United States Attorney for the
16       Southern District of New York
16  NEIL M. BAROFSKY
17  CHRISTOPHER L. GARCIA
17       Assistant United States Attorneys
18
18  KRAMER LEVIN NAFTALIS & FRANKEL
19       Attorneys for Defendant
19  GARY P. NAFTALIS
20  DAVID S. FRANKEL
20  ADAM C. FORD
21  DARREN A. LAVERNE
21
22  ALSO PRESENT:   WILLIAM JOHNSON, Postal Inspector
22                  KRIS MOON, Postal Inspector
23                  ANNE RAILTON, Law Student
23
24
25

              SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300

2

82FVBENP                    Plea
1        (In open court)
2        (Case called)
3        THE DEPUTY CLERK:  The case is United States against
4   Phillip Bennett; docket number 05 CR 1192.  Is the government
5   ready to proceed?
6        MR. BAROFSKY:  Yes.  Neil Barofsky for the government.
7   With me at counsel table, with your Honor's permission, is
8   Christopher Garcia of our office, our postal inspectors on the
9   case, William Johnson and Kris Moon, as well as our legal
                        Page 1

82FVBENP.txt
```
10    intern, Annie Railton, who's been assisting the trial of this
11    matter.  Good evening, your Honor.
12              MR. GARCIA:  Good evening, your Honor.
13              THE DEPUTY CLERK:  Is the defense ready to proceed?
14              MR. NAFTALIS:  Yes, we are.  Gary Naftalis for
15    Mr. Bennett, along with David Frankel.
16              THE COURT:  Mr. Naftalis?
17              MR. NAFTALIS:  Your Honor, we have an application on
18    behalf of Mr. Bennett to withdraw his plea of not guilty to the
19    charges in the indictment and to offer to plead guilty to the
20    charges in the indictment.
21              THE COURT:  All right.  Mr. Bennett, would you stand
22    please.  Would you raise your right hand.
23              (Defendant sworn)
24              THE COURT:  And would you state your full name for me
25    please.
```
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

                                                              3
82FVBENP                        Plea
```
 1              THE DEFENDANT:  Phillip Roger Bennett.
 2              THE COURT:  And Mr. Bennett, how old are you?
 3              THE DEFENDANT:  59, your Honor.
 4              THE COURT:  Why don't you sit down.  Mr. Bennett, what
 5    was the highest grade in school that you completed?
 6              THE DEFENDANT:  University.  Grade, twelfth grade, I
 7    think it is, your Honor.
 8              THE COURT:  You have the equivalent of a college
 9    degree.
10              THE DEFENDANT:  Yes, master of arts.
11              THE COURT:  And are you now or have you currently been
12    under the care of a doctor or psychiatrist?
13              THE DEFENDANT:  No, your Honor.
14              THE COURT:  And have you ever been hospitalized or
15    treated for alcoholism or narcotics addiction?
16              THE DEFENDANT:  No, your Honor.
17              THE COURT:  Are you under the influence of any drug or
18    alcohol today?
19              THE DEFENDANT:  I'm not, no, your Honor.
20              THE COURT:  And how are you feeling physically today?
21              THE DEFENDANT:  Fine, your Honor.  Thank you.
22              THE COURT:  Mr. Bennett, have you had the opportunity
23    to review the charges against you and your plea with
24    Mr. Naftalis and Mr. Frankel and perhaps some other lawyers, as
25    well?
```
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

                                                              4
82FVBENP                        Plea
```
 1              THE DEFENDANT:  I have, your Honor, yes.
 2              THE COURT:  And have you been satisfied with the
 3    advice and counsel that Messrs. Naftalis and Frankel have given
 4    to you?
 5              THE DEFENDANT:  I have, yes.
 6              THE COURT:  Are you ready to change your plea at this
 7    time?
 8              THE DEFENDANT:  I am, your Honor.
 9              THE COURT:  And what is your plea at this time, guilty
10    or not guilty?
11              THE DEFENDANT:  It's guilty, your Honor.
12              THE COURT:  Mr. Bennett, in order to determine whether
13    your plea is voluntary and made with a full understanding of
14    the charges against you and the consequences of your plea, I
```
                              Page 2

82FVBENP.txt
15  will make certain statements to you and I will ask you certain
16  questions.  I want you to understand that I need not accept
17  your plea unless I am satisfied that you are, in fact, guilty,
18  and that you fully understand your rights.  I'm tempted to ask
19  the government to pick a few favorite charges instead of all of
20  these, but, okay.
21          Mr. Bennett, you've been charged in the 20-count
22  indictment.
23          The first count charges you with a conspiracy to
24  commit securities fraud, wire fraud, bank fraud, and money
25  laundering, and to make false filings to the SEC.  This crime
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                                5

82FVBENP                        Plea
1   carries a maximum sentence under the law of five years
2   imprisonment, a maximum fine of the greatest of $250,000 or
3   twice the gross pecuniary gain derived from the offense or
4   twice the gross pecuniary loss to persons other than yourself
5   as a result of the offense, and a $100 special assessment, and
6   a maximum term of supervised release of three years.
7           Do you understand that those are the charges in Count
8   One of the indictment and the maximum statutory penalties
9   applicable to those charges?
10          THE DEFENDANT:  I do, your Honor, yes.
11          THE COURT:  Counts Two and Three of the indictment
12  charge you with securities fraud.  Each of these counts carries
13  a maximum sentence of 20 years in prison, a maximum fine of
14  $5,000,000 or twice the gross pecuniary gain derived from the
15  offense or twice the gross pecuniary loss to a person other
16  than yourself as a result of the offense, a $100 special
17  assessment, and a maximum term of supervised release of three
18  years.
19          Do you understand that those are the charges in Counts
20  Two and Three and the maximum penalties under law for those
21  charges of securities fraud?
22          THE DEFENDANT:  I do, your Honor.
23          THE COURT:  Count Four charges you with making a false
24  filing with the Securities and Exchange Commission.  And this
25  crime carries a maximum statutory penalty of 20 years in
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                                6

82FVBENP                        Plea
1   prison, a maximum fine of the greatest of $5,000,000 or twice
2   the gross monetary gain derived from the offense or twice the
3   gross monetary loss to a person other than yourself as a result
4   of the offense, a $100 special assessment, and a maximum term
5   of supervised release of three years.
6           Do you understand that those are the charges in Count
7   Four and the maximum penalties applicable to those charges?
8           THE DEFENDANT:  I do, your Honor.
9           THE COURT:  Counts Five and Six of the indictment
10  charge you with making a false filing with the Securities and
11  Exchange Commission -- excuse me, with the Securities and
12  Exchange Commission.  Each of these counts carries a maximum
13  sentence under the law of five years imprisonment, a maximum
14  fine of the greatest of $250,000 or twice the gross pecuniary
15  gain derived from the offense or twice the gross pecuniary loss
16  to a person other than yourself as a result of the offense, and
17  a $100 special assessment, and a maximum supervised release
18  term of three years.  Do you understand that those are the
19  charges in Counts Five and Six of the indictment and the
                        Page 3

82FVBENP.txt
20    maximum penalties provided for by law for those crimes?
21        THE DEFENDANT:  Yes, I do, your Honor.
22        THE COURT:  And Counts Seven through Thirteen of the
23    indictment charge you with wire fraud.  Each of these counts
24    carries a maximum possible sentence of 20 years in prison, a
25    maximum fine of the greatest of $250,000 or twice the gross
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

                                                              7
82FVBENP                    Plea
1     pecuniary gain derived from the offense or twice the gross
2     pecuniary loss to a person other than yourself as a result of
3     the offense, a $100 special assessment, and a maximum term of
4     supervised release of three years.
5         Do you understand that those are the charges in Counts
6     Seven through Thirteen, and the maximum penalties under the
7     statute for those charges?
8         THE DEFENDANT:  Yes, I do, your Honor.
9         THE COURT:  All right.  Count Fourteen charges you
10    with making material misstatements to auditors.  And this crime
11    carries a maximum sentence of 20 years imprisonment, a maximum
12    fine of $5,000,000 or twice the gross pecuniary gain derived
13    from the offense or twice the gross pecuniary loss to a person
14    other than yourself as a result of the offense, a $100 special
15    assessment, and a maximum term of supervised release of three
16    years.
17        Do you understand that that is the crime charged in
18    Count Fourteen of the indictment, and the maximum penalty
19    provided for by statute for Count Fourteen?
20        THE DEFENDANT:  Yes, I do, your Honor.
21        THE COURT:  Count Fifteen of the indictment charges
22    you with bank fraud.  And this crime carries a maximum sentence
23    of 30 years in prison, a maximum fine of the greatest of
24    $1,000,000 or twice the gross pecuniary gain derived from the
25    offense or twice the gross pecuniary loss to a person other
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

                                                              8
82FVBENP                    Plea
1     than yourself as a result of the offense, a $100 special
2     assessment, and a maximum term of supervised release of five
3     years.
4         Do you understand that that is the charge in Count
5     Fifteen, and that those are the maximum penalties provided for
6     by law?
7         THE DEFENDANT:  Yes, your Honor.  Forgive me, yes,
8     your Honor.
9         THE COURT:  Counts Sixteen through Twenty charge you
10    with money laundering.  Each of these counts carries a maximum
11    possible sentence of ten years imprisonment, a maximum fine of
12    the greatest of $250,000, twice the gross pecuniary gain
13    derived from the offense or twice the gross pecuniary loss to a
14    person other than yourself as a result of the offense, and a
15    $100 mandatory special assessment, and a maximum supervised
16    release term of five years.
17        Do you understand that those are the crimes charged in
18    Counts Sixteen through Twenty, and the maximum possible penalty
19    provided by law?
20        THE DEFENDANT:  Yes, your Honor.
21        THE COURT:  Do you also understand that the Court must
22    impose an order of restitution by law?
23        THE DEFENDANT:  Yes, your Honor.
24        THE COURT:  And do you understand that you are also
                           Page 4

