# EXHIBIT Q

EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

|  |  |
|---|---|
| ARCH INSURANCE COMPANY,<br><br>      Plaintiff,<br><br>v.<br><br>JOHN D. AGOGLIA, *et al.*,<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Index No.: 08/600029

**[PROPOSED] JUDGMENT AGAINST
DEFENDANT PHILLIP R. BENNETT**

Before the Court is Plaintiff Arch Insurance Company ("Arch") and Defendant Phillip R. Bennett ("Bennett")'s Stipulated Order for Entry of Judgment against Defendant Phillip R. Bennett. The Parties' Stipulated Order having been "so ordered" and entered by the Court, it is hereby adjudged and declared that:

1.  Bennett waived formal service of process under C.P.L.R. 308 and acknowledged service and receipt of Arch's Amended Summons and the FAC on February 28, 2008;

2.  Pursuant to the Parties' stipulation, Bennett is not entitled to any coverage whatsoever under the Arch Policy for any of the Underlying Matters or for any action, proceeding, investigation or other matter based upon, arising out of, or involving the facts and circumstances underlying or alleged in any of the Underlying Matters;

3.  Pursuant to the Parties' stipulation, judgment is entered against Bennett on Count I of the FAC;

4.  Pursuant to the Parties' stipulation, judgment is entered against Bennett on Count II of the FAC;

5.  Bennett has waived any right to appeal the judgment entered against him; and

6.  Each party shall bear its or his respective attorneys' fees and costs incurred in connection with this action and any other coverage litigation between the parties.

By: _____
    Clerk

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

|  |  |  |
|---|---|---|
| ARCH INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | Index No.: 08/600029 |
| v. | ) ) ) | |
| JOHN D. AGOGLIA, *et al.*, | ) ) | **STIPULATION OF PARTIAL** |
| Defendants. | ) ) | **DISCONTINUANCE WITH** |
| | ) ) ) | **PREJUDICE** |

Plaintiff Arch Insurance Company ("Arch") and Defendant Robert C. Trosten ("Trosten"), by and through their undersigned attorneys, jointly file this Stipulation of Partial Discontinuance with Prejudice.

**WHEREAS**, certain individuals have sought coverage under the "Arch Policy" for the "Underlying Matters," as those terms are defined in the First Amended Complaint for Declaratory Judgment (the "FAC") filed by Arch on February 22, 2008;

**WHEREAS**, Trosten has acknowledged that he presently is not seeking, and will not seek in the future, coverage under the Arch Policy for the Underlying Matters or for any other demand, action, proceeding or investigation, including, but not limited to, any demand, action, proceeding or investigation based upon, arising out of, or involving the facts and circumstances underlying or alleged in any of the Underlying Matters; and

**WHEREAS**, no party to this action is an infant, incompetent or person for whom a committee has been appointed.

**RECEIVED**

APR 25 2008

NEW YORK
COUNTY CLERK'S OFFICE

**NOW THEREFORE IT IS HEREBY STIPULATED AND AGREED,** by and between the undersigned, who have been duly authorized by Arch and Trosten to enter into this Stipulation, as follows:

1.       Trosten waives formal service of process under C.P.L.R. 308 and acknowledges service and receipt of Arch's Amended Summons and the FAC on March 3, 2008;

2.       Trosten relinquishes, waives and forever releases any and all claims that he may have had, have now or have in the future for coverage or payment under the Arch Policy for the Underlying Matters or for any other demand, action, proceeding or investigation, including, but not limited to, any matter based upon, arising out of, or involving the facts and circumstances underlying or alleged in any of the Underlying Matters;

3.       Trosten agrees that he is not now and will not ever seek coverage or payment under the Arch Policy for any demand, action, proceeding or investigation, including, but not limited to, any matter based upon, arising out of, or involving the facts and circumstances underlying or alleged in any of the Underlying Matters;

4.       Arch's causes of action asserted in the FAC are discontinued with prejudice as against Trosten only; and

5.       Each party shall bear its or his respective attorneys' fees and costs incurred in connection with this action and any other coverage litigation between the parties.

Dated: April 25, 2008

_____
Barbara Moses
MORVILLO, ABRAMOWITZ, GRAND,
    IASON & SILBERBERG, PC
565 Fifth Avenue
New York, New York 10017
(212) 880-9540

*Counsel for Defendant Robert C. Trosten*

_____
John H. Eickemeyer
Daniel C. Green
VEDDER PRICE P.C.
1633 Broadway, 47th Floor
New York, New York 10019
(212) 407-7700

Daniel J. Standish
Marc E. Rindner
Cara Tseng Duffield
WILEY REIN LLP
1776 K Street, N.W.
Washington, D.C. 20006
(202) 719-7000

*Counsel for Plaintiff Arch Insurance Company*

**SO ORDERED, this _____ day of _____, 2008**

**By:** _____

-3-

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK        )
                                              ) ss.:
COUNTY OF NEW YORK   )

JOHN H. EICKEMEYER, being sworn, says:

1.    I am not a party to the action, am over 18 years of age and reside in Eastchester, New York.

2.    On April 25 2008, I caused a true copy of the within **STIPULATION OF PARTIAL DISCONTINUANCE WITH PREJUDICE** to be served by electronic and U.S. mail upon each defendant in this action through their counsel as follows:

| Defendant(s) | Counsel |
|---|---|
| Agoglia, John D. McCarthy, Peter J. | William Fleming, Esq. Gage Spencer & Fleming, LLP 410 Park Avenue New York, NY 10022 (212) 768-4900 wfleming@gagespencer.com |
| Bennett, Phillip R. | Jeffrey T. Golenbock, Esq. Golenbock Eisman Assor Bell & Pesko LLP 437 Madison Avenue New York, NY 10022 (212) 907-7373 jgolenbock@golenbock.com |
| Breitman, Leo R. Gantcher, Nathan Harkins, David V. Jaekel, Scott L. Lee, Thomas H. O'Kelley, Ronald L. Schoen, Scott A. | Paul A. Ferrillo, Esq. Weil Gotshal & Manges LLP 767 Fifth Avenue New York, NY 10153 (212) 310-8372 Paul.ferrillo@weil.com |
| Cox, Edwin | Martin R. Bennett, Esq. Kugle, Skelton & Bennett 130 E. Corsicana, Ste. 302 Athens, TX 75751 (903) 675-5151 mbennett@ksbpc.com |

