HELEN B. KIM (HK-8757)
KATTEN MUCHIN ROSENMAN LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067
Telephone:      310-788-4525
Facsimile:      310-712-8226

-and-

PHILIP A. NEMECEK (PN-3319)
KATTEN MUCHIN ROSENMAN LLP
575 Madison Avenue
New York, NY 10022-2585
Telephone:      212-940-8834
Facsimile:      212-940-8776

*Attorneys for Defendant and
Counterclaim Plaintiff Dennis A. Klejna*

STUART I. FRIEDMAN (SF-9186)
IVAN KLINE (IK-9591)
FRIEDMAN & WITTENSTEIN
A Professional Corporation
600 Lexington Avenue
New York, NY 10022
Telephone: (212) 750-8700
Facsimile: (212) 223-8391

*Attorneys for Defendants and
Counterclaim Plaintiffs William M.
Sexton and Gerald M. Sherer*

RICHARD CASHMAN (RC-4769)
HELLER EHRMAN LLP
Times Square Tower
7 Times Square
New York, NY 10036-6524
Telephone: (212) 832-8300
Facsimile: (212) 763-7600

*Attorneys for Defendant and
Counterclaim Plaintiff Philip
Silverman*

GREG A. DANILOW (GD-1621)
MICHAEL F. WALSH (MW-8000)
WEIL GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone: (212)-310-8000]
Facsimile: (212) 310-8007

*Attorneys for Defendants Leo R.
Breitman, Nathan Gantcher, David V.
Harkins, Scott L. Jaeckel, Thomas H.
Lee, Ronald L. O'Kelley and Scott A.
Schoen*

JOHN J. JEROME (JJ-2413)
SAUL EWING LLP
245 Park Avenue, 24th Floor
New York, New York 10167
Telephone: (212) 672-1996
Facsimile: (212) 672-1920

*Attorneys for Defendant and
Counterclaim Plaintiff Joseph
Murphy*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

AXIS REINSURANCE COMPANY,                      :

                                               :

                           Plaintiff,          :

          v.                                   :

                                               :

PHILLIP R. BENNETT, et al.,                    :

                                               :

                           Defendants.         :

-------------------------------------------------------------x

AXIS REINSURANCE COMPANY,                      :

                                               :

                           Plaintiff,          :

          v.                                   :

                                               :

PHILLIP R. BENNETT, et al.,                    :

                                               :

                           Defendants.         :

-------------------------------------------------------------x

Adv. Proc. No. 07-01712 RDD
(Reference Withdrawn:
Case No. 08-cv-03242 (GEL))

*Electronically Filed*

Case No. 07-cv-07924 (GEL)

*Electronically Filed*

## INSUREDS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTIONS FOR SUMMARY JUDGMENT DISMISSING COMPLAINT OF AXIS REINSURANCE COMPANY AND FOR ENTRY OF DECLARATORY JUDGMENT OF COVERAGE FOR INSUREDS UNDER THE 2005-2006 AXIS POLICY

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 2

I.   THERE ARE NO GENUINE ISSUES OF MATERIAL FACT AND THE
     MOVING INSUREDS AND COUNTERCLAIM PLAINTIFFS ARE ENTITLED
     TO JUDGMENT IN THEIR FAVOR AS A MATTER OF LAW ..................................... 2

     A.   COUNT I OF THE AXIS COMPLAINT, BASED ON THE SO-CALLED
          WARRANTY LETTER, SHOULD BE DISMISSED .............................................. 3

     B.   COUNT II OF THE AXIS COMPLAINT, BASED ON REFCO'S
          INCOMPLETE APPLICATION TO U.S. SPECIALTY, SHOULD BE
          DISMISSED ...................................................................................................... 6

     C.   COUNT III OF THE AXIS COMPLAINT, BASED ON THE SO-CALLED
          KNOWLEDGE EXCLUSION, SHOULD BE DISMISSED .................................... 9

          1.   Axis Has Not Demonstrated that the Knowledge Exclusion Was
               Properly Part of the Axis 2005-2006 Policy ................................................ 9

          2.   The Severability Provisions in the Primary Policy Bar Axis'
               Attempt to Impute Mr. Bennett's Knowledge to the Moving
               Insureds ..................................................................................................... 13

     D.   COUNT IV OF THE AXIS COMPLAINT, BASED ON A 1994 CFTC
          ENFORCEMENT PROCEEDING, SHOULD BE DISMISSED ............................ 15

II.  AXIS HAS FAILED TO MEET ITS BURDEN UNDER FED. R. CIV. P. 56(f)
     TO DEMONSTRATE THE NEED FOR DISCOVERY ................................................. 17

III. AXIS DOES NOT OPPOSE THE MOVING INSUREDS' MOTION TO LIFT
     THE STAY; AND IT HAS FAILED TO DEMONSTRATE WHY SUMMARY
     JUDGMENT SHOULD NOT BE ENTERED IN FAVOR OF THE
     COUNTERCLAIM PLAINTIFFS ............................................................................ 18

CONCLUSION ............................................................................................................. 19

i

## TABLE OF AUTHORITIES

FEDERAL CASES

*American Intern. Specialty Lines Ins. Co. v. Towers Financial Corp.*,
    1997 WL 906427 (S.D.N.Y. 1997)......................................................................14

*Banca Commerciale Italiana v. Northern Trust Int'l Banking Corp.*,
    160 F.3d 90 (2d Cir. 1998) ...............................................................................2

*Berger v. Manhattan Life Ins. Co.*,
    805 F. Supp. 1097 (S.D.N.Y. 1992) ....................................................................7

*Chicago Ins. Co. v. Kreitzer & Vogelman*,
    265 F.Supp.2d 335 (S.D.N.Y. 2003) ...................................................................7

*FDIC v. Gordinier*,
    783 F. Supp. 1181 (D. Minn.), *rev'd on other grounds*, *FDIC v. St. Paul Fire &*
    *Marine Ins. Co.*, 993 F.2d 155 (8th Cir. 1993) .........................................................19

*Home Ins. Co. v. Spectrum Info. Techs.*,
    930 F. Supp. 825 (E.D.N.Y. 1996) ....................................................................19

*Home Life Ins. Co. v. Myers*,
    112 F. 846 (D. Kan. 1901)................................................................................8

*In re HealthSouth Corp. Ins. Lit.*,
    308 F. Supp.2d 1253 (N.D. Ala. 2004)................................................................14

*National Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co. Group*,
    1997 WL 148231 (S.D.N.Y. Mar. 31, 1997) .........................................................10

*National Union Fire Ins. Co. of Pittsburgh, PA v. Seafirst Corp.*,
    1987 U.S. Dist. LEXIS 14284 (W.D. Wash. Mar. 25, 1987) .......................................19

*Nichols v. American Risk Management, Inc.*,
    2002 WL 31556384 (S.D.N.Y. Nov. 18, 2002).......................................................7

*Parks Real Estate Purchasing Group v. St. Paul Fire & Marine Ins. Co.*,
    472 F.3d 33 (2d Cir. 2006) ..............................................................................15

*Phoenix Mut. Life Ins. Co. v. Raddin*,
    120 U.S. 183 (1887).....................................................................................7-8

*Powell v. National Board of Med. Examiners*,
    364 F.3d 79 (2d Cir. 2004) ...............................................................................2

*Seneca Ins. Co. v. Kemper Ins. Co.,*
   2004 WL 1145830 (S.D.N.Y. May 21, 2004) .......................................................17

