# EXHIBIT 1

**ZUCKERMAN SPAEDER LLP**

1800 M STREET, NW   WASHINGTON, DC 20036-5802
202.778.1800   202.822.8106 fax   www.zuckerman.com

Norman L. Eisen
202-778-1824
neisen@zuckerman.com

March 14, 2008

**VIA E-MAIL AND FEDERAL EXPRESS**

Honorable Robert D. Drain
United States Bankruptcy Court for the
    Southern District of New York
Alexander Hamilton United States
    Custom House, Room 610
One Bowling Green
New York, New York 10004-1408

    Re:    Adversary Proceeding:    *Grant v. Illinois National Ins. Co., et al.*
           District Court Proceeding:    *Axis Reins. Co. v. Bennett, et al.*
           Index Nos. *08-1129-RDD* and *07-7924-GEL*, et al.

Your Honor:

    As the Court knows, we represent Tone N. Grant. We write in response to the March 12, 2008 letter to Your Honor from counsel for Axis Reinsurance Company (the "Axis Letter"). Axis accuses us of making misrepresentations to this Court about Mr. Grant's need for an order requiring Axis to advance defense costs that "worked a grave injustice . . . to Axis." As Axis well knows, and as we show below, we made no misrepresentations to this Court, and the only injustice here is that suffered by Mr. Grant at the hands of the insurers, including by means of Axis' misconceived letter.

    Mr. Grant is fighting for his liberty in defending a criminal case that goes to trial on March 24, in just 10 days' time. As this Court is well aware, he has also had to fight Refco's insurers on multiple fronts to compel them to honor their contractual obligations to advance his defense costs. He needed this Court's assistance in that regard with respect to Axis in September 2007 and, with Axis' policy now exhausted and his criminal trial only days away, he now seeks this Court's help to require Illinois National to advance defense costs as it promised it would do.

    Axis claims that Mr. Grant misrepresented his urgent need for injunctive relief against Axis because he purportedly knew that another insurer would pay his defense costs. Ironically, that other insurer is Illinois National. As this Court is aware, Illinois National has, on the eve of Mr. Grant's criminal trial, refused to advance any of Mr. Grant's defense costs, showing the

1731443.1

**ZUCKERMAN SPAEDER LLP**

Honorable Robert D. Drain
March 14, 2008
Page 2

same misplaced recalcitrance that Axis previously did.

      Mr. Grant's need for this Court's assistance to require insurers to live up to their obligations is, unfortunately, unchanged from September 2007. It was true then, as it is true now, that the insurers will search for any excuse not to advance Mr. Grant the costs needed to defend his liberty. If there is injustice here, it is that Mr. Grant and his counsel must divert time sorely needed to prepare for his criminal trial to addressing baseless accusations from an insurer disappointed that this Court required it to live up to its contract, and to require another recalcitrant insurer to do the same.

      Fueled by sour grapes, Axis' letter distorts our representations to this Court. Axis says that "Counsel to the Indicted Insureds led Your Honor to believe that, absent payment from AXIS, their clients would not receive a defense in their criminal trials." One would search in vain in the numerous quotations found in Axis' letter for any statement to that effect. We did tell this Court, and it was as true then as it is today, that Mr. Grant faced "uncertainty and the precise chilling effect on the ability to defend the case," that the failure to advance defense costs "irreparably harms [the Indicted Insureds'] ability to mount an effective defense in this case of a criminal indictment," and that the Indicted Insureds' inability "to access defense cost reimbursements will jeopardize their ability to maintain an effective defense." *Axis Letter* at p. 3-4.

      Axis says that these statements were all untrue because "another insurer had already agreed to fund [Mr. Grant's] defense," and undersigned counsel "*knew* – at the time of the hearings – that if this Court did not require AXIS to pay their defense costs, those defense costs would have been paid by another insurer." (Emphasis in original.) According to Axis, we knew this because Illinois National had "already agreed in writing to fund [Mr. Grant's] defense."

      Axis' claim is belied by what Illinois National actually did when asked to pay defense bills. As Mr. Grant's complaint against Illinois National in *Grant v. Illinois National Ins. Co., et al.* (Bankr. S.D.N.Y. 08-1129-RDD) makes clear, Illinois National has abandoned Mr. Grant on the eve of trial and refused to pay the defense bills presented to it. Only an insurer with Axis' fertile imagination could claim that undersigned counsel *knew* in September 2007 that Illinois National would pay their bills when the facts show that Illinois National, when actually presented with bills in February and March 2008, refused to pay them. Axis' claim is, with all due respect, absurd.

      Axis insists, however, that this Court should not look behind the curtain to see what Illinois National actually did when presented with bills. Instead, Axis suggests, this Court should look only to what Illinois National said it would do in its June 8, 2007 letter. As Axis notes, our complaint in the action against Illinois National alleges that "By letter dated June 8, 2007, Illinois

1731443.1

**ZUCKERMAN SPAEDER LLP**

Honorable Robert D. Drain
March 14, 2008
Page 3

National acknowledged its duty to advance defense costs for Mr. Grant's defense costs." Axis ignores, however, the actual June 8 letter, which was attached to the complaint in its entirety. The letter also says:

    1.    That Illinois National's coverage evaluation was "preliminary because the applicability of certain exclusions, terms and conditions cannot be fully determined until the facts are more fully developed."

