UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- X

IN RE:                               :

                                  :       No. 07-CV-07924-GEL

    AXIS   REINSURANCE   COMPANY   REFCO :
    RELATED INSURANCE LITIGATION      :

                                  :

-------------------------------------------------------------------- X

## <u>AMENDED COMPLAINT</u>

1.     AXIS Reinsurance Company ("AXIS"), by and through its undersigned

counsel, as and for its Complaint against defendants Phillip R. Bennett, Leo R. Breitman,

Nathan Gantcher, Tone Grant, David V. Harkins, Scott L. Jaeckel, Dennis A. Klejna,

Thomas H. Lee, Santo C. Maggio, Joseph Murphy, Richard Outridge, Ronald L.

O'Kelley, Scott A. Schoen, William M. Sexton, Gerald Sherer, Philip Silverman, and

Robert C. Trosten (collectively "Insureds"), allege as follows upon personal knowledge

as to its own acts and status, and upon information and belief as to all other matters:

## NATURE OF THE ACTION

2.     This action concerns an actual controversy between AXIS and the

Insureds, regarding a contract of excess directors, officers and corporate liability

insurance between AXIS and the Insureds.

3.     Refco, Inc. ("Refco"),[1] and at least some of its directors and officers,

engaged in a massive fraud involving hundreds of millions of dollars.  Refco's insurers

were also victims of this fraud.  The representations and documents AXIS relied upon

when evaluating the risk and deciding whether or not to insure Refco's directors and

officers, turned out to be false.

4.     AXIS bound coverage for an excess directors, officers and corporate

liability insurance policy issued to Refco for claims made during the period from August

11, 2005 to August 11, 2006 (the "AXIS Policy").  The AXIS Policy follows the terms

and conditions of the primary policy, or more restrictive underlying excess policy.  The

---

[1] The name "Refco," as used throughout this complaint, refers to Refco, Inc., the publicly traded company
formed pursuant to the August 2005 initial public offering, as well as to Refco Group Ltd., LLC, the
company through which Refco's business was primarily conducted prior to the IPO. "Refco" also refers to
subsidiaries of Refco, Inc. and Refco Group Ltd., LLC.

AXIS Policy also contains its own terms and conditions which further restrict coverage otherwise provided by the primary or first excess policies.

5.    Since October 11, 2005, various lawsuits, criminal, governmental and/or regulatory investigations (the "Noticed Matters") involving certain individuals insured under the AXIS Policy have been instituted and those individuals have sought coverage for the Noticed Matters under the AXIS Policy.

6.    AXIS denied coverage for the Noticed Matters on March 6, 2006, based on various terms and conditions of the AXIS Policy, including a warranty received during the underwriting of the AXIS Policy.  For over a year, none of the Insureds responded to AXIS's declination of coverage.

7.    Since March 6, 2006, AXIS has received notice from certain of the Insureds of several other matters related to the Noticed Matters, and AXIS has denied coverage for these other matters (the "Related Matters") based on various terms and conditions of the AXIS Policy, including a warranty received during the underwriting of the AXIS Policy.

8.    AXIS is the third layer of directors, officers and corporate liability insurance coverage.  The two layers below AXIS have reserved rights, but not declined coverage.

9.    The primary layer has exhausted its $10 million limit of liability, subject to its reservation of rights, through the payment of Insureds' defense costs.  The $7.5 million first excess insurer has also exhausted its limit of liability, subject to its reservation of rights, through payment of Insureds' defense costs.

10.    The Insureds now seek to retain AXIS's reimbursement of their defense costs.    However, AXIS has denied coverage based, in part, on specific terms and conditions present in the AXIS Policy (including a warranty received during the underwriting of the AXIS Policy) not present in the primary or first excess policy.

11.    AXIS seeks a declaration that the AXIS Policy does not provide coverage to Insureds for the Noticed Matters or the Related Matters.    An actual controversy exists between Plaintiff and Defendants, and Plaintiff seeks a declaratory judgment or other relief from the Court resolving this dispute in its favor.

## JURISDICTION AND VENUE

12.    This Court has jurisdiction over the parties and the subject matter of this complaint pursuant to 28 U.S.C. §1334(a).  AXIS filed an adversary proceeding at *In re Refco*, Bankr. S.D.N.Y (07-1712-RDD).    Certain Insureds subsequently filed an adversary proceeding at *In re Refco*, Bankr. S.D.N.Y. (07-2005-RDD).  AXIS moved by order to show cause to withdraw the reference for AXIS's adversary complaint and the Insureds' adversary complaint pursuant to 28 U.S.C. §157(d).

13.    This Court also has jurisdiction over the parties and the subject matter of this complaint pursuant to 28 U.S.C. §1367(a).  The instant complaint is related to and supplemental to *In re Refco, Inc. Securities Litigation*, S.D.N.Y. (05-8626-GEL).

14.    Finally, this Court has jurisdiction over the parties and the subject matter of this complaint pursuant to 28 U.S.C. § 1367(a). Certain defendants filed counterclaims to AXIS's adversary complaint, filed at *In re Refco*, Bankr. S.D.N.Y (07-1712-RDD). AXIS moved by order to show cause to withdraw the reference for the counterclaims to

AXIS's adversary complaint pursuant to 28 U.S.C. §157(d). The instant complaint is related to and supplemental to those counterclaims.

15.    Venue is proper pursuant to 28 U.S.C. § 1391(b).

## PARTIES

16.    AXIS is an insurance company that is organized and exists pursuant to the laws of the state of New York. AXIS has its principal place of business in New York.

17.    Defendant Phillip R. Bennett ("Bennett") served as the Chairman, President and Chief Executive Officer of Refco until October 2005, when he took a leave of absence at the request of the Refco board of directors. Upon information and belief, Bennett is a citizen of New Jersey.

18.    Defendant Leo R. Breitman ("Breitman") served as a Director of Refco and member of the Audit Committee at times relevant to this action. Upon information and belief, Breitman is a citizen of Florida.

19.    Defendant Nathan Gantcher ("Gantcher") served as a Director of Refco and member of the Audit Committee at times relevant to this action. Upon information and belief, Gantcher is a citizen of New York.

20.    Defendant Tone Grant ("Grant") served as President and Chief Executive Officer of Refco Group Ltd., LLC at times relevant to this action. Upon information and belief, Grant is a citizen of Illinois.

21.    Defendant David V. Harkins ("Harkins") served as a Director of Refco at times relevant to this action. Upon information and belief, Harkins is a citizen of Massachusetts.

22.    Defendant Scott L. Jaeckel ("Jaeckel") served as a Director of Refco at times relevant to this action.  Upon information and belief, Jaeckel is a citizen of Massachusetts.

23.    Defendant Dennis A. Klejna ("Klejna") served as Executive Vice President and General Counsel of Refco Group Ltd., LLC at times relevant to this action. Upon information and belief, Klejna is a citizen of Washington D.C..

24.    Defendant Thomas H. Lee ("Lee") served as a Director of Refco at times relevant to this action.  Upon information and belief, Lee is a citizen of New York.

25.    Defendant Santo C. Maggio ("Maggio") served as President and Chief Executive Officer of Refco Securities, LLC and Refco Capital Markets, Ltd. at times relevant to this action.  Upon information and belief, Maggio is a citizen of Florida.

26.    Defendant Joseph Murphy ("Murphy") served as Executive Vice President of Refco Group and was responsible for global marketing since 1999.  Murphy was also President of various Refco subsidiaries, including Refco Futures and Westminster Refco at times relevant to this action.  Upon information and belief, Murphy is a citizen of New Jersey.

27.    Defendant Richard Outridge ("Outridge") served as the Controller of Refco Capital Markets, Ltd. from June 2001 through March 2004, and thereafter served as its chief financial officer.

28.    Defendant Ronald L. O'Kelley ("O'Kelley") served as a Director of Refco at times relevant to this action.  Upon information and belief, O'Kelley is a citizen of Florida.

29.   Defendant Scott A. Schoen ("Schoen") served as a Director of Refco at times relevant to this action.  Upon information and belief, Schoen is a citizen of Massachusetts.

30.   Defendant William M. Sexton ("Sexton") served as Executive Vice President and Chief Operating Officer of Refco at times relevant to this action.  Sexton also briefly served as Chief Executive Officer of Refco.  Upon information and belief, Sexton is a citizen of Iowa.

31.   Defendant Gerald Sherer ("Sherer") served as Executive Vice President and Chief Financial Officer of Refco at times relevant to this action.  Upon information and belief, Sherer is a citizen of New York.

32.   Defendant Philip Silverman ("Silverman") served as Secretary of Refco Group Holdings, Inc. at times relevant to this action.  Silverman also served as Secretary of various Refco subsidiaries and Controller of Refco Group.  Upon information and belief, Silverman is a citizen of New Jersey.

