HELEN B. KIM (HK-8757)
KATTEN MUCHIN ROSENMAN LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067
Telephone:    310-788-4525
Facsimile:    310-788-4471

        -and-

PHILIP A. NEMECEK (PN-3319)
KATTEN MUCHIN ROSENMAN LLP
575 Madison Avenue
New York, NY  10022-2585
Telephone:    212-940-8834
Facsimile:    212-940-8776

*Attorneys for Defendant and Counterclaim Plaintiff
Dennis A. Klejna*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE:<br><br>AXIS REINSURANCE COMPANY REFCO RELATED INSURANCE LITIGATION | No. 07-CV-07924-GEL<br><br>**ANSWER AND COUNTERCLAIMS OF DEFENDANT DENNIS A. KLEJNA TO AXIS REINSURANCE COMPANY'S AMENDED COMPLAINT**<br><br>*Electronically Filed* |

        Defendant Dennis A. Klejna ("Klejna") by and through his attorneys, Katten Muchin Rosenman LLP, states as follows for his Answer and Counterclaims to the Amended Complaint (the "Complaint") of plaintiff Axis Reinsurance Company ("Axis"), dated July 24, 2008 and filed in the above-captioned action on that date:

        1.        Denies the allegations contained in Paragraph 1 of the Complaint, except admits that Plaintiff purports to describe the nature of this action.

        2.        Denies the allegations contained in Paragraph 2 of the Complaint, except admits that Plaintiff purports to describe the nature of this action.

3.      Denies the allegations contained in Paragraph 3 of the Complaint, except denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations involving defendants other than Mr. Klejna.

4.      Admits the allegations contained in Paragraph 4 of the Complaint.

5.      Admits the allegations contained in Paragraph 5 of the Complaint.

6.      Denies the allegations contained in Paragraph 6 of the Complaint, except admits that Axis issued a letter dated March 6, 2006, and respectfully refers to the March 6, 2006 letter for the terms thereof.

7.      Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 7 of the Complaint involving defendants other than Mr. Klejna, except admits that Mr. Klejna has given notice to Axis of claims since March 6, 2006.

8.      Admits the allegations contained in Paragraph 8 of the Complaint.

9.      Admits the allegations contained in Paragraph 9 of the Complaint.

10.      Denies each and every allegation contained in Paragraph 10 of the Complaint, except admits that Mr. Klejna seeks to retain Axis' reimbursement of his defense costs.

11.      Denies the allegations contained in Paragraph 11 of the Complaint, except admits that Plaintiff purports to describe the nature of this action.

12.      Admits the allegations contained in Paragraph 12 of the Complaint.

13.      Admits the allegations contained in Paragraph 13 of the Complaint.

14.      Admits the allegations contained in Paragraph 14 of the Complaint.

15.      Admits the allegations contained in Paragraph 15 of the Complaint.

16.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 16 of the Complaint.

17.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 17 of the Complaint, except admits that Defendant Bennett served as the Chairman, President and Chief Executive Officer of Refco and that in October 2005, Bennett was asked by Refco's Board of Directors to take a leave of absence.

18.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 18 of the Complaint, except admits that Defendant Leo R. Breitman was a director of Refco and a member of the Company's Audit Committee.

19.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 19 of the Complaint, except admits that Defendant Nathan Gantcher was a director of Refco and a member of the Company's Audit Committee.

20.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 20 of the Complaint.

21.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 21 of the Complaint, except admits that Defendant David V. Harkins served as a director of Refco.

22.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 22 of the Complaint, except admits that Defendant Scott L. Jaeckel served as a director of Refco.

23.     Denies the allegations contained in Paragraph 23 of the Complaint, except admits that he served as Executive Vice President and General Counsel of Refco Group Ltd. LLC from January 1, 1999 until November 2005.

24.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 24 of the Complaint, except admits that Defendant Thomas H. Lee served as a director of Refco.

25.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 25 of the Complaint, except admits that Defendant Santo C. Maggio served as President and Chief Executive Officer of Refco Securities, LLC and President of Refco Capital Markets, Ltd.

26.     Denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 26, except admits that Defendant Joseph Murphy served as Executive Vice President of Refco Group Ltd. LLC and as President of Refco Futures and Westminster Refco.

27.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 27 of the Complaint, except admits, upon information and belief, that defendant Richard Outridge served as Controller of Refco Capital Markets, Ltd.

28.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 28 of the Complaint, except admits that Defendant Ronald L. O'Kelley served as a director of Refco.

29.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 29 of the Complaint, except admits that Defendant Scott Schoen served as a director of Refco.

30.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 30 of the Complaint, except admits that Defendant William M. Sexton served as an Executive Vice President and Chief Operating Officer of Refco.

31.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 31 of the Complaint, except admits that Defendant Gerald Sherer served as Executive Vice President and Chief Financial Officer of Refco.

32.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 32 of the Complaint.

33.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 33 of the Complaint, except admits that Defendant Robert C. Trosten served as Executive Vice President and Chief Financial Officer of Refco Group Ltd., LLC.

34.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 34 of the Complaint.

35.    Denies the allegations contained in Paragraph 35 of the Complaint, except admits that Axis issued a policy to Refco for the period August 11, 2005 to August 11, 2006 (the "Axis Policy." Mr. Klejna specifically denies that Plaintiff has attached a true, complete and accurate

copy of the Axis Policy as an exhibit to the Complaint Axis filed on or about September 10, 2007.

36.    Denies the allegations contained in Paragraph 36 of the Complaint, except admits that other insurers issued underlying insurance policies to Refco and respectfully refers the Court to the policies issued by U.S. Specialty Insurance Company ("U.S. Specialty") and Lexington Insurance Company ("Lexington") for the terms thereof.

37.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 37 of the Complaint.

38-44.  Denies the allegations contained in Paragraphs 38-44 of the Complaint, except admits that Axis issued the Axis Policy to Refco for the period August 11, 2005 to August 11, 2006.  Mr. Klejna specifically denies that Plaintiff has attached a true, complete and accurate copy of the Axis Policy as an exhibit to the Complaint Axis filed on or about September 10, 2007.

