# EXHIBIT A



## SECUREXCESS DECLARATIONS

**SUBJECT TO THE PROVISIONS OF THE UNDERLYING INSURANCE, THIS POLICY MAY ONLY APPLY TO CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD. THE LIMITS OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENT AMOUNTS SHALL BE REDUCED AND MAY BE TOTALLY EXHAUSTED BY PAYMENT OF DEFENSE COSTS. PLEASE READ THIS POLICY CAREFULLY.**

| COMPANY: Axis Reinsurance Company | POLICY NUMBER: RNN 506300 |
|---|---|

**Item 1.  Policyholder:**
Refco, Inc.
550 West Jackson Boulevard
Suite 1300
Chicago, IL 60661

**Item 2.  Policy Period:**
a.   Inception Date: August 11, 2005
b.   Expiration Date: August 11, 2006

Both dates at 12:01 a.m. at the address listed in Item 1

**Item 3.   Limits of Liability (inclusive of defense costs):**
a.   Each Claim — $ 10,000,000
b.   Maximum aggregate Limit of Liability for all Claim(s) During the Policy Period of all Insurance Products — $ 10,000,000

**Item 4.   Underlying Insurance and Insurance Products:   See Endorsement No. 1**

**Item 5.   Endorsements Attached at Inception: SE 1000, SE 1300, SE 0522, SE 1010, MU 1032, Manuscript #6**

**Item 6.   Notices to Insurer:**

Notice of Claim(s) To Be Sent To:
Axis Financial Insurance Solutions Claims
Address:  Connell Corporate Park
      Three Connell Drive
      P.O. Box 357
      Berkeley Heights, NJ 07922-0357

All Other Notices To Be Sent To:
Axis Financial Insurance Solutions
Address:  Connell Corporate Park
      Three Connell Drive
      P.O. Box 357
      Berkeley Heights, NJ 07922-0357

**Item 7.   Pending and Prior Claim Date: 06/04/04**

**Item 8   Terrorism Coverage Premium:**
$10,000

The Insurer has caused this Policy to be signed and attested by its authorized officers, but it shall not be valid unless also signed by another duly authorized representative of the Insurer.

_____
Authorized Representative

Date   9/1/05

_____
Secretary

_____
President

SE 0100 (Ed. 02 03)            Page 1 of 1            Printed in U.S.A.

# SECUREXCESS POLICY

In consideration of the payment of the premium, and in reliance on all statements made in the application(s) for this Policy and the **Underlying Insurance** and all information provided to the **Insurer** and any or all of the **Underlying Insurers**, and subject to the provisions of this Policy, the **Insurer** and the **Policyholder**, on its own behalf and on behalf of all **Insureds**, agree as follows.

## I.    INSURING AGREEMENT

With respect to each **Insurance Product**, the **Insurer** shall provide the **Insureds** with insurance during the **Policy Period** excess of all applicable **Underlying Insurance**. Except as specifically set forth in the provisions of this Policy, the insurance afforded hereunder shall apply in conformance with the provisions of the applicable **Primary Policy** and, to the extent coverage is further limited or restricted thereby, to any other applicable **Underlying Insurance**. In no event shall this Policy grant broader coverage than would be provided by the most restrictive policy constituting part of the applicable **Underlying Insurance**.

The insurance afforded under this Policy shall apply only after all applicable **Underlying Insurance** with respect to an **Insurance Product** has been exhausted by actual payment under such **Underlying Insurance**, and shall only pay excess of any retention or deductible amounts provided in the **Primary Policy** and other exhausted **Underlying Insurance**.

## II.   DEFINITIONS

A.   **Claim(s)** means the event(s) which take place during the **Policy Period** and which trigger(s) coverage under the insuring agreement(s) of the **Underlying Insurance**.

B.   **Insurance Product** means each separate type of insurance identified as an "**Insurance Product**" in Endorsement No. 1 to this Policy.

C.   **Insured(s)** means any person(s) or entity(ies) that may be entitled to coverage under the **Primary Policy** at its inception.

D.   **Insurer** means the company identified as "**Insurer**" in the Declarations.

E.   **Policy Period** means the period from the inception date to the expiration date of this Policy stated in Item 2. in the Declarations, or its earlier cancellation or termination date, if any.

F.   **Policyholder** means the person(s) or entity(ies) identified in Item 1. in the Declarations.

G.   **Primary Policy** means the specific policy identified as the "**Primary Policy**" under the applicable **Insurance Product** listed in Endorsement No. 1 to this Policy.

H.   **Sublimit** means any **Underlying Limits** which:

   1.   applies only to a particular grant of coverage under such **Underlying Insurance**; and
   2.   reduces and is part of the otherwise applicable limits of liability of such **Underlying Insurance** set forth in Item 4 of the Declarations.

I.   **Underlying Insurance** means each insurance policy which constitutes all or part of an **Insurance Product**, as scheduled in Endorsement No. 1 to this Policy.

J.   **Underlying Insurers** means any or all of the companies who issued the policies of **Underlying Insurance**.

K.   **Underlying Limits** means, with respect to each **Insurance Product**, an amount equal to the aggregate of all limits of liability for each **Insurance Product** stated in Endorsement No. 1 to this Policy, plus the

uninsured retention or deductible, if any, applicable to the **Primary Policy** under such **Insurance Product**.

**III.   CONDITIONS OF COVERAGE**

**A.**  For purposes of determining when insurance under this Policy shall attach and the limitations under which such insurance shall apply:

1.  All of the **Underlying Insurance** in effect as of the inception date of the **Policy Period** shall be maintained in full effect with solvent insurers throughout the **Policy Period** except for any reduction or exhaustion of the **Underlying Limits** as provided in Section IV. below; and

2.  All **Insureds** shall comply fully with all of the provisions of this Policy.

**B.**  As a condition precedent to coverage under this Policy, the **Insured** shall give to the **Insurer** as soon as practicable, but in no event later than thirty (30) days thereafter, written notice and the full particulars of i) the exhaustion of the aggregate limit of liability of any **Underlying Insurance**, ii) any **Underlying Insurance** not being maintained in full effect during the **Policy Period**, or iii) an **Underlying Insurer** becoming subject to a receivership, liquidation, dissolution, rehabilitation or similar proceeding or being taken over by any regulatory authority.

**C.**  If during the **Policy Period** the provisions of the **Primary Policy** are changed in any manner, as a condition precedent to coverage under this Policy, the **Insured** shall give written notice to the **Insurer** of the full particulars of such change as soon as practicable but in no event later than thirty (30) days following the effective date of such change.  No amendment to any **Primary Policy or Underlying Insurance** during the **Policy Period** shall be effective in broadening or extending the coverage afforded by this Policy or extending or increasing the limits of liability afforded by this Policy unless the **Insurer** so agrees in writing. The **Insurer** may, in its sole discretion, condition its agreement to follow any changes to the **Primary Policy** or the **Underlying Insurance** on the **Insured** paying any additional premium required by the **Insurer** for such change.

As soon as practicable, but in no event later than thirty (30) days thereafter, the **Policyholder** must give the **Insurer** written notice of any additional or return premiums charged or allowed in connection with any **Underlying Insurance**.

**IV.   REDUCTION OR EXHAUSTION OF UNDERLYING LIMITS**

**A.**  If the **Underlying Limits** are partially reduced solely due to actual payment under the **Underlying Insurance**, this Policy shall continue to apply as excess insurance over the remaining **Underlying Limits**.

**B.**  If the **Underlying Limits** are wholly exhausted solely due to actual payment under the **Underlying Insurance**, this Policy shall continue to apply as primary insurance with respect to the applicable **Insurance Product(s)** and the retention or deductible, if any, applicable under the **Primary Policy(ies)** shall apply under this Policy.

**C**   If any **Underlying Limits** are subject to a **Sublimit** then coverage hereunder shall not apply to any **Claim** which is subject to such **Sublimit**, provided however, that the **Underlying Limit** shall be recognized hereunder as depleted to the extent of any payment of such **Claim** subject to such **Sublimit**.

**V.   LIMITS OF LIABILITY**

**A.**  The amount stated in Item 3.a. in the Declarations shall be the maximum limit of the **Insurer's** liability for each **Claim** under the applicable **Primary Policy**, and shall be the maximum amount payable by the **Insurer** under this Policy for a single **Claim**, which amount shall be part of, and not in addition to, the amount stated in Item 3.b. in the Declarations.

**B.** The amount stated in Item 3.b. in the Declarations shall be the maximum aggregate amount payable by the **Insurer** under this Policy with respect to all **Claims** during the **Policy Period** for all **Insurance Products.**

**C.** This Policy does not provide coverage for any **Claim** not covered by the **Underlying Insurance**, and shall drop down only to the extent that payment is not made under the **Underlying Insurance** solely by reason of exhaustion of the **Underlying Insurance** through payments thereunder, and shall not drop down for any other reason. If any **Underlying Insurer** fails to make payments under such **Underlying Insurance** for any reason whatsoever, including without limitation the insolvency of such **Underlying Insurer**, then the **Insureds** shall be deemed to have retained any such amounts which are not so paid. If the **Underlying Insurance** is not so maintained, the **Insurer** shall not be liable under this Policy to a greater extent than it would have been had such **Underlying Insurance** been so maintained.

**D.** Payment by the **Insurer** of any amount, including but not limited to defense costs, shall reduce the limits of liability available under this Policy.