82FVBENP.txt
```
  25    subject to mandatory asset forfeiture?
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

9

82FVBENP                          Plea
```
   1          THE DEFENDANT:  Yes, your Honor.
   2          THE COURT:  And do you understand that you have the
   3    right to plead not guilty and the right to a trial on the
   4    charges against you and, in fact, the right to a jury trial?
   5          THE DEFENDANT:  Yes, your Honor.
   6          THE COURT:  At this time, I'd ask the government to
   7    recite the elements of the crimes charged.
   8          MR. BAROFSKY:  Yes, your Honor.  For Count One,
   9    conspiracy, the government would have to prove the following
  10    elements:
  11          First, that an agreement or understanding existed to
  12    commit the objects charged in the indictment.  Second, the
  13    defendant knowingly became a member of that agreement or
  14    understanding.  And third, that one of the conspirators
  15    knowingly committed at least one overt act in furtherance of
  16    the conspiracy during the life of the conspiracy.
  17          With respect to Counts Two and Three, securities
  18    fraud, the government would have to prove, first, that Bennett,
  19    in connection with the purchase or sale of securities, and for
  20    Count Two, that would be the notes described in the indictment,
  21    and in Count Three, the common stock of Refco described in the
  22    indictment, he did one or more of the following:  He either
  23    employed a device, scheme, or artifice to defraud or made an
  24    untrue statement of a material fact or omitted to state a
  25    material fact which made what was said under the circumstances
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

10

82FVBENP                          Plea
```
   1    misleading or engage in an act, practice, or course of business
   2    that operated or would operate as a fraud or deceit on a
   3    purchaser or seller.  Second, that Bennett acted knowingly,
   4    willfully, and with intent to defraud.  And, third, that he
   5    used or caused to be used any means or instruments of
   6    transportation or communication in interstate commerce, but he
   7    used the mails in furtherance of the fraudulent conduct.
   8          With respect to Count Four, which charges false filing
   9    under the Exchange Act, the first element the government would
  10    have to prove is that Refco was required by the Securities
  11    Exchange Act of 1934 to file the 10-K that's described in Count
  12    Four.  And, second, the defendant knowingly and willfully made
  13    or caused to be made a materially false or misleading statement
  14    in that document or omitted to state any material fact required
  15    to be stated therein or necessary to make the statements
  16    therein not misleading.
  17          With respect to Counts Five and Six, false filings
  18    under the Securities Act, the government would have to prove,
  19    again, first, that Refco was required under the Securities Act
  20    of 1933 to file the S4, which is described in Count Five, and
  21    the S1 registration statement described in Count Six.  And,
  22    second, that Bennett knowingly and willfully made or caused to
  23    be made a materially false or misleading statement in those
  24    documents or omitted to state any material fact required to be
  25    state therein or necessary to make the statements therein not
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

11

82FVBENP                          Plea
Page 5

82FVBENP.txt
1  misleading.
2          With respect to Counts Seven through Thirteen of wire
3  fraud, the government would have to prove, first, that a scheme
4  to defraud must have existed; that Bennett must have
5  participated in the scheme with intent to defraud; that
6  misrepresentations or omissions must have related to material
7  facts were made in furtherance of the fraud; that the scheme
8  was executed to obtain money or property; and that in the
9  execution of the scheme, Bennett used or caused to be used the
10  interstate wires listed in the indictment.  And here for Count
11  Seven is the June 22nd of 2004 email from Robert Trosten; in
12  Count Eight, the August 3, '04 email from Robert Trosten; in
13  Count Nine, the April 6, '05 transmission of the S4 from New
14  York to Virginia; in Count Ten, the July 19th, 2005
15  transmission of 10-K from New York to Virginia; in Count
16  Eleven, the August 5th, 2004 transmission of $4,000,000 from
17  New York to Illinois; in Count Twelve, the August 5th, 2004
18  transmission of $40,000,000 from New York to Illinois; and in
19  Count Thirteen, the August 8th, 2005 transmission of the S1
20  registration statement from New York to Virginia.
21          For Count Fourteen, material misstatements to
22  auditors, the government would have to prove, first, that Refco
23  was a public company that was required to submit financial
24  statements to the SEC; second, that Bennett was a
25  director/officer of Refco; third, Bennett knowingly and
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                              12

82FVBENP                      Plea
1  willfully made, caused to be made, a materially false or
2  misleading statement or omitted to state a material fact
3  necessary order to make the statements made in light of the
4  circumstances under which such statements were made not
5  misleading to an accountant, and that the statement was made in
6  connection with the audit or examination of the financial
7  statements of Refco required to be made pursuant to the Act.
8          Count Fifteen charges the defendant with bank fraud.
9  And specifically, that on August 5th, 2004, defrauded HSBC.
10  And the government would have to prove, first, there was a
11  scheme to defraud a bank by means of materially false or
12  fraudulent pretenses, representations, or promises; second,
13  that Bennett executed or attempted to execute the scheme with
14  intent to defraud the bank, here, again, HSBC; and third, at
15  the time of the execution of the scheme, HSBC had its deposits
16  insured by the FDIC.  And I'll represent to the Court that at
17  the relevant time periods, HSBC's deposits were insured by the
18  FDIC.
19          And finally, Counts Sixteen through Twenty charge the
20  defendant with money laundering.  And the government would have
21  to prove, first, that Bennett engaged or attempted to engage in
22  monetary transactions involving criminally derived property of
23  a value greater than $10,000; second, that the property
24  involved in the monetary transaction was, in fact, derived and
25  specified unlawful activity; third, that Bennett acted
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                              13

82FVBENP                      Plea
1  knowingly.  And for these purposes, wire fraud, bank fraud, and
2  securities fraud are all specified unlawful activities and
3  would have to prove each of the transactions listed in the
4  indictment in Counts Sixteen through Twenty, basically the wire
5  transactions which are described therein.
                        Page 6

82FVBENP.txt

6      THE COURT:  Mr. Bennett, do you understand that if you
7  pled not guilty and went to trial, that the burden would be on
8  the government to prove each and every element of every crime
9  charged beyond a reasonable doubt in order to convict you of
10  that crime?
11      THE DEFENDANT:  I do, your Honor.
12      THE COURT:  Do you understand that at a trial you
13  would have the right to be represented by an attorney at all
14  stages of the proceeding and, if necessary, an attorney would
15  be appointed for you?
16      THE DEFENDANT:  Yes, I do.
17      · THE COURT:  And do you understand that at a trial you
18  would have the right to confront and cross-examine witnesses
19  and the right not to be compelled to incriminate yourself?
20      THE DEFENDANT:  I do, your Honor.
21      THE COURT:  And do you understand that at a trial you
22  would be presumed innocent until such time, if ever, the
23  government established your guilt by competent evidence to the
24  satisfaction of the trier of fact beyond a reasonable doubt?
25      THE DEFENDANT:  Yes, your Honor.
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                              14
82FVBENP              Plea
1      THE COURT:  And do you understand that at a trial you
2  would have the right to testify and would also be entitled to
3  compulsory process; in other words, the right to call other
4  witnesses on your behalf?
5      THE DEFENDANT:  Yes, your Honor.
6      THE COURT:  And do you understand that if your plea is
7  accepted, that there will be no further trial of any kind, so
8  that by pleading guilty, you are waiving your right to a trial?
9      THE DEFENDANT:  I do understand that, your Honor, yes.
10      THE COURT:  And do you understand that if you are
11  sentenced to a period of supervised release, and if you violate
12  the terms of your supervised release, that an additional period
13  of jail time may be imposed without credit for the time that
14  you've previously spent on supervised release?
15      THE DEFENDANT:  Yes, your Honor.
16      THE COURT:  Do you understand that in connection with
17  your plea of guilty, that the Court may ask you certain
18  questions about the offense to which you have pled; and if you
19  answer those questions under oath and on the record and in the
20  presence of your counsel, that your answers are false may later
21  be used against you in a prosecution against you for perjury or
22  false statement?
23      THE DEFENDANT:  Yes, your Honor.
24      THE COURT:  And I recall, Mr. Bennett, you're a
25  citizen of Great Britain.
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                              15
82FVBENP              Plea
1      THE DEFENDANT:  I am, your Honor, yes.
2      THE COURT:  Do you understand that following any
3  sentence that you receive, that you will likely be deported?
4      THE DEFENDANT:  That is my understanding, your Honor,
5  yes.
6      THE COURT:  And do you understand that in determining
7  your sentence, that the Court is obligated to calculate the
8  applicable sentencing guidelines range, and to consider that
9  range and any possible departures under the guidelines and
10  other sentencing factors under the statute which entitles the
                        Page 7

82FVBENP.txt
```
11    Court to consider the nature and circumstances of the offense
12    and the history and characteristics of the defendant?
13                THE DEFENDANT:  Yes, your Honor.
14                THE COURT:  And have you reviewed with your counsel
15    the government's letter to them of yesterday which explains the
16    government's position as to the sentence that you face if the
17    sentencing guidelines are applied to your case?
18                THE DEFENDANT:  I have reviewed it, your Honor,
19    correct.
20                THE COURT:  Actually, that was said very badly.  Let
21    me just try it again so that there's no confusion.
22                Have you reviewed that letter with your lawyers which
23    sets forth the government's calculation of the sentence that
24    you face under the sentencing guidelines?
25                THE DEFENDANT:  I have reviewed it.
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
```

                                                                        16