| Defendant(s) | Counsel |
|---|---|
| Dhillon, Sukhmeet<br>Lipoff, Eric | Neil A. Goteiner, Esq.<br>Farella, Braun & Martel<br>235 Montgomery Street, 30th Floor<br>San Francisco, CA 94104<br>(415) 954-4485<br>ngoteiner@fbm.com |
| Dittmer, Thomas H. | Thomas C. Wolford, Esq.<br>Neal Gerber & Eisenberg, LLP<br>2 North LaSalle Street<br>Chicago, IL 60602<br>(312) 269-5675<br>Twolford@ngelaw.com |
| Grady, Stephen | Lawrence J. Kotler, Esq.<br>Duane Morris & Heckscher, LLP<br>30 South 17th Street<br>Philadelphia, PA 19103<br>(215) 979-1514<br>ljkotler@duanemorris.com |
| Grant, Tone | William A. Schreiner, Jr., Esq.<br>Zuckerman Spaeder LLP<br>1800 M Street, NW, Suite 1000<br>Washington, D.C. 20036<br>(202) 778-1858<br>wschreiner@zuckerman.com |
| Klejna, Dennis | Helen Kim, Esq.<br>Katten Muchin Rosenman, LLP<br>2029 Century Park East, Suite 2600<br>Los Angeles, CA 90067<br>(310) 788-4525<br>Helen.kim@kattenlaw.com |
| Maggio, Santo C. | Scott E. Hershman, Esq.<br>Hunton & Williams<br>200 Park Avenue, 43rd Floor<br>New York, NY 10166<br>(212) 309-1053<br>shershman@hunton.com |

| Defendant(s) | Counsel |
|---|---|
| Mutterer, Frank | Janet Costello, Esq.<br>Gibbons, P.C.<br>One Gateway Center<br>Newark, NJ 07102<br>973-596-4825<br>jcostello@gibbonslaw.com |
| Murphy, Joseph | John R. Jerome, Esq.<br>Saul Ewing, LLP<br>245 Park Avenue<br>24th Floor<br>New York, NY 10167<br>jjerome@saul.com |
| Outridge, Richard N. | Claire P. Gutekunst<br>Proskauer Rose, LLP<br>1585 Broadway<br>New York, NY 10036<br>(212) 969-3421<br>cgutekunst@proskauer.com |
| Sexton, William M.<br>Sherer, Gerald | Ivan Kline, Esq.<br>Friedman & Wittenstein, P.C.<br>600 Lexington Avenue<br>New York, NY 10022<br>(212) 750-8700<br>ikline@friedmanwittenstein.com |
| Silverman, Philip | Richard Cashman, Esq.<br>Heller Ehrman, LLP<br>Times Square Tower<br>7 Times Square<br>New York, NY 10036<br>(212) 847-8796<br>Richard.cashman@hellerehrman.com |
| Trosten, Robert C. | Barbara Moses, Esq.<br>Morvillo, Abramowitz, Grand, Iason &<br>Silberberg, PC<br>565 Fifth Avenue<br>New York, NY 10017<br>(212) 880-9540<br>bmoses@magislaw.com |

3.    On April 25, 2008, I caused a true copy of the within **STIPULATION OF PARTIAL DISCONTINUANCE WITH PREJUDICE** to be served by U.S. mail upon Richard N. Outridge at 24 Pennbrook Drive, Lincoln University, Pennsylvania 19352.

JOHN H. EICKEMEYER

Sworn to before me this
25th day of April, 2008

Notary Public

FRANCINE TORMEY
Notary Public, State of New York
Registration No. 01TO6143179
Qualified In Queens County
Commission Expires April 3, 2010
Certificate on File in New York County

# EXHIBIT R

84H9GRAF1.txt

3078

```
     84H9GRAF
 1   UNITED STATES DISTRICT COURT
 1   SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
 2
 3   UNITED STATES OF AMERICA,            New York, N.Y.
 3
 4            v.                          S4 05 Cr. 1192 (NRB)
 4
 5   TONE GRANT,
 5
 6               Defendant.
 6
 7   ------------------------------x
 7
 8
 8                                        April 17, 2008
 9                                        @ a.m.
 9
10
10   Before:
11
11                   HON. NAOMI REICE BUCHWALD,
12
12                                        District Judge
13
13
14                        APPEARANCES
14
15   MICHAEL J. GARCIA
15        United States Attorney for the
16        Southern District of New York
16   BY:  NEIL BAROFSKY
17        CHRISTOPHER GARCIA
17        Assistant United States Attorneys
18
18   ZUCKERMAN SPAEDER, LLP
19        Attorneys for Defendant
19   BY:  ROGER ZUCKERMAN
20        AITAN GOELMAN
20        NORMAN EISEN
21
21
22
23
24
25
                   SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300
```

3095

```
     84H9GRAF
 1   the jury because I actually didn't have the verdict form.
 2               MR. ZUCKERMAN:  All right.
 3               THE COURT:  Josh, do you want to give this to
 4   Mr. Zuckerman.
 5               (Recess pending verdict)
 6               (In open court; jury not present)
 7               THE COURT:  The last note which is timed at 2:40,
 8   although the jurors apparently don't know what day it is
 9   because they said it was April 19.  The note reads:  "We have
10   reached our verdict."
11               So at this time call the jury back in.
                              Page 1
```

```
                           84H9GRAF1.txt
12              (Jury renders verdict; time noted:  2:52 p.m.)
13              THE COURT:  Please be seated.  We have received your
14    note that you've reached a verdict.  And we will now proceed to
15    take that verdict.  Josh.
16              THE DEPUTY CLERK:  Will the jurors please answer
17    present when your name is called.
18              (Jury roll called; all present)
19              Will the foreperson please rise.
20              Has the jury agreed upon a verdict?
21              THE FOREPERSON:  Yes.
22              THE DEPUTY CLERK:  With respect to Count 1, conspiracy
23    to commit securities fraud, wire fraud, bank fraud and/or money
24    laundering, how do you find the defendant with respect to Count
25    1?
                     SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

3096

```
      84H9GRAF
1               THE FOREPERSON:  Guilty.
2               THE DEPUTY CLERK:  Count 2, securities fraud.  How do
3     you find the defendant with respect to Count 2?
4               THE FOREPERSON:  Guilty.
5               THE DEPUTY CLERK:  Count 3, wire fraud.  How do you
6     find the defendant with respect to Count 3?
7               THE FOREPERSON:  Guilty.
8               THE DEPUTY CLERK:  Count 4, bank fraud.  How do you
9     find the defendant with respect to Count 4?
10              THE FOREPERSON:  Guilty.
11              THE DEPUTY CLERK:  Count 5, money laundering.  How do
12    you find the defendant with respect to count five?
13              THE FOREPERSON:  Guilty.
14              THE DEPUTY CLERK:  Ladies and gentlemen of the jury,
15    listen to your verdict as it stands recorded.
16              With respect to Count 1, the defendant is found
17    guilty.
18              With respect to Count 2, the defendant is found
19    guilty.
20              With respect to Count 3, the defendant is found
21    guilty.
22              With respect to Count 4, the defendant is found
23    guilty.
24              With respect to Count 5, the defendant is found
25    guilty.
                     SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

3097

```
      84H9GRAF
1               THE COURT:  Ladies and Gentlemen, is that your
2     verdict?
3               THE JURY:  Yes.
4               THE COURT:  Is there any further request to poll the
5     jury?
6               MR. ZUCKERMAN:  Yes, your Honor, please poll jury.
7               (Jury polled; each juror answered in the affirmative)
8               THE DEPUTY CLERK:  Jury polled.  Verdict unanimous.
9               THE COURT:  Counsel, other than my thanking the jury
10    for their service, do we need to keep them any further?
11              MR. ZUCKERMAN:  No, your Honor.
12              MR. BAROFSKY:  No, your Honor.
13              THE COURT:  Ladies and Gentlemen, when I was talking
14    to you yesterday and excusing the alternate jurors, I told you
15    then that I thank you for your service.  I never thank a jury
16    for its particular verdict.  That is always your decision.  And
                                Page 2
```