*World Trade Center Properties, LLC v. Hartford Fire Ins. Co.,*
   345 F.3d 154 (2d Cir. 2003) ...........................................................................10

## STATE CASES

*Ace Wire & Cable Co. v. Aetna Casualty & Surety Co.,*
   60 N.Y.2d 390, 469 N.Y.S.2d 65 (1983)..............................................................6

*Japour v. Ed Ryan & Sons Agency,*
   215 A.D.2d 817, 625 N.Y.S.2d 750 (3d Dep't 1995).................................................3

*Moriarty v. Metropolitan Life Ins. Co.,*
   202 S.W. 630 (Ky. App. 1918)...........................................................................8

*Seaboard Surety Co. v. Gillette Co.,*
   64 N.Y.2d 304, 486 N.Y.S.2d 873 (1984)........................................................6, 14

*Soto v. State Farm Ins. Co.,*
   83 N.Y.2d 718, 613 N.Y.S.2d 352 (1994)............................................................19

*Sun-Times Media Group, Inc. v. Royal & Sunalliance Ins. Co.,*
   2007 Del. Super. LEXIS 402 (Del. Super. Ct. June 20, 2007)..................................19

## FEDERAL STATUTES

Commodity Exchange Act, 7 U.S.C. § 1, *et seq.* ..........................................................16

## RULES

Fed. R. Civ. P. 56(e)(2).....................................................................................2

Fed. R. Civ. P. 56(f)......................................................................................17-18

31433919

Defendants Dennis A. Klejna, William M. Sexton, Gerald Sherer, Joseph Murphy, Philip Silverman, Leo R. Breitman, Nathan Gantcher, David V. Harkins, Scott L. Jaeckel, Thomas H. Lee, Ronald L. O'Kelley and Scott A. Schoen (collectively, the "Moving Insureds"), by and through their undersigned counsel, respectfully submit this reply memorandum of law in further support of their motions, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment dismissing the Complaint against them in *Axis Reinsurance Co. v. Bennett, et al.,* Case No. 07-cv-07924 (GEL) (S.D.N.Y.). Messrs. Klejna, Sexton, Sherer, Murphy and Silverman (the "Counterclaim Plaintiffs") also submit this reply in further support of their motions for summary judgment on their counterclaims in *Axis Reinsurance Co. v. Bennett, et al.,* Adv. Proc. No. 07-cv-01712 (Bankr. S.D.N.Y.), reference withdrawn, Case No. 08-cv-03242 (GEL) (S.D.N.Y.), seeking a declaration that they are covered under the terms of the SecurExcess Policy No. RNN506300 issued by Plaintiff Axis Reinsurance Company ("Axis") for losses arising out of various proceedings related to the collapse of Refco Inc. (collectively, the "Underlying Actions").

## INTRODUCTION

Under Rule 56, summary judgment is appropriate if the movant can demonstrate that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. In the briefs filed in support of their motion for summary judgment, the Moving Insureds have satisfied that burden by demonstrating that (i) the terms of the 2005-2006 Axis policy unambiguously provide insurance coverage for the Moving Insureds and (ii) none of the grounds for denying coverage cited by Axis in its Complaint are applicable. The Moving Insureds have satisfied their initial burden by putting forth evidence sufficient to support a grant of summary judgment. The burden is now on Axis to identify specific facts demonstrating a genuine issue for trial. This requires more than mere conjecture as to what Axis might find during discovery. Axis must point to facts that would create a genuine issue for trial. Axis has simply not done so.

In its opposition, Axis argues that it is entitled to deny coverage based on a Warranty Letter given in connection with an earlier insurance policy; one insured's omission of an answer on the application for an insurance policy that contains severability and non-imputation provisions; a prior-knowledge exclusion that is not contained in the operative policy binder, but which it unilaterally

inserted in the insurance policy it subsequently issued; and the existence of an administrative

proceeding concluded more than six years before the transactions giving rise to the Underlying

Actions. In support of those arguments, Axis submits an affidavit that does nothing to controvert

the evidence submitted by the Moving Insureds or raise any genuine issue for trial. The dispositive

facts established by the Moving Insureds upon which this Court may grant summary judgment

remain unchallenged. For the reasons discussed below, Axis has failed to meet its burden and,

consequently, the Moving Insureds are entitled to summary judgment.

## ARGUMENT

**I.    THERE ARE NO GENUINE ISSUES OF MATERIAL FACT AND THE MOVING INSUREDS AND COUNTERCLAIM PLAINTIFFS ARE ENTITLED TO JUDGMENT IN THEIR FAVOR AS A MATTER OF LAW**

After the moving party has met its initial burden to come forward with evidence

demonstrating that he or she is entitled to relief, the burden shifts to the party opposing the motion

for summary judgment.

> [A]n opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in [Rule 56] – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e)(2). As we discussed in our moving briefs, to raise a triable issue of fact, the

opposing party "must demonstrate more than some metaphysical doubt as to the material facts."

*Powell v. National Board of Med. Examiners,* 364 F.3d 79, 84 (2d Cir. 2004). There will be no

issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a

verdict for that party. *Banca Commerciale Italiana v. Northern Trust Int'l Banking Corp.,* 160 F.3d

90, 93 (2d Cir. 1998).

In its opposition, Axis does not even discuss whether the Moving Insureds have failed to

meet their initial burden. And it fails completely to meet its burden under Rule 56(e)(2) to submit

affidavits or other evidence that "set out specific facts showing a genuine issue for trial." Fed. R.

Civ. P. 56(e)(2).

Instead, Axis seems to believe that it may defeat the motions simply by suggesting the

existence of possibly ambiguous terms in the relevant insurance contract. It argues that this Court

2

must construe all reasonable inferences in its favor. (Axis Br. at 6-7.) In its view, any ambiguity will require a trial. (Axis Br. at 6.) But Axis is mistaken. The law is to the contrary. The mere fact that Axis can offer a different interpretation of its policy does not demonstrate that the Moving Insureds have failed to meet their burden on the instant motions for summary judgment.

As we discussed in our moving briefs, "[t]he initial interpretation of an [insurance] contract is a matter of law for the court to decide" (Klejna Br. at 12-13; Moving Insureds Br. at 12-13 (citing *Bowman v. Allstate Ins. Co.*, 238 F.3d 468, 470 (2d Cir. 2001)), and the claimed existence of possible differing interpretations of a policy does not require a trial when the issue can be resolved on the basis of the policy alone (*id.*). Since ambiguities in an insurance contract must be construed against the carrier, in order for an insurance carrier to prevail on its interpretation of an insurance policy, it "must demonstrate that its interpretation is not only reasonable, but the only fair interpretation." *Japour v. Ed Ryan & Sons Agency,* 215 A.D.2d 817, 818, 625 N.Y.S.2d 750, 751 (3d Dep't 1995). In its opposition, Axis does not address, much less attempt to distinguish, these controlling principles. And the application of these controlling principles compels entry of summary judgment in favor of the Moving Insureds.