    2.    That "if there is any valid and collectible insurance which applies to any Loss covered by this Policy, the Insurer shall not be liable for a greater proportion of such Loss than the applicable Limit of Liability under the Policy for such loss bears to the total applicable Limit of Liability of all valid and collectible insurance against them unless such other insurance is written only as specific excess insurance over the Limits of Liability provided by the Policy."

    3.    That "[Illinois National] reserve[s] all of [its] rights and privileges, at law and in equity, under the Policy, including without limitation, the right to apply other provisions or exclusions of the Policy as appropriate, and the right to supplement this coverage evaluation as circumstances may warrant."

It is this letter that Axis claims proves that undersigned counsel "*knew*" Mr. Grant's defense costs would be reimbursed by Illinois National and he had no need for advancement of defense costs by Axis. What we knew from this letter was nothing of the kind, as the foregoing excerpts from the letter (and the remainder of the lengthy qualifications that can be found in that document) demonstrate.

Of course, even if Illinois National had made an unconditional commitment to advance a fraction of defense costs in June 2007, which it did not, and even if Illinois National had lived up to that commitment, which its later conduct shows it would not have done, Mr. Grant would still have faced an urgent need for advancement of defense costs from Axis. The total limits of the Illinois National policy are $5 million, half the $10 million limits of the now-exhausted Axis policy. If Illinois National had begun advancing defense costs in September 2007, and paid at the same rate as Axis did, its policy would have been exhausted by no later than December 2007. Mr. Grant would then have faced the same urgent need he now does to obtain advancement of defense costs from another insurer.

Axis' argument boils down to this: we purportedly made misrepresentations to this Court because we knew Illinois National would advance defense costs and there would then be no need for Axis to do the same. It defies belief that Axis can say we "*knew*" Illinois National would advance defense costs in September 2007 when in fact it refused to do so in March 2008. And even if Illinois National had started to advance defense costs in September 2007, which we now

**ZUCKERMAN SPAEDER LLP**

Honorable Robert D. Drain
March 14, 2008
Page 4

know it would not have done, Mr. Grant would have faced the same urgent need for advancement of defense costs from Axis before the end of 2007.

Our representations to this Court were and are true. Mr. Grant needs this Court to order advancement of defense costs from Refco's insurers because, as evidenced by Axis' letter and

Illinois National's refusal to honor its commitments, those insurers cannot be trusted to fulfill their contractual obligations.

Finally, Axis' letter is an after-the-fact attempt to impose a duty that is contrary to applicable law and that the Court considered and rejected. Axis argued in September 2007 that Mr. Grant and the other insureds had to present factual evidence that they were unable to pay defense costs in order to demonstrate the irreparable harm required for issuance of a preliminary injunction against Axis. If this Court had accepted that argument, then evidence of the Illinois National policy might have been called for.

But this Court, as Axis concedes in its letter at footnote 4, rejected that argument and instead held:

> There may conceivably be circumstances where an additional factual showing would need to be made to establish irreparable harm in this context, but I believe that there's a sufficient record before me to show irreparable harm given the substantial amount of the defense costs, the freezing of the defendants' assets and the fact they're subject to criminal exposure.

*Tone N. Grant, et al. v. Axis Reinsurance Co.*, 07-2005-RDD, Sept. 11, 2007 Hearing Tr. At 67:15-23.

Consistent with its ruling that no "additional factual showing" was required, this Court expressly recognized that the indicted insureds had not "presented any other evidence than the amount of the defense costs and the fact that they are facing a criminal trial in March 2008 and the request for me to take judicial notice of freeze orders. That is, they've not offered evidence as to their financial condition or their law firms' willingness to work with the overhanging uncertainty as to whether they would ultimately be paid for conducting the movants' defense." *Id.* at 55:24-56. Thus, Axis well understands that no evidence was being offered concerning other possible sources for paying Mr. Grant's defense costs, such as the Illinois National policy. The fact that Mr. Grant failed to offer evidence that the Court had specifically found was unnecessary to the motion before the Court (over Axis' vehement objection) can not constitute "concealment."

1731443.1

 **ZUCKERMAN SPAEDER LLP**

Honorable Robert D. Drain
March 14, 2008
Page 5

      We regret the need to burden this Court with a lengthy discussion of these issues. As we trust the Court will appreciate, we felt compelled to respond fully to Axis' claims. As shown above, those claims are, like so many of the other arguments Axis has presented to this Court and its sister federal courts in this matter, wrong. If the Court would like further information on any of these issues, we would be pleased to provide it.

      Respectfully submitted,

      ZUCKERMAN SPAEDER LLP

      */s/ Norman L. Eisen*
      Norman L. Eisen

cc:    All counsel of record (via e-mail)
       Hon. Gerald E. Lynch (via Federal Express)