33.   Defendant Robert C. Trosten ("Trosten") served as Executive Vice President and Chief Financial Officer of Refco Group Ltd., LLC at times relevant to this action.  Upon information and belief, Trosten is a citizen of New Jersey.

34.   The true names and capacities of DOES 1 to 10 are currently unknown to Plaintiff, and therefore, Plaintiff sues those Defendants by such fictitious names.  Upon information and belief, each fictitiously named Defendant is an Insured which may seek coverage under the AXIS Policy.  Plaintiff is entitled to the relief sought herein against the fictitious Defendants, and therefore, sues these Defendants by such fictitious names.

Plaintiff will seek leave to insert the true names and capacities of these fictitiously named Defendants, together with charging allegations, when obtained, if not already set forth herein.

## THE D&O INSURANCE POLICIES

35.    The AXIS Policy is an excess directors, officers and corporate liability policy. It has a policy period of August 11, 2005 to August 11, 2006 and a limit of liability of $10 million excess of $17.5 million in underlying insurance. A true, complete and accurate copy of the AXIS Policy is attached as Exhibit A to the Original AXIS Complaint, filed September 10, 2007 (the "Original AXIS Complaint").

36.    Various other insurers issued underlying insurance policies to Refco. U.S. Specialty Insurance Company (the "Primary Insurer") issued a primary policy with a limit of liability of $10 million excess of applicable self insured retentions (the "Primary Policy"). A true, complete and accurate copy of the Primary Policy is attached as Exhibit B to the Original AXIS Complaint. Lexington Insurance Company (the "First Excess Insurer") issued a first excess policy with a limit of liability of $7.5 million excess of $10 million (the "First Excess Policy"). A true, complete and accurate copy of the First Excess Policy is attached as Exhibit C to the Original AXIS Complaint.

37.    AXIS is aware of other policies issued to Refco which are excess of the AXIS Policy. However, the terms and conditions of these policies are not relevant to this action.

38.    In general, the AXIS Policy applies "in conformance with the provisions of the applicable Primary Policy and, to the extent coverage is further limited or restricted

thereby, to [the First Excess Policy]." AXIS Policy, Section I. However, the AXIS Policy also contains its own provisions which further limit or restrict coverage otherwise provided by the Primary Policy or the First Excess Policy. The AXIS Policy provides that "[i]n no event shall this Policy grant broader coverage than would be provided by the most restrictive policy constituting part of the applicable Underlying Insurance." *Id.*

39.    Subject to all of the terms and conditions, the AXIS Policy affords five types of specified coverage. First, the AXIS Policy insures covered loss incurred by the directors and officers of Refco and its subsidiaries for claims made against them if such loss is not indemnified by Refco. *See* Primary Policy, Insuring Agreement A. Coverage under Insuring Agreement A, and only coverage under Insuring Agreement A, is deemed non-rescindable. *See* Primary Policy, Endorsement 13.

40.    Second, the AXIS Policy insures Refco and its subsidiaries to the extent they indemnify any directors or officers for covered loss in connection with claims made against the officers or directors. *See* Primary Policy Insuring Agreement B(1).

41.    Third, the AXIS Policy insures Refco and its subsidiaries for covered loss in connection with "Securities Claims" (as defined in the Primary Policy) asserted against them. *See* Primary Policy, Insuring Agreement B(2).

42.    Fourth, the AXIS Policy recognizes depletion of the Primary Policy's limit of liability as a result of the Primary Policy's $250,000 sub-limit for "Derivative Demand Investigative Costs" (as defined in the Primary Policy) incurred in connection with any derivative demand received by Refco's Board of Directors. *See* Primary Policy Endorsement No. 11.

43. Fifth, the AXIS Policy insures the "Controlling Shareholder" (defined as Bennett in the Primary Policy) for covered loss incurred in connection with "Securities Claims" (as defined in the Primary Policy) asserted against him, provided one or more other individual insureds and/or Refco are, and remain, co-defendants in such "Securities Claim" along with the "Controlling Shareholder." *See* Primary Policy Endorsement No. 15.

44. The AXIS Policy (and the Primary and First Excess Policies) does not provide a duty to defend the insureds against claims made against them. Instead, the Primary Policy provides that the "Insureds must defend any Claim made against them." Primary Policy Condition D(1). The Primary Policy provides that the Primary Insurer will advance **covered** defense costs on an as-incurred basis in excess of the retention amount. Primary Policy, Condition (D)(2).

45. Pursuant to the Bankruptcy Court's March 27, 2006 Order in *In re Refco Inc.*, Case No. 05-60006 (Doc. No. 1567, Bankr. S.D.N.Y.), the Primary Insurer advanced defense costs to the insureds on an as-incurred basis. The First Excess Insurer has taken the position that the First Excess Policy does not provide coverage for defense costs in connection with claims otherwise covered under the Primary Policy. Nevertheless, the First Excess Insurer agreed to advance defense costs, upon exhaustion of the Primary Policy's limit of liability, provided the insureds provide an undertaking – in the event it is determined that the First Excess Policy does not provide coverage for defense costs, each of the insureds must agree to repay defense costs advanced by the

First Excess Insurer.  *See* July 26, 2006 letter on behalf of Lexington Insurance

Company, attached as Exhibit D to the Original AXIS Complaint.

> 46.    In connection with the underwriting of the AXIS Policy, AXIS requested

and received a warranty letter (the "Warranty") which provides as follows:

> (a) No person(s) or entity(ies) proposed for this insurance is cognizant of any fact,
> circumstance, situation, act, error or omission which he/she/it has reason to suppose
> might afford grounds for any Claim, as such term is defined within the Policy, such as
> would fall within the scope of the proposed insurance, EXCEPT: [Louis Capital Markets,
> LP v. Refco Group Ltd., LLC, et al.]
>
> (b) No person(s) or entity(ies) proposed for this insurance is cognizant of any inquiry,
> investigation or communication which he/she/it has reason to suppose might give rise to a
> Claim, as such term is defined within the Policy, such as would fall within the scope of
> the proposed insurance.
>
> It is agreed by the undersigned on behalf of all Insureds under the Policy, that with
> respect to the above statements, that if such knowledge exists, any claim arising
> therefrom is excluded from the proposed insurance.

The Warranty is dated January 14, 2005, and was signed by Phillip Bennett, "on behalf of

all Insureds under the Policy," on January 21, 2005.  A true, accurate, and complete copy

of the Warranty is attached as Exhibit E to the Original AXIS Complaint.

> 47.    The AXIS Policy contains a Manuscript Application Endorsement at

Endorsement 5, stating:

> In consideration of the premium charged, it is agreed by the Insurer and the Insureds that
> the application or proposal signed *February 8, 2005* and submitted to *AXIS Reinsurance
> Company* on *U.S. Specialty Insurance Company's* form shall be accepted by the Insurer
> as the Application for this Policy.
>
> Any and all references to an Application or application in this Policy shall mean the
> application or proposal described above.  The Insurer has relied upon all statements,
> warranties and other information and documents contained in or submitted with such
> other application or proposal as if they were submitted directly to Insurer using its own
> Application form.

Endorsement 5 is marked effective August 11, 2005 and is dated September 11, 2005.

48.     The February 8, 2005 application (the "Application") submitted to AXIS

asks at Question 12:

(a)     Have any claims been made during the last 5 years against any person or entity
proposed for this insurance in his or her capacity as a director, officer or trustee of any
corporation or organization? __ Yes        __ No
If yes, please provide complete details (use a separate sheet of paper, if necessary):

(b)     Is any person or entity proposed for this insurance aware of any fact,
circumstance or situation involving the Applicant or any Insured Person or Organization
which he, she or it has reason to believe might result in a claim being made?
__ Yes __ No
If yes, please provide complete details (use a separate sheet of paper, if necessary):

Without prejudice to any other rights of the Insurer, it is understood and agreed that the
Insurer will not be liable under any policy that may be issued on the basis of this
Application to make any payment of Loss, including Defense Costs, in connection with
any Claim arising out of, based upon or attributable to any claim, fact, circumstance or
situation disclosed or required to be disclosed in response to questions 12(a) and 12(b).

Neither box was checked for Questions 12(a) and 12(b).  A true and accurate copy of the

February 8, 2005 application (without attachments) is attached as Exhibit F to the

Original AXIS Complaint.