45.    Denies the allegations contained in Paragraph 45 of the Complaint, except admits the allegations contained in the first sentence of Paragraph 45 and admits that Lexington has agreed to advance defense costs upon exhaustion of the Primary Policy's limit of liability

46.    Denies the allegations contained in Paragraph 46 of the Complaint.

47.    Denies the allegations contained in Paragraph 47 of the Complaint, except admits that Axis issued the Axis Policy to Refco for the period August 11, 2005 to August 11, 2006.  Mr. Klejna specifically denies that Plaintiff has attached a true, complete and accurate copy of the Axis Policy as an exhibit to the Complaint Axis filed on or about September 10, 2007.

48.    Admits the allegations contained in Paragraph 48 of the Complaint.

49.     Denies the allegations contained in Paragraph 49 of the Complaint, except respectfully refers to the February 8, 2005 application for the terms thereof.

50.     Denies the allegations contained in Paragraph 50 of the Complaint, except admits that Axis issued the Axis Policy to Refco for the period August 11, 2005 to August 11, 2006 and respectfully refers to the Axis Policy for the terms thereof.  Mr. Klejna specifically denies that the Axis Policy ever contained a Knowledge Exclusion Endorsement and aver that Axis added said Knowledge Exclusion Endorsement to the Axis Policy after the commencement of the policy period and Axis' receipt of notice of the Noticed Matters from Refco and the individual Insureds.

51.     Denies the allegations contained in Paragraph 51 of the Complaint, except admits that Axis issued the Axis Policy to Refco for the period August 11, 2005 to August 11, 2006 and respectfully refers to the Axis Policy for the terms thereof.

52.     Denies the allegations contained in Paragraph 52 of the Complaint, except admits that Axis issued a letter on March 6, 2006, and respectfully refers to the terms thereof.

53.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 53 of the Complaint.

54.     Admits the allegations contained in Paragraph 54 of the Complaint.

55.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 55 of the Complaint, except admits that Refco issued a press release on or about October 10, 2005 and respectfully refers to that press release for the contents thereof.

56.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 56 of the Complaint.

57.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 57, except admits that Refco issued a press release on or about October 11, 2005 and respectfully refers to that press release for the contents thereof.

58.     Denies the allegations contained in Paragraph 58 of the Complaint, except admits that, on October 11, 2005, Refco Inc. filed a  Form 8-K with the United States Securities and Exchange Commission and respectfully refers the Court to the Form 8-K for the contents thereof.

59.     Admits, upon information and belief, that Refco Inc. and certain of its subsidiaries filed for bankruptcy in the Southern District of New York on or about October 17, 2005.

60-69.  Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraphs 60-69 of the Complaint and respectfully refers to the Bennett Indictment for the contents thereof.

70-73.  Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraphs 70-73 of the Complaint and respectfully refers to the Trosten Indictment for the contents thereof.

74.  Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 74 of the Complaint and respectfully refers to the Grant Indictment for the contents thereof.

75-81.  Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraphs 75-81 of the Complaint and respectfully refers to the Court to the Memorandum of Law referenced in Paragraph 75 of the Complaint for the contents thereof.

82-84.  Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraphs 82-84 of the Complaint.

85-138.  Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraphs 85-138 of the Complaint.

139.     Denies the allegations contained in Paragraph 139 of the Complaint.

140.     Denies the allegations contained in Paragraph 140 of the Complaint, except admits that Refco was involved in a CFTC enforcement action in 1994 and respectfully refers to the public filings for the facts thereof.

## COUNT I

141.     In response to Paragraph 141 of the Complaint, Mr. Klejna repeats and realleges each and every response set forth in the foregoing paragraphs as if fully set forth herein.

142.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 142 of the Complaint.

143.     Admits the allegations contained in Paragraph 143 of the Complaint.

144.     Denies the allegations contained in Paragraph 144 of the Complaint.

145.     Denies the allegations contained in Paragraph 145 of the Complaint, except admits that Axis purports to seek a declaration that the Axis Policy does not provide coverage for any loss arising out of the Noticed Matters or Related Matters.

## COUNT II

146.     In response to Paragraph 146 of the Complaint, Mr. Klejna repeats and realleges each and every response set forth in the foregoing paragraphs as if fully set forth herein.

147.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 147 of the Complaint.

148.    Admits the allegations contained in Paragraph 148 of the Complaint.

149.    Denies the allegations contained in Paragraph 149 of the Complaint.

150.    Mr. Klejna denies the allegations contained in Paragraph 150 of the Complaint, except admits that Axis purports to seek a declaration that the Axis Policy does not provide coverage for any loss arising out of the Noticed Matters or Related Matters.

## COUNT III

151.    In response to Paragraph 151 of the Complaint, Mr. Klejna repeats and realleges each and every response set forth in the foregoing paragraphs as if fully set forth herein.

152.    Denies the allegations contained in Paragraph 152 of the Complaint.

153.    Denies the allegations contained in Paragraph 153 of the Complaint.

154.    Denies the allegations contained in Paragraph 154 of the Complaint, except admits that Axis purports to seek a declaration that the Axis Policy does not provide coverage for any loss arising out of the Noticed Matters or Related Matters.

## COUNT IV

155.    In response to Paragraph 155 of the Complaint, Mr. Klejna repeats and realleges each and every response set forth in the foregoing paragraphs as if fully set forth herein.

156.    Denies the allegations contained in Paragraph 156 of the Complaint.

157.    Denies the allegations contained in Paragraph 157 of the Complaint, except admits that the Bankruptcy Court issued Orders dated September 14, 2007 and October 19, 2007 (as modified on October 22, 2007) requiring Axis to advance defense costs, and refers to the Orders for the contents thereof.

158.    Denies the allegations contained in Paragraph 158 of the Complaint.

159.    Denies the allegations contained in Paragraph 159 of the Complaint.

160.     Admits the allegations contained in Paragraph 160 of the Complaint.

161.     Admits the allegations contained in Paragraph 161 of the Complaint.

162.     Denies the allegations contained in Paragraph 162 of the Complaint.

163.     Denies knowledge or information sufficient to form a belief as to the truthfulness of the allegations contained in Paragraph 163 of the Complaint.

164.     Admits the allegations contained in Paragraph 164 of the Complaint.

165.     Denies the allegations contained in Paragraph 165 of the Complaint.

166.     Admits the allegations contained in Paragraph 166 of the Complaint.

167.     Admits the allegations contained in Paragraph 167 of the Complaint.

168.     Denies knowledge or information sufficient to form a belief as to the truthfulness of the allegations contained in Paragraph 168 of the Complaint.