**VI. SETTLEMENTS AND DEFENSE**

**A.** No **Insured** under this Policy may, without the **Insurer's** prior written consent, which consent shall not be unreasonably withheld, admit liability for or settle any matter for which insurance may be sought under this Policy.

**B.** The **Insurer** may, at its sole discretion, elect to participate in the investigation, defense and/or settlement of any claim under this Policy, regardless of whether the applicable **Underlying Insurance** has been exhausted.

**C.** The **Insured**, and not the **Insurer**, has the duty to defend all **Claims** under this Policy.

**VII. SUBROGATION**

**A.** In the event of payment under this Policy, the **Insurer** shall be subrogated to all rights of recovery of each and all **Insureds** against any person or organization, and the **Insureds** shall do whatever is necessary to secure those rights to the satisfaction of the **Insurer**, including the execution of such documents necessary to enable the **Insurer** effectively to bring suit in the name of such **Insureds**.

**B.** Any amount recovered after payment under this Policy and any **Underlying Insurance** policies shall be apportioned among the Insurer and the **Underlying Insurers** net of the expense of such recovery in the reverse order of actual payment. The expenses attendant to such recovery shall be apportioned among those benefiting from the recovery in proportion to the amount of benefit to each party.

**VIII. AUTHORIZATION**

Except as stated in paragraph IX.A. below, the **Policyholder** shall be the sole agent of all **Insureds** with respect to all matters, including but not limited to giving and receiving notices and other communications, effecting or accepting any endorsements to or notices of cancellation of this Policy, the payment of premium and the receipt of any return premiums.

**IX. NOTICE**

**A.** With respect to any **Claim**, situation that could give rise to a **Claim**, or other matter as to which insurance may be sought under this Policy, the **Policyholder** or any **Insured** must give the **Insurer** written notice contemporaneously with and in the identical manner required by the applicable **Primary Policy.**

**B.** All notices under this Policy shall be sent to the **Insurer** at the address set forth in Item 6. in the Declarations.

**X.** **MODIFICATION, CANCELLATION AND NONRENEWAL**

A. No modification of this Policy shall be effective unless made by endorsement signed by an authorized representative of the **Insurer**.

B. The **Policyholder** may cancel this Policy at any time by written notice stating when thereafter such cancellation is to be effective.

C. The **Insurer** may cancel this Policy only for nonpayment of premium, and only by delivering or mailing to the **Policyholder** written notice stating when, not less than ten (10) days thereafter, such cancellation shall become effective. The delivery or mailing of such notice shall be sufficient proof thereof and this Policy and the **Policy Period** shall terminate at the date and hour specified in the notice.

D. The **Insurer** shall refund the unearned premium, computed at the customary short rate, if the Policy is cancelled by the **Policyholder**.

E. The **Insurer** shall have no obligation to renew this Policy upon its expiration. If the **Insurer** decides not to renew this Policy, the **Insurer** shall provide written notice to the **Policyholder** by messenger, express delivery or first class mail at least sixty (60) days prior to the expiration of the Policy.

F. Notwithstanding anything to the contrary set forth elsewhere in the Policy, in the event that any **Underlying Insurance** is rescinded by agreement or legal process for fraud or other material misrepresentation by the **Policyholder** or any of the **Insureds**, then this Policy shall be deemed to be automatically and immediately rescinded, but only with respect to any **Insurance Product** containing such rescinded **Underlying Insurance**.

**XI.** **EXCLUSIONS**

The **Insurer** shall not be liable for any amount in any **Claim** taking place during the **Policy Period** and arising under any **Insurance Product**, which is based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving:

A. Any demand, suit or other proceeding pending, or order, decree or judgment entered, against any **Insured** on or prior to the Pending or Prior Claim Date set forth in Item 7 of the Declarations or any wrongful act, fact, circumstance or situation underlying or alleged therein; or

B. Any other wrongful act, fact, circumstance or situation whenever occurring, which together with a wrongful act, fact, circumstance or situation described in (a) above are causally or logically interrelated by a common nexus.

Endorsement No. 1

Effective date of this endorsement: 12:01 a.m. on: August 11, 2005
To be attached to and form part of Policy Number: RNN 506300
Issued to: Refco, Inc.
By: Axis Reinsurance Company

## SCHEDULE OF UNDERLYING INSURANCE AND INSURANCE PRODUCTS

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

SECUREXCESS POLICY

The Schedule of Underlying Insurance and Insurance Products is as follows:

A. **Insurance Product:**   Directors and Officers Liability

1. **Primary Policy**

| Insurer | Policy Number | Limits | Policy Period |
|---------|---------------|--------|---------------|
| HCC | 24-MGU-05-A10821 | $10,000,000 | 08/11/05-08/11/06 |

2. **Other Underlying Policies**

| Insurer | Policy Number | Limits | Policy Period |
|---------|---------------|--------|---------------|
| Lexington | 1620924 | $7,500,000 | 08/11/05-08/11/06 |

All other provisions remain unchanged.

_Sean Lukse_
Authorized Representative

_9/1/05_
Date

SE 10 00 (Ed. 02 03)                    Page 1 of 1                    Printed in U.S.A.

Endorsement No. 2

Effective date of this endorsement:  12:01 a.m. on: August 11, 2005
To be attached to and form part of Policy Number: RNN 506300
Issued to: Refco, Inc.
By: Axis Reinsurance Company

# IMPORTANT NOTICE TO ALL ILLINOIS POLICYHOLDERS

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

**SECUREXCESS POLICY**

In the event you need to contact someone about this Policy for any reason, please contact us at:

Axis Reinsurance Company
Connell Corporate Park
Three Connell Drive
P.O. Box 357
Berkeley Heights, NJ  07922-0357
Fax No.:  1 (908) 286-5600

If you have been unable to contact or obtain satisfaction from the Insurer, you may contact the Illinois Department of Insurance to obtain information or make a complaint at:

Illinois Department of Insurance
Consumer Division of Public
Services Section
Springfield, Illinois 62767

SE13 00 (Ed. 02 03)                    Page 1 of 1                    Printed in U.S.A.

Endorsement No. 3

Effective date of this endorsement: 12:01 a.m. on: August 11, 2005
To be attached to and form part of Policy Number: RNN 506300
Issued to: Refco, Inc.
By: Axis Reinsurance Company

## ILLINOIS AMENDATORY ENDORSEMENT

### THIS ENDORSEMENT CHANGES THE POLICY.. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

**SECUREXCESS POLICY**

1. Section **X., MODIFICATION, CANCELLATION AND NONRENEWAL,** paragraph **C.** is amended by deleting the words "delivering or" in the first sentence and the words "delivery or" in the second sentence of that provision.

2. Section **X., MODIFICATION, CANCELLATION AND NONRENEWAL,** paragraph **F.** is deleted. Provided, however, the **Insureds** and the **Insurer** hereby agree that the **Insurer** shall have the same rights under law to rescission that it had if Section X. F. had not been included in the Policy or deleted by this endorsement.

All other provisions remain unchanged.

_____
Authorized Representative

_____9/1/05_____
Date

SE 0522 (Ed. 0205)                                    Printed in U.S.A.

Endorsement No. 4

Effective date of this endorsement: 12:01 a.m. on: August 11, 2005
To be attached to and form part of Policy Number: RNN 506300
Issued to: Refco, Inc.
By: Axis Reinsurance Company

## PRIOR NOTICE EXCLUSION

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

**SECUREXCESS POLICY**

In consideration of the premium charged, it is agreed that the **Insurer** shall not be liable for any amount from any **Claim** which is based upon, arising from, or attributable to or in consequence of any fact, circumstance or situation which has been the subject of any written notice given under any other policy of insurance.

All other provisions remain unchanged.

_____
Authorized Representative

_____
Date

SE1010 0203

Endorsement No. 5

Effective date of this endorsement: 12:01 a.m. on: August 11, 2005
To be attached to and form part of Policy Number: RNN 506300
Issued to: Refco, Inc.
By: Axis Reinsurance Company

## MANUSCRIPT APPLICATION ENDORSEMENT

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

**SECUREXCESS POLICY**

In consideration of the premium charged, it is agreed by the **Insurer** and **Insureds** that the application or proposal signed *February 8, 2005* and submitted to *Axis Reinsurance Company* on *U.S. Specialty Insurance Company's* form shall be accepted by the **Insurer** as the Application for this Policy.

Any and all references to an Application or application in this Policy shall mean the application or proposal described above. The **Insurer** has relied upon all statements, warranties and other information and documents contained in or submitted with such other application or proposal as if they were submitted directly to **Insurer** using its own Application form.

All other provisions remain unchanged.

_____
Authorized Representative

_____
Date   9/11/05

MU1032  2/2003

Endorsement No. 6

Effective date of this endorsement:  12:01 a.m. on: August 11, 2005
To be attached to and form part of Policy Number: RNN 506300
Issued to: Refco, Inc.
By: Axis Reinsurance Company

**Knowledge Exclusion**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**SECUREXCESS POLICY**

     In consideration of the premium charged, it is agreed that this Policy does not respond to **Claims** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, or event, which as of the inception date of the **Policy Period**, any **Insured** had knowledge and had reason to suppose might give rise to a **Claim** that would fall within the scope of the insurance afforded by this Policy.

All other provisions remain unchanged.