```
82FVBENP                        Plea
1                THE COURT:  And do you understand that the government
2     calculates that under the guidelines, that you face a sentence
3     of life imprisonment; and that it has calculated that the
4     maximum possible statutory sentence is 315 years; and that the
5     fine range is from 25,000 to $5,000,000?
6                THE DEFENDANT:  I understand that, your Honor,
7     correct.
8                THE COURT:  And do you understand that that
9     calculation by the guidelines -- that by the government is just
10    based on the information they currently have?
11                THE DEFENDANT:  Yes, your Honor.
12                THE COURT:  And do you further understand that the
13    government's letter doesn't bind either the Court or the
14    probation department, and that ultimately the sentence that you
15    receive will be determined by the Court?
16                THE DEFENDANT:  Yes, your Honor.
17                THE COURT:  Mr. Bennett, have any threats or promises
18    been made to you to make you plead guilty?
19                THE DEFENDANT:  No, your Honor.
20                THE COURT:  Have any understandings or promises been
21    made to you concerning the sentence that you will receive?
22                THE DEFENDANT:  None.
23                THE COURT:  Is your plea voluntary?
24                THE DEFENDANT:  It is, your Honor.
25                THE COURT:  Mr. Bennett, did you commit the crimes
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
```

                                                                        17

```
82FVBENP                        Plea
1     that you've been charged with in the indictment?
2                THE DEFENDANT:  I did, your Honor.
3                THE COURT:  Would you tell me in your own words what
4     you did?
5                THE DEFENDANT:  Your Honor, during the period that I
6     served as CEO of Refco, I agreed with other Refco executives to
7     enter into a series of transactions at the end of Refco's
8     financial reporting periods to make it appear as if a
9     receivable due to Refco from Refco Upholdings, Inc., a related
10    party, was instead due from an independent third-party
11    customer.
12                The IGHI receivable was composed of, amongst other
13    things, historical customer losses, bad debts, and expenses
14    that IGHI had incurred on behalf of Refco.
15                I, along with other Refco executives, have caused
                        Page 8
```

82FVBENP.txt
16  Refco to enter into these transactions in order to conceal the
17  size and nature of the IGHI receivable.  We concealed the
18  receivable from, amongst others, Refco's auditors, Thomas H.
19  Lee Partners, various lenders who, in 2004, participated in
20  Refco's senior secured credit facility, and the issuance of 9
21  percent senior subordinated notes, and also investors in
22  Refco's common stock.
23          Among the lenders to whom I knowingly caused the IGHI
24  receivable to be misrepresented was HSBC Bank, referenced in
25  Count Fifteen of the indictment.  I and other Refco executives
               SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300

18

82FVBENP                    Plea
1   also used the interstate wires to accomplish these acts within
2   this district, as referenced in Counts Seven through Thirteen.
3   Furthermore, I caused funds obtained from the transaction with
4   Thomas H. Lee Partners, referenced in paragraph 34 of the
5   indictment, to be wired to various parties receiving proceeds
6   from the transaction, as referenced in Counts Sixteen through
7   Twenty, knowing that this money had been unlawfully obtained.
8          The IGHI receivable and related party transaction used
9   to conceal it were material information that Refco investors
10  and lenders would have wanted to have known prior to investing
11  in or lending money to Refco.  While I believed that I would be
12  able to pay the IGHI receivable down over time, and did, in
13  fact, ultimately pay off the receivable balance in its
14  entirety, I knew that failing to disclose the receivable was
15  wrong; I knew that obtaining funds from Refco's investors and
16  lenders based on misleading financial statements was also
17  wrong.
18          I also caused Refco to file documents with the SEC,
19  namely S1, S4, and 10-K that did not disclose the full extent
20  of the IGHI receivable or the transactions used to conceal it;
21  and, thus, were false and misleading with respect to material
22  facts.  I knew that failing to disclose these facts in public
23  filings and in connection with Refco's sale and registration of
24  Refco's notes and common stock was wrong, and I deeply regret
25  having done so.
               SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300

19

82FVBENP                    Plea
1          Your Honor, I take full responsibility for my actions.
2   I wish to publicly apologize to my family and to all of those
3   who have been harmed by my conduct.  Thank you, your Honor.
4          THE COURT:  Mr. Barofsky, is there anything else you
5   would want me to ask the defendant?
6          MR. BAROFSKY:  Your Honor, can we just have a moment
7   to review?  There's a lot of elements.  Thank you, your Honor.
8          THE COURT:  Certainly.
9          (Pause)
10         MR. BAROFSKY:  Your Honor, just a couple of areas for
11  clarification.  First, if you can please ask the defendant to
12  confirm that he was a director or officer of Refco during this
13  relevant time period.  Should I go one-by-one?
14         THE COURT:  Mr. Bennett, can you confirm that?
15         THE DEFENDANT:  I was, your Honor.
16         MR. BAROFSKY:  Second, your Honor, that the
17  misstatements made about Refco's auditor was in connection with
18  the auditor's preparation of a financial statement, and that
19  occurred after April of 2005.
20         THE COURT:  Can you confirm that?
                        Page 9

82FVBENP.txt
21       THE DEFENDANT:  That's correct, your Honor.
22       MR. BAROFSKY:  Your Honor, and if you can ask the
23   defendant to confirm he made reference to various wire
24   transfers and wire communications, as well as certain filings
25   in the indictment, if you could please confirm with the
                  SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

                                                                      20

82FVBENP                          Plea
 1   defendant that those acts occurred on or about the dates set
 2   forth in the indictment.
 3       THE DEFENDANT:  They did, your Honor.
 4       MR. BAROFSKY:  And finally, your Honor, as I noted
 5   earlier, I will represent to the Court that HSBC was --
 6   deposits were insured by the FDIC during the relevant time
 7   period; and also that Refco was an entity that was required to
 8   file the various reports and documents and registration
 9   statements under the Exchange Acts of 1933 and 1934, as well as
10   to file financial statements with respect to the 10-K and the
11   misstatement to auditors account.  Thank you, your Honor.
12       THE COURT:  Mr. Bennett, do you still wish to plead
13   guilty?
14       THE DEFENDANT:  I do, your Honor, yes.
15       THE COURT:  Mr. Naftalis, do you know of any reason
16   that Mr. Bennett ought not plead guilty?
17       MR. NAFTALIS:  No, your Honor.
18       THE COURT:  Mr. Bennett, I'm satisfied that you
19   understand the nature of the charge against you and the
20   consequences of your plea; and that your plea is made
21   voluntarily and knowingly; and that there is a factual basis
22   for it.  Accordingly, I will accept your plea of guilty and
23   direct that a presentence report be prepared.
24       THE DEFENDANT:  Thank you, your Honor.
25       THE COURT:  As for a sentencing date, can I just
                  SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

                                                                      21

82FVBENP                          Plea
 1   basically count out the requisite number of days or does the
 2   government have a view that it should be maybe a little bit
 3   more off into the future in light of the trial that's still
 4   upcoming?
 5       MR. BAROFSKY:  Your Honor, we think we can be prepared
 6   in three months.
 7       THE COURT:  All right.  Why don't we set sentencing
 8   for May 20th at 4 o'clock.  And since I would anticipate some
 9   significant presentence submissions, I think we should set a
10   schedule for that.  Why don't we say that the government's
11   submission is due -- the defense submission is due on May 6th,
12   and the government's on May 13th.
13       MR. BAROFSKY:  That's fine, your Honor.
14       MR. NAFTALIS:  Your Honor, if there are things in the
15   government submission that we want to respond to, that's sort
16   of --
17       THE COURT:  Doesn't give you quite enough time.
18       MR. NAFTALIS:  We don't have -- you're having us
19   first, so we don't really sort of provide -- they could go
20   first, we could go second; we wouldn't object to that.
21       MR. BAROFSKY:  We could do simultaneous submissions,
22   as well, your Honor, on the 6th and then we could each respond.
23       THE COURT:  Sounds like fun.
24       MR. BAROFSKY:  Okay.
25       MR. NAFTALIS:  It's a living.
                            Page 10

82FVBENP.txt
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

22

82FVBENP                    Plea
1    THE COURT:  Let's not go there.  Okay?  Are we done?
2    MR. BAROFSKY:  No, your Honor.  There is the issue of
3  bail.  And at this time, your Honor, the government does
4  request that defendant be remanded.  And if your Honor will let
5  me, I would like to speak briefly on the topic.
6    THE COURT:  Okay.
7    MR. BAROFSKY:  Obviously the standard has changed
8  under the Bail Act under 3143.  Before when we appeared before
9  your Honor several years ago, the burden was ours to prove the
10  defendant was a risk of flight.  Now, of course, it is the
11  defendant's burden to prove by clear and convincing evidence
12  that he is not likely to flee.  And respectfully, we submit
13  that there have been some extremely significant changed
14  circumstances, that we respectfully submit the defendant cannot
15  meet the burden in this case.
16    First of all, under the current bond, which, as your
17  Honor may recall, is a $50,000,000 bond, secured by $5,000,000
18  in cash and two properties, that security is now essentially
19  worthless; it's essentially an unsecured bond, because all of
20  those properties and that money are subject to asset
21  forfeiture.  The $5,000,000 we have traced as direct proceeds
22  from the IPO, which the defendant has just admitted was money
23  that was fraudulently obtained, and we already have lis pendens
24  on both of the properties, because basically under substitute
25  assets, we'd be able to take those, as well.  Those are all

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

23

82FVBENP                    Plea
1  subject to asset forfeiture and, therefore, don't provide any
2  security for the existing bond.
3    Secondly, the defendant is facing a $2.4 billion asset
4  forfeiture.  We don't think he has $2.4 billion, but we do
5  believe that will essentially -- through proceeds and
6  substitute assets, once this conviction is final -- will
7  basically deprive the defendant of all of his assets.  We have
8  restrained a number of his assets pretrial, but we have not
9  been able to restrain assets that we haven't been able to prove
10  are directly traceable.  And we don't know the exact amount of
11  those items, but we believe that they are in the $20,000,000
12  range, which would certainly facilitate the ability of the
13  defendant to flee.
14    Third, and I guess the most obvious point, is the
15  defendant now faces an advisory guideline range of 315 years of
16  imprisonment.  And that obviously changes the calculus a lot
17  from when we last appeared before your Honor.  We're not
18  suggesting that your Honor is going to --
19    THE COURT:  He always faced that, right?
20    MR. BAROFSKY:  Yes, your Honor; but before,
21  pretrial -- I'm sorry, pre-guilty plea, there was no certainty
22  that he was necessarily going to be convicted in this case.
23  Now, jail is an inevitability.  And I don't mean to presume
24  what the ultimate sentence will be in this case, because
25  there's obviously no way to predict what the precise sentence

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

24

82FVBENP                    Plea
1  will be, but the best guess, I think, from anyone's
Page 11

82FVBENP.txt

2  perspective, is that it will be a substantial prison sentence.
3  And for this defendant -- he is now with certainty facing such
4  a sentence that has -- under the guidelines is the equivalent
5  of a life sentence.
6          Defendant is 59 years old.  A sentence of -- a
7  significant sentence in this case may very well prove to be the
8  equivalent of a life sentence.  The defendant is facing certain
9  deportation after he serves that sentence.
10          THE COURT:  Not to a bad place though.
11          MR. BAROFSKY:  Not to a bad place, your Honor.  But it
12  does give the defendant a tremendous incentive to self-deport.
13  In other words, to flee the jurisdiction really with -- unlike
14  most cases, with very little downside.  The worse that happens
15  if he flees and gets caught is he's brought back to the United
16  States and does a jail sentence that probably will be the rest
17  of his life.  If he stays, he's facing pretty much the prospect
18  of the same result, a sentence that may, in fact, result in him
19  being in jail for the rest of his life, given his age.