84H9GRAF1.txt
```
17    I think -- I explained fairly clearly yesterday why it is that
18    we thank you and it's for your service and taking the time out
19    of your lives and in your case for being such a really terrific
20    jury.  We never had to wait for you in the morning, and I know
21    some of you came from quite a distance.  And you were
22    attentive.  And you worked hard.  And we very much appreciate
23    your service.  And I thank you again.  And you're excused.
24    Okay.  Thank you very much.
25                (Jury discharged)
```
                     SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

# EXHIBIT R

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

In re                                              :
                                                   :       **Chapter 11**
**REFCO, INC., et al.,**                           :
                                                   :       **Case No. 05-60006 (RDD)**
                                                   :
                    Debtors.                       :       **(Jointly Administered)**
------------------------------------------------------------------x
                                                   :
**AXIS REINSURANCE COMPANY,**                      :
                                                   :
                    Plaintiff,                     :
                                                   :
                    v.                             :       **Adv. Proc. No. 07-01712 (RDD)**
                                                   :
                                                   :
**PHILLIP R. BENNETT, et al.,**                    :
                                                   :       [caption continued on next page]
                    Defendants.                    :
------------------------------------------------------------------x

<u>**ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT**</u>

```
------------------------------------------------------x
                                                      :
TONE N. GRANT, et al.,                                :
                                                      :
               Plaintiffs,                            :
                                                      :
        v.                                            :    Adv. Proc. No. 07-2005 (RDD)
                                                      :
AXIS REINSURANCE COMPANY,                             :
                                                      :
               Defendant.                             :
------------------------------------------------------x
                                                      :
LEO R. BREITMAN, et al.,                              :
                                                      :
               Plaintiffs,                            :
                                                      :
        v.                                            :    Adv. Proc. No. 07-2032 (RDD)
                                                      :
AXIS REINSURANCE COMPANY,                             :
                                                      :
               Defendant.                             :
------------------------------------------------------x
```

Upon the motions (the "Motions"), dated September 25, 2007, of Tone N. Grant, Robert C. Trosten, Phillip R. Bennett, Dennis Klejna, William M. Sexton, Gerald Sherer, Philip Silverman, Joseph Murphy, Leo R. Breitman, Nathan Gantcher, David V. Harkins, Scott L. Jaeckel, Thomas H. Lee, Ronald L. O'Kelley, and Scott A. Schoen (the "Moving Insureds"), for entry of an order, pursuant to Fed. R. Civ. P. 56, applicable to this proceeding pursuant to Fed. R. Bankr. P. 7056, granting summary judgment against Axis Reinsurance Company ("Axis"), all as more fully set forth in the Motions; and the Court having jurisdiction to consider the Motions and the relief requested therein pursuant to 28 U.S.C. §§ 157, 1334, and 2201; and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motions having been provided; and the Court having reviewed the Motions and the objections and other pleadings related thereto; and upon the record of the October 12, 2007

2

hearing thereon; and after due deliberation and sufficient cause appearing therefor, the Court having found for the reasons stated in Exhibit A hereto, which amends and supersedes the Court's bench ruling appearing in the October 12, 2007 hearing transcript, that no genuine issue of material fact exists and that the Moving Insureds are entitled to judgment as a matter of law, it is hereby

ORDERED that the Motions are granted in all respects; and it is further

ORDERED that under the terms of the Axis Policy Axis shall advance, subject to a complete reservation of rights, privileges, and defenses of the parties under the Axis Policy,[1] Defense Costs incurred by the Moving Insureds in defense of the various matters asserted against them related to the demise of Refco, Inc. (the "Claim"), unless and until: (1) there is a final determination that (a) the Claim is not covered by the Axis Policy, or (b) such Defense Costs are not covered under the Axis Policy; or (2) the Limit of Liability of the Axis Policy has been exhausted; and it is further

ORDERED that Axis shall notify counsel to the Plan Administrators of the Modified Joint Chapter 11 Plan (the "Refco Plan") of Refco Inc. and Certain of Its Direct and Indirect Subsidiaries (the "Plan Administrators") when the advancement of Defense Costs hereunder exceeds $2 million in the aggregate, and in increments of $100,000 thereafter; provided, that if individual statements for Defense Costs exceed $100,000, Axis need only notify the Plan Administrators of payment of such bills, without breaking such advances into $100,000 increments; and it is further

ORDERED that entry of this Order shall be without prejudice to the right of the Plan Administrators or any party in interest to seek the re-imposition of the injunction provided

---

[1] Capitalized terms used but not defined herein having the meanings ascribed to such terms in the Motions and the insurance policies referred to therein.

3

for in the Refco Plan, on a prospective basis with respect to any advances of Defense Costs not yet made, for cause shown on appropriate notice to the Insureds and Axis; and it is further

ORDERED that nothing in this Order shall modify this Court's Order confirming the Refco Plan, including paragraph 34(b) thereof, or constitute a determination that the automatic stay under 11 U.S.C. § 362(a) applies to the actions described in the third decretal paragraph hereof; and it is further

ORDERED that Axis' (a) motion seeking a declaratory judgment with regard to the Moving Insureds' obligations under the Axis policy to refund advanced Defense Costs and (b) request for a determination of the priority and proper allocation of Defense Costs or other Losses under the Axis Policy and denied without prejudice to the rights of all parties to and beneficiaries of the Axis Policy regarding such issue; and it is further

ORDERED that the requirement pursuant to Local Rule 9013-1(b) that the Moving Insureds file a memorandum of law in support of the Motion is hereby waived, and it is further

ORDERED that this Order shall be deemed to constitute a separate order on each of the Motions.


Dated: October 19, 2007
          New York, New York


                              /s/Robert D. Drain
                              UNITED STATES BANKRUPTCY JUDGE

4

1    UNITED STATES BANKRUPTCY COURT
2    SOUTHERN DISTRICT OF NEW YORK
3
4
5
6                    **EXHIBIT A**
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

2

1

2          THE COURT:  All right.  I have before me in this

3   adversary proceeding motions for summary judgment in respect of

4   the claim that Axis Reinsurance Company is obligated to advance

5   defense costs to the insureds under its excess liability policy

6   on behalf of directors and officers of Refco, Inc.

7          The movants, all former directors or officers of

8   Refco, are Messrs. Klejna, Sexton, Sherer and Silverman,

9   Murphy, Breitman, Gantcher, Harkins, Jaeckel, Lee, O'Kelley and

10  Shoene and Grant, Trosten and Bennett.  I believe that includes

11  all the moving insureds.

12          Federal Rule of Civil Procedure 56(c), which is made

13  applicable in adversary proceedings in bankruptcy cases

14  pursuant to Bankruptcy Rule 7056, controls the standard in

15  respect of these motions for summary judgment.  Rule 56(c)

16  provides that summary judgment shall be granted if the

17  pleadings, depositions, answers to interrogatories and

18  omissions on file together with the affidavits, if any, show

19  that there is no genuine issue as to any material fact and that

20  the moving party is entitled to judgment as a matter of law.