A.    COUNT I OF THE AXIS COMPLAINT, BASED ON THE SO-CALLED WARRANTY LETTER, SHOULD BE DISMISSED

Axis does not dispute that (1) the 2004-2005 Axis Policy Binder, dated August 5, 2004, was issued subject to receipt of a warranty letter by Axis (the "subjectivity") (*see* Declaration of Pamela Sylwestrzak, dated March 27, 2008 ("Sylwestrzak Decl.") ¶ 8 & Ex. E); (2) Axis subsequently requested that the proposed insured, Refco Group Ltd. LLC, provide it with a warranty letter consistent with the requirement of the August 5, 2004 Policy Binder (Sylwestrzak Decl. ¶ 10); (3) the warranty letter required in connection with the Axis 2004-2005 Policy was executed on January 21, 2005 (Sylwestrzak Decl. ¶ 10 & Ex. E) and transmitted to Axis, "per [the] subjectivity," on January 25, 2005 (Reply Declaration of Pamela Sylwestrzak, dated May 22, 2008 ("Sylwestrzak Reply Decl.") ¶ 3 & Ex. M); and (4) Axis ultimately issued the Axis 2004-2005 policy to Refco Group Ltd. LLC on April 25, 2005 (Sylwestrzak Decl. ¶ 12 & Ex. F).

Axis also admits that Refco Inc., the proposed insured under the 2005-2006 policy, "*did not exist* in January 2005," when the Warranty Letter was submitted to Axis. (Axis Br. at 9 (original

emphasis).) It further admits that in connection with the subsequently negotiated, bound and issued Axis 2005-2006 Policy – the policy at issue before this Court – Axis was specifically told that Refco would not provide a warranty letter. (*See* Affidavit of Steven Kane, dated May 1, 2008 ("Kane Aff.") Ex. A ("Refco prefers not to sign any warranties"); *cf. id.* ¶ 24.)

In the face of these undisputed facts, which clearly show that the Warranty Letter was provided in connection with the Axis 2004-2005 Policy, and without a scintilla of evidence to support its position, Axis nevertheless "maintains [that] the Warranty Letter was issued in connection with the AXIS Policy, running from August 11, 2005 to August 11, 2006 – the Policy on which this Claim is made." (Axis Br. at 10.) In an attempt to create a genuine issue of material fact where none in fact exists, Axis asserts that Steven Kane, an Axis underwriter, "clearly states" in his affidavit "that the Warranty Letter was received . . . in connection with the August 11, 2005 to August 11, 2006 AXIS Policy." (Axis Br. at 10.) But Axis does not indicate where, in his affidavit, Mr. Kane made such a statement and, in fact, Mr. Kane's affidavit contains nothing of the sort. (*See* Kane Aff.)

All that Mr. Kane's affidavit does in fact assert is that Axis "relied upon the January 21, 2005 Warranty Letter at all times while making underwriting decisions concerning the proposed [2005-2006] policy." (Kane Aff. ¶ 7.) But as we have demonstrated above, Axis had no reasonable basis to rely upon the Warranty Letter in connection with the Axis 2005-2006 Policy. And, as demonstrated in our moving briefs and below, Axis had no legal right to do so, as the Warranty Letter is not part of the Axis Policy, and thus any such reliance is irrelevant as a matter of law. (Klejna Br. at 15; Moving Insureds Br. at 15-16.)[1]

---

[1] Axis also asserts that the Warranty Letter's references to "proposed ... insurance" shows that it relates to the Axis 2005-2006 Policy, rather than the Axis 2004-2005 Policy. (Axis Br. at 9.) But it was the Axis 2004-2005 Policy Binder that had been in effect for six months when the Warranty Letter was submitted, not the Axis 2004-2005 Policy, as Axis states (Axis Br. at 9.) And, as we noted above, the Axis 2004-2005 Policy Binder contained a "subjectivity" requiring the submission of the Warranty Letter, the Warranty Letter was submitted "per [that] subjectivity," and the Axis 2004-2005 Policy was issued three months later, on April 25, 2005. Thus, the Axis 2004-2005 Policy was, in fact, still "proposed" at the time the January 21, 2005 Warranty Letter was submitted to Axis. Axis' further assertion that the Warranty Letter was signed "just prior to the planned-inception of the AXIS Policy" (Axis Br. at 7) is simply wrong. The testimony offered by the Moving Insureds that the work relating to the 2005-06 insurance tower did not even begin until April or May of 2005 (*see* Sylwestrzak Decl. ¶ 13; Brooks Decl. ¶ 4) is not in any way contradicted by Axis.

4

The 2005-2006 Primary Policy issued by U.S. Specialty, as to which the Axis 2005-2006 Policy "follows form," contains a merger clause that both defines the universe of documents upon which U.S. Specialty and the excess carriers (including Axis) could rely in issuing their D&O policies for the 2005-2006 Program and precludes reliance upon any other documents, such as the Warranty Letter. The 2005-2006 U.S. Specialty Policy provides that

> [b]y acceptance of this Policy, the Insureds and the Insurer agree that this Policy (including the Application and any materials submitted therewith) and any written endorsements attached hereto constitute the entire agreement between the parties with respect to this insurance.

(*See* Sylwestrzak Decl. Ex. G, Condition O.) Axis does not dispute that the Warranty Letter was never submitted to U.S. Specialty; "nor was it ever attached to the Application to U.S. Specialty." (Sylwestrzak Decl. ¶ 11.)

Notwithstanding the unambiguous and uncontroverted evidence provided by Ms. Sylwestrzak and Ms. Brooks that the Warranty Letter was expressly required by Axis – and provided by Refco Group Ltd. LLC – *solely* in connection with the Axis 2004-2005 Policy, Axis suggests that their declarations do not "directly dispute[] that the Warranty Letter was issued in connection with the AXIS [2005-2006] Policy." (Axis Br. at 9-10.) We think that suggestion is absurd. But lest there be any doubt concerning the meaning of Ms. Sylwestrzak's moving declaration, Ms. Sylwestrzak removes that doubt in her reply declaration, where she states that the Warranty Letter "was explicitly requested by Axis, and was supplied by Refco Group Ltd. LLC, solely in connection with the Axis 2004-2005 Policy." (*See* Sylwestrzak Reply Decl. ¶ 2.) Indeed, Marsh, as Refco's agent, made clear to Axis in connection with the placement of the 2005-2006 Program that it would not supply any warranty. (*See* Kane Aff. Ex. A).)

Furthermore, Axis' reliance on the Warranty Letter would be misplaced even if the Warranty Letter were considered a part of the Application, since the severability provision set forth in Endorsement 10 to the Primary Policy would, in any event, prohibit Axis from imputing Mr. Bennett's alleged false statement in the Warranty Letter to other insureds. (*See* Moving Insureds' Br. at 16-17.)

31433919

In its opposition, Axis does not dispute that it is bound by the terms of Endorsement 10 to the Primary Policy. Indeed, Axis affirmatively acknowledges that Endorsement 10 fully applies to the Application. (Axis Br. at 26.) Axis argues, however, that while the Warranty Letter is "part of the Axis Policy" (*id.* at 7), it is not part of the Application. And Axis contends that Endorsement 10 applies only to statements and omissions in the Application (*id.* at 26).

But even so, Endorsement 10 is not limited by its terms to statements made in the Application. Endorsement 10 is entitled "Full Severability." It states, quite simply, that "No knowledge or information possessed by any Insured will be imputed to any other Insured." (Sylwestrzak Decl. Ex. G at Endorsement 10.) It contains nothing to suggest that its application is limited to statements made in the Application. Axis would nevertheless have this Court construe that non-imputation provision as if it were so limited. Moreover, to the extent that the language of Endorsement 10 may be thought to create an ambiguity as to whether it should or should not be limited to statements made in the Application, that ambiguity must be strictly construed against the carrier. *See, e.g., Ace Wire & Cable Co. v. Aetna Casualty & Surety Co.*, 60 N.Y.2d 390, 398, 469 N.Y.S.2d 65, 658 (1983); *Seaboard Surety Co. v. Gillette Co.*, 64 N.Y.2d 304, 311, 486 N.Y.S.2d 873, 876 (1984) (any exclusions or exceptions from policy coverage "are to be accorded a strict and narrow construction").