49.     The Application was signed by Phillip Bennett on February 8, 2005.

Under Bennett's signature, the following words appear, "Note: This Application must be

signed by the President and/or CEO of the Applicant **acting as the authorized agent of**

**the persons and entity(ies) proposed for this insurance**." (emphasis added).

50.     The AXIS Policy also contains a Knowledge Exclusion Endorsement at

Endorsement 6 which states:

In consideration of the premium charged, it is agreed that this Policy does not respond to
Claims based upon, arising out of, directly or indirectly resulting from, in consequence
of, or in any way involving any fact, circumstance, situation, transaction, or event, which
as of the inception date of the Policy Period, any Insured had knowledge and had reason
to suppose might give rise to a Claim that would fall within the scope of the insurance
afforded by this Policy.

Endorsement 6 is marked effective August 11, 2005 and is dated September 11, 2005.

51.    The AXIS Policy provides, at Clause XI:

The Insurer shall not be liable for any amount in any Claim taking place during the Policy Period and arising under any Insurance Product, which is based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving:

A.    Any demand, suit or other proceeding pending, or order, decree of judgment entered, against any Insured on or prior to the Pending or Prior Claim Date set forth in Item 7 of the Declarations [June 4, 2004] or any wrongful act, fact, circumstance or situation underlying or alleged therein; or

B.    Any other wrongful act, fact, circumstance or situation whenever occurring, which together with a wrongful act, fact, circumstance or situation described in (a) above are causally or logically interrelated by a common nexus.

52.    On March 6, 2006, AXIS disclaimed coverage for the Noticed Matters based on: (1) the Warranty; (2) the Manuscript Application Endorsement and question 12 of the Application; (3) the Knowledge Exclusion Endorsement; and (4) the claim made date. A true, accurate, and complete copy of the March 6, 2006 letter denying coverage is attached as Exhibit G to the Original AXIS Complaint.

53.    At various times after March 6, 2006, Insureds provided AXIS with notices of the Related Matters and AXIS responded that each was related to the Noticed Matters for which AXIS denied coverage. AXIS's response to each of the Related Matters was to incorporate the March 6, 2006 letter.

## THE REFCO SCANDAL

54.    The AXIS Policy incepted on August 11, 2005. On the same day, Refco conducted its initial public offering.

55.    Two months later, on October 10, 2005, Refco issued a press release. The press release announced that Refco had been carrying an undisclosed receivable of $430 million from an entity controlled by Bennett. Refco stated that "[b]ased on the results of

the review to date, the Company believes that the receivable was the result of the assumption by an entity controlled by Mr. Bennett of certain historical obligations owed by unrelated third parties to the Company, which may have been uncollectible." Moreover, Refco stated that although the receivable "was reflected on the Company's prior period financials, as well as on the Company's May 31, 2005 balance sheet", the receivable "was not shown as a related party transaction in any such financials. For that reason, and after consultation by the Audit Committee with the Company's independent accountants, the Company determined, on October 9, 2005, that its financial statements, as of, and for the periods ended, February 28, 2002, February 28, 2003, February 28, 2004, February 28, 2005, and May 31, 2005, taken as a whole, for each of Refco Inc., Refco Group Ltd., LLC and Refco Finance, Inc. should no longer be relied upon."

56. Many of these financial statements were part of the application AXIS expressly relied upon when deciding whether or not to enter into the insurance contract.

57. On October 11, 2005, Refco issued a second press release. The press release announced that Bennett had repaid the $430 million receivable in full. The press release also provided further information on the nature of the receivable: "Based on the results of the internal investigation to date, the Company believes that the receivable consisted in major part of uncollectible historical obligations owed by unrelated third parties to the Company, that arose as far back as at least 1998. These obligations were transferred periodically to the entity controlled by Mr. Bennett, and the Company's books and records then reflected a receivable from that entity, rather than a receivable from the originating accounts. The fact that the receivable was from a company controlled by Mr.

Bennett was hidden at the end of quarterly and annual reporting periods by reason of transfers to a third party customer account that we currently believe is unaffiliated with Mr. Bennett or anyone else at the Company."

58.    On October 11, 2005, Refco filed the October 10, 2005 and October 11, 2005 press releases with the U.S. Securities and Exchange Commission (the "SEC").

59.    On October 17, 2005, Refco and certain of its unregulated subsidiaries filed for protection under Chapter 11 of the Bankruptcy Code.

60.    On November 10, 2005, Bennett was indicted on charges of securities fraud, conspiracy to commit securities fraud, false filings to the SEC, and wire fraud. A true, accurate and complete copy of the publicly available indictment (the "Bennett Indictment") is attached as Exhibit H to the Original AXIS Complaint.

61.    According to the Bennett Indictment, Bennett "sought to hide from, among others, Refco's auditors and investors, losses sustained by Refco through its own and its customers' trading in the financial markets. To that end, Bennett transferred losses from Refco to a company controlled by Bennett, directed a repeated series of transactions designed to conceal those losses at year- and quarter-end from Refco's auditors and others, and caused Refco to make false and fraudulent public filings with the [SEC]." Bennett Indictment, at ¶ 4.

62.    The Bennett Indictment alleges that, as part of its brokerage business, Refco extended credit to customers for their securities and commodities trading. When certain customers were unable to repay that credit, rather than noting the losses on Refco's balance sheet, Bennett directed the transfer of those losses to an entity called

Refco Group Holdings, Inc. ("RGHI"), which he controlled. As a result, Refco's balance sheet showed a receivable from RGHI.

63.    According to the Bennett Indictment, beginning in or around 1999, Bennett took steps to hide the RGHI receivable from Refco's auditors. Specifically, Bennett arranged transactions with third parties to temporarily pay down the RGHI receivable at quarter- or year-end and mask the related-party nature of the RGHI debt.

64.    According to the Bennett Indictment, Bennett caused Refco to enter into certain transactions at the close of Refco's fiscal year ending February 2004 that had the effect of temporarily hiding RGHI's debt to Refco (the "February 2004 Transactions"). On or about February 20, 2004, Bennett allegedly caused Refco Capital Markets, Ltd. to loan approximately $720 million to a Refco customer. On the same day, the customer loaned $720 million to RGHI. RGHI then used the $720 million to pay down its debt to Refco. These loans were unwound on or about March 4, 2004, after Refco's fiscal year-end.

65.    According to the Bennett Indictment, Bennett executed the loan agreement between the Refco customer and RGHI. In addition, Bennett allegedly signed a letter of guaranty stating that Refco Group, ltd. would repay the customer $720 million if RGHI defaulted.

66.    According to the Bennett Indictment, Bennett caused Refco to enter into certain transactions at the close of Refco's fiscal year ending February 2005 that had the effect of temporarily hiding RGHI's debt to Refco (the "February 2005 Transactions)". On or about February 23, 2005, Bennett allegedly caused Refco Capital Markets, Ltd. to

loan approximately $345 million to a Refco customer. On the same day, the customer loaned $345 million to RGHI. RGHI then used the $345 million to pay down its debt to Refco. These loans were unwound on or about March 8, 2005, after Refco's fiscal year-end.

67.    According to the Bennett Indictment, Bennett executed the loan agreement between the Refco customer and RGHI. In addition, Bennett allegedly signed a letter of guaranty stating that Refco Group, Ltd. would repay the customer $345 million if RGHI defaulted.

68.    According to the Bennett Indictment, Bennett caused Refco to enter into certain transactions at the close of Refco's fiscal first quarter end for 2005 that had the effect of temporarily hiding RGHI's debt to Refco (the "May 2005 Transactions"). On or about May 25, 2005, Bennett allegedly caused Refco Capital Markets, Ltd. to loan approximately $450 million to a Refco customer. On the same day, the customer loaned $450 million to RGHI. RGHI then used the $450 million pay down its debt to Refco. These loans were unwound on or about June 6, 2005, after Refco's fiscal first quarter-end.

69.    According to the Bennett Indictment, Bennett executed the loan agreement between the Refco customer and RGHI. In addition, Bennett allegedly signed a letter of guaranty stating that Refco Group, Ltd. would repay the customer $450 million if RGHI defaulted.

70.    On October 24, 2006, Trosten was indicted on charges of conspiracy, securities fraud, and wire fraud. A true, accurate and complete copy of the publicly

available indictment (the "Trosten Indictment") is attached as Exhibit I to the Original AXIS Complaint.

71.     According to the Trosten Indictment, Trosten "lied to Refco's auditors about the existence and size of related party debts and transactions between RGHI and Refco."

72.     According to the Trosten Indictment, Trosten "concealed the size and related party nature of the debt owed by RGHI to Refco by causing Refco and others to carry out loan transactions over fiscal year-end and fiscal quarter-end dates to move the RGHI receivable to one or more Refco customers."

73.     According to the Trosten Indictment, on or about April 27, 2004, Trosten "signed a letter to Refco's auditors representing, among other things, that all related party transactions and related party amounts receivable had been fully disclosed to the auditors." Nevertheless, on or about August 5, 2004, Bennett transferred approximately $48 million from RGHI to Trosten.