169.     Denies the allegations contained in Paragraph 169, except admits that the Bankruptcy Court issued Orders dated September 14, 2007 and October 19, 2007 (as modified on October 22, 2007) requiring Axis to advance defense costs, and refers to the Orders for the contents thereof.

170.     Denies the allegations contained in Paragraph 170 of the Complaint.

171.     Denies the allegations contained in Paragraph 171 of the Complaint.

172.     Denies the allegations contained in Paragraph 172 of the Complaint.

173.     Denies knowledge or information sufficient to form a belief as to the truthfulness of the allegations contained in Paragraph 173 of the Complaint.

174.     Denies knowledge or information sufficient to form a belief as to the truthfulness of the allegations contained in Paragraph 174 of the Complaint.

175.    Denies the allegations contained in Paragraph 169, except admits that Axis seeks declaratory relief and avers that Axis is not entitled to such relief.

## OTHER COVERAGE DEFENSES/RESCISSION

176.    To the extent that Paragraph 176 states a legal conclusion, no responsive pleading is required.  To the extent that a response is required, Mr. Klejna denies the allegations of Paragraph 176, except admits that Plaintiff purports to reserve certain purported rights.

### FIRST DEFENSE

177.    Axis fails to state a claim against Mr. Klejna upon which relief can be granted.

### SECOND DEFENSE

178.    Upon information and belief, Axis' claims against Mr. Klejna are barred, in whole or in part, by the doctrine of laches.

### THIRD DEFENSE

179.    Upon information and belief, Axis' claims against Mr. Klejna are barred, in whole or in part, by the doctrine of waiver.

### FOURTH DEFENSE

180.    Upon information and belief, Axis' claims against Mr. Klejna are barred, in whole or in part, by the doctrine of estoppel.

### FIFTH DEFENSE

181.    Upon information and belief, Axis' claims against Mr. Klejna are barred, in whole or in part, by the doctrine of unclean hands.

## SIXTH DEFENSE

182.    Upon information and belief, Axis' claims against Mr. Klejna are barred as a result of Axis' inequitable conduct in connection with its purported denial of coverage under the Axis Policy.

## SEVENTH DEFENSE

183.    Upon information and belief, Axis' claims against Mr. Klejna are barred because Axis has acted in bad faith in unilaterally changing the terms of the Axis Policy so as to provide purported grounds to deny coverage after receiving claims under the Policy.

## EIGHTH DEFENSE

184.    Upon information and belief, Axis' claims against Mr. Klejna are barred in whole or in part because Axis made a unilateral change in the terms of the Axis Policy after the commencement of the Refco bankruptcy case, which change is void by the terms of 11 U.S.C. § 362.

## COUNTERCLAIMS

Dennis A. Klejna ("Klejna") (the "Counterclaim Plaintiff"), by and through his attorneys, Katten Muchin Rosenman LLP, allege as follows for his Counterclaims against Axis Reinsurance Company ("Axis"):

## INTRODUCTION

1.    Axis is the second excess insurer in the "tower" of Directors and Officers ("D&O") liability insurance obtained by Refco for the policy period beginning in August 2005. The Counterclaim Plaintiff, along with other former Refco officers and directors insured under the policies, (collectively, the "Insureds") have been named as defendants in various civil actions

relating to the collapse of Refco.[1]  The Insureds have requested coverage for such actions, including defense costs, from the insurers on the D&O "tower."

2.      Axis has denied coverage to the Insureds, and has commenced this action seeking a declaration that its excess D&O corporate liability insurance policy issued to Refco for claims made during the period from August 11, 2005 to August 11, 2006 (the "Axis Policy") (attached hereto as Exhibit A) does not provide coverage to any of the Insureds for any of the "Noticed Matters" or "Related Matters" described in the Amended Complaint filed by Axis on July 24, 2008, and in the prior complaints filed by Axis dated May 23, 2007 and September 7, 2007 (collectively, the "Complaint," or "Compl.").

3.      None of the grounds alleged in the Complaint provides Axis with a valid basis for refusing coverage to the Counterclaim Plaintiff.  Nonetheless, it is clear that Axis does not intend to honor its contractual obligations to the Counterclaim Plaintiff.

4.      An actual controversy exists between the Counterclaim Plaintiff and Axis.  The Counterclaim Plaintiff seeks a declaration from this Court that the Axis Policy provides coverage for him for the various civil actions in which the Counterclaim Plaintiff has been named as a defendant, as well as appropriate relief directing Axis to pay his losses, including settlement payments and defense costs, in such actions, in accordance with the requirements of the Axis Policy.

---

[1]        Unless specifically noted otherwise, and consistent with the defined terms in the Axis Complaint, the term "Refco" used throughout these Counterclaims refers to Refco Inc., the company formed pursuant to the August 2005 initial public offering, as well as Refco Group Ltd., LLC, the company through which Refco's business was conducted prior to the initial public offering.  The term "Refco" also includes subsidiaries of Refco Inc. and Refco Group Ltd., LLC.

## JURISDICTION AND VENUE

5.    These Counterclaims are brought pursuant to Rule 13 of the Federal Rules of Civil Procedure.

6.    This Court has jurisdiction over the parties and the subject matter of these Counterclaims pursuant to 28 U.S.C. §1334(a).  Axis filed an adversary proceeding at *In re Refco*, Bankr. S.D.N.Y. (07-1712-RDD).  Certain Insureds, including Mr. Klejna, subsequently filed an adversary proceeding at *In re Refco*, Bankr. S.D.N.Y. (07-2005-RDD).  By Order dated November 13, 2007, this Court withdraw the bankruptcy reference for the remaining claims pending in these adversary proceedings.

7.    This Court also has jurisdiction over the parties and the subject matter of these Counterclaims pursuant to 28 U.S.C. §1367(a), insofar as these Counterclaims are related to and supplemental to *In re Refco, Inc. Securities Litigation*, S.D.N.Y. (05-8626-GEL).

8.    This Court also has jurisdiction over these Counterclaims pursuant to 28 U.S.C. §§ 157(d), 1332(b) and 2201.

9.    Venue is proper in this Court pursuant to 28 U.S.C. § 1309 and/or 28 U.S.C. § 1409.

## PARTIES

10.    Counterclaim Plaintiff is a former officer of Refco who, at times relevant to this action, served as Executive Vice President and General Counsel of Refco.  Mr. Klejna is a resident of the State of New York.