                                           *Sean Lukos*
                                           Authorized Representative

                                           9/11/05
                                           Date

**EXHIBIT B**

# U.S. SPECIALTY INSURANCE COMPANY
## Houston, Texas

**NOTICE: THIS IS A CLAIMS MADE POLICY WHICH APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD OR, IF APPLICABLE, THE DISCOVERY PERIOD. THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED, AND MAY BE EXHAUSTED, BY THE PAYMENT OF DEFENSE COSTS. DEFENSE COSTS WILL BE APPLIED AGAINST THE RETENTION. THE INSURER HAS NO DUTY UNDER THE POLICY TO DEFEND ANY INSURED.**

## DECLARATIONS

### DIRECTORS, OFFICERS AND CORPORATE LIABILITY INSURANCE POLICY

POLICY NUMBER: 24-MGU-05-A10821          RENEWAL OF: N/A

ITEM 1.   NAMED CORPORATION:   Refco Inc.
550 W. Jackson Blvd., Suite 1300
Chicago, IL 60661

ITEM 2.   POLICY PERIOD:   (a)  Inception Date: 8/11/2005
(b)  Expiration Date: 8/11/2006
at 12:01 a.m. at the Principal Address stated in Item 1.

ITEM 3.   LIMIT OF LIABILITY (inclusive of Defense Costs):
$10,000,000 in the aggregate, for INSURING AGREEMENTS A and B combined

ITEM 4.   RETENTIONS:
(a)  INSURING AGREEMENT A:          $0 or minimum required under applicable law, if any
(b)  INSURING AGREEMENT B(1):     $300,000 for Loss arising from Claims alleging the same Wrongful Act or related Wrongful Acts (waivable under the circumstances described in CONDITION (A)(5))
(c)  INSURING AGREEMENT B(2):     $500,000 for Loss arising from Claims alleging the same Wrongful Act or related Wrongful Acts (waivable under the circumstances described in CONDITION (A)(5))

ITEM 5.   PREMIUM: $395,000.00

ITEM 6.   NOTICES REQUIRED TO BE GIVEN TO THE INSURER MUST BE ADDRESSED TO:

HCC GLOBAL FINANCIAL PRODUCTS
P.O. Box 4018
Farmington, CT 06034
Attention:  Claims Manager

ITEM 7.   DISCOVERY PERIOD:
(a)  Premium:  150% of the Annual Premium.
(b)  Duration:  365 days

ITEM 8.   ENDORSEMENTS ATTACHED AT ISSUANCE:
1117C-IL  991-301  991-302  991-319  991-322  991-412  991-415  991-442  991-444 991-701
991-804 991-830  991-861  991-876  991-1122  80016

IN WITNESS WHEREOF, the Insurer has caused this Policy to be signed on the Declarations Page by its President, a Secretary and a duly authorized representative of the Insurer.

_Michael L. Schell_
Secretary

President

_Authorized Representative_

Date: September 23, 2005

USSIC-990 (04/2002)

# U.S. SPECIALTY INSURANCE COMPANY

Directors, Officers and Corporate Liability
Insurance Policy



**HCC Global Financial Products**

8 Forest Park Drive
P.O. Box 4018
Farmington, CT 06034

 

# U. S. SPECIALTY INSURANCE COMPANY

### DIRECTORS, OFFICERS AND CORPORATE LIABILITY INSURANCE POLICY

**This is a claims made policy.  Please read it carefully.**

In consideration of the payment of the premium, and in reliance upon the statements made in the Application, including attachments, all of which are made a part hereof and deemed attached hereto, and subject to the Declarations and the limitations, conditions, provisions, any endorsements to and all other terms of this Policy, the Insurer and the Insureds agree as follows:

## INSURING AGREEMENTS

(A)   The Insurer will pay to or on behalf of the Insured Persons Loss arising from Claims first made during the Policy Period or Discovery Period (if applicable), against the Insured Persons for Wrongful Acts, except when and to the extent that the Company has paid such Loss to or on behalf of the Insured Persons as indemnification or advancement.

(B)   The Insurer will pay to or on behalf of the Company Loss arising from:

    (1)   Claims first made during the Policy Period or the Discovery Period (if applicable) against the Insured Persons for Wrongful Acts, if the Company has paid such Loss to or on behalf of the Insured Persons as indemnification or advancement, and/or

    (2)   Securities Claims first made during the Policy Period or the Discovery Period (if applicable) against the Company for Wrongful Acts.

## DEFINITIONS

(A)   Application means the application attached to and forming part of this Policy, including any materials submitted in connection with such application, all of which are deemed a part of the Policy.

(B)   Claim means:

    (1)   any written demand for monetary or non-monetary relief,

    (2)   any civil proceeding commenced by service of a complaint or similar pleading,

    (3)   any arbitration, mediation or other similar dispute resolution proceeding,

    (4)   any criminal proceeding commenced by return of an indictment,

    (5)   the receipt by an Insured Person of a target letter or similar document in connection with a criminal investigation of such Insured Person, or

    (6)   any administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document;

including any appeal from any such proceeding.

(C)   Company means the Named Corporation and any Subsidiary thereof.

(D)   Defense Costs means reasonable fees, costs and expenses consented to by the Insurer (including premiums for any appeal bond, attachment bond or similar bond) resulting from the investigation,



**U.S. SPECIALTY INSURANCE COMPANY**

adjustment, defense or appeal of a Claim against an Insured Person (or, with respect to Securities Claims, against any Insured), but excluding salaries, wages, benefits or overhead expenses of directors, officers or employees of the Company.

(E)   **Insured** means the Insured Persons and the Company.

(F)   **Insured Person** means:

 (1)   any past, present or future director or officer of the Company, including any person in a position which is the functional equivalent of a director or officer with respect to any entity included within the definition of Company or Outside Entity located outside the United States, and

 (2)   with respect only to Securities Claims, any past, present or future employee of the Company.

(G)   **Loss** means Defense Costs and any damages, settlements, judgments or other amounts (including punitive or exemplary damages and the multiplied portion of any multiplied damage award, if and where insurable by law) that:

 (1)   an Insured Person is legally obligated to pay as a result of any Claim, or

 (2)   the Company is legally obligated to pay as a result of any Securities Claim;

provided, that Loss will not include wages, fines, taxes or penalties or matters which are uninsurable under the law pursuant to which this Policy is construed. For purposes of determining whether punitive or exemplary damages or the multiplied portion of any multiplied damage award arising from any Claim shall be insurable by law, the Insurer agrees to abide by the law of whichever jurisdiction is applicable to such Claim and is most favorable to the Insureds in that regard.

(H)   **Named Corporation** means the entity designated as such in Item 1 of the Declarations.

(I)   **No Liability** means all defendant Insureds obtain by reason of a motion to dismiss, motion for summary judgment or trial a final non-appealable judgment in their favor.

(J)   **Outside Capacity** means service by an Insured Person as a director, officer, trustee, regent or governor of, or in another equivalent executive position with respect to, an Outside Entity, during such time that such service is at the request of the Company.

(K)   **Outside Entity** means any not-for-profit corporation, association, organization or entity.

(L)   **Policy Period** means the period set forth in Item 2 of the Declarations, subject to prior termination or cancellation pursuant to CONDITION (E).

(M)   **Pollutants** means any seepage, pollution or contamination, including but not limited to any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, waste, and materials to be recycled, reconditioned or reclaimed.

(N)   **Securities Claim** means a Claim which:

 (1)   is brought by or on behalf of one or more securities holders of the Company in their capacity as such, or

U.S. SPECIALTY INSURANCE COMPANY 

    (2)      arises from the purchase or sale of, or offer to purchase or sell, any securities issued by the Company, whether such purchase, sale or offer involves a transaction with the Company or occurs in the open market.

(O)    **Subsidiary** means any entity:

    (1)      during any time on or before the inception of the Policy Period in which the Named Corporation owns or owned more than 50% of the issued and outstanding securities representing the right to vote for the election of such entity's directors (or the legal equivalent thereof), either directly or indirectly through one or more other Subsidiaries; or

    (2)      created or acquired during the Policy Period during any time in which, as a result of such creation or acquisition, the Named Corporation owns more than 50% of the issued and outstanding securities representing the right to vote for the election of such entity's directors (or the legal equivalent thereof), either directly or indirectly through one or more other Subsidiaries.

An entity ceases to be a Subsidiary when the Named Corporation ceases to own more than 50% of its issued and outstanding securities representing the right to vote for the election of such entity's directors (or the legal equivalent thereof), either directly or indirectly through one or more other Subsidiaries. The coverage afforded under this Policy with respect to Claims against a Subsidiary or any Insured Person thereof will apply only in respect of Wrongful Acts committed or allegedly committed after the effective time that such entity becomes a Subsidiary and prior to the time that such entity ceases to be a Subsidiary.

(P)    **Wrongful Act** means any:

    (1)      actual or alleged act, error, misstatement, misleading statement, omission or breach of duty:

        (a)      by an Insured Person in his or her capacity as such, including in an Outside Capacity, or

        (b)      with respect only to Securities Claims, by the Company; or

    (2)      matter claimed against an Insured Person solely by reason of his or her service in such capacity or in an Outside Capacity.