20          And, your Honor, we respectfully submit that given the
21  shifting of the burden in these really remarkable circumstances
22  of a defendant who's not a U.S. citizen, who's facing the
23  equivalent of a life sentence, and who's now basically would be
24  free on an unsecured bond, that the circumstances dictate the
25  defendant should start serving his sentence, in effect,

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

25

82FVBENP              Plea

1  immediately.  And the defendant should be remanded on the
2  grounds that he cannot meet his burden of demonstrating by
3  clear and convincing evidence that he is not a risk of flight.
4          THE COURT:  Mr. Naftalis.
5          MR. NAFTALIS:  Most respectfully, I find this
6  application most surprising and a baseless one.  And I say it
7  with -- most advisedly.
8          You have a situation here where our client, for almost
9  two and-a-half years, has met every single condition of the
10  bond that was set here.  Your Honor got a report today from the
11  office of pretrial services, which we were given a copy of when
12  we entered the room, in which the office of pretrial services
13  has pointed out that he has complied with the terms of his bail
14  all the way through.
15          And I can sort of punctuate that a little bit because,
16  in fact, if you check with Officer Forelli, who he deals with
17  in pretrial services, you could hear anecdotal information such
18  as Mr. Bennett was the one who has set up the monitoring system
19  in the house in New Jersey because, whatever, I guess they're
20  technophobes, like I, the marshals service, he actually set up
21  the monitoring service which passed their muster in the
22  electronic stuff.  Once, when his bracelet broke down, he
23  immediately reported it to Officer Forelli that it was
24  malfunctioning and he went in.  He's been meticulous in
25  reporting to these people.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

26

82FVBENP              Plea

1          And secondly, something that the government
2  consciously avoided bringing to your attention, his bond is
3  signed by the three immediate members of his family.  The three
4  of them who are American citizens:  His wife, his daughter, and
5  his son.  They have signed a $50,000,000 bond on his behalf,
6  and these are people with roots in the community.  The daughter

Page 12

82FVBENP.txt
7   is a lawyer, works at a law firm; the son is an investment
8   banker with a leading firm.  The notion that he would run away
9   and do that to his family, I mean, is incomprehensible.  And
10  all we have is rhetoric from the government there.
11          You also have the strict monitoring conditions in
12  which he's under and which he's faithfully complied with for
13  the last two and-a-half years.  Of course, he has no passport;
14  his wife has given up his passport; he has no effective way of
15  leaving the country.
16          And with respect to other situations, in other
17  situations in high-profile cases where people were facing
18  enormous sentences, no such applications were ever granted.
19  For example, the Computer Associates case, where the CEO of
20  Computer Associates, Mr. Kumar, who, under the guidelines which
21  were then in effect, more applicable now, after the Gall case,
22  the guidelines are just, you know, one ingredient in the soup
23  for your Honor to consider under 3553.  He faced life
24  imprisonment under his guidelines.  After pleading guilty, he
25  continued to be free on bond, even though there were admissions
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                                27
82FVBENP                    Plea
1   of obstruction of justice in that case.
2           After Kumar was sentenced or he got a 12-year
3   sentence, he continued to be allowed to be -- remained free on
4   bond to work out various issues of restitution and the like.
5           In the case in front of Judge Sand, the Adelphia case,
6   which is one of the cases, the Rigases, who got 15 and 20-year
7   sentences, one of them was an eighty -- somewhere in his
8   eighties, they were allowed to remain free on bond pending
9   appeal, even though they had the same sort of issues.  Even
10  Mr. Ebbers, who received the largest sentence in history I've
11  ever heard of, a real outlier sentence, 25 years, he was
12  allowed to remain free on bond pending appeal and the like.
13          And apart from the fact that there is not the
14  slightest bit of evidence for this most unfair application,
15  it's also prejudicial.  As your Honor knows, we have to put in
16  sentencing submissions.  And under 3553, your Honor has a lot
17  of things which you can properly consider in determining in
18  your best judgment what's a fair and just sentence under the
19  case here.  And obviously it's very prejudicial to us in being
20  able to work with our client, who for the last two and-a-half
21  years has been coming to our office every day on a daily basis
22  to work on the case with us.  So I don't see any good-faith
23  basis for any change in bond here whatsoever.
24          THE COURT:  Mr. Barofsky.
25          MR. BAROFSKY:  Your Honor, if there's any specific
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                                28
82FVBENP                    Plea
1   points you'd like me to respond to.  The ones that jump out to
2   me is, I mean the notion that a defendant can't chronically
3   prepare for sentencing when he's incarcerated, obviously your
4   Honor knows countless defendants who are able to prepare for
5   sentencing when they are incarcerated; and having spent so much
6   time with Mr. Naftalis, I think they are pretty much -- I'm
7   sure they have contemplated this before, this is not the first
8   time.
9           As opposed to those other cases, defendants who are
10  released pending appeal after they've been convicted at trial
11  is a different situation.  There's obviously provisions within
                        Page 13

82FVBENP.txt

12    3143 when there are issues on appeal that the judge finds are
13    significant issues that need to be considered and possibly
14    could result in the reversal of a conviction.  That's a
15    different -- those are different facts, and that's a different
16    standard.  Here, we have a guilty plea.  I don't think that
17    Mr. Bennett is going to be challenging his conviction in this
18    case.  He just gave a very detailed guilty plea.
19         With respect to his assurances to his family, I don't
20    mean to minimize the bond between Mr. Bennett and his family,
21    but on the flip side, we're looking at a man who just admitted
22    to telling a series of lies to a large number of victims that
23    resulted in the defrauding of $2.4 billion.  1.7 or 8 billion,
24    which we will show for restitution at the time of sentencing,
25    has not been collected.  People are out all of this money.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

                                                            29
82FVBENP                      Plea
1          So this man maybe may have some allegiance to his
2     family, but I think you have to look at the flip side as to how
3     strong that may be by a man if he is willing to tell whatever
4     lie is necessary to -- you know, on proportions that are
5     mind-boggling, in the billions of dollars.
6          So we would respectfully submit that -- and we don't
7     contest the fact, by the way, to be clear, that Mr. Bennett has
8     complied with the conditions.  And that is certainly a relevant
9     factor that Mr. Naftalis points out and we don't contest it.
10    We just don't think that that's enough to meet his burden,
11    given his changed circumstances.  And that to allow a defendant
12    like this, who's also not a U.S. citizen, unlike those
13    individuals, out on what is essentially an unsecured bond, it
14    simply isn't the right course of action here.
15         MR. NAFTALIS:  Just one small point, which they
16    reminded me to mention.  Although Mr. Bennett never changed his
17    citizenship, like his wife, or became an American citizen like
18    his children, he's lived in the United States for more than 30
19    years; so it's not like he has any roots anyplace else.  So
20    it's a little unfair for this eleventh-hour application which
21    we heard about today to suggest as if he had someplace to go
22    to.
23         And the government ignored the situation in the Kumar
24    case.  He said that all these other cases where people were on
25    appeal.  In the Kumar case it was a plea of guilty with someone
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

                                                            30
82FVBENP                      Plea
1     facing, if one took the government's view of the thing, a life
2     sentence.  And he was allowed out, and he showed up.  Even
3     after he got his sentence of 12 years he remained out on bond
4     to work out the restitution things.
5          And we don't necessarily agree at all with the amount
6     of the forfeiture issues here.  I mean there's a forfeiture
7     issue in the case, but the numbers he tosses around are not
8     numbers that we have stipulated to or agreed to by any stretch
9     of the imagination, and he throws them around.
10         That's the only point I wanted to make.
11         THE COURT:  All right.  I'm not going to remand
12    Mr. Bennett, although I do think I can modify his bail
13    conditions to create greater security.  And I'm not going to do
14    so for a number of reasons, the most important of which is that
15    this indictment was filed in 2005.
16         If Mr. Bennett had wanted to flee, he should have fled
                              Page 14

82FVBENP.txt

17  before he paid his lawyers all the money, and kept it, and gone
18  to an appealing location. In fact, having pled guilty, to
19  leave now, extraditing him will be much easier. So there's a
20  balance there.
21       In addition, I note that just by statute, to release
22  someone on appeal requires the same finding as the finding now.
23  The judicial officer has to be persuaded by clear and
24  convincing evidence that the person is not likely to flee.
25  That's half of the standard. The appellate issue is the other
                  SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

                                                                31
82FVBENP                    Plea
1   half, so it's the same standard.
2        And I also think that -- and I want to make it
3   clear -- that I don't make any prejudgments about the substance
4   of the case, but this is a case in which there has been a lot
5   of information, publicly, at least, from the bankruptcy
6   proceeding, and so this is a situation in which Mr. Bennett has
7   had the opportunity to see an examiner put the evidence
8   together. This is not a situation where as the case approaches
9   trial, the government finally turns over information. I think
10  Mr. Bennett has had a pretty good idea of the nature of the
11  case and the evidence for at least some time, which makes the
12  fact that he stays more significant.
13       The pretrial officer tells me that it would be easier
14  and more effective to monitor Mr. Bennett if he stayed in one
15  home or the other. And, I guess -- and tells me that basically
16  the minute he leaves home they know about it. So given that it
17  would take some time to -- since make an escape without a
18  passport, I think that if we modified the bail conditions to
19  limit his location, pretrial tells me that that makes it a more
20  secure situation. In addition, if the government has any
21  particular practical economic conditions that you can think of,
22  I'm always willing to listen to those.
23       MR. BAROFSKY: Your Honor, the posting of additional
24  assets by the defendant, they are largely forfeitable assets,
25  but to the extent that there are assets that have not been --
                  SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

                                                                32
82FVBENP                    Plea
1   as I said, we estimate that it's in the range of approximately
2   $20,000,000. If we could at least secure those assets, these
3   are assets that we've not yet secured by having him posted for
4   the bond.
5        In addition, because, frankly, we're going to get
6   those assets anyhow at the conclusion of this case, perhaps the
7   posting the requiring of assets from the children. He
8   mentioned that the children are successful, one's an investment
9   banker. And if they have property, that may increase the
10  incentive for Mr. Bennett to stay.
11       THE COURT: I think it's enough that he's -- the bond
12  mortgages their future if he flees. We're not taking his kids'
13  money.
14       MR. BAROFSKY: We aren't. I wouldn't suggest that we
15  would take it other than if he fled. We would only be posting
16  whatever interest. Because really right now the problem, your
17  Honor, and I hear what your Honor is saying, is that he has an
18  unsecured bond, and that just causes us a great deal of
19  concern. I don't know what the circumstances are in Kumar or
20  Ebbers, but this is a situation if there is a third party
21  posting collateral --
                          Page 15

82FVBENP.txt
```
22        THE COURT:  For all those people, the bottom line is
23   that for any defendant who was older and who was facing
24   sentencing, in, lets call it, the post-Enron era, the situation
25   was the same as for Mr. Bennett.  The possibility that their
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