21  Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).

22          In deciding a motion for summary judgment, the Court

23  must determine if there are any material factual issues to be

24  tried while at the same time, since the nonmoving party would

25  be precluded from a trial if the relief were granted, the Court

should resolve ambiguities and draw reasonable inferences in favor of the party opposing the motion. Matsushita v. Zenith Radio Corporation, 475 U.S. 574, 587 (1986); Knight v. U.S. Fire Insurance Company, 804 F.2d 911 (2d Cir. 1986).

The burden ultimately rests on the moving party to establish the absence of a genuine issue as to any material fact, Celotex, 477 U.S. at 322-23. The nonmoving party may oppose a summary judgment motion only by making a showing that there's a genuine issue as to a material fact in support of a verdict for that party, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). That is, the mere existence of a scintilla of evidence in support of its position will be insufficient. There must be evidence on which a jury could reasonably find for the nonmoving party. Id.

Thus, the nonmoving party may not defeat a summary judgment motion by relying on self-serving or conclusory statements. There must be something more than some metaphysical doubt as to a material fact. There needs to be specific evidence of a material fact at issue, although of course, once that evidence is shown, the Court moves on to the trial stage; that is, the evidence need not be probative at the summary judgment stage. See generally, again, Matsushita v. Zenith, 475 U.S. at 586.

In this case, the question before the Court is whether there's a genuine issue of material fact as to whether

4

1   Axis' unilateral decision to deny payment of defense costs to

2   the plaintiff insureds breaches the Axis policy.  In

3   determining that issue on summary judgment, the parties have

4   directed me primarily to the terms of the policy and, in

5   particular, the terms of the provision governing the

6   advancement of defense costs, paragraph (d)(2), as well as

7   various alleged coverage exclusions in the policy and other

8   claimed defenses to payment.  They have submitted their

9   statements of undisputed material facts, and in Axis's case a

10  response in certain instances controverting the plaintiffs'

11  statements.

12        In reviewing that record, it is clear to me that this

13  is a dispute upon which the Court must focus primarily on the

14  language of the relevant provisions of the insurance policy.

15  Accordingly, this type of dispute, involving as it does the

16  scope of insurance coverage for defense costs, is a

17  particularly appropriate vehicle, as noted by numerous courts,

18  for summary judgment. See <u>United Capital Corporation v.</u>

19  <u>Travelers Indemnity Company of Illinois</u>, 237 F. Supp. 2d 270,

20  274 (S.D.N.Y. 2002).  And that is because, generally, insurance

21  policy disputes hinge, as this one does, on the terms of the

22  contract, and contract determination often lends itself to

23  summary judgment analysis.

24        I previously determined in this proceeding that the

25  dispute -- and in particular the interpretation of the contract

5

1   at issue -- is governed by New York law, having applied a New

2   York choice of law analysis and determined, as I set forth on

3   the record at the hearing on August 30, 2007, that New York

4   choice of law principles, given the locus of the dispute and

5   the domicile of the parties, would lead to the application of

6   New York law.

7         That transcript is attached to the parties'

8   submissions, to both Ms. Kim's declaration as well as

9   Ms. Gilbride's declaration in support of Axis's cross motion at

10  Exhibit B.

11        Under New York law, a written contract is to be

12  interpreted so as to give effect to the intention of the

13  parties as expressed in the unequivocal language they've

14  employed, Kruden v. Bank of New York, 957 F.2d 961, 976 (2d

15  Cir. 1992).  Under New York law, if a contract is unambiguous

16  on its face its proper construction is a question of law.  The

17  Court should not look beyond its confines to extrinsic evidence

18  if its relevant provisions are clear and unambiguous.  See

19  generally Metropolitan Life Insurance Company v. RJR Nabisco,

20  Inc., 906 F.2d 884, 889 (2d Cir. 1990); W.W.W. Associates, Inc.

21  v. Giancontieri, 77 NY 2d 157, 162 (1990); and Vermont Teddy

22  Bear Company, Inc. v. 538 Madison Realty Company, 1 NY 3d 470

23  (2004).

24        Giving the terms of the contract their plain meaning,

25  a court should find contractual provisions ambiguous only if

6

1  they are reasonably susceptible to more than one interpretation
2  by reference to the contract alone. <u>Krumme v. Westpoint</u>
3  <u>Stevens, Inc.</u>, 238 F.3d 133, 139 (2d Cir. 2000).  Contract
4  language is unambiguous if it has a definite and precise
5  meaning unattended by danger of misconception in the purport of
6  the contract itself and concerning which there's no reasonable
7  basis for a difference of opinion. <u>Metropolitan Life Insurance</u>
8  <u>v. RJR Nabisco</u>, 986 F.2d at 889.  Language whose meaning is
9  otherwise plain is not ambiguous merely because the parties
10 urge different interpretations in the litigation.  <u>Id.</u>

11        Those contract interpretation rules are generally
12 followed in New York in respect of insurance policies, but, in
13 addition to those general principles, there are specific
14 contract interpretation rules that apply to insurance policies
15 that are relevant to this dispute, or potentially relevant.

16        Thus, with regard to the interpretation of an
17 insurance contract, the courts view the plain language of the
18 contract as the best and, if plain, the only, measure of the
19 parties intentions; and the initial interpretation of the
20 contract is a matter of law for the Court to decide, as set
21 forth in, among other decisions cited by the parties, <u>In Re:</u>
22 <u>WorldCom, Inc. Securities Litigation</u>, 354 F.Supp. 2d 455, 463-
23 464 (S.D.N.Y. 2005).

24        However, in that opinion District Judge Cote goes on
25 to state additional, well-established rules with regard to  the

7

1  interpretation of insurance contracts under the law of New

2  York.  First, to the extent an ambiguity exists in respect of

3  an insurance contract governed by New York law that is

4  unresolved by extrinsic evidence, such ambiguity must be read

5  against the insurer. WorldCom, 354 F.Supp.2d at 464. See also

6  McCostis v. Home Insurance Company of Indiana, 31 F.3d 910, 113

7  (2d Cir. 1994). Second, Judge Cote notes that the rule that

8  insurance policies are to be construed in favor of the insured

9  is most rigorously applied in construing the meaning of

10  exclusions incorporated into a policy of insurance or

11  provisions seeking to narrow the insurer's liability. WorldCom,

12  354 F.Supp.2d at 464. And, finally, under New York law where a

13  contract of insurance includes the duty to defend or to pay for

14  the defense of the insured (and I note that Judge Cote makes no

15  distinction between the two concepts, *i.e.*, the duty to defend

16  and the duty to pay for the defense of the insured), that duty

17  is "a heavy one" and, indeed, has been found for many years to

18  apply even if the policy of indemnity does not specifically

19  provide for advancement. Id. "In sum" -- again I'm quoting

20  from the WorldCom opinion at page 464 -- "the duty to pay

21  defense costs is construed liberally and any doubts about

22  coverage are resolved in the insured's favor."