In sum, the undisputed facts show that (a) the Warranty Letter was not issued in connection with, and is not part of, the Axis 2005-2006 Policy, and (b) even if the Warranty Letter were considered part of the Application, Endorsement 10 would bar Axis from imputing Mr. Bennett's knowledge to the Moving Insureds. Accordingly, Count I of the Axis Complaint should be dismissed with prejudice.

### B.    COUNT II OF THE AXIS COMPLAINT, BASED ON REFCO'S INCOMPLETE APPLICATION TO U.S. SPECIALTY, SHOULD BE DISMISSED

Axis does not dispute that it "agreed to accept the HCC application [to U.S. Specialty] signed by Philip Bennett" with respect to the Axis 2004-2005 Policy "as an application for the excess Axis [2005-2006] policy." (Kane Decl. ¶ 21.) Axis also does not dispute that the 2004-2005 Application was incomplete with respect to Question 12 of the Application and that Axis knew the

31433919

Application was incomplete when it issued the Policy Binder for the Axis 2005-2006 Policy. (*See* Axis Br. at 12 n.11.)

As we demonstrated in our moving papers, in these circumstances, where the failure to answer a question was apparent from the face of the application, Axis "waived the want or imperfection in the answer" when it issued its binder and policy, *see Phoenix Mut. Life Ins. Co. v. Raddin*, 120 U.S. 183, 190 (1887), and cannot now rely upon the failure to answer as a ground to deny coverage. (Klejna Br. at 17; Moving Insureds Br. at 17-18.)[2]

Notwithstanding the principle established by the Supreme Court in *Raddin*, Axis argues that an insurance company may shift the risk of a readily apparent omission to its insureds and that this has occurred in the instant case. Axis argues, in effect, that however clear and obvious an omission may be, it can avoid any duty of inquiry simply by providing that there will be no coverage if the omission concerned any fact that "was required to be disclosed" by the application. (Axis Br. at 14-15.) But none of the cases on which Axis relies support its position.

*Berger v. Manhattan Life Ins. Co.*, 805 F.Supp. 1097, 1102 (S.D.N.Y. 1992), is plainly inapposite, because it involved affirmative misrepresentations in an insurance application, rather than, as here and in *Raddin*, a readily apparent failure to answer a question. Likewise *Chicago Ins. Co. v. Kreitzer & Vogelman*, 265 F.Supp.2d 335 (S.D.N.Y. 2003), is inapplicable, inasmuch as the carrier in that case sought and obtained rescission of the malpractice policy at issue; here, Axis does not even suggest, in the face of the non-rescindability endorsement to the Primary Policy (Sylwestrzak Decl. Ex. G at Endorsement 13), that it is entitled to rescission of Side A of the Axis 2005-2006 Policy.[3] And *Nichols v. American Risk Management, Inc.*, 2002 WL 31556384, at *2 (S.D.N.Y. Nov. 18, 2002) (Axis Br. at 14), does not even concern an insured's disclosure obligation; it involved, instead, an insurer's obligation to disclose material risks to its reinsurer.

Axis also asserts that *Raddin* has been distinguished and does not apply "where the application asks for disclosure of a pre-existing condition and the lack of an answer constitutes non-

---

[2] In view of our citation of and reliance upon *Raddin*, we do not understand Axis' assertion that the Moving Insureds "never argue that the non-disclosure in the Application would not act as a bar to coverage." (Axis Br. at 14.)

[3] It also appears that the parties in *Chicago Ins. Co. v. Kreitzer & Vogelman*, never raised or argued the applicability of *Phoenix Mut. Life Ins. Co. v. Raddin*, 120 U.S. 183 (1887).

31433919

disclosure of that condition." (Axis Br. at 15.) But, again, it offers no relevant authority. Each of the cases it cites for this purpose, *Moriarty v. Metropolitan Life Ins. Co.*, 202 S.W. 630, 631 (Ky. App. 1918), and *Home Life Ins. Co. v. Myers*, 112 F. 846, 852 (D. Kan. 1901), likewise involve misrepresentations by an applicant, not, as here and in *Raddin*, an obvious failure to answer a question. Indeed, the court in *Moriarty* expressly recognized

> that where the application asks a question in regard to a material fact, but no answer by the insured appears in the application, the courts generally hold that no case of fraudulent representation is presented, because the insured neither admitted nor denied the existence of the fact concerning which the inquiry was made."

202 S.W. at 631 (citing *Raddin,* 120 U.S. 187).

The principle established in *Raddin* was held inapplicable to the facts of *Moriarty* because the insured falsely declared in his application that he had never suffered from consumption – when in truth he had. The application in *Moriarty* "did not contain the question whether the insured had ever had the consumption," to which the insured might simply and obviously have failed to respond. 202 S.W. at 631. Instead, the application expressly set forth declarations that "were true without exception ... unless the insured desired to qualify the declaration." *Id.* Thus, the insured submitted an application stating that he had never suffered from "apoplexy, appendicitis, asthma, bronchitis, cancer or other tumor, [or] consumption." That declaration was rendered false by the insured's failure to delete or cross out the word "consumption." And that misrepresentation was "sufficient to take the case out of the general rule" established by the Supreme Court in *Raddin. Id.* Similarly, in *Home Life Ins. Co. v. Myers*, the other case on which Axis relies for this purpose (Axis Br. at 15), there was "neither a truthful nor an imperfect answer. On the contrary, a false answer which, by the terms of the contract, avoids the policy." *See* 112 F.846 at 852.

Of course, even if "Bennett's knowledge, and failure to make necessary disclosures pursuant to Question 12 of the Application" (Axis Compl. ¶ 148) were considered a basis for denying coverage as to Bennett, the severability provision of Endorsement 10 to the 2005-2006 Primary Policy would prevent Axis from imputing Bennett's knowledge to the Moving Insureds. As discussed above (*supra* at 6), in its opposition, Axis acknowledges that Endorsement 10 applies to the Application (Axis Br. at 26). Its position that Endorsement 10 nonetheless does not apply to

Question 12 of the Application (*see id.*) is illogical and completely at odds not only with the broad non-imputation provision in Endorsement 10, but also with the plain language and meaning of the following sentence in that endorsement, which provides that "[i]f *any* of the particulars or statements in the Application is untrue, this Policy will be void with respect to any Insured *who knew of such untruth.*" (Sylwestrzak Decl. Ex. G at Endorsement 10 (emphasis added).)  Thus, Axis may not use any misrepresentation in the Application by Bennett to deny coverage to the Moving Insureds, and Count II of the Axis Complaint should be dismissed with prejudice.