74.     In addition to the foregoing, Bennett and Trosten were not the only people at Refco who knew of the ongoing fraud. On January 16, 2007, Grant was indicted on charges of conspiracy, securities fraud, wire fraud, bank fraud, and money laundering. A true, accurate, and complete copy of the publicly available indictment (the "Grant Indictment") is attached as Exhibit J to the Original AXIS Complaint.

75.     On March 30, 2007, the government filed a memorandum of law detailing some of the evidence the government expected to introduce against Grant at trial. A true,

accurate, and complete copy of the government's memorandum of law (the "Grant Memo") is attached as Exhibit K to the Original AXIS Complaint.

76.    According to the Grant Memo, "by February 1999, prior to the close of Refco's fiscal year, Grant was fully briefed, in Refco's offices on the core issues of the fraud: the round-trip loan transactions set forth in the Indictment; that Refco had covered up several of the large losses set forth in the Indictment; and that Refco had been moving expenses (including a large portion of its computer expenses) off of Refco's books and on to the parent company's books."

77.    According to the Grant Memo, "[d]urring the interval between 1999 and 2004, the evidence will show that Grant continued to discuss with Sandy Maggio, a Refco executive, the continuing financial problems at Refco, including continued rolling fails, where Refco, because it was using customer money to cover its financial losses, purposefully failed to cover its daily cash obligations to its creditors."

78.    According to the Grant Memo, "in May 2004, prior to the LBO, Bennett met with Grant for the purpose of fully discussing with him the structure of the LBO and how, through the LBO, Bennett and Grant were going to deal with the more than $1 billion debt that they (as owners of RGHI) owed to Refco."

79.    According to the Grant Memo, "Grant was a knowing and active participant from as early as 1997, had full knowledge of the means used to hide Refco's losses as of at least February 1999, and stood to reap a 50% share of the rewards of the fraud if it were successful. Between 1999 and 2004, while Grant had no day-to-day role in running Refco, he was intermittently briefed by Bennett and Santo Maggio, another

Refco executive, on the status of Refco's ongoing economic troubles, including on the status of the massive debt from RGHI to Refco."

80.    The Grant Memo further notes that Grant "was not on the periphery of the fraud, he was a founding member and had full knowledge of its methods by 1999."

81.    According to the Grant Memo, the government expects Maggio to testify that "on several occasions prior to the May 2004 meeting between Grant and Bennett, Maggio expressed concern to Bennett about the increasingly dire financial circumstances at Refco. In response, Bennett told Maggio, in substance and in part, that he was keeping Grant abreast of ths [sic] situation at Refco (including that the company's situation was not as reflected on its books), and that Maggio was not alone in that he, Grant and Bennet [sic] were /in [sic] it together.6 [sic] Bennett further stated, in substance, that if the fraud were to be discovered, Bennett told Grant that Bennett was not going to be alone (e.g., Grant would be responsible as well)."

82.    Based on his knowledge of the RGHI receivables to Refco, the February 2004 Transactions, the February 2005 Transactions, the May 2005 Transactions, the allegations in the Trosten Indictment and the allegations in the Grant Memo, as of August 11, 2005, Bennett possessed knowledge of facts, circumstances, situations, transactions, or events, which he had reason to suppose might give rise to a "claim" (as that term is defined in the Primary Policy) that would fall within the scope of the insurance afforded by the AXIS Policy.

83.    Based on his knowledge of the RGHI receivables to Refco, the February 2004 Transactions, the allegations in the Trosten Indictment, and the allegations in the

Grant Memo, as of January 14, 2005, Bennett possessed knowledge of facts, circumstances, situations, acts, errors or omissions which he had reason to suppose might afford grounds for a "claim" (as that term is defined in the Primary Policy) such as would fall within the scope of the AXIS Policy.

84.    Based on his knowledge of the RGHI receivables to Refco, the February 2004 Transactions, the February 2005 Transactions, the allegations in the Trosten Indictment, and the allegations in the Grant Memo, as of February 8, 2005, Bennett was aware of facts, circumstances or situations involving Refco which Bennett had reason to believe might result in a "claim" (as that term is defined in the Primary Policy) being made.

## THE NOTICED MATTERS

85.    Beginning on October 11, 2005, various lawsuits were filed against the Defendants.

86.    On October 13, 2005, AXIS received notice of <u>Frontpoint Financial Services Fund, LP, On Behalf of Plaintiff and All Others Similarly Situated v. Refco, Inc., Phillip R. Bennett, Gerald M. Sherer, Leo R. Breitman, David V. Harkins, Scott L. Jaeckel, Thomas H. Lee, Ronald L. O'Kelley, Scott A. Schoen, Credit Suisse First Boston LLC, Goldman, Sachs & Co.</u>, No. 05-cv-08663-GEL, (S.D.N.Y. 10/11/05).

87.    On October 13, 2005, AXIS received notice of <u>Jonathan Glaubach, Individually and on Behalf of all Others Similarly Situated v. Refco Inc., Phillip R. Bennett, Gerald Sherer, Leo R. Breitman, Nathan Gantcher, David V. Harkins, Scott L.</u>

Jaeckel, Thomas H. Lee, Ronald L. O'Kelley and Scott A. Schoen, No. 05-cv-08692, (S.D.N.Y. 10/12/05).

88.    On October 13, 2005, AXIS received notice of Miriam Lieber, Individually And On Behalf of All Others Similarly Situated v. Refco, Inc., Phillip R. Bennett, Gerald M. Sherer, Credit Suisse First Boston LLC, Goldman, Sachs & Co., Banc of America Securities, LLC., Merrilly Lynch, Pierce, Fenner & Smith Incorporated, Deutsche Bank Securities, Inc., J.P. Morgan Securities Inc., and Grant Thornton LLP, No. 05-cv-08667-LAP, (S.D.N.Y. 10/12/05).

89.    On October 13, 2005, AXIS received notice of United States of America v. Phillip R. Bennett, No. 05-MAG-1720, (S.D.N.Y. 10/12/05).

90.    On October 27, 2005, AXIS received notice of Todd Weiss, Individually and On Behalf of All Others Similarly Situated v. Phillip R. Bennett and Gerald M. Sherer, No. 05-cv-08691-GEL, (S.D.N.Y. 10/12/05).

91.    On October 18, 2005, AXIS received notice of Varun Mehta, Derivatively on Behalf of Refco Inc. v. Phillip R. Bennett, William J. Sexton, Gerald M. Sherer, Joseph J. Murphy, Leo R. Breitman, Nathan Gantcher, David V. Harkins, Scott L. Jaeckel, Thomas H. Lee, Ronald L. O'Kelley, Scott A. Schoen, Credit Suisse First Boston, Goldman, Sachs & Co., Banc Of America Securities LLC, Deutsche Bank Securities, JP Morgan, Merrill Lynch & Co., Sandler O'Neill & Partners, L.P., HSBC And Thomas H. Lee Partners, L.P., and Refco, Inc., A Delaware corporation, No. 05-cv-08748, (S.D.N.Y. 10/14/05).

92.     On October 18, 2005, AXIS received notice of <u>Anthony L. Wakefield,</u> <u>Individually and on Behalf of All Others Similarly Situated v. Refco, Inc., Phillip R.</u> <u>Bennett, Gerald J. Sherer, Leo R. Breitman, Nathan Gantcher, David V. Harkins, Scott L.</u> <u>Jaeckel, Thomas H. Lee, Ronald L. O'Kelley, Scott A. Schoen, Credit Suisse First</u> <u>Boston LLC, Goldman, Sachs & Co., Banc Of America Securities, LLC, Merrill Lynch,</u> <u>Pierce, Fenner & Smith Inc. Deutsche Bank Securities, Inc., J.P. Morgan Securities Inc.,</u> <u>Sandler O'Neill & Partners, L.P., HSBC Securities (USA) Inc., William Blaire &</u> <u>Company, L.L.C., Harris Nesbitt Corp., CMG Institutional Trading, LLC, Samuel A.</u> <u>Ramirez & Company, Inc., Muriel Siebert & Co., Inc., The Williams Capital Group, L.P.,</u> <u>and Utendahl Capital Partners, L.P.</u>, No. 05-cv-08742-GEL, (S.D.N.Y. 10/14/05).

93.     On October 28, 2005, AXIS received notice of <u>Banesco Holding C.A.,</u> <u>Banesco International Bank Corp., Banesco International Bank Inc. and Banesco Banco</u> <u>Universal C.A. Panama Branch v. Refco, Inc. and Refco Capital Markets, Ltd.</u>, No. 05603681 (Supreme Court of New York, 10/17/05).

94.     On October 28, 2005, AXIS received notice of <u>Miura Financial Services v.</u> <u>Refco, Inc. and Refco Capital Markets, Ltd.</u>, No. 05603682 (Supreme Court of New York, 10/17/05).