11.    Upon information and belief, Axis is an insurance company that is organized and exists pursuant to the laws of the State of New York, with its principal place of business in New York.

15

## GENERAL ALLEGATIONS

**A.**    **The Underlying Actions**

12.    On October 10, 2005, Refco disclosed in a press release that it had been carrying an undisclosed receivable of $430 million from an entity controlled by defendant Phillip R. Bennett ("Bennett"), the Chief Executive Officer of Refco.  On October 11, 2005, Refco issued a second press release relating to the $430 million receivable.

13.    On October 17, 2005, Refco and many of its direct and indirect subsidiaries filed voluntary petitions for relief in this Court under Chapter 11 of the United States Bankruptcy Code.

14.    These events in October 2005 led to a series of civil lawsuits, government investigations and criminal proceedings against certain of the Insureds.  On November 10, 2005, Bennett was indicted by the United States Attorney for the Southern District of New York on charges of, *inter alia*, securities fraud.

15.    Counterclaim Plaintiff has not been charged with any crimes or otherwise accused of any wrongdoing by any governmental entity, including the United States Attorney's Office.  However, solely on account of his services to Refco, Counterclaim Plaintiff (along with other Insureds) has been named as a defendant in several civil lawsuits brought by private plaintiffs, including the following actions:

(i)    *In re Refco, Inc. Sec. Litig.*, No. 05 Civ. 8626 (GEL) (S.D.N.Y.);

(ii)    *In re Refco Capital Markets, Ltd. Brokerage Customer Sec. Litig.*, No. 06 Civ. 643 (GEL) (S.D.N.Y.);

(iii)    *American Financial International Group-Asia, LLC et al. v. Bennett et al.*, No. 05 Civ. 8988 (GEL) (S.D.N.Y.);

(iv)    Civil forfeiture proceedings against Mr. Klejna initiated by the United States of America (complaint not yet filed).

These actions are collectively referred to herein as the "Underlying Actions."

16.     The Counterclaim Plaintiff properly gave notice of each of the Underlying Actions to the insurers on the Refco "tower" of liability insurance, including Axis, and requested coverage from such insurers under the policies described below.

**B.     The Refco "Tower" of D&O Insurance**

17.     As indicated above, Refco procured a "tower" of D&O insurance coverage.  Such coverage consists of a primary policy and five excess policies for the period beginning August 11, 2005 to August 11, 2006 (the "policy period").

**The U.S. Specialty Policy**

18.     U.S. Specialty Insurance Company ("U.S. Specialty") issued the primary policy, Directors, Officers and Corporate Liability Insurance Policy No. 24-MGU-05-A10821, to Refco for the policy period with a $10 million limit of liability (the "U.S. Specialty Policy" or "Primary Policy").  (A copy of the U.S. Specialty Policy is attached hereto as Exhibit B.)

19.     The U.S. Specialty Policy names as an "Insured Person" under the Policy "any past, present or future director or officer of the Company."  (Ex. B at Definition (F).)  The U.S. Specialty Policy provides those directors and officers with coverage for "Loss arising from Claims . . . against the Insured Persons for Wrongful Acts."  (*Id.* at Insuring Agreement (A).)

20.     The Underlying Actions are Claims for "Wrongful Acts," as defined in the U.S. Specialty Policy.  (*See id.* at Definition (P).)

21.     "Loss" is defined by the U.S. Specialty Policy so as to include defense costs and any settlements or other amounts an Insured Person must pay as the result of any Claim.  (*Id.* at Definition (G) and Endorsement No. 4.)

22.     The U.S. Specialty Policy further requires the Insurer to advance defense costs as incurred during the pendency of Claims:

> The Insurer will pay covered Defense Costs on an as-incurred basis.  If it is finally determined that any Defense Costs paid by the Insurer are not covered under this Policy, the Insureds agree to repay such non-covered Defense Costs to the Insurer.

(*Id.* at Condition (D)(2).)

23.     The U.S. Specialty Policy also includes a "Full Severability" Endorsement, which provides that "[n]o knowledge or information possessed by any Insured will be imputed to any other Insured."  (*Id.* at Endorsement No. 10.)

24.     The U.S. Specialty Policy further provides that "notwithstanding anything in this Policy to the contrary, the Insurer shall not be entitled under any circumstances to rescind the coverage provided under Insuring Agreement (A) of this Policy."  (*Id.* at Endorsement No. 13.)

25.     U.S. Specialty recognized its coverage obligations to the Counterclaim Plaintiff as well as other Insureds.  After obtaining approval from this Court to comply with the terms of its policy and advance defense costs to Insureds, U.S. Specialty paid the defense costs of the Insureds until the limits of the U.S. Specialty Policy were exhausted in early 2007.

**The Lexington Policy**

26.     Lexington Insurance Company ("Lexington") issued the first excess policy above the U.S. Specialty Policy, Directors and Officers Liability and Corporation Reimbursement Follow Form Excess Liability Policy No. 1620924, to Refco for the policy period with a $7.5 million limit of liability in excess of $10 million (the "Lexington Policy," or "First Excess Policy").  (A copy of the Lexington Policy is attached hereto as Exhibit C.)

27.     The Lexington Policy "follows form" to the U.S. Specialty Policy.  This means that the Lexington Policy "indemnif[ies] the Insured named in the Declarations . . . in accordance

with the applicable insuring agreements, terms, conditions and exclusions . . . of the Underlying

Policy."  (Ex. C, at (I) Insuring Agreements.)

28.     Lexington complied with its duties under the Lexington Policy and paid the

defense costs of the Insureds in connection with the Underlying Actions until the limits of the

Lexington Policy were exhausted in or about July 2007.

### The Axis Policy

29.     Axis is the second excess insurer on the Refco "tower" of D&O liability

insurance.

30.     Upon information and belief, on or about August 11, 2005, Axis provided Refco

with a binder pursuant to which Axis agreed to provide $10,000,000 in coverage that would

follow the Primary Policy and the First Excess Policy (the "Axis Binder").  (A copy of the Axis

Binder is attached hereto as Exhibit D.)

31.     The Axis Binder states that coverage would be provided pursuant to the "Axis

SecurExcess Form," with four endorsements listed.  A "Knowledge Exclusion" was not included

among the four endorsements, or referred to elsewhere in the Axis Binder.  Upon information

and belief, Refco paid the premium quoted in the Axis Binder (*i.e.*, $302,176) and thereby

obtained coverage from Axis in accordance therewith.