## EXCLUSIONS

Unless otherwise specifically stated or provided for in CONDITION (D)(2) or elsewhere in this Policy, the Insurer will not be liable to make any payment of Loss in connection with a Claim:

(A)    arising out of based upon or attributable to the gaining by any Insured of any profit or advantage to which such Insured was not legally entitled; provided, that this EXCLUSION (A) will apply only if there has been a final adjudication adverse to such Insured establishing that the Insured gained such a profit or advantage;

(B)    arising out of, based upon or attributable to the commission by any Insured of any criminal or deliberately fraudulent or dishonest act; provided, that this EXCLUSION (B) will apply only if there has been a final adjudication adverse to such Insured establishing that the Insured so acted;

(C)    for any actual or alleged bodily injury, sickness, mental anguish, emotional distress, disease or death of any person or damage to or destruction of any tangible property, including the loss of use thereof, or for injury from any actual or alleged libel, slander, defamation or disparagement or

 

U.S. SPECIALTY INSURANCE COMPANY

violation of a person's right of privacy; provided, that this EXCLUSION (C) will not apply to Securities Claims;

(D) for the actual, alleged or threatened discharge, dispersal, release or escape of Pollutants or any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize Pollutants; provided, that this EXCLUSION (D) will not apply to Securities Claims;

(E) for any actual or alleged violation of the Employee Retirement Income Security Act of 1974 or any regulations promulgated thereunder or of any similar law or regulation; provided, that this EXCLUSION (E) will apply only to Claims involving employee pension or welfare benefit plans organized or sponsored by the Company for its own employees, and will not apply to Securities Claims;

(F) brought by or on behalf of, or in the name or right of, the Company, whether directly or derivatively, or any Insured Person, unless such Claim is:

(1) brought and maintained independently of, and without the solicitation, assistance or active participation of, the Company or any Insured Person, or

(2) for an actual or alleged wrongful termination of employment, or

(3) brought or maintained by an Insured Person for contribution or indemnity and directly results from another Claim covered under this Policy, or

(4) brought and maintained by an employee of the Company solely to enforce his or her rights as a holder of securities issued by the Company;

provided, that this EXCLUSION (F) will not apply to Claims brought by a trustee in bankruptcy, receiver, conservator, rehabilitator, liquidator or other similar official duly appointed with respect to the Company;

(G) by or on behalf of, or in the name or right of, any Outside Entity, whether directly or derivatively, against an Insured Person for a Wrongful Act in his or her Outside Capacity with respect to such Outside Entity, unless such Claim is brought and maintained independently of, and without the solicitation, assistance or active participation of, the Outside Entity, the Company or any Insured Person;

(H) arising out of, based upon or attributable to facts or circumstances alleged, or to the same or related Wrongful Acts alleged or contained, in any claim which has been reported, or with respect to which any notice has been given, under any policy of which this Policy is a renewal or replacement or which it may succeed in time; or

(I) arising out of, based upon or attributable to any pending or prior litigation as of the inception date of this Policy, or alleging or derived from the same or essentially the same facts or circumstances as alleged in such pending or prior litigation.

For purposes of determining the application of the above EXCLUSIONS, no Wrongful Act of any Insured Person will be imputed to any other Insured Person who did not have actual knowledge of, or directly participate in the commission of, such Wrongful Act and, except for Wrongful Acts of the Company's chairman of the board, chief executive officer, president, chief financial officer or general counsel, no Wrongful Act of any Insured Person will be imputed to the Company.

DISCOVERY PERIOD

If the Insurer or the Named Corporation fails or refuses to renew this Policy or if the Named Corporation cancels this Policy, any Insured will have the right, upon payment of the Discovery Period Premium set

 

**U.S. SPECIALTY INSURANCE COMPANY**

forth in Item 7(a) of the Declarations, to an extension of the coverage granted by this Policy for the period set forth in Item 7(b) of the Declarations following the effective date of such cancellation or non-renewal (the "Discovery Period"), but only with respect to any **Wrongful Act** actually or allegedly taking place before the date of such cancellation or non-renewal. A written request for this extension, together with payment of the Discovery Period Premium, must be made within thirty (30) days after the effective date of cancellation or non-renewal of the Policy. Such Discovery Period Premium will be deemed to be fully earned as of the inception of the Discovery Period. This clause and the right contained within will not apply if this Policy is terminated by the Insurer for failure to pay any premium when due.

EXTENSIONS

(A)    Subject to its terms and conditions, this Policy will afford coverage for **Claims** for **Wrongful Acts** of an **Insured Person** if such **Claims** are made against the estates, heirs, legal representatives or assigns of an **Insured Person** who is deceased or against the legal representatives or assigns of an **Insured Person** who is incompetent, insolvent or bankrupt, to the extent that such **Claims** would have been covered by this Policy in the absence of such death, incompetence, insolvency or bankruptcy.

(B)    Subject to its terms and conditions, this Policy will afford coverage for **Claims** for **Wrongful Acts** of an **Insured Person** if such **Claims** are made against the **Insured Person's** lawful spouse solely by reason of such spouse's legal status as a spouse of the **Insured Person** or such spouse's ownership interest in property which the claimant seeks as recovery for alleged **Wrongful Acts** of the **Insured Person**. For purposes of the Policy, amounts which such spouse becomes legally obligated to pay by reason of such **Claim** will be treated as **Loss** which the **Insured Person** is legally obligated to pay on account of the **Claim** made against the **Insured Person**. This coverage extension does not apply, however, to the extent the **Claim** alleges any wrongful act or omission by the **Insured Person's** spouse.

CONDITIONS

(A)    <u>Limit of Liability and Retention</u>

(1)    The Insurer's maximum aggregate liability for all **Loss** on account of all **Claims** first made during the same **Policy Period**, whether covered under one or more INSURING AGREEMENTS, will not exceed the Limit of Liability set forth in Item 3 of the Declarations.

(2)    **Defense Costs** will be part of and not in addition to the Limit of Liability, and payment of **Defense Costs** will reduce the Limit of Liability. **Defense Costs**, as incurred, will also be applied against the retention.

(3)    The retention stated in Item 4(b) of the Declarations will apply to **Loss**, including **Defense Costs**, which the **Company** is required or permitted to pay as indemnification or advancement to or on behalf of the **Insured Persons**, whether or not such **Loss** is actually paid, unless the **Company** is unable to pay such **Loss** as indemnification or advancement solely by reason of its financial insolvency. For purposes of this CONDITION (A)(3), the certificate of incorporation, charter, articles of association or other organizational documents of the **Named Corporation**, each **Subsidiary** and each **Outside Entity**, including the bylaws and resolutions thereof, will be deemed to have been adopted or amended to provide indemnification and advancement to the **Insured Persons** to the fullest extent permitted by law.

(4)    The Insurer will be liable only for the amount of **Loss** in connection with any **Claim**, which is in excess of the applicable retention stated in Item 4 of the Declarations. Such retention is to be borne by the **Insureds** and remain uninsured. A single retention will

U.S. SPECIALTY INSURANCE COMPANY 

apply to Loss arising from all Claims alleging the same Wrongful Act or related Wrongful Acts.

(5)    Notwithstanding the foregoing, with respect to Securities Claims the retentions stated in Items 4(b) and 4(c) of the Declarations will apply only to Defense Costs; provided, that if a Securities Claim is finally resolved by a determination of No Liability, no retention will apply to such Securities Claim even as respects Defense Costs and the Insurer will thereupon reimburse Defense Costs within the retention which shall already have been paid by the Insureds.

(6)    One retention amount will apply to the covered portion of each and every single Claim. If a single Claim is covered under more than one INSURING AGREEMENT, the retentions stated in Item 4 of the Declarations will be applied separately to the portions of the Claim covered by each INSURING AGREEMENT, and the sum of the retentions so applied will constitute the retention for each single Claim, which in total will not exceed the largest of the applicable retentions.

(B)    Notice of Claims and Reporting Provisions

(1)    The Insureds must, as a condition precedent to the obligations of the Insurer under this Policy, give written notice, including full details, to the Insurer of any Claim as soon as practicable after it is made.

(2)    If written notice of a Claim has been given to the Insurer pursuant to CONDITION (B)(1) above, then any Claim subsequently made against the Insureds and reported to the Insurer alleging, arising out of, based upon or attributable to the facts alleged in the Claim of which such notice has been given, or alleging any Wrongful Act which is the same as or related to any Wrongful Act alleged in the Claim of which such notice has been given, will be considered to have been made at the time such notice was given.

(3)    If, during the Policy Period or the Discovery Period (if applicable), the Insureds become aware of any circumstances which may reasonably be expected to give rise to a Claim against the Insureds and if, before the end of the Policy Period or the Discovery Period (if applicable), the Insureds give written notice to the Insurer of the circumstances and the reasons for anticipating such a Claim, with full particulars as to dates, persons and entities involved, potential claimants and the consequences which have resulted or may result from such Wrongful Act, then any Claim subsequently made against the Insureds and reported to the Insurer alleging, arising out of, based upon or attributable to such circumstances or alleging any Wrongful Act which is the same as or related to any Wrongful Act described in such notice will be considered to have been made at the time such notice of circumstances was given.

(4)    All notices under this CONDITION (B) must refer to the Policy Number, must be in writing, must request coverage under this Policy, and must be given by certified mail or prepaid express courier to the address set forth in Item 6 of the Declarations.

(C)    Interrelationship of Claims

All Claims alleging, arising out of, based upon or attributable to the same facts, circumstances, situations, transactions or events or to a series of related facts, circumstances, situations, transactions or events will be considered to be a single Claim and will be considered to have been made at the time the earliest such Claim was made.

(D)    Defense Costs, Settlements, Allocation of Loss, Priority of Payments

U.S. SPECIALTY INSUR􀀀 􀀀CE COMPANY 

(1)    The Insurer will have no duty under this Policy to defend any Claim. The Insureds must defend any Claim made against them. The Insureds may not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any Defense Costs without the Insurer's prior written consent. Only those settlements, stipulated judgments and Defense Costs to which the Insurer has consented will be recoverable as Loss under this Policy. The Insurer's consent may not be unreasonably withheld; provided, that the Insurer will be entitled to effectively associate in the defense and the negotiation of any settlement of any Claim.