33

82FVBENP                    Plea
```
1    sentence would be -- that their residence in the Bureau of
2    Prisons was the last residence they are going to have.
3         So I don't think this is really dramatically
4    different.  And I don't think the fact that he's a British
5    citizen changes the situation, that he has to -- I think he
6    gets the credit for having complied with all of his bail
7    conditions and having had two and-a-half years to reflect.
8         MR. BAROFSKY:  Your Honor, to be clear, I wasn't
9    rearguing the bail application.  I was merely trying to respond
10   to your Honor's question whether there were additional economic
11   circumstances.
12        THE COURT:  I'm not asking his children, okay?
13        MR. BAROFSKY:  Well, your Honor, then I would ask that
14   in the alternative, if the defendant could post additional
15   property or money that has not been seized or frozen by the
16   government to secure this bond to at least increase so that
17   there's some notional security of the bond.  And I would ask
18   for a number of $10,000,000 in cash or property.
19        MR. NAFTALIS:  Your Honor, I just think there is no
20   basis whatsoever for the application.  His children, the most
21   important things in the world, are on the hook for $50,000,000
22   if he were to leave.  As they've indicated, they don't have any
23   evidence of anything that he's ever done anything which would
24   indicate he would leave.  As your Honor said, quite correctly,
25   we've known about the evidence in this case; your Honor
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

34

82FVBENP                    Plea
```
1    remembers the litigation with respect to the bankruptcy trusts,
2    these report the motion practice there.  There's no secret
3    about that.  He's showed up all the time; he's complied with
4    all the conditions.  And there's not a reason in the world and
5    there's not a basis in the world for any change here
6    whatsoever.
7         MR. BAROFSKY:  Your Honor, respectfully, I don't see
8    any harm in having him post additional property that could only
9    be used at this time for the purposes to facilitate flight.  He
10   can't transfer these properties without violating the money
11   laundering laws at this point, and I don't see -- I don't even
12   understand how upping the collateral so as to prevent him from
13   fleeing prejudices him in any way.  And we're not asking even
14   for all of the money that we believe is out there, we're asking
15   for $10,000,000 to provide some additional security on what is
16   now an essentially an uncollateralized bond.  It doesn't really
17   move the ball tremendously for us, but it helps.  And at least
18   it would limit his ability to flee, should he make that
19   decision, that it makes more sense to self-deport, since he's
20   going to be going back to England anyhow before he has to face
21   the sentence.  I don't think the government's request is
22   shocking or surprising or terribly dramatic, but we do think it
23   would help, given the situation.
24        MR. NAFTALIS:  They have not shown anything for this
25   eleventh-hour request.  It's totally and absolutely baseless.
```
SOUTHERN DISTRICT REPORTERS, P.C.
Page 16

82FVBENP.txt
(212) 805-0300

35

82FVBENP                              Plea
1   And I don't think -- I don't know what property may or may not
2   exist, but I don't think that there's any justification. And
3   they just can't come into court without any basis whatsoever
4   and allege things where all the evidence shows that this
5   application is frivolous.
6           MR. BAROFSKY:  Your Honor, I've listened to this for a
7   fair amount of time now.  And to characterize our application
8   as frivolous and baseless and eleventh-hour I think is unfair.
9           THE COURT:  At least the eleventh hour.
10          MR. BAROFSKY:  I don't know when we were supposed to
11  have made this application.  I don't know if Mr. Naftalis would
12  have had us make it when he notified us about the intent to
13  change his plea yesterday afternoon, I don't think so.  I think
14  the only time we can make a plea based on the changed
15  circumstance of the defendant entering a guilty plea is after
16  he enters the guilty plea.
17          As far as it being baseless, the notion that a
18  defendant who's facing 315 years of prison time --
19          THE COURT:  He wishes.
20          MR. BAROFSKY:  -- is -- that it's baseless to seek his
21  remand when he is an English citizen subject to deportation --
22          THE COURT:  Excuse me.  We're not -- we're sending him
23  to one of the most civilized countries in the world.  It's not
24  punishment to live in England, all right?
25          MR. BAROFSKY:  Exactly, your Honor, which is why we
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

36

82FVBENP                              Plea
1   would ask for additional collateral.
2           THE COURT:  And there is an extradition treaty between
3   the United States and Great Britain, so...
4           MR. BAROFSKY:  Your Honor, I just don't understand the
5   harm --
6           THE COURT:  Because I'm not sure that the purpose of
7   bail is to help you collect, you know, whatever you claim is
8   your eventual restitution.
9           MR. BAROFSKY:  Your Honor, if I wasn't clear on this
10  argument, I apologize.  The reason why we're asking for this is
11  to assure the defendant's appearance.  If that money is posted
12  as a bond, it's not so that we can eventually seize it.  If
13  it's posted as a bond, it's not available for him to use to
14  facilitate flight.  It's also to secure the bond.  This
15  original bond was issued because it was secured by money and
16  property.  Right now it's essentially not secured by money and
17  property.
18          THE COURT:  But that argument applies to any
19  additional money that he would put up.  You would say it was
20  just as forfeitable to you.  So it then becomes unsecured, the
21  same way.
22          MR. BAROFSKY:  But it's unrestrained property, Judge,
23  that's the difference.  This property is actually restrained on
24  top of the fact that it's -- because it's their direct
25  proceeds.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

37

82FVBENP                              Plea
1           What I'm suggesting, these are other properties that
2   have not been restrained, because we're not able to restrain
                            Page 17

82FVBENP.txt

3   certain properties that are not proceeds. So this is money
4   that is available to the defendant for use if he wants to
5   facilitate flight.
6        The purpose of a bond, obviously security of a bond,
7   and why your Honor endorsed the order of a secured bond, was
8   because more security means less likelihood of flight. And all
9   we're suggesting is taking this property that is now available
10  to the defendant and posting it as security for the bond. And
11  obviously if we are unable to prove, as Mr. Naftalis suggests,
12  that this is property that's subject to asset forfeiture or
13  restitution, he'll get it back when -- at the time of his
14  sentencing or the time that he reports.
15       So we're not taking anything; we're not putting our
16  hands on stuff that we're not entitled to; we're just asking
17  that this bond be really secured, because right now we're
18  basically -- it's the exact same situation we had in October of
19  2005, when he's going out on the same conditions, it's
20  essentially an unsecured bond. And I don't think that your
21  Honor would have ordered an unsecured bond back then, and we're
22  just asking for some additional security: Money that is
23  available for the defendant or property, and that we have that
24  to secure the bond in case the defendant flees, and to
25  encourage him not to flee.
            SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300

                                                        38

82FVBENP                    Plea
1        MR. NAFTALIS: Apart from the fact that the government
2   has proffered not a single fact that anything has changed, I
3   don't agree with the notion that this bond is unsecured. One
4   of the homes which is securing the bond -- there's $5,000,000
5   cash, there's two residences, is in a trust. So without going
6   through all the legalities, I don't think it's so quickly
7   forfeitable, as they say.
8        And the notion of ignoring -- and that will be worked
9   out; we're not here to litigate that issue, but I just -- and
10  the notion that they can continue to ignore the fact that his
11  wife and children have signed a $50,000,000 bond that they will
12  be on the hook for and their lives will be ruined, the notion
13  there's not the slightest reason to suppose that he would do
14  this to his children, he never has, and I have nothing else to
15  say.
16       THE COURT: I think $50,000,000 is a lot of money.
17  And it does directly affect wife, children, inheritances. So
18  what about the issue of where he's going to live?
19       MR. NAFTALIS: If your Honor wants -- feels it would
20  be better, pretrial services --
21       THE COURT: That's what pretrial tells me.
22       MR. NAFTALIS: I think he would -- there's a residence
23  in New York and a residence in New Jersey. I think he would
24  prefer to be in New Jersey where his wife is, and then subject
25  to the fact he could just come to our offices and work with us,
            SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300

                                                        39

82FVBENP                    Plea
1   which I think he's allowed to do, I think that would be his
2   preference in terms of the quality of the life until the
3   sentence, if that's --
4        THE COURT: I get the high sign from pretrial; so
5   he'll stay in New Jersey.
6        MR. NAFTALIS: Okay.
7        THE COURT: Other than when he goes to you and also
                    Page 18