23       My review of Axis's statement of uncontroverted facts

24  and its response to the statements of undisputed material facts

25  submitted in various of the movants' Rule 7056(1) statements

26  confirms that most of the issues in this case are

8

1  uncontroverted, including, obviously, the terms of the
2  underlying policy, which incorporates, with the specific
3  exceptions stated in the Axis policy, the primary policy issued
4  by the primary insurer.  In addition, Axis does not dispute
5  that claims in the underlying litigation against the insureds
6  constitute "claims" as a defined term in the primary policy for
7  "wrongful acts," as also defined in the primary policy, or that
8  the movants here are insured or are "insureds," and that they
9  have incurred and will continue to incur defense costs under or
10 in response to the underlying litigations.

11      There's also no dispute, and of course the policy
12 speaks for itself, that the term "loss" in the primary policy,
13 as incorporated with specific exceptions by the Axis policy,
14 includes defense costs that an insured is legally obligated to
15 pay as a result of any claim.  It's also not disputed that the
16 insureds have given Axis notice on a timely basis of their
17 claims under the policy.

18      What is disputed by Axis is, first, whether
19 exclusions unique to its policy, which I primarily take to be
20 the prior knowledge exclusion set forth in endorsement number
21 six to the policy, but also other potential exclusions and
22 defenses, apply here to prevent the defense costs from being
23 covered claims under the Axis policy.

24      In addition, the parties also dispute whether, under
25 the language of the primary policy -- specifically paragraph
26 (d)(2) -- Axis is obligated to pay defense costs on an as-

9

1  incurred basis in light of Axis' contention that the exclusions

2  that it has noted apply here to preclude coverage.  The issue

3  was first raised by Axis apparently in a letter, attached as

4  Exhibit 9 to the Kim declaration, disclaiming coverage on the

5  basis of various exclusions as well as an alleged breach of

6  warranty.

7        Notably, Axis has not offered any material fact as to

8  any extrinsic aid to interpretation of paragraph (d)(2) in the

9  primary policy or as to any other provision, for that matter,

10 of the applicable insurance policies.

11       I conclude based on the record before me for purposes

12 of these motions that, in fact, there is a hotly contested

13 dispute as to whether the policy exclusions alleged by Axis

14 would apply here to render the insureds' losses, including

15 defense costs, to not be covered by the policy.  Specifically,

16 each of the movants, each of the insureds, has in this

17 adversary proceeding taken the position that it is not

18 precluded from coverage by the knowledge exclusion in the Axis

19 policy or the prior acts exclusion or breach of warranty

20 defense, and, furthermore, certain of the insureds (as set

21 forth in Exhibits 10, 12 and 13 of the Kim declaration at

22 paragraphs 43 through 45) have in addition taken the position

23 that the knowledge exclusion itself is an improper endorsement

24 to the policy.

25       I previously ruled, as set forth in the transcript of

26 the August 30, 2007 hearing, that the issue of whether, in

1 | fact, the insureds' losses are covered under the Axis policy in
2 | light of the prior knowledge exclusion -- as well as the other
3 | exclusions and defenses raised by Axis -- should not be decided
4 | at this time in light of the substantial overlap of those
5 | issues, *i.e.*, whether in fact there was prior knowledge of a
6 | claim and/or loss, with the issues pending before the District
7 | Courts in the multi-district securities litigation as well as
8 | in respect of certain of the insureds' pending criminal
9 | litigation in the Southern District.  I won't repeat that
10 | ruling now except to note that in my view it was dictated by
11 | clear precedent which, as was brought out at the hearing as set
12 | forth in the transcript, essentially subordinates the interest
13 | of the insurer to have a prompt determination of such a
14 | coverage dispute behind the interest of the insured to pursue
15 | its overlapping defense in the primary litigation that
16 | allegedly gives rise to the insured claim or loss.

17 | That context is important to keep in mind in
18 | connection with the present motions, because it sets the stage
19 | for the fairly narrow issue before me -- whether Axis is
20 | contractually bound to advance defense costs before the final
21 | determination of a dispute over whether a claim therefor is
22 | covered under the Axis policy.

23 | Again, that issue ultimately depends upon the Court's
24 | interpretation of the following provision, paragraph (d)(2) of
25 | the primary policy, which is incorporated by reference into the
26 | Axis policy.  Section (d)(2) states: "The insurer will pay

1   covered defense costs on an as-incurred basis.  If it is
2   finally determined that any defense costs paid by the insurer
3   are not covered under this policy, the insured has agreed to
4   repay such noncovered defense costs to the insurer."

5          Axis contends that it is permitted by the foregoing
6   language to determine unilaterally not to pay defense costs on
7   an as-incurred basis if it believes that such defense costs are
8   not covered under its policy, that is, that they would be
9   subject to the exclusion or the exclusions under the policy or
10  another valid defense.  The movants contend, to the contrary,
11  that Axis is obligated under the paragraph that I just read --
12  particularly when construed in light of relevant case law and
13  the presumptions that I noted earlier that apply to exclusions
14  and insurance policies generally -- to advance their defense
15  costs until there is a final determination by an objective fact
16  finder that the defense costs are not covered. They take this
17  position, again, because they contend, and I conclude that the
18  record supports this, that there is a legitimate dispute as to
19  whether defense costs are covered, or not, under the terms of
20  the policy.

21         Both sides have asserted principles or maxims of
22  contract interpretation to assist the Court in determining
23  whether the language that I just quoted is ambiguous or not.
24  Not surprisingly, they both contend that the language is not
25  ambiguous, although, perhaps equally not surprisingly they both
26  contend that it means the opposite of what the other says it

12

1  means.

2          The interpretive principle they rely on primarily is

3  that a court should read a contract as a whole, giving meaning

4  to all of its parts, and should avoid an interpretation that

5  would render other provisions useless and meaningless; and I

6  have looked, as they have urged, at the other provisions of the

7  contract, including paragraph (d)(3) as well as the interplay

8  of the two sentences in paragraph (d)(2), in light of that

9  maxim.

10          Frankly, after having done so, I do not believe,

11  however, that the contract interpretation maxim that I just

12  recited is of much help, in that one could at least conceive of

13  uses for all of the language in paragraph (d)(2) to support

14  both sides' position.  I believe that paragraph (d)(3),

15  moreover, is really a provision going to a separate proposition

16  and consistent with, again, the principles pursuant to which

17  courts in New York interpret insurance policies, and,

18  particularly, policy exclusions bearing on the advancement of

19  defense costs, (d)(3) should be read narrowly, stand on its

20  own, and not be used to extend over, or into, an interpretation

21  of (d)(2).  See Associated Electronic & Gas Insurance Services,

22  Ltd. v. Rigas, 382 F.Supp.2d 685, 696-700 (E.D. Pa. 2004).

23          However, there is a more meaningful point to note

24  about the rest of the policy, which is that nowhere does it

25  state that, or even imply, except in (d)(3) in the specific and

26  limited instance covered thereby, that the insurer can

13

1  unilaterally or in the exercise of its reasonable judgment or

2  in any other way withhold defense costs absent a court

3  determination in the event of a dispute as to whether defense

4  costs are covered.  In light of the case law that I will go

5  into in a minute, which emphasizes the logic and policy behind

6  requiring the advancement of disputed defense costs, I conclude

7  that the absence of such language, in addition to the language

8  of (d)(2), which, again, says that the insurer will pay covered

9  costs and in the next sentence provides for a refund mechanism

10  if defense costs are finally determined to have not been

11  covered, that the reasonable and ordinary course colloquial

12  interpretation of paragraph (d)(2) is that, absent a final

13  determination by an objective fact finder, the insurer is

14  obligated to pay defense costs that the insured reasonably

15  contends are covered, notwithstanding the insurer's view that

16  those costs are excluded or not covered under the policy. In

17  other words, unless the insured's position on coverage is

18  clearly, facially wrong, the agreement contemplates that

19  defense costs will be advanced subject to later refund if the

20  coverage dispute ultimately is determined in the insurer's

21  favor.