### C.    COUNT III OF THE AXIS COMPLAINT, BASED ON THE SO-CALLED KNOWLEDGE EXCLUSION, SHOULD BE DISMISSED

#### 1.    Axis Has Not Demonstrated that the Knowledge Exclusion Was Properly Part of the Axis 2005-2006 Policy

Axis does not dispute, as we have shown (Klejna Br. at 18-19; Moving Insureds Br. at 19), that the Policy Binder Axis issued on August 11, 2005 did not contain, and was not subject to, any Knowledge Exclusion concerning an insured's knowledge, at the inception of the policy, of facts that he had reason to suppose might give rise to a claim.  (Axis Br. at 17.)  Nor does Axis dispute that, without the knowledge or consent of the insureds, it unilaterally added a Knowledge Exclusion when it issued its policy, nearly seven months later, after many of the Underlying Actions had been commenced and claims under its policy had arisen.  (Axis Br. at 17.)  Axis argues, nevertheless, that the Knowledge Exclusion is an enforceable part of the Axis 2005-2006 Policy and that the Moving Insureds are bound by it.  It also asserts that by contesting the insertion of a Knowledge Exclusion to which they had not agreed, the Moving Insureds are inappropriately "pick[ing] and choos[ing] among the terms of the AXIS [2005-2006] Policy." (Axis Br. at 16.)

But as we demonstrated in our moving briefs, between August 11, 2005, when the Axis Policy Binder became effective, and March 1, 2006, when the Axis 2005-2006 Policy was finally issued, the operative insurance contract was the August 11, 2005 Axis Policy Binder.  (*See* Moving Insureds Br. at 19; Klejna Br. at 18 (citing *World Trade Center Properties, LLC v. Hartford Fire Ins. Co.*, 345 F.3d 154, 167-68 (2d Cir. 2003) (as of September 11, 2001, parties could not be bound to policies, because policies had not yet been issued); *Springer v. Allstate Life Ins. Co.*, 94 N.Y.2d 645, 649, 710 N.Y.S.2d 298, 300 (2000)).  Moreover, where, as here, the issued policy departs from

31433919

the material terms of the binder that is the operative contract, such departures cannot be used to deny coverage. *See, e.g., National Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co. Group*, 1997 WL 148231, at *3 (S.D.N.Y. Mar. 31, 1997). And in such circumstances, "extrinsic evidence may not be used to contradict clearly unambiguous language contained in an insurance binder." *World Trade Center Properties, LLC v. Hartford Fire Ins. Co.*, 345 F.3d at 184.

In this Circuit, it is also well-settled that where, as here, an excess carrier issues a binder for a "follow form" policy *after* the policy form for the primary policy had been provided to the excess carrier, the excess carrier's policy binder must be understood "to incorporate the terms of the [primary policy] form except as expressly modified." *World Trade Center Properties, LLC v. Hartford Fire Ins. Co.*, 345 F.3d at 170. It is indisputable that the policy form of U.S. Specialty, the primary carrier, never included any Knowledge Exclusion or inverted warranty, either in the body of the policy form or in any endorsement thereto. (*See id*; *see also* Sylwestrzak Decl. Ex. G.) It is also indisputable that Marsh had provided the policy forms and endorsements for the U.S. Specialty 2005-2006 Policy to Axis long before Axis issued its August 11, 2005 Policy Binder, and that Axis had by then also received U.S. Specialty's final policy binder, dated August 10, 2005, which made no reference to any inverted warranty or knowledge exclusion endorsement to the Primary Policy. (*See* Sylwestrzak Reply Decl. ¶¶ 6-7 & Exs. N, O.)

In its opposition, Axis makes no effort to dispute these controlling principles of law or their application to the instant case. Nor does it dispute that the Moving Insureds' claims arose during the period when the August 11, 2005 Policy Binder was the operative insurance instrument. Thus, the contract to be construed by this Court is the August 11, 2005 Policy Binder, not the Axis 2005-2006 Policy. And the Policy Binder's omission of any Knowledge Exclusion, without more, is determinative against Axis regarding the unavailability of that exclusion in the context of this case.

Citing documents extrinsic to the Axis August 11, 2005 Policy Binder, Axis now seeks, in effect, to amend its terms. But Axis makes no attempt to identify any ambiguity in the August 11, 2005 Policy Binder or the need to resort to extrinsic evidence to determine the parties' intentions with respect to any terms in the binder. And as we noted above, Axis may not rely upon extrinsic evidence to alter the terms of the August 11, 2005 Policy Binder. On this ground alone, Axis'

31433919

attempt to rely on extrinsic evidence to modify the terms of the August 11, 2005 Policy Binder must be rejected.

Even if the extrinsic evidence proffered by Axis were considered by this Court, Axis concedes, as it must, that on August 9, 2005, Marsh advised Axis that "Refco prefers not to sign any warranties" and specifically invited Axis to include an inverted warranty endorsement if it was unwilling to bind the policy without such an endorsement. (*See* Kane Decl. Ex. A.) Kenny Li of Marsh told Axis: "Should you need [a warranty] to bind, please include an inverted warranty endorsement on your revised quote." (*Id.*)

The very next day, on August 10, 2005, Axis issued its first policy binder for the Axis 2005-2006 Policy. Although Axis had been invited to include an inverted warranty if necessary to bind, Axis chose not to include a Knowledge Exclusion among the list of endorsements it would add to its own policy. Nor did it include as a "subjectivity" that the Primary Policy contain an inverted warranty or knowledge exclusion. (*See* Kane Decl. Ex. B.) Indeed, with respect to the Primary Policy, it required only receipt of the "[u]nderlying policies" and a "[c]opy of [the] primary carrier's application." (*Id.*)

On August 11, 2005, in response to Axis' August 10 inclusion of the "subjectivity" requiring a copy of the U.S. Specialty application, Kenny Li of Marsh forwarded an email he had received from Ms. Sylwestrzak explaining that there was no new application for the 2005-2006 Primary Policy. In her email Ms. Sylwestrzak had advised Mr. Li:

> With respect to the open subjectivities, here is a copy of the HCC [U.S. Specialty] long form application submitted for the 8/4/04 placement. HCC [U.S. Specialty] did not require a new application for the 8/11/05 binding of the IPO. You will note the warranty [in the 2004-2005 application] is not signed. It was agreed by HCC [U.S. Specialty] to accept the app as is and to add on the inverted warranty statement to the policy.

(*See* Kane Aff. Ex. C.)

Referring to Ms. Sylwestrzak's email, Mr. Li asked Axis to "confirm that this will satisfy the application subjectivities." (Kane Aff. Ex. C.) In response, Axis issued a revised binder on August 11, 2005. (Kane Aff. Ex. D.) The August 11, 2005 binder "removed the subjectivity

11

regarding receipt of the primary application." (*See* Kane Aff. ¶ 43.)  As Mr. Kane candidly admits, this is "[t]he only difference between the August 10, 2005 and August 11, 2005 binders." (*Id.*)

In its opposition, Axis places great emphasis on the final sentence of Ms. Sylwestrzak's internal email to Mr. Li, arguing that, by forwarding her email to Axis, Marsh, as Refco's agent, thereby "represented" to Axis that a Knowledge Exclusion would be part of the Primary Policy. (Axis Br. at 17, 20.)  It is clear, however, that Marsh made no such representation to Axis.

To begin, Mr. Li's email to Axis plainly addressed only that particular "application subjectivity" in the Axis August 10, 2005 binder requiring a "[c]opy of [the] primary application." (*See* Kane Aff. Ex. B.)  What Ms. Sylwestrzak told Mr. Li about the inverted warranty in the 2004-2005 application concerned a related but clearly collateral matter.  In the context, Mr. Li's transmittal of her email could not reasonably have been understood by Axis as a "representation" by Marsh regarding that separate issue which clearly was not the subject of Mr. Li's communication to Axis.