95.     On October 28, 2005, AXIS received notice of <u>Multiplicas Casa De Bolsa</u> <u>v. Refco, Inc. and Refco Capital Markets, Ltd.</u>, No. 05603683 (Supreme Court of New York, 10/17/05).

96.     On October 21, 2005, AXIS received notice of <u>Jacob Baker, Individually</u>
<u>and On Behalf of All Others Similarly Situated v. Phillip R. Bennett and Gerald M.</u>
<u>Sherer</u>, No. 05-cv-08923, (S.D.N.Y. 10/19/05).

97.     On October 21, 2005, AXIS received notice of <u>Craig Becker, On Behalf of</u>
<u>Himself and All Others Similarly Situated v. Refco, Inc., Phillip R. Bennett, Gerald M.</u>
<u>Sherer, Leo R. Brietman, David H. Harkins, Scott L. Jaeckel, Thomas H. Lee, Ronald L.</u>
<u>O'Kelley, Scott A. Schoen, Grant Thornton, LLP, Credit Suisse First Boston LLC,</u>
<u>Goldman, Sachs & Co., Banc of America Securities LLC, Liberty Corner Capital, Refco</u>
<u>Group Holdings Inc.</u>, No. 05-cv-08929-GEL, (S.D.N.Y. 10/20/05).

98.     On October 21, 2005, AXIS received notice of <u>Bruce Nathanson,</u>
<u>Individually and On Behalf of All Others Similarly Situated v. Phillip R. Bennett, Gerald</u>
<u>M. Sherer, Leo R. Breitman, Nathan Gantcher, David V. Harkins, Scott L. Jaeckel,</u>
<u>Thomas H. Lee, Ronald L. O'Kelley, Scott A. Schoen, Grant Thornton LLP, Credit</u>
<u>Suisse First Boston, Goldman, Sachs & Co., Banc of America Securities LLC, Merrill</u>
<u>Lynch, Pierce, Fenner & Smith Incorporated, Deutsche Bank Securities, Inc., JP Morgan</u>
<u>Securities Inc., Liberty Corner Capital, and Refco Group Holdings Inc.</u>, No. 05-cv-
08926-GEL, (S.D.N.Y. 10/20/05).

99.     On October 25, 2005, AXIS received notice of <u>American Financial</u>
<u>International Group – Asia, LLC, individually and on behalf of all other similarly situated</u>
<u>v. Refco, Inc., Refco F/X Associates, LLC, Phillip R. Bennett and Does 1 through 50, et</u>
<u>al.</u>, No. 05-cv-08988-PKC, (S.D.N.Y. 10/21/05).

100.    On October 25, 2005, AXIS received notice of <u>Ravindra Mettupatti v.</u>
<u>Phillip R. Bennett, Gerald M. Sherer, Leo R. Breitman, Nathan Gantcher, David Harkins,</u>
<u>Scott L. Jaeckel, Thomas Lee, Ronald L. O'Kelley, Scott A. Schoen,  Credit Suisse First</u>
<u>Boston LLC, Goldman, Sachs & Co., Banc of America Securities LLC,  Deutsche Bank</u>
<u>Securities Inc., JP Morgan Securities Inc., Pierce, Fenner & Smith Inc.</u>, No. 05-cv-09048,
(S.D.N.Y. 10/24/05).

101.    On October 27, 2005, AXIS received notice of <u>Todd Weiss, Individually</u>
<u>and On Behalf of All Others Similarly Situated v. Phillip R. Bennett and Gerald M.</u>
<u>Sherer</u>, No. 05-cv-09126, (S.D.N.Y. 10/26/05).

102.    On November 21, 2005, AXIS received notice of <u>Bankruptcy Trust Of</u>
<u>Gerard Sillam, Gerard Sillam v. Refco Group LLC, Refco Overseas Ltd., Phillip Bennett,</u>
<u>Refco Group Holdings Inc, Liberty Corner Capital, New York Stock Exchange Inc, Grant</u>
<u>Thornton LLP, Grant Thornton UK LLP, Thomas H Lee Partners LP, Thomas H Lee</u>
<u>Partners Fund V, Thomas H Lee, Scott A Schoen, David V Harkins, Gerald M Sherer,</u>
<u>Leo R Breitman, Scott Jaeckel, Nathan Gantcher, Ronald O Kelley, Halim Saad, Dennis</u>
<u>A Klejna, Mark Slade, Julian Courtney, Richard Reinert, David Campbell, Credit Suisse</u>
<u>First Boston LLC, Goldman Sachs & Co, Bank Of America Securities LLC, Merrill</u>
<u>Lynch Pierce Fenner & Smith Inc, Deutsche Bank Securities Inc, JP Morgan Securities</u>
<u>Inc, Sandler O Neil & Partners LP, HSBC Securities USA Inc, William Blair &</u>
<u>Company LLC, Harris Nesbitt Corp, CMG Institutional Trading LLC, Samuel A Ramirez</u>
<u>& Company Inc., Muriel Siebert & Co Inc, The William Capital GLP, Utendahl Capital</u>
<u>Partners, et al.</u>, No. 05603931 (Supreme Court of New York 11/04/05).

103.   On November 21, 2005, AXIS received notice of <u>Scott K. Weit,</u>
<u>Individually and On Behalf of All Others Similarly Situated v Phillip R. Bennett, Gerald</u>
<u>M. Sherer, Leo R. Breitman, David V. Harkins, Scott L. Jaeckel, Thomas H. Lee, Ronald</u>
<u>L. O'Kelley, Scott A. Schoen, Nathan Gantcher, Credit Suisse First Boston, Goldman,</u>
<u>Sachs & Co., Grant Thornton LLP, Banc of America Securities LLC, Merrill Lynch</u>
<u>Pierce, Fenner & Smith Inc., Deutsche Bank Securities, Inc., J.P. Morgan Securities, Inc.,</u>
<u>Sandler O'Neill & Partners, L.P., HSBC Securities (USA) Inc., William Blair &</u>
<u>Company, L.L.C., Harris Nesbitt Corp., CMG Institutional Trading LLC, Samuel A.</u>
<u>Ramirez & Company, Inc., Muriel Siebert & Co., Inc., The Williams Capital Group, L.P.,</u>
<u>Utendahl Capital Partners, L.P., Liberty Corner Capital, and Refco Group Holdings, Inc.,</u>
No. 05-cv-09611-GEL, (S.D.N.Y. 11/11/05).

104.   On November 30, 2005, AXIS received notice of <u>Bawag P.S.K. Bank Für</u>
<u>Arbeit Und Wirtschaft Und Österreichische Postsparkasse Aktiengesellschaft v. Refco,</u>
<u>Inc.; Refco Group Holdings, Inc.; The Phillip R. Bennett Three Year Annuity Trust;</u>
<u>Refco Capital Markets, Ltd.; Refco Group Ltd., LLC; Bersec International LLC; Kroeck</u>
<u>& Associates, LLC; Marshall Metals LLC; New Refco Group Ltd., LLC; Refco</u>
<u>Administration LLC; Refco Capital LLC; Refco Capital Holdings LLC; Refco Capital</u>
<u>Management LLC; Refco Capital Trading LLC; Refco Finance Inc.; Refco Financial</u>
<u>LLC; Refco Fixed Assets Management LLC; Refco F/X Associates LLC; Refco Global</u>
<u>Capital Management LLC; Refco Global Finance Ltd.; Refco Global Futures LLC; Refco</u>
<u>Global Holdings LLC; Refco Information Services LLC; Refco Mortgage Securities,</u>
<u>LLC; Refco Regulated Companies, LLC; Summitt Management, LLC; Refco Securities</u>

LLC; Refco Clearing LLC; Phillip R. Bennett; John Does 1-10; And XYZ Corporations 1-10, The Last Two Names Being Fictitious, Inc., et al., No. 05-03161-rdd (Bankr. S.D.N.Y., 11/16/05).

105.    On November 30, 2005, AXIS received notice of Markwood Investments v. Refco Capital Markets, Ltd. and Refco Securities LLC, No. 05-03166-rdd (Bankr. S.D.N.Y., 11/17/05).

106.    On November 30, 2005, AXIS received notice of Banco De America Central, S.A. v. Refco Capital Markets, Ltd., No. 05-03171-rdd (Bankr. S.D.N.Y., 11/18/05).

107.    On November 30, 2005, AXIS received notice of BAC International Banks, Inc. v. Refco Capital Markets, Ltd., No. 05-03170-rdd (Bankr. S.D.N.Y., 11/18/05).