32.     Although the Axis Policy is dated September 11, 2005, with an inception date of

August 11, 2005, upon information and belief, it was not actually issued until on or about

March 1, 2006, and was backdated by Axis.  (*See* March 1, 2006 letter attached hereto as Exhibit

E.)

33.     Upon information and belief, the actual issuance of the Axis Policy was therefore

months after the "Noticed Matters," including the "Underlying Actions," were commenced, and

notice of such actions had been provided to the insurers in the "tower" of Refco D&O liability insurance, including Axis.

34.    As provided in the Axis Binder, the Axis Policy has a limit of liability of $10,000,000. (Ex. A, at Declarations Page and Endorsement No. 1.)

35.    The Axis Policy states that it provides coverage "in conformance with the provisions of" the U.S. Specialty Policy. (*Id.* at (I) Insuring Agreement.)

36.    The Axis Policy specifically defines "Insureds" as the same persons who may be entitled to insurance under the U.S. Specialty Policy. (*Id.* at (II) Definitions (C).)

37.    The Axis Policy defines "Claim(s)" as "event(s) which take place during the **Policy Period** and which trigger(s) coverage under the insuring agreement(s) of the **Underlying Insurance**." (*Id.* at (II) Definitions (A); emphasis in original.)

38.    Accordingly, any "Claim" for a "Wrongful Act" brought against the Counterclaim Plaintiff that falls within Insuring Agreement (A) of the U.S. Specialty Policy also falls within the "Insuring Agreement" of the Axis Policy.

39.    Each of the Underlying Actions is a "Claim" against the Counterclaim Plaintiff (and other Insureds) for "Wrongful Acts" covered by Insuring Agreement (A) in the U.S. Specialty Policy and by the Insuring Agreement in the Axis Policy.

40.    The Axis Policy specifically states that when the policies underlying it are exhausted, it will "continue as primary insurance." (Ex. A, at (IV) Reduction or Exhaustion of Underlying Limits (B).) Specifically, the Policy provides that "[i]f the **Underlying Limits** are wholly exhausted solely due to actual payment under the **Underlying Insurance**, this Policy shall continue to apply as primary insurance with respect to the applicable **Insurance Product(s)** . . . ." (*Id.*; emphasis in original.)

41.    The Axis Policy also explicitly acknowledges, in bold, capital letters, that it covers defense costs:

> **THE LIMITS OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENT AMOUNTS SHALL BE REDUCED AND MAY BE TOTALLY EXHAUSTED BY PAYMENT OF DEFENSE COSTS.**

(*Id.* at Declarations Page.)

42.    Endorsement No. 5 to the Axis Policy, the "Manuscript Application Endorsement," states in pertinent part that "[i]n consideration of the premium charged, it is agreed by the **Insurer** and **Insureds** that the application or proposal signed February 8, 2005 and submitted to *Axis Reinsurance Company* on *U.S. Specialty Insurance Company's* form shall be accepted by the **Insurer** as the Application for this Policy." (*Id.* at Endorsement No. 5; emphasis in original.)

43.    Upon information and belief, when Axis issued the Axis Policy on or about March 1, 2006, it added to the policy Endorsement No. 6, a "Knowledge Exclusion," which was not included or referred to in the Axis Binder, and which addition was also in violation of the automatic stay of the Bankruptcy Code, 11 U.S.C. Section 362.   (*See* Ex. A, at Endorsement No. 6; Ex. D.)

44.    This purported endorsement states in pertinent part that:

> this Policy does not respond to **Claims** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, or event, which as of the inception date of the **Policy Period**, any **Insured** had knowledge and had reason to suppose might give rise to a **Claim** that would fall within the scope of the insurance afforded by this Policy.

(*Id.* at Ex. A, Endorsement No. 6; emphasis in original.)

45. Upon information and belief, Axis unilaterally added the "Knowledge Exclusion" to the Axis Policy in an improper, bad faith attempt to avoid coverage for the Noticed Matters, including the Underlying Actions.

46. The "Knowledge Exclusion" endorsement is not properly a part of the Axis Policy, and cannot be used to denies coverage to Counterclaim Plaintiff.

**Other Excess Insurance**

47. There are three additional excess policies above (*i.e.*, in excess of) the Axis Policy in the Refco D&O insurance "tower."

**C.     Attempts by Axis to Avoid Coverage under the Axis Policy**

**The March 6, 2006 Axis Letter**

48. By letter dated March 6, 2006 (the "March 6, 2006 Axis Letter," or "Denial Letter"), and by subsequent letters, Axis purported to deny coverage to the Counterclaim Plaintiff and the other Insureds for all of the Noticed Matters and the Related Matters, including the Underlying Actions. (A copy of the March 6, 2006 Axis Letter is attached hereto as Exhibit F.)

49. In the March 6, 2006 Axis Letter, Axis asserted several purported grounds for denying coverage.

**(i)     The January 14, 2005 Letter**

50. First, Axis relied upon a purported "Warranty Letter" dated January 14, 2005 signed by Bennett as President and CEO of Refco Group Ltd., LLC ("Refco Group") (the "January 14, 2005 Letter"). (A copy of the January 14, 2005 Letter on which Axis relies is attached to the Complaint as Exhibit E.)

51.     According to Axis, the January 14, 2005 Letter states, in pertinent part, that "[n]o person(s) or entity(ies) proposed for this insurance is cognizant of any fact, circumstance, situation, act, error or omission which he[ ] has reason to suppose might afford grounds for any Claim . . . within the scope of the proposed insurance" and that "if such knowledge exists, any claim arising therefrom is excluded from the proposed insurance. . . ."  (*See* Ex. F at pp. 8-9; Compl. Ex. E).

52.     Upon information and belief, the January 14, 2005 Letter was signed by Bennett, as President and Chief Executive Officer of Refco Group, with respect to an excess D&O policy issued by Axis for a policy period beginning August 5, 2004 to August 5, 2005 (the "Prior Policy"), and not with respect to the Axis Policy (for which the policy period did not begin until August 11, 2005).