(2)    The Insurer will pay covered Defense Costs on an as-incurred basis. If it is finally determined that any Defense Costs paid by the Insurer are not covered under this Policy, the Insureds agree to repay such non-covered Defense Costs to the Insurer.

(3)    If Loss covered by this Policy and loss not covered by this Policy are both incurred in connection with a single Claim, either because the Claim includes both covered and uncovered matters, or because the Claim is made both against Insured Persons (or, with respect only to Securities Claims, against Insureds) and against others not included within the definition of Insured Person (or, with respect only to Securities Claims, the definition of Insured), the Insureds and the Insurer agree to use their best efforts to determine a fair and proper allocation of all such amounts, taking into account the relative legal and financial exposures of the parties to the Claim and the relative benefits to be obtained by the resolution of the Claim. The Insurer will be obligated to pay only those amounts or portions of Loss allocated to covered matters claimed against Insured Persons (or, with respect only to Securities Claims, against Insureds). If the Insureds and the Insurer are unable to agree upon an allocation, then until a final allocation is agreed upon or determined pursuant to the provisions of this Policy and applicable law, the Insurer will be obligated to make an interim payment of that amount or portion of Loss, including Defense Costs, which the parties agree is not in dispute.

(4)    If the Insurer is obligated to pay Loss, including Defense Costs, under more than one INSURING AGREEMENT, whether in connection with a single Claim or multiple Claims, the Insurer will first pay any Loss payable under INSURING AGREEMENT (A) and, if the Insurer concludes that the amount of all Loss, including Defense Costs, is likely to exceed the Insurer's Limit of Liability, the Insurer shall be entitled to withhold some or all of any Loss payable under INSURING AGREEMENT (B)(1) or (B)(2) to ensure that as much of the Limit of Liability as possible is available for the payment of Loss under INSURING AGREEMENT (A). If no Loss is payable under INSURING AGREEMENT (A), or if the Insurer's obligations under INSURING AGREEMENT (A) have been satisfied, then, subject to the Insurer's Limit of Liability as set forth in Item 3 of the Declarations, the Insurer will pay such Loss as it is required to pay under INSURING AGREEMENT (B)(1) or (B)(2) in such manner and, in the event of multiple Claims, apportioned among such Claims as the Named Corporation shall direct in writing.

(E)    <u>Cancellation or Nonrenewal</u>

(1)    The Insurer may cancel this Policy for non-payment of premium by sending not less than ten (10) days notice to the Named Corporation at its last known address. The Insurer may not otherwise cancel this Policy.

(2)    The Named Corporation may cancel this Policy by mailing the Insurer written notice stating when such cancellation will be effective; provided, that the Named Corporation may not cancel this Policy after the effective date of any acquisition of the Named Corporation as described in CONDITION (F) below. If the Named Corporation cancels this Policy, the Insurer will retain the customary short rate premium. Premium adjustment may be made either at the time cancellation is effective or as soon as

U.S. SPECIALTY INSUCE COMPANY

practicable after cancellation becomes effective, but payment of unearned premium is not a condition of cancellation.

(3)    If the Insurer elects not to renew this Policy, the Insurer must give the Named Corporation notice of non-renewal no less than sixty (60) days before the end of the Policy Period.

(4)    If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period will be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

(F)    <u>Changes in Control</u>

(1)    If, during the Policy Period, any of the following transactions or events (each a "Change in Control") occurs with respect to the Named Corporation:

    (a)    the Named Corporation merges into or consolidates with another entity such that the Named Corporation is not the surviving entity, or

    (b)    another entity, person or group of entities and/or persons acting in concert acquires securities or voting rights which result in ownership or voting control by the other entity(ies) or person(s) of more than 50% of the outstanding securities representing the present right to vote for the election of directors of the Named Corporation, or

    (c)    a trustee in bankruptcy, receiver, conservator, rehabilitator, liquidator or other similar official is duly appointed with respect to the Named Corporation;

then coverage under this Policy will continue in full force and effect until the end of the Policy Period with respect to Claims for Wrongful Acts committed or allegedly committed before the effective date of such Change in Control, but coverage will cease with respect to Claims for Wrongful Acts committed or allegedly committed thereafter and the premium will be considered fully earned in consideration of the coverage extended.

(2)    If, during the Policy Period, any of the following transactions or events (each a "Change in Control") occurs with respect to a Subsidiary:

    (a)    the Subsidiary ceases to be a Subsidiary, or

    (b)    a trustee in bankruptcy, receiver, conservator, rehabilitator, liquidator or other similar official is duly appointed with respect to the Subsidiary;

then coverage under this Policy with respect to Claims against such Subsidiary or any Insured Person thereof will continue in full force and effect until the end of the Policy Period with respect to Claims for Wrongful Acts committed or allegedly committed before the effective date of such Change in Control, but coverage under this Policy with respect to Claims against such Subsidiary or any Insured Person thereof will cease with respect to Claims for Wrongful Acts committed or allegedly committed thereafter.

(G)    <u>Other Insurance and Other Indemnification</u>

(1)    Such insurance as is provided by this Policy will apply only as excess over and will not contribute with any other valid and collectible insurance.

 

U.S. SPECIALTY INSURANCE COMPANY

    (2)    All coverage for Loss from Claims against Insured Persons for Wrongful Acts in their Outside Capacities will be specifically excess of, and will not contribute with,

        (a)    any other insurance available to such Insured Persons by reason of their service in Outside Capacities, and

        (b)    any indemnification available to such Insured Persons in connection with their service in Outside Capacities from any source other than the Company, including but not limited to Outside Entities.

(H)    Cooperation and Subrogation

    (1)    In the event of any notice under CONDITION (B) of a Claim or of circumstances which may reasonably be expected to give rise to a Claim, the Insureds will give the Insurer all information, assistance and cooperation that the Insurer may reasonably request with respect thereto.

    (2)    In the event of any payment under this Policy, the Insurer will be subrogated to the extent of such payment to all of the Insureds' rights of recovery, including without limitation the Insured Persons' rights to indemnification or advancement from the Company. The Insureds must execute all papers required and do everything necessary to secure such rights and to enable the Insurer to bring suit in their name.

(I)    No Action against the Insurer

No action may be taken against the Insurer unless, as a condition precedent thereto, there has been full compliance with all of the terms of this Policy and until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against an Insured after actual trial or by written agreement of the Insured, the claimant and the Insurer. No person or organization will have any right under this Policy to join the Insurer as a party to any action against the Insureds to determine the Insurer's liability; nor may the Insurer be impleaded by the Insureds or their legal representatives in any such action.

(J)    Notices and Authority

By acceptance of this Policy, the Insureds agree that the Named Corporation may act on behalf of all Insureds with respect to the giving and receiving of any notices, the payment of premiums and the receiving of any return premium, the cancellation or renewal of this Policy and the acceptance of any amendments thereto.

(K)    Assignment

No assignment of interest under this Policy will bind the Insurer without the Insurer's written consent.

(L)    Titles and Headings

The titles and headings to the various paragraphs and sections in this Policy, including endorsements attached, are included solely for ease of reference and do not in any way limit, expand or otherwise affect the provisions of such paragraphs and sections to which they relate.

(M)    Representations and Severability

The Insureds represent that the particulars and statements contained in the Application are true, accurate and complete and are deemed material to the acceptance of the risk assumed by the Insurer under this Policy. This Policy is issued in reliance upon the truth of such representations.

 

**U.S. SPECIALTY INSURANCE COMPANY**

No knowledge or information possessed by any Insured will be imputed to any other Insured except for material facts or information known to the person or persons who signed the **Application**. If any of the particulars or statements in the **Application** is untrue, this **Policy** will be void with respect to any **Insured** who knew of such untruth or to whom such knowledge is imputed.

(N)  <u>Changes</u>

Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the Insurer will not effect a waiver or a change in any part of this **Policy** or stop the Insurer from asserting any right under the terms of this **Policy**. This **Policy** cannot be waived or changed, except by written endorsement issued to form a part of this **Policy**.

(O)  <u>Entire Agreement</u>

By acceptance of this **Policy**, the **Insureds** and the **Insurer** agree that this **Policy** (including the **Application** and any materials submitted therewith) and any written endorsements attached hereto constitute the entire agreement between the parties with respect to this insurance.

(P)  <u>Territory</u>

This **Policy** applies to **Wrongful Acts** actually or allegedly taking place or **Claims** made anywhere in the world.

(Q)  <u>Conformity to Statute</u>

Any terms of this **Policy** which are in conflict with the terms of any applicable laws construing this **Policy**, including any endorsement to this **Policy** which is required by any state Department of Insurance (or equivalent authority) ("State Amendatory Endorsement"), are hereby amended to conform to such laws. Nothing herein will be construed to restrict the terms of any State Amendatory Endorsement. In addition, to the extent permissible by law, nothing in any State Amendatory Endorsement will be construed to restrict the terms of this **Policy**.

In witness whereof the **Insurer** has caused this **Policy** to be executed by its authorized officers, but this **Policy** will not be valid unless countersigned on the Declarations Page by a duly authorized representative of the **Insurer**.