```
                              82FVBENP.txt
 8    when you have to get him to pretrial for -- to probation for
 9    his interview.
10              MR. NAFTALIS:  Yes.
11              THE COURT:  Which we do need to do within the two
12    weeks so that the sentencing schedule can proceed.  And the
13    same is true for the government's description of the crimes.
14              Okay?  I think we're done then.
15              MR. NAFTALIS:  Thank you, your Honor.
16              MR. BAROFSKY:  Thank you, your Honor.
17              MR. GARCIA:  Thank you, your Honor.
18              THE DEFENDANT:  Thank you, your Honor.
19                            *    *    *
20
21
22
23
24
25
```

# EXHIBIT H

82KATROP.txt

1

82KATROPps
1  UNITED STATES DISTRICT COURT
1  SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x
2
3  UNITED STATES OF AMERICA,
3
4             v.                           05 CR 1192 (NRB)
4
5  ROBERT TROSTEN,
5
6                 Defendant.
6
7  ------------------------------x
7
8                                          New York, N.Y.
8                                          February 20, 2008
9                                          5:30 p.m.
9
10
10  Before:
11
11                  HON. NAOMI REICE BUCHWALD
12
12                                          District Judge
13
13
14                       APPEARANCES
14
15  MICHAEL J. GARCIA
15       Acting United States Attorney for the
16       Southern District of New York
16  BY:  CHRISTOPHER GARCIA
17       NEIL BAROFSKY
17       Assistant United States Attorneys
18
18  MORVILLO, ABRAMOWITZ, GRAND, IASON,
19  ANELLO & BOHRER, P.C.
19       Attorneys for Defendant
20  BY:  ROBERT G. MORVILLO
20       CHRISTOPHER J. MORVILLO
21       RACHEL M. KORENBLAT
21
22
22  Also Present:  Robert W. Manchak, Criminal Investigator
23                 Rua M. Kelly, Assistant United States Attorney
23                 Mary Beth Allen, Paralegal
24                 United States Attorney's Office
25

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

2

82KATROPps
1          (In open court)
2          THE CLERK:  The case is United States v. Robert
3  Trosten, Docket No. 05 Crim. 1192.  Is the government ready to
4  proceed?
5          MR. GARCIA:  Yes.  Good afternoon, your Honor.
6  Christopher Garcia on behalf of the government.  With me at
7  counsel table is Assistant United States Attorney Neil
8  Barofsky.  And with the Court's permission, also at counsel
9  table:  Robert Manchak, criminal investigator with our office;
                           Page 1

82KATROP.txt
10  Mary Beth Allen, paralegal with our office; and also Rua Kelly,
11  also an Assistant United States Attorney with our office.
12              THE CLERK:  And is the defense attorney ready to
13  proceed?
14              MR. R. MORVILLO:  We are, your Honor.  Mr. Trosten is
15  here.  For the record, my name is Robert Morvillo.  I represent
16  Mr. Trosten.  And seated to my left is Christopher Morvillo, my
17  co-counsel.
18              THE DEFENDANT:  Good afternoon.
19              THE COURT:  Good afternoon, Mr. Morvillo.
20              MR. R. MORVILLO:  I think it's my application, your
21  Honor.  We would apply to the Court for permission to withdraw
22  our previously entered plea of not guilty as to Counts One,
23  Two, Seven, Fifteen, and Seventeen of the indictment and enter
24  a plea of guilty.
25              THE COURT:  Mr. Trosten, if you will remain standing
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
                                                              3

82KATROPps
1   for a moment, would you raise your right hand, please.
2              Do you solemnly swear that the answers to the
3   questions I am about to ask you will be the truth, the whole
4   truth, and nothing but the truth, so help you God?
5              THE DEFENDANT:  I do, your Honor.
6              THE COURT:  Would you state your full name for me,
7   please.
8              THE DEFENDANT:  Robert Charles Trosten, Sr.
9              THE COURT:  And, Mr. Trosten, how old are you?
10              THE DEFENDANT:  38.
11              THE COURT:  Why don't you sit down.
12              THE DEFENDANT:  Thank you.
13              THE COURT:  Mr. Trosten, what was the last grade or
14  level of school that you completed?
15              THE DEFENDANT:  I finished undergraduate college with
16  a B.S. in accounting.
17              THE COURT:  At this time are you under the care of a
18  doctor or psychiatrist?
19              THE DEFENDANT:  Yes, I am.
20              THE COURT:  Which?
21              THE DEFENDANT:  A doctor -- a psychiatrist.
22              THE COURT:  And what condition is he treating you for?
23              THE DEFENDANT:  Dr. Neiman is treating me for sleep
24  and anxiety on occasion.
25              THE COURT:  And are you taking any medicine as a
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
                                                              4

82KATROPps
1   result of or in connection with that treatment?
2              THE DEFENDANT:  I take sleep medicine as needed and
3   anxiety medicine as needed.
4              THE COURT:  At the moment, are you under the influence
5   of any drug or alcohol?
6              THE DEFENDANT:  No, I'm not.
7              THE COURT:  Have you in fact ever been hospitalized or
8   treated for either alcoholism or narcotics addiction?
9              THE DEFENDANT:  No, I have not.
10              THE COURT:  And how are you feeling physically today?
11              THE DEFENDANT:  I feel great.
12              THE COURT:  Have you had sufficient time to discuss
13  the charges against you and your proposed plea with your
14  counsel, the Messrs. Morvillo?
                             Page 2