22        As I said, I believe this interpretation is clear in

23  the context of the entire agreement, particularly because of

24  the refund mechanism in (d)(2) and the absence in the agreement

25  of any provision conferring on the insurer the unilateral

26  ability to make such a determination, but I note, too, that to

14

1   the extent that an ambiguity exists the insurer has offered up
2   no extrinsic evidence to support its interpretation of
3   paragraph (d)(2).  Consequently, I believe that under the law
4   of New York, in the absence of Axis offering up such evidence,
5   such an ambiguity would have to be interpreted against the
6   insurer.  Again, see McCostis v. Home Insurance Company in
7   Indiana, 31 F.3d 110, 113 (2d Cir. 1994), as well as the
8   discussion in Multi-Foods Corporation v. Commercial Union
9   Insurance Company,309 F.3d 76, 78 n.7 (2d Cir. 2002).

10          As I alluded to a moment ago, I'm not writing on a
11  clean slate with regard to this issue.  As far as I can tell,
12  every court that has considered the issue (and again I believe
13  it's a narrow issue as to whether, during the pendency of a
14  dispute as to coverage under a policy, an insurer may
15  unilaterally withhold the payment of defense costs) has
16  concluded that, to the contrary, the insurer is obligated to
17  advance the defense costs -- with the caveat that if it is
18  clear from the policy itself that all claims made against the
19  insured would not be covered, for example on a motion to
20  dismiss or summary judgment basis, the defense costs would need
21  to be advanced.

22          Here, as I noted, the applicability of the prior
23  knowledge exclusion and Axis' other defenses are hotly disputed
24  and the resolution of that dispute is not clear from the face
25  of the policy and the undisputed facts and may not be decided
26  until the overlapping issues are resolved in the underlying

15

1  district court securities and criminal litigation against the

2  insureds. Consequently, I believe that the case law would

3  support my conclusion that Axis is obligated to advance the

4  defense costs pending such determination. This issue has most

5  recently been dealt with, quite thoroughly, in <u>Federal</u>

6  <u>Insurance Company v. Tyco International Limited</u>, 784 N.Y.S.2d

7  920 (N.Y.Sup. 2004), <u>aff'd</u> <u>in part</u> <u>mod.</u> <u>in part</u>, <u>Federal</u>

8  <u>Insurance Co. v. Kozlowski</u>, 792 N.Y.S.2d 397 (1st Dep't. 2005),

9  in which the court, after noting numerous cases that considered

10 the issue in other jurisdictions, found that it is "... well

11 settled that the duty of an insurer to defend its insured or

12 pay its defense costs is distinct from and broader than its

13 duty to indemnify.  The duty exists whenever a complaint

14 against the insured alleges claims that may be covered under

15 the insurer's policy.  If any portion of a complaint might

16 result in coverage, the insurer must defend or pay defense

17 expenses for all claims, both covered and noncovered.

18 Conversely, the insurer has no duty if, as a matter of law, the

19 allegations in the complaint could not give rise to any

20 obligation to indemnify, or the allegations fall within the

21 policy exclusion.  But the duty to defend or pay defense costs

22 is construed liberally and any doubts about coverage are

23 resolved in insured's favor.  Furthermore, an insurer can only

24 evoke a policy exclusion to avoid coverage if it can show that

25 the allegations in the complaint cast that pleading solely and

26 entirely within the policy exclusions."  And, as noted in the

16

1   Appellate Division opinion, "[W]hile Federal must pay defense
2   costs as they are incurred in the securities action and the
3   criminal proceeding, its ultimate liability for such costs is
4   only with respect to such liabilities as fall under the
5   coverage provided. To the extent such liabilities are excluded
6   from coverage by the personal profit exclusion, Federal is not
7   required to pay for defense costs. Since this allocation cannot
8   be made at this juncture and the duty to defend is broader than
9   the duty to indemnify, Federal must pay all defense costs as
10  incurred, subject to recoupment when Kozlowski's liabilities,
11  if any, are determined." Federal Insurance Co. v. Kozlowski,
12  792 N.Y.S.2d at 404.

13          Thus, given the doubt raised by Mr. Kozlowski, the
14  insured, in his summary judgment motion as to whether the
15  insurer had met those stringent tests, the Appellate Division
16  concluded that pending a final determination of the disputed
17  coverage issues the insurer would need to advance defense
18  costs.   (I note that the court did so notwithstanding
19  allegations by the insurer regarding the obvious merits of its
20  various alleged defenses to payment, as Axis has alleged in
21  this proceeding that at least with regard to the alleged
22  conduct of Mr. Bennett the prior knowledge exclusion "clearly"
23  applies here.)

24          The New York courts have twice since the Koslowski
25  case adopted its rationale, although in one case in dicta.   In
26  Ghose v. CNA Reinsurance Company Limited, 841 N.Y.S.2d 519 (1st

17

1  Dept. 2007), the court stated, "We note, however, that if the

2  complaint were not being dismissed on grounds of inconvenient

3  forum, the interim award of defense costs would not be

4  disturbed.  New York law requires that a judicial order is a

5  condition precedent to the cessation of payment for defense

6  costs in circumstances where a claim has already been made,"

7  citing Koslowski.

8          Similarly, in Trustees of Princeton University v.

9  National Union Fire Insurance Company of Pittsburgh, 839

10  N.Y.S.2d 437 (Sup. Ct. 2007), the court, after noting many of

11  the same rules of construction that I quoted from the Koslowski

12  and WorldCom cases, stated,  "The insurer's duty to pay defense

13  costs arises when the insured incurs the expenses.  Where

14  coverage is disputed, insurers are required to make

15  contemporaneous interim advances of defense expenses subject to

16  recoupment in the event it is ultimately determined the policy

17  does not cover the claim."

18          A similar finding, albeit in respect of slightly

19  different policy language, was reached by Judge Cote in the

20  WorldCom opinion that I cited earlier, In re WorldCom

21  Securities Litigation, 354 F.Supp.2d at 455.  Axis has

22  attempted to distinguish the WorldCom opinion on two bases,

23  neither of which succeed.  The first is that Judge Cote was

24  dealing with a defense of rescission as opposed to a specific

25  alleged exclusion in the policy.  I don't accept that

26  distinction, however, because I believe that, in either case,

1  the key point was that there was a dispute as to whether there

2  was any obligation to pay on the insurer's part.