Moreover, Axis has plainly taken Ms. Sylwestrzak's email to Mr. Li out of context and thereby misconstrued it.  As Ms. Sylwestrzak explains, her August 11, 2005 email to Mr. Li had merely transmitted the 2004-2005 application and related facts regarding the U.S. Specialty 2004-2005 Policy.  As Ms. Sylwestrzak told Mr. Li, in the 2004-2005 application, the warranty had not been signed (Kane Aff. Ex. C) and, as a result, the U.S. Specialty added an inverted warranty endorsement to the U.S. Specialty 2004-2005 Policy (*see* Sylwestrzak Decl. Ex. B at Endorsement No. 7).  Since Axis was an excess carrier in the Refco Group Ltd. LLC tower of D&O insurance for the 2004-2005 Program, its underwriters were, or should have been, well aware of these facts.  (*See* Sylwestrzak Decl. ¶ 3 & Ex. B.)

Finally, Axis does not claim ever to have discussed this "representation" with Marsh or to have informed Marsh of its reliance.  But it asserts that in the circumstances, it would have been "irregular" for Axis to have included a Knowledge Exclusion in its policy binder. (Axis Br. at 17.)  But, "irregular" or not, if Axis were relying upon the addition of a Knowledge Exclusion as an endorsement to the Primary Policy, concerning which it plainly had no independent confirmation, it should have added to its binder a "subjectivity" in that regard.  It did not do so.

12

In short, Axis had repeated opportunities to add an inverted warranty as an endorsement, if "need[ed] . . . to bind," when it issued, and then reissued, its binder on August 10 and 11, 2005. (*See* Kane Aff. Exs. A, B & C.)  But whether it did not think the endorsement necessary or through ineptness or for some other reason, Axis chose not to accept that opportunity when it issued the August 11, 2005 Policy Binder that is the operative insurance contract before this Court.  As a matter of law, Axis may not rely upon the Knowledge Exclusion endorsement that it unilaterally chose to include in the policy it issued on March 1, 2006, in contravention of the terms of its August 11, 2005 Policy Binder, and long after the filing of Underlying Actions and the assertion of claims under the policy.

## 2. The Severability Provisions in the Primary Policy Bar Axis' Attempt to Impute Mr. Bennett's Knowledge to the Moving Insureds

In our moving briefs, we demonstrated that, even if the Knowledge Exclusion were considered part of the Axis 2005-2006 Policy, the two severability provisions in the Primary Policy bar Axis from imputing Mr. Bennett's knowledge to any of the Moving Insureds.  (Klejna Br. at 19-22; Moving Insureds Br. at 20-23.)

In its opposition, Axis does not dispute that neither Axis nor any of the other excess carriers requested modification of the severability provisions in the Primary Policy  (Sylwestrzak Decl. ¶ 22.)  Instead, Axis argues that Endorsement 10 is limited in scope to statements and omissions in the Application, and that the severability provision applicable to the exclusions applies only to the exclusions to the Primary Policy, not the exclusions to the Axis 2005-2006 Policy.  (Axis Br. at 26-27.)  And, although Axis acknowledges that its 2005-2006 Policy "follows the form" of the Primary Policy, it argues that the Knowledge Exclusion in the Axis Policy is inconsistent with, and therefore overrides, the severability provisions in the Primary Policy.  (Axis Br. at 30-31.)

As we discussed above with respect to the Warranty Letter (*supra* at 5-6), there is nothing in Endorsement 10, entitled, "Full Severability," that limits the scope of Endorsement 10 to statements made in the Application.  Nor is the Knowledge Exclusion and its reference to the knowledge of "any insured" in any way inconsistent with the severability provisions in the Primary Policy particularly where, as here, a number of exclusions in the 2005-2006 Primary Policy also refer to

"any Insured" – *e.g.* the unfair profit or advantage exclusion and the criminal, fraudulent or dishonest act exclusion – but are nevertheless expressly subject to severability. (*See* Sylwestrzak Decl. Ex. G at Exclusions (A) and (B).)

Notably, none of the cases cited by Axis in its opposition (Axis Br. at 27-31) address the application of a knowledge exclusion where the policy also includes a severability provision. Indeed, the case on which Axis primarily relies, *American Intern. Specialty Lines Ins. Co. v. Towers Financial Corp.*, 1997 WL 906427, at *9 (S.D.N.Y. 1997), actually supports the Moving Insureds, not Axis. In that case, the Court rescinded a policy due to material misrepresentations that one of the insureds had made in the application. It specifically noted, however, that an "innocent insured" "could have protected himself by requiring the policy to include a severability clause." (*See id.* at *10.) It was only because the policy at issue did *not* contain a severability clause that the "innocent insureds" lost coverage.[4]

And Axis does not even respond to our discussion of *In re HealthSouth Corp. Ins. Lit.*, 308 F. Supp.2d 1253 (N.D. Ala. 2004), which concluded in similar circumstances that "[s]ilence does not provide the insured with the notice needed that the excess carrier is not following the form of the severability clause, and therefore, silence cannot supply a specific term to the contrary." 308 F. Supp.2d at 1282.

At a minimum, "before an insurance company is permitted to avoid policy coverage, it must satisfy the burden ... of establishing that the exclusions or exemptions apply in the particular case ..., and *that they are subject to no other reasonable interpretation.*" *Seaboard Sur. Co.*, 64 N.Y.2d at 311, 486 N.Y.S.2d at 876 (emphasis added). In its opposition, Axis does not even attempt to satisfy that burden.

Finally, Axis requests that, if the severability provisions are applicable, it be "permitted to make an alternate factual showing that each of the Movants had sufficient individual knowledge of the fraud at Refco to preclude coverage." (Axis Br. at 31.) But Axis has not pleaded that the Moving Insureds had knowledge of any fraud; instead, in its Complaint, it asserts only that

---

[4] Of course, unlike *American Intern. Specialty Lines*, rescission is not a remedy available to Axis, in view of the non-rescindability endorsement to the Primary Policy. (Sylwestrzak Decl. Ex. G at Endorsement 13.)

Bennett's knowledge is sufficient to preclude coverage for all. (*See* Decl. of Helen B. Kim, dated March 28, 2008 ("Kim Decl.") Ex. 20 at ¶¶ 141-43.)

In sum, Axis may not rely upon the Knowledge Exclusion it added to its policy, and, even if it could, the severability provisions in the Primary Policy bar imputation of Bennett's knowledge to the Moving Insureds. Accordingly, Count III of the Axis Complaint should be dismissed with prejudice.

### D.    COUNT IV OF THE AXIS COMPLAINT, BASED ON A 1994 CFTC ENFORCEMENT PROCEEDING, SHOULD BE DISMISSED

Finally, Axis contends that wrongful acts underlying or alleged in an enforcement action brought by the Commodity Futures Trading Commission (the "CFTC") in 1994 against a company then known as Refco, Inc. are sufficient to trigger the "Prior Acts Exclusion" set forth in Clause XI of the Axis 2005-2006 Policy. That exclusion applies, by its terms, only when the "wrongful act[s], fact[s], circumstance[s] or situation[s] . . . alleged" in an earlier proceeding and those involved in a case giving rise to an insured's claim are shown to be "causally or logically interrelated by a common nexus." (Sylwestrzak Decl. Ex. J at p. 4.) Moreover, to avoid coverage by virtue of this exclusion, Axis "must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case and that its interpretation of the exclusion is the only construction that [could] fairly be placed thereon." *Parks Real Estate Purchasing Group v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006). The strained construction of this exclusion proposed by Axis falls far short of meeting this burden.