108.    On November 30, 2005, AXIS received notice of Reserve Invest (Cyprus) Ltd. v. Refco Capital Markets, Ltd., Michael W. Morrison, and Richard Heis, Michael W. Morrison, and Richard Heis, No. 05-03168-rdd (Bankr. S.D.N.Y., 11/18/05).

109.    On November 30, 2005, AXIS received notice of City of Pontiac General Employees' Retirement System, On Behalf of Itself and All Others Similarly Situated v. Phillip R. Bennett, Thomas H. Lee Partners, L.P., Thomas H. Lee, Gerald M. Sherer, Scott A. Schoen, Bank of America Corp., Banc of America Securities LLC, Deutsche Bank AG, Deutsche Banc Securities, Inc., Credit Suisse Group, Credit Suisse First Boston LLC, Goldman Sachs Group, Inc., Goldman Sachs & Co., J.P. Morgan Securities, Inc., J.P. Morgan Chase & Co., Merrill Lynch, Pierce, Fenner & Smith, Inc., Merrill

Lynch & Co., Inc. Sandler O'Neill & Partners, L.P., HSBC Securities (USA) Inc., HSBC Holdings plc and Grant Thornton LLP, No. 05-cv-09941, (S.D.N.Y. 11/23/05).

110.    AXIS responded to each of the notices received in paragraphs 86 to 109 (the "Noticed Matters") by letter from AXIS's counsel on March 6, 2006. A true, accurate and complete copy of this letter was previously attached as Exhibit G.

111.    The March 6, 2006 letter noted that the Noticed Matters were interrelated, as that term is defined in Condition (C) of the Primary Policy, because all of the Noticed Matters arise out of the financial fraud allegedly orchestrated by Mr. Bennett, and others whereby unreported loans were made between various entities in an effort to disguise financial losses. Accordingly, the Noticed Matters constitute a single "claim," as that term is defined in the Primary Policy.

112.    The March 6, 2006 letter denied coverage for the Noticed Matters based on the January 14, 2005 Warranty.

113.    The March 6, 2006 letter denied coverage for the Noticed Matters based on the Manuscript Application Endorsement and question 12 of the Application.

114.    The March 6, 2006 letter denied coverage for the Noticed Matters based on the Knowledge Exclusion Endorsement in the AXIS Policy.

115.    The March 6, 2006 letter denied coverage for the Noticed Matters based on the claim made date.

116.    The March 6, 2006 letter reserved the right to rescind the AXIS Policy and an earlier D&O policy issued by AXIS to Refco.

117.    The March 6, 2006 letter reserved the right to deny coverage based on various other terms and conditions of the AXIS Policy.

118.    After denying coverage for the Noticed Matters on March 6, 2006, AXIS continued to receive notice of additional matters related to the Noticed Matters.

## THE RELATED MATTERS

119.    On March 14, 2006, AXIS received notice of <u>Klaus Gensheimer, Individually and On Behalf of All Others Similarly Situated v. Phillip R. Bennett, Gerald M. Sherer, Leo R Breitman, David V. Harkins, Scott L. Jaeckel, Thomas H. Lee, Thomas H. Lee Partners, L.P., Ronald L. O'Kelley, Scott A. Schoen, Nathan Gantcher, Joseph J. Murphy, William M. Sexton, Santo C. Maggio, Dennis Klejna, Perry Rotkowitz, Credit Suisse First Boston LLC, Credit Suisse First Boston, Goldman Sachs & Co., Goldman Sachs Group Inc., Grant Thornton LLP, Banc of America Securities LLC, Bank of America Corp., Merrill Lynch, Pierce, Fenner & Smith, Inc., Merrill Lynch & Co., Inc., Deutsche Bank Securities Inc., Deutsche Bank AG, J.P. Morgan Securities Inc., J.P. Morgan Chase & Co., Sandler O'Neill & Partners, L.P., HSBC Securities (USA) Inc., HSBC Holdings plc, William Blair & Company LLC, Harris Nesbitt Corp., CMG Institutional Trading LLC, Samuel A. Ramirez & Company, Inc., Muriel Siebert & Co. Inc., The Williams Capital Group, L.P., Utendahl Capital Partners, L.P., Liberty Corner Capital Strategies LLC, and Refco Group Holdings, Inc.,</u> No. 05-cv-10318 (S.D.N.Y. 12/8/05). On March 27, 2006, AXIS denied coverage for this matter noting that it was interrelated, as that term is defined in Condition (C) of the Primary Policy, with the

Noticed Matters. AXIS incorporated by reference the March 6, 2006 letter denying coverage for the Noticed Matters.

120. On March 14, 2006, AXIS received notice of <u>Teachers' Retirement System of the State of Illinois, Bumper Fund L.P., Irwin Geduld IRA, as Trustee and as Partner of Geduld Capital Management, Brookstreet Securities Corp., and City of Pontiac General Employees' Retirement System, On Behalf of Themselves and All Others Similarly Situated v. Thomas H. Lee, Scott A. Schoen, David V. Harkins, Ronald L. O'Kelley, Scott L. Jaeckel, Thomas H. Lee Partners, L.P., Phillip R. Bennett, Refco Group Holdings, Inc., Gerald M. Sherer, Dennis A. Klejna, Robert Trosten, Nathan Gantcher, Leo R. Breitman, William M. Sexton, Santo Maggio, Liberty Corner Advisors, Liberty Corner Capital, Liberty Corner Capital Strategies, Terry Pigott, Grant Thornton LLP, Mark A. Ramler,  Banc of America Securities LLC, Bank of America Corp., eutsche Bank Securities Inc., Deutsche Bank AG, Credit Suisse First Boston LLC, Goldman Sachs Group, Inc., Goldman Sachs & Co., J.P. Morgan Securities, Inc., J.P. Morgan Chase & Co., Merrill Lynch, Pierce, Fenner & Smith, Inc., Merrill Lynch & Co., Inc., Sandler O'Neill & Partners, L.P., HSBC Securities (USA) Inc., HSBC Holdings plc, Joseph P. Collins, and Mayer Brown, Rowe & Maw, LLP.</u>, No. 05-cv-10403 (S.D.N.Y. 12/12/05). On March 27, 2006, AXIS denied coverage for this matter noting that it was interrelated, as that term is defined in Condition (C) of the Primary Policy, with the Noticed Matters. AXIS incorporated by reference the March 6, 2006 letter denying coverage for the Noticed Matters.

121.    On May 10, 2006, AXIS received notice of <u>Global Management</u>
<u>Worldwide Limited, Individually and on Behalf of All Others Similarly Situated v.</u>
<u>Phillip R. Bennett, Gerald M. Sherer, Leo R Breitman, David V. Harkins, Scott L.</u>
<u>Jaeckel, Thomas H. Lee, Thomas H. Lee Partners, L.P., Ronald L. O'Kelley, Scott A.</u>
<u>Schoen, Nathan Gantcher, Joseph J. Murphy, William M. Sexton, Santo C. Maggio,</u>
<u>Dennis Klejna, Perry Rotkowitz, Thomas H. Lee Partners, L.P., Thomas H. Lee Equity</u>
<u>Fund V, L.P., Thomas H. Lee Parallel Fund V, L.P., Thomas H. Lee Equity (Cayman)</u>
<u>Fund V, L.P., Credit Suisse Group, Credit Suisse First Boston, Goldman Sachs & Co.,</u>
<u>Goldman Sachs Group Inc., Banc of America Securities LLC, Bank of America Corp.,</u>
<u>Merrill Lynch, Pierce, Fenner & Smith, Inc., Merrill Lynch & Co., Inc., Grant Thornton</u>
<u>LLP, J.P. Morgan Securities Inc., J.P. Morgan Chase & Co., Sandler O'Neill & Partners,</u>
<u>L.P., HSBC Securities (USA) Inc., HSBC Holdings plc, William Blair & Company LLC,</u>
<u>Harris Nesbitt Corp., CMG Institutional Trading LLC, Samuel A. Ramirez & Company,</u>
<u>Inc., The Williams Capital Group, L.P., Utendahl Capital Partners, L.P., and Refco</u>
<u>Securities LLC</u>, No. 06-cv-00643, (S.D.N.Y. 1/26/06).  On July 10, 2006, AXIS denied
coverage for this matter noting that it was interrelated, as that term is defined in
Condition (C) of the Primary Policy, with the Noticed Matters.  AXIS incorporated by
reference the March 6, 2006 letter denying coverage for the Noticed Matters.

122.    On May 10, 2006, AXIS received notice of <u>In re Refco Inc., et al. - Leo A.</u>
<u>Breitman Subpoena</u>, No. 05-60006 (Bankr. S.D.N.Y. 12/5/05).  On May 16, 2006, AXIS
denied coverage for this matter noting that it was interrelated, as that term is defined in

Condition (C) of the Primary Policy, with the Noticed Matters. AXIS incorporated by reference the March 6, 2006 letter denying coverage for the Noticed Matters.