53.     Refco Group was the policyholder on the Prior Policy, but is not the policyholder on the Axis Policy.

54.     In the March 6, 2006 Axis Letter, Axis asserted that the Noticed Matters were "brought in connection with the alleged financial fraud orchestrated by Mr. Bennett, among others" and that it is "inconceivable that Mr. Bennett was not aware of the alleged fraud when he executed the Axis Warranty 'on behalf of all Insureds under the Policy.'" (Ex. F at p. 9.)

55.     The March 6, 2006 Axis Letter further asserted that the January 14, 2005 Letter "explicitly excludes coverage for all Insureds for any Claim arising from the undisclosed knowledge," and that all of the Noticed Matters fell within such exclusion.  (*Id.*)

                    **(ii)**     <u>**The U.S. Specialty Application**</u>

56.     The March 6, 2006 Axis Letter also relied upon Bennett's alleged failure to answer Question 12(b) in a February 8, 2005 application to U.S. Specialty for coverage (the

"Application") (*see* Compl. Ex. F at p. 3), which Axis contended was incorporated as the application to Axis pursuant to Endorsement No. 5 of the Axis Policy.

57.     Specifically, according to Axis, Question 12(b) of the Application inquired as to whether any proposed Insured was "aware of any fact, circumstance or situation involving the Applicant . . . which he . . . has reason to believe might result in a claim being made."  (*See* Ex. F at p. 8; Compl. Ex. F at p. 3.)

58.     The March 6, 2006 Axis Letter asserted that "Mr. Bennett had a duty to disclose the alleged financial fraud in [the] answer to Application question 12(b)," and that his failure to do so resulted in all of the Noticed Matters being excluded from coverage.  (*See* Ex. F at p. 10.)

### (iii)     The "Claim Made Date"

59.     The March 6, 2006 Axis Letter further denied coverage for the Noticed Matters on the additional ground that each was purportedly a Claim first made before the inception date of the Axis Policy (*i.e.*, prior to August 11, 2005).  The March 6, 2006 Axis Letter contended in this regard that each of the Noticed Matters was sufficiently related to a complaint filed on June 30, 2005 in an action filed by the Bankruptcy Trust of Gerard Sillam (the "*Sillam*" action), so that each could be treated as a single interrelated Claim made prior to August 11, 2005.  (*See id.* at pp. 4, 10.)

### (iv)     The "Knowledge Exclusion"

60.     Finally, the March 6, 2006 Axis Letter denied coverage for all of the Noticed Matters based on the "Knowledge Exclusion" endorsement that Axis contended was part of the Axis Policy.

61.     Specifically, the March 6, 2006 Axis Letter asserted that "[e]ach of the Noticed Matters is brought in connection with the alleged financial fraud orchestrated by Mr. Bennett"

and that it is "inconceivable that Mr. Bennett was not aware that his actions 'might give rise to a

Claim that would fall within the scope of the insurance afforded by this Policy' on the

[August 11, 2005] inception date of the [Axis Policy]."  (*Id.* at p. 11.)

**The Axis Complaint**

62.    On or about May 24, 2007, Axis commenced an Adversary Proceeding by filing a

declaratory judgment complaint in the Bankruptcy Court, seeking a declaration that the Axis

Policy does not provide insurance coverage for the Noticed Matters or the Related Matters for

any of the Insureds.

63.    As most recently modified and restated in the Amended Complaint that Axis filed

with this Court on July 24, 2008, the Complaint contains four counts, the first three of which

purport to set forth a separate ground for Axis' position that there is no coverage under the Axis

Policy.  Counts I and II rely upon, respectively, Axis' arguments based on the purported

January 14, 2005 Letter and the alleged Knowledge Exclusion endorsement as set forth in the

March 6, 2006 Axis Letter and discussed above.  Count IV of the Amended Complaint, which

seeks a declaration that Axis has no obligation to fund a settlement entered into by Counterclaim

Plaintiff, is discussed below at Counts III and IV of these Counterclaims.

64.    Count III of the Amended Complaint relies upon Clause XI of the Axis Policy.

This clause provides that:

> [t]he **Insurer** shall not be liable for any amount in any **Claim**
> taking place during the **Policy Period** and arising under any
> **Insurance Product**, which is based upon, arising out of, directly
> or indirectly resulting from, in consequence of or in any way
> involving:
>
> **A.**  Any demand, suit or other proceeding pending, or order, decree
> or judgment entered, against any **Insured** on or prior to the
> Pending or Prior Claim Date set forth in Item 7 of the Declarations
> or any wrongful act, fact, circumstance or situation underlying or
> alleged therein; or

    **B.**  Any other wrongful act, fact, circumstance or situation
whenever occurring, which together with a wrongful act, fact,
circumstance or situation described in (a) above are casually or
logically interrelated by a common nexus."

(Ex. A at (XI) Exclusions; emphasis in original.)

      65.    Count III of the Amended Complaint asserts that the Noticed Matters allege many

of the same wrongful acts previously alleged in a 1994 CFTC enforcement action (the "1994

CFTC Action"), and that the Axis Policy thus does not provide coverage for any of the Noticed

Matters or the Related Matters.  (*See* Compl. ¶¶ 140, 153-54.)

      66.    Axis failed to include the basis under Clause XI for its position that there is no

coverage under the Axis Policy in the March 6, 2006 Axis Letter.  Instead, as set forth above, in

the March 6, 2006 Axis Letter, Axis purported to denies coverage based upon the *Sillam* action,

a basis for denial that Axis did not allege in its Amended Complaint (or any prior complaint).

<u>**COUNT I**</u>

**(Declaratory Relief)**

      67.    Counterclaim Plaintiff repeats and realleges paragraphs 1 through 66 of these

Counterclaims as if fully set forth herein.

      68.    Pursuant to the terms of the Axis Policy, Axis is contractually obligated to

provide coverage to Counterclaim Plaintiff for all Loss (as defined in the U.S. Specialty Policy)

arising from the Underlying Actions, including but not limited to, Defense Costs and any

settlements or other amounts an Insured Person must pay as the result of any Claim, upon

exhaustion of the limits of liability of the underlying U.S. Specialty Policy and the Lexington

Policy.

      69.    As of the present date, Axis has denied its contractual obligations and has denied

coverage under the Axis Policy.

70.     Upon information and belief, Refco paid all premiums for the Axis Policy and has performed all of the terms and conditions of the Axis Policy on its part to be performed, unless otherwise excused.

71.     Counterclaim Plaintiff, as an Insured under the Axis Policy, and therefore, a party to the insurance contract, has performed all the terms and conditions of the Axis Policy on his part to be performed, unless otherwise excused.