Secretary                              President

U.S. SPECIALTY INSURANCE COMPANY

ENDORSEMENT NUMBER: 1

ILLINOIS AMENDATORY ENDORSEMENT

This Endorsement, effective at 12:01 a.m. on 8/11/05, forms part of Policy No. 24-MGU-05-A10821, issued to Refco Inc. by U.S. Specialty Insurance Company:

In consideration of the premium charged:

DEFINITIONS (D) Defense Costs of the policy has been amended to read:

Defense Costs means reasonable fees, costs and expenses consented to by the Insurer (including premiums for any appeal bond, attachment bond or similar bond) resulting from the investigation, adjustment, defense or appeal of a Claim against an Insured Person (or, with respect to Securities Claims, against any Insured), but excluding salaries, wages, benefits or overhead expenses of directors, officers or employees of the Company or the Insurer.

DISCOVERY PERIOD of the policy has been amended to read:

If the Insurer or the Named Corporation fails or refuses to renew this Policy or if the Named Corporation cancels this Policy, any Insured will have the right, upon payment of the Discovery Period Premium set forth in Item 7(a) of the Declarations, to an extension of the coverage granted by this Policy for the period set forth in Item 7(b) of the Declarations following the effective date of such cancellation or non-renewal (the "Discovery Period"), but only with respect to any Wrongful Act actually or allegedly taking place before the date of such cancellation or non-renewal. A written request for this extension, together with payment of the Discovery Period Premium, must be made within thirty (30) days after the effective date of cancellation or non-renewal of the Policy. Such Discovery Period Premium will be deemed to be fully earned as of the inception of the Discovery Period.

CONDITIONS (G)(1) Other Insurance and Other Indemnification of the policy has been amended to read:

(1)    Such insurance as is provided by this Policy will share proportionately with similar coverages provided under any other valid and collectible insurance.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

USSIC 1117C-IL (06/04)                    Page 1 of 1

ENDORSEMENT NUMBER: 2

**EMPLOYMENT PRACTICES LIABILITY EXTENSION – NONENTITY**

To be attached to and made a part of Policy No. 24-MGU-05-A10821, issued to Refco Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged it is hereby understood and agreed that:

(1)   DEFINITION (P) Wrongful Act is amended to include any **Employment Practices Wrongful Act** by an Insured Person in his or her capacity as such.

(2)   DEFINITION (F) Insured Person, subsection (2) is amended to read:

     (2)   with respect only to **Securities Claims** and **Claims** for **Employment Practices Wrongful Acts**, any past, present or future employee of the Company.

(3)   The following DEFINITIONS are added to the Policy:

**Discrimination** means:

     (1)   any failure or refusal to hire, failure or refusal to promote, demotion or discharge of, or wrongful failure to grant tenure to, any person, or

     (2)   any limitation, segregation or classification of any employee or applicant for employment in any way that would deprive or tend to deprive any person of employment opportunities or otherwise adversely affect his or her status as an employee;

because of such person's race, color, age, sex, disability, pregnancy, sexual orientation or preference, national origin, religion, or other status that is protected pursuant to any applicable federal, state or local statute or ordinance.

**Employment Practices Wrongful Act** means any actual or alleged:

     (1)   **Discrimination,**
     (2)   **Retaliation,**
     (3)   **Sexual Harassment,**
     (4)   **Workplace Harassment,**
     (5)   **Workplace Tort,** or
     (6)   **Wrongful Termination.**

**Retaliation** means retaliatory treatment against an employee of the Company on account of such employee's exercise or attempted exercise of his or her rights under law.

**Sexual Harassment** means unwelcome sexual advances, requests for sexual favors, or other verbal, visual or physical conduct of a sexual nature that is made a condition of employment with the Company, is used as a basis for employment decisions by the

P.4    SZ21-912-102    QORd JAICNANIF JABOJ9 COH    70:11 S002 70 voN

Company, creates a work environment with the Company that interferes with performance, or creates an intimidating, hostile or offensive working environment.

**Workplace Harassment** means conduct that creates a work environment with the Company that interferes with performance, or creates an intimidating, hostile or offensive working environment.

**Workplace Tort** means misrepresentation, defamation (including libel and slander), invasion of privacy, false imprisonment, negligent evaluation, negligent training or supervision, wrongful discipline or wrongful deprivation of career opportunity, if actually or allegedly related to the claimant's employment by the Company.

**Wrongful Termination** means actual or constructive termination of the employment of, or demotion of, or failure or refusal to promote, any employee, which is in violation of law, against public policy or in breach of an implied agreement to continue employment.

(4)     EXCLUSION (C) will not apply to Loss for mental anguish, emotional distress, libel, slander, defamation or disparagement or violation of a person's right of privacy caused by an **Employment Practices Wrongful Act**.

(5)     EXCLUSION (F), subsection (2) is amended to read as follows:

(2)     for an actual or alleged **Employment Practices Wrongful Act**;

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the policy or is not to be effective with the policy.

Effective Date of this endorsement: .

By: _____
                    Attorney-in-fact

991-301                                    Page 2 of 2
Ed (01/03)

### ENDORSEMENT NUMBER: 3

### ADD SPECIFIC INDIVIDUALS AS "INSURED PERSONS"

To be attached to and made a part of Policy No. 24-MGU-05-A10821, issued to Refco Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, DEFINITION (F) "Insured Person" is amended to include the following individuals:

Insurance Manager and General Counsel

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete Only When This Endorsement Is Not Prepared With The Policy Or Is Not To Be Effective With The Policy.

Effective Date of this endorsement:

By: _____

Attorney-in-Fact

991-302
Ed (05/00)

Page 1 of 1

p. 6                    201-216-1225    HCC GLOBAL FINANCIAL PROD    Nov 07 2005 11:07

ENDORSEMENT NUMBER: 4

## AMEND "LOSS" TO INCLUDE PRE-JUDGMENT AND POST-JUDGMENT INTEREST

To be attached to and made a part of Policy No. 24-MGU-05-A10821, issued to Refco Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, DEFINITION (G) Loss is amended to read as follows:

(G)   Loss means Defense Costs and any damages, settlements, judgments, pre-judgment interest, post-judgment interest, or other amounts (including punitive or exemplary damages and the multiplied portion of any multiplied damage award, if and where insurable by law) that:

(1)   an Insured Person is legally obligated to pay as a result of any Claim, or

(2)   the Company is legally obligated to pay as a result of any Securities Claim;

provided, that Loss will not include wages, fines, taxes or penalties or matters which are uninsurable under the law pursuant to which this Policy is construed. For purposes of determining whether punitive or exemplary damages or the multiplied portion of any multiplied damage award arising from any Claim shall be insurable by law, the Insurer agrees to abide by the law of whichever jurisdiction is applicable to such Claim and is most favorable to the Insureds in that regard.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the policy or is not to be effective with the policy.

Effective Date of this endorsement:

By: _____
Attorney-in-Fact

991-319
Ed (06/03)

Page 1 of 1

ENDORSEMENT NUMBER: 5

**EMPLOYED LAWYERS EXTENSION**
**(SEPARATE LIMIT AND RETENTION)**

To be attached to and made a part of Policy No. 24-MGU-05-A10821, issued to
Refco Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged:

(1)     DEFINITION (F) Insured Person is amended to include any Employed Lawyer.

(2)     DEFINITION (P) Wrongful Act is amended to include any act, error, misstatement,
        misleading statement, omission or breach of duty by an Employed Lawyer, in his or her
        capacity as such, in the rendering or failure to render professional legal services for the
        Company; provided, that Wrongful Act shall not include any act, error, misstatement,
        misleading statement, omission or breach of duty by such Employed Lawyer in
        connection with any activities: (1) that are not related to such Employed Lawyer's
        employment with the Company; (2) that are not rendered on the behalf of the Company
        at the Company's written request; or (3) that are performed by the Employed Lawyer
        for others for a fee.

(3)     The following DEFINITION is added to the Policy:

        Employed Lawyer means any past, present or future full-time, salaried employee of the
        Company who is admitted to practice law and who is employed at the time of any
        alleged Wrongful Act as a lawyer full-time for and salaried by the Company.

(4)     The EXCLUSIONS section of the Policy is amended by the addition of the following:

        The Insurer will not be liable to make any payment of Loss in connection with any
        Claim made against an Employed Lawyer:

        (a)     alleging, arising out of, based upon or attributable to any Wrongful Act
                occurring at a time when such Employed Lawyer was not employed as a lawyer
                by the Company;

        (b)     alleging, arising out of, based upon or attributable to any Claim made or any
                prior or pending litigation as of 8/11/05, or alleging or derived from the same
                facts or circumstances as alleged in such pending or prior litigation;

        (c)     alleging, arising out of, based upon or attributable to any Wrongful Act, if as of
                8/11/05, such Employed Lawyer knew or could have reasonably foreseen that
                such Wrongful Act could give rise to a Claim;

        (d)     alleging, arising out of, based upon or attributable to any activities by such
                Employed Lawyer as an officer or director of any entity other than the
                Company.

(5)     For purposes of the applicability of the coverage provided by this endorsement, the
        Company will be conclusively deemed to have indemnified the Employed Lawyer to
        the extent that the Company is permitted or required to indemnify him or her pursuant to

991-322                              Page 1 of 1
(Ed. 09/03)

law, common or statutory, or contract, or the charter or by-laws of the **Company** (which are hereby deemed to adopt the broadest provisions of the law which determines and defines such rights of indemnity). The **Company** hereby agrees to indemnify the **Employed Lawyer** to the fullest extent permitted by law including the making in good faith of any required application for court approval and the passing of any corporate resolution or the execution of any contract.