```
                          82KATROP.txt
15            THE DEFENDANT: I have, yes.
16            THE COURT: And have you been satisfied with the
17      advice and counsel that they have given to you?
18            THE DEFENDANT: I am.
19            THE COURT: And at this time, are you ready to change
20      your plea?
21            THE DEFENDANT: I am indeed.
22            THE COURT: And what is your plea at the moment?
23      Guilty or not guilty?
24            THE DEFENDANT: Guilty.
25            THE COURT: All right. Mr. Trosten, in order to
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```
                                                                   5
```
        82KATROPps
1       determine whether your plea is voluntary and made with a full
2       understanding of the charges against you and the consequences
3       of your plea, I will make certain statements to you and I will
4       ask you certain questions. I want you to understand that I
5       need not accept your plea unless I am satisfied that you are in
6       fact guilty and that you fully understand your rights.
7             Now, Count One of the indictment charges you with a
8       conspiracy to commit securities fraud, wire fraud, bank fraud,
9       and money laundering, and to make false filings with the SEC
10      and material misstatements to auditors. This crime carries a
11      maximum statutory penalty of five years in prison, a maximum
12      fine of the greatest of $250,000 or twice the gross pecuniary
13      gain derived from the offense or twice the gross pecuniary loss
14      to a person other than yourself as a result of the offense, a
15      $100 special assessment, and a mandatory term of supervised
16      release of three years. Do you understand that those are the
17      charges in Count One and the maximum statutory penalties
18      provided for that charge?
19            THE DEFENDANT: I do.
20            THE COURT: Count Two charges you with securities
21      fraud. And this crime carries a maximum possible sentence of
22      20 years in prison, a maximum fine of the greatest of $5
23      million or twice the gross pecuniary loss derived from the
24      offense, or twice the gross pecuniary loss -- I'm sorry. I
25      think I said twice pecuniary loss. It's twice the gross
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```
                                                                   6
```
        82KATROPps
1       pecuniary gain derived from the offense or twice the gross
2       pecuniary loss to a person other than yourself as a result of
3       the offense, a $100 special assessment, and a maximum term of
4       supervised release of three years. Do you understand that
5       those are the charges in Count Two and the maximum possible
6       penalties provided by law?
7             THE DEFENDANT: I do.
8             THE COURT: Count Seven charges you with wire fraud,
9       and this crime carries a maximum possible sentence of 20 years
10      in prison, a maximum fine of the greatest of $250,000 or twice
11      the gross pecuniary gain derived from the offense or twice the
12      gross pecuniary loss to a person other than yourself as a
13      result of the offense, a $100 special assessment, and a maximum
14      term of supervised release of three years. Do you understand
15      that those are the charges in Count Seven and the maximum
16      statutory penalty provided for the crime of wire fraud?
17            THE DEFENDANT: I do, your Honor.
18            THE COURT: Count Fifteen charges you with bank fraud.
19      And this crime carries a maximum possible sentence of 30 years
                              Page 3
```

82KATROP.txt
20  in prison, a maximum fine of the greatest of $250,000 or twice
21  the gross pecuniary gain derived from the offense or twice the
22  gross pecuniary loss to a person other than yourself as a
23  result of the offense, a $100 special assessment, and a
24  mandatory -- or a maximum term of supervised release of five
25  years.  Do you understand that those are the charges in Count
                  SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                          7

82KATROPps
1   Fifteen and the maximum statutory penalty provided therefor?
2               THE DEFENDANT:  I do, your Honor.
3               THE COURT:  Count Seventeen charges you with money
4   laundering, and this crime carries a maximum sentence of ten
5   years in prison, a maximum fine of the greatest of $250,000 or
6   twice the gross pecuniary gain derived from the offense or
7   twice the gross pecuniary loss to a person other than yourself
8   as a result of the offense, a $100 mandatory special
9   assessment, and a maximum supervised release term of three
10  years.  Do you understand that that is the charge in Count
11  Seventeen and the maximum penalty provided for it by statute?
12              THE DEFENDANT:  I do, your Honor.
13              THE COURT:  And do you understand that, in addition to
14  the punishments which I just described, that the Court must
15  order restitution with respect to the charges in the
16  indictment?
17              THE DEFENDANT:  I'm sorry, your Honor?
18              THE COURT:  I said, do you understand that in addition
19  to the punishments that I've just described, that the Court
20  must order restitution --
21              THE DEFENDANT:  I do.
22              THE COURT:  -- with respect to the charges to which
23  you are pleading?
24              THE DEFENDANT:  I do.
25              THE COURT:  Do you understand that as part of your
                  SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                          8

82KATROPps
1   plea agreement, that you have admitted the forfeiture
2   allegations in the indictment and that you agree to forfeit to
3   the United States the sum of $2,400,000,000, as well as all the
4   specific property listed in schedule A to your plea agreement?
5               THE DEFENDANT:  I do, your Honor.
6               THE COURT:  And that as part of this plea agreement,
7   that you have agreed to not file any claims for any of the
8   forfeited property, and also to take such steps as necessary to
9   clear title to the specific property?
10              THE DEFENDANT:  I do, your Honor.
11              THE COURT:  And do you understand that you have the
12  right to plead not guilty and the right to a trial on the
13  charges against you and in fact the right to a jury trial?
14              THE DEFENDANT:  I do.
15              THE COURT:  At this time, Mr. Garcia, I would ask you,
16  please, to recite the elements of the crimes to which
17  Mr. Trosten is pleading.
18              MR. GARCIA:  Yes, your Honor.  With respect to Count
19  One, there are three elements: first, that there existed an
20  agreement or understanding to commit the objects charged;
21  second, that Mr. Trosten knowingly became a member of that
22  agreement or understanding; and, third, that one of the
23  co-conspirators knowingly committed at least one overt act in
24  furtherance of the conspiracy during the life of the
                          Page 4

82KATROP.txt
25     conspiracy.

9

82KATROPps
1      With respect to Count Two, the securities fraud count,
2  the first element is that Mr. Trosten, in connection with the
3  purchase or sale of securities, here the notes described in
4  Count Two, did one or more of the following: employed a device,
5  scheme, or artifice to defraud; or made an untrue statement of
6  material fact; or omitted to state a material fact which made
7  what was said, under the circumstances, misleading; or engaged
8  in an act, practice, or course of business that operated or
9  would operate as a fraud or deceit upon a purchaser or seller.
10 Second, that Mr. Trosten acted knowingly, willfully, and with
11 intent to defraud.  And, third, that Mr. Trosten used or caused
12 to be used any means or instruments of transportation or
13 communication in interstate commerce, or the use of the mails,
14 in furtherance of the fraudulent conduct.
15     With respect to Count Seven, the wire fraud count,
16 there are five elements: first, that a scheme to defraud
17 existed; second, that Mr. Trosten must have participated in the
18 scheme with intent to defraud; third, that misrepresentations
19 or omissions must have related to material facts; fourth, that
20 the scheme was executed to obtain money or property; and
21 finally, that in executing the scheme, Mr. Trosten used or
22 caused to be used interstate wires, or the use of such wires
23 were reasonably foreseeable to him, as listed in the
24 indictment.  And here, your Honor, with respect to Count Seven,
25 it is alleged that on June 22, 2004, Mr. Trosten sent an

10

82KATROPps
1  e-mail.
2      With respect to Count Fifteen, the bank fraud charge,
3  your Honor, there are three elements: first, that there was a
4  scheme to defraud a bank by means of materially false or
5  fraudulent pretenses, representations, or promises; second,
6  that Mr. Trosten executed or attempted to execute the scheme
7  with intent to defraud the bank; and, third, that at the time
8  of the execution of the scheme, the bank had its deposits
9  insured by the Federal Deposit Insurance Corporation.
10     At this time, your Honor, the government would proffer
11 and represent that HSBC, which is identified in the indictment,
12 has its deposits, and had its deposits at the relevant period,
13 insured by the Federal Deposit Insurance Corporation.
14     Finally, your Honor, with respect to Count Seventeen,
15 the money laundering count, there are three elements: first,
16 that Mr. Trosten engaged or attempted to engage in monetary
17 transactions involving criminally derived property of a value
18 greater than $10,000; second, that the property involved in the
19 monetary transaction, or attempted transaction, was in fact
20 derived from specified unlawful activity; finally, that
21 Mr. Trosten acted knowingly.  And with respect to this count,
22 the specified unlawful activities are the wire fraud, bank
23 fraud, and securities fraud otherwise charged.
24     THE COURT:  Mr. Trosten, do you understand that if you
25 pled not guilty and went to trial, that the burden would be on

11

82KATROPps

Page 5

82KATROP.txt
1   the government to prove each and every element of the crimes
2   charged beyond a reasonable doubt in order to convict you?
3           THE DEFENDANT:  Yes, your Honor.
4           THE COURT:  Do you understand that at a trial, you
5   would have the right to be represented by an attorney at all
6   stages of the proceeding and if necessary an attorney would be
7   appointed for you?
8           THE DEFENDANT:  I do, your Honor.
9           THE COURT:  Do you understand that at a trial you
10  would have the right to confront and cross-examine witnesses
11  against you and the right not to be compelled to incriminate
12  yourself?
13          THE DEFENDANT:  Yes, your Honor.
14          THE COURT:  And do you understand that at a trial you
15  would be presumed innocent until such time, if ever, the
16  government established your guilt by competent evidence to the
17  satisfaction of the trier of fact beyond a reasonable doubt?
18          THE DEFENDANT:  I do, your Honor.
19          THE COURT:  And do you understand that at a trial, you
20  would have the right to testify and would also be entitled to
21  compulsory process, in other words, the right to call other
22  witnesses on your behalf?
23          THE DEFENDANT:  I do, your Honor.
24          THE COURT:  And do you understand that if your plea is
25  accepted, that there will be no further trial of any kind, so
            SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300
                                                        12
82KATROPps
1   that by pleading guilty, you are waiving your right to a trial?
2           THE DEFENDANT:  I do.
3           THE COURT:  Do you understand that if you are
4   sentenced to a period of supervised release and if you violate
5   the terms of your supervised release, that an additional period
6   of jail time may be imposed without credit for the time that
7   you had previously spent on supervised release?
8           THE DEFENDANT:  I do.
9           THE COURT:  And do you understand that in connection
10  with your plea of guilty, that the Court may ask you certain
11  questions about the offense to which you have pled, and if you
12  answer those questions under oath and on the record and in the
13  presence of your lawyer, that your answers if false may later
14  be used against you in a prosecution for perjury or false
15  statement?
16          THE DEFENDANT:  I do, your Honor.
17          THE COURT:  And do you understand that, in determining
18  your sentence, that the Court is obligated to calculate the
19  applicable sentencing guidelines range and to consider that
20  range and possible departures under the guidelines, as well as
21  other factors concerning the nature and circumstance of the
22  offense and the history and characteristics of the defendant?
23          THE DEFENDANT:  I do, your Honor.
24          THE COURT:  Mr. Trosten, did you sign a plea agreement
25  earlier today?
            SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300
                                                        13
82KATROPps
1           THE DEFENDANT:  I did, your Honor.
2           THE COURT:  And before you signed it, did you discuss
3   it with your lawyers?
4           THE DEFENDANT:  I did.
5           THE COURT:  And before you signed it, did you read it?
                        Page 6

82KATROP.txt
6          THE DEFENDANT:  I did, your Honor.
7          THE COURT:  Let's just put the plea agreement to one
8     side for a moment.  Apart from the plea agreement, have any
9     threats or promises been made to you to make you plead guilty?
10          THE DEFENDANT:  No, your Honor.
11          THE COURT:  Again, apart from the plea agreement, have
12     any understandings or promises been made to you concerning the
13     sentence that you will receive?
14          THE DEFENDANT:  No, your Honor.
15          THE COURT:  Is your plea voluntary?
16          THE DEFENDANT:  Yes, it is.
17          THE COURT:  I would like to review a few portions of
18     the plea agreement with you.  Do you understand that pursuant
19     to this plea agreement, that you have undertaken to truthfully
20     and completely disclose all information about yourself and
21     others as required of you by the U.S. Attorney's Office; and
22     that you have agreed to fully cooperate with the U.S.
23     Attorney's Office, the United States Postal Inspection Service,
24     the Securities and Exchange Commission, and any other law
25     enforcement agency designated by the Office; that you have
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

                                                                  14
82KATROPps
1     agreed to attend all meetings as your presence is requested,
2     and to provide to the U.S. Attorney's Office any document or
3     other tangible evidence relating to any inquiry from the U.S.
4     Attorney's Office or other law enforcement agencies; that you
5     have agreed to truthfully testify before the grand jury and at
6     any other trial or court proceeding; that you have agreed to
7     fully disclose to the U.S. Attorney's Office any crimes that
8     you have committed and any civil or criminal proceedings in
9     which you have been or are a subject target or a witness; and
10     that you have further agreed to commit no further crimes
11     whatsoever?
12          THE DEFENDANT:  Yes, your Honor.
13          THE COURT:  And do you understand that the U.S.
14     Attorney's Office has no authority to agree not to prosecute
15     you for any possible criminal tax violations?
16          THE DEFENDANT:  I do, your Honor.
17          THE COURT:  And do you understand that if you fully
18     comply with this agreement, that you will not be further
19     prosecuted by the U.S. Attorney's Office for any crime related
20     to your participation in the crimes described in the
21     indictment, Counts One, Two, Seven, Fifteen, and Seventeen,
22     except for a possible criminal tax violation?
23          THE DEFENDANT:  Yes, your Honor.
24          THE COURT:  And are you aware that this agreement
25     doesn't bind any other federal, state, or local prosecuting
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

                                                                  15
82KATROPps
1     office?
2          THE DEFENDANT:  Yes, your Honor.
3          THE COURT:  And do you understand further that the
4     sentence that you will receive is within the sole discretion of
5     the Court?
6          THE DEFENDANT:  Yes, your Honor, I do.
7          THE COURT:  And do you understand that if the United
8     States Attorney's Office determines that you have provided
9     substantial assistance in an investigation or prosecution and
10     fully complied with the understandings specified in this plea
                              Page 7

82KATROP.txt