3          The second basis is that the advancement language in

4  the policy in WorldCom did not contain the word "covered"

5  before "defense costs," and used the word "shall" as opposed

6  to "will" before the word "pay." But, for the same reason that

7  I don't believe the first distinction is meaningful, I don't

8  believe the second one is, either. In either case, the issue

9  hinged upon whether the insurer could unilaterally act to

10 withhold payment based on its interpretation of whether it was

11 obligated to pay: here, whether the claim was excluded from

12 coverage, in WorldCom, whether the policy was void ab initio.

13 I believe Judge Cote's logic in finding a duty to pay pending

14 judicial determination of the underlying dispute would apply

15 under either scenario.

16          The claimed distinction that I just discussed was

17 addressed expressly, moreover, by the District Court for the

18 Eastern District of Pennsylvania in Associated Electric and Gas

19 Insurance Services Limited v. Rigas, 382 F. Supp. 2d 685 (E.D.

20 Pa. 2004). Because of a prior Third Circuit opinion, Little v.

21 MGIC Indemnity Corporation, 836 F.2d 789 (3d Cir. 1987), the

22 court in the Rigas case had little trouble finding that the

23 insurer's rescission allegation did not give it the unilateral

24 right to withhold defense costs. The Rigas court then

25 separately considered, however, whether a unilateral right

26 existed in respect to withholding advancement of defense costs

19

1  because of alleged applicable exclusions from coverage,
2  including a prior knowledge exclusion, which, like the Axis
3  policy exclusion, did not expressly require a final
4  adjudication for the exclusion to take effect.  As here,
5  however, the court in the Rigas case noted that the prior
6  knowledge exclusion also did not contain any language to
7  suggest that it operated at the discretion of the insurer.

8              In the Rigas case, the court determined that the
9  carrier had a duty to contemporaneously pay the disputed
10 defense costs, given the policy's language in respect of
11 defense costs and the generally recognized obligation under an
12 indemnity policy to pay whenever the insured is legally
13 obligated to pay such costs.  As here, there was no dispute in
14 the Rigas case that the insureds owed money to the lawyers
15 defending them and that this was a legal obligation.  Thus, the
16 carriers had a duty to contemporaneously pay such defense costs
17 unless that duty was altered by some other provision in the
18 policy.

19             The Rigas court concluded that the policy's knowledge
20 exclusion and other provisions were ambiguous on this point,
21 permitting two different interpretations of whether a
22 unilateral right to withhold payment was lodged in the insurer
23 (although, here, no other policy provision gave the insurer
24 such a right.)  However, since under Pennsylvania law,
25 similarly to New York law, the policy exclusion had to be
26 construed in favor of the insureds and against the insurer, the

20

1  ambiguity would not be read to permit unilateral insurer
2  action. Rigas, 382 F.Supp.2d at 700.

3          Here, as I said, I go further and find that the
4  absence of a provision giving the insurer the unilateral right
5  to withhold defense costs, especially in light of paragraph
6  (d)(2)'s second sentence, means that (d)(2) is not ambiguous;
7  but as I said before, based on the absence of any extrinsic
8  evidence offered to clarify any alleged ambiguity, under New
9  York law the provision would in any event be construed in favor
10 of the insureds and against the insurer here, as in Rigas.

11          Two recent cases from other jurisdictions which
12 generally have the same basic insurance law contract
13 interpretation principles as New York are also worth noting.
14 First, in G-1 Holdings, Inc. v. Reliance Insurance Company,
15 2006 U.S. District Lexis 17597 (D.N.J. March 22, 2006), the
16 court concluded that although the defendants argued that
17 various exclusions operated to bar coverage, "An insurer's duty
18 to defend is determined by comparing the allegations in the
19 underlying complaint with the language of the policy at issue.
20 Here, the Court has already found that there is a potential for
21 coverage should the alleged facts be proven true... Moreover,
22 should it later be adjudicated that the policy does not apply
23 to the underlying allegations, the policy specifically provides
24 for the insurer to be reimbursed." Thus the insurer was
25 required to advance the defense costs.

26          The court in Sun-Times Media Group, Inc. v. Royal &

1  <u>Sunalliance Insurance Company of Canada</u>, 2007 WL 1881 265 (Del.

2  Super. June 20, 2007), makes a similar point:  "Furthermore,

3  the personal exclusions do not override a present contractual

4  duty to advance defense costs unless the defendants can

5  unequivocally now show that all of the obligations in the

6  underlying Illinois class action complaint fall within the

7  personal conduct exclusions....  Because the defendants have

8  failed to show at this time the applicability of the exclusions

9  to International, the Court need not decide the potential

10  applicability of the exclusions at this time."  Again, the <u>Sun-</u>

11  <u>Times</u> court noted that the policy provided, as paragraph (d)(2)

12  does here, that "Such advance payments by the insurer shall be

13  repaid to the insurer to the extent that any such insured shall

14  not be entitled under the policy ultimately to such payment."

15  And then it concluded, "Therefore, the plain language of the

16  policy guaranteeing an advancement of defense costs is not

17  precluded by any imputation of exclusions to International, as

18  well as (as explained earlier) to the outside directors."

19           In light of that case law, I find that under the

20  language of the Axis policy -- including its implicit

21  incorporation of the extensive case law regarding how such

22  policies are to be interpreted under New York law -- that

23  pending a resolution of the coverage dispute, Axis is obligated

24  to advance defense costs.  That coverage dispute is an issue

25  that the Court could and would normally decide promptly.

26  However, as I ruled on August 30, 2007, that issue cannot be

22

1  decided by me here because of the substantial overlap doctrine.
2  But that is not a reason for changing the rule that I have just
3  articulated, as is, again, I believe, supported by the Rigas
4  case, where the District Court was precluded by the stay in the
5  Adelphia bankruptcy case from deciding the coverage issue but
6  nevertheless concluded that the insurer was obligated to
7  advance the defense costs pending the resolution of the
8  coverage dispute. 382 F.Supp.2d at 700. The holding also
9  comports with the policy, discussed in WorldCom, Tyco, and
10 Rigas, of not depriving the director and officer insureds of
11 the means to contest their underlying liability.

12       So, for those reasons, I will grant the insureds'
13 motions for summary judgment.

14       Let me turn then to the cross motion for summary
15 judgment by Axis, which seeks a declaratory judgment that if,
16 in fact, it is subsequently determined by a court that the
17 defense costs are not covered, i.e., that an exclusion applies,
18 or for some other reason the defense costs are not covered by
19 the policy, the insureds who have been paid their defense costs
20 by Axis are obligated to reimburse Axis for those costs.

21       Obviously, the contract provision that I quoted
22 earlier, paragraph (d)(2), says what it says. And the fact
23 that it provides for repayment is an element of my reasoning,
24 as were similar refund or recoupment provisions in numerous
25 other cases that I have cited. However, I do not believe that
26 Axis has set forth the basis under the Declaratory Judgment Act

23

1  for a ruling on its motion, given that I believe there is no
2  justiciable controversy before me, as no insured has refused to
3  return any funds (obviously because there's yet to be any
4  determination that such payments were not covered or such
5  losses were not covered under the policy).