In his moving papers, Mr. Klejna cited the publicly available report of the CFTC's allegations in the proceeding on which Axis relies. (*See* Klejna Br. at 23, citing *In re Refco, Inc.*, 1994 CFTC Lexis 348 (1994).) Thus, there can be no genuine issue of material fact concerning the "wrongful act[s], fact[s], circumstance[s] or situation[s] . . . alleged" by the CFTC. There likewise can be no dispute concerning the "wrongful act[s], fact[s], circumstance[s] or situation[s]" alleged in the various Underlying Actions to which the CFTC's allegations are required to be compared to determine whether they are "causally or logically interrelated by a common nexus."

Our moving papers further showed that there is, indeed, no "common nexus" by which the "wrongful act[s], fact[s], circumstance[s] or situation[s] . . . alleged" in the CFTC proceeding and those alleged in any of the Underlying Actions are "causally or logically interrelated." (Klejna Br. at 22-24; Moving Insureds Br. at 24.) The CFTC proceeding was brought against a registered futures commission merchant and alleged "wrongful act[s], fact[s], circumstance[s] or situation[s]" in violation of the Commodity Exchange Act, 7 U.S.C. § 1, *et seq.* None of the Underlying Actions allege any violations by any registered entity – or anyone else – of the provisions of that statute. Conversely, the Underlying Actions allege "wrongful act[s], fact[s], circumstance[s] or situation[s]" in violation of the federal securities laws and other provisions of law that the CFTC has no authority to enforce, and did not purport to enforce in the 1994 proceeding. (Klejna Br. at 23-24.)

With a view to causality and logical relationships, we also noted the not insignificant six-year gap between the events alleged in the CFTC's Complaint, which occurred in 1990 and 1991, and the conduct at issue in the Underlying Actions, which is alleged to have begun no earlier than 1997 (Klejna Br. at 23; Moving Insureds Br. at 24.) We noted, as well, that the "Refco, Inc." named in the CFTC proceeding is not the same "Refco Inc." formed in 2005 that is involved in the Underlying Actions. (Klejna Br. at 23.) In fact, the earlier Refco, Inc. changed its name in 2001, becoming Refco, LLC (*id.*), and has not been named a party to any of the Underlying Actions. (Kim Decl. Ex. 8 at p.2 n.1; Ex. 20 at p.2 n.1; Exs. 21-22.)

Axis does not dispute any of the foregoing facts in its opposition papers. It also substantially ignores the operative language of Clause XI, requiring that the allegations in the current litigation and the earlier proceeding must be "causally or logically interrelated by a common nexus." It contends, instead, that Clause XI is triggered if the earlier litigation "is *in any way related* to the allegations in the current suits." (Axis Br. at 24, emphasis added.) But since that is not the relevant standard, it certainly does not raise a genuine issue of material fact to speculate, as does Axis, whether the 1994 litigation and the current litigation might be related. (*See* Axis Br. at 25.) As we have shown, applying the standard set forth in Clause XI, it is evident on the face of the relevant pleadings, in the temporal separation of the litigations and in their lack of common parties that they share no relevant "common nexus." Nor is there any dispute whether the two Refco

entities are "related." Of course they are. But the fact that an entity related to those involved in the Underlying Actions was involved many years earlier in a proceeding brought by the CFTC is hardly probative of anything. (Axis Br. at 25.)

Seneca Ins. Co. v. Kemper Ins. Co., 2004 WL 1145830 (S.D.N.Y. May 21, 2004), which is the only case cited by Axis in this connection (Axis Br. at 25) gives Axis no support. In Seneca, the Court made clear that in order to trigger a prior acts exclusion, there must be a "sufficient factual nexus" between the new claim and the prior claim, fact, circumstance or situation that was the subject of notice under the prior policy. 2004 WL 11435830, at *8. In Seneca, the Court concluded that there was a "sufficient factual nexus" only because the prior claim and new claim both "ar[o]se from common facts." Id. at *9. Indeed, the attorney who drafted the prior claim was even the same attorney who drafted and filed the later complaint. Id.

In sharp contrast, Axis has made no showing here that the 1994 CFTC proceeding and the Underlying Actions arose from "common facts." To the contrary, given the 6-year gap between the 1990-91 transactions at issue in the 1994 CFTC proceeding and the post-1997 transactions at issue in the Underlying Actions, the two actions unquestionably arose from different transactions and different facts.

## II.    AXIS HAS FAILED TO MEET ITS BURDEN UNDER FED. R. CIV. P. 56(f) TO DEMONSTRATE THE NEED FOR DISCOVERY

Axis also complains repeatedly about its lack of an opportunity for discovery, citing Wells Fargo Bank Nw., N.A. v. Taca Int'l Airlines, S.A., 247 F.Supp.2d 352, 360 (S.D.N.Y. 2002). (Axis Br. at 6-7.) But the Wells Fargo case supports the Moving Insureds, not Axis: it specifically held that "the absence of discovery [did] not present an obstacle to the granting of partial summary judgment" because the dispute involved "legal inferences to be drawn from undisputed terms" of two agreements. Id. at 360.

It is well-settled that a nonmoving party cannot create a genuine issue of material fact by providing evidence that is "merely colorable, conclusory, speculative or not significantly probative." Parker v. Chrysler Corp., 929 F. Supp. 162, 165 (S.D.N.Y. 1996). As the Second Circuit noted in Gray v. Darien, 927 F.2d 69, 74 (2d Cir 1991), cert. denied, 502 U.S. 856 (1991), a

plaintiff's "mere hope" that evidence might develop at trial to breathe life into his claim is not sufficient to overcome a motion for summary judgment. *Id.*; *see also In re WorldCom, Inc.*, 361 B.R. 697, 715-16 (S.D.N.Y. Bankr. 2007) ("[t]he Court finds that HSG has failed to sustain the burden to prevail under a Rule 56(f) defense ... because it did not specifically request what facts it wished to discover and how such facts were reasonably expected to create a genuine issue of material fact for trial").

Here, Axis has made no attempt to identify what facts it would expect to discover and has made no attempt to show how those facts could reasonably be expected to create a genuine issue of material fact at trial. Accordingly, Axis has failed to meet its burden under Rule 56(f).

**III.  AXIS DOES NOT OPPOSE THE MOVING INSUREDS' MOTION TO LIFT THE STAY; AND IT HAS FAILED TO DEMONSTRATE WHY SUMMARY JUDGMENT SHOULD NOT BE ENTERED IN FAVOR OF THE COUNTERCLAIM PLAINTIFFS**

In opposing the Moving Insureds' motions for summary judgment dismissing the Axis Complaint, Axis complains that the Moving Insureds' motions for summary judgment dismissing the Axis Complaint were filed in violation of the stay. (Axis Br. at 32.) However, Axis has offered no opposition to the Moving Insureds' motion to lift that stay.