123.    On May 10, 2006, AXIS received notice of <u>In re Refco Inc., et. al. - David V. Harkins Subpoena</u>, No. 05-60006 (Bankr. S.D.N.Y. 12/5/05). On May 16, 2006, AXIS denied coverage for this matter noting that it was interrelated, as that term is defined in Condition (C) of the Primary Policy, with the Noticed Matters. AXIS incorporated by reference the March 6, 2006 letter denying coverage for the Noticed Matters.

124.    On May 10, 2006, AXIS received notice of <u>In re Refco Inc., et al. - Ronald O'Kelley Subpoena</u>, No. 05-60006 (Bankr. S.D.N.Y. 12/5/05). On May 16, 2006, AXIS denied coverage for this matter noting that it was interrelated, as that term is defined in Condition (C) of the Primary Policy, with the Noticed Matters. AXIS incorporated by reference the March 6, 2006 letter denying coverage for the Noticed Matters.

125.    On May 10, 2006, AXIS received notice of <u>In re Refco Inc., et. al. - Nathan Gatcher Subpoena</u>, No. 05-60006 (Bankr. S.D.N.Y. 12/5/05). On May 16, 2006, AXIS denied coverage for this matter noting that it was interrelated, as that term is defined in Condition (C) of the Primary Policy, with the Noticed Matters. AXIS incorporated by reference the March 6, 2006 letter denying coverage for the Noticed Matters.

126.    On May 10, 2006, AXIS received notice of <u>In re Refco Inc., et. al. - Scott L. Jaeckel Subpoena</u>, No. 05-60006 (Bankr. S.D.N.Y. 12/5/05). On May 16, 2006, AXIS denied coverage for this matter noting that it was interrelated, as that term is defined in

Condition (C) of the Primary Policy, with the Noticed Matters. AXIS incorporated by reference the March 6, 2006 letter denying coverage for the Noticed Matters.

127.    On May 10, 2006, AXIS received notice of <u>In re Refco Inc., et. al. - Scott A. Schoen Subpoena</u>, No. 05-60006 (Bankr. S.D.N.Y. 12/5/05). On May 16, 2006, AXIS denied coverage for this matter noting that it was interrelated, as that term is defined in Condition (C) of the Primary Policy, with the Noticed Matters. AXIS incorporated by reference the March 6, 2006 letter denying coverage for the Noticed Matters.

128.    On May 10, 2006, AXIS received notice of <u>In re Refco Inc., et. al. - Thomas H. Lee Partners, L.P. Subpoena</u>, No. 05-60006 (Bankr. S.D.N.Y. 12/5/05). On May 16, 2006, AXIS denied coverage for this matter noting that it was interrelated, as that term is defined in Condition (C) of the Primary Policy, with the Noticed Matters. AXIS incorporated by reference the March 6, 2006 letter denying coverage for the Noticed Matters.

129.    On May 10, 2006, AXIS received notice of <u>In the Matter of Refco Inc. - Subpoena of Thomas H. Lee Partners, L.P. for Production of Documents Pursuant to Rule 8</u>, No. 05-60006 (Bankr. S.D.N.Y. 12/5/05). On May 16, 2006, AXIS denied coverage for this matter noting that it was interrelated, as that term is defined in Condition (C) of the Primary Policy, with the Noticed Matters. AXIS incorporated by reference the March 6, 2006 letter denying coverage for the Noticed Matters.

130.    On May 10, 2006, AXIS received notice of <u>Global Management Worldwide Limited v. Refco Capital Markets, Ltd.</u>, No. 05-03144 (Bankr. S.D.N.Y 11/11/05). On May 15, 2006, AXIS denied coverage for this matter noting that it was

interrelated, as that term is defined in Condition (C) of the Primary Policy, with the Noticed Matters. AXIS incorporated by reference the March 6, 2006 letter denying coverage for the Noticed Matters.

131. On June 16, 2006, AXIS received notice of the amended complaint in In re Refco, Inc. Securities Litigation, No. 05-cv8626 (S.D.N.Y. 5/5/06). On June 5, 2006, AXIS denied coverage for this matter noting that it was interrelated, as that term is defined in Condition (C) of the Primary Policy, with the Noticed Matters. AXIS incorporated by reference the March 6, 2006 letter denying coverage for the Noticed Matters.

132. On June 26, 2006, AXI S received notice of Gary L. Franzen v. IDS Futures Corporation, Refco Commodity Management, Inc., No. 06-cv-03012 (N.D.Ill. 6/1/06). On July 10, 2006, AXIS denied coverage for this matter noting that it was interrelated, as that term is defined in Condition (C) of the Primary Policy, with the Noticed Matters. AXIS incorporated by reference the March 6, 2006 letter denying coverage for the Noticed Matters.

133. On March 9, 2006, AXIS received notice of Arch Insurance Company v. Phillip R. Bennett, Leo R. Breitman, Nathan Gantcher, Tone Grant, David V. Harkins, Scott L. Jaeckel, Dennis A. Klejna, Thomas H. Lee, Santo C. Maggio, Joseph Murphy, Ronald L. O'Kelley, Perry Rotkowitz, Scott A. Schoen, William M. Sexton, Gerald Sherer, Philip Silverman and Robert C. Trosten, No. 600805/06 (N.Y. Supp. 3/9/06). On October 12, 2006, AXIS denied coverage for this matter noting that it was interrelated, as that term is defined in Condition (C) of the Primary Policy, with the Noticed Matters.

AXIS incorporated by reference the March 6, 2006 letter denying coverage for the Noticed Matters.

134.    On November 3, 2006, AXIS received notice of an SEC inquiry into Refco, Inc.  On January 8, 2007, AXIS denied coverage for this matter noting that it was interrelated, as that term is defined in Condition (C) of the Primary Policy, with the Noticed Matters.  AXIS incorporated by reference the March 6, 2006 letter denying coverage for the Noticed Matters.

135.    On November 3, 2006, AXIS received notice of In re Refco Capital Markets, Ltd. Brokerage Customer Securities Litigation, No. 06-cv-0643 (S.D.N.Y. 1/26/06).  On January 8, 2007, AXIS denied coverage for this matter noting that it was interrelated, as that term is defined in Condition (C) of the Primary Policy, with the Noticed Matters.  AXIS incorporated by reference the March 6, 2006 letter denying coverage for the Noticed Matters.

136.    On November 3, 2006, AXIS received notice of Thomas H. Lee Equity Fund V, LP et al, No. 05-cv-09608 (S.D.N.Y. 11/14/05).  On January 8, 2007, AXIS denied coverage for this matter noting that it was interrelated, as that term is defined in Condition (C) of the Primary Policy, with the Noticed Matters.  AXIS incorporated by reference the March 6, 2006 letter denying coverage for the Noticed Matters.

137.    On January 27, 2007, AXIS received notice of United States of America v. Phillip R. Bennett, Robert C. Trosten and Tone N. Grant, No. S3 05-cr-1192 (S.D.N.Y. 1/16/07).  On February 20, 2007, AXIS denied coverage for this matter noting that it was interrelated, as that term is defined in Condition (C) of the Primary Policy, with the

Noticed Matters. AXIS incorporated by reference the March 6, 2006 letter denying coverage for the Noticed Matters.

138. Each of the matters identified in paragraphs 119 through 137 (the "Related Matters") is interrelated, as that term is defined in the Primary Policy, with each of the other Related Matters and with the Noticed Matters. AXIS has denied coverage for each of the Related Matters based on the same reasons enumerated in the March 6, 2006 letter.

## PRIOR LITIGATION

139. Refco was previously involved in litigation involving the same scheme of improperly shifting client funds between related party accounts – the same type of transactions that Refco allegedly used to hide the fraud alleged in the Noticed Matters and the Related Matters.

140. Refco was involved in a CFTC enforcement action which alleged that Refco used funds in client accounts to pay off its own debts (the "1994 CFTC Action"). In 1994, the CFTC fined Refco $1.2 million and Refco promised to stop unlawfully commingling funds. As discussed in an October 13, 2005 article available from Bloomberg Newswires, according to the CFTC at the time, Refco improperly availed itself of as much as $123 million in client funds on an "almost daily basis" in order to pay off debts owed by Refco Capital.

## COUNT I

## DECLARATORY JUDGMENT THAT THE AXIS WARRANTY BARS COVERAGE FOR THE NOTICED MATTERS AND THE RELATED MATTERS

141. AXIS incorporates by reference each of the allegations contained in paragraphs 1 through 140 above.

142.    As alleged herein, as of January 14, 2005, Bennett possessed knowledge of facts, circumstances, situations, acts, errors or omissions which he had reason to suppose might afford grounds for a "claim" (as that term is defined in the Primary Policy) such as would fall within the scope of the AXIS Policy.