72.     At all relevant times mentioned herein, the Axis Policy was, and is, in full force and effect.

73.     None of the grounds asserted by Axis for the denial of coverage under the Axis Policy provides a valid basis for denying coverage to Counterclaim Plaintiff.

74.     Three of the four grounds asserted by Axis in the March 6, 2006 Axis Letter – specifically, the purported January 14, 2005 Letter, the Application and the alleged "Knowledge Exclusion" endorsement – and two of the grounds asserted by Axis in the Amended Complaint – the purported January 14, 2005 Letter and the alleged "Knowledge Exclusion" endorsement – rest on Bennett's alleged knowledge of wrongdoing, which has not been conclusively established.

75.     Regardless of whether Bennett is found to have knowledge of wrongdoing, as alleged by Axis, none of these grounds described in paragraph 74, above, allows Axis to deny coverage to Counterclaim Plaintiff.

76.     The January 14, 2005 Letter does not relate to the Axis Policy, and was neither included nor incorporated therein.  Neither the Axis Binder nor the Axis Policy describes or even refers to the January 14, 2005 Letter.  The January 14, 2005 Letter is thus not a proper ground for denial of coverage.

77.    The "Knowledge Exclusion" endorsement relied upon by Axis was not referred to in the Axis Binder, and is materially inconsistent therewith.  Upon information and belief, this endorsement was unilaterally and improperly added by Axis to the Axis Policy on or about March 1, 2006 – months after the Noticed Matters had commenced and notice of such matters had been provided to Axis – in a bad faith attempt to avoid coverage for the Noticed Matters.

78.    The "Knowledge Exclusion" endorsement is not a part of the insurance contract between Axis and the Counterclaim Plaintiff.

79.    The "Full Severability" Endorsement to the U.S. Specialty Policy (Ex. A, Endorsement No. 10), which is incorporated into the Axis Policy, also precludes Axis from using any alleged knowledge of Bennett (or any other Insured) as a ground for denying coverage to Counterclaim Plaintiff, and thus precludes Axis from relying upon the purported January 14, 2005 Letter or the alleged "Knowledge Exclusion" endorsement to deny coverage to Counterclaim Plaintiff.

80.    Counterclaim Plaintiff had no knowledge, at any time prior to the inception of the Axis Policy, of any wrongdoing relating to Refco, or of any facts or circumstances that might give rise to a Claim under the "tower" of D&O insurance obtained by Refco for the policy period.

81.    Coverage for the Underlying Actions is not excluded under Clause XI of the Axis Policy.  Upon information and belief, the Underlying Actions do not arise from or allege any of the same wrongful acts that formed the basis for the 1994 CFTC Action.

82.    The 1994 CFTC Action was not raised by Axis in the March 6, 2006 Axis Letter as a ground for denial of coverage.

83.    Similarly, upon information and belief, the Underlying Actions are not related in any way to the June 2005 complaint in the *Sillam* action, which was relied upon in the Denial Letter but is not referred to in the Complaint.

84.    The Underlying Actions do not constitute Claims that were first brought prior to the inception of the Axis Policy.

85.    An actual controversy exists between Axis and the Counterclaim Plaintiff as to whether the Counterclaim Plaintiff is entitled to coverage for the Underlying Actions under the Axis Policy, and judicial resolution of the parties' rights and obligations is necessary.

86.    This Court should issue a judgment declaring that Counterclaim Plaintiff is entitled to coverage under the Axis Policy for Loss arising out of the Underlying Actions, including, but not limited to, defense costs and any settlements or other amounts he must pay as the result of the Underlying Actions.

## COUNT II

### (Injunctive Relief)

87.    Counterclaim Plaintiff repeats and realleges paragraphs 1 through 86 of these Counterclaims as if fully set forth herein.

88.    Upon exhaustion of the Lexington Policy, Axis became obligated to make payments to Counterclaim Plaintiff for Losses in the Underlying Actions, in accordance with the Axis Policy.

89.    Counterclaim Plaintiff is entitled to permanent injunctive relief requiring Axis to make such payments in accordance with Axis' contractual obligations.

## COUNT III

### (Breach of Contract - Failure to Settle)

90.     Counterclaim Plaintiff repeats and realleges paragraphs 1 through 89 of these Counterclaims as if fully set forth herein.

91.     Upon information and belief, at all times mentioned herein, Refco paid all premiums for the Axis Policy and has performed all of the terms and conditions of said policy on its part to be performed.  Further, Counterclaim Plaintiff, as an additional insured, and therefore, a party to the insurance contract, did and has performed all the terms and conditions of the policy on his part to be performed.  At all relevant times mentioned herein, the Axis Policy was, and is, in full force and effect.

92.     On or about July 28, 2007, Counterclaim Plaintiff received a settlement offer from Lead Plaintiffs' counsel in *In re Refco, Inc. Sec. Litig.*, No. 05 Civ. 8626 (GEL) (S.D.N.Y.) (the "Securities Litigation").

93.     On Monday, July 30, 2007, pursuant to the terms of the Lexington Policy, Counterclaim Plaintiff promptly tendered the settlement offer from Lead Plaintiffs to Lexington and requested Lexington to consent to and assist Mr. Klejna in settling him out of the Securities Litigation.  The next day, Lexington advised Mr. Klejna that it had already received bills from Insureds for defenses costs and fees that would exhaust the Lexington Policy, that those bills had been received prior to the tender by Mr. Klejna of the settlement offer, and that therefore Lexington could not consent to or consider the Lead Plaintiffs' settlement offer.

94.     That day, Counterclaim Plaintiff promptly advised Axis of Lexington's position that the Lexington policy had been exhausted, and requested Axis to consent to and assist Mr. Klejna in settling him out of the Securities Litigation.

95.     By letter dated August 7, 2007, Axis advised that it had disclaimed coverage for the Securities Litigation and advised that "Mr. Klejna should proceed as a prudent uninsured in this matter."

96.     On August 8, 2007, in response to its receipt of a revised settlement proposal from Lead Plaintiffs in the Securities Litigation, Axis again advised that it had disclaimed coverage for the Securities Litigation and advised Counterclaim Plaintiff to proceed "as a prudent uninsured."