(6)     The coverage provided by this endorsement shall apply only to **Claims** made against an **Employed Lawyer**, provided that, and only for so long as, one or more **Insured Persons** (other than such **Employed Lawyer**) are and remain co-defendants in the proceeding along with such **Employed Lawyer**.

(7)     The coverage provided by this endorsement is specifically excess over any other valid or collectible lawyers professional liability insurance, including but not limited to legal malpractice or other errors and omissions insurance, and shall not drop down and serve as primary insurance unless and until such other insurance has been exhausted due to actual payment of losses paid thereunder.

(8)     Solely for purposes of the coverage provided under this endorsement:

(a)     The **Insurer's** maximum aggregate liability for all **Loss** on account of all **Claims** first made during the same **Policy Period** will not exceed $100,000 ("the Employed Lawyers Coverage Limit"). The Employed Lawyers Coverage Limit shall be separate from and in addition to the Limit of Liability set forth in ITEM 3 of the Declarations, and ITEM 3 of the Declarations is amended accordingly.

(b)     A retention of $100,000 shall apply to **Loss** resulting from each **Claim**; provided, such retention shall not apply to **Loss** incurred by any **Employed Lawyer** if indemnification of such **Loss** by the **Company** is not legally permitted or cannot be done solely by reason of its financial insolvency, subject to paragraph (5) above.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the policy or is not to be effective with the policy.

Effective Date of this endorsement:

By: _____
                Attorney-in-Fact

991-322                                        Page 1 of 1
(Ed. 09/03)

ENDORSEMENT NUMBER: 6

**ERRORS AND OMISSIONS EXCLUSION
WITH MANAGEMENT CARVEBACK**

To be attached to and made a part of Policy No. 24-MGU-05-A10821, issued to Refco Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that the Insurer will not be liable to make any payment of Loss in connection with a **Claim** arising out of, based upon or attributable to any actual or alleged rendering of or failure to render, whether by the **Company** or by any **Insured Person**, any service for others for a fee; provided, that this exclusion will not apply to a **Claim** against an **Insured Person** for a **Wrongful Act** in connection with the management or supervision of the **Company** or any division or group therein.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the policy or is not to be effective with the policy.

Effective Date of this endorsement:

By: _____
                Attorney-in-Fact

991-412                            Page 1 of 1
Bd (09/00)

ENDORSEMENT NUMBER: 7

SPECIFIC LITIGATION EXCLUSION

To be attached to and made a part of Policy No. 24-MGU-05-A10821, issued to Refco Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that the Insurer will not be liable to make any payment of Loss in connection with any Claim arising out of, based upon or attributable to the following litigation:

Edward McElwreath Case

or alleging or derived from the same or essentially the same facts or circumstances as alleged in such litigation.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By:_____
               Attorney-in-Fact

991-415                           Page 1 of 1
Ed. 09/05

ENDORSEMENT NUMBER: 8

AMEND POLLUTION EXCLUSION ENDORSEMENT
(A-SIDE CARVEBACK)

To be attached to and made a part of Policy No. 24-MGU-05-A10821, issued to Refco Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that EXCLUSION (D) of this Policy is amended to read in its entirety as follows:

(D)     for the actual, alleged or threatened discharge, dispersal, release or escape of **Pollutants** or any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**; provided, that this EXCLUSION (D) will not apply to **Securities Claims**; provided further, that this EXCLUSION (D) will not apply to **Claims for Loss** payable under INSURING AGREEMENT (A);

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the policy or is not to be effective with the policy.

Effective Date of this endorsement:

By: _____

                    Attorney-in-Fact

ENDORSEMENT NUMBER: 9

**AMEND EXCLUSION (C) ENDORSEMENT –
A-SIDE CARVEBACK**

To be attached to and made a part of Policy No. 24-MGU-05-A10821, issued to Refco Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that EXCLUSION (C) is amended to read in its entirety as follows:

(C)     for any actual or alleged bodily injury, sickness, mental anguish, emotional distress, disease or death of any person or damage to or destruction of any tangible property, including the loss of use thereof, or for injury from any actual or alleged libel, slander, defamation or disparagement or violation of a person's right of privacy; provided, that this EXCLUSION (C) will not apply to:

(1)     Securities Claims, or

(2)     Claims for Loss payable under INSURING AGREEMENT (A);

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By:_____
· Attorney-in-Fact

991-444                      Page 1 of 1
Ed. (01/05)

ENDORSEMENT NUMBER: 10

FULL SEVERABILITY

To be attached to and made a part of Policy No. 24-MGU-05-A10821, issued to Refco Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, CONDITION (M) Representations and Severability is amended to read as follows:

(M)     Representations and Severability

The Insureds represent that the particulars and statements contained in the Application are true, accurate and complete and are deemed material to the acceptance of the risk assumed by the Insurer under this Policy. This Policy is issued in reliance upon the truth of such representations. No knowledge or information possessed by any Insured will be imputed to any other Insured. If any of the particulars or statements in the Application is untrue, this Policy will be void with respect to any Insured who knew of such untruth.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the policy or is not to be effective with the policy.

Effective Date of this endorsement:

By: _____
         Attorney-in-Fact

991-701
Ed (09/03)

Page 1 of 1

ENDORSEMENT NUMBER: 11

## DERIVATIVE DEMAND INVESTIGATION COSTS COVERAGE

To be attached to and made a part of Policy No. 24-MGU-05-A10821, issued to Refco Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged:

(1)      INSURING AGREEMENTS is amended by the addition of the following:

The Insurer will pay to or on behalf of the Company all **Derivative Demand Investigation Costs** incurred by the Company as a result of a **Derivative Demand** first received by the Company's Board of Directors and reported in writing to the Insurer during the **Policy Period** or the **Discovery Period**, if purchased, up to the amount of the **Derivative Demand Investigation Costs Sub-Limit.**

(2)      DEFINITIONS is amended by the addition of the following:

**Derivative Demand** means a written demand by one or more shareholders of the Company made upon its Board of Directors to bring a civil proceeding in a court of law against an **Insured Person** for a **Wrongful Act.**

**Derivative Demand Investigation Costs** means reasonable fees, costs and expenses (including but not limited to attorneys' fees and experts' fees) incurred in connection with the investigation or evaluation of any **Derivative Demand**, but excluding wages, salaries, fees, benefits or overhead expenses of any **Insured Person.**

**Derivative Demand Investigation Costs Sub-Limit** means $250,000.

(3)      The Insurer's maximum aggregate liability for **Derivative Demand Investigation Costs** resulting from all **Derivative Demands** shall be the amount set forth in the definition of **Derivative Demand Investigation Costs Sub-Limit**, regardless of the number of **Derivative Demands** received during the **Policy Period** or the **Discovery Period**, if purchased. The **Derivative Demand Investigation Costs Sub-Limit** shall be part of and not in addition to the Limit of Liability set forth in Item 3 of the Declarations, and payment of such **Derivative Demand Investigation Costs** shall reduce such Limit of Liability.

(4)      There shall be no retention applicable to **Derivative Demand Investigation Costs.**

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the policy or is not to be effective with the policy.

Effective Date of this endorsement:

By: _____

                     Attorney-in-Fact

991-804
Ed (06/00)

            Page 1 of 1

ENDORSEMENT NUMBER: 12

**SEPARATE RETENTION FOR SECURITIES CLAIMS
UNDER INSURING AGREEMENT (B)(1)**

To be attached to and made a part of Policy No. 24-MGU-05-A10821, issued to
Refco Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that, solely for purposes of Loss payable
under INSURING AGREEMENT (B)(1) arising from any Securities Claim, the retention stated
in Item 4(b) of the Declarations is amended to be $500,000.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be
effective with the Policy.

Effective date of this endorsement:

By:_____
            Attorney-in-Fact

991-830                          Page 1 of 1
Ed. 07/05

ENDORSEMENT NUMBER: 13

**NON-RESCINDABLE:**
**INSURING AGREEMENT (A) ONLY**

To be attached to and made a part of Policy No. 24-MGU-05-A10821 , issued to Refco Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that, notwithstanding anything in this Policy to the contrary, the Insurer shall not be entitled under any circumstances to rescind the coverage provided under Insuring Agreement (A) of this Policy.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the policy or is not to be effective with the policy.

Effective Date of this endorsement:

By: _____

Attorney-in-Fact

991-861                         Page 1 of 1
Ed (04/04)

ENDORSEMENT NUMBER: 14

SPECIFIC EVENT(S) EXCLUSION

To be attached to and made a part of Policy No. 24-MGU-05-A10821, issued to Refco Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that the Insurer will not be liable to make any payment of Loss in connection with a Claim arising out of, based upon or attributable to any event described hereunder.

Excluded Event(s):
Wells Notice/SEC Investigation

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By: _____
          Attorney-in-Fact

991-876                      Page 1 of 1
Ed. (05/05)

ENDORSEMENT NUMBER: 15

## CONTROLLING SHAREHOLDER COVERAGE –
## SPECIFIC PERSON(S)

To be attached to and made a part of Policy No. 24-MGU-05-A10821, issued to Refco Inc. by U.S. Specialty Insurance Company.