```
11   agreement, that the U.S. Attorney's Office will file a motion
12   pursuant to Section 5K1.1 of the guidelines, requesting that
13   you be sentenced in accordance with the factors set forth in
14   that section?
15           THE DEFENDANT:  I do, your Honor.
16           THE COURT:  And do you understand that even if the
17   U.S. Attorney makes such a motion, that the issue of sentencing
18   remains within the discretion of the Court?
19           THE DEFENDANT:  I do.
20           THE COURT:  And do you understand that if the U.S.
21   Attorney's Office determines that you have not provided
22   substantial assistance, that they are released of any
23   obligation to file a 5K1.1 letter?
24           THE DEFENDANT:  I do, your Honor.
25           THE COURT: And do you understand that, should you
```

                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                              16

82KATROPps

```
1    commit any further crimes or should it be determined that you
2    have given false, incomplete, or misleading testimony or
3    information, that you are thereafter subject to prosecution for
4    additional federal crimes?
5            THE DEFENDANT:  I do, your Honor.
6            THE COURT:  Do you understand that if it is determined
7    that you have committed further crimes or given false or
8    misleading testimony or otherwise violated this agreement, that
9    all statements made by you to the United States Attorney's
10   Office can be used against you in a subsequent prosecution?
11           THE DEFENDANT:  Yes, your Honor.
12           THE COURT:  And are you entering this plea because you
13   are in fact guilty?
14           THE DEFENDANT:  I am, your Honor.
15           THE COURT:  And do you understand that as part of this
16   plea agreement, that you are waiving any right you might have
17   to have the government preserve any physical evidence for
18   future DNA testing or any right you might have for DNA testing
19   at the present time?
20           THE DEFENDANT:  Yes, your Honor.
21           THE COURT:  And do you understand that this agreement
22   takes the place of any prior understanding that you may have
23   reached with the United States Attorney's Office and that there
24   are no conditions beyond those set forth in this written
25   agreement and that there cannot be any additional
```

                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                              17

82KATROPps

```
1    understandings that are not entered into in writing and signed?
2            THE DEFENDANT:  Yes, your Honor.
3            THE COURT:  Mr. Trosten, did you commit the offenses
4    that you are pleading guilty to?
5            THE DEFENDANT:  I did, your Honor.
6            THE COURT:  Would you tell me, please, what you did.
7            THE DEFENDANT:  Your Honor, first, I just would like
8    to state for the record that, when I said I felt great, it was
9    relating to medicines that I had taken, as opposed to feeling
10   ill because of those medicines, not because of my conduct,
11   which I deeply regret, your Honor.
12           THE COURT:  I would just like -- are you under the
13   influence of any medicine today?
14           THE DEFENDANT:  I am not, no.  No.
15           THE COURT:  OK.  And you have not had any trouble
```

                            Page 8

82KATROP.txt

16  following any of the questions I have asked you?
17          THE DEFENDANT:  No, I have not.  No, I have not.
18          Your Honor, while I was employed at Refco, I agreed
19  with other Refco executives to hide the true nature of Refco's
20  finances on Refco's financial statements.  I knew that Refco's
21  financial statements did not accurately reflect Refco's
22  financial condition, because the financial statements did not
23  disclose the full amount that Refco Group Holdings, Inc., a
24  related party, owed to Refco.  I understood that the RGHI
25  receivable was underreported because Philip Bennett, Refco's
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
                                                            18
82KATROPps
1   former chief executive officer, and other Refco executives,
2   including me, were involved in a series of transactions at the
3   end of Refco's financial reporting periods to make it appear as
4   if a receivable was due from third-party customers rather than
5   from a related party.
6           The RGHI receivable was composed of, amongst other
7   things, historic customer losses, bad debts, and expenses that
8   RGHI incurred on behalf of Refco.
9           In addition, I participated in a number of
10  transactions that padded or inflated Refco's income.  For
11  example, I participated in transactions that shifted expenses
12  off the books of Refco and onto the books of Refco Group
13  Holdings, Inc.
14          I, along with other Refco executives, agreed to
15  conceal the true size and nature of the RGHI receivable from,
16  amongst others, Refco's auditors, Thomas H. Lee Partners; HSBC,
17  which, in 2004, participated in Refco's senior secured credit
18  facility, as referenced in paragraph 14 -- I'm sorry --
19  paragraph 41 and Count Fifteen of the indictment; and investors
20  who purchased bonds that Refco issued in 2004, as referenced in
21  Count Two of the indictment.
22          I left the company in August of 2004, one year before
23  the IPO of Refco.  I and other Refco executives used the
24  interstate wires to accomplish these acts within this district,
25  as referenced in Count Seven of the indictment.
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
                                                            19
82KATROPps
1           Furthermore, I received funds obtained from the
2   transaction with Thomas H. Lee Partners, referenced in
3   paragraph 34 of the indictment, which I knew were proceeds from
4   unlawful activity, as referenced in Count Seventeen.
5           The RGHI receivable and the transactions used to
6   conceal it were material information that Refco investors and
7   lenders would have wanted to know before investing in or
8   lending money to Refco.
9           I knew that obtaining funds from Refco investors and
10  lenders based on misleading financial information was wrong.
11          Excuse me.
12          Your Honor, I take full responsibility for my actions
13  and my conduct.
14          I wish to apologize to my family and those that I
15  harmed by my conduct, which I deeply and sincerely regret, your
16  Honor.
17          Thank you.
18          THE COURT:  Mr. Garcia, is there anything else that
19  you wish me to ask Mr. Trosten?
20          MR. GARCIA:  No, your Honor.
                        Page 9

82KATROP.txt

21      THE COURT: Mr. Trosten, do you still wish to plead
22  guilty?
23      THE DEFENDANT: I do, your Honor.
24      THE COURT: Mr. Morvillo, do you know of any reason
25  that Mr. Trosten ought not to plead guilty?
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                            20

82KATROPps
 1      MR. R. MORVILLO: I do not, your Honor.
 2      THE COURT: All right. Mr. Trosten, I am satisfied
 3  that you understand the nature of the charge against you and
 4  the consequences of your plea, and that your plea is made
 5  voluntarily and knowingly, and that there is a factual basis
 6  for your plea. I will therefore accept your plea of guilty.
 7      Mr. Garcia, do you want to give me a control date?
 8      MR. GARCIA: Your Honor, respectfully, the government
 9  would request about a year for a control date.
10      THE COURT: Let's just see if -- OK. Well, February
11  20, 2009 is a Friday. So you can write to me then.
12      All right. Is there anything else at this time?
13      MR. GARCIA: Nothing more, your Honor, from the
14  government.
15      THE COURT: Mr. Morvillo?
16      MR. R. MORVILLO: Nothing, your Honor. Thank you for
17  accommodating my schedule by sitting as late as you are.
18      THE COURT: We're always here at this time.
19      MR. GARCIA: Thank you, Judge.
20                          oOo
21
22
23
24
25

                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

Page 10