6       Nor, to my knowledge, has any insured disclaimed that
7  the refund of defense costs would be the appropriate result if
8  such a determination of non-coverage eventually is made, and
9  Axis has not pointed out any such disclaimer to me or cited
10  another basis to sustain an argument that, notwithstanding the
11  apparent absence of a ripe controversy it has a legitimate
12  concern that such contractual provision would be breached and,
13  therefore, it would be entitled to a determination now.  So,
14  consequently, I will deny that motion, without prejudice, on
15  the basis that, again, it does not set forth the basis under
16  the Declaratory Judgment Act for relief, given the absence of a
17  case or controversy and a lack of ripeness for declaratory
18  judgment purposes.

19       There was no formal motion for an allocation of the
20  priority of the payments to be made by Axis.  I have, I
21  believe, dealt with this issue before in my prior rulings in
22  this matter.  I do not believe that Axis' request on this
23  issue, made at the end of its initial memorandum of law in
24  opposition to the summary judgment motions, is properly before
25  me in the form of a motion or a properly raised controversy.
26  It may ultimately be one, but in the first instance I believe

24

1   that there has to be some actual dispute as to the allocation
2   or priority of payments under the policies and that in the
3   absence of such a dispute the terms of the contract will guide
4   the parties' conduct.

5          So the order granting the summary judgment motions
6   should provide that the Court has not determined any issue with
7   respect to the priority of the advancement of defense costs and
8   that all parties' rights and indeed all nonparties' rights in
9   respect of priority allocations under the Axis policy are fully
10  preserved and reserved.

11         As I normally do when I give a lengthy bench ruling,
12  particularly when I quote cases, I'll go over the transcript of
13  my ruling and reserve the right to amend it, both to correct it
14  and to add something if I believe it should be properly added,
15  but my ruling won't change, which is that the summary judgment
16  motions are granted.

17         So I would ask each of the -- well, not each of you,
18  but the respective counsel for the groups of movants and
19  Mr. Murphy to submit orders for their respective clients
20  consistent with my ruling.

21

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

In re                                                  :
                                                       :   **Chapter 11**
REFCO, INC., et al.,                                   :
                                                       :   **Case No. 05-60006 (RDD)**
                                                       :
                          Debtors.                     :   **(Jointly Administered)**
-----------------------------------------------------------------x
                                                       :
AXIS REINSURANCE COMPANY,                              :
                                                       :
                          Plaintiff,                   :
                                                       :
                   v.                                  :   **Adv. Proc. No. 07-01712 (RDD)**
                                                       :
                                                       :
PHILLIP R. BENNETT, et al.,                            :
                                                       :   [caption continued on next page]
                          Defendants.                  :
-----------------------------------------------------------------x

**<u>ERRATA ORDER</u>**

```
------------------------------------------------------------x
                                                            :
TONE N. GRANT, et al.,                                      :
                                                            :
             Plaintiffs,                                    :
                                                            :
      v.                                                    :   Adv. Proc. No.  07-2005 (RDD)
                                                            :
AXIS REINSURANCE COMPANY,                                   :
                                                            :
             Defendant.                                     :
------------------------------------------------------------x
                                                            :
LEO R. BREITMAN, et al.,                                    :
                                                            :
             Plaintiffs,                                    :
                                                            :
      v.                                                    :   Adv. Proc. No.  07-2032 (RDD)
                                                            :
AXIS REINSURANCE COMPANY,                                   :
                                                            :
             Defendant.                                     :
------------------------------------------------------------x
```

**ORDERED**, that the Order Granting Motions for Summary Judgment, dated October 19, 2007,

Docket Number 125, be amended as follows:

1.  Page 4, second full paragraph, second line from the bottom, reading, "…Losses under

    the Axis Policy and denied without prejudice…" should be corrected to read as follows:

    "…Losses under the Axis Policy are denied without prejudice…"

Dated: New York, New York
       October 22, 2007

                                    /s/Robert D. Drain
                                    HON. ROBERT D. DRAIN
                                    UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT S

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| REFCO, INC., *et al.*, | : | Case No. 05-60006 (RDD) |
| Debtors. | : | (Jointly Administered) |

--------------------------------------------------------------x

| | | |
|---|---|---|
| AXIS REINSURANCE COMPANY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Adv. Proc. No. 07-01712 (RDD) |
| | : | |
| PHILLIP R. BENNETT, LEO R. BREITMAN, | : | |
| NATHAN GANTCHER, TONE GRANT, | : | |
| DAVID V. HARKINS, SCOTT L. JAECKEL, | : | |
| DENNIS A. KLEJNA, THOMAS H. LEE, | : | |
| SANTO C. MAGGIO, JOSEPH MURPHY, | : | |
| RONALD L. O'KELLEY, SCOTT A. SCHOEN, | : | |
| PERRY ROTKOWITZ, GERALD SHERER, | : | |
| WILLIAM M. SEXTON, PHILIP SILVERMAN, | : | |
| ROBERT C. TROSTEN, AND DOES 1 TO 10, | : | |
| | : | |
| Defendants. | : | |

--------------------------------------------------------------x

### ORDER DISMISSING THE COMPLAINT
### OF AXIS REINSURANCE COMPANY

Upon the motion (the "Motion"), dated July 12, 2007, of Defendants Leo R.

Breitman, Nathan Gantcher, David V. Harkins, Scott L. Jaeckel, Thomas H. Lee, Ronald L.

O'Kelley, and Scott A. Schoen (the "Director Defendants"), for an order dismissing the

Complaint, dated May 23, 2007, of Axis Reinsurance Company ("Axis") pursuant to Rule

7012(b) of the Federal Rules of Bankruptcy Procedure, as more fully set forth in the Motion; and

the Court having jurisdiction to consider and determine the Motion pursuant to 28 U.S.C. §§ 157,

1334 and 2201; and due notice of the Motion having been provided; and upon all pleadings filed

with this Court, and the hearing held before the Court on August 30, 2007 (the "Hearing"); and it

appearing that the relief requested is appropriate; and all objections to the relief requested having

been overruled by the Court; and after due deliberation and consideration, and for good and

sufficient cause appearing therefor for the reasons stated by the Court on the record of the

Hearing:

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND
CONCLUSIONS OF LAW:

        A.     Applying New York choice of law rules, the Court concludes that New

York law applies to the Axis directors and officers liability insurance policy referenced in the

Complaint, the interpretation and application of the policy, and the dispute raised by the

Complaint.

        B.     Under New York law, a declaratory judgment action commenced by an

insurer seeking a determination of coverage under an insurance contract should be dismissed

without prejudice or stayed where there is a substantial overlap of the underlying factual issues

in such coverage determination action and factual issues that will be adjudicated in a pending

underlying tort action or criminal proceeding.

        C.     There is substantial overlap of the factual issues raised in this coverage

determination action commenced by Axis and the underlying tort and criminal proceedings

referenced in the Complaint pending before the United States District Court for the Southern

District of New York.

NOW, THEREFORE, It Is Ordered that:

        1.     The Motion is granted in all respects.

        2.     The Axis Complaint filed in the above-captioned adversary proceeding is

dismissed, without prejudice.

Dated:    August 31, 2007
          New York, New York

                                        /s/ Robert D. Drain
                                     United States Bankruptcy Judge