Moreover, in its opposition papers, Axis expressly "incorporates each of [its] arguments opposing Summary Judgment dismissing Movants from the AXIS Complaint into its opposition of Summary Judgment granting a declaration of coverage." (Axis Br. at 34.) Axis concedes, as it must, that "[e]ach form of relief is a mirror image of the other; the arguments in support and in opposition are the same." (*Id.*)

Given the total identity of arguments on the two summary judgment motions, Axis' failure to oppose the Moving Insureds' motion to lift the stay, and this Court's express permission to the Moving Insureds to seek summary judgment on the Counterclaims, this Court should lift the stay as requested and enter summary judgment against Axis dismissing the Axis Complaint and granting a declaration of coverage.[5]

---

[5]  Defendant Klejna – and only Mr. Klejna – submits this response to Axis' arguments regarding Mr. Klejna's settlement. Axis contends that the settlement tendered to it by Mr. Klejna for approval and payment on July 30, 2007 and preliminarily approved by this Court on January 22, 2008 in *In re Refco Securities Litig.*, Case No. 05 Civ. 8626 (GEL), does not constitute "Loss" under the Axis Policy, because the settlement requires the carrier, not Mr. Klejna, to

## CONCLUSION

For the foregoing reasons and the reasons set forth in the Moving Insureds' Briefs, the Moving Insureds' motions for summary judgment dismissing the Complaint against them in *Axis Reinsurance Co. v. Bennett, et al.*, Case No. 07-cv-07924 (S.D.N.Y.), and the Counterclaim Plaintiffs' motions in *Axis Reinsurance Co. v. Bennett, et al.*, Adv. Proc. No. 07-cv-01712 (Bankr. S.D.N.Y.), reference withdrawn, Case No. 08-cv-03242 (GEL) (S.D.N.Y.), for summary judgment declaring coverage under the terms of the SecurExcess Policy No. RNN506300 issued by Plaintiff Axis Reinsurance Company, should both be granted.

---

pay the settlement. (Axis Br. at 34.) However, Axis expressly denied coverage under the Axis 2005-2006 Policy no later than March 6, 2006. (Sylwestrzak Decl. Ex. L.) Where, as here, a D&O insurer has denied coverage, the courts have recognized that such "non-recourse" settlements do constitute "loss" and are valid and binding settlement agreements. *See FDIC v. Gordinier*, 783 F. Supp. 1181, 1186, 1191-1192 (D. Minn.), *rev'd on other grounds, FDIC v. St. Paul Fire & Marine Ins. Co.*, 993 F.2d 155 (8th Cir. 1993) (settlement agreement between underlying plaintiffs and several individual directors and officers that required payment from bank and insurance policies, but not defendants' assets, was "valid, binding and enforceable" against D&O insurer that contested coverage); *National Union Fire Ins. Co. of Pittsburgh, PA v. Seafirst Corp.*, 1987 U.S. Dist. LEXIS 14284 (W.D. Wash. Mar. 25, 1987)(rejecting excess D&O insurer's contention that there was no coverage for a settlement agreement agreed to by directors and officers because those defendants were not "legally obligated to pay" the settlement proceeds); *see also Sun-Times Media Group, Inc. v. Royal & Sunalliance Ins. Co.*, 2007 Del. Super. LEXIS 402, *40 (Del. Super. Ct. June 20, 2007) (when D&O insurers "reserved their rights to accept coverage, Plaintiffs were allowed to take reasonable measures to defend themselves, including settlement").

Axis does not dispute that Mr. Klejna's settlement was tendered to Axis long before the defense costs that Axis later paid, but nevertheless suggests that it should be relieved of any obligation to pay the Klejna settlement, because it could not pay Mr. Klejna's settlement without violating the Bankruptcy Court's orders compelling advancement of defense costs. (Axis Br. at 34-35.) But nothing in the Bankruptcy Court's September 12, 2007 and October 19, 2007 Orders prevented Axis from paying its other obligations under the Axis Policy. To the contrary, the Bankruptcy Court's September 12, 2007 Order compelling advancement of defense costs expressly stated that "Nothing in this Order shall constitute determination of, or affect the priority of payments to which insured[s] are entitled under the Axis Policy." Likewise, the Bankruptcy Court's October 19, 2007 Order denied Axis' request for a determination of the priority and proper allocation of defense costs "without prejudice to the rights of all parties to and beneficiaries of the Axis Policy regarding such issue." (Kim Decl. Ex. 14 at p. 4, ¶ 9; Ex. 15 at p. 4.)

Axis also suggests that it was Mr. Klejna's burden to seek an order compelling Axis to honor its contractual obligations, stating that Mr. Klejna was "free to seek an Order from a Court requiring Axis to pay the purported settlement." (Axis Br. at 35.) It is well-settled, however, that the remedy for an insurance carrier's breach of contract is an action for damages. We are unaware of any authority – and Axis cites none – to support Axis' position that Mr. Klejna could or should have commenced an action for specific performance of Axis' obligation to pay "losses" under the terms of its policy. To the contrary, a declaratory judgment action is the appropriate mechanism to obtain a determination that Axis must fund the settlement. *See Home Ins. Co. v. Spectrum Info. Techs.*, 930 F. Supp. 825, 844 (E.D.N.Y. 1996) (concluding that "declaratory relief is appropriate here because the parties have shaped a settlement agreement in a costly, complex litigation" in which the Court's determinations with respect to the D&O policies at issue "may very likely resolve the remaining disputes between the parties"). Moreover, the law in New York is well established that an insurer who refuses a settlement in bad faith may be held liable to its insured for amounts in excess of the policy limits. *Soto v. State Farm Ins. Co.*, 83 N.Y.2d 718, 723, 613 N.Y.S.2d 352, 354 (1994) ("when the harm has been caused by the insurer's breach of its obligation to perform in good faith, the insurer should be required to remedy that harm by paying the excess judgment").

31433919

Dated:  May 23, 2008

Respectfully submitted,

/s/ Helen B. Kim
HELEN B. KIM (HK-8757)
KATTEN MUCHIN ROSENMAN LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90068
Telephone: 310-788-4525
Facsimile:  310-712-8226

PHILIP A. NEMECEK (PN-3319)
KATTEN MUCHIN ROSENMAN LLP
575 Madison Avenue
New York, NY 10022-2585
Telephone: 212-940-8834
Facsimile: 212-940-8776
*Attorneys for Defendant and Counterclaim Plaintiff Dennis A.  Klejna*

/s/ John J. Jerome
JOHN J. JEROME (JJ-2413)
TIMOTHY E. HOEFFNER
SAUL EWING LLP
245 Park Avenue, 24th Floor
New York, NY  10167
Telephone:  (212) 672-1996
Facsimile:  (212) 672-1920
*Attorneys for Defendant and Counterclaim Plaintiff Joseph Murphy*

/s/ Richard Cashman
RICHARD CASHMAN (RC-4769)
HELLER EHRMAN LLP
Times Square Tower
7 Times Square
New York, NY  10036-6524
Telephone:  (212) 832-8300
Facsimile:  (212) 763-7600
*Attorneys for Defendant and Counterclaim Plaintiff Philip Silverman*

/s/ Michael F. Walsh
GREG A. DANILOW (GD-1621)
MICHAEL F. WALSH  (MW-8000)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153-0119
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

*Attorneys for Defendants Leo R. Breitman, Nathan Gantcher, David V. Harkins, Scott L. Jaeckel, Thomas H. Lee, Ronald L. O'Kelley, and Scott A. Schoen*

/s/ Ivan Kline
STUART I. FRIEDMAN (SF-9186)
IVAN KLINE (IK-9591)
FRIEDMAN & WITTENSTEIN
A Professional Corporation
600 Lexington Avenue
New York, NY  10022
Telephone:  (212) 750-8700
Facsimile:  (212) 223-8391
*Attorneys for Defendants and Counterclaim Plaintiffs William M. Sexton and Gerald M. Sherer*

31433919