143.    The Noticed Matters and the Related Matters constitute a "claim" (as that term is defined in the Primary Policy) arise therefrom.

144.    The Warranty provides that "It is agreed by the undersigned **on behalf of all Insureds under the Policy**, that with respect to the above statements, that if such knowledge exists, **any claim arising therefrom is excluded** from the proposed insurance." (emphasis added). Accordingly, Bennett's knowledge excludes coverage for all Insureds.

145.    AXIS seeks a declaration that as a result of the AXIS Warranty, the AXIS Policy does not provide coverage for any loss arising out of the Noticed Matters or the Related Matters.

## COUNT II

### DECLARATORY JUDGMENT THAT THE AXIS KNOWLEDGE EXCLUSION ENDORSEMENT BARS COVERAGE FOR THE NOTICED MATTERS AND THE RELATED MATTERS

146.    AXIS incorporates by reference each of the allegations contained in paragraphs 1 through 145 above.

147.    As alleged herein, as of August 11, 2005, Bennett possessed knowledge of facts, circumstances, situations, transactions, or events, which he had reason to suppose

might give rise to a "claim" (as that term is defined in the Primary Policy) that would fall within the scope of the insurance afforded by the AXIS Policy.

148.    The Noticed Matters and the Related Matters consist of "claims" (as that term is defined in the Primary Policy) based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving such facts, circumstances, situations, transactions or events.

149.    The Knowledge Exclusion excludes coverage for "claims" (as that term is defined in the Primary Policy) based upon, etc. "which as of the inception date of the Policy Period, **any Insured** had knowledge and had reason to suppose might give rise to a Claim that would fall within the scope of the insurance afforded by this Policy." (emphasis added). Accordingly, Bennett's knowledge, or the knowledge of *any* insured, excludes coverage for all insureds.

150.    AXIS seeks a declaration that as a result of the AXIS Knowledge Exclusion Endorsement, the AXIS Policy does not provide coverage for any loss arising out of the Noticed Matters or the Related Matters.

## COUNT III

### DECLARATORY JUDGMENT THAT CLAUSE XI OF THE AXIS POLICY BARS COVERAGE FOR THE NOTICED MATTERS AND THE RELATED MATTERS

151.    AXIS incorporates by reference each of the allegations contained in paragraphs 1 thorough 150 above.

152.    As alleged herein, Clause XI of the AXIS Policy excludes coverage for any "claim" (as that term is defined in the Primary Policy) based upon, arising out of,

directly or indirectly resulting from, in consequence of or in any way involving, any demand, suit or other proceeding, on or prior to June 4, 2004, or any other wrongful act, fact, circumstance or situation whenever occurring, which together with a wrongful act, fact, circumstance or situation occurring on or prior to June 4, 2004, are causally or logically interrelated by a common nexus.

153.    The Noticed Matters and the Related Matters allege many of the same wrongful acts previously alleged in the 1994 CFTC Action.

154.    AXIS seeks a declaration that, as a result of Clause XI, the AXIS Policy does not provide coverage for any loss arising out of the Noticed Matters or the Related Matters.

**COUNT IV**

**DECLARATORY JUDGMENT THAT, HAVING PAID ITS $10 MILLION LIMIT OF LIABILITY, AXIS HAS NO FURTHER LIABILITY TO THE INSUREDS**

155.    AXIS incorporates by reference each of the allegations contained in paragraphs 1 thorough 154 above.

156.    The AXIS Policy provides a maximum Limit of Liability (inclusive of defense costs) of $10,000,000.00.

157.    Upon motions filed by the Defendant insureds, AXIS was ordered by the Bankruptcy Court to advance defense costs to the Defendant insureds until: (1) AXIS's $10 million Limit of Liability had been exhausted through such payments; or (2) AXIS obtained a declaration that no coverage was available under the AXIS Policy.

158.    AXIS complied with the Bankruptcy Court Order, which was affirmed by the District Court on appeal, and sent checks totaling $10 million to various defense counsel on behalf of the Defendant insureds, in payment of their defense costs incurred in connection with the Noticed Matters and/or the Related Matters.

159.    Upon transmission of $10 million in defense costs, the Limit of Liability in the AXIS Policy was exhausted.

160.    AXIS has been asked to fund a purported settlement between Klejna and plaintiffs in the Noticed Matters and/or the Related Matters (the "Purported Settlement").

161.    As previously alleged, AXIS denied coverage to Mr. Klejna for the Noticed Matters and/or the Related Matters.

162.    No provision of the AXIS Policy requires AXIS to advance settlement payments which are not defense costs.

163.    Various of Klejna's co-insureds wrote to AXIS objecting should AXIS agree to fund the Purported Settlement.

164.    Loss is defined, in relevant portion, as: "Defense Costs and any damages, settlements, judgments or other amounts . . . an Insured Person is legally obligated to pay as a result of any Claim. . ."

165.    Pursuant to the terms of the Purported Settlement, Klejna is not legally obligated to pay anything under the Purported Settlement until three days after the entry of an Order by the Court providing preliminary approval of the settlement.

166.    The Court did not enter an Order granting preliminary approval of the Purported Settlement until January 22, 2008.

167.    Klejna's co-insureds objected to the Court's entry of a preliminary approval Order for the Purported Settlement.

168.    By January 22, 2008, AXIS had already paid out $7,073,932.89 of its $10 million Limit of Liability pursuant to the Bankruptcy Court Order.

169.    On January 22, 2008, AXIS was subject to a Bankruptcy Court Order requiring it to pay defense costs until the AXIS Policy was exhausted or AXIS received a declaration of no coverage.

170.    Had AXIS made payment for anything other than defense costs after the Bankruptcy Court Order was entered on October 19, 2007, AXIS would have been in violation of a Court Order.

171.    The Purported Settlement did not constitute Loss under the AXIS Policy until there was a legal obligation to pay.

172.    There was no legal obligation to pay the Purported Settlement until three days after entry of an Order by the Court granting preliminary approval. Three days after January 22, 2008 was January 25, 2008.

173.    On January 25, 2008, AXIS was in receipt of defense bills, which were immediately due, with a face value substantially over $10 million.

174.    The AXIS Policy $10 million Limit of Liability was exhausted through payment of defense bills received through January 22, 2008. AXIS did not have sufficient Limit of Liability to pay certain of various bills received on January 22, 2008 and did not have sufficient Limit of Liability to pay any bills received after January 22, 2008.

175.    AXIS seeks a declaration that, having paid its $10 million Limit of Liability, it has no obligation to pay any portion of the Purported Settlement.

## OTHER COVERAGE DEFENSES/RESCISSION

176.    Other AXIS Policy terms, conditions and endorsements may ultimately be implicated. AXIS has reserved the right to disclaim coverage for the Noticed Matters and the Related Matters based on various terms, conditions and endorsements of the AXIS Policy. Nothing in this Adversary Complaint is intended to waive any rights AXIS may have in the AXIS Policy, at law or in equity, including the right to rescind the AXIS Policy and prior policies issued by AXIS to Refco, its subsidiaries or predecessors, based on material misrepresentations in the applications for such other policies. AXIS reserves the right to raise such other coverage defenses as appropriate and/or to seek rescission.

WHEREFORE, AXIS requests that the Court enter a declaration and final judgment in its favor:

(A)    Declaring that, for the reasons set forth in Count I, the AXIS Policy does not provide coverage to any Defendant for any loss incurred in connection with the Noticed Matters or the Related Matters;

(B)    Declaring that, for the reasons set forth in Count II, the AXIS Policy does not provide coverage to any Defendant for any loss incurred in connection with the Noticed Matters or the Related Matters;

(C)    Declaring that, for the reasons set forth in Count III, the AXIS Policy does not provide coverage to any Defendant for any loss incurred in connection with the Noticed Matters or the Related Matters;

(D)    Declaring that, for the reasons set forth in Count IV, AXIS has no liability for the Purported Settlement;

(E)    Awarding AXIS such other and additional relief as shall be found to be reasonable; and

(F)    Awarding AXIS its fees and costs incurred in prosecuting this action.

Dated: July 24, 2008

Respectfully submitted,

KAUFMAN BORGEEST & RYAN LLP

By _____
Wayne E. Borgeest
Joan M. Gilbride
Robert A. Benjamin

200 Summit Lake Drive
Valhalla, New York 10595
(914) 741-6100 (Telephone)
(914) 741-0025 (Facsimile)
wborgeest@kbrlaw.com
jgilbride@kbrlaw.com
rbenjamin@kbrlaw.com

*Attorneys for Plaintiff*
*AXIS Reinsurance Company*