97.     On August 14, 2007, counsel for Counterclaim Plaintiff met with a representative from Axis and counsel for Axis and again requested that Axis consent to Lead Plaintiffs' settlement offer.  Axis again declined and confirmed its refusal by email on August 15, 2007.

98.     As a direct and proximate result of Axis' refusal to consent to the Lead Plaintiffs' settlement offer, Klejna has and will be damaged in an amount to be determined at trial.

## COUNT IV

### (Breach of Implied Covenant of Good Faith and Fair Dealing)

99.     Counterclaim Plaintiff repeats and realleges paragraphs 1 through 98 of these Counterclaims as if fully set forth herein.

100.     Prior to and continuing up to the present, Axis has deliberately, unreasonably and intentionally refused – despite Counterclaim Plaintiff's repeated requests – to change its coverage position.  Axis has taken this position with the intent to deprive Counterclaim Plaintiff of policy benefits that Refco and the Insureds legitimately and reasonably expected.  Upon information and belief, this posture is maintained in spite of Counterclaim Plaintiff's repeated requests that Axis reconsider its faulty coverage position.

101.     As a direct and proximate result of Axis' conduct, Counterclaim Plaintiff will incur damages, at a minimum, in the form of fees and costs in defense of the Refco Litigations,

as well as the difference between any judgment that may be entered against Counterclaim Plaintiff in the Securities Litigation and the amount at which Lead Plaintiffs were willing to settle Mr. Klejna out of the Securities Litigation.

102.    In committing the foregoing acts with the intent to deprive Counterclaim Plaintiff of his policy benefits as described in these Counterclaims, Axis has acted in conscious disregard of Mr. Klejna's rights and are guilty of fraud, malice and oppression.  As such, the conduct of Axis warrants an assessment of punitive damages in amounts appropriate to punish them and to deter others from engaging in similar wrongful conduct.

## COUNT V

### (Breach of Contract – Attorneys' Fees)

103.    Counterclaim Plaintiff repeats and realleges paragraphs 1 through 102 of these Counterclaims as if fully set forth herein.

104.    Pursuant to the terms of the Axis Policy, Axis is contractually obligated to provide coverage to Counterclaim Plaintiff for all Loss (as defined in the U.S. Specialty Policy) arising from the Underlying Actions, including but not limited to, Defense Costs and any settlements or other amounts an Insured Person must pay as the result of any Claim, upon exhaustion of the limits of liability of the underlying U.S. Specialty Policy and the Lexington Policy.

105.    Axis has consistently denied its contractual obligations and has denied coverage under the Axis Policy.

106.    On or about May 24, 2007, Axis commenced this insurance coverage litigation against the Insureds, including Counterclaim Plaintiff, seeking to avoid its obligations under the contract of insurance.

107.     As a direct and proximate result of this insurance coverage litigation, Counterclaim Plaintiff has been cast in a defensive posture by the legal steps Axis has taken in an effort to free itself from its policy obligations.

108.     As a direct and proximate result of this insurance coverage litigation, Counterclaim Plaintiff has incurred substantial attorneys' fees in an effort to obtain from Axis the benefits to which he is entitled under the terms of the insurance contract.

109.     By Orders in this insurance coverage litigation dated September 14, 2007 and October 19, 2007 (as modified on October 22, 2007), the Bankruptcy Court ordered Axis to advance defense costs.  By Opinion and Order dated June 26, 2008, this Court affirmed these Bankruptcy Court Orders on appeal by Axis.  Collectively, these Orders denied the declaratory relief sought by Axis and granted the relief sought by Counterclaim Plaintiff in Count II of his Counterclaims.

110.     By virtue of the Orders described above in paragraph 109, Counterclaim Plaintiff is entitled to recovery of his attorneys' fees incurred in connection with the insurance coverage issues adjudicated therein, and as otherwise deemed just and proper by this Court.

111.     By separate Opinion and Order dated June 18, 2008, this Court dismissed that cause of action in Axis' original complaint that sought to deny coverage based on the Application.

112.     The foregoing Orders described above in paragraphs 109 and 111 establish that through this insurance coverage litigation, Axis has wrongfully attempted to avoid its obligations under the contract of insurance.

113.    As a direct and proximate result of Axis' breach of its obligations under the contract of insurance, Counterclaim Plaintiff is entitled to recover from Axis his attorneys' fees and costs and disbursements incurred in connection with this insurance coverage litigation.

## PRAYER FOR RELIEF

WHEREFORE, Counterclaim Plaintiff Dennis A. Klejna respectfully requests entry of judgment in his favor as follows:

1.    Dismissing all counts of the Complaint with prejudice;

2.    On Count I of the Counterclaims, declaring that Counterclaim Plaintiff is entitled to coverage under the Axis Policy for Loss arising out of the Underlying Actions, including but not limited to Defense Costs and any settlements or other amounts Counterclaim Plaintiff must pay as the result of the Underlying Actions;

3.    On Count II of the Counterclaims, requiring Axis to make payments to Counterclaim Plaintiff for Loss in the Underlying Actions, in accordance with the Axis Policy;

4.    On Count III of the Counterclaims, awarding Counterclaim Plaintiff damages against Axis in an amount to be proven at trial;

5.    On Count IV of the Counterclaims, awarding Counterclaim Plaintiff damages and punitive damages against Axis in an amount to be proven at trial;

6.    On Count V of the Counterclaims, awarding Counterclaim Plaintiff his attorneys' fees and costs and disbursements incurred in connection with this insurance coverage litigation; and

7.    Granting such other and further relief as the Court may deem proper.

## JURY DEMAND

Defendant and Counterclaim Plaintiff Dennis A. Klejna hereby demands trial by jury on all issues in the Complaint or in the Counterclaims so triable.

Dated: August 22, 2008

Respectfully submitted,

HELEN B. KIM
KATTEN MUCHIN ROSENMAN LLP

/s/ Helen B. Kim
Helen B. Kim (HK-8757)
2029 Century Park East, Suite 2600
Los Angeles, CA 90027
Telephone:     (310) 788-4525
Facsimile:     (310) 788-4471

PHILIP A. NEMECEK
KATTEN MUCHIN ROSENMAN LLP
Philip A. Nemecek (PN-3319)
575 Madison Avenue
New York, NY  10022-2585
Telephone:     (212) 940-8834
Facsimile:     (212) 940-8776

*Attorneys for Defendant and Counterclaim*
*Plaintiff Dennis A. Klejna*