In consideration of the premium charged, it is agreed that:

(1)    The following INSURING AGREEMENT is added to the Policy:

The Insurer will pay to or on behalf of the **Controlling Shareholder Loss** arising from a **Securities Claim** first made during the **Policy Period** or the **Discovery Period** (if applicable) against such **Controlling Shareholder** for **Wrongful Acts**, provided, that one or more **Insured Persons** and/or the **Company** are and remain co-defendants in such **Securities Claim** along with such **Controlling Shareholder.**

(2)    The following DEFINITION is added to the Policy:

**Controlling Shareholder** means the following person(s):

Philip Bennett

(3)    DEFINITION (E) **Insured** is amended to read as follows:

(E)    **Insured** means:  (1) the **Insured Persons**; (2) the **Company**; or (3) the **Controlling Shareholder** but only with respect to **Securities Claims.**

(4)    DEFINITION (G) **Loss**, subsection (2), is amended to read as follows:

(2)    the **Company** or **Controlling Shareholder** is legally obligated to pay as a result of any **Securities Claim**;

(5)    DEFINITION (F) **Wrongful Act**, subsection (1)(b), is amended to read as follows:

(b)    with respect only to **Securities Claims**, by the **Company** or by the **Controlling Shareholder** in his or her capacity as such or any matter claimed against such **Controlling Shareholder** by reason of his or her status as such; or

(6)    EXCLUSION (F) is amended to read as follows:

(F)    brought by or on behalf of, or in the name or right of, the **Company**, whether directly or derivatively, or any **Insured Person** or **Controlling Shareholder**, unless such **Claim** is:

(1)    brought and maintained independently of, and without the solicitation, assistance or active participation of, the **Company** or any **Insured Person**, or

991-1122                                              Page 1 of 2
Ed. 09/05

(2)    for an actual or alleged wrongful termination of employment, or

(3)    brought or maintained by an **Insured Person** or a **Controlling Shareholder** for contribution or indemnity and directly results from another **Claim** covered under this **Policy**, or

(4)    brought and maintained by an employee of the **Company** solely to enforce his or her rights as a holder of securities issued by the **Company**;

provided, that this **EXCLUSION (F)** will not apply to **Claims** brought by a trustee in bankruptcy, receiver, conservator, rehabilitator, liquidator or other similar official duly appointed with respect to the **Company**;

(7)    A retention of $300,000 will apply to **Loss** resulting from each **Claim** for which coverage is provided under this endorsement; provided, however, that such retention will apply only to **Defense Costs** and will not apply to any other **Loss**.

(8)    CONDITION (F) <u>Changes in Control</u>, subsection (2), is amended to read as follows:

(2)    If, during the **Policy Period**, any of the following transactions or events (each a "Change in Control") occurs with respect to a **Subsidiary**:

(a)    the **Subsidiary** ceases to be a **Subsidiary**, or

(b)    a trustee in bankruptcy, receiver, conservator, rehabilitator, liquidator or other similar official is duly appointed with respect to the **Subsidiary**;

then coverage under this **Policy** with respect to **Claims** against such **Subsidiary** or any **Insured Person** or **Controlling Shareholder** thereof will continue in full force and effect until the end of the **Policy Period** with respect to **Claims** for **Wrongful Acts** committed or allegedly committed before the effective date of such Change in Control, but coverage under this **Policy** with respect to **Claims** against such **Subsidiary** or any **Insured Person** or **Controlling Shareholder** thereof will cease with respect to **Claims** for **Wrongful Acts** committed or allegedly committed thereafter.

All other terms, conditions and limitations of this **Policy** will remain unchanged.

Complete the following only when this endorsement is not prepared with the **Policy** or is not to be effective with the **Policy**.

Effective date of this endorsement:

By: _____

_Attorney-in-Fact_

991-1122
Ed. 09/05

ENDORSEMENT NUMBER: 16

**POLICYHOLDER DISCLOSURE – TERRORISM PREMIUM NOTICE**

To be attached to and made a part of Policy No. 24-MGU-05-A10821, issued to Refco Inc. by U.S. Specialty Insurance Company.

Your policy contains coverage for certain losses caused by terrorism. We are required to notify you of the portion of the premium, if any, attributable to the coverage for terrorist acts certified under the Terrorism Risk Insurance Act of 2002. The Act also requires us to provide disclosure of Federal participation in payment of terrorism losses. For a further description of an act of terrorism as provided under the Act, see below.

You should know that effective November 26, 2002 any losses caused by certified acts of terrorism would be partially reimbursed by the United States government, Department of Treasury, under a formula established by federal law. Under this formula, the United States pays 90% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The premium charged for this coverage is shown below; it does not include any charges for the portion of loss covered by the federal government under the Act.

The portion of your premium that is attributable to coverage for terrorist acts certified under the Act is $0.

The following excerpt from the Act is provided for your information:

According to Section 102(1) of the Terrorism Risk Insurance Act of 2002: "The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and the Attorney General of the United States — (I) to be an act of terrorism; (ii) to be a violent act or an act that is dangerous to (I) human life; (II) property; or (III) infrastructure; (iii) to have resulted in damage within the United States, or premises of a United States mission; and (iv) to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion." Section 102(1)(B) states: "No act shall be certified by the Secretary as an act of terrorism if (i) the act is committed as part of the course of war declared by the Congress, except that this clause shall not apply with respect to any coverage for workers' compensation; or (ii) property and casualty insurance losses resulting from the act, in the aggregate, do not exceed $5,000,000." Section 102(C) and (D) specify that the determination are final and not subject to judicial review and that the Secretary of the Treasury cannot delegate the determination to anyone.

ENDORSEMENT NUMBER: 17

**EMPLOYED LAWYERS EXTENSION**
**(SEPARATE LIMIT AND RETENTION)**

To be attached to and made a part of Policy No. 24-MGU-05-A10821, issued to Refco Inc. by U.S. Specialty Insurance Company.

This endorsement replaces and supersedes Endorsement Number 5 ("Employed Lawyers Extension (Separate Limit and Retention") as of the effective date of this endorsement.

In consideration of the premium charged:

(1)     DEFINITION (F) Insured Person is amended to include any Employed Lawyer.

(2)     DEFINITION (P) Wrongful Act is amended to include any act, error, misstatement, misleading statement, omission or breach of duty by an Employed Lawyer, in his or her capacity as such, in the rendering or failure to render professional legal services for the Company; provided, that Wrongful Act shall not include any act, error, misstatement, misleading statement, omission or breach of duty by such Employed Lawyer in connection with any activities: (1) that are not related to such Employed Lawyer's employment with the Company; (2) that are not rendered on the behalf of the Company at the Company's written request; or (3) that are performed by the Employed Lawyer for others for a fee.

(3)     The following DEFINITION is added to the Policy:

Employed Lawyer means any past, present or future full-time, salaried employee of the Company who is admitted to practice law and who is employed at the time of any alleged Wrongful Act as a lawyer full-time for and salaried by the Company.

(4)     The EXCLUSIONS section of the Policy is amended by the addition of the following:

The Insurer will not be liable to make any payment of Loss in connection with any Claim made against an Employed Lawyer:

(a)     alleging, arising out of, based upon or attributable to any Wrongful Act occurring at a time when such Employed Lawyer was not employed as a lawyer by the Company;

(b)     alleging, arising out of, based upon or attributable to any Claim made or any prior or pending litigation as of 8/11/05, or alleging or derived from the same facts or circumstances as alleged in such pending or prior litigation;

(c)     alleging, arising out of, based upon or attributable to any Wrongful Act, if as of 8/11/05, such Employed Lawyer knew or could have reasonably foreseen that such Wrongful Act could give rise to a Claim;

991-322                          Page 1 of 1
(Ed. 09/03)

(d)    alleging, arising out of, based upon or attributable to any activities by such **Employed Lawyer** as an officer or director of any entity other than the **Company**.

(5)    For purposes of the applicability of the coverage provided by this endorsement, the **Company** will be conclusively deemed to have indemnified the **Employed Lawyer** to the extent that the **Company** is permitted or required to indemnify him or her pursuant to law, common or statutory, or contract, or the charter or by-laws of the **Company** (which are hereby deemed to adopt the broadest provisions of the law which determines and defines such rights of indemnity). The **Company** hereby agrees to indemnify the **Employed Lawyer** to the fullest extent permitted by law including the making in good faith of any required application for court approval and the passing of any corporate resolution or the execution of any contract.

(6)    The coverage provided by this endorsement shall apply only to **Claims** made against an **Employed Lawyer**, provided that, and only for so long as, one or more **Insured Persons** (other than such **Employed Lawyer**) are and remain co-defendants in the proceeding along with such **Employed Lawyer**.

(7)    The coverage provided by this endorsement is specifically excess over any other valid or collectible lawyers professional liability insurance, including but not limited to legal malpractice or other errors and omissions insurance, and shall not drop down and serve as primary insurance unless and until such other insurance has been exhausted due to actual payment of losses paid thereunder.

(8)    Solely for purposes of the coverage provided under this endorsement:

(a)    The **Insurer's** maximum aggregate liability for all **Loss** on account of all **Claims** first made during the same **Policy Period** will not exceed $1,000,000 ("the Employed Lawyers Coverage Limit"). The Employed Lawyers Coverage Limit shall be separate from and in addition to the Limit of Liability set forth in ITEM 3 of the Declarations, and ITEM 3 of the Declarations is amended accordingly.

(b)    A retention of $100,000 shall apply to **Loss** resulting from each **Claim**; provided, such retention shall not apply to **Loss** incurred by any **Employed Lawyer** if indemnification of such **Loss** by the **Company** is not legally permitted or cannot be done solely by reason of its financial insolvency, subject to paragraph (5) above.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the policy or is not to be effective with the policy.

Effective Date of this endorsement:    8/11/2005

By: _____
        Attorney-in-Fact

991-322                    Page 1 of 1
(Ed. 09/03)